# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WOLFRAM ARNOLD, ERIK
FROESE, TRACY HAWKINS,
JOSEPH KILLIAN, LAURA CHAN
PYTLARZ, and ANDREW
SCHLAIKJER,

      *Plaintiffs*,

   v.

X CORP. f/k/a TWITTER, INC., X
HOLDINGS CORP. f/k/a X
HOLDINGS I, INC., and ELON
MUSK,

      *Defendants*.

C.A. No. 1:23-cv-528-CFC

---

**DEFENDANT X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP.
f/k/a X HOLDINGS I, INC.'S OPENING BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

Dated: July 31, 2023

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a
Twitter, Inc. and X Holdings Corp. f/k/a
X Holdings I, Inc.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS.............................................1

II.   SUMMARY OF THE ARGUMENT .............................................................1

III.  STATEMENT OF FACTS .............................................................................2

     A.    Twitter Enters Into a Fully Integrated Merger Agreement That Twice Disclaims Plaintiffs as Third-Party Beneficiaries....................2

     B.    Twitter Lays Off Arnold, Froese, Pytlarz, and Schlaikjer, While Killian and Hawkins Voluntarily Resign. ............................................3

IV.  ARGUMENT..................................................................................................4

     A.    Plaintiffs' Declaratory Judgment and Breach of Merger Agreement Claims Should be Dismissed..............................................4

     B.    Plaintiffs' Breach of Contract, Promissory Estoppel, and Breach of Offer Letter Claims Should be Dismissed Under Rule 12(b)(6)..................................................................................................8

     C.    Plaintiffs Fail to State a Claim for Fraud. ........................................15

     D.    Plaintiffs Fail to State a Claim for Discrimination Under FEHA......18

     E.    The Court Should Dismiss or Stay Plaintiffs' FEHA Claims............19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addicks Servs., Inc. v. GGP-Bridgeland, LP*,
   596 F.3d 286 (5th Cir. 2010) ............................................................14

*Am. Fin. Corp. v. Computer Sciences Corp.*,
   558 F. Supp. 1182 (D. Del. 1983)........................................................5

*Ankerstjerne v. Schlumberger, Ltd.*,
   155 F. App'x 48 (3d Cir. 2005) .........................................................15

*In re Asbestos Products Liability Litig.*,
   822 F.3d 125 (3d Cir. 2016) ...............................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................9, 14

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of
   Carpenters*,
   459 U.S. 519 (1983)..........................................................................19

*Buschman v. Anesthesia Bus. Consultants, LLC*,
   42 F. Supp. 3d 1244 (N.D. Cal. 2014)..............................................11

*Canzona v. Atanasio*,
   118 A.D. 3d 837 (N.Y. App. Div. 2014) ...........................................11

*Casenas v. Fujisawa USA*,
   58 Cal. App. 4th 101 (1997) ..............................................................10

*Choe v. Bank of Am., N.A.*,
   2013 WL 6159308 (N.D. Tex. Nov. 25, 2013) .................................11

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ............................................................16

*Crispo v. Musk*,
   2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ..................................4, 7

*Curcio v. Hartford Fin. Servs. Grp.*,
    472 F. Supp. 2d 239 (D. Conn. 2007)....................................................15

*Daly v. Castro Llanes*,
    30 F. Supp. 2d 407 (S.D.N.Y. 1998) .....................................................17

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987) ................................................................17

*Drummond v. Akselrad*,
    2023 WL 3173780 (S.D.N.Y. May 1, 2023) ................................13, 15

*Edmunds v. Houston Lighting & Power Co.*,
    472 S.W.2d 797 (Tex. Civ. App. 1971)..................................................13

*EEOC v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990)......................22

*Express Indus. & Terminal Corp. v. N.Y. State Dept. of Transp.*,
    715 N.E. 2d 1050 (N.Y. 1999)...............................................................13

*Fortis Advisors LLC v. Medicines Co.*,
    2019 WL 7290945 (Del. Ch. Dec. 18, 2019)...............................5, 6, 7

*Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*,
    583 A.2d 1378 (Del. Super. Ct. 1990)......................................................8

*Guz v. Bechtel*,
    24 Cal. 4th 317 (2000) ...........................................................................19

*Heller Fin., Inc. v. Grammco Comput. Sales, Inc.*,
    71 F.3d 518 (5th Cir. 1996) ...................................................................17

*Hernandez v. MidPen Hous. Corp.*,
    2014 WL 2040144 (N.D. Cal. May 16, 2014)........................................19

*Khan v. CitiMortgage, Inc.*,
    975 F. Supp. 2d 1127 (E.D. Cal. 2013) ..................................................16

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
    844 F. Supp. 2d 519 (D. Del. 2012).........................................................2

