# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC., and ELON MUSK,<br><br>      *Defendants*. | C.A. No. 1:23-cv-528-CFC |

## DEFENDANT ELON MUSK'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND ALTERNATIVE MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Dated: July 31, 2023

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDINGS ............................................. 1

II.  SUMMARY OF THE ARGUMENT ................................................ 1

III. STATEMENT OF FACTS ...................................................... 3

    A.   Musk Is a Party Only to "Specified Provisions" in the April 25, 2022 Merger Agreement. ................................................ 3

    B.   Before the Merger Closes, Twitter Updates Its Employees Regarding the Pending Merger and Related Litigation Against Musk. ......................................................... 4

IV.  ARGUMENT ................................................................ 5

    A.   Plaintiffs' Claims Against Musk Must Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction. ................... 5

        1.   Musk Has Not Consented to This Court's Jurisdiction Under Section 9.10 of the Merger Agreement............................ 5

        2.   Musk Is Not a Signatory to Section 6.9 of the Merger Agreement. .............................................. 6

        3.   Plaintiffs Allege No Grounds for this Court's Exercise of Personal Jurisdiction over Musk for Counts III–XIV ............... 7

    B.   Alternatively, Plaintiffs' Claims Against Musk Must Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim. ............ 9

        1.   The Court Should Dismiss Plaintiffs' Declaratory Judgment and Breach of Merger Agreement Claims Under Rule 12(b)(6) Because Neither Plaintiffs Nor Musk Are Parties to Section 6.9 of the Merger Agreement. ........................................ 9

        2.   The Court Should Dismiss Plaintiffs' Breach of Contract, Promissory Estoppel, and Breach of Offer Letter Claims Because Musk Did Not Control Twitter at the Time of Alleged Contract Formation or When the Promises Were Allegedly Made. ...................................... 11

**TABLE OF CONTENTS**
(continued)

**Page**

3.  The Court Should Dismiss Plaintiffs' Fraud Claim
    (Count VI) Because Plaintiffs Fail to Plausibly Allege the
    Requisite Elements of Fraud Against Musk Under the
    Applicable Heightened Pleading Standard. ..............................14

4.  Counts VII – XIV Should be Dismissed Because They
    Do Not Provide for Individual Liability or a Private Right
    of Action. ...............................................................................16

5.  Plaintiffs Remaining Claims (Counts X; XI; XIV) Should
    be Dismissed Because Plaintiffs have not Plausibly
    Alleged that Musk is Individually Liable or that He is
    Their "Employer."..................................................................19

V.  CONCLUSION.............................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Abatement Inc. v. Williams*,
  324 S.W.3d 858 (Tex. App.—Houston [14th Dist.] 2010, pet.
  denied)...................................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................9

*Bancorp Bank v. Blackburn*,
  2014 WL 4100895 (D. Del. Aug. 20, 2014)........................................6, 7

*Bolt v. Kirley*,
  2012 WL 5006262 (S.D.N.Y. Oct. 18, 2012)......................................7, 8

*Bravo v. Established Burger One, LLC*,
  2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013)...........................................20

*Cato Capital LLC v. Hemispherx Biopharma, Inc.*,
  70 F.Supp.3d 607 (D. Del. 2014), aff'd, 625 F. App'x. 108 (3d Cir.
  2015) ........................................................................................................9

*Cruz v. Robert Abbey, Inc.*,
  778 F.Supp. 605 (E.D.N.Y. 1991) .........................................................16

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir.1987) .................................................................15

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*,
  868 F. Supp. 2d 983 (E.D. Cal. 2012) ...................................................13

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F.Supp.3d 1104 (C.D. Cal. 2015) ...................................................11

*Gill v. ACACIA Network*,
  2015 WL 1254774 (S.D.N.Y. Mar. 18, 2015)........................................16

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
  844 F. Supp. 2d 519 (D. Del. 2012).........................................................3

*Lewis v. Home Depot U.S.A., Inc.*,
   2013 WL 843089 (N.D. Cal. Mar. 6, 2013) ......................................................18

*MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*,
   411 F. Supp. 3d 316 (D. Del. 2019), aff'd, No. 19-3845, 2021 WL
   3503805 (3d Cir. Aug. 10, 2021).......................................................................14

*Meba v. Sonic of Tex., Inc.*,
   2020 WL 10934897 (S.D. Tex. June 12, 2020)...................................................17

*Noakes v. Syracuse Univ.*,
   369 F. Supp. 3d 397 (N.D.N.Y. Feb. 26, 2019)..................................................11

*Peterson v. State of California Dep't of Corr. & Rehab.*,
   451 F.Supp.2d 1092 (E.D. Cal. 2006) ................................................................18

*Plaksin v. NewSight Reality, Inc.*,
   2019 WL 4316255 (C.D.Cal., Apr. 30, 2019) ....................................................20

*Reno v. Baird*,
   18 Cal.4th 640 (1998) ........................................................................................18

