# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>                Plaintiffs,<br><br>     v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. And ELON MUSK,<br><br>                Defendants. | C.A. No. 1:23-cv-00528 CFC |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO TWITTER & X HOLDINGS' MOTION TO DISMISS (D.I. 14)

Dated: August 21, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.    Summary of the Argument ................................................................1

II.   Statement of Facts ..........................................................................1

III.  Argument .......................................................................................2

   A.    Plaintiffs' Claims are Adequately Pled..........................................2

      1.    Plaintiffs' Breach of Merger Agreement Claim is Sufficiently Pled ......2

      2.    Plaintiffs' Other Breach of Contract Claims are Adequately Pled..........7

      3.    Plaintiffs' Promissory Estoppel Claims are Adequately Pled ................9

      4.    Plaintiffs Adequately Pled Defendants' Fraud (Which Defendants Confess They Committed) and the Claims Are Not Duplicative .........11

      5.    Plaintiffs Adequately Pled Their FEHA Claims, Which Should Not Be Stayed...............................................15

      6.    Killian and Hawkins Adequately Pled Constructive Discharge ..........15

IV.   CONCLUSION...........................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*,
No. N21C-12-175 MMJ ................................................................................ 15

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*,
No. CIV.A. 2822-CC, 2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ...... 4, 5, 6, 7

*Asmus v. Pac. Bell*,
999 P.2d 71 (Cal. 2000) ............................................................................. 8, 10

*Batt v. City of Oakland*,
No. C 02-04975 MHP, 2006 WL 1980401 (N.D. Cal. July 12,
2006) .......................................................................................................... 18

*BCD Assocs., LLC v. Crown Bank*,
No. CV N15C-11-062 EMD, 2022 WL 1316234 (Del. Super. Ct.
May 2, 2022), *aff'd*, 292 A.3d 759 (Del. 2023) ...................................... 6

*Brome v. California Highway Patrol*,
44 Cal. App. 5th 786 (Cal. App. 2020) ...................................................... 17

*Brooks v. Corecivic of Tennessee LLC*,
2020 WL 5294614 (S.D. Cal. Sept. 4, 2020) ............................................. 17

*Burge v. Fid. Bond & Mortg. Co.*,
648 A.2d 414 (Del. 1994) ........................................................................... 8

*Chinn v. China Nat. Aviation Corp.*,
138 Cal. App. 2d 98 (Cal. App. 1955) ..................................................... 9, 11

*CLP Toxicology, Inc. v. Casla Bio Holdings LLC*,
No. CV 2018-0783-PRW, 2020 WL 3564622 (Del. Ch. June 29,
2020) .......................................................................................................... 15

*Comrie v. Enterasys Networks, Inc.*,
No. CIV. A. 19254, 2004 WL 293337 (Del. Ch. Feb. 17, 2004) .................... 5

*Crispo v. Musk*,
No. 2022-0666-KSJM, 2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ......4, 5, 6, 7

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*,
68 N.Y.2d 954 (N.Y. 1986) ...................................................................14

*Dolan v. Altice USA, Inc.*,
No. CV 2018-0651-JRS, 2019 WL 2711280 (Del. Ch. June 27,
2019) .....................................................................................................4, 6

*Fenico v. City of Philadelphia*,
70 F. 4th 151 (3d Cir. 2023) ..................................................................3

*First Wheel Mgmt. Ltd. v. Inventist, Inc.*,
No. CV 17-1059 (MN), 2023 WL 4824856 (D. Del. July 27, 2023)..................3

*Flynn v. Wells Fargo Bank, N.A.*,
No. 219CV00116WBSKJN, 2019 WL 4077614 (E.D. Cal. Aug.
29, 2019) ...............................................................................................11

*Foley v. Interactive Data Corp.*,
47 Cal.3d 654 (Cal. 1988)......................................................................19

*Foran v. Ulthera, Inc.*,
No. 120CV00267DADBAM, 2022 WL 507271 (E.D. Cal. Feb. 18,
2022) .....................................................................................................14

*Fortis Advisors LLC v. Medicines Co.*,
2019 WL 7290945 (Del. Ch. Dec. 18, 2019)........................................4

*Franks v. City of Santa Ana*,
No. SACV1500108JVSDFMX, 2015 WL 13919158 (C.D. Cal.
July 27, 2015)........................................................................................19

*In re Frescati Shipping Co., Ltd.*,
718 F.3d 184 (3d Cir. 2013), *as twice amended* (June 6 & 28,
2013), *as amended on denial of reh'g and reh'g en banc* (July 12,
2013) .....................................................................................................5

*Garcia v. World Sav., FSB*,
107 Cal. Rptr. 3d 683 (Cal. App. 2010)..............................................10

*Gen. Dynamics Corp. v. Superior Ct.*,
    7 Cal. 4th 1164 (Cal. 1994).................................................................21

*Greenberg v. Meyreles*,
    155 A.D.3d 1001, 66 N.Y.S.3d 297 (2017).....................................15

*Guardian Const. Co. v. Tetra Tech Richardson, Inc.*,
    583 A.2d 1378 (Del. Super. Ct. 1990).................................................4

*Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*,
    No. SACV1501791JVSDFMX, 2016 WL 9045621 (C.D. Cal. Jan.
    28, 2016) ..........................................................................................15

