## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER, <br><br> Plaintiffs, <br><br> v. <br><br> X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. And ELON MUSK, <br><br> Defendants. | C.A. No. 1:23-cv-00528-CFC |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ELON MUSK'S MOTION TO DISMISS (D.I. 17)

Dated: August 21, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Plaintiffs*

## **<u>TABLE OF CONTENTS</u>**

I.     Summary of the Argument .................................................................................1

II.    Statement of Facts ...........................................................................................1

III.   Argument .........................................................................................................2

    A.    The Court has Personal Jurisdiction Over Musk .....................................2

    B.    Plaintiffs' Claims are Adequately Pled....................................................5

        1.    Plaintiffs' Contract Claims Are Sufficiently Pled Against Musk ...........5

        2.    Plaintiffs' Fraud Claims Are Adequately Pled as to Musk ....................6

        3.    Plaintiffs Adequately Pled Their FEHA Claims,
            Which Should Not Be Stayed.................................................................9

        4.    Musk Has Individual Liability for Plaintiffs' Wage Theft Claims .......15

        5.    Plaintiffs Adequately Pled Veil-Piercing .............................................16

IV.    CONCLUSION ..........................................................................................18

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Achal v. Gate Gourmet*,
    114 F.Supp.3d 781 (N.D. Cal. Jul. 14, 2015) ....................................................10

*Alch v. Superior Court*,
    122 Cal.App.4th 339 (Cal. App. 2004).............................................................12

*Arnold v. Soc'y for Sav. Bancorp, Inc.*,
    No. CIV. A. 12883, 1993 WL 526781 (Del. Ch. Dec. 17, 1993),
    *aff'd in relevant part*, *rev'd in part*, 650 A.2d 1270 (Del. 1994) ........................4

*C.f.*, *DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987) ..............................................................................8

*CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*,
    No. CIV.A.06C-01-236 JRS, 2008 WL 2586694 (Del. Super. Ct.
    June 6, 2008)........................................................................................................3

*Covell v. Heyman*,
    111 U.S. 176 (1884)..........................................................................................14

*Deutsch v. ZST Digital Networks, Inc.*,
    No. CV 8014-VCL, 2018 WL 3005822 (Del. Ch. June 14, 2018)......................4

*Espinoza v. Hepta Run, Inc.*,
    74 Cal. App. 5th 44 (Cal. App. 2022), *review denied* (Apr. 27,
    2022) ..................................................................................................................15

*Fenico v. City of Philadelphia*,
    70 F. 4th 151 (3d Cir. 2023) ...............................................................................5

*Fleet v. Bank of Am. N.A.*,
    229 Cal. App. 4th 1403 (Cal. App. 2014)............................................................8

*Gamble v. Kaiser Foundation Health Plan, Inc.*,
    348 F.Supp.3d 1003 (N.D. Cal. Dec. 18, 2018) ................................................13

*Hazout v. Tsang Mun Ting*,
  134 A.3d 274 (Del. 2016) ....................................................................................3

*Heyne v. Caruso*,
  69 F.3d 1475 (9th Cir. 1995) ..........................................................................11

*Kuhn Const., Inc. v. Diamond State Port Corp.*,
  990 A.2d 393 (Del. 2010) ...................................................................................3

*Lauter v. Rosenblatt*,
  No. CV1508481DDPKSX, 2018 WL 3854160 (C.D. Cal. Aug. 10,
  2018) ..........................................................................................................................7

*Lawler v. Montblanc N. Am., LLC*,
  704 F.3d 1235 (9th Cir. 2013) ........................................................................10

*Leal v. Masonry Servs., Inc.*,
  No. 12-CV-588 DLI VVP, 2013 WL 550668 (E.D.N.Y. Feb. 12,
  2013) ........................................................................................................................15

*Leek v. Cooper*,
  194 Cal.App.4th 399 (Cal. App. 2011)...........................................................9

*Next Level Ventures, LLC v. AVID USA Techs. LLC*,
  No. 2022-0699-MTZ, 2023 WL 3141054 (Del. Ch. Mar. 16, 2023) ..................4

*Oakwood Lab'ys LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021) ..............................................................................5

