# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER, <br><br> *Plaintiffs*, <br><br> v. <br><br> X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC., and ELON MUSK, <br><br> *Defendants*. | C.A. No. 1:23-cv-528-CFC |

## DEFENDANT ELON MUSK'S REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND ALTERNATIVE MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Dated: September 5, 2023

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*

## TABLE OF CONTENTS

                                                                                           **Page**

I.      ARGUMENT ................................................................................................... 1

        A.      Plaintiffs Do Not Establish Any Basis For The Court's Exercise of Personal Jurisdiction over Musk. ..................................................... 1

        B.      In the Alternative, Plaintiffs' Claims Must be Dismissed Under Rule 12(b)(6). ............................................................................................ 3

                1.      Plaintiffs Waive Counts IV, VII–X, and XI–XIII by Failing to Oppose Musk's Motion. ............................................. 3

                2.      Plaintiffs Fail to Plausibly Allege Musk's Individual Liability for Their Contract and Promissory Estoppel Claims (Counts I – V). ............................................................... 4

                3.      Plaintiffs Do Not and Cannot Allege With Particularity Musk's Individual Liability for Fraud (Count VI). ................... 7

                4.      Plaintiffs' FEHA Claim (Count XIV) Fails Because Musk is not Their Employer. ....................................................... 9

                5.      Plaintiffs' Wage Theft Claims (Count X) Must Be Dismissed. ................................................................................... 9

II.     CONCLUSION .............................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 ..................................................................................................8

*Bolt v. Kirley*,
   2012 WL 5006262 (S.D.N.Y. Oct. 18, 2012).......................................................1

*Compagnie des Grands Hotels d'Afrique S.A. v. Starman Hotel Holdings LLC*,
   2023 WL 5095274 (D. Del. Aug. 8, 2023)............................................................5

*D.A. v. Finish Line, Inc.*,
   2022 WL 7989391 (D.N.J. Oct. 14, 2022) ...........................................................3

*Espinoza v. Hepta Run, Inc.*,
   74 Cal.App.5th 44 (2022) ...................................................................................10

*Gerritsen v. Warner Bros. Ent. Inc.*,
   116 F.Supp.3d 1104 (C.D. Cal. 2015)...............................................................5, 6

*Hazout v. Tsang Mun Ting*,
   134 A.3d 274 (Del. 2016) .....................................................................................2

*Jackson v. NuVasive, Inc.*,
   2023 WL 5175092 (D. Del. Aug. 11, 2023).........................................................7

*Leal v. Masonry Servs., Inc.*,
   2013 WL 550668 (E.D.N.Y. Feb. 12, 2013) ......................................................10

*Leek v. Cooper*,
   194 Cal.App.4th 399 (Cal. App. 2011)..................................................................7

*Neilson v. Union Bank of California, N.A.*,
   290 F.Supp.2d 1101 (C.D. Cal. 2003).................................................................6

*NuGeneration Techs., LLC v. Moiyadi*,
   2023 WL 5020831 (D.N.J. Aug. 7, 2023)............................................................2

*Reno v. Baird*,
    18 Cal. 4th 640 (1998) ............................................................................................9

*Salzberg v. Sciabacucchi*,
    227 A.3d 102 (Del. 2020) .........................................................................................5

*Seviour-Iloff v. LaPaille*,
    80 Cal.App.5th 427 (2022) ....................................................................................10

*Trevino v. Merscorp, Inc.*,
    583 F.Supp.2d 521 (D. Del. 2008) ........................................................................5, 6

*U.S. Bank, N.A. v. Miller*,
    2013 WL 12183652 (C.D. Cal. May 8, 2013) .........................................................8

*Usher v. White*,
    64 Cal.App.5th 883 (Cal. App. 2021) ....................................................................10

*Whirlpool Corp. v. Cabri*,
    2022 WL 1421126 (D. Del. May 5, 2022) ..............................................................1

## Other Authorities

Fed. R. Civ. P. 12(b)(2) ...................................................................................1, 3, 10

Fed. R. Civ. P. 12(b)(6) .................................................................................1, 4, 9, 10

For the reasons set forth in his Motion and as further explained below, the Court should dismiss all Plaintiffs' claims against Defendant Elon Musk under Rule 12(b)(2) for lack of personal jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim.

