# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>*Plaintiffs*,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-528-CFC |

## DEFENDANT X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP. f/k/a X HOLDINGS I, INC.'S REPLY BRIEF IN SUPPORT OF <u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

Dated: September 5, 2023

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*

# TABLE OF CONTENTS

Page

A. Plaintiffs Are Not Intended Beneficiaries Under the Merger Agreement ................................................................................................ 1

B. Plaintiffs' Breach of Contract and Promissory Estoppel Claims Fail. ........... 5

C. The Court Should Dismiss Plaintiffs' Fraud Claims. ..................................... 7

D. The Court Should Dismiss, or Alternatively, Stay the FEHA Claims. .......... 9

E. Conclusion. ................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Fin. Corp. v. Computer Sciences Corp.*,
 558 F. Supp. 1182 (D. Del. 1983) .................................................................................1

*Amirsaleh v. Bd. of Trade of City of New York, Inc.*,
 2008 WL 4182998 (Del. Ch. Sept. 11, 2008) .................................................................3

*Asmus v. Pac. Bell*,
 999 P.2d 71 (Cal. 2000) ..................................................................................................6

*Bank United, NA v. GC of Vineland, LLC*,
 2020 WL 3453817 (D.N.J. May 28, 2020), *report and rec. adopted sub nom. Bank United, NA. v. First Chatham Bank,* 2020 WL 3452152 (D.N.J. June 23, 2020) ......................................................................10

*Bruen v. Savage*,
 1994 WL 97111 (S.D.N.Y. Mar. 23, 1994) ....................................................................8

*Connolly v. Remkes*,
 2014 WL 5473144 (N.D. Cal. Oct. 28, 2014) .................................................................6

*Crispo v. Musk,*
 2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ..........................................................1, 2, 3

*Daly v. Castro Llanes*,
 30 F. Supp. 2d 407 (S.D.N.Y. 1998) ..............................................................................7

*Dolan v. Altice USA, Inc.,*
 2019 WL 2711280 (Del. Ch. June 27, 2019) ..........................................................2, 3, 4

*E.E.O.C. v. Univ. of Pa.*,
 850 F.2d 969 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) .............................................10

*Foran v. Ulthera, Inc.*,
 2022 WL 507271 (E.D. Cal. Feb. 18, 2022) ...................................................................7

*Fortis Advisors LLC v. Medicines Co.*,
 2019 WL 7290945 (Del. Ch. Dec. 18, 2019) ..................................................................1

*Hallisey v. Artic Intermediate, LLC*,
    2020 WL 6438990 (Del. Ch. Oct. 29, 2020) ......................................................................... 4

*Khan v. CitiMortgage, Inc.*,
    975 F. Supp. 2d 1127 (E.D. Cal. 2013) ............................................................................... 7

*Ladas v. Ca. State Auto. Ass'n*,
    19 Cal. App. 4th 761 (1993) ............................................................................................... 6

*MacLean v. Wipro Ltd.*,
    2020 WL 7090746 (D.N.J. Dec. 4, 2020) ......................................................................... 10

*Moncada v. W. Coast Quartz Corp.*,
    221 Cal. App. 4th 768 (Cal. App. 2013) ............................................................................. 6

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993) .................................................................................................. 8

*Phaedrus Internet Dev. Inc. v. Kaiser Found Health Plan, Inc.*,
    2014 WL 11392902 (Cal. Sup. Ct. Feb. 28, 2014) ............................................................. 6

*Reddy v. Superior Global Sols., Inc.*,
    2012 WL 6569800 (E.D. Tex. Oct. 2, 2012) ....................................................................... 7

*Santana v. Cavalry Portfolio Servs., LLC*,
    2019 WL 6173672 (S.D.N.Y. Nov. 19, 2019) .................................................................. 11

*Strifling v. Twitter, Inc.*,
    No. 22-cv-07739-JST (N.D. Cal.) .................................................................................... 10

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................................................. 8

*Vogel v. Travelers Cas. Ins. Co. of Am.*,
    2017 WL 5642302 (C.D. Cal. May 18, 2017) .................................................................... 7

