# Christensen & Dougherty LLP

1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 212-4330

Joseph L. Christensen
joe@christensendougherty.com

**Via CM/ECF & Hand Delivery**　　　　　　　　　　　　　　　　　　　　October 6, 2023
　The Honorable Christopher J. Burke
　United States District Court
　J. Caleb Boggs Federal Building
　844 North King St. Unit 18
　Wilmington, DE 19801

　　Re:　*Arnold v. X. Corp. f/k/a Twitter, Inc.,* C.A. No. 1:23-cv-00528-CFC-CJB

Dear Judge Burke:

　　　Plaintiffs oppose Defendants' motion to quash the subpoenas served by Plaintiffs and stay all discovery. Defendants object to the subpoenas on the basis of privilege. But any privilege is vitiated by the crime-fraud exception, and their motion to quash should be denied.

　　　Defendants also seek a stay of all discovery, arguing that such stays are routine and appropriate to avoid the burden of discovery in the event that their motion to dismiss is granted. Not only are such stays disfavored, but this case significantly differs from most others, because Defendants are simultaneously and actively litigating hundreds of substantively identical claims in arbitration – and therefore a stay would do nothing to meaningfully alleviate their discovery burden even if the motion were granted.

　　1.　<u>Standard Governing the Crime-Fraud Exception</u>

　　　Where a client seeks an attorney's advice in aid of "future wrongdoing" the "seal of secrecy between lawyer and client" is inapplicable. *U.S. v. Zolin*, 491 U.S. 554, 563 (1989); *see also In re Chevron Corp.*, 633 F.3d 153, 166 (3d Cir. 2011). The crime-fraud exception applies, and production is required, where Plaintiffs can make a *prima facie* showing that Defendants intended to commit a fraud and that the communications at issue were in furtherance of that fraud. *Chevron*, 633 F.3d at 166. The fraud need not be successful or completed. *In re Grand Jury Matter #3*, 847 F.3d 157, 166 (3d Cir. 2017).

　　　"A *prima facie* showing requires presentation of evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." *Chevron*, 633 F.3d at 166. "The burden is not a particularly heavy one" and does not – and *cannot* – require a preponderance of the evidence. *In re Grand Jury Investigation*, 445 F.3d 266, 274–75 (3d Cir. 2006) (invoking the crime-fraud exception cannot require the party alleging fraud to already have sufficient proof of fraud to prevail at the ultimate trial before getting the discovery at issue). Rather, Plaintiffs need only show a "reasonable basis to suspect" that Defendants were seeking legal advice for purposes of future wrongdoing. *In re Grand Jury*, 705 F.3d 133, 153 (3d Cir. 2012).

The Honorable Christopher J. Burke  Page 2
October 6, 2023

More, even where the party seeking production has not made the *prima facie* showing required to compel production, the Court should conduct an *in camera* review of the documents at issue so long as the party seeking production provides "a factual basis adequate to support a good faith belief by a reasonable person" that such a review would reveal evidence that the crime-fraud exception is applicable. *Chevron*, 633 F.3d at 166, *quoting Zolin*, 491 U.S. at 572.

Applying these standards, Plaintiffs respectfully submit that the Court should decline to quash the subpoenas and order production of the documents at issue; at a minimum, it should order those documents produced for *in camera* review.

2. Plaintiffs Made the Required *Prima Facie* Showing

The Court should compel production outright because there is more than a "reasonable basis to suspect" that Defendants sought legal advice from their counsel (regarding (a) §6.9(a) of the Merger Agreement and the Merger Agreement's no third-party beneficiary clauses, and (b) their subsequent communications with Twitter's "Continuing Employees" regarding severance) for purposes of future wrongdoing. Twitter entered into a Merger Agreement in which X Holdings agreed to provide Plaintiffs with severance "no less favorable" than Twitter's prior severance policy were they to lose their jobs within a year after the merger. D.I. 16-1 at § 6.9(a). It then conveyed that news to its employees, informing them the Merger Agreement provided "special protections" for their severance. Ex. 1 at 24. It did so specifically to improve employee retention in advance of the merger.[1] And it did so – according to Twitter itself – intending that the Merger Agreement *not* enforceably protect Plaintiffs' severance at all, based on two provisions its lawyers either drafted into the contract or advised it to accept when proposed by Musk and X Holdings.

