# Morgan Lewis

**Jody C. Barillare**
Of Counsel
+1.302.574.7294
jody.barillare@morganlewis.com

October 12, 2023

<u>VIA CM/ECF</u>
The Honorable Christopher J. Burke
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28
Wilmington, DE 19801-3555

Re:   *Arnold v. X. Corp. f/k/a Twitter, Inc.*, C.A. No. 23-cv-528-CFC-CJB

Hon. Judge Burke:

Defendants submit this reply in support of their Motion to Stay Discovery Pending Resolution of Defendants' Dismissal Motions and Motion to Quash.

**This Court Should Stay Discovery Pending Resolution of the Motions.**  Twitter has already demonstrated that each of the three factors that courts in this district analyze when deciding whether to stay discovery pending a motion to dismiss clearly weigh in favor of a stay.  Mot. at 2-3.  Plaintiff only meaningfully disputes the first factor, suggesting that a stay would not "simplify the issues for trial" because Defendants motion to dismiss seeks "only partial dismissal."  Opp'n. at 4.  Not so. Defendants sought dismissal of seven claims (1-6 and 14). Should the Court grant the motion, the issues for trial would be greatly simplified because the remaining claims (7-13) relate to different legal issues (*i.e.*, federal and state WARN and FMLA issues).  Furthermore, Plaintiffs' suggestion that the parties conduct discovery on claims not subject to the dismissal motions would result in inefficient, piecemeal discovery procedures—which only *bolsters* the need to a stay.  *E.g.*, *Kuroda v. SPJS Holdings, LLC*, 2009 WL 58910, at *1 (Del. Ch. Jan. 2, 2009) (staying all discovery even though "certain claims would continue" regardless of a dismissal motion because piecemeal discovery would require "conducting certain documents searches and collections now on discrete categories of document requests, and then doing so again later on other requests . . . . [which is] an inefficient means of conducting discovery, resulting in multiple collections and document reviews and a changing set of search terms for the electronic documents").

Plaintiffs' suggestion that a proposed stay would be "useless" because Twitter will still engage in discovery in parallel arbitrations is a red herring.  First, Plaintiffs' contention demonstrates that they will not be prejudiced by a stay in this proceeding, because Plaintiffs' counsel will conduct discovery regardless of a stay in this proceeding.  Second, it overlooks the fact that discovery under the Federal Rules of Civil Procedure is costlier and more burdensome than the streamlined approach in arbitration.  As one example, Defendants need not incur the costs to quash Plaintiffs' inappropriate subpoenas served on Defendants'

**Morgan, Lewis & Bockius LLP**

1201 North Market Street
Suite 2201
Wilmington, DE  19801
United States

☎ +1.302.574.3000
📠 +1.302.574.3001

former law firms in the arbitration because third-party discovery is generally unavailable under JAMS Rules. *Aixtron, Inc. v. Veeco Instruments Inc.*, 52 Cal. App. 5th 360, 404-05 (2020). Contrary to Plaintiffs' representations, Defendants' requested stay of discovery in this proceeding would avoid additional burdensome and expensive discovery.

**The Court Should Quash the Law Firm Subpoenas.** Plaintiffs concede that they bear the burden to present *evidence* "which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." *In re Chevron Corp.*, 633 F.3d 153, 166 (3d Cir. 2011). Rather than attempt to meet this evidentiary burden, Plaintiffs used their Opposition brief to simply re-state their arguments in opposition to Defendants' motion to dismiss the fraud claim for failure to state a claim.

For example, their Opposition alleges that Twitter's pre-Merger FAQs were specifically intended to "improve employee retention in advance of the merger." Opp'n. at 2. Yet, they present no evidence to support this allegation. Plaintiffs also allege that § 6.9(a) of the Merger Agreement was specifically intended to "mislead the employees." *Id.* Again, they present no evidence to support this allegation. Similarly, they present no evidence to support their speculation that "both Musk and X Corp. must have known and intended" that Twitter would summarize the terms of the Merger Agreement to employees with the FAQs. However, § 6.8 specifically provides that Twitter could make public announcements to its employees *without* X Corp.'s consent. Ex. B § 6.8. Plaintiffs' fraud claim is supported by purely conclusory statements in their Amended Complaint that are based solely upon Plaintiffs' "information and belief." *E.g.*, Amended Compl. ¶ 359.[1] To overcome the sanctity of the attorney-client privilege and work product doctrine, Plaintiffs needed to have come forward with far more than purely speculative conclusions.

Critically fatal to Plaintiffs' efforts to manufacture *prima facie* evidence supporting the crime-fraud exception is the fact that the FAQs they rely on do not include any false statements. Plaintiffs argue that the FAQs said employees had "special protections" under the Merger Agreement. But that provision in the FAQs simply restates § 6.9(a) of the Merger Agreement, nearly *ad verbatim*. Compare Ex. B § 6.9(a) *with* Ex. C at 24 (both stating that severance would be "no less favorable" than severance applicable "immediately prior" to closing on the Merger Agreement). Severance was discretionary at Twitter. The description of severance in the FAQs simply relayed how Twitter "generally" exercised its discretion at that time. Ex. C at 3 (summarizing Twitter's "current" and "general" severance package and qualifying its summary with the phrase "generally speaking"). Moreover, the FAQs did not exist in a vacuum, as evidenced by the FAQs' reference to the Merger Agreement no less than twenty-one (21) times. The FAQs were entirely subject to and dependent upon the terms of the Merger Agreement—which allowed Twitter to modify or terminate any severance plan. The FAQs that Plaintiffs rely on do not contradict these facts. Thus, there is no *prima facie* evidence supporting the crime-fraud exception, and the subpoenas should be quashed because they seek documents protected by the attorney-client privilege and work product doctrine.

Respectfully,
*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)

---

[1] Plaintiffs make a passing reference to a nonparty's complaint in another forum to suggest "Musk in fact personally approved the [FAQs]." Opp'n. at 2-3. But a nonparty's complaint—especially where unsupported by a verification or declaration under penalty of perjury—is not *evidence*. Even if it were, Plaintiffs attempt to rely on the complaint of a nonparty for the truth of the allegations asserted therein, which constitutes inadmissible hearsay.