# Christensen Law LLC

1201 N. Market Street, Suite 1404

Wilmington, DE 19801

(302) 212-4330

Joseph L. Christensen

joe@christensenlawde.com

**Via CM/ECF & Hand Delivery**                                September 26, 2024

The Honorable Christopher J. Burke
United States District Court
J. Caleb Boggs Federal Building
844 North King St. Unit 18
Wilmington, DE 19801

Re:   *Arnold v. X. Corp. f/k/a Twitter, Inc.,* C.A. No. 1:23-cv-00528-JLH-CJB

Dear Judge Burke:

We write in response to the letter-motion to quash filed by non-parties Antonio Gracias, Brad Sheftel, David Sacks, Jared Birchall, Jason Calacanis, and Sam Teller (collectively, the "Musk Advisors") (D.I. 96), and in support of Plaintiffs' cross-motion to compel discovery. The Court has already considered and rejected Defendants' motion to stay discovery pending determination of the motions to dismiss (D.I. 49), and granted the parties' joint request for a stay that would allow third-party discovery to proceed as part of a comprehensive litigation plan addressing this action, *Woodfield*, and the related arbitrations necessary to address identical claims by similarly situated parties represented by the same counsel (the "Severance Litigation"). Pursuant to those orders, Plaintiffs served third-party subpoenas for the Musk Advisors, who are each individuals that Elon Musk brought in to advise him on the acquisition of Twitter and its restructuring, including the terminations and breaches of contract at issue here. The Musk Advisors now move to quash, and have also served responses to the subpoenas that objected to each document request and to appearance for deposition. *See* **Exhibits 1-6.** That motion should be denied.

1. <u>Relevant Factual Background</u>

As part of Elon Musk's acquisition of Twitter, he brought in a number of his venture capital confidants – including the Musk Advisors – to assist him in transforming the company. Those confidants were enthusiastic and integral participants; one expressly "pledged his sword" to Musk. Entrepreneurs with a net worth in the tens or hundreds of millions of dollars were designated as "Staff Software Engineers" in Twitter's Legal Department, given @twitter.com email addresses, and set to work making decisions about how the company would be restructured – including by making "keep or kill" decisions about individual employees as Twitter raced towards the layoffs at issue in this litigation. Twitter has claimed privilege over communications on which the Musk Advisors were included, *see* **Exhibit 7** (extracts from the Twitter privilege log provided in arbitration), and in a meet and confer on the Musk Advisors' objections to the subpoenas, their counsel refused – despite claiming in this motion that her clients are third parties unfairly burdened by discovery – to take a 'blanket position' on whether Twitter's communications with her clients could ever be privileged. Unsurprisingly, Plaintiffs (and their colleagues in the related arbitrations) seek discovery from those confidants. Equally unsurprisingly, the Musk Advisors would prefer to avoid the consequences of their freely-made decision to involve themselves in Twitter's layoffs, and have moved to quash.

2. The Musk Advisors Have Relevant and Responsive Information

On a motion to quash, the propounding party has the burden of establishing the relevance of the information sought. *Thompson-El v. Greater Dover Boys & Girls Club*, No. CV 18-1426-RGA, 2022 WL 606700, at *2 (D. Del. Jan. 28, 2022), *citing Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). Plaintiffs can more than carry that burden here, because there should no dispute that the Musk Advisors are in possession of relevant information regarding the facts at issue in the Severance Litigation. Indeed, Defendants have claimed attorney-client privilege over communications on which the Musk Advisors were included, *see* **Exhibit 7**, and the Musk Advisors were made nominal employees of Twitter during the transition in order to facilitate that claim. *See* **Exhibit 8** (Twitter organization chart identifying the Musk Advisors as "Staff Software Engineers" in the Legal Department).[1]

But there is more. At a deposition taken by other counsel in a related arbitration filed by a different set of Plaintiffs, Musk specifically identified Gracias, Birchall, and Sacks as his advisors in connection with Twitter, and described Birchall as his "primary" advisor. **Exhibit 9** at 287:3-288:19. Sacks specifically advised Musk on the scope of the layoffs at issue in this litigation. **Exhibit 10**. **Exhibit 9** at 262:17-263:5. Sheftel and Teller are Musk confidants who worked for Valor Investment Partners at the relevant time, and who Plaintiffs believe were involved in the development of "the Valor model" discussed as a justification for a possible reduction in force. **Exhibit 11**. Calacanis and Musk exchanged text messages in advance of the merger's closing in which they discussed ways to force Twitter employees to quit their jobs, and the need to do so. *See* https://fortune.com/2022/10/06/elon-musk-jason-calacanis-return-to-office-gentlemens-layoffs-twitter/. Calacanis was also specifically involved in termination decisions. **Exhibit 12**. That is more than sufficient to establish the likelihood that the Musk Advisors possess relevant information that can be sought by subpoena.

