1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3
           ARNOLD et al.,                    )
4                                            )
           --------------------Plaintiffs,   )
5                                            ) Case No.
           vs.                               ) 23-CV-528-JLH-CJB
6                                            )
           X Corp., et al.,                  )
7                                            )
           --------------------Defendants.   )
8
                 TRANSCRIPT OF MOTION TO QUASH
9

10         MOTION TO QUASH had before the Honorable Christopher

11    J. Burke, U.S.M.J., on the 16th of October, 2023.

12

13                      APPEARANCES

14    CHRISTENSEN LAW LLC
           BY:  JOSEPH CHRISTENSEN, ESQ.
15
                       -and-
16
      KAMERMAN UNCYK SONIKER & KLEIN
17         BY:  AKIVA COHEN, ESQ.

18                      Counsel for Plaintiff

19
      MORGAN LEWIS & BROCKIUS LLP
20         BY:  JODY BARILLARE, ESQ.
               ERIC MECKLEY, ESQ.
21             BRIAN LOUCHNANE, ESQ.

22                      Counsel for Defendant

23

24

25

1                THE COURT:  Let me say a few things for the

2    record, and the first is that we're here today in the matter

3    of *Arnold versus X Corp., et al.*  It's Civil Action Number

4    23-528-CFC-CJB here in our court, and we're here for

5    argument on Defendants' motion to quash certain subpoenas

6    that were served by Plaintiffs.  The Court has already

7    addressed another issue, which was Defendants' request for a

8    stay, and an oral order issued today, but we'll hear

9    argument today on the motion to quash issues.

10               Before we go further, let me have counsel on the

11   line for each side identify themselves for the record.

12   We'll start first with counsel on the plaintiffs' side.

13   We'll begin there with Delaware counsel, and I'll also ask

14   Delaware counsel to let me know which of the counsel on its

15   side will be addressing the motion.

16               MR. CHRISTENSEN:  Good morning, Your Honor.  Joe

17   Christensen from Christensen & Dougherty on behalf of the

18   plaintiffs.  I'm joined by my co-counsel at Kamerman, Uncyk,

19   Soniker & Klein, Akiva Cohen, who will be making the

20   argument this morning, Your Honor.

21               THE COURT:  Okay.  Thank you and welcome.

22               And we'll do the same for counsel on Defendants'

23   side.  Again, we'll begin with Delaware counsel, and I'll

24   ask counsel to let me know who will be arguing for your

25   side.

1          MR. BARILLARE:  Good morning, Your Honor.  Jody

2     Barillare from Morgan Lewis on behalf of the defendants.

3     With me today are my colleagues Eric Meckley and Brian

4     Loughnane, and with Your Honor's permission, Mr. Meckley

5     will be delivering the argument for the defendants.

6          THE COURT:  Great all right.  So then I should

7     turn to Mr. Meckley first, as it's Defendants' motion.

8          And, Mr. Meckley, I guess I just -- let me jump

9     in with a couple of questions in that regard and then I'm,

10    certainly, of course, happy to let you address anything you

11    think we didn't cover in those questions as well.

12         And I guess the first question that I have kind

13    of relates a bit to timing issues.  Obviously, our court is

14    busy.  We have to try to do things in an efficient manner as

15    it relates to all that's before us, and one of the -- it

16    seems like a key issue that's at play with regard to the

17    applicability of the crime fraud exception is that the Court

18    would have to figure out whether a sufficient prima facie

19    case has been laid out that the defendants intended to

20    engage in fraud via their acts relating to the severance

21    provision and that they likely would have communicated about

22    that.

23         And it seems to me that that issue and the

24    decisions the Court has to make kind of line up pretty

25    squarely with at least one of the questions that would Court

1    would have to resolve on the pending motion to dismiss for

2    lack of failure to state a claim and that is, did Plaintiffs

3    plausibly allege a fraud claim?  Do you think that's right,

4    that a lot of the analysis or the type of analysis you'd be

5    looking at as to the one issue would be pretty similar --

6    not exactly the same but pretty similar -- to the analysis

7    you'd be looking at as to the other?

8             MR. MECKLEY:  Your Honor, I don't think it's the

9    same, and the reason I don't think it's the same is because

10   the standards for the Rule 12(b)(6) motion under Twombley

11   and Iqbal are going to be have you pled factual allegations

12   that would plausibly state the claim whereas with respect to

13   the burden of proving the crime fraud exception would apply

14   that would entitle you to this discovery is a higher

15   standard.  And I think it, necessarily, has to be a higher

16   standard for a variety of reasons, the first of which is the

17   attorney-client privilege and work product doctrine is

18   something that is pretty significant in the law, and there's

19   a lot of very good reasons why it exists.  And if the mere

20   pleading of allegations in the complaint were sufficient

21   enough to entitle you to discovery that invaded and intruded

22   upon the attorney-client privilege, you're basically putting

23   the cart before the horse, letting the tail wag the dog.  It

24   is not the same standard.

25             One is have you stated a potential claim.  The

1    other relates to, presumably, evidence that you would seek

2    to try to prove the merits of that claim, which is a

3    different standard.

4            THE COURT:  So I think your response is, well,

5    the standards will differ.  The 12(b)(6) standard is, has a

6    plausible claim been asserted, and Plaintiff would be

7    suggesting they have made certain allegations about why they

8    think that fraud had occurred and those need to only be

9    plausible, whereas we know that in the crime fraud exception

10   world, what I'd be assessing is, is there a prima facie case

11   that has been made and what is that burden.

12           Well, on the one hand it's said to not be a

13   particularly heavy one and doesn't require preponderance of

14   the evidence.  But on the other hand, it's not nothing, and

15   it requires some evidence, whatever that means.  We'll get

16   to that.

17           So I mean, both worlds are, you know, standards

18   that are less than a preponderance of the evidence.

19   Plaintiff relying, probably in both cases, on similar type

20   of facts, a lot of which seemed like it had to do with

21   what's in the merger agreement or maybe some additional

22   communications.  I get that the standards aren't exact,

23   they're different, and, of course, you have to be mindful of

24   the difference, and you have to rule based on differences.

25           But in both cases, it's a Court assessment of

1    has enough been pled, pointed to with regard to this fraud

2    issue.  And I guess if the Court would be making very

3    similar types of analyses and decisions, I guess I'm not

4    sure why it is that I'd be rushing to make that decision in

5    the prima facie case context now as it relates to the

6    subpoenas as opposed to when I get to the motion dismiss,

7    I'm going to assess that fraud issue anyway in the context

8    of plausibility.  Once I assess it, I'll have had the chance

9    to look through the arguments in great detail on a motion to

10   dismiss, and if I turn to this prima facie case issue, the

11   analysis should be straightforward from there, albeit under

12   a different standard.

13          I'm wondering why I wouldn't take it in that

14   order as a way to be efficient as a Court knowing all that

15   we have before us in this district.

16          MR. MECKLEY:  And, Your Honor, I appreciate

17   that.

18          And the reason I would suggest that we not go

19   that route is because, one, as I've already mentioned, the

20   standards are different, and, two, with the complaint, it's

21   allegations.  With respect to the crime fraud exception, the

22   plaintiff's burden there, certainly not a preponderance of

23   the evidence, but evidence, more than allegations.  And the

24   fact that Your Honor's earlier ruling today denying the

25   request for the stay of discovery, also, I think, plays into

1    this because now, presumably, Plaintiffs will have the

2    ability to conduct discovery to try to get evidence that

3    doesn't involve communications with attorneys which are

4    privileged and have the opportunity to take depositions,

5    serve requests for production, interrogatories, et cetera

6    that presumably if there is any such evidence that might,

7    then, support trying to breach the attorney-client

8    privilege, then you'd have some evidence and it might not

9    even be necessary.

10         So I think they're completely different

11   standards, and your ruling on the motion to dismiss simply

12   says whether a plausible claim has been stated.  It wouldn't

13   necessarily translate to a finding that a prima facie case

14   of the crime fraud exception has been met, and I think there

15   should be an opportunity to --

16         THE COURT:  Can I just jump in those because I

17   understood you to fault Plaintiffs' showing as to the prima

18   facie case standard to be something like one of the reasons

19   why we think that their showing is insufficient is that they

20   have, essentially, only relied on the types of arguments

21   they are making as to the allegations in their complaint.

22   They have pointed to certain aspects of certain contracts

23   and certain statements that are made, just as they're doing

24   in their complaint.  In the allegations they make there,

25   they haven't mustered any additional evidence, documents,

1    affidavits bolstering facts that demonstrate that a fraud

2    was afoot.  Essentially, the evidence is similar across both

3    and is wanting as to both.  I thought that was the gist of

4    your argument.  Am I wrong?

5             MR. MECKLEY:  No, you're correct that the

6    evidence is wanting in both but with respect to different

7    items.  So the evidence in the complaint would be

8    allegations, substantive factual allegations.  The evidence

9    with respect to the crime fraud exception would be evidence,

10   actual documents, testimony, interrogatory responses, et

11   cetera.

12            THE COURT:  I'm sorry to jump in.  I understand

13   your argument, but let me ask it this way:  I don't think

14   from your view when it comes to the allegations that the

15   plaintiffs have made in their complaint about the asserted

16   fraud, we look at that, and then we look at the allegations

17   the plaintiff has made in response to this issue, the crime

18   fraud exception issue, I understand your position to be

19   there's no real difference between the things that the

20   plaintiffs are pointing to as to either of those contexts,

21   and that's the problem.  We, the defendants, believe that

22   there needs to be evidence cited in the crime fraud context,

23   and they don't have any extra evidence.

24            Essentially, Judge, what they're doing is the

25   same arguments they're making in the complaint about

1    plausibility, the same things they're pointing to, the same

2    document, the same words, that's the same stuff they're

3    relying on here and they need more.  I thought your point

4    was that their evidence is the same as to both motions,

5    essentially, and it's not good enough in the crime fraud

6    context; isn't that right?

7          MR. MECKLEY:  Yes, that is correct, and it's

8    allegations in one case and mere allegations in the other.

9    And I would just -- I already said it.  Allegations aren't

10   sufficient in the crime fraud exception to overcome the

11   attorney-client privilege.

12          THE COURT:  And I'm trying to understand how it

13   would prejudice you were I to decide that I think what I

14   should do is I should first take up the motions to dismiss

15   as they relate to the fraud claim and other aspects of it

16   and then after that deciding that, then pivot back to this

17   subpoena issue and use the knowledge and analysis that I

18   gained through that motion to dismiss resolution process to

19   hopefully pretty quickly dispose of this issue then.

20          I'm not sure I see how that path would prejudice

21   you.  In fact, I would think in some ways it would be the

22   plaintiff who would be telling me not to do that because it

23   may take some time to get to the motions to dismiss.  And in

24   the interval, your folks who are being subpoenaed wouldn't

25   have to give up any documents or information.  I'm a little

1    confused as to why it is you wouldn't preference that kind

2    of process.  I understand why the plaintiff may not like it,

3    but I thought it would be a process you would say is

4    positive, but seems like you're not, and I'm trying to

5    figure out why.

6            MR. MECKLEY:  I don't want to misstate my

7    position on it.  I think, certainly, a sequencing process

8    like you've described is absolutely appropriate, and I don't

9    believe it's -- I mean, my position all along has been the

10   subpoenas are entirely premature, but I think the process

11   you've outlined, where the Court decides the motion to

12   dismiss with respect to the fraud claim first and then we

13   could revisit this issue, my position, Your Honor, is that

14   when revisiting the issue at the appropriate time -- and,

15   obviously, it depends on what your ruling says, of course,

16   but that it isn't a foregone conclusion at that point that

17   if you find there is sufficient allegations within the

18   complaint to overcome the motion to dismiss, our position is

19   just that is not a default to, well, now the crime fraud

20   exception has been proven and, therefore, let's proceed with

21   these subpoenas.  That's my position.

22           THE COURT:  Understood.  And I understand that

23   part of it, and to that part, I think what it seems like

24   from reading the briefs is there's a dispute here.  We know

25   that under the standard, the plaintiffs have to put forward

1    or make a presentation of "evidence" which, if believed by

2    the fact finder, would be sufficient to support a finding

3    that the elements of the crime fraud exception are met.  And

4    it seems like in the briefs the parties are having a fight

5    about what is that can be sufficient to constitute that

6    requires "evidence."

7            And I think you're suggesting in your briefing

8    that something more than the types of facts or the types of

9    provisions of contractural agreements that the plaintiffs

10   are relying on here, something more than the additional

11   announcements that they're relying on, is needed.  They

12   don't have enough evidence.  They have merely allegations or

13   something less.  And I think the plaintiff is saying no, the

14   things we've pointed to are sufficient to be the kind of

15   evidence that you need to demonstrate the applicability of

16   the crime fraud exception.

17           And I guess my question is, I'm not sure the

18   parties have provided me with -- when I see those arguments

19   being made, I think to myself there must be cases out there

20   that say something about what exactly is the quantum of

21   evidence needed.  Does a party need to rely on declarations

22   or affidavits or, you know, some other type of similar type

23   of evidence to meet that evidence burden?  Or do parties win

24   these kinds of cases and show that the crime fraud exception

25   applies by pointing to contractual language or by largely

1    mirroring allegations in the complaint or whatever?  There's

2    cases that would tell me what's enough and what's not

3    enough, what constitutes evidence and what doesn't.  I'm not

4    sure I have that stuff in the briefing.  I know you were

5    somewhat limited by the page limit, but are there cases that

6    get into that?  Are you aware of cases that support your

7    argument here that the evidence the plaintiff cites isn't

8    enough evidence?

9              MR. MECKLEY:  Your Honor, two points on that.

10             The first is right now I am not specifically

11   aware of cases that identify the quantum of evidence that

12   would be necessary on that point.