*Kulas v. Adachi*,
    1997 WL 256957 (S.D.N.Y. May 16, 1997) ......................................................18

*Lamoureux v. Trustco Bank*,
    592 F. Supp. 3d 14 (N.D.N.Y. 2022) ................................................................11

*Mahler v. Jud. Council of Cal.*,
    67 Cal. App. 5th 82 (2021) ...............................................................................20

*O'Brien v. Nat'l Prop. Analysts Partners*,
    936 F.2d 674 (2d Cir. 1991) ..............................................................................16

*Oster v. Caithness Corp.*,
    2017 WL 3727174 (N.D. Cal. Aug. 30, 2017) ..................................................14

*PBGC v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993) ..............................................................................2

*Pettit v. Country Life Homes, Inc.*,
    2009 WL 846922 (Del. Super. Ct. Mar. 31, 2009) .............................................8

*Pierce Assoc., Inc. v. Nemours Found.*,
    865 F.2d 530 (3d Cir. 1988) ................................................................................5

*Reddy v. Superior Global Sols., Inc.*,
    2012 WL 6569800 (E.D. Tex. Oct. 2, 2012) .....................................................16

*Rodriguez v. Wells Fargo Bank, Inc.*,
    2016 WL 4595064 (E.D. Cal. Sept. 2, 2016) ....................................................10

*Sawyer v. E.I. Du Pont De Nemours & Co.*,
    430 S.W.3d 396 (Tex. 2014) .............................................................................13

*Schwarzkopf v. IBM, Inc.*,
    2010 WL 1929625 (N.D. Cal. May 12, 2010) ...................................................12

*Scott v. Pac. Gas & Elec., Co.*,
    904 P.2d 834 (Cal. 1995) ..................................................................................12

*Sheppard v. David Evans & Assoc.*,
    694 F.3d 1045 (9th Cir. 2012) ..........................................................................21

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 112 (2d Cir. 1994) ....................................................................16

*Stanley Black & Decker, Inc. v. Gulian*,
  70 F. Supp. 3d 719 (D. Del. 2014)................................................9, 15

*Stout v. Potter*,
  276 F.3d 1118 (9th Cir. 2002) ...........................................................19

*Stover v. Experian Holdings, Inc.*,
  978 F.3d 1082 (9th Cir. 2020) ...........................................................11

*Strifling v. Twitter, Inc.*,
  No. 22-cv-07739-JST (N.D. Cal.) ...........................................17, 22, 23

*Sudul v. Comput. Outsourcing Servs.*,
  868 F. Supp. 59 (S.D.N.Y. 1994) ......................................................17

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) .............................................................17

*Tanedo v. E. Baton Rouge Par. Sch. Bd.*,
  2012 WL 5447959 (C.D. Cal. Oct. 4, 2012)....................................17

*Turner v. Anheuser-Busch, Inc.*,
  7 Cal. 4th 1238 (1994) ...................................................................9, 10

*In re US West, Inc. Secs. Litig.*,
  65 F. App'x 856 (3d Cir. 2003) ...........................................................2

*Valentine v. Nielsen*,
  2018 WL 4092133 (S.D. Cal. Aug. 28, 2018)...................................20

*Watson v. CitiMortgage, Inc.*,
  530 F. App'x 322 (5th Cir. 2013) .......................................................15

*Weddington Prods., Inc. v. Flick*,
  60 Cal. App. 4th 793 (Cal. App. Ct. 1998).......................................13

*Weinreb v. Hosp. for Joint Diseases Ortho. Inst.*,
  404 F.3d 167 (2d Cir. 2005) ..............................................................14

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ................................................................16

*Worthington v. Bayer Healthcare, LLC*,
  2012 WL 1079716 (D.N.J. Mar. 30, 2012) ........................................22

**Statutes**

California Fair Employment and Housing Act, Cal. Gov. Code §
  12940........................................................................................................2

FEHA ................................................................................................*passim*

**Other Authorities**

F.R.E. 201(b)(2) .........................................................................................2

Fed. R. Civ. P. 9(b) ...............................................................2, 15, 16, 17

Fed. R. Civ. P. 12(b)(2)............................................................................1

Fed. R. Civ. P. 12(b)(6)...............................................................1, 2, 9

Rule 12(b)(1) ..........................................................................................5, 8

## I.   NATURE AND STAGE OF PROCEEDINGS

On May 16, 2023, Plaintiffs filed their Original Complaint (ECF 1) alleging fourteen causes of action. On June 16, 2023, Plaintiffs amended their Original Complaint (D.I. 10) alleging the same causes of action.  Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc. (together hereinafter "Twitter") move to dismiss Counts I, II, III, IV, V and XIV pursuant to Fed. R. Civ. 12(b)(6) and Count VI pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## II.   SUMMARY OF THE ARGUMENT

1.   The Court should dismiss Plaintiffs' claims for severance benefits under the Merger Agreement because they are neither parties to it nor intended third-party beneficiaries.