*Reynolds v. Direct Flow Med., Inc.*,
   2019 WL 4168959 (N.D. Cal. Sept. 3, 2019)......................................................17

*Ross-Tiggett v. Reed Smith LLP*,
   2016 WL 4491633 (D. N.J. Aug. 25, 2016) .......................................................19

*Ruggiero v. FuturaGene, plc.*,
   948 A.2d 1124 (Del. Ch. 2008) .......................................................................7, 8

*Sanchez v. Aurora Loan Servs., LLC*,
   2014 WL 12589659 (C.D. Cal. Mar. 11, 2014)..................................................13

*Shakur v. YRC Inc.*,
   2022 WL 2167680 (C.D. Cal. Apr. 27, 2022) ....................................................18

*Stanley Black & Decker, Inc. v. Gulian*,
   70 F.Supp.3d 719 (D. Del. 2014)..........................................................................9

*Stover v. Experian Holdings, Inc.*,
   978 F.3d 1082 (9th Cir. 2020) ...........................................................................11

*Trevino v. Merscorp, Inc.*,
    583 F.Supp.2d 521 (D. Del. 2008)......................................................................10

*Turner v. LTF Club Mgmt. Co., LLC*,
    2020 WL 4748374 (E.D. Cal. Aug. 17, 2020)....................................................20

*U.S. v. Boyce*,
    38 F.Supp.3d 1135 (C.D. Cal. 2014) .................................................................10

*Warshun v. New York Cmty. Bancorp, Inc.*,
    957 F.Supp.2d 259 (E.D.N.Y. 2013) .................................................................16

*Wenske v. Blue Bell Creameries, Inc.*,
    2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ....................................................12

*Weygandt v. Weco, LLC*,
    2009 WL 1351808 (Del. Ch. May 14, 2009).......................................................6

*Wong v. Thomson Reuters (Markets) LLC*,
    2011 WL 2912900 (N.D. Cal. July 20, 2011) ...................................................18

**Statutes**

Cal. Gov't Code §§ 12900 *et seq.*....................................................................18

Cal. Fair Employment and Housing Act..............................................................18

Cal. Family Rights Act.........................................................................................17

Cal. Private Attorneys General Act .....................................................................20

Cal. WARN Act ...................................................................................................17

Tex. Lab. Code Chapter 61 ..................................................................................17

Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)......................................19

Federal WARN Act, 29 U.S.C. §§ 2102(a); 2101(a)................................16, 17, 18

N.Y. Lab. Law § 860 *et seq.* ..........................................................................16, 20

N.Y. WARN Act..................................................................................................16

Private Attorneys General Act ............................................................................20

Tex. Lab. Code § 61.014 ...........................................................................................17

**Other Authorities**

Fed. R. Evid. 201(b)(2) .............................................................................................3

Fed. R. Civ. P. 9(b) .................................................................................................14

Fed. R. Civ. P. 12(b)(2)..............................................................................1, 5, 9, 21

Fed. R. Civ. P. 12(b)(6).................................................................................*passim*

## I.    NATURE AND STAGE OF PROCEEDINGS

On May 16, 2023, Plaintiffs filed their Complaint (D.I. 1) alleging fourteen causes of action against Defendants X Corp. f/k/a Twitter, Inc., X Holdings Corp. f/k/a X Holdings I, Inc. (together, "Twitter") and Elon Musk ("Musk").  On June 16, 2023, Plaintiffs filed an Amended Complaint ("FAC") (D.I. 10) alleging the same causes of action.

Musk now moves to dismiss all claims asserted against him (Counts I–XIV) under Rule 12(b)(2) for lack of personal jurisdiction, and alternatively, under Rule 12(b)(6) for failure to state a claim.

## II.    SUMMARY OF THE ARGUMENT

1.    Pursuant to Rule 12(b)(2), the Court should dismiss all claims against Musk as Plaintiffs' contention that he consented to this Court's exercise of personal jurisdiction under Section 9.10 of the Merger Agreement is mistaken for three reasons: (i) Musk is not a signatory to Section 9.10 and thus did not consent to jurisdiction under it; (ii) even if found to have consented to jurisdiction under 9.10, this consent extends only to the "Specified Provisions" in the Merger Agreement to which Musk agreed to be bound, which does not include Section 6.9 on which Plaintiffs' breach claims are based (Counts I–II); (iii) Plaintiffs identify no independent basis for this Court's exercise of jurisdiction over Musk regarding their 12 remaining non-merger-related claims (Counts III–XIV).

2.     Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' claims for severance benefits under Section 6.9 of the Merger Agreement (Counts I–II) because Section 6.9 is not a Specified Provision to which Musk agreed to be bound.

3.     Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' alleged non-merger related breach of contract and promissory estoppel claims (Counts III–V) because the alleged promises at issue were made before the merger closed and Musk owned Twitter.