*Kelly v. Georgia-Pac. Corp.*,
    46 Ohio St. 3d 134 (Ohio 1989) ......................................................12

*U.S. ex rel. Kester v. Novartis Pharms. Corp.*,
    23 F. Supp. 3d 242 (S.D.N.Y. 2014) ...............................................13

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003) ............................................................6

*Lidow v. Superior Ct.*,
    206 Cal. App. 4th 351 (Cal. App. 2012)...........................................16

*U.S. ex rel. Macias v. Pac. Health Corp.*,
    2016 WL 8722639 (C.D. Cal. Oct. 7, 2016)....................................22

*McFetters v. Amplicon, Inc.*,
    98 Cal. Rptr. 2d 63 (Ct. App. 2000) .................................................21

*Moncada v. W. Coast Quartz Corp.*,
    221 Cal. App. 4th 768 (Cal. App. 2013)............................9, 11, 12, 14

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries*,
    LLC, 812 F.3d 294 (3d Cir. 2016).....................................................13

*Ndubizu v. Drexel Univ.*,
    No. CIV.A. 07-3068, 2009 WL 3459182 (E.D. Pa. Oct. 26, 2009)...................11

*O'brien v. California Dep't of Corr. & Rehab.*,
    No. F078068, 2021 WL 1851485 (Cal. App. May 10, 2021) ...........19

*Oakwood Lab'ys LLC v. Thanoo*,
   999 F.3d 892 (3d Cir. 2021) ............................................................... 3

*Osberg v. Foot Locker, Inc.*,
   138 F. Supp. 3d 517 (S.D.N.Y. 2015), *aff'd*, 862 F.3d 198 (2d Cir.
   2017) ....................................................................................................... 9

*Pinero v. Specialty Rest. Grp.*,
   No. B157427, 2003 WL 1788669 (Cal. Ct. App. Apr. 4, 2003) ........ 18

*Ringelstein v. Renaissance Learning, Inc*.,
   2017 WL 7243352 (N.D. Cal. Feb. 22, 2017) .................................. 20

*Smith v. Brown-Forman Distillers Corp.*,
   196 Cal. App. 3d 503 (Cal. App. 1987) ........................................... 18

*Steinberg v. Unemployment Ins. Appeals Bd.*,
   87 Cal. App. 3d 582 (Cal. App. 1978) ............................................. 16

*Stewart v. Cendant Mobility Servs. Corp.*,
   267 Conn. 96 (Conn. 2003) ............................................................. 12

*Strong v. Cnty. of Santa Cruz*,
   15 Cal. 3d 720 (1975) ........................................................................ 8

*Suarez v. Del Toro*,
   No. 22-CV-0021-GPC-BLM, 2022 WL 4112230 (S.D. Cal. Sept.
   8, 2022) ............................................................................................. 19

*Tameny v. Atl. Richfield Co.*,
   27 Cal. 3d 167 (Cal. 1980) ............................................................... 18

T*urner v. Anheuser-Busch, Inc.*,
   7 Cal. 4th 1238 (1994) ..................................................................... 17

*In re UD Dissolution Corp.*,
   629 B.R. 11 (Bankr. D. Del. 2021) .................................................. 15

*Underwood v. Benefit Express Servs., LLC*,
   No. CV 18-347-RGA-MPT, 2018 WL 6819003 (D. Del. Dec. 28,
   2018) ......................................................................................... 4, 6, 11

*Vague v. Bank One Corp.*,
  850 A.2d 303 (Del. 2004) .................................................................................11

*Vasquez v. Franklin Mgmt. Real Est. Fund, Inc.*,
  222 Cal. App. 4th 819 (Cal. App. 2013) ...........................................................17

*Vogel v. Travelers Cas. Ins. Co. of Am.*,
  *No*. SACV1700612AGJDEX, 2017 WL 5642302 (C.D. Cal. May
  18, 2017) ...........................................................................................................14

*Ward v. Cadbury Schweppes Bottling Grp.*,
  No. CV0903279DMGCWX, 2011 WL 13213887 (C.D. Cal. May
  23, 2011) ...........................................................................................................18

*Wilmington Housing Authority, for Use of Simeone v. Fidelity &*
  *Deposit Co. of Maryland*,
  43 Del. 381 (1946) ......................................................................................4, 6, 7

*Winfield v. Eloxx Pharms., Inc.*,
  No. CV 19-447-RGA, 2020 WL 1333008 (D. Del. Mar. 23, 2020) .................15

*Woods v. DC-3 Ent. LLLP*,
  No. C05-02287 MJJ, 2006 WL 8443149 (N.D. Cal. Apr. 7, 2006) ..................13

*Young v. Buttigieg*,
  2021 WL 981305 (N.D. Cal. Mar. 16, 2021) ....................................................20

*Zepher v. Kaiser Found. Hosp.*,
  No. 2:14-CV-02540 JAM EF, 2015 WL 3442535 (E.D. Cal. May
  28, 2015) ...........................................................................................................19

**Statutes**

Cal. Bus. & Prof. Code §§17200, 17,500 ................................................................21

Cal. Code Regs. tit. 22 §1256-1(c), (d)....................................................................16

WARN Act...................................................................................................................3

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ................................................................16

Federal Rule of Civil Procedure 12(b)(6) ................................................................16

## I.   SUMMARY OF THE ARGUMENT

1.  §6.9(a) unambiguously provides a benefit "to" and "for" Plaintiffs, making them third-party beneficiaries, and Defendants' representations estop them from denying Plaintiffs' status as third-party beneficiaries.