*Pasternack v. Lab'y Corp. of Am. Holdings*,
  27 N.Y.3d 817 (N.Y. 2016) ................................................................................7

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
  132 A.3d 35 (Del. Ch. 2015) .............................................................................7

*Salzberg v. Sciabacucchi*,
  227 A.3d 102 (Del. 2020) .................................................................................16

*Seviour-Iloff v. LaPaille*,
  80 Cal. App. 5th 427 (Cal. App. 2022), *as modified on denial of
  reh'g* (July 21, 2022) .........................................................................................15

iii

*SPay, Inc. v. Stack Media Inc.*,
    No. CV 2020-0540-JRS, 2021 WL 6053869 (Del. Ch. Dec. 21,
    2021) ....................................................................................................4

*Strifling v. Twitter, Inc.*,
    No. 22-cv-07739-JST (N.D. Cal) ........................................................14

*TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*,
    No. CV 09-1512 (JEB), 2011 WL 13267050 (D.D.C. Sept. 2,
    2011) ..................................................................................................16

*Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc.*,
    972 F.Supp. 1275 (C.D. Cal. 1997) ....................................................16

*Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*,
    650 S.W.3d 462 (Tex. 2022), *reh'g denied* (Sept. 2, 2022), *cert.
    denied*, 143 S. Ct. 2493 (2023) ............................................................7

*Usher v. White*,
    64 Cal. App. 5th 883 (Cal. App. 2021), *reh'g denied* (June 10,
    2021) ..................................................................................................15

*Valentine v. Nielsen*,
    2018 WL 4092133 (S.D. Cal. Aug. 28, 2018) .....................................13

*Vasey v. California Dance Co.*,
    70 Cal.App.3d 742 (Cal. 1977) ...........................................................17

*Washington v. Bayer Healthcare, LLC*,
    2012 WL 1079716 (D.N.J. Mar. 30, 2012) .........................................14

*Whitehead v. Pacifica Senior Living Mgmt. LLC*,
    No. 21-15035, 2022 WL 313844 (9th Cir. 2022) ................................10

*Winklevoss Cap. Fund, LLC v. Shrem*,
    351 F. Supp. 3d 710 (S.D.N.Y. 2019) ..................................................8

*YDRA, LLC v. Mitchell*,
    123 A.D.3d 1113 (2d Dep't 2014) ........................................................7

**Statutes and Rules**

10 *Del. C.* § 3104(c)(1) ..........................................................................4

10 *Del. C.* § 3114 ............................................................................1, 3, 4

Fed.R.Evid. 404(b) ................................................................................10

**Other Authorities**

Gregory S. Crespi, *Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85, 125 (2008) ................................................................................16

Rest. 2d. Torts § 533 ..............................................................................7

## I.   SUMMARY OF THE ARGUMENT

1.  The Court has personal jurisdiction over Musk because he consented to jurisdiction in the Merger Agreement,[1] under Section 3114 of the Delaware Code, and under the Delaware long-arm statute.

2.  Plaintiffs adequately pled their fraud and wage theft claims directly against Musk.

3.  Plaintiffs adequately pled their FEHA claim, which should not be stayed.

4.  Plaintiffs' remaining claims against Musk are viable because they adequately pled veil-piercing liability.

## II.   STATEMENT OF FACTS

For purposes of Musk's 12(b)(6) motion, the relevant facts are those alleged in the Amended Complaint. Plaintiffs were long-time, well-performing Twitter employees. D.I. 10, ¶¶11-26. In April 2022, Twitter and X Holdings executed the Merger Agreement, which required X Holdings to provide Plaintiffs with certain severance – directly or through Twitter – if they were terminated within a year after the merger. *Id.*, ¶¶37-38; Declaration of Akiva Cohen ("Cohen"), Ex. 1, §6.9(a). Twitter then specifically represented to its employees that the Merger Agreement protected their severance and prohibited Twitter from decreasing it for a year after

---

[1] Capitalized terms not defined herein have the meanings ascribed in the Amended Complaint.

1

the merger – information Musk and X Holdings intended Twitter to convey to its employees. *Id.*, ¶¶39-42, 81, 83-100. Musk and X Holdings, however, never intended to abide by §6.9(a). *Id.*, ¶¶110-135, 356-57.