I.     **ARGUMENT**

   A.   **Plaintiffs Do Not Establish Any Basis For The Court's Exercise of Personal Jurisdiction over Musk.**

Plaintiffs unsupported assertion that Musk consented to jurisdiction under the Merger Agreement—despite their concession that he is not a party to Section 6.9, the only provision they seek to enforce—is contrary to applicable Delaware law. As explained in the Motion, the *capacity* in which an individual defendant joins a merger agreement determines the scope of their consent to jurisdiction thereunder. *Whirlpool Corp. v. Cabri*, 2022 WL 1421126, at *11 (D. Del. May 5, 2022) ("a consent to jurisdiction clause operates only as a consent to jurisdiction with respect to the claims to which it applies"); *Bolt v. Kirley*, 2012 WL 5006262, at *3 (S.D.N.Y. Oct. 18, 2012) (under Delaware law, the capacity in which the individual defendant joins the merger agreement determines the scope of their consent to personal jurisdiction under its forum selection clause).[1]

---

[1] Unless otherwise specified, all internal quotations and citations are omitted.

Also, Plaintiffs identify no basis in the Complaint for asserting personal jurisdiction over Musk in connection with any of the non-Merger related claims (Counts III–XIV).  In an effort to remedy this apparent deficiency, Plaintiffs now improperly raise two new grounds in their Response for the Court's exercise of personal jurisdiction over Musk, neither of which are availing.

Under both of the new grounds on which Plaintiffs rely (i.e., the Delaware Directors & Officers statute and the Delaware Long-arm statute 10 §§ 3104(c)(1); 3114), they have the burden of establishing through "affidavit[] or other competent evidence that" Musk has sufficient minimum contacts with Delaware permitting this Court's exercise of jurisdiction.  *NuGeneration Techs., LLC v. Moiyadi*, 2023 WL 5020831, at *3 (D.N.J. Aug. 7, 2023) ("[o]nce a defendant raises a jurisdictional defense, the plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper"); see *Hazout v. Tsang Mun Ting*, 134 A.3d 274, 291-92 (Del. 2016) (courts applying § 3114 must examine individual defendant's minimum contacts with Delaware such that the exercise of personal jurisdiction over him "is consistent with his constitutional expectations of due process").  Plaintiffs have not and cannot carry this burden, and in fact, plead in their Complaint that Musk is a Texas resident and that "Musk's relevant activity occurred in California." D.I. 10 ¶¶ 29, 311.  Because Plaintiffs have failed to plead or prove any basis for this

Court's exercise of personal jurisdiction over Musk their claims against him must be dismissed under Rule 12(b)(2).

> **B.    In the Alternative, Plaintiffs' Claims Must be Dismissed Under Rule 12(b)(6).**
>
> > 1.    <u>Plaintiffs Waive Counts IV, VII–X, and XI–XIII by Failing to Oppose Musk's Motion.</u>

The Court should dismiss Counts IV, VII–X, and XI–XIII *with prejudice* because Plaintiffs fail to oppose Musk's Motion as to those claims.[2] *D.A. v. Finish Line, Inc.*, 2022 WL 7989391, at *2 (D.N.J. Oct. 14, 2022) ("Failure to argue in response to a defendant's motion to dismiss" constitutes "waiver of that claim or argument") (citing *Dreibelbis v. Scholton*, 274 F.App'x 183, 185 (3d Cir. 2008)).