*Whitehead v. Pacifica Senior Living Mgmt. LLC*,
    2022 WL 313844 (9th Cir. 2022) ....................................................................................... 9

*Wilmington Hous. Auth., for Use of Simeone v. Fid. & Deposit Co. of Maryland*,
    43 Del. 381 (1946) .............................................................................................................. 2

**Other Authorities**

Rule 9(b) ...................................................................................................................7, 8

Rule 12(b)(6) ................................................................................................................11

For the reasons stated below and in their Motion filed by Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.'s (together "Twitter"), the Court should dismiss Counts I, II, III, IV, V, VI and XIV from Plaintiffs' Complaint.

**A.    Plaintiffs Are Not Intended Beneficiaries Under the Merger Agreement.**

Where a stranger to a contract seeks to enforce its terms as a third-party beneficiary, both parties to the contract must have intended to benefit the third party—and such intent must be apparent from the "plain language" of the agreement. *Fortis Advisors LLC v. Medicines Co.*, 2019 WL 7290945, at *3 (Del. Ch. Dec. 18, 2019); *Am. Fin. Corp. v. Computer Sciences Corp.*, 558 F. Supp. 1182 (D. Del. 1983). "Delaware courts will enforce contractual provisions disclaiming an intent to benefit third parties." *Fortis Advisors*, 2019 WL 7290945 at *3. "[W]hen a 'no third-party beneficiaries' provision is 'customized' . . . such as when it 'contains a carve-out' listing some groups as third-party beneficiaries, [courts have] concluded that the parties knew how to confer third-party beneficiary status and deliberately chose not to do so with respect to any unlisted group." *Crispo v. Musk*, 2022 WL 6693660, at *4 (Del. Ch. Oct. 11, 2022).

Here, the plain language of the Merger Agreement shows that the parties did not intend to confer third-party beneficiary status on Plaintiffs. Section 6.9—the very provision in the Merger Agreement that Plaintiffs seek to enforce—is both

1

customized and explicit: "nothing contained in this Section 6.9, express or implied" shall give any "third party beneficiary rights" to any Twitter employee, including Plaintiffs. D.I. 16-1. This unambiguous disclaimer of an intent to benefit third parties is expressed again through the customized "No Third-Party Beneficiaries" provision in Section 9.7, which contains a "carve out" for three distinct categories of intended beneficiaries, none of which includes employees. *Id.*; *Crispo*, 2022 WL 6693660, at *5 ("The presence of three carve-outs in Section 9.7 makes this negative implication stronger.").

Plaintiffs' assertion that third-party beneficiary status is determined based on the parties' intent to confer a *benefit*, regardless of whether the contract provides a "*right to enforce*" that benefit is unsupported under Delaware law. D.I. 24 at 3. Plaintiffs' reliance on *Wilmington Housing Authority* for this proposition is misplaced because that case addressed only the arcane issue of whether Delaware would allow third parties to enforce "sealed instruments" the same as "simple contracts" and has no relevance here. *Wilmington Hous. Auth., for Use of Simeone v. Fid. & Deposit Co. of Maryland*, 43 Del. 381, 385, 390 (1946).

Plaintiffs' reliance on *Dolan v. Altice USA, Inc.* is similarly misplaced. As explained in *Crispo*, "the *Dolan* decision involved an unusual contract", because, unlike in this case, the plaintiffs there participated in the merger negotiations independently from the target company and specifically negotiated the contractual

2

language they sought to enforce.  2022 WL 6693660, at *8.  Further, while *Dolan* does not support Plaintiffs' argument, it is instructive because the court *rejected* the claims of employees who sought to enforce the merger agreement because—as is true here—the agreement expressly stated that it did not "create any third-party beneficiary rights in any employee of the company."  *Dolan*, 2019 WL 2711280, at *4, 8.