Thus, on Defendants' own description of events, Twitter's representation to the employees was a deliberately false statement of present fact about what the Merger Agreement did or did not provide, made in order to induce their reliance.[2] That is fraud. *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 776-77 (2013). Nor is there any legitimate question – assuming the veracity of Twitter's representations to the Court – that Twitter intended to commit that fraud from the outset, when it was obtaining the legal advice in question; if §6.9(a) was never intended to be enforceable, the only possible purpose of including it in the Merger Agreement at all would be to mislead the employees.

Defendants Musk and X Holdings Corp. are in no different position. Because §6.9(a) was intended to help Twitter retain employees in advance of the merger, and it could only function that way if communicated to Twitter's employees, both Musk and X Holdings must have known and intended that Twitter would communicate its existence to the employees once the Merger Agreement was signed. That is sufficient to support a fraud claim against them. Opp at 11. Indeed, §6.8 of the Merger Agreement makes clear that Musk and X Holdings had to approve Twitter's communication to the employees. D.I. 16-1 at §6.8 ("the Company may … communicate to its employees… <u>provided</u> that such communication is consistent with … any communications plan previously agreed to by Parent and the Company") (emphasis in original). And at least one other former employee has alleged on personal knowledge that Musk in fact personally approved the

---

[1] That intent is obvious from the Merger Agreement provision itself; there is no other reason for its existence.
[2] To be clear: Plaintiffs need not be wrong about their status as third-party beneficiaries for the crime-fraud exception to apply. To the extent that Plaintiffs are correct and the Merger Agreement protects their severance despite Defendants' attempt to render that provision unenforceable, the communication with the employees was an *attempted* but unsuccessful fraud and, as noted above, the crime-fraud exception applies to attempts as well as to completed frauds.

The Honorable Christopher J. Burke                                                                              Page 3
October 6, 2023

communications he now claims was never intended to be true. *See McMillian v. Musk*, Case No. 3:23-cv-03461-JCS (N.D. Cal, July 12, 2023), D.I. 1, ¶¶ 40-42, 44, 46, annexed hereto as Ex. 2.

As to all defendants, then, there is far more than a "reasonable basis to suspect" that any legal advice Defendants sought in connection with §6.9(a) and the no third-party beneficiary provisions was for the purpose of enabling their planned fraud on the employees, and no more than a reasonable basis for such suspicion is required to compel production. *In re Grand Jury*, 705 F.3d at 153. And the same, of course, goes to any communications with counsel about the contents of Twitter's communications with the employees.

Indeed, Defendants' only argument against application of the crime-fraud exception is that Twitter's statements directly to the employees "specifically disclaimed any certainty concerning the statements contained therein." D.I. 44 at 4. But that simply isn't so. The disclaimer applied to "forward-looking statements" that involved "risks and uncertainties" or "assumptions" outside Twitter's control. D.I. 26-1 at 239. But the statement that the Merger Agreement contained "protections" for employee severance and required the purchaser to provide "severance payments and benefits that are no less favorable" than those applicable pre-closing was ***not*** a "forward-looking" statement subject to "risks and uncertainties." It was a statement of present fact: what the Merger Agreement provided *at the time the FAQ was written* in May 2022,[3] and one that Defendants now contend was deliberately false when made. The disclaimer simply does not apply.

And even if the disclaimer did reach such statements, it would be ineffective. As a New York court just explained in connection with another defendant who sought to rely on a similar disclaimer to immunize knowingly false statements of present fact: "defendants' reliance on these 'worthless' disclaimers is worthless." *People v. Trump*, 452564/22, *13 (Sup. Ct., N.Y. County, Sept. 27, 2023). Indeed, Twitter's now-professed intent at the time of signing that the severance provisions be unenforceable was (if true) a "special fact" peculiarly within Twitter's knowledge, and therefore not disclaimable as a matter of law. *Id.*[4]

  3. At a Minimum, the Court Should Conduct an *In Camera* Review

At the very least, the Court should order the requested documents produced for *in camera* review. To the extent that the above falls short of a *prima facie* case (and Plaintiffs do not believe it does), it is certainly more than sufficient factual basis to adequately support "a good faith belief by a reasonable person" that review of Defendants' communications with counsel would confirm Defendants' intent to mislead the employees into believing their severance was protected.