3. The Subpoenas Do Not Unduly Burden the Musk Advisors

Plaintiffs having established relevance, the burden shifts to the Musk Advisors to demonstrate that compliance with the subpoena would be unduly burdensome. *Thompson-El v. Greater Dover Boys & Girls Club,* No. CV 18-1426-RGA, 2022 WL 606700, at *2 (D. Del. Jan. 28, 2022) (citing *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013). *See also McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 193 (M.D. Pa. 2011). They utterly fail to do so.

The Musk Advisors do not argue that the universe of documents sought by the subpoenas is overlarge, or that locating responsive documents would be more difficult than typical discovery, or that production is complicated for some other reason. Nor do the Musk Advisors argue that production would be unreasonably expensive. Rather, the Musk Advisors argue only that Plaintiffs should not be allowed to subpoena them until after Defendants have completed their document production. But that argument fails, for multiple reasons.

**First**, the argument fails because it is well-settled that the availability of party discovery is no bar to third-party discovery. *See, e.g., High Point Sarl v. Sprint Nextel Corp.*, No. CIV.A. 09-2269-CM-DJ, 2011 WL 124534, at *3 (D. Kan. Jan. 14, 2011) (distinguishing *Haworth* because, *inter alia*, "[t]he Court sees no undue burden or expense that would require High Point to first seek these documents from

---

[1] Luckily, one of the former Twitter employees was able to obtain a copy of Exhibit 2 before being terminated and provide it to counsel; had they not done so, it is likely that Plaintiffs' counsel would have agreed when Defendants' counsel proposed a non-logging agreement that would have covered post-dispute communications with "members of the Twitter Legal Department."

The Honorable Christopher J. Burke                                                                                          Page 3
September 26, 2024

Sprint. Indeed, the Court notes that aside from arguing that these documents should first be sought from Sprint, Ericsson has not attempted to explain exactly how the subpoena imposes an undue burden or expense"). *See also Software Rts. Archive, LLC v. Google Inc.*, 2009 WL 1438249, at *2-3 (D. Del. May 21, 2009) ("[W]here a party requests documents from a non-party that are likely to be in the possession of an opposing party, production of documents is appropriate where those documents constitute a non-well-defined set whose completeness is not readily verifiable"); *Med. Tech., Inc. v. Breg, Inc.*, No. 10-MC-00100, 2010 WL 3734719, at *4 (E.D. Pa. Sept. 21, 2010) (subpoena not unduly burdensome as duplicative, because, among other things, party was entitled to obtain documents from non-party to "test the veracity" of adverse party's claim to have produced all responsive documents). Indeed, Plaintiffs served discovery demands on Defendants roughly a year ago. To date, however, Defendants have produced very few communications with the Musk Advisors. Moreover, the Musk Advisors are not "typical third part[ies]," *Cox Commc'ns Inc. v. Sprint Commc'ns Co. L.P.*, No. CV 12-487-JFB, 2017 WL 11272852, at *4 (D. Del. Aug. 9, 2017); their documents, knowledge, and information arose not from their arms'-length transactions with Defendants that happen to be relevant to a distinct dispute between the parties, but from their conscious decision to embed themselves within Twitter's hierarchy during the critical period in order to influence Defendants' decisions at issue in this litigation, including with respect to the layoffs at issue. In those circumstances, the Court should not be anywhere near as concerned with the burden of discovery relating to that conduct. *Id.*