13             But number two, back to your direction regarding

14   sequencing, I think following the Court's resolution of the

15   motion to dismiss, at that point with this particular focus

16   that you have identified, I would suggest the parties would

17   be able to come back with more briefing, perhaps beyond this

18   district, looking at that exact issue, which is what the

19   quantum of evidence and we could actually provide the Court

20   with something more fulsome to make a ruling on.

21             THE COURT:  Okay.  The other thing I wanted to

22   just ask about is I'm trying to get a handle on -- and I

23   couldn't get it from the briefing -- what types of and how

24   many documents there are here that might be implicated by

25   the subpoenas.  I think one of the things that the

1    plaintiffs' side asked me is, Judge, if in doubt, do an

2    in-camera review of the documents at issue and make your own

3    determination about whether you think there's sufficient

4    evidence here.

5            But I don't even know -- what are we talking

6    about?  How many documents are at issue?  What would be the

7    scope of that kind of review if I had to do it?  Have the

8    parties thought or talked about that, Mr. Meckley, and do

9    you have anything you can share with me in that regard?

10           MR. MECKLEY:  Your Honor, I wish I could share

11   more specifics with you about that but, frankly, I am not

12   sure.  I know there's five law firms involved.  I know that

13   the categories in the subpoenas are extremely broad.  They

14   seek all documents and communications, work product drafts,

15   comments, discussions regarding multiple topics.  I can't

16   speak to these other firms.  I know from my own law firm

17   that that could encompass a huge number of documents and

18   data issues.  So unfortunately, I don't think that this

19   would be just a perfunctory, brief, focused review that you

20   could look at and, in camera, make a very easy ruling on

21   that.

22           THE COURT:  Okay.  And then I guess the other

23   question I have for you is in your opening brief, the kind

24   of main rejoinder you seem to put forward as to why it is

25   that, in looking at the types of, I'll say, evidence -- you

1    might disagree that it should be called evidence -- the type

2    of evidence that the plaintiffs have pointed to at issue

3    here, that -- i.e., the evidence relating to the

4    communications in the merger agreement that plaintiffs will

5    be provided with severance benefits that are no less

6    favorable than Twitter's prior severance policy or the

7    subsequent communication that's attached at Exhibit 1 page

8    24 to the plaintiffs' brief that seemed to underscore that

9    kind of language, and the reality that there was also a

10   third-party beneficiary provision in the agreement, which I

11   think I understand is now being utilized by the defendants

12   to help undercut the argument that the type of severance

13   benefits the plaintiffs are suggesting exists can be

14   claimed.

15            I think the main rejoinder to the fact that that

16   wasn't -- as to your argument that wasn't sufficient

17   evidence was that one of the statements included the caveat

18   that these were only forward-looking statements that are

19   being made.  And the plaintiff came back and said that

20   doesn't apply to our allegations here.  The types of claims

21   that are being made about severance benefits don't have

22   anything to do with forward-looking statements talking about

23   potential uncertainties in the future.  That's a totally

24   different thing.

25            Did you have any response to that line of

1    argument?

2                  MR. MECKLEY:  Sure, Your Honor.  It goes to the

3    whole caveat about the statements in the FAQs.  One, the

4    communication concerning forward-looking statements about

5    risk and certainties is a caveat that this should not be

6    taken as something concrete and certainly not a contractual

7    type of statement that is being made.  And that is also,

8    then, married with the language that specifically talks to

9    the severance, which is, well, generally speaking and

10   generally the current severance policy seemed to be this.

11                  But it doesn't change the analysis that if

12   severance was discretionary before and the representation is

13   that you'll get the same things you got before -- again, I'm

14   putting aside the third-party beneficiary piece here, which

15   is a significance piece -- if it was discretionary before,

16   it's discretionary now.  And the FAQs cannot be read in a

17   vacuum exclusive of the merger agreement.  They refer to the

18   merger agreement 20-plus times, so they are things that have

19   to coexist and, certainly, the FAQs don't trump or overtake

20   what the merger agreement says.

21                  So I hope I've answered your question about the

22   caveat nature of these FAQs.

23                  THE COURT:  I guess what I was getting at is in

24   securities cases where I'm looking at forward-looking

25   statements, I specifically think of things like, look, we're

1    about to make some projections about we think what our

2    financial might be in the future based on data we have now.

3    These are forward-looking statements that can be affected by

4    events that occur hereafter.  I think Plaintiffs' point was

5    when you're making comments about what your current

6    severance policy is and how it relates to a prior severance

7    policy, that's not the thing you're usually talk about when

8    you rely on "forward-looking statement" language.  That's a

9    statement about present fact and how it relates to a past

10   fact.  Is that wrong?

11            MR. MECKLEY:  I'm not going to opine on whether

12   this specific language was intended to only apply to

13   statements related to the securities-type context.  I will

14   say, and obviously witnesses can testify to this, I'm not

15   testifying to it, but that it's in the spirit and intent to

16   suggest that these FAQs are merely that.  They are

17   statements that are frequently asked questions.  They are

18   not amending, changing whatever the merger agreement says.

19   The merger agreement says what it says, and these FAQs are

20   something that might be considered, you know -- I don't want

21   to say supplementary to it because that's not actually

22   correct, but they are just maybe informative.  So I think

23   it's in the spirit of the document, which is you should not

24   rely on anything in here.

25            THE COURT:  Okay.  And, Mr. Meckley, is there

1    anything further you wanted to add with regard to arguments

2    about these issues before I turn to your colleague on the

3    other side?

4              MR. MECKLEY:  I did not, Your Honor.  I did --

5    and I appreciate your ruling and I didn't know -- there was

6    one part of that that I did want to -- if you wanted me to

7    make a statement about it that I did want to draw your

8    attention to, but that's only if you wanted to entertain it.

9    This is on the same motion.

10             THE COURT:  Sure.  Is it a clarifying point,

11   something you're confused about or a clarifying point you

12   need to make?

13             MR. MECKLEY:  Well, I think the ruling was

14   clear.  It was one of the sentences specifically in the

15   ruling that I thought -- I felt I wanted to clarify so at

16   least the Court understood our position.

17             THE COURT:  Sure.  If you want to say something

18   for the record that you think just clarifies your position

19   for anyone who's looking at this in the future, go ahead.

20             MR. MECKLEY:  Sure.  And this is the sentence in

21   your ruling where you're referring to the unaffected claims,

22   and it states, "The unaffected claims will require

23   substantial discovery regarding the layoffs at the heart of

24   this case, and it appears to the Court that any unique

25   discovery that may be obviated were the motions to dismiss

1    successful would pale in comparison to that needed as to the

2    resolution of the unaffected claims."

3                    And my position on that is these unaffected

4    claims, even though they're characterized as seven of them

5    are essentially three.  One is a Warren claim, one is a

6    Family Medical Leave Act claim, and the third is a "wage

7    theft" claim.  And I'm in California.  There is no wage

8    theft claim that exists here.  So it's really only three

9    claims, and these claims are very distinct from the other

10   claims which I would say are really the primary claims and

11   drivers in this case, so the discovery regarding those three

12   claims that I've identified, Warren, FMLA, and wage theft,

13   will, in fact, pale -- the discovery regarding those claims

14   will pale in comparison to the discovery regarding all of

15   these other seven claims that are the subject of our motion

16   to dismiss which are the primary focus of Plaintiffs'

17   lawsuit, not FMLA, not Warren.  Those are very

18   straightforward things.

19                   Just as an example with the Warren act, did you

20   give people notice or not.  That's discovery that can be

21   completed in three requests for production and two

22   interrogatories, unlike all this other discovery we're

23   talking about.  That was the point.  I thought that the

24   Court certainly suggested that that discovery would, you

25   know, dwarf this other, and it's really the reverse.

1          THE COURT:  Okay.  All right.  Certainly, you

2  made your point in terms of your view on the record.

3  Obviously, the Court has decided the motion and is not going

4  to revisit it.  I'd also suggest that in the future if you

5  have briefing in which one of the components of that is a

6  reply brief, if you think points being raised by the

7  plaintiffs are incorrect, you have a place to say it.

8          And, frankly, we wouldn't be having this call if

9  the motions to quash weren't a part of the issues raised, so

10  I certainly would suggest that if arguments are there to be

11  made, they need to be made crisply in the briefs as well.

12  I'm not sure that what you just said was made crisply in the

13  reply brief.  Again, parties are limited in the briefing,

14  but Defendants had space to say what they needed to say.

15          And I'll also just say for the record it would

16  be an unusual case, maybe not never happens, but it would be

17  an unusual 14-count a complaint in which seven of those

18  counts not challenged in our court and yet the entire case

19  would be stayed.  In my experience, it would be an unusual

20  circumstance that the defendants were seeking here.

21          But as I said, the motion has been decided so we

22  won't have further argument on it.  Let me turn to Mr. Cohen

23  on the plaintiffs' side to get his response.

24          And, Mr. Cohen, maybe we could start with the

25  place I started with the Defendants -- with Defendants'

1    counsel, Mr. Meckley, which is at some point I've been

2    referred the motions to dismiss here.  I'm going to have to

3    make an assessment about whether or not what has been

4    alleged in the complaint suffices to set out a fraud claim.

5    It seems to me that, again, the standards are different --

6    though, again, both standards are less than an assessment of

7    whether a preponderance of the evidence has been put

8    forward -- that it might well make sense from an efficiency

9    standpoint -- and the Court needs to think about that in

10   light of all we have on the plate -- to tackle the issues

11   around the same time after I've had a chance to assess the

12   motion to dismiss.  And it almost seems like here, I'm being

13   asked to preview the decision there on a motion to dismiss,

14   albeit in a slightly different evidentiary framework.  If I

15   said to you why wouldn't I take that path here, what would

16   you say in response?

17            MR. COHEN:  Yes, Your Honor.  So I certainly

18   understand the attractiveness of that path from the Court's

19   perspective, and I certainly don't want to ask you to do

20   work that is inefficient.  There's a couple of reasons why I

21   don't think that's the appropriate path here.

22            The first thing is that while the analyses are,

23   certainly, closely linked, they aren't identical, and I'm

24   not talking about what you're looking at specifically.  What

25   I'm talking about is it is entirely possible -- and

1   obviously I don't think you should.  It's entirely possible

2   that you could say that, sorry, the fraud claim is not

3   sufficiently well pled.  I'm dismissing with it with leave

4   to replead.  And also that the crime fraud exception has

5   been met, and that's because crime fraud really focuses in

6   on two of the factors in a fraud claim, whereas when you're

7   looking at the adequacy of the complaint, you're looking at

8   all five of the factors for fraud, including did the folks

9   rely on it and was there an intent to -- all of those things

10  come into play in the analysis of a fraud pleading.

11          And while we believe that when you do that

12  analysis you're going to find that we pled it sufficiently,

13  you might come back so us and say, look, you know, I think

14  you need to allege more clearly this element, see if you can

15  replead.  The crime fraud analysis is different and it's

16  different in part because, as we put into our opposition,

17  the crime fraud analysis also applies to attempted fraud.

18  If you attempted to fraud somebody but they didn't actually

19  rely on it and there were no damages, they can't plead a

20  fraud claim because there wasn't any damage.  Damage is an

21  element of fraud.  But the fact that you made the attempt

22  means those communications are not protected by privilege.

23          And so the assessment here is really narrowly

24  focused.  It's is there evidence of what you told people and

25  is there evidence that that thing that you told people was

1    knowingly and intentionally false.  And here, Your Honor --

2    and I think if you look at the briefing on the motion to

3    dismiss, that's not what their argument is.  Their argument

4    isn't we didn't tell these employees that there were special

5    protections for their severance in their merger agreement.

6    And their argument isn't, yes, there actually were special

7    protections, what we told them was true.  And the argument

8    isn't, okay, there aren't special protections but we meant

9    there to be, we're just realizing later that there weren't.

10              Their argument is we actually never intended to

11   provide any special protections, and, Your Honor, I'd like

12   to address the questions you asked Mr. Meckley first and

13   then I think relatively briefly take a look at what was

14   actually told to the employees, what was actually put in the

15   merger agreement, and then what Twitter and its codefendants

16   have put before this Court that establish that they never

17   meant -- on their representations to the Court, they never

18   meant what they told the employees to be true.

19              THE COURT:  Just to jump in and go back to my

20   original question, which is I think it is the case that to

21   the extent that here we're going to look at certain

22   language, certain documents, certain statements that you are

23   going to point me to to say, look, I think we met our burden

24   as to the prima facie case burden, that those statements,

25   words, documents are the same kinds of statements, words,

1   documents that you are pointing to and putting forward with

2   regard to your claim as to fraud.

3          So assessing those, looking at them, figuring

4   out their meaning, what their import is, how a person might

5   have read them and responded to them, I would probably be

6   doing a similar type of analysis, albeit using somewhat

7   different standards, when I assess the motion to dismiss the

8   fraud claim on the one hand and when I assess the crime

9   fraud exception issue on another.  Is that fair?

10          MR. COHEN:  Yeah, that is absolutely fair, Your

11   Honor.  And, you know, obviously, if your decision is that

12   you're not going look at that until then, that's your --

13   that's why you're the judge and we're the advocates.

14          But I think that the analysis here is both

15   sufficiently narrow and also sufficiently distinct from what

16   you will be doing when you're looking at those things on the

17   motion to dismiss that it's worth taking this issue now so

18   that we can start getting this case moving so that we can

19   get -- frankly, this is going to be a big dispute before the

20   Court, so it would be good to get it as resolved as we can,

21   from our standpoint, as early as we can.

22          THE COURT:  I think part of what you were saying

23   earlier, Mr. Cohen, is, theoretically, there is a way that

24   you can grant the motion to dismiss about the fraud claim.