2.   The Court should dismiss Plaintiffs' breach of contract and promissory estoppel claims because (1) they derive from and are predicated upon the fully-integrated Merger Agreement, as to which Plaintiffs are neither parties nor beneficiaries, and (2) Plaintiffs fail to plausibly allege any sufficiently definite contract between them and Twitter or any sufficiently definite promise by Twitter upon which they could have reasonably relied guaranteeing them severance.

3.   The Court should dismiss Plaintiffs' fraud claim because (1) they fail to allege such claim with the requisite level of particularity required by Fed. R. Civ. P. 9(b), and (2) they improperly recast the contract claim as a fraud claim.

4.     The Court should dismiss Plaintiffs' claims for discrimination in violation of the California Fair Employment and Housing Act, Cal. Gov. Code § 12940 ("FEHA") because Plaintiffs do not allege facts sufficient to plausibly support discrimination claims.  Alternatively, the Court should dismiss or, in the alternative, stay Plaintiffs' FEHA claims based on the first-filed rule.

## III.   STATEMENT OF FACTS

### A.     Twitter Enters Into a Fully Integrated Merger Agreement That Twice Disclaims Plaintiffs as Third-Party Beneficiaries.

On April 25, 2022, Twitter entered into the Merger Agreement with X Holdings I, Inc., X Holdings II, Inc., and only for certain provisions, Elon R. Musk (the "Agreement").  Request for Judicial Notice ("RJN"), Ex. A.[1]  The Agreement is fully integrated and "constitutes . . . the entire agreement, and supersedes all other prior agreements and understandings, both written and oral, among the parties, or any of them, with respect to the subject matter hereof."  *Id.*, § 9.7.

---

[1] The Court may consider the Merger Agreement and the Frequently Asked Questions, as both documents are extensively quoted, relied on and incorporated by reference in the Complaint.  *In re Asbestos Products Liability Litig.*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *In re US West, Inc. Secs. Litig.*, 65 F. App'x 856, 861 n.2 (3d Cir. 2003) (appropriately considering Merger Agreement and Proxy Statements in deciding a motion to dismiss a claim that shareholders were entitled to damages arising out of a misleading proxy). The Agreement also is a public record filed with the Securities and Exchange Commission subject to judicial notice.  F.R.E. 201(b)(2); *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.,* 844 F. Supp. 2d 519, 524 (D. Del. 2012).

The Agreement contains at least two provisions governing third-party beneficiary rights.  Section 6.9, titled "Company Benefit Plans," contains a subsection (e) stating, "***[n]othing*** contained in this Section 6.9, expressed or implied, shall . . . give any Company Service Provider (including any beneficiary or dependent thereof) or other Person ***any third-party beneficiary or other rights*** . . . ." (emphasis added).  Company Service Provider is defined to include "each current or former . . .employee . . . of the Company or any of its Subsidiaries"—which includes Plaintiffs.  *Id*. at 6.

Section 9.7, titled "No-Third-Party Beneficiaries," states that the Agreement "is not intended to and ***shall not confer upon any Person other than the parties hereto any rights or remedies hereunder***; provided, however, that it is specifically intended that (A) the D&O Indemnified Parties (with respect to Section 6.6 from and after the Effective Time), (B) the Company Related Parties (with respect to Section 8.3) are third-party beneficiaries and (C) the Parent Related Parties (with respect to Section 8.3) are third-party beneficiaries." *Id.* § 9.7 (emphasis added).  Plaintiffs are not included in any of these identified third-party beneficiary categories.

> **B.   Twitter Lays Off Arnold, Froese, Pytlarz, and Schlaikjer, While Killian and Hawkins Voluntarily Resign.**

Twitter employed Plaintiffs Arnold, Hawkins, Killian, and Schlaikjer in California, D.I. 10, ¶¶ 11-12, 17-20, 24-25; employed Plaintiff Froese in New York, D.I. 10, ¶¶ 14-15; and employed Plaintiff Pytlarz in Texas, D.I. 10, ¶¶ 21-22.

On November 4, 2022, Twitter notified Froese and Pytlarz that they were being laid off. *Id.*, ¶¶ 131-133. Twitter later notified Froese that he was being laid off effective February 27, 2023 and Pytlarz that she was being laid off effective January 20, 2023. *Id.*, ¶¶ 15, 22, 379, 398, 407. On November 16, 2023, Twitter sent Arnold and Schlaikjer an email with an electronic link allowing them to either click by November 17 confirming their continued employment with Twitter or not click indicating their intent to voluntarily resign. *Id.*, ¶ 143. Arnold and Schlaikjer did not click either option, and their employment ended on January 20, 2023. *Id.*, ¶¶ 25, 148, 379. Hawkins voluntarily resigned employment on November 4, 2022, and Killian voluntarily resigned on December 10, 2022. *Id.*, ¶¶ 212, 292.