4.     Pursuant to Rule 12(b)(6), the Court should dismiss Plaintiffs' fraud claim (Count VI) because Plaintiffs have neither pled this claim with the requisite level of particularity nor identified any fraudulent conduct engaged in by Musk.

5.     Pursuant to Rule 12(b)(6), Plaintiffs' Counts VII–X, XII, and XIV should be dismissed because the subject statutes either do not provide for individual liability or for a private right of action.

6.     Pursuant to Rule 12(b)(6), Plaintiffs' remaining claims (Counts X, XI, XIII) should be dismissed for failure to state a plausible claim of individual liability against Musk.

## III.   STATEMENT OF FACTS

### A.   Musk Is a Party Only to "Specified Provisions" in the April 25, 2022 Merger Agreement.

On April 25, 2022, Twitter entered into the Merger Agreement with X Holdings I, Inc. and X Holdings II, Inc[1] and, "solely for the purposes of <u>Sections 5.4</u>, <u>6.2(d)</u>, <u>6.3</u>, <u>6.8</u>, <u>6.10</u>, <u>6.11</u>, <u>6.12</u> and <u>9.9</u> (the '**Specified Provisions**'), Elon R. Musk (the '**Equity Investor**')."  *See* D.I. 16 at Ex. A, Request for Judicial Notice ("Ex. A") (emphasis in original).  The Specified Provisions relate solely to financing the merger and administrative aspects of closing the deal.  As relevant here, the Specified Provisions to which Musk agreed to be bound exclude Sections 9.10 and 6.9.

Section 9.10, "Consent to Jurisdiction," provides that "[e]ach of the parties hereto hereby expressly and irrevocably submits to the exclusive personal jurisdiction of the [state and federal courts of] Delaware in the event any dispute arises out of this Agreement or the transactions contemplated by this Agreement . . . ."  *Id.*, § 9.10.

---

[1] The Court may consider the Merger Agreement because it is incorporated by reference in the FAC and is a public record filed with the Securities and Exchange Commission of which the Court may take judicial notice.  F.R.E. 201(b)(2); *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.,* 844 F. Supp. 2d 519, 524 (D. Del. 2012) (In considering a Rule 12(b)(6) motion, a "court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference.").

Section 6.9, "Employee Benefits," relates to the payment of post-merger severance benefits and also contains a provision expressly excluding employees like Plaintiffs as third-party beneficiaries.  *Id.*, § 6.9.

**B.   Before the Merger Closes, Twitter Updates Its Employees Regarding the Pending Merger and Related Litigation Against Musk.**

According to Plaintiffs, April 2022 through mid-October 2022 was a "time of significant uncertainty" because Twitter was in active litigation with Musk regarding the Merger Agreement which had not yet closed.  (D.I. 10, ¶¶ 43, 59–60).  Plaintiffs explain that Twitter provided several updates to employees about the pending merger via email.  *Id.*, ¶¶ 39–42.

For example, Plaintiffs allege that Twitter told employees in April 2022 that "[t]he terms of the agreement specifically protect Tweep benefits, base salary, and bonus plans . . . so that they cannot be negatively impacted for at least one year from the closing date" (*Id.*, ¶ 39) and that "[i]n the event of a layoff, any employee whose job is impacted would be eligible for severance" but that "all unvested equity awards . . . would likely be forfeited" (*Id.*, ¶¶ 39–40, 85).  Plaintiffs also allege that Twitter told its employees in May 2022 that Twitter's severance policy in the event of layoff "was to provide . . . (1) two months base salary . . . (2) pro-rated performance bonuses . . . (3) the cash value of any RSUs that would have vested within three months of

separation, and (4) contribution for the continuation of healthcare coverage . . . ." *Id.* at ¶¶ 41, 94, 96.

The merger closed on October 27, 2022.  *Id.* at ¶ 61.  Musk had no control over Twitter until the "post-takeover period."  *Id.* at ¶ 109.

## IV.    ARGUMENT

### A.    Plaintiffs' Claims Against Musk Must Be Dismissed Under Rule 12(b)(2) for Lack of Personal Jurisdiction.

Plaintiffs allege that the Court has personal jurisdiction over Musk "because the Merger Agreement contains each of the Defendants' (or its predecessor's) express consent to jurisdiction." D.I. 10, ¶ 28.  In other words, Plaintiffs' sole basis for this Court's exercise of personal jurisdiction over Musk with respect to fourteen independent causes of action is the Consent to Jurisdiction Clause in Section 9.10 of the Merger Agreement—to which Plaintiffs are not a party and Musk is not a signatory.

Plaintiffs' contention fails for three primary reasons and the Court should dismiss all of Plaintiffs' claims against Musk under Rule 12(b)(2) for lack of jurisdiction.