2.  Plaintiffs adequately pled their remaining claims.

## II.   STATEMENT OF FACTS

On this motion, the relevant facts are those Plaintiffs alleged: Plaintiffs were long-time, well-performing Twitter employees. D.I. 10, ¶¶11-26. In April 2022, Twitter and X Holdings executed the Merger Agreement, which required X Holdings to provide Plaintiffs with certain severance – directly or through Twitter – if terminated within a year. *Id.*, ¶¶37-38; Declaration of Akiva Cohen ("Cohen"), Ex. 1, §6.9(a). Twitter specifically represented to its employees that the Merger Agreement protected severance and for a year after the merger – information X Holdings intended Twitter convey to employees. *Id.*, ¶¶39-42, 81, 83-100.

Twitter fired Plaintiffs soon after the merger: Froese, and Pytlarz in a first round of layoffs, Arnold and Schlaikjer in a second, and Hawkins and Killian via constructive discharge after Twitter insisted they engage in unethical and illegal conduct. *Id.*, ¶¶133, 148, 160-292. Consistent with their pre-existing plan to breach §6.9(a), Defendants refused to pay Plaintiffs the promised severance. *Id.*, ¶323.

And Defendants conducted the layoffs in a discriminatory fashion and without providing required WARN Act notice. *Id.*, ¶¶370-411, 470-544.

## III.   ARGUMENT

### A. Plaintiffs' Claims are Adequately Pled

To survive dismissal, Plaintiffs need only show that, accepting all well-pled allegations as true, drawing all reasonable inferences from those allegations, and viewing them in the light most favorable to Plaintiffs, their claims are plausible. *Fenico v. City of Philadelphia*, 70 F. 4th 151, 161 (3d Cir. 2023). The Court must "assume the veracity" of all reasonable inferences that can be drawn from the factual allegations and draw all such inferences in favor of Plaintiffs. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904, 913 (3d Cir. 2021) (court cannot "ask[] for direct proof … without permitting the discovery essential to uncovering the evidence").

### 1.   Plaintiffs' Breach of Merger Agreement Claim is Sufficiently Pled

Breach of contract is sufficiently pled where the complaint alleges a contract, breach, and damages. *First Wheel Mgmt. Ltd. v. Inventist, Inc.*, No. CV 17-1059 (MN), 2023 WL 4824856, at *2 (D. Del. July 27, 2023). Defendants concede Plaintiffs' complaint does so, and argue only that Plaintiffs lack standing to enforce the Merger Agreement. But Defendants do not deny §6.9 is clear that Twitter's "Continuing Employees" were intended recipients of a benefit expressly provided both "to" and "for" them. Cohen, Ex. 1, §6.9. Defendants argue only that

the "no third-party beneficiaries" ("No TPB") clauses negate that intent. That is not the law.

Under Delaware law, a third-party beneficiary's right to enforce the contract is a legal result of the parties' intentional conferral of a *benefit*, and does not require that the parties intend to confer a *right to enforce*. *See Wilmington Housing Authority, for Use of Simeone v. Fidelity & Deposit Co. of Maryland* ("*WHA*"), 43 Del. 381, 390 (1946). That is particularly true where only the third-party beneficiary could ever enforce the provision, *id.* at 394, such as when post-merger obligations are involved. *See Dolan v. Altice USA, Inc.*, No. CV 2018-0651-JRS, 2019 WL 2711280 (Del. Ch. June 27, 2019).

Thus, No TPB clauses are not mechanically enforced; they are interpretive aids when a contract is unclear about whether the parties intended to benefit a third party. *See, e.g., Crispo v. Musk*, No. 2022-0666-KSJM, 2022 WL 6693660, *5 (Del. Ch. Oct. 11, 2022) ("such clauses are not entitled to any special deference [… and] occasionally yield to other contrary language"); *Dolan*, at *8; *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, No. CIV.A. 2822-CC, 2008 WL 4182998, *5 (Del. Ch. Sept. 11, 2008). Thus, where there is some ambiguity about whether the contracting parties intended to benefit a third party – whether a shareholder, as in *Crispo*, a debtholder, as in *Fortis Advisors LLC v. Medicines Co.*, 2019 WL 7290945 (Del. Ch. Dec. 18, 2019), or a vendor, as in *Guardian Const. Co. v. Tetra*

*Tech Richardson, Inc.*, 583 A.2d 1378 (Del. Super. Ct. 1990) – a No TPB clause can confirm that the parties did not intend to do so, especially if customized. *Crispo*, 2022 WL 6693660, *4.