In late 2022 and early 2023, Twitter fired Plaintiffs: Froese, and Pytlarz in a first round of layoffs, Arnold and Schlaikjer in a second round, and Hawkins and Killian via constructive discharge after Twitter insisted that they engage in unethical and illegal conduct. *Id.*, ¶¶133, 148, 160-292. Consistent with their pre-existing plan to breach §6.9(a), Defendants refused to pay the promised severance. *Id.*, ¶323. And Defendants conducted the layoffs in a discriminatory fashion and without providing required WARN Act notice. *Id.*, ¶¶370-411, 470-544. This action followed.

With respect to Musk's 12(b)(2) motion, the Court can consider facts beyond the pleadings, including Musk's personal approval of Twitter's communications at issue, a fact Plaintiffs learned only after filing the Amended Complaint.

## III.   ARGUMENT

### A. The Court has Personal Jurisdiction Over Musk

The Court has jurisdiction over Musk, for multiple reasons. First, "*each*" of the parties to the Merger Agreement consented to jurisdiction in Delaware for any dispute that "arises out of" the Merger Agreement *or* the merger itself. Cohen, Ex. 1, §9.10. Though Musk insists that he did not agree to §9.10, it recites that it is

binding on "[e]ach of the parties" to the Merger Agreement (a group that includes Musk) and *specifically* includes Musk's agreement to at least some of its terms: "… ***Equity Investor*** … agrees…" *Id.* The listing of the "specified provisions" as to which Musk signed thus refers only to the *substantive* obligations Musk took on,[2] rather than excluding §9.10. *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010) (court may not read provisions out of the contract).

Second, Musk incorporated his "X Holdings" entities in Delaware and served as their President. Cohen, Ex. 1 at 1, 74. Under 10 Del. C. §3114, he thereby consented to personal jurisdiction in Delaware for, *inter alia*, any suit against the X Holdings entities to which he is a proper party. 10 Del. C. § 3114. And when he became "Chief Twit" of Twitter he did the same with respect to any such suit against Twitter. *Id.* Musk is a proper party here "because the claims against him arise out of the same facts and occurrences as the claims against [the corporate defendants]—alleged wrongs [he] committed…as the company's President ..." *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 292 (Del. 2016). Nor is

---

[2] Musk argues his consent is irrelevant because he did not sign as to §6.9. But the consent to jurisdiction encompasses any claims arising out of the agreement or transaction, not just the specified provisions. Plaintiffs' claims incontrovertibly arise out of either the agreement or the transaction itself, given that the merger is what placed Twitter under Musk's control and thereby enabled his conduct at issue. *See CIT Commc'ns Fin. Corp. v. Level 3 Commc'ns, LLC*, No. CIV.A.06C-01-236 JRS, 2008 WL 2586694, *5 (Del. Super. Ct. June 6, 2008) ("arises out of" language is broad).

there any due process concern with applying §3114 in these circumstances. *Id. See also Next Level Ventures, LLC v. AVID USA Techs. LLC*, No. 2022-0699-MTZ, 2023 WL 3141054, *22 (Del. Ch. Mar. 16, 2023) (citing *Hazout* and collecting cases); *Deutsch v. ZST Digital Networks, Inc.*, No. CV 8014-VCL, 2018 WL 3005822, *12 (Del. Ch. June 14, 2018) (it "is not a close call").

Similarly, Delaware's long-arm statute provides an independent basis for personal jurisdiction over Musk for claims arising out of his transaction of business in Delaware. 10 Del. C. §3104(c)(1). Counts 1-2 and 6 of the Amended Complaint arise out of Musk's incorporation of a Delaware special purpose entity to merge with the Delaware corporation he intended to acquire, the contract governing that transaction, and Musk's conduct and communications relating thereto. That is more than sufficient to confer jurisdiction under the long-arm statute. *Arnold v. Soc'y for Sav. Bancorp, Inc.*, No. CIV. A. 12883, 1993 WL 526781, *3 (Del. Ch. Dec. 17, 1993), *aff'd in relevant part*, *rev'd in part*, 650 A.2d 1270 (Del. 1994). The Court has jurisdiction.[3]

---

[3] Musk attempts to distinguish between claims relating to the Merger Agreement and other claims. But once the Court has personal jurisdiction over Musk on *any* claims, it may exercise jurisdiction over him on *all* of the claims because they are sufficiently related as a factual matter. *SPay, Inc. v. Stack Media Inc.*, No. CV 2020-0540-JRS, 2021 WL 6053869, at *5 (Del. Ch. Dec. 21, 2021). Such an exercise of discretion would be particularly appropriate where the same claims are before the Court against other defendants. In any event, each of the claims is subject to jurisdiction under §3114.