Plaintiffs' expressly waive their Texas Wage theft claim (Count X). D.I. 25, 15 n.11. And, Plaintiffs do not even address the following claims: promissory estoppel (Count IV); PAGA (Count XI); FMLA (Count XII); and CFRA (Count XIII). *See* D.I. 25, at 1–18. Plaintiffs also fail to substantively address Musk's argument that he is not their "employer" for purposes of federal, California, or New York WARN Act liability (Counts VII–IX) and instead merely reference these claims in a single conclusory parenthetical. D.I. 25, at 16. These claims are therefore waived and must be dismissed.

---

[2] If the Court finds that Plaintiffs have not waived any of these claims, then Musk reasserts the respective substantive arguments in his Motion. D.I. 18, at 12–13, 16–20.

### 2. Plaintiffs Fail to Plausibly Allege Musk's Individual Liability for Their Contract and Promissory Estoppel Claims (Counts I – V).

It is beyond dispute that Musk is a non-signatory to Section 6.9 of the Merger Agreement and Plaintiffs concede this fact in their Response by acknowledging that he has no "substantive obligations" under that provision. Thus, Plaintiffs' Declaratory Judgment Action (Count I) and Breach of the Merger Agreement (Count II) claims against Musk must be dismissed under Rule 12(b)(6).

It is also undisputed that Musk neither owned nor controlled Twitter—and was in fact in active litigation with Twitter—at the time that Twitter allegedly made the "promises" on which Plaintiffs' non-merger related breach of contract and promissory estoppel claims are based. Likewise, Musk was not a party to any "offer letters" Twitter sent to Plaintiffs between 2010–2013, over a decade before the merger. Accordingly, Plaintiffs' breach of contract (Count III), promissory estoppel (Count IV), and breach of offer letter (Count V) claims must be dismissed under Rule 12(b)(6) without further analysis.

To avoid this result, Plaintiffs now pivot in their Response to arguing that the Court should pierce the corporate veil under California law as to nine independent causes of action brought under numerous state and federal laws by Plaintiffs who worked for Twitter in three different states. D.I. 25, at 5, 16.[3] Irrespective of whether

---

[3] Counts I – II bring claims under the Merger Agreement which expressly chose Delaware law for all claims relating to the Merger Agreement, whether sounding in

4

California or Delaware law applies to Plaintiffs' proposed unprecedented extension of veil-piercing principles, Plaintiffs fail to state a claim under either law.

Under both laws, Plaintiffs must plausibly allege facts showing that (i) Musk and Twitter are a "single economic entity"; and that (ii) justice requires disregarding Twitter's corporate form because it is a "sham" "designed to defraud investors and creditors." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 529-31 (D. Del. 2008) (dismissing under 12(b)(6) for failure to plausibly allege either prong); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1135-36, 1144 (C.D. Cal. 2015) (dismissing veil-piercing theory where plaintiffs fail to allege that defendant "is using the corporate form unjustly and in derogation of the plaintiff's interests" observing "bad faith is a critical factor in the analysis").

As to prong one, Plaintiffs' allegations fail even to mention most of the factors courts use to evaluate the relationship between Musk and Twitter. *Trevino*, 583 F. Supp. 2d at 529-31 (listing seven factors); *Gerritsen*, 116 F. Supp. 3d at 1145

---

"contract, tort or otherwise." Section 9.8, D.I. 16-1, at 69.  And, to the extent that Counts I – V; VII – IX; XIV are not covered by Section 9.8, the Court should apply the internal affairs doctrine to Plaintiffs' veil-piercing theory because Delaware "has an interest in its own corporate law determining the status of one of its corporations." *See Compagnie des Grands Hotels d'Afrique S.A. v. Starman Hotel Holdings LLC*, 2023 WL 5095274, at *3 (D. Del. Aug. 8, 2023); *see Salzberg v. Sciabacucchi*, 227 A.3d 102, 131-34 (Del. 2020) (recognizing that the "internal affairs doctrine" applies to "matters peculiar to corporations," such as "the relationships [ ] of the corporation, its directors, officers and shareholders").