Likewise, Plaintiffs attempt to avoid the plain language of the Merger Agreement by arguing that "where nobody other than the third-party could enforce the provision, courts should find the third-party may do so" finds no support under Delaware law.  While Plaintiffs rely on *Amirsaleh* for this argument, the court there does not suggest its decision turned on the fact that only the plaintiff could enforce the purported benefits of the contractual provision.  *Amirsaleh v. Bd. of Trade of City of New York, Inc.*, 2008 WL 4182998 (Del. Ch. Sept. 11, 2008).  And, unlike here, the contract at issue in *Amirsaleh* did *not* contain a customized no-third party beneficiary clause explicitly tailored to exclude purported third-party beneficiaries from the contractual provision they sought to enforce.[1]

---

[1] Additionally, Plaintiffs overstate non-binding dicta in *Crispo* discussing *Amirsaleh*—especially considering that the agreement at issue in *Amirsaleh* is materially different from the Merger Agreement.  2022 WL 6693660, at *7.  Similarly, Plaintiffs' novel argument that a no third-party beneficiary clause is merely an interpretive aid when a contract is unclear makes no sense given the

3

In *Crispo* the court noted that while the purpose of a merger agreement is to deliver "consideration directly to stockholders . . . there are also practical considerations guiding the court's reticence to exten[d] third-party beneficiary status to stockholders, as doing [s]o would also lead to proliferation of stockholder suits in a variety of commonplace scenarios, which would no doubt give rise to considerable inefficiencies both for specific entities and the system as a whole." *Id.* at *3. These same practical considerations are directly implicated here, as bestowing third-party beneficiary status on employees of merged/acquired companies would inevitably lead to a wave of employee lawsuits in the most commonplace transactional scenarios, which is undoubtedly the reason why ***no Delaware court has ever granted third-party beneficiary status to employees under a merger agreement with a customized no third-party beneficiary provision that expressly excludes them from the provision they seek to enforce***.

Plaintiffs' one-sentence argument regarding equitable estoppel lacks merit because "[i]n a dispute about enforcement of a bargained-for contract right, equitable estoppel is not the proper remedy." *Hallisey v. Artic Intermediate, LLC*, 2020 WL 6438990, at *4 (Del. Ch. Oct. 29, 2020).[2]

---

express customized nature and lack of ambiguity in Sections 6.9 and 9.7 of the Merger Agreement.
[2] Similarly, Plaintiffs' argument that the Merger Agreement, read as a whole, made "Twitter's existing benefits and severance policy a floor" directly contradicts

4

For these reasons, The Court should dismiss Plaintiffs' Declaratory Judgment and Breach of Merger Agreement claims.

### B. Plaintiffs' Breach of Contract and Promissory Estoppel Claims Fail.

Plaintiffs' Opposition fails to address the New York and Texas case law supporting dismissal of these claims by the New York and Texas plaintiffs Froese and Pytlarz. Their claims should be dismissed as unopposed.

The remaining California Plaintiffs rely on cases that recite the general principle that, in certain circumstances, an employer's promises can be accepted by continued employment and form implied contracts. However, Plaintiffs fail to connect this principle to the specific facts here, which include: (1) the documents before the Court demonstrate that the alleged "promises" are simply references to the Merger Agreement and thus subject to its no third-party beneficiary provisions, which bar any claim for severance benefits (*see* supra), (2) the alleged "promises" in the FAQs are prefaced by a disclaimer that they are only "generally speaking" about the "current" severance package, and thus are too indefinite to create an enforceable contract and, (3) any implied contract would be unenforceable as a matter of law because the Merger Agreement provided Twitter with the unfettered right to change or terminate any severance package at any time. D.I. 15 at 11-12.

---

Twitter's explicit right in Section 6.9(e) to terminate any severance policy and lacks merit.