  4. Defendants' "Confidentiality" Argument is Baseless

Defendants also ask the Court to quash the subpoenas as seeking "confidential commercial information. D.I. 44 at 5. But it is well-settled that confidentiality is no basis for entirely withholding relevant documents from production. *Progressive Garden State Ins. Co. v. Metius*, , 2019 WL 1468155, at *2 (D.N.J. Apr. 3, 2019) ("confidentiality is not a basis to withhold discovery"); *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 661 (D. Kan. 2015). In any event, Defendants have not met their burden of establishing that the information sought is a trade secret

---

[3] In fact, the FAQ was continuously updated leading up to the Merger, and the promise at issue retained in the version updated on October 24, 2022, three days prior to the merger, and in the version updated with a personal message from Elon Musk on October 27th, 2022, upon completion of the Merger.

[4] New York law applies to Eric Froese's fraud claim. Plaintiffs are in any event unaware of *any* state whose law allows knowingly false statements of present fact to be immunized via disclaimer of "risks," and Defendants do not cite one.

The Honorable Christopher J. Burke                                                        Page 4
October 6, 2023

or that its disclosure to Plaintiffs would cause "specific harm." *Gordian Med., Inc. v. Vaughn*, , 2023 WL 2930257, at *2 (D. Del. Apr. 13, 2023) (quotation omitted).

    5. <u>The Motion to Stay Should be Denied</u>

        Finally, the Court should also deny Defendants' request to stay all discovery in this action pending a ruling on the motion to dismiss. A party seeking a stay has the burden of establishing good cause. *Spathos v. Smart Payment Plan, LLC*, 2016 WL 9211648, at *1 (D.N.J. Apr. 25, 2016) (collecting cases); *see also Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection"). "[I]t is well settled that the mere filing of a dispositive motion does not constitute 'good cause" for the issuance of a discovery stay." *Gerald Chamales Corp. v. Oki Data Americas, Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) (discussing stay in context of summary judgment motion), *citing Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006) ("It, of course, is black letter law that the mere filing of a motion to dismiss the complaint does not constitute 'good cause' for the issuance of a discovery stay"); *see also Rose v. Corr. Med. Servs., Inc.*, 2009 WL 4840217, at *2 (D. Del. Dec. 15, 2009) ("Establishing 'good cause' [for a stay pending resolution of a motion to dismiss] requires the movant to specifically demonstrate that disclosure will cause a clearly defined and serious injury") (cleaned up); *Silber v. SN Servicing Corp.*, 2023 WL 4702210, at *4 (D.N.J. July 24, 2023) ("it is well settled that the mere filing of a dispositive motion does not constitute good cause for the issuance of a discovery stay") (quotation omitted); *In re Chase Manhattan Corp. Sec. Litig.*, 1991 WL 79432, at *1 (S.D.N.Y. May 7, 1991) (stay "should not be granted routinely simply on the basis that a motion to dismiss has been filed").

        Courts considering a stay pending a motion to dismiss generally consider the extent to which the stay could potentially avoid unnecessary discovery as well as the potential prejudice to the party opposing the stay and the status of the litigation. *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, 2015 WL 1737476, at *1 (D. Del. Apr. 9, 2015). In assessing the potential for the stay to simplify discovery, the Court does not only consider the impact of the stay if the motion to dismiss is granted; it also considers the impact if the motion is denied. *Id.*, *2-3.