      **Second**, the argument fails as a factual matter, because the Musk Advisors offer no evidence – or any reason at all to believe – that the documents in their possession are limited to documents also in Defendants' possession. *See Pearson v. Univ. of Chicago*, No. 3:20-MC-00092-CSH, 2021 WL 194725, at *6 (D. Conn. Jan. 20, 2021) (third-party's speculation that all discoverable documents in their possession were also in party's possession was insufficient to support objection that subpoena was unreasonably duplicative). Certainly, Twitter *should* have a copy of any emails the Musk Advisors sent from the @twitter.com email addresses they were provided during the relevant period. But there is no guarantee that they do. And, in any event, the Musk Advisors also have personal emails, and text messages, and other messaging apps – none of which accounts are in Defendants' possession, custody, or control – which they used at least in part to discuss Twitter matters. *See, e.g.*, Exhibit 7 at entries 337, 817-828, 981-1015. Particularly given the extent to which Musk relied on peers and employees from his other companies in his restructuring of Twitter, it is reasonable to expect that the Musk Advisors discussed issues relevant to the Severance Litigations with each other, or with other non-parties whose documents are *also* not in Twitter's possession, custody, or control, or made personal notes; there is no reason at all to believe that the only relevant documents they possess are in Defendants' possession as well. In those circumstances, an objection that subpoenas duplicate party discovery is "meritless." *New Park Ent. L.L.C. v. Elec. Factory Concerts, Inc.*, No. CIV. A. 98-775, 2000 WL 62315, at *5 (E.D. Pa. Jan. 13, 2000) ("While there may be some duplication … there are sure to be many other documents in the possession of the third parties not in the possession of the defendants"). *See also Saller v. QVC, Inc.*, No. CV 15-2279, 2016 WL 8716270, at *6 (E.D. Pa. June 24, 2016) (refusing to quash subpoenas likely to duplicate at least some of plaintiff's production); *Med. Tech.*, 2010 WL 3734719, at *4 (denying motion to quash because party may need a third-party production to "not only supplement" the other parties' production but also to verify that all relevant documents have been produced). Indeed, some of the documents requested by the subpoenas – such as documents relating to the extent to which the Musk Advisors' work for Twitter impacted their job

duties and performance at their other jobs, are entirely unlikely to be in Defendants' possession, custody, and control.

On this record, the Musk Advisors' objection that the subpoenas are unduly burdensome as duplicative is unsupported, speculative and must be rejected. And the Musk Advisors have provided no other basis for a burdensomeness objection. As such, the motion to quash must be rejected.

4. The Time for Compliance Should be Modified to October 19, 2024

The Musk Advisors also complain that the time for compliance was unreasonably short. That issue arose because of Plaintiffs' difficulty in serving the subpoenas on the Musk Advisors. Plaintiffs already informed the Musk Advisors' counsel that the time for compliance would be adjourned and asked the Musk Advisors to provide an estimate of when document production could reasonably be completed. To the extent that the Musk Advisors instead wish to have the Court set the time for compliance, Plaintiffs respectfully suggest October 19, 30 days from the date of the Musk Advisors' filing of this motion.

5. The Confidentiality Objections Are Not Supportable

The Musk Advisors' confidentiality objections are easily disposed of; confidentiality is not a basis to refuse production, as set out in Plaintiffs' letter-brief responding to a similar argument from Defendants. *See* D.I. 46 at 3-4. More fundamentally, the Musk Advisors have no standing to object based on the confidentiality of *Twitter*'s business information ("highly sensitive information about Twitter employee personnel files, the Merger Agreement, and the inner workings of the transition").[2] In any event, Plaintiffs are more than happy to consent to the entry of a standard confidentiality order, and have proposed one.

6. There is No Basis to Hold Discovery in Abeyance

Finally, the Court should reject the request to hold compliance with the subpoena in abeyance pending determination of the motions to dismiss. The Court has already rejected such a request from Defendants, and the only reason the Court held the subpoenas to Defendants' prior outside counsel in abeyance was because the determination of Plaintiffs' crime-fraud argument was inextricably intertwined with the determination of the motion to dismiss. Those motions have now been fully briefed and pending for almost a year, and without any articulation of the supposed burden of compliance on the Musk Advisors, there is no basis to hold responses to these subpoenas similarly in abeyance. Nor is the Musk Advisors' citation of *Harry F. Ortlip Co. v. George Hyman Const. Co.*, 126 F.R.D. 494, 495 (E.D. Pa. 1989) apposite; as the parties explained to the Court in their application for a stay, the discovery here is being sought for use in this action *and* the arbitrations, as part of a *consolidated* discovery plan. D.I. 82.[3]

The motion to quash should be rejected, and the Musk Advisors compelled to comply with the subpoenas.

---

[2] To the extent the Musk Advisors instead contend that they have their own personal confidentiality concerns in connections with documents not in Twitter's possession, custody, and control, that would obviously contradict their speculation that all responsive documents they have would be duplicative.

[3] That consolidated discovery plan was entered into expressly and only on the parties' agreement that third-party discovery proceed in this action, and to the extent that the Court requires it in order for the third-party discovery to proceed Plaintiffs will withdraw from the bellwether agreement and lift the stay entirely, as is their right under the bellwether agreement. That does not appear to be in anyone's interest.

The Honorable Christopher J. Burke  Page 5
September 26, 2024

Respectfully,

*/s/ Joseph L. Christensen*

Joseph L. Christensen (#5146)

cc: All Counsel of Record