25   If it came down to a different element like a damages

1  element, that would mean you didn't pass on these, and I

2  think I get that point.

3          In terms of if I were going to do that -- again,

4  I'm not saying I will.  I have to figure out what is most

5  efficient and figure out how it plays into the issues -- it

6  would seem like in terms of prejudice to you, you might be

7  pounding the table more if the case wasn't moving forward

8  otherwise as to discovery and yet you had these subpoenas

9  out there and you thought there was some basis to enforce

10  them.  Fair to say that even it meant pausing a decision on

11  this issue until I get to the motion to dismiss and that

12  took some time that the prejudice to you probably is less as

13  compared to a place where a stay has been granted and this

14  case isn't moving forward at all?  Is that fair?

15          MR. COHEN:  Certainly, yes.  I will say I'm not

16  dispositionally a pound-the-table type of person.  I'm not

17  sure you'd see it in the same way.

18          That said, to the extent Your Honor is inclined

19  to do that and particularly -- this was going to be part of

20  my answer on your question about in-camera review.  There

21  are a lot of steps here before we get to production of

22  documents.  We need written responses back.  We need,

23  essentially, a log of the documents because, assuredly, if

24  Your Honor hasn't ruled on this motion to quash everybody

25  responding is going to be issuing a privilege log.  At that

1    point, we can assess, if Your Honor determined an in-camera

2    review was necessary that we hadn't met the standards, we

3    could assess, number one, how many documents are involved

4    and, number two, if necessary, come up with some sort of

5    sampling mechanism so that instead of it is a large

6    amount -- and I don't know that it is a large amount.

7    Mr. Meckley described these as broad requests.

8            Yes, they used the words "all documents" but

9    that's not a totem because the requests were actually really

10   narrowly focused.  It was documents relating to the specific

11   provisions of the merger agreement at issue, sections 6.9(a)

12   and (e) of the merger agreement and 9.7 which is the other

13   third-party beneficiary clause that they were arguing sort

14   of makes this whole thing meaningless, and the

15   communications with the employees.  So it was relatively

16   narrowly focused.  It's not going to encompass every

17   document about communications about the merger agreement or

18   anything like that.

19           But to the extent that it is a large universe,

20   we'll have to pull together a sampling mechanism.  What I

21   certainly would ask, Your Honor, is that to the extent that

22   you're saying, look, I'm going to put off deciding the

23   motion to quash until after I've had a chance to review the

24   motion to dismiss, what I wouldn't want is if it takes the

25   Court a month or two months or however long -- and I

1   understand Your Honor's schedule -- that only then at that

2   point do we start to spin off the mechanism of figuring out

3   what those documents are, privilege log, mechanism for

4   sampling because that process in and of itself could take a

5   couple of months.  If the Court is going to pause ruling on

6   the motion to quash then the law firms responding to the

7   subpoenas should produce written responses and objections to

8   the request, run searches, identify how many documents might

9   be responsive, and start the process of automated logging to

10  the point where, you know, you have, okay, look, here's --

11  just based on what we see in our document review platform,

12  here are the two strums and the subjects of each of these so

13  that we can start to get a sense of which documents we might

14  be asking you to look at.

15          And frankly, Your Honor, the timing on this

16  merger agreement, it was negotiated in the space of, if I

17  understand correctly, three or four days.  It's not a large

18  window, and the timing of the communications with the

19  employees, frankly, any communications between these folks

20  and their lawyers about what they could tell the employees

21  about these special protections would be something that we

22  would want, at the very at least, the Court to review in

23  camera unless it's an extremely large number.

24          THE COURT:  Am I correct here, Mr. Cohen, that

25  the parties are proceeding under the assumption that any

1    documents or communications implicated by the subpoenas

2    will, in fact, be subject to a claim of attorney-client

3    privilege or attorney work product?

4              MR. COHEN:  I think, Your Honor, that that's not

5    true for any of the e-mails that crossed paths.  So if you

6    had people on opposite sides of negotiations e-mailing to

7    each other during negotiations, those are not going to be

8    privileged, but my assumption is that at least a significant

9    portion of the documents are going to be internal to the law

10   firms or client -- to firm representing it.  So I don't

11   think all the documents will be privileged, so there should

12   be some production, regardless, but I think there's going to

13   be a larger percentage, obviously, than normal.  When you're

14   issuing a subpoena to a law firm, that's going to be

15   privileged, which we wouldn't have done if we didn't have a

16   good-faith belief.

17             THE COURT:  I know you want to make some points

18   about what is the substance of your argument with regard to

19   why you met the hurdle, but I guess my question there is --

20   or one question I have before that is what I asked

21   Mr. Meckley, which is it does seem like the defendant or the

22   defendant's side is saying we understand what the plaintiffs

23   have pointed to here, the content, the things that they have

24   pointed to, to demonstrate that they have met the prima

25   facie case burden, and we are asserting that that substance,

1    those documents and/or allegations about certain documents,

2    contractural language, et cetera, just can't serve to meet

3    the quantum of evidence that is required by the caselaw.

4            And I guess my question to them was, do I have

5    much in the way of cases that tell me what quantum of

6    evidence or maybe what types of evidence are typically found

7    to be sufficient in these crime fraud exception analyses at

8    the prima facie case stage and what aren't?  Do I?  And do

9    you have any view about whether there's more caselaw out

10   there on that subject?

11           MR. COHEN:  Yes, Your Honor.

12           So the documents and the cases that I have seen,

13   the cases don't discuss it has to be a particular quantum of

14   evidence because, at the end of the day, it comes down to is

15   there -- sort of a two-part question.  Number one, is there

16   anything other than allegations; right?  If all you have is

17   somebody saying I think this happened, that's not evidence.

18   On the other hand, once you have documents, testimony from

19   somebody with personal knowledge, anything beyond that, now

20   you've got evidence and then the question becomes is that

21   evidence sufficient that if a trier of fact believed it, it

22   could establish the elements of crime fraud?

23           And so on the quantum of evidence, it could be

24   one document if that document is strong enough.  It could be

25   five documents if those documents interlock in the right

1    way.  So, you know, probably the most famous crime fraud

2    decision in recent memory is the one involving President

3    Trump and John Easterbrook, and there they were looking at

4    memos -- a memo, if I remember correctly, one memo that was

5    written and said that one memo was enough to say we've got a

6    problem.  And they looked at e-mails and the Court looked at

7    the communications of the attorney to say this does fit

8    within the crime fraud.

9          But the cases don't discuss quantum of evidence

10   because it's almost an appellate "was there a sufficient

11   basis in the record for a jury to reach this finding"

12   discussion and that's any quantum of evidence is enough if

13   it shows the elements.  And so --

14         THE COURT:  Understood.  And why don't I let you

15   make whatever points you want to make about the types of

16   evidence that you pointed to here.  I do have another matter

17   after this one, so I want to try to resolve by the top of

18   the hour and give Mr. Meckley a chance to respond by way of

19   rebuttal.

20         Mr. Cohen, you were going to point me to what do

21   we have?  What are the plaintiffs pointing to that is

22   "evidence" that a future fraud was intended?

23         MR. COHEN:  Very quickly, Your Honor, we have

24   the acquisition FAQ.  That is a document submitted by the

25   parties.  It's in evidence.  It is evidence.

 1          Here's what it says, okay.  It says, "The merger

 2   agreement provides special protection for Tweep compensation

 3   and benefits."  That's the statement that Twitter made to

 4   its employees.  There is no question at all that Twitter is

 5   now arguing that was not true.  Everything single one of its

 6   arguments, whether it's you're not third-party

 7   beneficiaries; therefore, you can't enforce it.  If it's not

 8   an enforceable promise, it's not a special protection.  The

 9   statement now it was entirely discretionary before, it's

10   entirely discretionary now the, merger agreement didn't do

11   anything to your severance.  Then it's not a special

12   protection.  Every single one of those arguments is an

13   outright statement that the thing that they told the

14   employees was not true and was not intended to be true and

15   with that just two --

16          THE COURT:  Mr. Cohen, is it the case that it's

17   really that special protection language that is the -- if

18   you were saying, look, the thing that they said that we

19   think is indicative and evidence of a fraud is they promised

20   that in the merger agreement there was special protection

21   for benefits, including severance benefits, and that was

22   false --

23          MR. COHEN:  Your Honor, I'm not going to say

24   that's the only thing in here that's problematic, but it is

25   the most glaring and, frankly, irrefutable thing.  Because

1    special protections -- if it means anything at all, special

2    protections means this is not just going to be left up to

3    Elon's discretion after he comes in.  Otherwise, that phrase

4    is meaningless.

5              And the entire argument from Twitter and

6    Mr. Musk and from X Holdings, the parent company here, has

7    been no, there were no special protections.  Severance was

8    discretionary before; it's discretionary now.  Anything that

9    was in the merger agreement was entirely unenforceable and

10   did nothing at all to protect the severance.  Those two

11   statements cannot be squared.  They cannot be both true.

12             Separately, Your Honor, with respect to just two

13   of the arguments they've made on that, number one, there's

14   been an argument that the merger agreement allowed Twitter

15   to change the severance anyway.  Number one, that's

16   something that's going to be addressed in the motion to

17   dismiss.  We've made our arguments for why that's wrong.

18   But it's also irrelevant here because what the merger

19   agreement required was not that Twitter would pay severance

20   of a particular type but that the parent company would pay

21   severance of a particular type.

22             And what they told the employees here was that

23   the purchasing entity, which was the parent X Holdings,

24   Corp., would provide the severance.  So even if the merger

25   agreement let Twitter change its severance policy -- and

1    again, you'll see in the motion to dismiss as you do the

2    analysis they didn't -- Twitter told the employees the

3    parent company would have the obligation to pay them the old

4    severance.  Discretionary.

5            If you see the language that's highlighted in a

6    different color, Your Honor, the language wasn't that the

7    severance program will remain the same.  The language is

8    that the severance benefits will be no less favorable than

9    those applicable to an applicable employee, those that were

10   categorically available to the employee.  And Twitter's

11   prior severance policy had different categories for

12   different employees.  They had employees who were level

13   seven and below got three-month severance packages and

14   employees that were level eight and up got six-month

15   severance packages.  That's the package that was applicable.

16           It may well be that in the before times, Twitter

17   could exercise discretion about whether or not it gave any

18   particular employee an applicable -- a package that was

19   applicable to it, but what they told these employees was

20   that after the merger, for a year after the merger, the

21   parent company will provide you the package that was

22   applicable.  So and --

23           Just quickly, this is the various areas of the

24   FAQ where it mentioned that.  This is here primarily

25   because, Your Honor, this was not a one-off promise.  They

1   updated that FAQ 12 times, 13 times in total.  Twitter said,

2   hey, employees, here is the information you need to know.

3   And every single time they included that language, this

4   merger agreement provides special protections.  The

5   acquiring company is going to provide you the severance

6   payment that was applicable to you before, not the one you

7   would have gotten if we were exercising discretion, but the

8   one that was applicable to you.

9           Again, if this is purely discretionary, it was

10   discretionary before, it's discretionary now, then there is

11   no special protection, and that representation to the

12   employees is false, and that language is in the merger

13   agreement itself.

14           THE COURT:  Mr. Cohen, last question I have.  I

15   wanted to let Mr. Meckley have a few brief comments before

16   the top of the hour.  My last question I have is I

17   understand your assertion about the special protection

18   wording and why you think that was false or misleading.  But

19   to the extent that wording is informed by what is then said

20   below -- what do we mean by special protection?  Look below

21   and we tell you -- and when it came to telling about the

22   severance benefits, what was said is that they're no less

23   favorable than those you had before.  And I think the

24   argument is from the other side that's what we meant by

25   special protections.  That's what we said we meant, and less

1    favorable means the same, and before we could have done what

2    we did, and now we did what we did.  How do you respond to

3    that kind of argument about how -- why "special protection"

4    doesn't have the meaning you think it does.

5                MR. COHEN:  Two things, Your Honor.

6                Number one, if it was discretionary before, it's

7    discretionary now.  That's not a protection because

8    "discretionary" means we can zero it out, we can go to 100,

9    we can do whatever we want.  To say, look, I'm specially

10   protecting, Your Honor, your car, what I mean by that is

11   somebody could steal it before, somebody could steal it

12   after, I'm not going to do anything different, I think

13   everybody would recognize semantically that's not what

14   "special protection" means.  You can't turn around and say

15   our special protection is discretionary.  If they wanted to,

16   there was certainly a way they could have done that, which

17   was to say that it's discretionary.

18               But the second point is this word that I circled

19   here, "applicable to."  It does not say that continuing

20   tweeps whose employment is terminated will get whatever

21   severance they would have gotten under the prior policy.  It

22   says they're going to get the severance that was applicable

23   to those employees and that is, again, the same language

24   from the merger agreement.  They're going to get what was

25   applicable to those continuing employees.

1           And what was applicable to those continuing

2    employees is the category that says if you're an employee

3    here, then you are allowed to get this package in general.

4    If you're employee here, if you've got a higher level job,

5    then this package is applicable to you and we'll vary from

6    it on our discretion, but that's what was applicable.

7           When you tell the employees that for a year

8    they're going to get whatever package was applicable to

9    them, that doesn't mean when you tell me that you're telling

10   the employees you'll get whatever we want to give you.  It's

11   this is the package that you're going to get.  That does not

12   retain discretion.  That actually tosses discretion out the

13   window.  The parent must provide whatever was applicable to

14   them.

15           THE COURT:  Okay.  All right.  We'll have to

16   leave it there, Mr. Cohen.  Let me turn back and give

17   Mr. Meckley a few moments --

18           MR. COHEN:  Let me see if I can figure out how

19   to stop sharing.  There we go.