## IV.   ARGUMENT

### A.   Plaintiffs' Declaratory Judgment and Breach of Merger Agreement Claims Should be Dismissed.

Delaware law governs these claims under the choice of law clause in the Agreement. Ex. A, Section 9.8. "Under applicable Delaware law, only parties to a contract and intended third-party beneficiaries have standing to sue for breach of the contract." *Crispo v. Musk*, 2022 WL 6693660, at *4 (Del. Ch. Oct. 11, 2022). "To adequately plead a third-party beneficiary claim under Delaware law, (i) the contracting parties must have intended that the third party benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a

material part of the parties' purpose in entering into the contract." *Fortis Advisors LLC v. Medicines Co.*, 2019 WL 7290945, at *3 (Del. Ch. Dec. 18, 2019). Whether the contracting parties intended to benefit a third party must "be determined from the language of the contract." *Pierce Assoc., Inc. v. Nemours Found.*, 865 F.2d 530, 535 (3d Cir. 1988). "[U]nder Delaware law both parties must in some manner express an intent to benefit the third-party before third-party beneficiary status is found," because "[t]o allow the unilateral intent of one party to determine the existence of a third-party beneficiary would thwart the power that contracting parties should have to control their legal obligations, particularly in a commercial setting." *Am. Fin. Corp. v. Computer Sciences Corp.*, 558 F. Supp. 1182, 1185 (D. Del. 1983).

Plaintiffs have not pled facts plausibly showing that the parties to the Agreement intended Plaintiffs to be third-party beneficiaries, so their claims should be dismissed under Rule (b)(6). Plaintiffs rely on Section 6.9(a) of the Agreement to allege that Twitter would provide Plaintiffs with "'severance payments and benefits . . . no less favorable than' those provided under Twitter's policies . . . immediately prior to the merger," and assert that Section 6.9(e), which expressly precludes their ability to enforce Section 6.9(a) as third-party beneficiaries, "is ineffective under Delaware law." *See* D.I. 10, ¶¶ 38, 365. Section 6.9(e) states that "[n]othing contained in this Section 6.9"—which includes Section 6.9(a) on which Plaintiffs rely—"expressed or implied, shall . . . give any Company Service Provider

(including any beneficiary or dependent thereof) or other Person any third-party beneficiary or other rights . . . ." Exhibit A, § 6.9(e). Company Service Provider is defined to include all of Twitter's current and former employees, including Plaintiffs. *Id*. at 6. Through Section 6.9(e)(ii), the contracting parties unequivocally expressed their intent to *not* confer third-party beneficiary status on Plaintiffs for purposes of enforcing Section 6.9(a). Section 6.9(e)(i) further reflects this intent by granting the acquiror the right "to amend, modify, merge or terminate after the Effective Time any Company Benefit Plan, Post-Closing Plan or other employee benefit plan" under which Plaintiffs are now seeking to recover alleged severance payments. *Id*., § 6.9(e)(i).

The contracting parties further expressed their intent to *not* confer on Plaintiffs any third-party beneficiary status through Section 9.7, titled "No-Third Party Beneficiaries," which states that the "Agreement is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder," and then carves out three specifically enumerated categories of third-party beneficiaries—none of which include Plaintiffs. *Id*., § 9.7. Plaintiffs' Complaint simply ignores Section 9.7. Section 9.7 is not a boilerplate provision, but rather identifies certain individuals and entities as third-party beneficiaries to the exclusion of others, including to the exclusion of Plaintiffs. This is a key factor to the disposition of this Motion because, under Delaware law, "when a 'no third-party

beneficiaries' provision is 'customized' . . . such as when it 'contains a carve-out' listing some groups as third-party beneficiaries, [Delaware courts have] concluded that the parties knew how to confer third-party beneficiary status and deliberately chose not to do so with respect to any unlisted groups." *Crispo*, 2022 WL 6693660, at *4; *see also Fortis Advisors, LLC v. Med. Co.*, 2019 WL 7290945, at *3 (De. Ch. Dec. 18, 2019).   Plaintiffs' allegation that Section 6.9(e) is "ineffective under Delaware law" lacks any merit.   D.I. 10, ¶ 365.   In *Crispo*, the Delaware Chancery Court analyzed the Agreement and held that it falls squarely within the category of "customized" no third-party beneficiary provisions and thus bars claims by third-party beneficiary employees.   2022 WL 6693660, at *4.