#### 1.    <u>Musk Has Not Consented to This Court's Jurisdiction Under Section 9.10 of the Merger Agreement.</u>

Where, as here, a plaintiff alleges that a defendant has consented to a Court's exercise of personal jurisdiction, the Court need not engage in a traditional

jurisdictional analysis. *Bancorp Bank v. Blackburn*, 2014 WL 4100895, at *3 (D. Del. Aug. 20, 2014) ("Consent to personal jurisdiction renders unnecessary a traditional jurisdictional analysis."). Here, Musk agreed to be bound only by the Specified Provisions, which do not include the Consent to Jurisdiction provision in Section 9.10. *See* Ex. A; *see also Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4 (Del. Ch. May 14, 2009) (holding that Delaware has a "general policy of not extending the rights and obligations of contracts to parties that did not execute them").

Further, Section 9.10 only applies to "[e]ach of the parties hereto" (*i.e.*, the parties to the Merger Agreement), which does not include Plaintiffs. Ex. A. Plaintiffs nowhere allege that they are third-party beneficiaries to Section 9.10 for jurisdictional purposes or otherwise; nor could they. Thus, Plaintiffs have failed as a threshold matter to establish that Musk has consented to this Court's exercise of personal jurisdiction.

 2. <u>Musk Is Not a Signatory to Section 6.9 of the Merger Agreement.</u>

Even if Musk had consented to this Court's jurisdiction in Section 9.10, this consent extends only to claims based on the Specified Provisions to which Musk agreed to be bound. Plaintiffs' breach of contract claims under the Merger Agreement (Counts I–II) are based entirely on their ability to enforce, as third-party beneficiaries, the "Employee Benefits" provision in Section 6.9, which is not a Specified Provision to which Musk is bound. Therefore, Musk did not consent to this Court's exercise of jurisdiction over him with respect to these claims. *See*

6

*Bancorp*, 2014 WL 4100895, at *3 ("the fact that Defendant specifically consented to waive jurisdictional defenses with respect to this single type of action strongly suggests that he was at the same time reserving his right to object to personal jurisdiction in any other type of action"); *Bolt v. Kirley*, 2012 WL 5006262, at *3 (S.D.N.Y. Oct. 18, 2012) (under Delaware law, the capacity in which the individual defendant joined the merger agreement determines the scope of their consent to personal jurisdiction under its forum selection clause); *Ruggiero v. FuturaGene, plc.*, 948 A.2d 1124, 1132–33 (Del. Ch. 2008) (limiting an individual defendant's consent to personal jurisdiction under a forum selection clause to claims based on the "capacity" in which they signed the merger agreement; there, as a "selling stockholder," but not as an "officer or director").

### 3. Plaintiffs Allege No Grounds for this Court's Exercise of Personal Jurisdiction over Musk for Counts III–XIV.

Whether or not Musk has consented to jurisdiction under the Merger Agreement, Plaintiffs allege no independent grounds for this Court's exercise of personal jurisdiction over Musk for their remaining twelve non-merger-related claims (Counts III–XIV).[2]

---

[2] Plaintiffs not only fail to argue that Musk has sufficient minimum contacts with Delaware necessary for this Court's exercise of personal jurisdiction over him with respect to their 12 non-merger-related claims, but they allege instead that Musk is a "citizen of Texas residing in Boca Chica, Texas" and that "Musk's relevant activity occurred in California."  D.I. 10, ¶¶ 29, 311.

The court's reasoning in *Whirlpool Corp. v. Cabri*, 2022 WL 1421126, at *16 (D. Del. May 5, 2022), is instructive.  There, the court first determined that the forum selection clause did not cover certain claims against an individual defendant.  *Id*.  Then, the court dismissed those claims because plaintiff's "Complaint [was] devoid of any reference to contacts [Defendant] had with Delaware independent of the language of the 2018 Forum Selection Clause," and without other facts "alleged to support a finding of specific jurisdiction over [Defendant], the court must grant [Defendant]'s Motion to Dismiss for lack of personal jurisdiction." *Id*. at *16.

Similarly, in *Stratton v. iM3NY, LLC*, the court rejected the plaintiff's argument that federal statutory employment claims were within the scope of a forum selection clause in an "incentive agreement."  2023 WL 4456910, at *5 (D. Del. July 11, 2023) (report and recommendation adopted).  In doing so, the court observed that "a consent to jurisdiction in a particular forum only confers jurisdiction with respect to the scope of the consent." *Id*. at *3.  The court reasoned that personal jurisdiction should be assessed on a "claim by claim" basis, and the court should determine "whether [it] has personal jurisdiction over that defendant with respect to that claim." *Id*.

Because Plaintiffs neither allege nor establish any basis for the Court's exercise of personal jurisdiction over Musk concerning their non-merger-related

claims (Counts III–XIV), the Court should dismiss these claims for lack of jurisdiction under Rule 12(b)(2).

**B. Alternatively, Plaintiffs' Claims Against Musk Must Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.**

Under Rule 12(b)(6), a claim must be dismissed if a plaintiff fails to allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false[.]" *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 726 (D. Del. 2014). Here, even if accepted as true, Plaintiffs' allegations fail to state a claim against Musk.