But none of that applies to cases like this, where the language *unambiguously* reveals an intent to benefit a particular third party. *Amirsaleh*, 2008 WL 4182998, *4 (disregarding customized clause "because the Agreement manifests an unambiguous intent to benefit" third-party).[1] Here, X Holdings specifically agreed to provide (or cause Twitter to provide) particular severance "***to each Continuing Employee whose employment is terminated***."  Cohen, Ex. 1, §6.9(a). There is no ambiguity; these benefits were provided "to" and "for" Plaintiffs and therefore Plaintiffs are third-party beneficiaries. *Comrie v. Enterasys Networks, Inc.*, No. CIV. A. 19254, 2004 WL 293337, *3 (Del. Ch. Feb. 17, 2004). *See also In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 199 (3d Cir. 2013), *as twice amended* (June 6 & 28, 2013), *as amended on denial of reh'g and reh'g en*

---

[1] While *Crispo* described the No TPB clause in *Amirsaleh* as "generalized," 2022 WL6693660, *7, likely because the Amirsaleh court described it as a "general provision" and truncated the relevant quote, 2008 WL 4182998, *5 and n.24, the full clause was actually "customized" (to use *Crispo*'s taxonomy): "***Except as provided in Section 6.13*** … this Agreement is not intended to, and does not, confer upon any Person other than the parties who are signatories hereto any rights or remedies hereunder. ***The parties hereto further agree that the rights of third party beneficiaries under Section 6.13 shall not arise unless and until the Effective Time occurs***"). *See* Cohen, Ex. 2, §9.8 (emphasis added).

4

banc (July 12, 2013) (nonsensical to deprive third-party of benefit of the promise); *BCD Assocs., LLC v. Crown Bank*, No. CV N15C-11-062 EMD, 2022 WL 1316234, *17 (Del. Super. Ct. May 2, 2022) ("contractually, factually and practically BCD is the intended third-party beneficiary"), *aff'd*, 292 A.3d 759 (Del. 2023).

The provisions Defendants cite do not contradict that intent. Neither clause disclaims the intent to *confer a benefit*, and merely declares that they do not confer *rights*. Cohen, Ex. 1, §§6.9(e), 9.7. But the Delaware test turns on whether the parties intend to confer a *benefit*; rights flow as a legal consequence of the intentional conferral of a benefit. *WHA*, 43 Del. at 394.[2] And §6.9(e) can be harmonized with §6.9(a) by reading it as providing that the employees are not third-party beneficiaries *of the Merger Agreement as a whole*. In other words, §6.9(e) makes clear that employees did not have standing to *enforce the merger* on the theory that they would benefit from §6.9(a), and that any rights under §6.9(a) could be enforced only after the merger closed.

Defendants do not mention *WHA*, *Amirsaleh*, or *Dolan*, despite Plaintiffs' prior briefing. Instead, Defendants argue *Crispo* found the No TPB clause was

---

[2] Defendants essentially ask the Court to apply the "more stringent" 'intent to confer *rights*' test that applies *only* to government contracts. *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003).

customized and therefore "bars claims by third-party beneficiary employees." D.I. 15 at 7. But *Crispo* addressed a claim by a third-party shareholder, not employees, and *specifically and expressly* turned on (1) Delaware's reluctance to find *stockholders in particular* are third-party beneficiaries, 2022 WL 6693660 at *3, and (2) Twitter's ability to itself enforce the agreement. *Id.* at *7. Neither factor is in play here. On the contrary, *Crispo* confirms that where nobody other than the third-party could enforce the provision, courts should find the third-party may do so. *Id.* ("*Amirsaleh* can also be praised for its practical approach to the law…"). *See also WHA*, 43 Del. at 394 ("[r]eal justice permits no other course"). Indeed the plaintiff stockholder in *Crispo* sought to enforce the transaction as a whole. Cohen, Ex. 3, ¶¶27-29. And here, Twitter *could not* enforce §6.9(a) in the event of breach, because to do so it would have to sue itself or its controlling parent corporation.

Defendants also point to Twitter's right to amend and even terminate particular benefit plans. D.I. 15, 7-8. But there is no contradiction there. The Merger Agreement allows Twitter to change its benefits, including by terminating particular plans, but prohibited Twitter from making benefits *worse* or severance "less favorable" for a year after the merger.[3] Cohen, Ex. 1, §6.9(a).  Under the Merger Agreement, Twitter's existing benefits and severance policy were a floor

---

[3] The obligation under §6.9(a) is for *X Holdings* to provide, or cause Twitter to provide, such benefits/severance. Cohen, Ex. 1, §6.9(a).

below which Twitter could not go. Because Twitter offered only "less favorable" severance, Plaintiffs have a breach of contract claim.

Finally, having represented to Plaintiffs that the Merger Agreement protected their severance, Defendants are equitably estopped from denying that here. *Strong v. Cnty. of Santa Cruz*, 15 Cal. 3d 720, 725 (1975). *See also Burge v. Fid. Bond & Mortg. Co.*, 648 A.2d 414, 420 (Del. 1994).