**B. Plaintiffs' Claims are Adequately Pled**

Musk's 12(b)(6) arguments fare no better than his 12(b)(2) motion. To survive dismissal, Plaintiffs need only show that, accepting all well-pled allegations as true and viewing them in the light most favorable to Plaintiffs, their claims have facial plausibility. *Fenico v. City of Philadelphia*, 70 F. 4th 151, 161 (3d Cir. 2023). In assessing whether the claims are adequately pled, the Court must "assume the veracity" of all reasonable inferences that can be drawn from the factual allegations and draw all such inferences in favor of Plaintiffs. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904, 913 (3d Cir. 2021) (reversing dismissal where district court "asked for direct proof … without permitting the discovery essential to uncovering the evidence"). Plaintiffs have more met that burden as to each claim.

1. Plaintiffs' Contract Claims Are Sufficiently Pled Against Musk

Musk argues he cannot be liable for breach of the Merger Agreement because he was not a party to §6.9 of the Merger Agreement. D.I. 18, 9-10. And Musk argues that he cannot be liable based on the promises made by Twitter to its employees during the pendency of the merger, because he did not control Twitter at the time of contract formation or when the promises were made. D.I. 18, 11-14. Plaintiffs' claims against Musk personally are based on veil-piercing, which is addressed *infra*. To the extent that Musk argues that he is also not liable by incorporating by reference arguments made within Twitter's brief in support of its

5

Motion to Dismiss for Failure to State a Claim, D.I. 15, Plaintiffs respectfully incorporate by reference herein their corresponding arguments in the concurrently-filed Brief in Response to Twitter's Motion to Dismiss for Failure to State a Claim (the "Twitter Response").

2. <u>Plaintiffs' Fraud Claims Are Adequately Pled as to Musk</u>[4]

When he signed the merger agreement on behalf of X Holdings I on April 25, 2022, Musk represented that X Holdings intended to provide the promised severance.[5] D.I. 10, ¶35. Musk intended that commitment be communicated to the employees,[6] and in fact approved the communications that conveyed this message to the employees, both in his individual capacity and on behalf of X Holdings I. D.I. 10, ¶ 356.[7] He did so intending Plaintiffs to rely on those communications and

---

[4] Plaintiffs incorporate by reference the arguments on the adequacy of the fraud claims made in the Twitter Response.

[5] Defendants do not explicitly argue, either in this brief or in D.I. 15, that Plaintiffs inadequately plead fraud by X Holdings. They should not be permitted to rely on their arguments made on behalf of Musk, in his personal capacity, to contest claims made on against X Holdings. However, it is worth noting Defendants' perhaps unintentional conflation of Musk and X Holdings as further illustrating the challenge of distinguishing Musk from his various enterprises.

[6] That allegation is anything but conclusory. As Plaintiffs alleged, from the Merger Agreement's parties' perspective, the purpose of §6.9(a) was to aid in employee retention. *See, e.g.,* D.I. 10, ¶¶ 68-76. That *required* §6.9(a)'s existence be conveyed to the employees.

[7] If necessary, Plaintiffs will amend to specifically allege the communications were personally approved by Musk, both on his own behalf and on behalf of X Holdings.

remain at Twitter through the pendency of the merger. D.I. 10, ¶¶357. And, when he signed the agreement and subsequently approved Twitter's representations made to the employees, he in fact had every intent of disregarding his promises. D.I. 10, ¶¶359-365.