(reviewing thirteen factors used by California courts).[4]  As to prong two, Plaintiffs do not allege in the Complaint or otherwise that Musk used Twitter to perpetrate a fraud, or that Twitter was "a sham entity" created by Musk in order to defraud Plaintiffs.  *Trevino*, 583 F. Supp. 2d at 529 (dismissal appropriate where plaintiffs failed to plausibly allege the corporation was used to "defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise evade the law"); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1116–17 (C.D. Cal. 2003) (dismissal appropriate where plaintiffs fail to allege "some conduct amounting to bad faith" making it inequitable for the individual "to hide behind [the] corporate veil").

At most, Plaintiffs allege that they *might* become unsecured creditors because there is a "risk" of bankruptcy, but this is not a viable veil-piercing theory under either Delaware or California law.  D.I. 10 ¶ 310;  *Trevino*, 583 F. Supp. 2d at 530 ("the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil"); *Gerritsen*, 116 F. Supp. 3d, at 1145 (mere status as an unsatisfied creditor is not "an inequitable result [warranting]

---

[4] Plaintiffs sole allegation of common ownership to show "unity of interests" is that Musk owns more than 50% of Twitter.  Plaintiffs also do not allege any facts explaining *how* Twitter allegedly became undercapitalized "specifically as a result of Musk's purchase of the corporation."

6

application of the *alter ego* doctrine").[5]  Accordingly, Plaintiffs' contract claims must be dismissed.

        3.      <u>Plaintiffs Do Not and Cannot Allege With Particularity Musk's Individual Liability for Fraud (Count VI).</u>

As explained in Musk's Motion, Plaintiffs fail to identify a single fraudulent statement allegedly made by *Musk*. *See* D.I. 10 ¶ 354 ("Twitter represented . . ."). Nor can they, because Plaintiffs fail to explain how any alleged misrepresentations by Twitter could be attributable to Musk when he did not own or control Twitter at the time Plaintiffs allege the misrepresentations were made. To sidestep this fact, Plaintiffs now improperly raise two new arguments for the first time in their Response that should be disregarded because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Jackson v. NuVasive, Inc.*, 2023 WL 5175092, at *4 (D. Del. Aug. 11, 2023).

Nonetheless, Plaintiffs' new allegation that Musk made fraudulent representation in Section 6.9 of the Merger Agreement is unavailing because it is beyond dispute that Musk is not a party to that provision. Further, Plaintiffs' attempt to recast their breach of contract claim as a fraud claim is improper under applicable

---

[5] Plaintiffs reliance on *Leek v. Cooper* undermines their position because there, the court found that although the plaintiffs "arguably adduced sufficient facts to show a unity of interest and ownership," they failed to proffer evidence of "conduct amounting to bad faith . . . ." 194 Cal.App.4th 399, 414–18 (Cal. App. 2011).  The same result is warranted here where Plaintiffs plead no facts showing Musk acted in bad faith.

law and to find otherwise would "potentially turn every breach of contract claim into one of fraud as well, so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep its promise." *See U.S. Bank, N.A. v. Miller*, 2013 WL 12183652, at *7 (C.D. Cal. May 8, 2013).[6]

Aside from the alleged representations in the Merger Agreement, Plaintiffs also improperly allege for the first time in their Response that Musk made representations in "subsequent communications" to Twitter employees regarding a promise of severance benefits. This new unsupported allegation, however, that Musk (a) approved and directed Twitter to communicate on his behalf, (b) during a time in which he indisputably did not own or control Twitter and was actively litigating *against* Twitter, (c) to promise benefits to persons he did not employ or have any relationship with is utterly implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 ("determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense.").