5

On that point, the cases on which Plaintiffs rely support dismissal of their claims because these cases recognize that an at-will employer remains free to modify or terminate any implied contract without additional consideration. *See, e.g., Asmus*, 99 P.2d at 78-79.[3]

Plaintiffs argue that whether the alleged promise was sufficiently definite is a fact question. Not so. "Whether a contract term is sufficiently definite to be enforceable is a question of law for the court." *Ladas v. Ca. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993). Plaintiffs' breach of contract and promissory estoppel claims should be dismissed.[4]

---

[3] Plaintiffs also cite *Moncado*, but courts decline to follow *Moncado* where, as here, there is ambiguity about what was allegedly promised. *See, e.g., Phaedrus Internet Dev. Inc. v. Kaiser Found Health Plan, Inc.*, 2014 WL 11392902, at *1, n.3 (Cal. Sup. Ct. Feb. 28, 2014); *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768 (Cal. App. 2013).

[4] Additional grounds exist to dismiss these claims as to Plaintiffs Killian and Hawkins, who Plaintiffs concede were not laid off and thus not subject to any severance premised upon a position elimination. While Killian and Hawkins characterize their resignations as "constructive discharges" (D.I. 24 at 15-20), the allegations in the Complaint are insufficient to plausibly state such a claim for the reasons explained in Twitter's Opening Brief, which Plaintiffs fail to refute. D.I. 15 at 9-10; *see also Connolly v. Remkes*, 2014 WL 5473144, at *9 (N.D. Cal. Oct. 28, 2014) ("[A]n employee cannot simply 'quit and sue,' . . . for '[t]he proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee.'").

## C. The Court Should Dismiss Plaintiffs' Fraud Claims.[5]

Plaintiffs attempt to minimize their pleading burden under Rule 9(b) by arguing that they need not allege *who* at Twitter made the allegedly fraudulent statements because "the statements here come from a piece of paper." But, contrary to this argument, their Complaint alleges that the fraudulent statements were "orally communicated" to employees in "all-hands meetings." *See, e.g.,* D.I. 10 ¶¶ 41, 86-88, 90. Accordingly, Plaintiffs must allege *who* at Twitter made these fraudulent statements. *See, e.g., Reddy v. Superior Global Sols., Inc.*, 2012 WL 6569800, at *8 (E.D. Tex. Oct. 2, 2012). The cases cited by Plaintiffs are factually distinguishable, as they involved *only* written statements. *See Vogel v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 5642302 (C.D. Cal. May 18, 2017) (statements in insurance policy); *see also Foran v. Ulthera, Inc.*, 2022 WL 507271 (E.D. Cal. Feb. 18, 2022) (statements in marketing materials).

Plaintiffs also fail to meaningfully address Twitter's argument that their pleading burden is even higher when alleging fraud against a corporate defendant. *See* D.I. 15 at 15-17. Specifically, they cannot satisfy their burden by simply asserting that "Twitter," as opposed to a specific individual, made fraudulent misrepresentations. *See Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1141

---

[5] Plaintiffs' argument that Twitter has conceded "defraud[ing]" them (D.I. 24 at 11) completely mischaracterizes Twitter's position and is unsupported.

(E.D. Cal. 2013); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998); *Reddy*, 2012 WL 6569800, at *8.  Plaintiffs try to skirt this problem by impermissibly conflating alleged statements by Twitter with alleged statements by Musk.  However, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007); D.I. 15 at 16-17.  And, even the alleged statements by Musk are insufficient, because Plaintiffs allege only "on information and belief, [that] Musk … intended Twitter to communicate … the Severance Stability Promise…" D.I. 10, ¶ 356.  Unsupported conclusions and conjecture are insufficient under Rule 9(b).  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (allegations based on information and belief do not satisfy Rule 9(b) without alleging the factual basis for the belief).  Here, Plaintiffs plead no facts showing that Musk intended that Twitter make any of the alleged promises.

Plaintiffs also fail to plausibly allege that Twitter had no intention of performing any alleged promise at the time it was made, and instead attempt (once again) to rely on their conclusory and insufficient "on information and belief" allegation regarding Musk's intent (*see, e.g.,* D.I. 10 ¶¶ 76, 359). That is insufficient under Rule 9(b). Without *substantive non-conclusory facts* regarding Twitter's intended purpose in making any allegedly fraudulent statements to employees, the Court should dismiss the fraud claim.