        Here, Defendants' motion to dismiss seeks only partial dismissal, and Defendants have not moved to dismiss either Plaintiffs' WARN Act claims, Plaintiffs' PAGA claims, or Plaintiffs' CFRA and FMLA claims, which will therefore proceed regardless of the outcome of the motion. *See* D.I. 15 at i (table of contents listing arguments for dismissal only of Plaintiffs' breach of contract, fraud, promissory estoppel, and FEHA claims). Plaintiffs' WARN Act claims allege that Plaintiffs were terminated without cause, and require (and entitle Plaintiffs to) discovery regarding Defendants' mass layoff, the benefits to which Plaintiffs were entitled during their notice period under WARN, and Defendants' conduct during the notice period. More, in arbitrations filed by Plaintiffs' colleagues, Defendants have asserted that "any layoffs were caused by business circumstances that were not reasonably foreseeable as of the time that any notice would have been required" as an affirmative defense to WARN Act claims, Ex. 3 at ¶¶ 11, 19, requiring Plaintiffs to seek discovery regarding Twitter's obligations (including for severance) in this action *regardless* of the outcome on the motion to dismiss. Plaintiffs' PAGA claims will encompass similar discovery. And regardless of whether the FEHA claims are dismissed or stayed, Plaintiffs' claims that Defendants violated federal and state leave laws, which Defendants have not moved to dismiss, will require

The Honorable Christopher J. Burke  Page 5
October 6, 2023

detailed discovery regarding the mass layoff and its selection criteria and implementation.

The proposed stay would also be useless. The reason to stay discovery pending a motion to dismiss is, generally, to avoid the burden and expense of discovery. But even if the motions were granted in full, Defendants would *still* need to engage in discovery on those topics: the Merger Agreement, Defendants' breach of the Merger Agreement, Defendants' fraud, promissory estoppel, and discrimination. Why? Because Defendants are facing hundreds of identical claims in arbitration, as to which they are *already and independently* required to engage in discovery. Plaintiffs' counsel has served discovery requests on Defendants in at least some of those actions; Ex. 4 hereto is a list compiling all of the separate document requests served in the various arbitrations, each of which Defendants must respond to. In others, the arbitrator has instructed the parties to produce *all relevant documents* without need for specific requests, and allowed the parties to submit follow-up document requests after reviewing that production. Ex. 5 at ¶ 5. Nor could dismissal in this Court alter that; the pleading standards under JAMS Rule 9(a) are different from (and lower than) those applied in federal court under *Twombly* and *Iqbal*. JAMS Rules 9(a) ("Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis").[5] Thus, even if granted, and in the *best case* for Defendants, the requested stay would do nothing more than delay or only marginally limit Defendants' discovery burden.[6]

And that would, in fact, be to Plaintiffs' disadvantage, and appears intended purely for practical advantage. Throughout their litigation with Twitter's former employees, Defendants have adopted a "starve-them-out" strategy of seeking delay for its own sake. Defendants have refused to timely pay invoiced arbitration fees, required potential claimants to spend weeks in pointless wild goose chases to obtain the DRAs that Twitter has admitted to keeping within its possession (and refusing to arbitrate until potential claimants have proven possession of their DRAs), and ultimately refused to continue in arbitration at all with hundreds of claimants. Defendants are the world's second-wealthiest man and two of his multi-billion-dollar companies; Plaintiffs are individual former employees fired into a recession and bad job market deprived of the promised severance intended to help them weather the financial impact of that termination. Given the certainty that the litigation will continue as to at least some claims, the high likelihood that it will continue as to the fraud claims, and the utter lack of utility of any stay, the Court should exercise its discretion to deny the requested stay and allow discovery to proceed.

Respectfully,

*/s/ Joseph L. Christensen*

Joseph L. Christensen (#5146)

---

[5] Indeed, Ms. Liss-Riordan's arbitration demands merely generally recite that the claimant in arbitration brings claims similar in fact and law to those asserted in the various class action litigations she has filed on behalf of former Twitter employees (and specifies in each demand). While that would be obviously insufficient in federal court, it is enough for purposes of a JAMS demand for arbitration.

[6] Respectfully, and without need to reargue the motion to dismiss, the "best case" for Defendants appears significantly unlikely. As discussed above, the positions Defendants have taken on the motion to dismiss have, at the very least, raised a reasonable basis to believe Defendants committed fraud – and the discovery on Plaintiffs' fraud claims will be similar in content and scope to discovery on the breach of contract claims. Thus – and while Plaintiffs do not believe dismissal of any claims would be warranted, for the reasons set forth in their briefing – a stay is unlikely to meaningfully narrow discovery in this action even were the Court inclined to view this action in isolation.