20           THE COURT:  You're a better person than I in

21   that regard.  Thank you.

22           Mr. Meckley, I think, Mr. Meckley, hearing all

23   this I think what you're kind of saying is you view the

24   dispute here, which the plaintiff has framed in terms of

25   fraud, as kind of like a difference of opinion about a word

1    and what a word in a contract means.  And I think you're

2    kind of suggesting to me, Judge, that's not what we

3    typically think of, like, evidence of fraud.  That's a

4    dispute amongst lawyers about what a word might mean, and

5    there needs to be more than that.

6              Is that kind of what's going on here in your

7    mind?  Or am I misreading what your argument is?  I'm not

8    saying it's correct.  I'm saying what the gist of your

9    argument is.

10             MR. MECKLEY:  Three points in response, Your

11   Honor.  The first point is exactly what you noted.

12             Mr. Cohen is arguing his interpretation of what

13   words mean, how they relate to one another, how do the FAQs

14   relate to the merger agreement, et cetera.  And his

15   arguments are just that.  They're arguments.  They're not

16   evidence.  Evidence is witness testimony under penalty of

17   perjury, interrogatories, responses to requests for

18   production.  That's evidence, not argument.

19             THE COURT:  Mr. Meckley, do you know, are there

20   any cases about whether contractural language and its

21   meaning -- I say contractural language here.  The FAQs

22   really are what's pointed to.  That's not a contract.  It's

23   a statement.  I guess, are you aware of cases that -- if

24   you're making the suggestion that this is a dispute about

25   the meaning of a word and that's not typically what we think

1    of as the kind of evidence that implicates the crime fraud

2    exception, are there cases that get to that question that

3    you're aware of?

4              MR. MECKLEY:  It's an excellent point, and I

5    think -- I can't cite them to you right now, Your Honor, but

6    if we go through the sequencing process that I propose that

7    the Court follow, which is decide the motion to dismiss then

8    we can do the briefing -- we can do that briefing at any

9    point the Court wants it to drill down on some of the

10   specific issues that the Court has highlighted today, that's

11   what I would suggest doing.  But I agree with you.  You

12   characterized my first point correctly, which is this is

13   argument.  This isn't evidence, and it's very much one

14   attorney's interpretation of what the language means.

15             THE COURT:  Let me let you continue.

16             MR. MECKLEY:  The second point I wanted to make

17   is Mr. Cohen made the suggestion that not all of these

18   documents would be privileged, that there would be some

19   documents that would not be privileged and those should be

20   produced.  And he made an example of communications, e-mails

21   between the firms on the other side of the transaction.

22             And that is not true.  All documents will be

23   privileged.  The privilege covers all pre-merger

24   negotiations, and specifically this is -- I would refer the

25   Court to the *Great Hill Equity Partners* case it's 80 A 3d

1  155 Delaware 2013.  Absent an express carveout in the

2  relevant merger agreement, this agreement provides that

3  privileges over all merger communications, including those

4  relating to the negotiation of the merger itself, passed to

5  the surviving corporation in the merger.  His exact example,

6  those documents would be privileged based upon this.  I want

7  to clarify that.

8          Third and final point.  I think Mr. Cohen

9  suggested that we should have the law firms do all this

10  extremely expensive, time-consuming, burdensome work to sort

11  of go through and prep privilege logs in the hope that at

12  some point down the line the motion to dismiss is overruled

13  and, therefore, now, immediately, we can proceed to that.

14  And I would just suggest that's exact reverse of what we

15  should be doing in terms of efficiency, and these firms

16  should not have do all that work if the motion to dismiss is

17  going to be or would be granted, in which case I believe

18  that if the motion to dismiss is granted, all of this goes

19  away.  There is no fraud claim in the case.

20          That's my last point.

21          THE COURT:  Okay.  I thank counsel for their

22  arguments.

23          What I'm going do is get back to you with some

24  answer on what we're doing with regard to this issue this

25  week in short order, and one way or the other, that may also

1    include an ask for the parties to submit maybe just an

2    additional letter brief, cabined to just a couple of pages,

3    that may supplement the record in terms of relevant caselaw

4    since we talked about that today and I think at some point

5    both sides have suggested there might well be additional

6    relevant caselaw that could help the Court.  At a minimum,

7    I'll do that and let you know how I'm going to proceed with

8    regard to the remaining issue as regards the motion to

9    quash.

10             Before we end, Mr. Cohen, I saw you raise your

11   hand.  Is there anything you want to say procedurally before

12   we end?

13             MR. COHEN:  One thing in terms of the question

14   on caselaw, I would point the Court to the *Montada* case

15   where it analyzed a representation to employees and which

16   words were fraudulent within those representations.

17             Procedurally, Your Honor, we have set a deadline

18   for the responses to the subpoena of tomorrow for written

19   responses and objections.  I just wanted to make sure the

20   Court was aware of that.  If you want that to be stayed

21   pending something further, you should let us know.  I think,

22   certainly, written responses and objections are not

23   particularly burdensome, and so depending on what the

24   Court's sense of timing is, you should let us know how you

25   want to handle that, whether it's written responses,

1    objections, or further productions.

2              THE COURT:  Mr. Meckley, is there anything you

3    want to say about whether -- Mr. Cohen is talking about

4    written responses to regarding objections could be provided

5    even if the process of searching for and assessing

6    responsive documents in light of them would not be.

7              MR. MECKLEY:  My belief, based upon the FRCP and

8    just sort of common practical sense, would be the motion to

9    quash should stay any response unless and until the motion

10   to quash is resolved.  So there should be no response while

11   that is pending.

12             THE COURT:  Okay.  That may be something I'll

13   ask the parties to at least -- to meet-and-confer about

14   briefly hereafter, but let me -- as I said, I'll get you a

15   short order that would tell you procedurally how I'm going

16   to try to handle this issue and look for some additional

17   language from the Court about what I might be asking the

18   parties to do.  Okay.

19             But thank you, counsel, for your time.  I

20   appreciate it, and I'll look forward to being in touch with

21   you in the future.  Take care.  We'll go off the record.

22   Thank you.

23

24

25

1              **C E R T I F I C A T E**

2         I, Deanna L. Warner, a Registered Professional

3    Reporter, do hereby certify that as such Registered

4    Professional Reporter, I was present at and reported in

5    Stenotype shorthand the above and foregoing proceedings.

6

7    _____

8    Deanna L. Warner, RPR, CSR
     Official Court Reporter
     U.S. District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**1**

**1** [1] - 14:7
**100** [1] - 34:8
**12** [1] - 33:1
**12(b)(6** [2] - 4:10, 5:5
**13** [1] - 33:1
**14-count** [1] - 19:17
**155** [1] - 38:1
**16th** [1] - 1:11

**2**

**20-plus** [1] - 15:18
**2013** [1] - 38:1
**2023** [1] - 1:11
**23-528-CFC-CJB** [1] - 2:4
**23-CV-528-JLH-CJB** [1] - 1:5
**24** [1] - 14:8

**3**

**3d** [1] - 37:25

**6**

**6.9(a** [1] - 25:11

**8**

**80** [1] - 37:25

**9**

**9.7** [1] - 25:12

**A**

**ability** - 7:2
**able** [1] - 12:17
**absent** [1] - 38:1
**absolutely** [2] - 10:8, 23:10
**acquiring** [1] - 33:5
**acquisition** [1] - 29:24
**act** [2] - 18:6, 18:19
**action** - 2:3
**acts** [1] - 3:20
**actual** [1] - 8:10
**add** [1] - 17:1
**additional** [6] - 5:21, 7:25, 11:10, 39:2, 39:5, 40:16

**address** [2] - 3:10, 22:12
**addressed** [2] - 2:7, 31:16
**addressing** [1] - 2:15
**adequacy** [1] - 21:7
**advocates** [1] - 23:13
**affected** [1] - 16:3
**affidavits** [2] - 8:1, 11:22
**afoot** [1] - 8:2
**agree** [1] - 37:11
**agreement** [27] - 5:21, 14:4, 14:10, 15:17, 15:18, 15:20, 16:18, 16:19, 22:5, 22:15, 25:11, 25:12, 25:17, 26:16, 30:2, 30:10, 30:20, 31:9, 31:14, 31:19, 31:25, 33:4, 33:13, 34:24, 36:14, 38:2
**agreements** [1] - 11:9
**ahead** [1] - 17:19
**Akiva** [1] - 2:19
**AKIVA** [1] - 1:17
**al** [3] - 1:3, 1:6, 2:3
**albeit** [3] - 6:11, 20:14, 23:6
**allegations** [20] - 4:11, 4:20, 5:7, 6:21, 6:23, 7:21, 7:24, 8:8, 8:14, 8:16, 9:8, 9:9, 10:17, 11:12, 12:1, 14:20, 28:1, 28:16
**allege** [2] - 4:3, 21:14
**alleged** [1] - 20:4
**allowed** [2] - 31:14, 35:3
**almost** [2] - 20:12, 29:10
**amending** [1] - 16:18
**amount** [2] - 25:6
**analyses** [3] - 6:3, 20:22, 28:7
**analysis** [13] - 4:4, 4:6, 6:11, 9:17, 15:11, 21:10, 21:12, 21:15, 21:17, 23:6, 23:14, 32:2
**analyzed** [1] - 39:15
**AND** [1] - 1:2
**announcements** [1] - 11:11
**answer** [2] - 24:20, 38:24
**answered** [1] - 15:21
**anyway** [2] - 6:7, 31:15
**APPEARANCES** [1] -

1:13
**appellate** [1] - 29:10
**applicability** [2] - 3:17, 11:15
**applicable** [16] - 32:9, 32:15, 32:18, 32:19, 32:22, 33:6, 33:8, 34:19, 34:22, 34:25, 35:1, 35:5, 35:6, 35:8, 35:13
**applies** [1] - 11:25, 21:17
**apply** [3] - 4:13, 14:20, 16:12
**appreciate** [3] - 6:16, 17:5, 40:20
**appropriate** [3] - 10:8, 10:14, 20:21
**areas** [1] - 32:23
**arguing** [4] - 2:24, 25:13, 30:5, 36:12
**argument** [25] - 2:5, 2:9, 2:20, 3:5, 8:4, 8:13, 12:7, 14:12, 14:16, 15:1, 19:22, 22:3, 22:6, 22:7, 22:10, 27:18, 31:5, 31:14, 33:24, 34:3, 36:7, 36:9, 36:18, 37:13
**arguments** [13] - 6:9, 7:20, 8:25, 11:18, 17:1, 19:10, 30:6, 30:12, 31:13, 31:17, 36:15, 38:22
**ARNOLD** [1] - 1:3
**Arnold** [1] - 2:3
**aside** [1] - 15:14
**aspects** [2] - 7:22, 9:15
**asserted** [2] - 5:6, 8:15
**asserting** [1] - 27:25
**assertion** [1] - 33:17
**assess** [7] - 6:7, 6:8, 20:11, 23:7, 23:8, 25:1, 25:3
**assessing** [3] - 5:10, 23:3, 40:5
**assessment** [5] - 5:25, 20:3, 20:6, 21:23
**assumption** [2] - 26:25, 27:8
**assuredly** [1] - 24:23
**attached** [1] - 14:7
**attempt** [1] - 21:21
**attempted** [2] - 21:17, 21:18
**attention** [1] - 17:8
**attorney** [7] - 4:17,

4:22, 7:7, 9:11, 27:2, 27:3, 29:7
**attorney's** [1] - 37:14
**attorney-client** [5] - 4:17, 4:22, 7:7, 9:11, 27:2
**attorneys** [1] - 7:3
**attractiveness** [1] - 20:18
**automated** [1] - 26:9
**available** [1] - 32:10
**aware** [5] - 12:6, 12:11, 36:23, 37:3, 39:20

**B**

**BARILLARE** [1] - 1:20, 3:1
**Barillare** [1] - 3:2
**based** [5] - 5:24, 16:2, 26:11, 38:6, 40:7
**basis** [2] - 24:9, 29:11
**becomes** [1] - 28:20
**begin** [2] - 2:13, 2:23
**behalf** [2] - 2:17, 3:2
**belief** [2] - 27:16, 40:7
**below** [3] - 32:13, 33:20
**beneficiaries** [1] - 30:7
**beneficiary** [3] - 14:10, 15:14, 25:13
**benefits** [8] - 14:5, 14:13, 14:21, 30:3, 30:21, 32:8, 33:22
**better** [1] - 35:20
**between** [8] - 8:19, 26:19, 37:21
**beyond** [2] - 12:17, 28:19
**big** [1] - 23:19
**bit** [1] - 3:13
**bolstering** [1] - 8:1
**breach** [1] - 7:7
**Brian** [1] - 3:3
**BRIAN** [1] - 1:21
**brief** [7] - 13:19, 13:23, 14:8, 19:6, 19:13, 33:15, 39:2
**briefing** [9] - 11:7, 12:4, 12:17, 12:23, 19:5, 19:13, 22:2, 37:8
**briefly** [2] - 22:13, 40:14
**briefs** [3] - 10:24, 11:4, 19:11
**broad** [2] - 13:13, 25:7

**BROCKIUS** [1] - 1:19
**burden** [7] - 4:13, 5:11, 6:22, 11:23, 22:23, 22:24, 27:25
**burdensome** [2] - 38:10, 39:23
**Burke** [1] - 1:11
**busy** [1] - 3:14
**BY** [1] - 1:14