Because the contracting parties expressly excluded Plaintiffs as third-party beneficiaries under the very section of the Agreement Plaintiffs now seek to enforce, and even included a second, bespoke no-third party beneficiary clause that also excluded Plaintiffs, the Agreement does not confer third-party beneficiary standing onto Plaintiffs, and Plaintiffs' third-party beneficiary claims should be dismissed under Rule 12(b)(1) and (b)(6) for lack of standing and failure to state a claim.

Plaintiffs' claims also fail because Twitter retained broad managerial discretion to "amend, modify, merge *or terminate* after the Effective Time *any Company Benefit Plan*, Post-Closing Plan *or other employee benefit plan*."   Merger Agreement 6.9(e) (emphasis added).   Under Delaware law, the party seeking to

prove breach must "establish affirmatively that the benefit was intentional." *Pettit v. Country Life Homes, Inc.*, 2009 WL 846922, at *3 (Del. Super. Ct. Mar. 31, 2009). If Plaintiffs cannot "establish affirmatively" an intention to confer direct benefits upon them, but rather happen to benefit from the performance of a promise either coincidentally or indirectly, then Plaintiffs will have no enforceable rights under the contract. *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. Ct. 1990) ("[i]t is universally recognized, however, that where it is the intention of the promisee to secure performance of the promised act for the benefit of another, either as a gift or in satisfaction of an obligation to that person, and the promisee makes a valid contract to do so, then such third person has an enforceable right under that contract to require the promisor to perform or respond in damages."). Here, the express language reserving the right to "amend, modify, merge *or terminate* after the Effective Time *any Company Benefit Plan*" forecloses any claim that Twitter intended to confer any guaranteed severance benefits on Plaintiffs.

### B.   Plaintiffs' Breach of Contract, Promissory Estoppel, and Breach of Offer Letter Claims Should be Dismissed Under Rule 12(b)(6).

Under Rule 12(b)(6), a claim must be dismissed if a plaintiff fails to allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not obligated to accept as true bald assertions, unsupported conclusions and unwarranted

8

inferences, or allegations that are self-evidently false[.]" *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 726 (D. Del. 2014).

Plaintiffs allege that Twitter promised, "in the event of a position elimination," employees would receive certain severance benefits.  D.I. 10, ¶¶ 96, 326.  The Complaint does not allege that Twitter promised severance if an employee, like Hawkins and Killian, *resigned* their employment.  *Id.* ¶ 5.  The Complaint does not allege that Hawkins and Killian suffered a "position elimination" or that their resignations were the result of a constructive discharge under California law.  "The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee."  *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1246 (1994).  Plaintiffs' disagreements with certain personnel directives and purported conflicting moral commitments are insufficient to rise to the level of a constructive discharge.  *See, e.g.*, *Turner*, 7 Cal. 4th at 1254 (finding "existence of illegal conduct in a workplace does not, without more, render employment conditions intolerable to a reasonable employee"); *Casenas v. Fujisawa USA*, 58 Cal. App. 4th 101, 117 (1997) (no constructive discharge where, among other things, the employee objected to her supervisor's communication and management style, which included "derogatory comments" and condescending criticisms); *Rodriguez v. Wells Fargo Bank, Inc.*, 2016 WL 4595064, at *7 (E.D. Cal. Sept. 2, 2016) (finding that while plaintiff may disagree with their supervisor on certain matters,

"disagreement with a supervisor's opinion and management of personnel alone is insufficient to show constructive discharge."). Thus Hawkins' and Killian's claims for breach of contract and promissory estoppel must be dismissed.

Plaintiffs do not plead the specific state laws under which they assert their common law breach of contract and promissory estoppel claims. Twitter assumes for purposes of this Motion that Plaintiffs' common law claims would be governed by the law of the state in which they were employed: California for Arnold, Hawkins, Killian, and Schlaikjer, New York for Froese, and Texas for Pytlarz. D.I. 10, ¶¶ 11, 14, 17, 19, 21, 24.

The basic elements of a breach of contract claim are substantially similar under California, New York, and Texas law. The plaintiff must plead facts plausibly establishing (i) the existence of a contract; (ii) plaintiff's performance or excuse for non-performance; (iii) the defendant's breach; and (iv) damages to the plaintiff as a result of the breach. *Buschman v. Anesthesia Bus. Consultants, LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014); *Canzona v. Atanasio*, 118 A.D. 3d 837, 838-39 (N.Y. App. Div. 2014); *Choe v. Bank of Am., N.A.*, 2013 WL 6159308, at *3 (N.D. Tex. Nov. 25, 2013). It is well-settled that "the *Twombly-Iqbal* standard of federal pleading require a complaint to identify, in [a] non-conclusory fashion, the specific terms of the contract that a defendant has breached. Otherwise, the complaint must be dismissed." *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 36 (N.D.N.Y.