1. The Court Should Dismiss Plaintiffs' Declaratory Judgment and Breach of Merger Agreement Claims Under Rule 12(b)(6) Because Neither Plaintiffs Nor Musk Are Parties to Section 6.9 of the Merger Agreement.

While Plaintiffs seek to recover severance benefits against Musk by alleging a breach of Section 6.9 of the Merger Agreement (Counts I–II), their claims fail from the outset because Section 6.9 is not a Specified Provision to which Musk agreed to be bound. *See Cato Capital LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 618 (D. Del. 2014), aff'd, 625 Fed. App'x. 108 (3d Cir. 2015) ("[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations

inconsistent with the contract language.").   Because Plaintiffs cannot state a claim against Musk for the alleged breach of a provision in the Merger Agreement to which he has not agreed to be bound, Counts I–II must be dismissed under Rule 12(b)(6).

Further, as explained in Twitter's concurrently-filed Brief in Support of Motion to Dismiss for Failure to State a Claim ("Twitter MTD") D.I. 15,[3] Plaintiffs are themselves not parties to the Merger Agreement and lack standing to enforce its terms as third-party beneficiaries.   To this end, Section 6.9(e) expressly precludes Plaintiffs from enforcing Section 6.9 as third-party beneficiaries.  Ex. A, § 6.9(e)(ii). Thus, Plaintiffs' standing issue is especially acute here considering they are seeking to enforce the Merger Agreement as non-parties under a provision to which they are expressly disclaimed as beneficiaries against Musk, who is a non-signatory to that provision.   For this additional reason, Plaintiffs fail to state a plausible claim for relief against Musk in Counts I–II and these claims must be dismissed.[4]

---

[3] Musk incorporates by reference as if fully set forth herein the arguments and authority on this point from Twitter's MTD, at IV. A. (establishing the legal and factual basis that Sections 6.9 and 9.7 of the Merger Agreement expressly exclude Plaintiffs as third-party beneficiaries).

[4] While Plaintiffs may argue the Court should pierce the corporate veil and hold Musk liable for Twitter's alleged conduct, they fail to assert or even address the key elements for piercing the corporate veil in the FAC.   As a threshold matter, they mistakenly allege that California law should apply to this analysis instead of Delaware law, but no matter which law applies, Plaintiffs fail to explain how respecting the corporate form would lead to an "injustice" or "inequitable" result, as is necessary to pierce the corporate veil under either states' law.  *See U.S. v. Boyce*, 38 F.Supp.3d 1135, 1155 (C.D. Cal. 2014) ("When determining whether a corporation is the alter ego of an individual, federal courts must apply the law of the

2.     The Court Should Dismiss Plaintiffs' Breach of Contract,
       Promissory Estoppel, and Breach of Offer Letter Claims Because
       Musk Did Not Control Twitter at the Time of Alleged Contract
       Formation or When the Promises Were Allegedly Made.

Plaintiffs' breach of contract and promissory estoppel claims must be

dismissed because all the pertinent allegations relate to conduct that occurred before

the merger closed and Musk took control of Twitter. "To state a valid claim for

breach of contract, a plaintiff must state when and how the defendant breached the

specific contractual promise." *Noakes v. Syracuse Univ.*, 369 F.Supp.3d 397, 418

(N.D.N.Y. Feb. 26, 2019); *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086

(9th Cir. 2020) ("as the party alleging the existence of a contract, [the plaintiff] has

the burden to prove each element of a valid contract").

Here, Plaintiffs have not and cannot plausibly allege that Musk was a party to

the alleged contracts entered into by Twitter before he controlled the company.  All

of Plaintiffs' allegations regarding contract formation allege only a contract between

Plaintiffs and Twitter—not Musk individually.  Plaintiffs allege that the FAQs

(referred to by Plaintiffs as the "Severance Policy Email") relayed an "offer" that

"Twitter . . . would . . . maintain current benefits in exchange for each employee's

_____

forum state"); *Trevino v. Merscorp, Inc.*, 583 F.Supp.2d 521, 528 (D. Del. 2008)
(under Delaware law, Plaintiffs must plausibly allege, among other things, that an
"overall element of injustice or unfairness is present"); *see Gerritsen v. Warner Bros.
Ent. Inc.*, 116 F.Supp.3d 1104, 1136 (C.D. Cal. 2015) (under California law,
plaintiffs must plausibly allege that an "inequitable result" would flow from
respecting the corporate form).

remaining employed at Twitter through the merger." D.I. 10, ¶ 326. But it is undisputed that Twitter communicated these FAQs to employees between April and October 24, 2022—before Musk controlled Twitter. D.I. 10, ¶¶ 108–09 ("On October 26, 2022, Musk took over as the owner of Twitter. According to public reports, Musk exercised near-total personal control over decision-making at Twitter in the immediate post-takeover period . . . .").