## 2. Plaintiffs' Other Breach of Contract Claims are Adequately Pled

Plaintiffs sufficiently pled their oral contract and breach of offer letter claims. Defendants argue that Twitter's written promises to its employees "cannot create obligations independent of [the Merger Agreement]," D.I. 15 at 11, but that is false. Twitter told employees the Merger Agreement "protected" their severance and they would receive *at least* a particular severance package as a result, D.I. 10, ¶¶34, 38-43, 83-99, *specifically* to get employees to stay pending the merger. *Id.*, ¶¶66-70, 100-101. If the Merger Agreement didn't already impose that obligation, Twitter's representation created it, either through offer-and-acceptance or promissory estoppel.[4] *See Asmus v. Pac. Bell*, 999 P.2d 71, 76 (Cal. 2000) (policies

---

[4] Defendants' argument the employees had no right to rely on or accept Twitter's description of the Merger Agreement's provisions or its offer to pay the promised severance because they could have 'read' the Merger Agreement is disingenuous at best. Any employee who attempted to parse the Merger Agreement would have found that §6.9(a) provided that protection. Employees had no duty to independently understand Defendants' (incorrect) view of the legal impact of a No

"may become … contracts when employees accept them by continuing their employment"); *Chinn v. China Nat. Aviation Corp.*, 138 Cal. App. 2d 98, 100 (Cal. App. 1955) (severance program is enforceable offer accepted by continuing employment). Indeed, the representation to the employees *did* create a new obligation. The Merger Agreement imposed obligations under §6.9(a) only on the "Parent" (X Holdings); Twitter's representations created obligations on Twitter.

An employer that tells employees it will provide bonuses if they stay through a specified date must follow through. *See*, *e.g.*, *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 776–77 (Cal. App. 2013) (promise to provide bonus enforceable). Defendants' argument that an employer that represents that it is contractually required to pay the same bonus is free to change its mind unless the referenced contract actually says what the employer claims is simply wrong; Twitter's *representations to its employees **about*** the Merger Agreement and its *offers to them* about what they would receive are separate from, and have different legal consequences than, the Merger Agreement itself.

Defendants also argue that the phrase "generally speaking" prevents Twitter's promise from being sufficiently definite. D.I. 15 at 11. But *at best* that is a fact question; as alleged in the Amended Complaint, the phrase "generally

---

TPB clause. *See*, *e.g.*, *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 555 (S.D.N.Y. 2015), *aff'd*, 862 F.3d 198 (2d Cir. 2017).

speaking" referred to some employees' entitlement to greater severance under the existing policy. D.I. 10, ¶42. In any event, Twitter's promise to employees that the Merger Agreement "protected" their severance for a year after the merger is enforceable *whatever* that prior policy was.

Defendants' argument that the severance is unenforceable because it could change, D.I. 15 at 11-12, likewise fails. Twitter promised that severance could not decrease from what was previously provided, and the employees are entitled to enforce that promised floor. The same applies to Plaintiffs' breach of offer letter claims; Plaintiffs alleged Twitter *did not* change its severance policy, D.I. 10, ¶351, rendering whether Twitter *could have* done so irrelevant. Indeed, California law prohibited Twitter from changing its severance policy without providing "reasonable notice," which it did not give. *Asmus*, 999 P.2d at 78. Instead, Twitter *breached* its severance policy, and thereby breached the offer letters.

3. Plaintiffs' Promissory Estoppel Claims are Adequately Pled

Promissory estoppel is properly pled when the plaintiff alleges the promisor made a promise that was expected to and did induce action or forbearance, to the promisee's detriment. *Garcia v. World Sav., FSB*, 107 Cal. Rptr. 3d 683, 696 (Cal. App. 2010). The promise need only be so definite to allow the determination of the scope of the duty and limits of performance. *Id.* The allegation that an employee "did not seek alternative employment…because of the promise" is sufficient to

9

establish detrimental reliance as a matter of California law.[5] *Moncada*, 221 Cal. App. 4th at 777. *Cf. Chinn*, 138 Cal. App. 2d at 100.

Defendants argue Plaintiffs' reliance on their employer's representations about the Merger Agreement was unreasonable. D.I. 15 at 14. But reasonable reliance "generally is a question of fact" *Vague v. Bank One Corp.*, 850 A.2d 303 (Del. 2004), and "not suitable for resolution on a motion to dismiss." *Underwood v. Benefit Express Servs., LLC*, No. CV 18-347-RGA-MPT, 2018 WL 6819003, at *4 (D. Del. Dec. 28, 2018). *See also Flynn v. Wells Fargo Bank, N.A.,* No. 219CV00116WBSKJN, 2019 WL 4077614, at *3 (E.D. Cal. Aug. 29, 2019) (same). That is particularly true where Defendants argue Twitter's employees should have independently understood the potential interplay between §6.9(a) and the No TPB clauses found 50-plus pages into a 73-page contract.

Defendants also argue Plaintiffs did not sufficiently allege they were harmed because they took action based on Twitter's representations. But multiple courts have held that refraining from looking for other work is sufficient to support promissory estoppel. *See*, *e.g.*, *Moncada*, 221 Cal. App. 4th at 779-780; *Ndubizu v. Drexel Univ.*, No. CIV.A. 07-3068, 2009 WL 3459182, at *4 (E.D. Pa. Oct. 26,

---

[5] The allegation of reliance is not conclusory; Plaintiffs alleged as that the representations impacted their decisions to remain at Twitter. D.I. 10, ¶¶45, 65, 103-107.