Contrary to Musk's footnoted argument, D.I. 18 n. 8, an officer of a corporation can be held individually liable for fraudulent statements or knowing misrepresentations made in his representative capacity. *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 479 (Tex. 2022), *reh'g denied* (Sept. 2, 2022), *cert. denied*, 143 S. Ct. 2493 (2023); *Lauter v. Rosenblatt*, No. CV1508481DDPKSX, 2018 WL 3854160, at *4 (C.D. Cal. Aug. 10, 2018); *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015); *YDRA, LLC v. Mitchell*, 123 A.D.3d 1113, 1114 (2d Dep't 2014). Materially false statements to third parties give rise to fraud liability "so long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it," *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 828 (N.Y. 2016), which Plaintiffs alleged here. D.I. 10, ¶¶81, 356-58. *See also* Rest. 2d. Torts § 533 (liability exists where third party justifiably relies on misrepresentation made

to another if "the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other").[8]

As noted in the Twitter Response, Defendants argue that the Merger Agreement provided employees with no protections at all, much less special protections. Twitter's statements to its employees that the Merger Agreement did provide special protections, which Musk and X Holdings intended that Twitter convey to the employees and approved, were false. These are statements that were specifically made by Musk and X Holdings. *C.f.*, *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1249 (2d Cir. 1987). That is sufficient.[9]

The fraud claims are also supported by Musk and X Holdings' statements that they would abide by the terms of the Merger Agreement, made when they signed that agreement. It is also well-established that "statements of intent to do something in the future, made with the knowledge that the acts will not in fact be performed or with the present intention not to perform them," will support a fraud claim. *Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 718 (S.D.N.Y. 2019) (quotation omitted); *see also*, *Fleet v. Bank of Am. N.A.*, 229 Cal. App. 4th

---

[8] Neither Twitter nor Musk argued that Plaintiffs did not sufficiently plead reliance for purposes of the fraud claim. In any event, Plaintiffs have adequately pled reliance for the reasons stated in the Twitter Response.

[9] Musk's argument that he cannot be held liable for statements made before he owned or controlled the company misses the point. Musk is liable for *his own* false statements, which he used Twitter to convey.

1403, 1411 (Cal. App. 2014). Here, Plaintiffs pled sufficient facts to plausibly allege Musk and X Holdings had no intention of keeping the promise when they made it: that Musk has a standing policy of not paying bills, does not view legal obligations as sufficient reason to pay, and instituted this policy at Twitter immediately after taking over the company. D.I. 10, ¶¶7, 208-11, 236-45, 360-363. Plaintiffs also pled Musk began breaching his and X Holdings' obligations under the Merger Agreement immediately after taking over the company. *Id.*, ¶¶112-119. Plaintiffs' allegations are plausible; whether they are correct is a fact issue to be addressed in discovery.

3.  Plaintiffs Adequately Pled Their FEHA Claims, Which Should Not Be Stayed

    a.  Musk's motion should be denied

Musk's argument that FEHA does not provide for individual liability is misplaced. FEHA claims are subject to alter ego liability. *See Leek v. Cooper*, 194 Cal.App.4th 399, 412 (Cal. App. 2011). While an alter ego does not become the employer for FEHA purposes, the alter ego may nevertheless be liable for the damages flowing from the employer's actions. *Id.* And, as discussed below, Plaintiffs' veil-piercing claims are well-pled.

    b.  The claims are adequately pled

To meet the *Twombly/Iqbal* standard for raising a claim under FEHA, Plaintiffs must allege: (1) they were a member of a protected class; (2) performing

9

competently in the position held; (3) suffered an adverse employment action, such as a termination; and (4) some other circumstance to suggest a discriminatory motive. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013). The discriminatory motive may be shown by circumstantial evidence of discrimination. *Achal v. Gate Gourmet*, 114 F.Supp.3d 781, 801 (N.D. Cal. Jul. 14, 2015) ("Applying California law, the Ninth Circuit has held that a mere comment suggesting the existence of bias can be direct evidence of discriminatory animus.") At the motion to dismiss stage, all a plaintiff must do is allege some facts supporting the inference that their termination was because of their religion, race, or gender. *See Whitehead v. Pacifica Senior Living Mgmt. LLC*, No. 21-15035, 2022 WL 313844 at *2 (9th Cir. 2022).