Finally, while Plaintiffs state in a footnote that they will merely amend their complaint for a third time to say whatever is "necessary" (D.I. 25, at 6 n.7), their

---

[6] Additionally, the parties to the merger agreement make clear that the only representations in the Merger Agreement are in the representations and warranties section. *See* Section 5.11 (the parties do not make "any representation [] of any kind whatsoever" except those in Article V). *See* D.I. 16-1, at 52. Accordingly, Plaintiffs have not and cannot identify with particularity any fraudulent representations that Musk made to them under Section 6.9 in *any* capacity.

stated willingness to say anything to salvage their claims is improper under applicable law. In short, because Plaintiffs have not and cannot plead a plausible claim for fraud against Musk under the present circumstances, their claims should be dismissed under Rule 12(b)(6).

### 4. Plaintiffs' FEHA Claim (Count XIV) Fails Because Musk is not Their Employer.

Musk moved to dismiss Plaintiffs' FEHA claim because he is not their "employer." D.I. 18, at 18. Plaintiffs apparently recognize they cannot hold Musk individually liable because he is not their employer and impermissibly attempt to sidestep this fact by now claiming they bring this claim under an *alter ego* theory. D.I. 25, at 9. But Plaintiffs do not plausibly allege facts supporting Musk's liability under an *alter ego* theory. *See* I.B.2 *supra*; D.I. 10 ¶ 528 ("Twitter" took the allegedly discriminatory action).[7] Moreover, individuals cannot be held liable for discrimination under the FEHA. *Reno v. Baird*, 18 Cal. 4th 640 (1998).

### 5. Plaintiffs' Wage Theft Claims (Count X) Must Be Dismissed.

Plaintiffs' California and New York wage theft claims fail because they do not plausibly allege that Musk is their employer or that he otherwise participated in the alleged wrongdoing. D.I. 18, at 19–20; *see, e.g.*, D.I. 10 ¶ 417 ("Twitter violated each such deadline"). Plaintiffs' attempt to argue that Musk could be liable under

---

[7] These same arguments apply to Plaintiffs CFRA claim (Count XIII). D.I. 18, at 18.

9

California and New York law fails to substantively oppose Musk's argument that the Complaint lacks any allegations of *Musk's misconduct*.  D.I. 18, at 20.

Moreover, Plaintiffs' cited cases in fact support Musk's position.  In *Usher* the court observed that dismissal is appropriate where, as in the Complaint here, "plaintiffs merely rely on the individual defendant's respective positions as owners, directors, officers, and/or managing agents of the employer." *Usher v. White*, 64 Cal.App.5th 883, 895 (Cal. App. 2021).  And, *Seviour-Iloff v. LaPaille* is inapplicable at the pleading stage because its holding is limited to "whether courts have discretion to deny liability" *after* a finding that the individual defendant "engaged in some affirmative action." 80 Cal.App.5th 427, 445 (2022).[8]  Plaintiffs' wage theft claims must be dismissed.

## II.   CONCLUSION

For the foregoing reasons, Musk asks the Court to dismiss all of Plaintiffs' claims against him for lack of personal jurisdiction under Rule 12(b)(2), or in the alternative, for failure to state a claim under Rule 12(b)(6).

---

[8] *Espinoza v. Hepta Run, Inc.*, 74 Cal.App.5th 44, 59 (2022) ("an individual must have engaged in some affirmative action beyond [their] status as an owner,"); *Leal v. Masonry Servs., Inc.*, 2013 WL 550668, at *2 (E.D.N.Y. Feb. 12, 2013) (individual defendant undisputedly "determined the rate and method of payment for employees").

10

| | |
|---|---|
| Dated: September 5, 2023 | MORGAN, LEWIS & BOCKIUS LLP |
| | |
| |  /s/ Jody C. Barillare  |
| | Jody C. Barillare (#5107) |
| | 1201 N. Market Street, Suite 2201 |
| | Wilmington, Delaware 19801 |
| | 302-574-7294 |
| | jody.barillare@morganlewis.com |
| | *Attorneys for Defendant Elon Musk* |