8

Finally, Plaintiffs' unsupported request for punitive damages does not transform a breach of contract claim into a fraud claim. *See Bruen v. Savage*, 1994 WL 97111, at *1 (S.D.N.Y. Mar. 23, 1994).[6]

**D.     The Court Should Dismiss, or Alternatively, Stay the FEHA Claims.**

Plaintiffs cite *Whitehead* arguing that "all a plaintiff must do is allege some facts supporting the inference that their termination was because of their religion, race or gender."[7] D.I. 24 at 10 (citing *Whitehead v. Pacifica Senior Living Mgmt. LLC*, 2022 WL 313844 (9th Cir. 2022)). But in *Whitehead* the Ninth Circuit ultimately *affirmed dismissal* of the plaintiff's discrimination claims, finding the plaintiff "ha[d] not pleaded facts to support the inference that her termination was because of her [protected categories]." 2022 WL 313844, at *1. Here, as in *Whitehead*, Plaintiffs have failed to allege that they were singled out or treated less favorably than similarly situated employees based on any protected categories. Arnold resigned, which negates any suggestion that Twitter singled him out. Pytlarz alleges she was terminated in connection with a large RIF, but the Complaint lacks substantive non-conclusory facts showing that Twitter included her in the RIF because of any protected category. The Court should dismiss their FEHA claims.

---

[6] Plaintiffs also argue that "Defendants do not claim the fraud claims are insufficiently pled as to X Holdings." D.I. 24 at 13, n. 8. That is incorrect, as Twitter has asserted these arguments on behalf of all the entity defendants. *See* D.I. 15 at 1.
[7] This argument is odd given that the Complaint does not plead claims for religious or race discrimination.

9

If the Court does not dismiss Plaintiffs' FEHA claims, then it should stay these claims based on the first-filed rule. Plaintiffs' Opposition overstates the degree of discretion afforded to district courts when determining whether to apply the first-filed rule. D.I. 24 at 13-14. In *E.E.O.C. v. University of Pennsylvania*, the Third Circuit explained that district courts have discretion to deviate from the "default" first-filed rule only in "rare" and "exceptional" circumstances. 850 F.2d 969, 972-79 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990). No extraordinary circumstances warrant such deviation here. Plaintiffs' sex and age discrimination claims substantially overlap with and are encompassed in the putative class claims in *Strifling*.[8] Although Plaintiffs assert additional bases for discrimination, the core overlap is substantial enough to justify the application of the first filed rule here. *See Bank United, NA v. GC of Vineland, LLC*, 2020 WL 3453817, at *2 (D.N.J. May 28, 2020) (the first-filed rule requires "substantial overlap" but "the issues and parties involved need not be identical."). The fact that the *Strifling* class has not yet been certified does not prevent application of the first-filed rule. *See MacLean v. Wipro Ltd.*, 2020 WL 7090746, at *10 (D.N.J. Dec. 4, 2020); *Santana v. Cavalry Portfolio Servs., LLC*, 2019 WL 6173672, at *4 (S.D.N.Y. Nov. 19, 2019). In addition, the

---

[8] Plaintiffs' suggestion that this action is more developed than *Strifling* is false. *Strifling* was filed in December 2022, and Judge Tigar has studied extensive briefing, prepared a 16-page order addressing the many defects in the *Strifling* complaint, and currently is evaluating a motion to strike the amended complaint.

concerns of judicial efficiency and avoidance of conflicting rulings underlying the first-filed rule clearly merit staying Plaintiffs' FEHA claims.

### E. Conclusion.

The Court should dismiss Counts I, II, III, IV, V, VI and XIV for failure to state a claim under Rule 12(b)(6).

| | |
|---|---|
| Dated: September 5, 2023 | MORGAN, LEWIS & BOCKIUS LLP |
| | /s/ Jody C. Barillare |
| | Jody C. Barillare (#5107) |
| | 1201 N. Market Street, Suite 2201 |
| | Wilmington, Delaware 19801 |
| | 302-574-7294 |
| | jody.barillare@morganlewis.com |
| | *Attorneys for Defendant* |