**C**

**cabined** [1] - 39:2
**California** [1] - 18:7
**camera** [5] - 13:2, 13:20, 24:20, 25:1, 26:23
**cannot** [2] - 15:16, 31:11
**car** [1] - 34:10
**care** [1] - 40:21
**cart** [1] - 4:23
**carveout** [1] - 38:1
**case** [23] - 3:19, 5:10, 6:5, 6:10, 7:13, 7:18, 9:8, 17:24, 18:11, 19:16, 19:18, 22:20, 22:24, 23:18, 24:7, 24:14, 27:25, 28:8, 30:16, 37:25, 38:17, 38:19, 39:14
**Case** [1] - 1:5
**caselaw** [5] - 28:3, 28:9, 39:3, 39:6, 39:14
**cases** [16] - 5:19, 5:25, 11:19, 11:24, 12:2, 12:5, 12:6, 12:11, 15:24, 28:5, 28:12, 28:13, 29:9, 36:20, 36:23, 37:2
**categorically** [1] - 32:10
**categories** [2] - 13:13, 32:11
**category** [1] - 35:2
**caveat** [4] - 14:17, 15:3, 15:5, 15:22
**certain** [7] - 2:5, 5:7, 7:22, 7:23, 22:21, 22:22, 28:1
**certainly** [15] - 3:10, 6:22, 10:7, 15:6, 15:19, 18:24, 19:1, 19:10, 20:17, 20:19, 20:23, 24:15, 25:21, 34:16, 39:22
**certainties** [1] - 15:5
**certify** [1] - 41:3

**cetera** [4] - 7:5, 8:11, 28:2, 36:14
**challenged** [1] - 19:18
**chance** [4] - 6:8, 20:11, 25:23, 29:18
**change** [3] - 15:11, 31:15, 31:25
**changing** [1] - 16:18
**characterized** [2] - 18:4, 37:12
**CHRISTENSEN** [3] - 1:14, 1:14, 2:16
**Christensen** [2] - 2:17
**Christopher** [1] - 1:10
**circled** [1] - 34:18
**circumstance** [1] - 19:20
**cite** [1] - 37:5
**cited** [1] - 8:22
**cites** [1] - 12:7
**civil** [1] - 2:3
**claim** [22] - 4:2, 4:3, 4:12, 4:25, 5:2, 5:6, 7:12, 9:15, 10:12, 18:5, 18:6, 18:7, 18:8, 20:4, 21:2, 21:6, 21:20, 23:2, 23:8, 23:24, 27:2, 38:19
**claimed** [1] - 14:14
**claims** [12] - 14:20, 17:21, 17:22, 18:2, 18:4, 18:9, 18:10, 18:12, 18:13, 18:15
**clarifies** [1] - 17:18
**clarify** [2] - 17:15, 38:7
**clarifying** [2] - 17:10, 17:11
**clause** [1] - 25:13
**clear** [1] - 17:14
**clearly** [1] - 21:14
**client** [6] - 4:17, 4:22, 7:7, 9:11, 27:2, 27:10
**closely** [1] - 20:23
**co** [1] - 2:18
**co-counsel** [1] - 2:18
**codefendants** [1] - 22:15
**coexist** [1] - 15:19
**COHEN** [11] - 1:17, 20:17, 23:10, 24:15, 27:4, 28:11, 29:23, 30:23, 34:5, 35:18, 39:13
**Cohen** [14] - 2:19, 19:22, 19:24, 23:23, 26:24, 29:20, 30:16, 33:14, 35:16, 36:12, 37:17, 38:8, 39:10,

40:3
**colleague** [1] - 17:2
**colleagues** [1] - 3:3
**color** [1] - 32:6
**comments** [3] - 13:15, 16:5, 33:15
**common** [1] - 40:8
**communicated** [1] - 3:21
**communication** [2] - 14:7, 15:4
**communications** [13] - 5:22, 7:3, 13:14, 14:4, 21:22, 25:15, 25:17, 26:18, 26:19, 27:1, 29:7, 37:20, 38:3
**company** [5] - 31:6, 31:20, 32:3, 32:21, 33:5
**compared** [1] - 24:13
**comparison** [2] - 18:1, 18:14
**compensation** [1] - 30:2
**complaint** [12] - 4:20, 6:20, 7:21, 7:24, 8:7, 8:15, 8:25, 10:18, 12:1, 19:17, 20:4, 21:7
**completed** [1] - 18:21
**completely** [1] - 7:10
**components** [1] - 19:5
**concerning** [1] - 15:4
**conclusion** [1] - 10:16
**concrete** [1] - 15:6
**conduct** [1] - 7:2
**confer** [1] - 40:13
**confused** [2] - 10:1, 17:11
**considered** [1] - 16:20
**constitute** [1] - 11:5
**constitutes** [1] - 12:3
**consuming** [1] - 38:10
**content** [1] - 27:23
**context** [5] - 6:5, 6:7, 8:22, 9:6, 16:13
**contexts** [1] - 8:20
**continue** [1] - 37:15
**continuing** [3] - 34:19, 34:25, 35:1
**contract** [2] - 36:1, 36:22
**contracts** [1] - 7:22
**contractual** [1] - 15:6
**contractural** [5] - 11:9, 11:25, 28:2, 36:20, 36:21
**Corp** [3] - 1:6, 2:3, 31:24

**corporation** [1] - 38:5
**correct** [5] - 8:5, 9:7, 16:22, 26:24, 36:8
**correctly** [3] - 26:17, 29:4, 37:12
**counsel** [13] - 1:18, 2:10, 2:12, 2:13, 2:14, 2:18, 2:22, 2:23, 2:24, 20:1, 38:21, 40:19
**Counsel** [1] - 1:22
**counts** [1] - 19:18
**couple** [4] - 3:9, 20:20, 26:5, 39:2
**course** [3] - 3:10, 5:23, 10:15
**court** [3] - 2:4, 3:13, 19:18
**COURT** [30] - 1:1, 2:1, 2:21, 3:6, 5:4, 7:16, 8:12, 9:12, 10:22, 12:21, 13:22, 15:23, 16:25, 17:10, 17:17, 19:1, 22:19, 23:22, 26:24, 27:17, 29:14, 30:16, 33:14, 35:15, 35:20, 36:19, 37:15, 38:21, 40:2, 40:12
**Court** [31] - 2:6, 3:17, 3:24, 3:25, 5:25, 6:2, 6:14, 10:11, 12:19, 17:16, 17:24, 18:24, 19:3, 20:9, 22:16, 22:17, 23:20, 25:25, 26:5, 26:22, 29:6, 37:7, 37:9, 37:10, 37:25, 39:6, 39:14, 39:20, 40:17, 41:8, 41:8
**Court's** [3] - 12:14, 20:18, 39:24
**cover** [1] - 3:11
**covers** [1] - 37:23
**crime** [24] - 3:17, 4:13, 5:9, 6:21, 7:14, 8:9, 8:17, 8:22, 9:5, 9:10, 10:19, 11:3, 11:16, 11:24, 21:4, 21:5, 21:15, 21:17, 23:8, 28:7, 28:22, 29:1, 29:8, 37:1
**crisply** [2] - 19:11, 19:12
**crossed** [1] - 27:5
**CSR** [1] - 41:7
**current** [2] - 15:10, 16:5

# D

**damage** [2] - 21:20
**damages** [3] - 21:19, 23:25
**data** [2] - 13:18, 16:2
**days** [1] - 26:17
**deadline** [1] - 39:17
**Deanna** [2] - 41:2, 41:7
**decide** [2] - 9:13, 37:7
**decided** [2] - 19:3, 19:21
**decides** [1] - 10:11
**deciding** [2] - 9:16, 25:22
**decision** [5] - 6:4, 20:13, 23:11, 24:10, 29:2
**decisions** [2] - 3:24, 6:3
**declarations** [1] - 11:21
**default** [1] - 10:19
**Defendant** [1] - 1:22
**defendant** [1] - 27:21
**defendant's** [1] - 27:22
**defendants** [8] - 3:2, 3:5, 3:19, 8:21, 14:11, 19:14, 19:20, 19:25
**Defendants** [1] - 1:7
**defendants'** [5] - 2:5, 2:7, 2:22, 3:7, 19:25
**DELAWARE** [1] - 1:2
**Delaware** [4] - 2:13, 2:14, 2:23, 38:1
**delivering** [1] - 3:5
**demonstrate** [3] - 8:1, 11:15, 27:24
**denying** [1] - 6:24
**depositions** [1] - 7:4
**described** [2] - 10:8, 25:7
**detail** [1] - 6:9
**determination** [1] - 13:3
**determined** [1] - 25:1
**differ** [1] - 5:5
**difference** [5] - 5:24, 8:19, 35:25
**differences** [1] - 5:24
**different** [17] - 5:3, 5:23, 6:12, 6:20, 7:10, 8:6, 14:24, 20:5, 20:14, 21:15, 21:16, 23:7, 23:25, 32:6, 32:11, 32:12,

34:12
**direction** [1] - 12:13
**disagree** [1] - 14:1
**discovery** [13] - 4:14, 4:21, 6:25, 7:2, 17:23, 17:25, 18:11, 18:13, 18:14, 18:20, 18:22, 18:24, 24:8
**discretion** [6] - 31:3, 32:17, 33:7, 35:6, 35:12
**discretionary** [16] - 15:12, 15:15, 15:16, 30:9, 30:10, 31:8, 32:4, 33:9, 33:10, 34:6, 34:7, 34:8, 34:15, 34:17
**discuss** [2] - 28:13, 29:9
**discussion** [1] - 29:12
**discussions** [1] - 13:15
**dismiss** [27] - 4:1, 6:6, 6:10, 7:11, 9:14, 9:18, 9:23, 10:12, 10:18, 12:15, 17:25, 18:16, 20:2, 20:12, 20:13, 22:3, 23:7, 23:17, 23:24, 24:11, 25:24, 31:17, 32:1, 37:7, 38:12, 38:16, 38:18
**dismissing** [1] - 21:3
**dispose** [1] - 9:19
**dispositionally** [1] - 24:16
**dispute** [5] - 10:24, 23:19, 35:24, 36:4, 36:24
**distinct** [2] - 18:9, 23:15
**DISTRICT** [2] - 1:1, 1:2
**District** [1] - 41:8
**district** [2] - 6:15, 12:18
**doctrine** [1] - 4:17
**document** [7] - 9:2, 16:23, 25:17, 26:11, 28:24, 29:24
**documents** [33] - 7:25, 8:10, 9:25, 12:24, 13:2, 13:6, 13:14, 13:17, 22:22, 22:25, 23:1, 24:22, 24:23, 25:3, 25:8, 25:10, 26:3, 26:8, 26:13, 27:1, 27:9, 27:11, 28:1, 28:12, 28:18, 28:25, 37:18, 37:19, 37:22, 38:6,

40:6
**dog** [1] - 4:23
**done** [3] - 27:15, 34:1, 34:16
**doubt** [1] - 13:1
**Dougherty** [1] - 2:17
**down** [4] - 23:25, 28:14, 37:9, 38:12
**drafts** [1] - 13:14
**draw** [1] - 17:7
**drill** [1] - 37:9
**drivers** [1] - 18:11
**during** [1] - 27:7
**dwarf** [1] - 18:25

## E

**e-mailing** [1] - 27:6
**e-mails** [3] - 27:5, 29:6, 37:20
**early** [1] - 23:21
**Easterbrook** [1] - 29:3
**easy** [1] - 13:20
**efficiency** [2] - 20:8, 38:15
**efficient** [3] - 3:14, 6:14, 24:5
**eight** [1] - 32:14
**either** [1] - 8:20
**element** [4] - 21:14, 21:21, 23:25, 24:1
**elements** [3] - 11:3, 28:22, 29:13
**Elon's** [1] - 31:3
**employee** [5] - 32:9, 32:10, 32:18, 35:2, 35:4
**employees** [22] - 22:4, 22:14, 22:18, 25:15, 26:19, 26:20, 30:4, 30:14, 31:22, 32:2, 32:12, 32:14, 32:19, 33:2, 33:12, 34:23, 34:25, 35:2, 35:7, 35:10, 39:15
**employment** [1] - 34:20
**encompass** [2] - 13:17, 25:16
**end** [3] - 28:14, 39:10, 39:12
**enforce** [2] - 24:9, 30:7
**enforceable** [1] - 30:8
**engage** [1] - 3:20
**entertain** [1] - 17:8
**entire** [2] - 19:18, 31:5
**entirely** [6] - 10:10, 20:25, 21:1, 30:9,

30:10, 31:9
**entitle** [2] - 4:14, 4:21
**entity** [1] - 31:23
**Equity** [1] - 37:25
**Eric** [1] - 3:3
**ERIC** [1] - 1:20
**ESQ** [5] - 1:14, 1:17, 1:20, 1:20, 1:21
**essentially** [6] - 7:20, 8:2, 8:24, 9:5, 18:5, 24:23
**establish** [2] - 22:16, 28:22
**et** [7] - 1:3, 1:6, 2:3, 7:5, 8:10, 28:2, 36:14
**events** [1] - 16:4
**evidence** [60] - 5:1, 5:14, 5:15, 5:18, 6:23, 7:2, 7:6, 7:8, 7:25, 8:2, 8:6, 8:7, 8:8, 8:9, 8:22, 8:23, 9:4, 11:1, 11:6, 11:12, 11:15, 11:21, 11:23, 12:3, 12:7, 12:8, 12:11, 12:19, 13:4, 13:25, 14:1, 14:2, 14:3, 14:17, 20:7, 21:24, 21:25, 28:3, 28:6, 28:14, 28:17, 28:20, 28:21, 28:23, 29:9, 29:12, 29:16, 29:22, 29:25, 30:19, 36:3, 36:16, 36:18, 37:1, 37:13
**evidentiary** [1] - 20:14
**exact** [4] - 5:22, 12:18, 38:5, 38:14
**exactly** [3] - 4:6, 11:20, 36:11
**example** [3] - 18:19, 37:20, 38:5
**excellent** [1] - 37:4
**exception** [16] - 3:17, 4:13, 5:9, 6:21, 7:14, 8:9, 8:18, 9:10, 10:20, 11:3, 11:16, 11:24, 21:4, 23:9, 28:7, 37:2
**exclusive** [1] - 15:17
**exercise** [1] - 32:17
**exercising** [1] - 33:7
**Exhibit** [1] - 14:7
**exists** [3] - 4:19, 14:13, 18:8
**expensive** [1] - 38:10
**experience** [1] - 19:19
**express** [1] - 38:1
**extent** [5] - 22:21, 24:18, 25:19, 25:21,