10

2022); *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) (holding that "as the party alleging the existence of a contract, [the plaintiff] has the burden to prove each element of a valid contract"); *Choe*, 2013 WL 6159308, at *3 (dismissing breach of contract claim where plaintiffs "have not plausibly alleged . . . requirements under Texas law for a valid and enforceable contract").

Plaintiffs allege that the FAQs distributed in May 2022 and October 2022[2] "'and related communications' constituted an offer from Twitter to its employees[] that Twitter would provide its pre-merger severance and maintain current benefits in exchange for each employee's remaining employed at Twitter through the merger." D.I. 10, ¶¶ 94, 99, 326.   However, the FAQs do not exist in a vacuum separate from the Agreement, as evidenced by the FAQs' reference to the Agreement no less than twenty-one (21) times, and the FAQs cannot create obligations independent of that integrated Agreement.   RJN, Ex. B at Exhibit 1.[3]   The FAQs also use the phrase "generally speaking" to describe the "current" severance package and do not promise that the "current package" would not change.   Section 6.9 of the Agreement expressly allows for such change through the clause: "Nothing contained in this

---

[2] Plaintiffs inaccurately refer to the FAQs as "the Severance Policy Email."  D.I. 10, ¶ 94.

[3] *See, e.g.,* May 13, 2022 FAQ: "the *[Merger] agreement* provides for Tweep benefits, base salary, and bonus opportunities (short/long term incentives) to continue on a comparable basis for at least one year following the close of the transaction); the Agreement is fully integrated, *see* § 9.7.

Section 6.9, expressed or implied, shall . . . constitute a limitation on rights to amend, modify, merge or terminate . . . any Company Benefit Plan, Post-Closing Plan or other employee benefit plan, . . . ."  RJN, Ex. A.

The law in California, New York, and Texas is clear that no breach of contract claim lies based on a severance or other plan that could be changed or eliminated at any time.  *Schwarzkopf v. IBM, Inc.*, 2010 WL 1929625, at *7 (N.D. Cal. May 12, 2010) (holding terms of sales "quota letter" were too indefinite to form a contract where the employer retained the ability to modify the compensation plan in question); *Scott v. Pac. Gas & Elec., Co.*, 904 P.2d 834, 845 (Cal. 1995) ("courts will not enforce vague promises about the terms and conditions of employment that provide no definable standards for constraining an employer's inherent authority to manage its enterprise"); *Drummond v. Akselrad*, 2023 WL 3173780, at *9 (S.D.N.Y. May 1, 2023) (dismissing breach of contract claim because under New York law in the employment-at-will context "what a company promises in a manual [or similar document] one day, it may prospectively take away the next."); *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 400-01 (Tex. 2014) ("But if the employer or employee can avoid performance of a promise by exercising a right to terminate the at-will relationship, which each is perfectly free to do with or without reason at any time, the promise is illusory and cannot support an enforceable . . . contract.").

Plaintiffs' claims for breach of their offer letters (Count V) fail for similar reasons.  They allege that under their individual offer letters they "were eligible to receive benefits under the terms of Twitter's benefit plans" and that the "severance policy" was such a benefit plan.  D.I. 10, ¶¶ 349-50.  Plaintiffs do not allege that Twitter had a duty to maintain any employee benefit plan—let alone a duty to conform the plan's terms to the benefits they now seek.  And, as explained *supra*, Twitter was free to modify or discontinue any severance plan at any time.  The breach of offer letter claim also fails as too indefinite to constitute an enforceable contract.  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811-12 (Cal. App. Ct. 1998) ("the proposal must be sufficiently definite … that the performance promised is reasonably certain."); *Express Indus. & Terminal Corp. v. N.Y. State Dept. of Transp.*, 715 N.E. 2d 1050, 1053 (N.Y. 1999); *Edmunds v. Houston Lighting & Power Co.*, 472 S.W.2d 797, 798-99 (Tex. Civ. App. 1971) ("[T]he offer must be reasonably definite in its terms and must sufficiently cover the essentials of the proposed transaction.").

Plaintiffs' promissory estoppel claim (Count IV) similarly fails to state a claim.  Promissory estoppel consists of (i) a promise clear and unambiguous in its terms, (ii) reliance by the party to whom the promise is made, (iii) the reliance must be both reasonable and foreseeable, and (iv) the party asserting the estoppel must be injured by his reliance.  *Oster v. Caithness Corp.*, 2017 WL 3727174, at *13 (N.D.