Likewise, Musk cannot be liable for an unspecified contract that Twitter allegedly made with its employees before Musk owned or controlled the company, and during a period in which he was in active litigation against Twitter. And, the FAC is bereft of any plausible allegation that Musk, in his individual capacity, could otherwise be liable for Twitter's purported breach of an alleged contract. *See Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 5994971, at *3 (Del. Ch. Nov. 13, 2018) (surveying caselaw nationwide; "[i]t is hornbook law that, ordinarily, only parties to a contract may be liable for breach of that contract."). Accordingly, this claim must be dismissed.

Plaintiffs' claim for promissory estoppel must be dismissed for the same reason: Plaintiffs allege that between April and October 24, 2022, "Twitter" made alleged promises about severance benefits payable in the event of termination of employment. *See* D.I. 10, ¶¶ 332–40. Again, it is undisputed that Musk did not control Twitter during that time. Plaintiffs cannot plausibly allege that promises

purportedly made by Twitter prior to the merger closing and before Plaintiffs claim that Musk obtained control on October 26, 2022 could be attributable to Musk. *See Sanchez v. Aurora Loan Servs., LLC*, 2014 WL 12589659, at *13 (C.D. Cal. Mar. 11, 2014) (observing that "it appears Sanchez's promissory estoppel claim against Nationstar will likely fail, as there are no allegations that Nationstar ever made or adopted such a promise. Rather, Sanchez alleges it was Aurora that promised him these things."). In addition, Plaintiffs' allegations regarding the alleged promises are too vague to support a promissory estoppel claim. *See Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F.Supp.2d 983, 997 (E.D. Cal. 2012) (holding that a promise—made by the defendant—which was "vague, general or of indeterminate application is not enforceable).[5]

Plaintiffs' breach of offer letter claim must likewise be dismissed. Specifically, Plaintiffs allege that they entered contracts with "Twitter" in their "offer letter(s)" between 2010 – 2013. Plaintiffs claim that "Twitter" did not provide them with "severance in accordance with its benefit plan" thus breaching these alleged contracts. D.I. 10, ¶¶ 341–52. Plaintiffs again fail to explain how Musk is liable for contracts to which he is not a party and that were allegedly entered before

---

[5] Musk incorporates by reference as if set forth fully herein the arguments and authority on this point in Twitter's MTD, at IV. B (explaining that Plaintiffs have failed to plausibly allege a promissory estoppel claim under California, Texas, or New York law because, *inter alia*, Plaintiffs do not allege a definite promise on which Plaintiffs reasonably relied).

Plaintiffs allege that he controlled Twitter.  Accordingly, Plaintiffs' breach of contract, promissory estoppel, and breach of offer letter claims must be dismissed pursuant to Rule 12(b)(6).[6]

> ### 3.   The Court Should Dismiss Plaintiffs' Fraud Claim (Count VI) Because Plaintiffs Fail to Plausibly Allege the Requisite Elements of Fraud Against Musk Under the Applicable Heightened Pleading Standard.

Plaintiffs fail to plead sufficient facts under Rule 9(b)'s heightened pleading standard, which requires them "to state with particularity the circumstances constituting fraud or mistake." *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 411 F.Supp.3d 316, 331 (D. Del. 2019), aff'd, 2021 WL 3503805 (3d Cir. Aug. 10, 2021).

Plaintiffs do not allege any facts demonstrating that (1) Musk performed any act or made any omission constituting fraud; (2) directed Twitter to do so; or (3) even had the power or authority to direct Twitter to do so.[7] *See* D.I. 10, ¶¶ 353-67.

---

[6] Additionally, Plaintiffs Hawkins and Killian voluntarily resigned their employment with Twitter and are therefore not entitled to severance benefits.  Accordingly, neither can plead any claims based on failure to pay severance benefits.  Musk incorporates by reference as if set forth fully herein the arguments and authority on this point in Twitter's MTD, at IV. B (establishing the legal and factual basis supporting dismissal under Rule 12(b)(6) for Hawkins's and Killian's breach of contract, promissory estoppel, and breach of offer letter claims).

[7] Plaintiffs must allege that *Musk* made a (1) false representation; (2) which *Musk* knew or believed was false; (3) that *Musk* intended to induce Plaintiffs to act or refrain from acting; (4) that Plaintiffs' action or forbearance was taken in justifiable reliance upon *Musk's* representation; and (5) that Plaintiffs were damaged as a result.

Plaintiffs' sole allegation as to Musk is a conclusory statement that he "intended Twitter to communicate [his] purported agreement to the Severance Stability Promise." D.I. 10, ¶ 356.[8] Even if this conclusory allegation is taken as true, Plaintiffs fail to allege any facts supporting the remaining elements of fraud as to Musk. Accordingly, Count VI should be dismissed under Rule 12(b)(6) on this basis.