2009); *Kelly v. Georgia-Pac. Corp.*, 46 Ohio St. 3d 134, 140 (Ohio 1989). At the

pleading stage, no more is necessary.[6]

    4. <u>Plaintiffs Adequately Pled Defendants' Fraud (Which Defendants Confess
They Committed) and the Claims Are Not Duplicative</u>

        a. <u>Defendants argue they defrauded Plaintiffs</u>

Twitter represented that "the merger agreement provides ***special protection***

for Tweep compensation and benefits" including "***severance payments and***

***benefits that are no less favorable*** than … prior to the closing of the transaction."

Cohen, Ex. 4. Defendants now argue that the Merger Agreement did nothing of the

sort, and they never intended that it would. D.I. 15 at 8. Defendants further argue

that any commitment the employees might have thought Twitter was making was

"illusory." D.I. 15 at 12. Those arguments not only concede that the representations

were false — they *affirmatively rely on* their falsity.

---

[6] Defendants cite a case for the proposition that under Connecticut law (not
relevant here) foregoing the opportunity to seek other employment *cannot* be
detrimental reliance. D.I. 15 at 14 n. 4. Even as to Connecticut, Defendants are
wrong; that is a fact question. *See Stewart v. Cendant Mobility Servs. Corp.*, 267
Conn. 96, 114 (Conn. 2003) (forbearing sufficient where jury could find plaintiff
would likely have found another job had she looked). And as a matter of California
law, *Moncada* held such forbearance is sufficient. Because Defendants have not
cited any contrary law in any potentially relevant state as a basis to dismiss
Plaintiffs' claims, no further choice of law analysis is required.

b.  Plaintiffs properly pled their fraud claims

Unable to claim the representations were true, Defendants claim the allegations were not pled with particularity.  But to plead fraud with particularity, Plaintiffs need only allege "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries*, LLC, 812 F.3d 294, 307 (3d Cir. 2016) (cleaned up). Mental states may be alleged generally. *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 251 (S.D.N.Y. 2014). Plaintiffs did so here.

Twitter misrepresented to its employees that the Merger Agreement "specifically protect[ed]" employee compensation, and provided for specific severance benefits.[7] D.I. 10, ¶¶39-41, 84, 94 (who, what). These representations were made in a document published April 26, 2022, *id.,* ¶39, and repeated on other occasions. *Id.*, ¶41 (when). These misrepresentations were published through Twitter's internal channels. *Id.* (where, how).

Defendants argue, based on California case law, that Plaintiffs must *also* identify a human author of each statement. D.I. 15, 15-16. But the "statements here

---

[7] Twitter cannot argue it only said the Merger Agreement *contained* protections, but did not intend the 'protections' be *enforceable*. Twitter said the agreement *actually provided* protections. Indeed, Twitter's elision of that distinction in its communications with the employees would itself be actionable. *See, e.g.*, *Woods v. DC-3 Ent. LLLP*, No. C05-02287 MJJ, 2006 WL 8443149, at *3 (N.D. Cal. Apr. 7, 2006) (fraud claim for employer's failure to disclose).

come from a piece of paper…not a person." *Vogel v. Travelers Cas. Ins. Co. of Am., No*. SACV1700612AGJDEX, 2017 WL 5642302, at *2 (C.D. Cal. May 18, 2017). And Plaintiffs are not required to plead the identity of the authors because such facts are within Twitter's knowledge. *Foran v. Ulthera, Inc.*, No. 120CV00267DADBAM, 2022 WL 507271, at *11 (E.D. Cal. Feb. 18, 2022). False representations made to employees to entice them to remain at a company until a sale is consummated are adequate to support fraud claims. *See, e.g.*, *Moncada*, 221 Cal. App. 4th at 777.[8]

> c. <u>The fraud claims are not duplicative</u>

Fraud claims are not duplicative where a misrepresentation of present fact, including a promise made "with a preconceived and undisclosed intention of not performing," is collateral to the contract. *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (N.Y. 1986). The misrepresentations made to the employees were that the merger agreement provided them with "special protections," including specified severance. D.I. 10, ¶¶39-42. Defendants

---

[8] Defendants do not claim the fraud claims are insufficiently pled as to X Holdings. To the extent Defendants rely on their arguments of behalf of Twitter for X Holdings, they fail for the same reasons.

affirmatively argue that these statements misrepresented the very existence of the promised protections. *See, e.g.*, D.I. 15 at 8, 12-13.[9]

These false statements were intended to, and did, induce Plaintiffs to continue to perform their employment contracts while the merger was pending. D.I. 10, ¶¶43, 100. They are not duplicative of the contract claims. *See, e.g.*, *CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, No. CV 2018-0783-PRW, 2020 WL 3564622, at *18 (Del. Ch. June 29, 2020) (allegations focused on inducement are distinct from contract); *Greenberg v. Meyreles*, 155 A.D.3d 1001, 1003, 66 N.Y.S.3d 297, 299 (2017) (misrepresentations serving as inducement not duplicative); *Hosp. Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, No. SACV1501791JVSDFMX, 2016 WL 9045621, at *6 (C.D. Cal. Jan. 28, 2016) (simultaneous claims for failure to perform and false promise to perform "consistent with the approach in California courts").