Defendants argue that the First Amended Complaint "lacks any substantive factual allegations that Plaintiffs suffered adverse employment actions because of a discriminatory intent or animus." D.I. 15, at 18. Defendants claim all of Plaintiffs' factual allegations relate to the conduct of Defendant Musk specifically and the actions of other Musk-empire companies like Tesla and SpaceX rather than Twitter itself. But evidence of other crimes, wrongs, or acts is admissible to prove motive or intent. See Fed.R.Evid. 404(b). "[C]onduct tending to demonstrate hostility towards a certain group is both relevant and admissible where the employer's general hostility towards that group is the true reason behind firing an employee

10

who is a member of that group." *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995). Accordingly, Musk's history of discrimination against employees in Plaintiffs' protected categories is sufficient to plead a discriminatory motive in their termination. In contrast to a single comment, Plaintiffs identified multiple overt discriminatory comments by Elon Musk as CEO and direct head of Twitter's operations. D.I. 10, ¶¶477-485, 488-519.

More, Plaintiffs Pytlarz and Arnold pled discrimination under FEHA based on the "documented histories of discrimination in employment" at Musk companies SpaceX and Tesla, D.I. 10, ¶127. Plaintiffs alleged that Musk, as the CEO of Tesla, has an outsize influence on the corporate culture of Tesla, *id.*, ¶¶490-493, as CEO of SpaceX has an outsize influence on its culture, *id.*, ¶¶495-497, and that Tesla and SpaceX employees were involved in making termination decisions at Twitter. *Id.,* ¶¶125-126, 152.[10] Both SpaceX and Tesla have demonstrable histories of discrimination based on protected categories. *Id.*, ¶¶497-514. Following Musk's acquisition of Twitter, he created a hand-picked "transition team" to execute his orders, selected from his close group of "yes-men" from Tesla and SpaceX.  D.I. 10, ¶125-130. Contrary to Defendants' assertions that Tesla and SpaceX are irrelevant, the management style and decisions Musk employed at

---

[10] In the words of multiple authors, "Tesla is Elon. And Elon is Tesla" and "SpaceX is Elon and Elon is SpaceX." D.I. 10, ¶¶493, 496.

those companies, where he demonstrated his domineering, hands-on approach to the day-to-day affairs of the businesses, provides necessary context and demonstrates the discriminatory pattern alleged by Plaintiffs. *See Alch v. Superior Court*, 122 Cal.App.4th 339, 379 (Cal. App. 2004) (FEHA claims may be predicated on a pattern or practice standard). Musk's pattern of conduct should be relevant to judging his actions at Twitter based on his historical actions at Tesla and SpaceX. D.I. 10, ¶¶ 521-522. And Plaintiffs further alleged that Twitter expressly refused to take steps to prevent discrimination, such as doing the disparate impact analysis that would have been required to identify discriminatory effects in the termination process. *Id.*, ¶425.

Plaintiff Pytlarz is an Asian woman *id.*, ¶524, Plaintiff Arnold is a bisexual man over the age of 40, and Twitter was aware of these facts. *Id.*, ¶¶ 525-527. Plaintiffs alleged that the reasons for terminating Plaintiffs Pytlarz and Arnold were pretextual and sought to hide discriminatory motives akin to those on display at SpaceX and Tesla. *Id.*, ¶¶529-533.

Though Defendants suggest there must be direct comments by "Twitter decisionmakers" regarding the reason for terminating Plaintiff Pytlarz or Plaintiff Arnold, this is not the standard. Allegations that an employer maintains a "system" or generalized policy for decisions about "training, performance reviews, discipline, assignments, pay, classifications, transfer, retention, and promotion"

12

that are "arbitrary, subjective, retaliatory, lacking in non-discriminatory processes" or which have a "disparate impact" on a suspect class are well-pled. *See Gamble v. Kaiser Foundation Health Plan, Inc.*, 348 F.Supp.3d 1003, 1014 (N.D. Cal. Dec. 18, 2018).