33:19
**extra** [1] - 8:23
**extremely** [3] - 13:13, 26:23, 38:10

## F

**facie** [9] - 3:18, 5:10, 6:5, 6:10, 7:13, 7:18, 22:24, 27:25, 28:8
**fact** [10] - 6:24, 9:21, 11:2, 14:15, 16:9, 16:10, 18:13, 21:21, 27:2, 28:21
**factors** [2] - 21:6, 21:8
**facts** [3] - 5:20, 8:1, 11:8
**factual** [2] - 4:11, 8:8
**failure** [1] - 4:2
**fair** [4] - 23:9, 23:10, 24:10, 24:14
**faith** [1] - 27:16
**false** [4] - 22:1, 30:22, 33:12, 33:18
**family** [1] - 18:6
**famous** [1] - 29:1
**FAQ** [3] - 29:24, 32:24, 33:1
**FAQs** [8] - 15:3, 15:16, 15:19, 15:22, 16:16, 16:19, 36:13, 36:21
**fault** [1] - 7:17
**favorable** [4] - 14:6, 32:8, 33:23, 34:1
**felt** [1] - 17:15
**few** [3] - 2:1, 33:15, 35:17
**fight** [1] - 11:4
**figure** [5] - 3:18, 10:5, 24:4, 24:5, 35:18
**figuring** [2] - 23:3, 26:2
**final** [1] - 38:8
**financial** [1] - 16:2
**finder** [1] - 11:2
**firm** [3] - 13:16, 27:10, 27:14
**firms** [7] - 13:12, 13:16, 26:6, 27:10, 37:21, 38:9, 38:15
**first** [12] - 2:2, 2:12, 3:7, 3:12, 4:16, 9:14, 10:12, 12:10, 20:22, 22:12, 36:11, 37:12
**fit** [1] - 29:7
**five** [3] - 13:12, 21:8, 28:25
**FMLA** [2] - 18:12, 18:17

**focus** [2] - 12:15, 18:16
**focused** [4] - 13:19, 21:24, 25:10, 25:16
**focuses** [1] - 21:5
**folks** [5] - 9:24, 21:8, 26:19
**follow** [1] - 37:7
**following** [1] - 12:14
**FOR** [1] - 1:2
**foregoing** [1] - 41:5
**foregone** [1] - 10:16
**forward** [13] - 10:25, 13:24, 14:18, 14:22, 15:4, 15:24, 16:3, 16:8, 20:8, 23:1, 24:7, 24:14, 40:20
**forward-looking** [6] - 14:18, 14:22, 15:4, 15:24, 16:3, 16:8
**four** [1] - 26:17
**framed** [1] - 35:24
**framework** [1] - 20:14
**frankly** [6] - 13:11, 19:8, 23:19, 26:15, 26:19, 30:25
**fraud** [50] - 3:17, 3:20, 4:3, 4:13, 5:8, 5:9, 6:1, 6:7, 6:21, 7:14, 8:1, 8:9, 8:16, 8:18, 8:22, 9:5, 9:10, 9:15, 10:12, 10:19, 11:3, 11:16, 11:24, 20:4, 21:2, 21:4, 21:5, 21:6, 21:8, 21:10, 21:15, 21:17, 21:18, 21:20, 21:21, 23:2, 23:8, 23:9, 23:24, 28:7, 28:22, 29:1, 29:8, 29:22, 30:19, 35:25, 36:3, 37:1, 38:19
**fraudulent** [1] - 39:16
**FRCP** [1] - 40:7
**frequently** [1] - 16:17
**fulsome** [1] - 12:20
**future** [6] - 14:23, 16:2, 17:19, 19:4, 29:22, 40:21

## G

**gained** [1] - 9:18
**general** [1] - 35:3
**generally** [2] - 15:9, 15:10
**gist** [2] - 8:3, 36:8
**glaring** [1] - 30:25
**good-faith** [1] - 27:16

**grant** [1] - 23:24
**granted** [3] - 24:13, 38:17, 38:18
**great** [3] - 3:6, 6:9, 37:25
**guess** [10] - 3:8, 3:12, 6:2, 6:3, 11:17, 13:22, 15:23, 27:19, 28:4, 36:23

## H

**hand** [5] - 5:12, 5:14, 23:8, 28:18, 39:11
**handle** [3] - 12:22, 39:25, 40:16
**happy** [1] - 3:10
**hear** [1] - 2:8
**hearing** [1] - 35:22
**heart** [1] - 17:23
**heavy** [1] - 5:13
**help** [2] - 14:12, 39:6
**hereafter** [2] - 16:4, 40:14
**hereby** [1] - 41:3
**higher** [3] - 4:14, 4:15, 35:4
**highlighted** [2] - 32:5, 37:10
**hill** [1] - 37:25
**holdings** [2] - 31:6, 31:23
**Honor** [31] - 2:16, 2:20, 3:1, 4:8, 6:16, 10:13, 12:9, 13:10, 15:2, 17:4, 20:17, 22:1, 22:11, 23:11, 24:18, 24:24, 25:1, 25:21, 26:15, 27:4, 28:11, 29:23, 30:23, 31:12, 32:6, 32:25, 34:5, 34:10, 36:11, 37:5, 39:17
**Honor's** [3] - 3:4, 6:24, 26:1
**Honorable** [1] - 1:10
**hope** [2] - 15:21, 38:11
**hopefully** [1] - 9:19
**horse** [1] - 4:23
**hour** [2] - 29:18, 33:16
**huge** [1] - 13:17
**hurdle** [1] - 27:19

## I

**i.e** [1] - 14:3
**identical** [1] - 20:23

**identified** [2] - 12:16, 18:12
**identify** [3] - 2:11, 12:11, 26:8
**immediately** [1] - 38:13
**implicated** [2] - 12:24, 27:1
**implicates** [1] - 37:1
**import** [1] - 23:4
**IN** [2] - 1:1, 1:2
**in-camera** [3] - 13:2, 24:20, 25:1
**inclined** [1] - 24:18
**include** [1] - 39:1
**included** [2] - 14:17, 33:3
**including** [3] - 21:8, 30:21, 38:3
**incorrect** [1] - 19:7
**indicative** [1] - 30:19
**inefficient** [1] - 20:20
**information** [2] - 9:25, 33:2
**informative** [1] - 16:22
**informed** [1] - 33:19
**instead** [1] - 25:5
**insufficient** [1] - 7:19
**intended** [5] - 3:19, 16:12, 22:10, 29:22, 30:14
**intent** [2] - 16:15, 21:9
**intentionally** [1] - 22:1
**interlock** [1] - 28:25
**internal** [1] - 27:9
**interpretation** [2] - 36:12, 37:14
**interrogatories** [3] - 7:5, 18:22, 36:17
**interrogatory** [1] - 8:10
**interval** [1] - 9:24
**intruded** [1] - 4:21
**invaded** [1] - 4:21
**involve** [1] - 7:3
**involved** [2] - 13:12, 25:3
**involving** [1] - 29:2
**Iqbal** [2] - 4:11
**irrefutable** [1] - 30:25
**irrelevant** [1] - 31:18
**issue** [24] - 2:7, 3:16, 3:23, 4:5, 6:2, 6:7, 6:10, 8:17, 8:18, 9:17, 9:19, 10:13, 10:14, 12:18, 13:2, 13:6, 14:2, 23:9, 23:17, 24:11, 25:11, 38:24, 39:8, 40:16
**issued** [1] - 2:8

**issues** [8] - 2:9, 3:13, 13:18, 17:2, 19:9, 20:10, 24:5, 37:10
**issuing** [2] - 24:25, 27:14
**items** [1] - 8:7
**itself** [3] - 26:4, 33:13, 38:4

**J**

**job** [1] - 35:4
**JODY** [1] - 1:20
**Jody** [1] - 3:1
**Joe** [1] - 2:16
**John** [1] - 29:3
**joined** [1] - 2:18
**JOSEPH** [1] - 1:14
**Judge** [3] - 8:24, 13:1, 36:2
**judge** [1] - 23:13
**jump** [4] - 3:8, 7:16, 8:12, 22:19
**jury** [1] - 29:11

**K**

**Kamerman** [1] - 2:18
**KAMERMAN** [1] - 1:16
**key** [1] - 3:16
**kind** [13] - 3:12, 3:24, 10:1, 11:14, 13:7, 13:23, 14:9, 34:3, 35:23, 35:25, 36:2, 36:6, 37:1
**kinds** [2] - 11:24, 22:25
**Klein** [1] - 2:19
**KLEIN** [1] - 1:16
**knowing** [1] - 6:14
**knowingly** [1] - 22:1
**knowledge** [2] - 9:17, 28:19

**L**

**lack** [1] - 4:2
**laid** [1] - 3:19
**language** [18] - 11:25, 14:9, 15:8, 16:8, 16:12, 22:22, 28:2, 30:17, 32:5, 32:6, 32:7, 33:3, 33:12, 34:23, 36:20, 36:21, 37:14, 40:17
**large** [5] - 25:5, 25:6, 25:19, 26:17, 26:23
**largely** [1] - 11:25

**larger** [1] - 27:13
**last** [3] - 33:14, 33:16, 38:20
**law** [4] - 4:18, 13:12, 13:16, 26:6, 27:9, 27:14, 38:9
**LAW** [1] - 1:14
**lawsuit** [1] - 18:17
**lawyers** [2] - 26:20, 36:4
**layoffs** [1] - 17:23
**least** [5] - 3:25, 17:16, 26:22, 27:8, 40:13
**leave** [3] - 18:6, 21:3, 35:16
**left** [1] - 31:2
**less** [5] - 5:18, 11:13, 14:5, 20:6, 24:12, 32:8, 33:22, 33:25
**letter** [1] - 39:2
**letting** [1] - 4:23
**level** [3] - 32:12, 32:14, 35:4
**Lewis** [1] - 3:2
**LEWIS** [1] - 1:19
**light** [2] - 20:10, 40:6
**likely** [1] - 3:21
**limit** [1] - 12:5
**limited** [2] - 12:5, 19:13
**line** [4] - 2:11, 3:24, 14:25, 38:12
**linked** [1] - 20:23
**LLC** [1] - 1:14
**LLP** [1] - 1:19
**log** [3] - 24:23, 24:25, 26:3
**logging** [1] - 26:9
**logs** [1] - 38:11
**look** [19] - 6:9, 8:16, 13:20, 15:25, 21:13, 22:2, 22:13, 22:21, 22:23, 23:12, 25:22, 26:10, 26:14, 30:18, 33:20, 34:9, 40:16, 40:20
**looked** [2] - 29:6
**looking** [18] - 4:5, 4:7, 12:18, 13:25, 14:18, 14:22, 15:4, 15:24, 16:3, 16:8, 17:19, 20:24, 21:7, 23:3, 23:16, 29:3
**LOUCHNANE** [1] - 1:21
**Loughnane** [1] - 3:4

**M**

**mailing** [1] - 27:6
**mails** [3] - 27:5, 29:6, 37:20
**main** [2] - 13:24, 14:15
**manner** [1] - 3:14
**married** [1] - 15:8
**matter** [2] - 2:2, 29:16
**mean** [6] - 5:17, 10:9, 24:1, 33:20, 34:10, 35:9, 36:4, 36:13
**meaning** [4] - 23:4, 34:4, 36:21, 36:25
**meaningless** [2] - 25:14, 31:4
**means** [9] - 5:15, 21:22, 31:1, 31:2, 34:1, 34:8, 34:14, 36:1, 37:14
**meant** [6] - 22:8, 22:17, 22:18, 24:10, 33:24, 33:25
**mechanism** [4] - 25:5, 25:20, 26:2, 26:3
**MECKLEY** [17] - 1:20, 4:8, 6:16, 8:5, 9:7, 10:6, 12:9, 13:10, 15:2, 16:11, 17:4, 17:13, 17:20, 36:10, 37:4, 37:16, 40:7
**Meckley** [17] - 3:3, 3:4, 3:7, 3:8, 13:8, 16:25, 20:1, 22:12, 25:7, 27:21, 29:18, 33:15, 35:17, 35:22, 36:19, 40:2
**medical** [1] - 18:6
**meet** [3] - 11:23, 28:2, 40:13
**meet-and-confer** [1] - 40:13
**memo** [3] - 29:4, 29:5
**memory** [1] - 29:2
**memos** [1] - 29:4
**mentioned** [2] - 6:19, 32:24
**mere** [2] - 4:19, 9:8
**merely** [2] - 11:12, 16:16
**merger** [31] - 5:21, 14:4, 15:17, 15:18, 15:20, 16:18, 16:19, 22:5, 22:15, 25:11, 25:12, 25:17, 26:16, 30:1, 30:10, 30:20, 31:9, 31:14, 31:18, 31:24, 32:20, 33:4, 33:12, 34:24, 36:14,