Cal. Aug. 30, 2017); *Weinreb v. Hosp. for Joint Diseases Ortho. Inst.*, 404 F.3d 167, 172 (2d Cir. 2005) (applying New York law); *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 300 (5th Cir. 2010) (applying Texas law). Plaintiffs' promissory estoppel claim fails because they do not plausibly allege *reasonable* reliance on alleged promises that contradict provisions in the Agreement that prevent any third-party beneficiary enforcement rights and grant Twitter discretion to modify or terminate any severance policy.

The promissory estoppel claim also fails because the Complaint's conclusory allegations regarding detrimental reliance and damages are insufficient under *Twombly* and *Iqbal*. The Complaint asserts that "Plaintiffs did in fact rely upon [the] promise" and "were damaged by their reasonable reliance, in that it negatively impacted their ability to find alternative employment in advance of the merger". D.I. 10, ¶¶ 337-338. Courts routinely dismiss such promissory estoppel claims.[4] The Complaint lacks any factual allegations showing that any Plaintiff took any action in reliance on the FAQs' alleged promise and was harmed as a result. *Stanley*, 70 F. Supp. 3d at 726 (courts "are not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-

---

[4] *See e.g.*, *Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48, 51-52 (3d Cir. 2005) (plaintiff failed to establish detrimental reliance where there was no evidence that the plaintiff forewent other more lucrative opportunities); *Curcio v. Hartford Fin. Servs. Grp.*, 472 F. Supp. 2d 239, 245 (D. Conn. 2007) ("Forbearance from seeking job opportunities is not sufficient to show detrimental reliance.").

evidently false[.]"); *Drummond*, 2023 WL 3173780, at *11-12 (plaintiff failed to sufficiently allege detrimental); *Watson v. CitiMortgage, Inc.*, 530 F. App'x 322, 327 (5th Cir. 2013) (affirming dismissal where plaintiffs "fail[ed] to articulate how they detrimentally relied on the promise[,] [] how such reliance would have been reasonable or justified[,] ... [or] how they were damaged.").

### C. Plaintiffs Fail to State a Claim for Fraud.

Fraud must be pled with *particularity*. Fed. R. Civ. P. 9(b). A plaintiff must allege, in detail, "the who, what, when, where, and how" of the alleged fraudulent conduct, and "set forth an explanation as to why the statement or omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 112, 1127-1128 (2d Cir. 1994). "Conclusory allegations and speculation are not sufficient." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). "A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater." *Reddy v. Superior Global Sols., Inc.*, 2012 WL 6569800, at *8 (E.D. Tex. Oct. 2, 2012), *report and recommendation adopted*, 2012 WL 6569787 (E.D. Tex. Dec. 17, 2012). A plaintiff "must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or

wrote, and when it was said or written." *See, e.g., Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1140 (E.D. Cal. 2013).

Plaintiffs fail to meet the Rule 9(b) pleading standard, as they assert only vague allegations about representations "Twitter" allegedly made. *See, e.g.,* Compl. ¶¶ 34, 39-41, 354.  Plaintiffs allege no facts regarding who at Twitter made the alleged representations or whether they had authority to do so. *See, e.g., Khan,* 975 F. Supp. 2d at 1141 (dismissing fraud claim in part due to "the complaint's failure to identify CMI representatives who made misrepresentations, their authority to speak, the date of misrepresentation, and similar required details").  Plaintiffs also fail to allege facts showing that Twitter had an intent to defraud its employees when it made the alleged representations regarding severance.  Plaintiffs rely exclusively on *Musk's* alleged fraudulent intent to state a claim for fraud against *Twitter*.  *See* Compl. ¶¶ 110-11, 359.  Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG LLP,* 476 F.3d 756, 764-765 (9th Cir. 2007).  Plaintiffs cannot conflate Musk's alleged fraudulent intent with Twitter's, particularly because Musk was *not in control of the company* at the time the allegedly fraudulent statements were made. *See, e.g., DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d

Cir. 1987) (dismissing claims against defendants whose actions were not specifically identified and only generally connected to allegedly fraudulent parties); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (dismissing for failure to plead specific allegations of time, place, and content of defendant's fraudulent misrepresentation, only pleading a close relationship with co-defendant).