Further, Plaintiffs' pleading failure is particularly problematic here because Musk cannot be liable for allegedly fraudulent statements that Twitter purportedly made to its employees before Musk owned or controlled the company and while he was in active litigation against Twitter. *See* D.I. 10, ¶ 362. Indeed, Plaintiffs claim that all of the allegedly fraudulent conduct in the FAC by "Twitter" took place before October 27, 2022 and therefore cannot be attributable to Musk. *See*, *e.g.*, *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (dismissing claims against defendants whose actions were not specifically identified and only generally connected to allegedly fraudulent parties). Accordingly, Count VI must

---

*MarkDutchCo 1 B.V.*, 411 F. Supp. 3d at 332. The elements for fraud are substantially the same under Delaware, California, New York, and Texas law.

[8] Plaintiffs' allegation that Musk had a "pre-existing intent to maintain an option to not pay the severance that Section 6.9(a) would otherwise require" also fails. D.I. 10 ¶ 365. Assuming that is true, Plaintiffs fail to plausibly allege how Musk can be liable for an allegedly fraudulent representation in a contractual provision to which he is not a party. *See* Ex. A.

be dismissed for failure to state a claim under Rule 12(b)(6) for this additional reason.

> 4. <u>Counts VII–XIV Should be Dismissed Because They Do Not Provide for Individual Liability or a Private Right of Action.</u>

Plaintiffs' Counts VII–XIV should be dismissed for failure to state a claim under Rule 12(b)(6) because the claims either do not provide for individual liability or a private right of action.

*<u>Federal, New York, and California WARN Acts (Counts VII, VIII, and IX)</u>*

The federal WARN Act provides generally that "an employer"—defined as a "business enterprise"—must provide 60 days' advance notice of "mass layoffs." 29 U.S.C. §§ 2102(a); 2101(a). Courts consistently hold that federal WARN Act claims against individuals, *even owners*, are not cognizable. *See*, *e.g.*, *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605, 608 (E.D.N.Y. 1991) (granting motion to dismiss on federal WARN Act claim as to individual defendant and holding that "'employer' does not include individual persons."); *Warshun v. New York Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013) (same).

The New York WARN Act likewise defines "employer" as a "business enterprise." N.Y. Lab. Law § 860 *et seq*. Courts routinely hold that it also does not provide for individual liability. *Gill v. ACACIA Network*, 2015 WL 1254774, at *3–4 (S.D.N.Y. Mar. 18, 2015) (dismissing with prejudice federal and New York

16

WARN Act claims against individual defendants because "neither the federal nor the New York WARN Acts allow for liability of individuals.").

The California WARN Act likewise does not provide for individual liability. *See*, *e.g.*, *Reynolds v. Direct Flow Med., Inc.*, 2019 WL 4168959, at *3 (N.D. Cal. Sept. 3, 2019) (upholding settlement agreement because plaintiff's "case presented significant risks . . . in establishing liability and obtaining recovery" on federal and California WARN Act claims against individual defendants because "[s]everal district courts [in the Ninth Circuit] have found that the federal WARN Act does not impose liability on individual employers, and Plaintiff has found no case imposing California WARN Act liability on an individual officer or director.").

Thus, the Court should dismiss Plaintiffs' state and federal WARN Act claims against Musk for failure to state a claim under Rule 12(b)(6).

### *Wage Theft Under the Texas Labor Code (Count X)*

Plaintiffs' Texas Labor Code claim must be dismissed because Chapter 61 of the Code does not provide for a private cause of action. *See Meba v. Sonic of Tex., Inc.*, 2020 WL 10934897 (S.D. Tex. June 12, 2020) (denying plaintiffs' motion to amend to add a claim under Tex. Lab. Code § 61.014). Rather, "[c]hapter 61 provides a detailed administrative enforcement scheme and allows the possibility for enforcement by the attorney general, and nothing in language of chapter 61 shows

any intent to also allow a private right of action." *Abatement Inc. v. Williams*, 324

S.W.3d 858, 864 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

### *California Family Rights Act (Count XIII)*

Plaintiffs fail to state a claim under CFRA because "[n]ot only does the

express language of the CFRA establish that a supervisor may not be held

individually liable, but also the only state court to have addressed the issue has held

that a supervisor may not be held individually liable." *Lewis v. Home Depot U.S.A.,*

*Inc.*, 2013 WL 843089, at *2 (N.D. Cal. Mar. 6, 2013); *see also Wong v. Thomson*

*Reuters (Markets) LLC*, 2011 WL 2912900, at *2–3 (N.D. Cal. July 20, 2011)

(dismissing claims against an individual defendant under the CFRA).   In short,

because CFRA does not provide for individual liability, the Court should dismiss

Count XIII against Musk for failure to state a claim.