In addition, Plaintiffs seek punitive damages unavailable for breach of contract, and the fraud claims are also nonduplicative for that reason. *See Winfield*

---

[9] At a minimum, the fraud claim should be permitted to continue in the alternative to the contract claims. *See, e.g., AmeriMark Interactive, LLC v. AmeriMark Holdings, LLC*, No. N21C-12-175 MMJ CCLD, 2022 WL 16642020, at *11 (Del. Super. Ct. Nov. 3, 2022); *In re UD Dissolution Corp.*, 629 B.R. 11, 35 (Bankr. D. Del. 2021).

*v. Eloxx Pharms., Inc.*, No. CV 19-447-RGA, 2020 WL 1333008, at \*4 (D. Del.

Mar. 23, 2020).

5. Plaintiffs Adequately Pled Their FEHA Claims, Which Should Not Be Stayed

Plaintiffs' adequately pled their FEHA claims, and those claims should not

be stayed in favor of actions still pending class certification in the Northern District

of California, for the reasons given in Plaintiffs' concurrently-filed Response to

Defendant Elon Musk's Motion to Dismiss Under Federal Rule of Civil Procedure

12(b)(2) and Alternative Motion to Dismiss Under Federal Rule of Civil Procedure

12(b)(6) ("Musk Response") Plaintiffs incorporate by reference as if set forth fully

herein the arguments and authority on this point in the Musk Response.

6. Killian and Hawkins Adequately Pled Constructive Discharge[10]

Defendants argue that Hawkins and Killian were not terminated and

therefore cannot recover even though they resigned only when faced with

intolerable working conditions. But California law[11] requires those resignations to

---

[10] After arguing in *Cornet* that employees who did not "click the button" resigned, Defendants acknowledge that Twitter in fact laid off Arnold and Schlaikjer, D.I. 15, at 3 ("Twitter Lays Off Arnold…and Schlaikjer…"), but later suggest that they nevertheless resigned. That is wrong as a matter of law. *See, e.g., Steinberg v. Unemployment Ins. Appeals Bd.*, 87 Cal. App. 3d 582, 585 (Cal. App. 1978); Cal. Code Regs. tit. 22 §1256-1(c), (d).

[11] Hawkins and Killian each live in California and worked for Twitter in California. D.I. 10, ¶¶17-20. Their constructive discharge claim is therefore governed by California law. *Lidow v. Superior Ct.*, 206 Cal. App. 4th 351, 364 (Cal. App. 2012)

be treated as terminations if Killian and Hawkins were constructively discharged. *Brome v. California Highway Patrol*, 44 Cal. App. 5th 786, 801 (Cal. App. 2020). And both Killian and Hawkins adequately pled that they were constructively discharged. As such, their claims cannot be dismissed.

An employee is constructively discharged under California law where they were subjected to working conditions so intolerable or aggravated at the time they resigned that a reasonable person in the employee's position would be compelled to resign. T*urner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994).[12] The question of whether the standard has been met is inherently fact-bound, and therefore "is not properly addressed at the pleadings stage as a matter of law." *Brooks v. Corecivic of Tennessee LLC*, 2020 WL 5294614, at *3, 5 (S.D. Cal. Sept. 4, 2020). *See also Vasquez v. Franklin Mgmt. Real Est. Fund, Inc.*, 222 Cal. App. 4th 819, 827 (Cal. App. 2013) ("Although situations may exist where the

---

(constructive discharge claim where CEO alleged he was forced to resign for complaining about unethical behavior).

[12] Defendants' citation of *Turner* for the proposition that the mere presence of illegal conduct in the workplace is insufficient hides from the Court that *Turner* was distinguishing the general presence of illegality (insufficient) from cases in which the employee was asked to *participate* in the illegal conduct (which would be sufficient). *Turner*, 7 Cal. 4th 1238, 1254 ("Turner was not requested, let alone required, to participate in any of the illegal conduct he complains of"). Killian and Hawkins each alleged they were required to participate in such conduct. *Turner* also highlighted the long passage of time between the conduct and Turner's decision to quit, which is a stark contrast to Plaintiffs' allegations here.

16

employee's decision to resign is unreasonable as a matter of law, whether conditions were so intolerable as to justify a reasonable employee's decision to resign is normally a question of fact") (cleaned up).

An employee who quits as a result of being required to engage in illegal or unethical conduct has been constructively discharged; "an employer's authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests." *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 178 (Cal. 1980). *See also Ward v. Cadbury Schweppes Bottling Grp.*, No. CV0903279DMGCWX, 2011 WL 13213887, *10 (C.D. Cal. May 23, 2011) (genuine issue of material fact on constructive discharge when employee was instructed to participate in unethical and dangerous conduct); *Batt v. City of Oakland*, No. C 02-04975 MHP, 2006 WL 1980401, *7 (N.D. Cal. July 12, 2006) (threats of retaliation if employee did not cover up illegal conduct were sufficient to support constructive discharge claim); *Pinero v. Specialty Rest. Grp.*, No. B157427, 2003 WL 1788669, *5 (Cal. Ct. App. Apr. 4, 2003) ("Pertinent questions include, whether the employer has requested or required participation in illegal conduct ... we must also ask whether the illegalities are close or remote in time to the employee's resignation"); *Smith v. Brown-Forman Distillers Corp.*, 196 Cal. App. 3d 503, 513 (Cal. App. 1987) (employee was constructively discharged when he resigned after employer asked him to engage in illegal conduct). California

17

courts consider that a matter of "[f]undamental principles of public policy." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 668 (Cal. 1988)