To the extent that Defendants argue that Plaintiffs did not plead any facts that Plaintiffs Arnold or Pytlarz suffered a sufficient adverse change in terms or conditions of employment, *see Valentine v. Nielsen*, 2018 WL 4092133 at *4 (S.D. Cal. Aug. 28, 2018), Paragraphs 530-544 of the First Amended Complaint are more than sufficient. Defendants also wrongly claim that Arnold admits he voluntarily resigned (untrue, *see* D.I. 10, ¶¶148, 538-539) and wrongly deny that Twitter decision makers even knew about Arnold's sexuality (untrue; see FAC ¶¶ 526-527).

By any metric, Plaintiffs have pleaded sufficient facts to state a claim for a violation of FEHA by defendants.

　　　c.　The FEHA claims should not be stayed

Defendants argue Plaintiffs' FEHA claims should be stayed pending the outcome of certain class action suits in the Northern District of California, citing *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1998). But in that case, the Third Circuit held that that it was not error for the district court to refuse to stay its Title VII ruling pending the outcome of other, previously-filed litigation. *Id.* at 971. This

13

is because such forbearance is discretionary. *See Covell v. Heyman*, 111 U.S. 176, 182 (1884).

Here, there is no basis for a stay of these individual Plaintiffs' claims given that no class has been certified in *Strifling v. Twitter, Inc.*, No. 22-cv-07739-JST (N.D. Cal), such that there is no basis to argue that Plaintiffs' specific discrimination claims are the subject of a prior-filed suit in the first instance. More, *Strifling* deals only with sex and age discrimination claims, whereas Plaintiffs allege discrimination based on race, parental status, and sexual orientation. D.I. 10, ¶¶523-543. There is no basis to stay proceedings here pending the outcome of litigation that will not address even half of the bases for the FEHA claims presented in this case.

In any event, the so-called "first-to-file" rule should not be applied where the second-filed case shows a greater development of the issues. *See Washington v. Bayer Healthcare, LLC*, 2012 WL 1079716 at *3 (D.N.J. Mar. 30, 2012). The First Amended Complaint in this case is far more developed than the class action suit in *Strifling*. Indeed, the initial complaint in *Strifling* was dismissed and Defendants are currently seeking to strike the amended complaint filed in *Strifling*; no class has been certified. Cohen, ¶ 6.

14

4. <u>Musk Has Individual Liability for Plaintiffs' Wage Theft Claims</u>[11]

Plaintiffs' amended complaint adequately alleges Musk's personal liability on their California wage theft claim. "[T]o be … liable under section 558.1, an 'owner' … must either have been personally involved in the purported violation … or … had sufficient participation in the activities of the employer … that the 'owner' may be deemed to have contributed to, and thus … 'cause[d]' … a violation." *Usher v. White*, 64 Cal. App. 5th 883, 896–97 (Cal. App. 2021), *reh'g denied* (June 10, 2021). The owner need only "have had some oversight of…operations or…influence on corporate policy that resulted in…violations." *Espinoza v. Hepta Run, Inc.*, 74 Cal. App. 5th 44, 59 (Cal. App. 2022), *review denied* (Apr. 27, 2022). Indeed, courts have no discretion to excuse such an owner from liability. *Seviour-Iloff v. LaPaille*, 80 Cal. App. 5th 427, 444 (Cal. App. 2022), *as modified on denial of reh'g* (July 21, 2022). To the extent Musk relies on earlier federal cases predicting California courts would not so-construe the statute, those predictions were wrong; the Court must apply California law as interpreted by California's courts. New York labor law likewise imposes individual liability where the individual "had the power to hire and terminate employees, control work schedules and conditions of employment, and set wages." *Leal v. Masonry Servs.,*

---

[11] On review, Defendants are correct regarding the Texas wage theft claim and Plaintiffs do not oppose its dismissal.

15

*Inc.*, No. 12-CV-588 DLI VVP, 2013 WL 550668, at *3 (E.D.N.Y. Feb. 12, 2013).

Plaintiffs have more than adequately pled both that Musk exercised general and

pervasive control over Twitter's operations, D.I. 10, ¶¶294-304, and that the

particular non-payment policies were adopted at Musk's direction. *Id.*, ¶¶7. Thus,

Plaintiffs have adequately pled a theory of individual liability for Musk.

5.  <u>Plaintiffs Adequately Pled Veil-Piercing</u>

Plaintiffs' sufficiently pled their claim that Musk is personally liable for the

corporate defendants' other liabilities (including for WARN Act violations) via

piercing. There is no significant conflict between Delaware and California piercing

law. *See Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc.*, 972 F.Supp.

1275, 1291 (C.D. Cal. 1997), *citing Harco Nat'l Ins. Co. v. Green Farms, Inc.*,

1989 WL 110537, *4 (Del. Chanc. 1989). But Defendants' single-cite-based

contention that the Court must simply apply the law of the forum state is wrong.

*See*, *e.g.*, *TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc.*, No. CV 09-1512

(JEB), 2011 WL 13267050, at *4 (D.D.C. Sept. 2, 2011) (collecting cases and

engaging in a conflict-of-laws analysis). Plaintiffs are not shareholders and the

claims do not involve the corporation's internal affairs; as such, the Court should

apply the "most significant relationship" test to determine which state has the

stronger interest in applying its veil-piercing law to the conduct at issue. *See*

*Salzberg v. Sciabacucchi*, 227 A.3d 102, 131-34 (Del. 2020). *See also* Crespi,

16

*Choice of Law in Veil-Piercing Litigation: Why Courts Should Discard the Internal Affairs Rule and Embrace General Choice-of-Law Principles*, 64 N.Y.U. Ann. Surv. Am. L. 85, 125 (2008). Because the alleged conduct occurred in California, where Twitter is headquartered, California has the strongest interest in ensuring that dominant shareholders do not abuse the corporate form to insulate that conduct from liability, and to the extent there is any conflict, the Court should apply California law.

Under California law, Plaintiffs need only allege facts to show a unity of interest and ownership, and an unjust result if a corporation is treated as the sole actor. *See Vasey v. California Dance Co.*, 70 Cal.App.3d 742, 749 (Cal. 1977). Here, Plaintiffs alleged that Musk, through X Holdings I and its successors, owns more than 50% of Twitter (and its successors) and dominates Twitter's decision-making and operations. D.I. 10, ¶¶294-304. Plaintiffs also alleged Musk intermingled his companies' assets, treating them as one and the same – and as extensions of himself – despite their ostensibly separate corporate existences. *Id.*, ¶¶305-306.

Plaintiffs have also sufficiently alleged it would be inequitable to allow Musk to use the corporate form to escape liability. By intermingling his corporate assets in the alleged conduct without formally having Twitter contract with the employees of his other companies, Musk has created a situation where – absent

17

claims against Musk himself – the corporate defendants could argue the discriminatory or other wrongful activity was engaged in by Tesla, Space X, or Boring Company employees working as *Musk's* agents, not Twitter's. Indeed, Defendants would have every incentive to do so. The only way to avoid such a shell-game is to recognize that Musk's decision to treat his various corporations as interchangeable personal playthings opens him to personal liability for their actions. Moreover, as Plaintiffs alleged, Musk has repeatedly asserted that the debt load *created by his acquisition of Twitter* has driven Twitter to the edge of bankruptcy. D.I. 10, ¶¶ 304-305. Musk *chose* to saddle Twitter with crushing debt despite having more than enough money to pay Twitter's purchase price with no debt. That is sufficient to allege that Twitter was undercapitalized, *id.*, ¶¶308-310, and that allowing him to use that (perhaps deliberate) undercapitalization to avoid liability for obligations taken on *in that very acquisition* would be inequitable and unjust. No more is necessary at the pleading stage.

Thus, as to any cause of action for which Plaintiffs do not have a direct claim against Musk, Plaintiffs have sufficiently pled that he can be derivatively liable through veil piercing. Defendants' factual arguments on those issues must await discovery and trial.

## IV.   CONCLUSION

For the reasons set forth above, the Motions should be denied.

Respectfully submitted,

Dated: August 21, 2023

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN
P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

/s/ *Joseph L. Christensen*
Joseph L. Christensen (#5146)
CHRISTENSEN & DOUGHERTY LLP
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensendougherty.com

*Attorneys for Wolfram Arnold, Erik*
*Froese, Tracy Hawkins, Joseph Killian,*
*Laura Chan Pytlarz, and Andrew*
*Schlaikjer*

19