37:23, 38:2, 38:3, 38:4, 38:5
**merits** [1] - 5:2
**met** [7] - 7:14, 11:3, 21:5, 22:23, 25:2, 27:19, 27:24
**might** [15] - 7:6, 7:8, 12:24, 14:1, 16:2, 16:20, 20:8, 21:13, 23:4, 24:6, 26:8, 26:13, 36:4, 39:5, 40:17
**mind** [1] - 36:7
**mindful** [1] - 5:23
**minimum** [1] - 39:6
**mirroring** [1] - 12:1
**misleading** [1] - 33:18
**misreading** [1] - 36:7
**misstate** [1] - 10:6
**moments** [1] - 35:17
**Montada** [1] - 39:14
**month** [3] - 25:25, 32:13, 32:14
**months** [2] - 25:25, 26:5
**Morgan** [1] - 3:2
**MORGAN** [1] - 1:19
**morning** [3] - 2:16, 2:20, 3:1
**most** [3] - 24:4, 29:1, 30:25
**motion** [37] - 2:5, 2:9, 2:15, 3:7, 4:1, 4:10, 6:6, 6:9, 7:11, 9:18, 10:11, 10:18, 12:15, 17:9, 18:15, 19:3, 19:21, 20:12, 20:13, 22:2, 23:7, 23:17, 23:24, 24:11, 24:24, 25:23, 25:24, 26:6, 31:16, 32:1, 37:7, 38:12, 38:16, 38:18, 39:8, 40:8, 40:9
**MOTION** [2] - 1:8, 1:10
**motions** [6] - 9:4, 9:14, 9:23, 17:25, 19:9, 20:2
**moving** [3] - 23:18, 24:7, 24:14
**MR** [28] - 2:16, 3:1, 4:8, 6:16, 8:5, 9:7, 10:6, 12:9, 13:10, 15:2, 16:11, 17:4, 17:13, 17:20, 20:17, 23:10, 24:15, 27:4, 28:11, 29:23, 30:23, 34:5, 35:18, 36:10, 37:4, 37:16, 39:13, 40:7
**multiple** [1] - 13:15

**Musk** [1] - 31:6
**must** [2] - 11:19, 35:13
**mustered** [1] - 7:25

## N

**narrow** [1] - 23:15
**narrowly** [3] - 21:23, 25:10, 25:16
**nature** [1] - 15:22
**necessarily** [2] - 4:15, 7:13
**necessary** [4] - 7:9, 12:12, 25:2, 25:4
**need** [10] - 5:8, 9:3, 11:15, 11:21, 17:12, 19:11, 21:14, 24:22, 33:2
**needed** [4] - 11:11, 11:21, 18:1, 19:14
**needs** [3] - 8:22, 20:9, 36:5
**negotiated** [1] - 26:16
**negotiation** [1] - 38:4
**negotiations** [3] - 27:6, 27:7, 37:24
**never** [4] - 19:16, 22:10, 22:16, 22:17
**normal** [1] - 27:13
**noted** [1] - 36:11
**nothing** [2] - 5:14, 31:10
**notice** [1] - 18:20
**Number** [1] - 2:3
**number** [9] - 12:13, 13:17, 25:3, 25:4, 26:23, 28:15, 31:13, 31:15, 34:6

## O

**objections** [5] - 26:7, 39:19, 39:22, 40:1, 40:4
**obligation** [1] - 32:3
**obviated** [1] - 17:25
**obviously** [7] - 3:13, 10:15, 16:14, 19:3, 21:1, 23:11, 27:13
**occur** [1] - 16:4
**occurred** [1] - 5:8
**October** [1] - 1:11
**OF** [2] - 1:2, 1:8
**Official** [1] - 41:8
**old** [1] - 32:3
**once** [2] - 6:8, 28:18
**one** [38] - 3:15, 3:25,

4:5, 4:25, 5:12, 5:13, 6:19, 7:18, 9:8, 12:25, 14:17, 15:3, 17:6, 17:14, 18:5, 19:5, 23:8, 25:3, 27:20, 28:15, 28:24, 29:2, 29:4, 29:5, 29:17, 30:5, 30:12, 31:13, 31:15, 32:25, 33:6, 33:8, 34:6, 36:13, 37:13, 38:25, 39:13
**one-off** [1] - 32:25
**opening** [1] - 13:23
**opine** [1] - 16:11
**opinion** [1] - 35:25
**opportunity** [2] - 7:4, 7:15
**opposed** [1] - 6:6
**opposite** [1] - 27:6
**opposition** [1] - 21:16
**oral** [1] - 2:8
**order** [4] - 2:8, 6:14, 38:25, 40:15
**original** [1] - 22:20
**otherwise** [2] - 24:8, 31:3
**outlined** [1] - 10:11
**outright** [1] - 30:13
**overcome** [2] - 9:10, 10:18
**overruled** [1] - 38:12
**overtake** [1] - 15:19
**own** [2] - 13:2, 13:16

## P

**package** [7] - 32:15, 32:18, 32:21, 35:3, 35:5, 35:8, 35:11
**packages** [2] - 32:13, 32:15
**page** [2] - 12:5, 14:7
**pages** [1] - 39:2
**pale** [3] - 18:1, 18:13, 18:14
**parent** [6] - 31:6, 31:20, 31:23, 32:3, 32:21, 35:13
**part** [8] - 10:23, 17:6, 19:9, 21:16, 23:22, 24:19, 28:15
**particular** [5] - 12:15, 28:13, 31:20, 31:21, 32:18
**particularly** [3] - 5:13, 24:19, 39:23
**parties** [11] - 11:4, 11:18, 11:23, 12:16,

13:8, 19:13, 26:25, 29:25, 39:1, 40:13, 40:18
**partners** [1] - 37:25
**party** [5] - 11:21, 14:10, 15:14, 25:13, 30:6
**pass** [1] - 24:1
**passed** [1] - 38:4
**past** [1] - 16:9
**path** [4] - 9:20, 20:15, 20:18, 20:21
**paths** [1] - 20:21
**pause** [1] - 26:5
**pausing** [1] - 24:10
**pay** [3] - 31:19, 31:20, 32:3
**payment** [1] - 33:6
**penalty** [1] - 36:16
**pending** [3] - 4:1, 39:21, 40:11
**people** [4] - 18:20, 21:24, 21:25, 27:6
**percentage** [1] - 27:13
**perfunctory** [1] - 13:19
**perhaps** [1] - 12:17
**perjury** [1] - 36:17
**permission** [1] - 3:4
**person** [3] - 23:4, 24:16, 35:20
**personal** [1] - 28:19
**perspective** [1] - 20:19
**phrase** [1] - 31:3
**piece** [2] - 15:14, 15:15
**pivot** [1] - 9:16
**place** [3] - 19:7, 19:25, 24:13
**Plaintiff** [1] - 1:18
**plaintiff** [9] - 5:6, 5:19, 8:17, 9:22, 10:2, 11:13, 12:7, 14:19, 35:24
**plaintiff's** [1] - 6:22
**Plaintiffs** [1] - 1:4
**plaintiffs** [14] - 2:6, 2:18, 4:2, 7:1, 8:15, 8:20, 10:25, 11:9, 14:2, 14:4, 14:13, 19:7, 27:22, 29:21
**plaintiffs'** [7] - 2:12, 7:17, 13:1, 14:8, 16:4, 18:16, 19:23
**plate** [1] - 20:10
**platform** [1] - 26:11
**plausibility** [2] - 6:8, 9:1
**plausible** [3] - 5:6,

5:9, 7:12
**plausibly** [2] - 4:3, 4:12
**play** [2] - 3:16, 21:10
**plays** [2] - 6:25, 24:5
**plead** [1] - 21:19
**pleading** [2] - 4:20, 21:10
**pled** [4] - 4:11, 6:1, 21:3, 21:12
**point** [27] - 9:3, 10:16, 12:12, 12:15, 16:4, 17:10, 17:11, 18:23, 19:2, 20:1, 22:23, 24:2, 25:1, 26:2, 26:10, 29:20, 34:18, 36:11, 37:4, 37:9, 37:12, 37:16, 38:8, 38:12, 38:20, 39:4, 39:14
**pointed** [8] - 6:1, 7:22, 11:14, 14:2, 27:23, 27:24, 29:16, 36:22
**pointing** [5] - 8:20, 9:1, 11:25, 23:1, 29:21
**points** [5] - 12:9, 19:6, 27:17, 29:15, 36:10
**policy** [2] - 14:6, 15:10, 16:6, 16:7, 31:25, 32:11, 34:21
**portion** [1] - 27:9
**position** [9] - 8:18, 10:7, 10:9, 10:13, 10:18, 10:21, 17:16, 17:18, 18:3
**positive** [1] - 10:4
**possible** [2] - 20:25, 21:1
**potential** [2] - 4:25, 14:23
**pound** [1] - 24:16
**pound-the-table** [1] - 24:16
**pounding** [1] - 24:7
**practical** [1] - 40:8
**pre** [1] - 37:23
**pre-merger** [1] - 37:23
**preference** [1] - 10:1
**prejudice** [4] - 9:13, 9:20, 24:6, 24:12
**premature** [1] - 10:10
**prep** [1] - 38:11
**preponderance** [4] - 5:13, 5:18, 6:22, 20:7
**present** [2] - 16:9, 41:4
**presentation** [1] - 11:1

**President** [1] - 29:2
**presumably** [3] - 5:1, 7:1, 7:6
**pretty** [5] - 3:24, 4:5, 4:6, 4:18, 9:19
**preview** [1] - 20:13
**prima** [9] - 3:18, 5:10, 6:5, 6:10, 7:13, 7:17, 22:24, 27:24, 28:8
**primarily** [1] - 32:24
**primary** [2] - 18:10, 18:16
**privilege** [10] - 4:17, 4:22, 7:8, 9:11, 21:22, 24:25, 26:3, 27:3, 37:23, 38:11
**privileged** [8] - 7:4, 27:8, 27:11, 27:15, 37:18, 37:19, 37:23, 38:6
**privileges** [1] - 38:3
**problem** [2] - 8:21, 29:6
**problematic** [1] - 30:24
**procedurally** [3] - 39:11, 39:17, 40:15
**proceed** [3] - 10:20, 38:13, 39:7
**proceeding** [1] - 26:25
**proceedings** [1] - 41:5
**process** [9] - 9:18, 10:2, 10:3, 10:7, 10:10, 26:4, 26:9, 37:6, 40:5
**produce** [1] - 26:7
**produced** [1] - 37:20
**product** [3] - 4:17, 13:14, 27:3
**production** [5] - 7:5, 18:21, 24:21, 27:12, 36:18
**productions** [1] - 40:1
**Professional** [2] - 41:2, 41:4
**program** [1] - 32:7
**projections** [1] - 16:1
**promise** [2] - 30:8, 32:25
**promised** [1] - 30:19
**propose** [1] - 37:6
**protect** [1] - 31:10
**protected** [1] - 21:22
**protecting** [1] - 34:10
**protection** [12] - 30:2, 30:8, 30:12, 30:17, 30:20, 33:11, 33:17, 33:20, 34:3, 34:7, 34:14, 34:15
**protections** [10] -

22:5, 22:7, 22:8, 22:11, 26:21, 31:1, 31:2, 31:7, 33:4, 33:25
**prove** [1] - 5:2
**proven** [1] - 10:20
**provide** [6] - 12:19, 22:11, 31:24, 32:21, 33:5, 35:13
**provided** [3] - 11:18, 14:5, 40:4
**provides** [3] - 30:2, 33:4, 38:2
**proving** [1] - 4:13
**provision** [2] - 3:21, 14:10
**provisions** [2] - 11:9, 25:11
**pull** [1] - 25:20
**purchasing** [1] - 31:23
**purely** [1] - 33:9
**put** [7] - 10:25, 13:24, 20:7, 21:16, 22:14, 22:16, 25:22
**putting** [3] - 4:22, 15:14, 23:1

---

**Q**

**quantum** [9] - 11:20, 12:11, 12:19, 28:3, 28:5, 28:13, 28:23, 29:9, 29:12
**quash** [2] - 2:5, 2:9, 19:9, 24:24, 25:23, 26:6, 39:9, 40:9, 40:10
**QUASH** [2] - 1:8, 1:10
**questions** [5] - 3:9, 3:11, 3:25, 16:17, 22:12
**quickly** [3] - 9:19, 29:23, 32:23

---

**R**

**raise** [1] - 39:10
**raised** [2] - 19:6, 19:9
**reach** [1] - 29:11
**read** [2] - 15:16, 23:5
**reading** [1] - 10:24
**real** [1] - 8:19
**reality** [1] - 14:9
**realizing** [1] - 22:9
**really** [8] - 18:8, 18:10, 18:25, 21:5, 21:23, 25:9, 30:17, 36:22
**reason** [2] - 4:9, 6:18

**reasons** [4] - 4:16, 4:19, 7:18, 20:20
**rebuttal** [1] - 29:19
**recent** [1] - 29:2
**recognize** [1] - 34:13
**record** [8] - 2:2, 2:11, 17:18, 19:2, 19:15, 29:11, 39:3, 40:21
**refer** [2] - 15:17, 37:24
**referred** [1] - 20:2
**referring** [1] - 17:21
**regard** [10] - 3:9, 3:16, 6:1, 13:9, 17:1, 23:2, 27:18, 35:21, 38:24, 39:8
**regarding** [7] - 12:13, 13:15, 17:23, 18:11, 18:13, 18:14, 40:4
**regardless** [1] - 27:12
**regards** [1] - 39:8
**Registered** [2] - 41:2, 41:3
**rejoinder** [2] - 13:24, 14:15
**relate** [2] - 9:15, 36:13, 36:14
**related** [1] - 16:13
**relates** [6] - 3:13, 3:15, 5:1, 6:5, 16:6, 16:9
**relating** [4] - 3:20, 14:3, 25:10, 38:4
**relatively** [2] - 22:13, 25:15
**relevant** [3] - 38:2, 39:3, 39:6
**relied** [1] - 7:20
**rely** [5] - 11:21, 16:8, 16:24, 21:9, 21:19
**relying** [4] - 5:19, 9:3, 11:10, 11:11
**remain** [1] - 32:7
**remaining** [1] - 39:8
**remember** [1] - 29:4
**replead** [2] - 21:4, 21:15
**reply** [2] - 19:6, 19:13
**reported** [1] - 41:4
**Reporter** [3] - 41:3, 41:4, 41:8
**representation** [3] - 15:12, 33:11, 39:15
**representations** [2] - 22:17, 39:16
**representing** [1] - 27:10
**request** [3] - 2:7, 6:25, 26:8
**requests** [5] - 7:5, 18:21, 25:7, 25:9,

36:17
**require** [2] - 5:13, 17:22
**required** [2] - 28:3, 31:19
**requires** [2] - 5:15, 11:6
**resolution** [3] - 9:18, 12:14, 18:2
**resolve** [2] - 4:1, 29:17
**resolved** [2] - 23:20, 40:10
**respect** [6] - 4:12, 6:21, 8:6, 8:9, 10:12, 31:12
**respond** [2] - 29:18, 34:2
**responded** [1] - 23:5
**responding** [2] - 24:25, 26:6
**response** [8] - 5:4, 8:17, 14:25, 19:23, 20:16, 36:10, 40:9, 40:10
**responses** [9] - 8:10, 24:22, 26:7, 36:17, 39:18, 39:19, 39:22, 39:25, 40:4
**responsive** [2] - 26:9, 40:6
**retain** [1] - 35:12
**reverse** [2] - 18:25, 38:14
**review** [8] - 13:2, 13:7, 13:19, 24:20, 25:2, 25:23, 26:11, 26:22
**revisit** [2] - 10:13, 19:4
**revisiting** [1] - 10:14
**risk** [1] - 15:5
**route** [1] - 6:19
**RPR** [1] - 41:7
**rule** [2] - 4:10, 5:24
**ruled** [1] - 24:24
**ruling** [10] - 6:24, 7:11, 10:15, 12:20, 13:20, 17:5, 17:13, 17:15, 17:21, 26:5
**run** [1] - 26:8
**rushing** [1] - 6:4

---

**S**

**sampling** [3] - 25:5, 25:20, 26:4
**saw** [1] - 39:10
**schedule** [1] - 26:1
**scope** [1] - 13:7
**searches** [1] - 26:8
**searching** [1] - 40:5

**second** [2] - 34:18, 37:16
**sections** [1] - 25:11
**securities** [2] - 15:24, 16:13
**securities-type** [1] - 16:13
**see** [8] - 9:20, 11:18, 21:14, 24:17, 26:11, 32:1, 32:5, 35:18
**seek** [2] - 5:1, 13:14
**seeking** [1] - 19:20
**seem** [3] - 13:24, 24:6, 27:21
**semantically** [1] - 34:13
**sense** [4] - 20:8, 26:13, 39:24, 40:8
**sentence** [1] - 17:20
**sentences** [1] - 17:14
**separately** [1] - 31:12
**sequencing** [3] - 10:7, 12:14, 37:6
**serve** [2] - 7:5, 28:2
**served** [1] - 2:6
**set** [2] - 20:4, 39:17
**seven** [4] - 18:4, 18:15, 19:17, 32:13
**severance** [30] - 3:20, 14:5, 14:6, 14:12, 14:21, 15:9, 15:10, 15:12, 16:6, 22:5, 30:11, 30:21, 31:7, 31:10, 31:15, 31:19, 31:21, 31:24, 31:25, 32:4, 32:7, 32:8, 32:11, 32:13, 32:15, 33:5, 33:22, 34:21, 34:22
**share** [2] - 13:9, 13:10
**sharing** [1] - 35:19
**short** [2] - 38:25, 40:15
**shorthand** [1] - 41:5
**show** [1] - 11:24
**showing** [2] - 7:17, 7:19
**shows** [1] - 29:13
**side** [11] - 2:11, 2:12, 2:15, 2:23, 2:25, 13:1, 17:3, 19:23, 27:22, 33:24, 37:21
**sides** [2] - 27:6, 39:5
**significance** [1] - 15:15
**significant** [2] - 4:18, 27:8
**similar** [7] - 4:5, 4:6, 5:19, 6:3, 8:2, 11:22, 23:6

**simply** [1] - 7:11
**single** [3] - 30:5, 30:12, 33:3
**six** [1] - 32:14
**six-month** [1] - 32:14
**slightly** [1] - 20:14
**somewhat** [2] - 12:5, 23:6
**Soniker** [1] - 2:19
**SONIKER** [1] - 1:16
**sorry** [2] - 8:12, 21:2
**sort** [5] - 25:4, 25:13, 28:15, 38:10, 40:8
**space** [2] - 19:14, 26:16
**speaking** [1] - 15:9
**special** [21] - 22:4, 22:6, 22:8, 22:11, 26:21, 30:2, 30:8, 30:11, 30:17, 30:20, 31:1, 31:7, 33:4, 33:11, 33:17, 33:20, 33:25, 34:3, 34:14, 34:15
**specially** [1] - 34:9
**specific** [3] - 16:12, 25:10, 37:10
**specifically** [6] - 12:10, 15:8, 15:25, 17:14, 20:24, 37:24
**specifics** [1] - 13:11
**spin** [1] - 26:2
**spirit** [2] - 16:15, 16:23
**squared** [1] - 31:11
**squarely** [1] - 3:25
**stage** [1] - 28:8
**standard** [8] - 4:15, 4:16, 4:24, 5:3, 5:5, 6:12, 7:18, 10:25
**standards** [10] - 4:10, 5:5, 5:17, 5:22, 6:20, 7:11, 20:5, 20:6, 23:7, 25:2
**standpoint** [2] - 20:9, 23:21
**start** [6] - 2:12, 19:24, 23:18, 26:2, 26:9, 26:13
**started** [1] - 19:25
**state** [2] - 4:2, 4:12
**statement** [8] - 15:7, 16:8, 16:9, 17:7, 30:3, 30:9, 30:13, 36:23
**statements** [14] - 7:23, 14:17, 14:18, 14:22, 15:3, 15:4, 15:25, 16:3, 16:13, 16:17, 22:22, 22:24, 22:25,

31:11
**states** [1] - 17:22
**STATES** [1] - 1:1
**stay** [4] - 2:8, 6:25, 24:13, 40:9
**stayed** [2] - 19:19, 39:20
**steal** [2] - 34:11
**Stenotype** [1] - 41:5
**steps** [1] - 24:21
**stop** [1] - 35:19
**straightforward** [2] - 6:11, 18:18
**strong** [1] - 28:24
**strums** [1] - 26:12
**stuff** [2] - 9:2, 12:4
**subject** [3] - 18:15, 27:2, 28:10
**subjects** [1] - 26:12
**submit** [1] - 39:1
**submitted** [1] - 29:24
**subpoena** [3] - 9:17, 27:14, 39:18
**subpoenaed** [1] - 9:24
**subpoenas** [9] - 2:5, 6:6, 10:10, 10:21, 12:25, 13:13, 24:8, 26:7, 27:1
**subsequent** [1] - 14:7
**substance** [2] - 27:18, 27:25
**substantial** [1] - 17:23
**substantive** [1] - 8:8
**successful** [1] - 18:1
**suffices** [1] - 20:4
**sufficient** [12] - 3:18, 4:20, 9:10, 10:17, 11:2, 11:5, 11:14, 13:3, 14:16, 28:7, 28:21, 29:10
**sufficiently** [1] - 21:3, 21:12, 23:15
**suggest** [7] - 6:18, 12:16, 16:16, 19:4, 19:10, 37:11, 38:14
**suggested** [3] - 18:24, 38:9, 39:5
**suggesting** [4] - 5:7, 11:7, 14:13, 36:2
**suggestion** [2] - 36:24, 37:17
**supplement** [1] - 39:3
**supplementary** [1] - 16:21
**support** [3] - 7:7, 11:2, 12:6
**surviving** [1] - 38:5

## T

**table** [2] - 24:7, 24:16
**tackle** [1] - 20:10
**tail** [1] - 4:23
**talks** [1] - 15:8
**terminated** [1] - 34:20
**terms** [7] - 19:2, 24:3, 24:6, 35:24, 38:15, 39:3, 39:13
**testify** [1] - 16:14
**testifying** [1] - 16:15
**testimony** [3] - 8:10, 28:18, 36:16
**THE** [31] - 1:1, 1:2, 2:1, 2:21, 3:6, 5:4, 7:16, 8:12, 9:12, 10:22, 12:21, 13:22, 15:23, 16:25, 17:10, 17:17, 19:1, 22:19, 23:22, 26:24, 27:17, 29:14, 30:16, 33:14, 35:15, 35:20, 36:19, 37:15, 38:21, 40:2, 40:12
**theft** [3] - 18:7, 18:8, 18:12
**themselves** [1] - 2:11
**theoretically** [1] - 23:23
**therefore** [3] - 10:20, 30:7, 38:13
**they've** [1] - 31:13
**third** [6] - 14:10, 15:14, 18:6, 25:13, 30:6, 38:8
**third-party** [4] - 14:10, 15:14, 25:13, 30:6
**three** [7] - 18:5, 18:8, 18:11, 18:21, 26:17, 32:13, 36:10
**three-month** [1] - 32:13
**time-consuming** [1] - 38:10
**timing** [4] - 3:13, 26:15, 26:18, 39:24
**TO** [2] - 1:8, 1:10
**today** [7] - 2:2, 2:8, 2:9, 3:3, 6:24, 37:10, 39:4
**together** [1] - 25:20
**tomorrow** [1] - 39:18
**took** [1] - 24:12
**top** [2] - 29:17, 33:16
**topics** [1] - 13:15
**tosses** [1] - 35:12
**total** [1] - 33:1
**totally** [1] - 14:23

**totem** [1] - 25:9
**touch** [1] - 40:20
**transaction** [1] - 37:21
**TRANSCRIPT** [1] - 1:8
**translate** [1] - 7:13
**trier** [1] - 28:21
**true** [8] - 22:7, 22:18, 27:5, 30:5, 30:14, 31:11, 37:22
**trump** [2] - 15:19, 29:3
**try** [5] - 3:14, 5:2, 7:2, 29:17, 40:16
**trying** [4] - 7:7, 9:12, 10:4, 12:22
**turn** [6] - 3:7, 6:10, 17:2, 19:22, 34:14, 35:16
**Tweep** [1] - 30:2
**tweeps** [1] - 34:20
**twitter** [2] - 22:15, 30:3
**Twitter** [8] - 30:4, 31:5, 31:14, 31:19, 31:25, 32:2, 32:16, 33:1
**twitter's** [1] - 14:6
**Twitter's** [1] - 32:10
**two** [13] - 6:20, 12:9, 12:13, 18:21, 21:6, 25:4, 25:25, 26:12, 28:15, 30:15, 31:10, 31:12, 34:5
**two-part** [1] - 28:15
**Twombley** [1] - 4:10
**type** [12] - 4:4, 5:19, 11:22, 14:1, 14:12, 15:7, 16:13, 23:6, 24:16, 31:20, 31:21
**types** [9] - 6:3, 7:20, 11:8, 12:23, 13:25, 14:20, 28:6, 29:15
**typically** [3] - 28:6, 36:3, 36:25

## U

**U.S** [1] - 41:8
**U.S.M.J** [1] - 1:11
**unaffected** [4] - 17:21, 17:22, 18:2, 18:3
**uncertainties** [1] - 14:23
**UNCYK** [1] - 1:16
**Uncyk** [1] - 2:18
**under** [6] - 4:10, 6:11, 10:25, 26:25, 34:21, 36:16
**undercut** [1] - 14:12
**underscore** [1] - 14:8

**understood** [4] - 7:17, 10:22, 17:16, 29:14
**unenforceable** [1] - 31:9
**unfortunately** [1] - 13:18
**unique** [1] - 17:24
**UNITED** [1] - 1:1
**universe** [1] - 25:19
**unless** [2] - 26:23, 40:9
**unlike** [1] - 18:22
**unusual** [3] - 19:16, 19:17, 19:19
**up** [6] - 3:24, 9:14, 9:25, 25:4, 31:2, 32:14
**updated** [1] - 33:1
**utilized** [1] - 14:11

## V

**vacuum** [1] - 15:17
**variety** [1] - 4:16
**various** [1] - 32:23
**vary** [1] - 35:5
**versus** [1] - 2:3
**via** [1] - 3:20
**view** [4] - 8:14, 19:2, 28:9, 35:23
**vs** [1] - 1:5

## W

**wag** [1] - 4:23
**wage** [3] - 18:6, 18:7, 18:12
**wants** [1] - 37:9
**warner** [1] - 41:2
**Warner** [1] - 41:7
**Warren** [4] - 18:5, 18:12, 18:17, 18:19
**ways** [1] - 9:21
**week** [1] - 38:25
**welcome** [1] - 2:21
**whereas** [3] - 4:12, 5:9, 21:6
**whole** [2] - 15:3, 25:14
**win** [1] - 11:23
**window** [2] - 26:18, 35:13
**wish** [1] - 13:10
**witness** [1] - 36:16
**witnesses** [1] - 16:14
**wondering** [1] - 6:13
**word** [5] - 34:18, 35:25, 36:1, 36:4, 36:25

**wording** [2] - 33:18, 33:19
**words** [6] - 9:2, 22:25, 25:8, 36:13, 39:16
**world** [1] - 5:10
**worlds** [1] - 5:17
**worth** [1] - 23:17
**written** [7] - 24:22, 26:7, 29:5, 39:18, 39:22, 39:25, 40:4

## Y

**year** [2] - 32:20, 35:7

## Z

**zero** [1] - 34:8