"[M]ere allegations of breach of contract do not give rise to a claim for fraud or fraudulent inducement." *Sudul v. Comput. Outsourcing Servs.*, 868 F. Supp. 59, 61-62 (S.D.N.Y. 1994); *see also Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 2012 WL 5447959, at *9 (C.D. Cal. Oct. 4, 2012); *Heller Fin., Inc. v. Grammco Comput. Sales, Inc.*, 71 F.3d 518, 527-28 (5th Cir. 1996). Where, as here, plaintiffs' fraud claim is redundant of their contract claim, the fraud claim can survive only "where the plaintiff either: i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Kulas v. Adachi*, 1997 WL 256957, at *9 (S.D.N.Y. May 16, 1997). At its core, Plaintiffs' Complaint alleges a breach of contract action. *See, e.g.,* Compl. ¶ 8; *see generally* Compl., Counts II and III. They attempt to recast that contract claim as fraud by alleging that Musk had no intention of honoring the alleged promises that Twitter made regarding employee severance benefits. *See, e.g.,* Compl. ¶¶ 112, 359. But they do not allege

any separate legal duty or promises collateral to the alleged contract, and thus the fraud claim must be dismissed.  *Kulas,* 1997 WL 256957, at \*9.

### D.    Plaintiffs Fail to State a Claim for Discrimination Under FEHA.

A plaintiff alleging disparate treatment discrimination under the FEHA must allege that: (1) they were a member of a protected class; (2) they were performing competently; (3) they suffered an adverse employment action; and (4) some other circumstance that suggests a discriminatory motive.  *Guz v. Bechtel*, 24 Cal. 4th 317, 355 (2000).  It is not enough to baldly allege that an employer discriminated against them based on their protected class; rather, they must plead facts showing "a discriminatory intent or motive for taking a job-related action."  *See Hernandez v. MidPen Hous. Corp.*, 2014 WL 2040144, at \*3 (N.D. Cal. May 16, 2014).[5]

Here, the Complaint lacks any substantive factual allegations that Plaintiffs suffered adverse employment actions because of a discriminatory intent or animus. Plaintiffs' FEHA allegations focus on Musk's personal Twitter account and his role as CEO of Tesla and SpaceX, rather than how *Twitter's* actions displayed any discriminatory intent or animus towards Plaintiffs.  *See* Compl., ¶¶ 476-483, 516-

---

[5] The FEHA claims also would fail under a disparate impact theory, which requires "a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion."  *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002); *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021).

517 (citing Musk Twitter account), ¶¶ 489-515, 518-520 (discussing Musk's role as CEO of Tesla and SpaceX).

Plaintiffs Pytlarz and Arnold fail to plausibly allege discrimination based on sex, age or sexual orientation. Pytlarz alleges being laid off as part of a November 4, 2022 RIF (*see* Compl. ¶¶ 131 and 531) but does not allege any gender-based animus directed specifically toward her or any alleged comments by any Twitter decisionmakers related to the RIF.  The allegations regarding Tesla and SpaceX are completely irrelevant and unrelated to the RIF.  Arnold claims to have been "laid off" in mid-November because he did not "check[] a box on an online form." *Id.* ¶¶ 143-48. His allegations fail to show a "materially adverse change in the terms or conditions of employment because of" *Twitter's action. Valentine v. Nielsen*, 2018 WL 4092133, at *4 (S.D. Cal. Aug. 28, 2018).  Rather, he simply did not "check[] a box on an online form," and voluntarily resigned.  Compl. ¶¶ 143-48.  He fails to allege circumstances "giving rise to an inference of . . . discrimination." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012).  He does not allege that any Twitter decision-makers made any comments about (let alone even knew) his age or sexual orientation.

### E.   The Court Should Dismiss or Stay Plaintiffs' FEHA Claims.

The first-filed rule provides that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."

*EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). Where a lawsuit is filed that involves "the same parties and the same issues already before another district court," the court presented with the later-filed lawsuit has " 'the power' to enjoin the subsequent prosecution of proceedings." *Id.* at 971-72. "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.* at 971. Courts applying the first-to-file rule look to "the chronology of the actions in addition to the overlapping subject matter, issues, claims, and parties." *Worthington v. Bayer Healthcare, LLC*, 2012 WL 1079716, at *3 (D.N.J. Mar. 30, 2012).

Here, the FEHA sex and age discrimination claims are encompassed within the putative class claims in an class action lawsuit pending in the Northern District of California that was filed on December 7, 2022: *Strifling v. Twitter, Inc.*, No. 22-cv-07739-JST (N.D. Cal.). Plaintiffs Pytlarz and Arnold are members of the putative classes in *Strifling*. *See* RJN, Ex. C (*Strifling* Complaint), at ¶ 8. It would waste of judicial resources for this Court to adjudicate claims already being analyzed by the *Strifling* court, and thus this Court should dismiss or stay those claims in this case.

Dated: July 31, 2023                MORGAN, LEWIS & BOCKIUS LLP

                                    */s/ Jody C. Barillare*
                                    Jody C. Barillare (#5107)
                                    1201 N. Market Street, Suite 2201
                                    Wilmington, Delaware 19801

302-574-7294
jody.barillare@morganlewis.com
*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*