### *California Fair Employment and Housing Act (Count XIV)*

Likewise, the California FEHA (Cal. Gov't Code §§ 12900 *et seq*.) does not

provide for individual liability and Count XIV against Musk should be dismissed for

failure to state a claim as a result.   *See Reno v. Baird*, 18 Cal.4th 640, 663 (1998)

("we conclude that individuals who do not themselves qualify as employers may not

be sued under the FEHA for alleged discriminatory acts."); *Peterson v. State of*

*California Dep't of Corr. & Rehab.*, 451 F.Supp.2d 1092, 1113 (E.D. Cal. 2006)

(dismissing with prejudice FEHA claims against individual defendants and holding

18

that "[m]anagerial and/or supervisory personnel cannot be individually or personally liable to an employee under FEHA."); *see also Shakur v. YRC Inc.*, 2022 WL 2167680, at *2 (C.D. Cal. Apr. 27, 2022) (granting individual defendants' motion to dismiss FEHA claims).

      5.    <u>Plaintiffs Remaining Claims (Counts X; XI; XIV) Should be Dismissed Because Plaintiffs have not Plausibly Alleged that Musk is Individually Liable or that He is Their "Employer."</u>

### *The Family and Medical Leave Act (Count XIV)*

To hold Musk individually liable under 29 U.S.C. § 2615(a)(1) of the FMLA, Plaintiffs must plead facts showing that Musk "act[ed] in the interest" of Twitter as Plaintiffs' employer and was personally involved in the denial of Plaintiffs' FMLA rights. Because Plaintiffs plead only that "Twitter" is their "employer" and that "Twitter . . . interfered" with their "rights under the FMLA, they have failed to plead a plausible right to relief against Musk and Count XIV should be dismissed as a result. *See*, *e.g.*, *Ross-Tiggett v. Reed Smith LLP*, 2016 WL 4491633, at *6 (D. N.J. Aug. 25, 2016) (holding that § 2615(a)(1) claim against individual defendant "must be dismissed for the simple reason that [the individual defendant] does not appear to have been involved in the alleged denial of Plaintiff's FMLA request.").

### *Wage Theft Under California and New York Law (Count X)*

Likewise, Plaintiffs' Wage Theft claim under California and New York law (Count X) should be dismissed for failure to state a claim under Rule 12(b)(6)

because they do not plausibly allege that Musk is their employer or that he otherwise participated in the alleged wrongdoing.   Instead, Plaintiffs' conclusory and unadorned allegation that "Plaintiffs may bring claims for wage theft . . . [against] Musk as an individual," is insufficient to plead a plausible claim against Musk in his individual capacity under applicable law.   D.I. 10, ¶ 419; *Plaksin v. NewSight Reality, Inc.*, 2019 WL 4316255 at \*4 (C.D. Cal., Apr. 30, 2019) (dismissing Cal. Labor Code claims against an individual defendant who plaintiff alleged was his "employer," because the "allegations pertain[ed] only to [his] role as a corporate officer," and included no "allegation of individual wrongdoing"); *Bravo v. Established Burger One, LLC*, 2013 WL 5549495, at \*7 (S.D.N.Y. Oct. 8, 2013) (granting individual defendants' motion to dismiss "wage theft" claims under New York Labor Law because Plaintiffs "allege[d] no specific facts," that the individual defendants were Plaintiffs' "employer").

### *Private Attorneys General Act (Count XI)*

Plaintiffs' attempt to assert a claim for penalties under the California Private Attorneys General Act likewise fails because this Count is derivative of Plaintiffs' underlying California Labor Code cause of action (Count X) which, as shown above, fails to state a claim against Musk individually.   *Turner v. LTF Club Mgmt. Co., LLC*, 2020 WL 4748374, at \*4 (E.D. Cal. Aug. 17, 2020) (dismissing Plaintiff's PAGA claim "[b]ecause these claims are derivative of [his] other Labor Code claims

and . . . each of his [other claims] lacks sufficient detail to survive a 12(b)(6) challenge").

## V.    CONCLUSION

For the foregoing reasons, Musk asks the Court to dismiss all of Plaintiffs' claims against him for lack of personal jurisdiction under Rule 12(b)(2) or alternatively for failure to state a claim under Rule 12(b)(6).

Dated: July 31, 2023                    MORGAN, LEWIS & BOCKIUS LLP

                                        */s/ Jody C. Barillare*
                                        Jody C. Barillare (#5107)
                                        1201 N. Market Street, Suite 2201
                                        Wilmington, Delaware 19801
                                        302-574-7294
                                        jody.barillare@morganlewis.com

                                        Eric Meckley (*pro hac vice*)
                                        One Market, Spear Street Tower
                                        San Francisco, CA 94105
                                        415-442-1000
                                        eric.meckley@morganlewis.com

                                        T. Cullen Wallace (*pro hac vice*)
                                        1000 Louisiana Street, Suite 4000
                                        Houston, TX 77002-5005
                                        713-890-5722
                                        cullen.wallace@morganlewis.com

                                        *Attorneys for Defendant Elon Musk*

## **CERTIFICATE OF WORD COUNT**

This brief contains _____ words, as counted by the word processing system

used to prepare this brief.

## **CERTIFICATE OF SERVICE**