Similarly, "acts that 'threaten to derail an employee's career are objectively adverse.'" *O'brien v. California Dep't of Corr. & Rehab.*, No. F078068, 2021 WL 1851485, at *21 (Cal. App. May 10, 2021), *quoting Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1060 (Cal. 2005). The type of conduct that can support a constructive discharge claim is varied and broad. *See*, *e.g.*, *Suarez v. Del Toro*, No. 22-CV-0021-GPC-BLM, 2022 WL 4112230, at *13 (S.D. Cal. Sept. 8, 2022); *Zepher v. Kaiser Found. Hosp.*, No. 2:14-CV-02540 JAM EF, 2015 WL 3442535, at *4 (E.D. Cal. May 28, 2015); *Franks v. City of Santa Ana*, No. SACV1500108JVSDFMX, 2015 WL 13919158, at *2 (C.D. Cal. July 27, 2015).

Applying this standard, Killian and Hawkins more than sufficiently pled their claims for constructive discharge. Hawkins alleged that despite her intention to remain at Twitter throughout the post-close transition period, D.I. 10, ¶¶175, 213, the practices and policies that Musk expected at "Twitter 2.0" violated her professional ethical responsibilities so severely and would have had such disastrous ramifications for her ability to continue to work in her field – at Twitter or elsewhere – that she was forced to quit. *Id*, ¶¶214, 218-26. Twitter reassigned her core work from her and her team to others who did not have the experience or resources available to do the job, *id.*, ¶194 and forbade her from working with the

18

necessary personnel to get the job done, *id.*, ¶¶195-196, effectively preventing Hawkins from performing effectively in her role. California courts have found similar circumstances sufficient to allege constructive discharge. *See, e.g., Ringelstein v. Renaissance Learning, Inc.*, 2017 WL 7243352, at *1 (N.D. Cal. Feb. 22, 2017). *See also Young v. Buttigieg*, 2021 WL 981305, at *15 (N.D. Cal. Mar. 16, 2021) (blocking an employee from performing tasks that fell within her skillset supports claim of constructive discharge).

Worse, Twitter's decision to simply cease paying rent, breaching leases while remaining in possession of the property (and without paying the required termination fees), would have put Hawkins in an impossible position if she had remained. Communication with commercial landlords, real estate agents, and brokers was a key piece of her role, and Twitter left her with no good options: she could honestly tell them Twitter's plans and get fired; ignore them and degrade her own relationships and credibility; or worse, lie and torch her own reputation. Any of these choices would have placed her career in jeopardy. D.I. 10, ¶214. And Hawkins knew her job would have been at risk if she told the truth; Twitter had already fired an even higher-ranking executive for refusing to withhold the November RSU vest that represented a significant portion of her colleagues' wages. *Id.*, ¶¶187-190. More, Hawkins' ethics are not a personal idiosyncrasy; the official position of her field's professional organization is that members *must*

resign if faced with that choice. *Id.,* ¶¶166, 218. California courts agree that an employee tasked with unethical behavior is compelled to resign. *See Gen. Dynamics Corp. v. Superior Ct.*, 7 Cal. 4th 1164, 1189 (Cal. 1994) (employee has right to refuse to violate professional ethics); *McFetters v. Amplicon, Inc.*, 98 Cal. Rptr. 2d 63, 75 (Ct. App. 2000) (reversing lower court denial of constructive termination claim because "persuading customers [] that 'mutually agreed price' is the same as 'fair market value,' when the company has no intention of ever agreeing to a fair market value, is not a 'hard nosed bargaining technique,' it is a lie…The conduct attributed to Amplicon is not acceptable. It is sleazy and wrongful, and we are frankly shocked that the trial court could conclude otherwise"). Indeed, Twitter's intended conduct was illegal, Cal. Bus. & Prof. Code §§17200, 17,500, and Hawkins could have faced personal liability had she complied with Twitter's directives instead of resigning. *Id.*, §17095. Her constructive discharge claim is more than sufficiently pled.

Killian's claim is, if anything, more compelling. Like Hawkins, he was a loyal and dedicated employee, D.I. 10, ¶274, who stepped into his position post-transition ready to help transform the business according to Musk's expectations. *Id.*, ¶228. And like Hawkins, the intolerable work conditions overwhelmed his efforts to stay at the company he loved. He was ordered to participate in fraudulent and unfair business practices in ways that violated California law and placed him at

20

risk for personal liability, *id.,* ¶¶243-252 which is enough standing alone to support a constructive discharge claim. *See U.S. ex rel. Macias v. Pac. Health Corp.*, 2016 WL 8722639, at *8 (C.D. Cal. Oct. 7, 2016). But beyond that, Killian was also instructed directly by Musk's transition team to perform or authorize dangerous work in violation of California law. D.I. 10, ¶¶256-262, 275-280, 282-287. Like Hawkins, he left Twitter within days of the company's insistence that he participate in this illegal and unethical conduct. *Id.*, ¶¶290-292. Any suggestion the allegations fail to state a constructive discharge claim is frivolous.

## IV.   CONCLUSION

For the reasons set forth above, the Motions should be denied.

Respectfully submitted,

Dated: August 21, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

/s/ *Joseph L. Christensen*
Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer*