## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>               Plaintiffs,<br><br>   v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,<br><br>               Defendants. | Case No. 1:23-cv-528-JLH-CJB |

## PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF JUDGE CHRISTOPHER J. BURKE

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER &
KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com


Dated: December 18, 2024

Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com


*Counsel for Wolfram Arnold, Erik Froese,*
*Tracy Hawkins, Joseph Killian, Laura Chan*
*Pytlarz, and Andrew Schlaikjer*

## <u>TABLE OF CONTENTS</u>

A.    The First and Second Counts of Plaintiffs' Complaint.........................................2

B.    Judge Burke Erred in Construing 553 Words of the Merger Agreement as Meaningless and Unenforceable.........................................................................3

C.    Conclusion........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*,
2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ........................................................................ 9

*Axis Reinsurance Co. v. HLTH Corp.*,
993 A.2d 1057 (Del. 2010) ........................................................................................................ 6

*Bouchard v. Braidy Indus., Inc.*,
2020 WL 2036601 (Del. Ch. Apr. 28, 2020) .......................................................................... 8

*Cerberus Int'l, Ltd. v. Apollo Mngmt., L.P.*,
1999 WL 33236239 (Del. Ch. Nov. 4, 1999) .......................................................................... 6

*Cont'l Warranty, Inc. v. Warner*,
108 F. Supp. 3d 256 (D. Del. 2015) .......................................................................................... 4

*Crispo v. Musk*,
2022 WL 6693660 (Del. Ch. Oct. 11, 2022) .......................................................................... 9

*Crispo v. Musk*,
304 A.3d 567 (Del. Ch. 2023) .............................................................................................. 6, 7

*Crispo v. Musk*,
304 A.3d 567 (Del. Ch. 2023) .......................................................................................... 1, 7, 9

*Dolan v. Altice USA, Inc.*,
2019 WL 2711280 (Del. Ch. June 27, 2019) .................................................................. 8, 9, 11

*Donnelly v. ProPharma Grp. Topco, LLC*,
2023 WL 5528613 (D. Del. Aug. 28, 2023), *dismissed*, 2023 WL 10351520 (3d Cir.
Nov. 14, 2023) ............................................................................................................................ 4

*E.I. du Pont de Nemours & Co. v. Shell Oil Co.*,
498 A.2d 1108 (Del. 1985) ...................................................................................................... 4, 6

*Fortis Advisors LLC v. Medicines Co.*,
2019 WL 7290945 (Del. Ch. Dec. 18, 2019) ........................................................................ 10

*Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*,
2020 WL 233333 (Del. Super. Ct. Jan. 10, 2020) .................................................................. 4

*Heron Bay Property Owners Assc., Inc. v. CooterSunrise, LLC*,
2013 WL 3871432 (Del. Ch. Jun. 27, 2013) .......................................................................... 4

*JFE Steel Corp. v. ICI Americas, Inc.*,
  797 F. Supp. 2d 452 (D. Del. 2011).............................................................................4

*Sapp v. Indus. Action Servs.,LLC,*
  2024 WL 3444633 (D. Del. July 17, 2024) .............................................................10

*Sonitrol Holding Co. v. Marceau Investissements*,
  607 A.2d 1177 (Del. 1992)..........................................................................................6

*Wilmington Hous. Auth., for Use of Simeone v. Fid. & Deposit Co. of Maryland*,
  43 Del. 381 (Del. 1946) ...............................................................................................9

Plaintiffs respectfully submit this Objection to the Report and Recommendations of Judge Christopher Burke. D.I. 110. While Judge Burke correctly concluded that Plaintiffs' Third and Fourth counts were well-pled, Judge Burke erred in recommending dismissal of Plaintiffs' First and Second counts, and the Court should not adopt those aspects of his ruling.

Plaintiffs' First and Second counts relate to Defendants' breach of Section 6.9(a) of the Merger Agreement.[1] Judge Burke found Plaintiffs are not third-party beneficiaries of the Merger Agreement and therefore lack standing to bring claims for its breach. In so doing, Judge Burke effectively wrote large swaths of the Merger Agreement out of existence, rendering them entirely unenforceable by *anyone* – violating what the Delaware Supreme Court called the "cardinal rule" of Delaware contract interpretation. Judge Burke believed he was required to do so by two so-called "no third-party beneficiary" clauses in the Merger Agreement. *First,* such clauses are not dispositive as a matter of Delaware law. *Second*, and critically, there is a plausible way to read those clauses that is consistent with the provisions Judge Burke erroneously rendered unenforceable: as prohibiting claims that the benefits conferred on the employees *in the event of* the merger gave the employees standing to enforce the Merger Agreement by requiring the parties to *consummate* the merger. Indeed, when interpreting this very Merger Agreement, the Delaware Court of Chancery effectively confirmed that alternative interpretation was objectively reasonable and therefore that the Merger Agreement was *at least* ambiguous about whether Plaintiffs could sue for breach of the Merger Agreement. *See Crispo v. Musk*, 304 A.3d 567 (Del. Ch. 2023).[2]

Chancellor McCormick's decision was correct, and the Court should not adopt an interpretation of the Merger Agreement that has already been effectively rejected by the Court of

---

[1] The agreement of merger between and among Defendants' predecessors, Twitter, Inc. on the one hand and X. Holdings I, Inc., X Holdings II, Inc., and Elon Musk, on the other.

[2] As discussed below, the *Crispo* decision addressed stockholder standing, not employee standing. But its reasoning is directly applicable.

Chancery as a matter of Delaware law, namely that it unambiguously precludes third party employees from attempting to enforce Twitter's *post-closing* obligations to them. Indeed, the contrary interpretation, that *after* the merger closed the employees could enforce Section 6.9(a) as third-party beneficiaries, has particular force given that the parties to the Merger Agreement acted consistently with that interpretation of the "no third-party beneficiary" clauses after executing the Merger Agreement, and inconsistently with Judge Burke's interpretation in his report and recommendation. Twitter specifically represented to its employees that the Merger Agreement contained "special protections" for their severance, and the Musk parties knowingly allowed Twitter to make that representation to the employees. Judge Burke thus erred in finding the Merger Agreement unambiguously strips the employees of standing to assert claims for breach of the benefits Section 6.9(a) of the Merger Agreement conferred on them, and, consistent with the relevant precedent, should at a minimum have found the Merger Agreement ambiguous and allowed Plaintiffs' claims to proceed to discovery.[3] The Court should accordingly reject that portion of Judge Burke's report and recommendation. The standard of review is *de novo*. *L.C. 1 v. Delaware*, 2009 WL 814631 (D.Del. 2009); Fed.R.Civ.P. 72(b)(3).

## A.    The First and Second Counts of Plaintiffs' Complaint

Plaintiffs' first and second counts each allege claims arising out of Defendants' breach of Section 6.9(a) of the Merger Agreement. Section 6.9(a) provides that for a period of one year after the close of the merger, Defendant X Holdings Corp. would cause Twitter to provide any terminated employee with severance "no less favorable than" the severance for which such employee was eligible prior to the close of the merger. D.I. 27-1 at 50. Despite that provision – and despite having informed

---

[3] Plaintiffs are informed that a number of other former employees have already won arbitration decisions finding that the employees *do* have such standing, and have consented to counsel for those employees intervening in this action for purposes of filing an amicus brief bringing those decisions before the Court, so that the Court can consider those jurists' contrary reasoning as it decides whether to adopt a Report and Recommendations that would put this Court at odds with those decisions.

its employees that the Merger Agreement provided "special protection" for their severance, D.I. 26-1 at 278 – when Twitter fired Plaintiffs (or, for Hawkin and Killian, constructively discharged them), it offered them significantly less severance than they had been eligible for pre-merger. D.I. 10, ¶ 323. And when other Twitter employees complained, Twitter asserted that the employees lacked standing to enforce Section 6.9(a) of the Merger Agreement. Thus, Count One of Plaintiffs' Complaint seeks a declaration that the employees were third-party beneficiaries with standing to enforce Section 6.9(a) of the Merger Agreement, while Count Two seeks damages for its breach.

Defendants moved to dismiss, and Judge Burke recommended that the Court grant the motion as to Counts One and Two.[4] Judge Burke found that Sections 6.9(e) and 9.7 of the Merger Agreement "preclude Plaintiffs from asserting Counts I and II." D.I. 110 at 12. In so doing, Judge Burke *expressly* interpreted Section 6.9(e) as rendering Section 6.9(a) null and void, recommending that the Court find that Section 6.9(e)(i) "gives the acquiror the right to terminate or modify any employee benefit plan after the effective date of the merger, full stop" and therefore nullifies Section 6.9(a), which required X Holdings Corp. to ensure that Twitter provided severance *no less* favorable than its prior plan and not reduce the benefits available to the employees. *Id.* at 14, n. 10. Or, as Judge Burke put it: "while one provision of Section 6.9 does *purport* to require X Holdings I/Twitter to provide a certain type of severance benefit to Continuing Employees like Plaintiffs, there are three other provisions in the merger agreement that make it very clear that the Continuing Employees are not intended third-party beneficiaries of that agreement." *Id.* at 17-18 (emphasis altered).

## B. Judge Burke Erred in Construing 553 Words of the Merger Agreement as Meaningless and Unenforceable

"The *cardinal rule* of contract construction [is] that, where possible, a court should give effect

---

[4] Plaintiffs believe Judge Burke's analysis of the Fifth and Sixth counts was also erroneous in some respects, but intend to replead those counts as allowed by his Report, which renders those errors moot for purposes of this objection. Plaintiffs therefore do not address the Report with respect to the Fifth and Sixth counts in this objection.

to all contract provisions." *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) (rejecting interpretation that would violate cardinal rule) (emphasis added); s*ee also Donnelly v. ProPharma Grp. Topco, LLC*, 2023 WL 5528613, at *9 (D. Del. Aug. 28, 2023) (rejecting interpretation "inconsistent with Delaware's principles of contract construction seeking to give each provision of a contract full effect"), *dismissed*, No. 23-2668, 2023 WL 10351520 (3d Cir. Nov. 14, 2023); *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (court *required* to give each term meaning and effect); *Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*, 2020 WL 233333, at *7 (Del. Super. Ct. Jan. 10, 2020) (party's "preferred reading" precluded where it "would render [provision] mere meaningless surplusage"); *Heron Bay Property Owners Assc., Inc. v. CooterSunrise, LLC*, 2013 WL 3871432, at *10 (Del. Ch. Jun. 27, 2013) ("Each provision and term should be given effect, where possible…"). For that reason, "the meaning which arises from a particular portion of an agreement ***cannot*** control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." *Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 256, 259 (D. Del. 2015) (emphasis added) *quoting E.I. du Pont*, 498 A.2d at 1113.

Applying these principles, the Court must reject Judge Burke's recommendation that it dismiss Counts One and Two of the Complaint. Sections 6.9(a)-(d) of the Merger Agreement contain 508 words and four defined terms not used substantively[5] anywhere other than Section 6.9 of the Merger Agreement. *See generally* D.I. 27-1. Sections 6.9(a)-(d) of the Merger Agreement lay out an extremely detailed set of obligations regarding employee compensation and benefits. Section 6.9(a) carefully distinguishes the standards applicable to X Holdings' obligations regarding wages,[6] incentive

---

[5] The Merger Agreement also expends an additional 45 words in Article I (Definitions) reciting that "Continuation Period", "Continuing Employees", "Post-Closing Plans," and "Post-Closing Welfare Plans" have the meanings ascribed to them in Section 6.9.

[6] "[A]t least the same base salary and wage rate."

compensation,[7] benefits,[8] and severance.[9] *Id.*, §6.9(a). Section 6.9(b) requires any benefit plans applicable after the merger to recognize the employees' pre-merger service for purposes of benefit vesting, eligibility, and amount. *Id.*, §6.9(b). Section 6.9(c) governed the treatment of out-of-pocket payments under any post-closing benefit plans, while Section 6.9(d) governed waiting periods, preexisting condition exclusions, and health status requirements in such plans. *Id.*, §§6.9(c)-(d). Not only were these provisions included in the Merger Agreement, but Twitter represented to both the employees and other shareholders voting on the merger that those provisions – but *not* Section 6.9(e) – were material. *See* Definitive Proxy Statement Relating to Merger or Acquisition, *available* *https://www.sec.gov/Archives/edgar/data/1418091/000119312522202163/d283119ddefm14a.htm*, at 8-9 and 152 (identifying *only* Sections 6.9(a)-(d) as material).

 And yet Judge Burke found none of those provisions meant *anything at all.* He straightforwardly concedes that, on his interpretation of the contract, Section 6.9(a) only "purport[ed] to" impose obligations on X Holdings. D.I. 110 at 17-18. He did so in the apparent belief that the "no third-party beneficiary" provisions of Sections 6.9(e) and 9.7 required writing Sections 6.9(a)-(d) out of the contract based on the inference that a "customized" no third-party beneficiary provision signals a "strong intent" not to allow third party beneficiaries. *Id.* at 13-14.

 That was error. Delaware law governs the Merger Agreement, and Delaware law is clear that when the rule against surplusage conflicts with any other rule of contract interpretation, the rule against surplusage must prevail unless there is *no* other possible interpretation of the provisions at issue. *See E.I. Dupont*, 498 A.2d at 1114 (Delaware Supreme Court identifying the rule against

---

[7] Short and long-term target compensation "no less favorable in the aggregate," but clarifying that X Holdings was "not [] obligated to provide such incentives in the form of equity or equity-based awards".

[8] "[S]ubstantially comparable in the aggregate."

[9] Payments *and* benefits "no less favorable than those applicable to the Continuing Employee immediately prior to the Effective Time."

surplusage as the **cardinal rule** of contract interpretation). *See also Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010), as corrected (May 10, 2010) (reversing "broad" interpretation that would "render many provisions of the policy a nullity" in favor of narrow interpretation that allowed provisions to be harmonized); *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1184 (Del. 1992) (general and specific canon could not overcome "cardinal rule"); *Cerberus Int'l, Ltd. v. Apollo Mngmt., L.P.*, 1999 WL 33236239, at *4 (Del. Ch. Nov. 4, 1999) ("A contract must be construed, where possible, so that all of its provisions may be read together and harmonized"). Thus, Judge Burke's reading of the Merger Agreement is only viable if there is no other possible interpretation of Sections 6.9(e)(i), (e)(iii), and 9.7 that retains the effect of the meticulous scheme the parties laid out in Sections 6.9(a)-(d).

But there is another possible interpretation, *one indicated by Chancellor McCormick's construction of the no-third party beneficiaries provisions of this very contract*: that any bar on third-party beneficiary status *only* precludes third-parties from bringing claims for specific performance of the merger, but did not bar any action after the merger closed for damages from breach of Twitter's post-close obligations under the Merger Agreement. *See Crispo v. Musk*, 304 A.3d 567, 584–86 (Del. Ch. 2023). As Chancellor McCormick explained in the context of a stockholder claim for damages due to lost merger premium, Section 9.7 was a customized no-third party beneficiary clause that did not carve out stockholder claims, facially precluding stockholder standing as third-party beneficiaries. *Id. But*, because the Merger Agreement also expressly contemplated "lost premium" damages that would only be recoverable if stockholders had such standing, *id.* at 567, and construing the no third-party beneficiary provision as precluding such standing would violate "the cardinal rule of contract construction" that all provisions must be given effect, *id.* at 584, it was an "objectively reasonable interpretation[] of the Merger Agreement" that the no third-party beneficiary provision only barred third-party claims for specific performance (or while Twitter was seeking specific performance), and not for post-breach damages if

the merger was abandoned. *Id.* at 586.[10] That logic applies with even greater force here, where the portion of the Merger Agreement to be invalidated is significantly more detailed and extensive than the 33 words at issue in *Crispo*.

Indeed, Delaware's rule that no third-party beneficiary provisions, while given weight, are not dispositive, *see Crispo*, 304 A.3d at 574–75 ("a no-third-party-beneficiaries provision provides a helpful starting point … But no-third-party-beneficiaries provisions are not entitled to any special deference … and they do occasionally yield to contrary language in the contract consistent with standard rules of contract interpretation"), was essentially made for just this situation. Section 6.9(e) recites that Section 6.9(a)-(d) provide the employees with no third-party beneficiary rights. But both the text of Section 6.9(a)-(d) and the parties' subsequent conduct strongly suggests a more narrow interpretation than the broad (and wholesale invalidation) that Defendants suggest. It is therefore an "objectively reasonable" interpretation that the no third-party beneficiary provision was only intended to apply prior to the close of the merger. If not, then Sections 6.9(a)-(d) only "purport" to require Twitter and X Holdings to take certain actions after the close of the merger, but do not actually require it. D.I. 110 at 17-18. If not, then Section 6.9(a)'s careful differentiation of the standard applicable to various post-merger benefits had no intended meaning. If not, Section 6.9(a)'s clarification that X Holdings had "no obligation" to include equity in its incentive compensation was farcical; on Judge Burke's reading, Section 6.9(e) provides that X Holdings has "no obligation" to do *anything at all*, despite the explicit and detailed language of the preceding sections.[11]

---

[10] In *Crispo*, the distinction did not matter, because Twitter was seeking specific performance when Crispo sued for damages, thereby precluding him from having standing under either interpretation since his third-party beneficiary rights would not yet have vested when he filed even under that interpretation. *Id.* Here, in contrast, Plaintiffs claims arose after the merger closed, and would be allowed under the narrower reading of Sections 9.7 and 6.9(e) proposed by Plaintiffs, which is the *only* reading that can be harmonized with Sections 6.9(a)-(d).

[11] As with the "no third-party beneficiary" provisions, Judge Burke's reading of Section 6.9(e)(iii) as allowing Twitter to make whatever changes it wanted to its benefit plans, without regard to Sections 6.9(a)-(d), violates both the anti-surplussage canon and the whole-text canon; read in context, that provision merely provides that Twitter

And applicable Delaware precedent confirms this is an occasion on which the no third-party beneficiary provision should "yield to contrary language in the contract." For instance, in *Dolan v. Altice USA, Inc.*, 2019 WL 2711280 (Del. Ch. June 27, 2019), the Court of Chancery held that a merger agreement was ambiguous despite the existence of a customized no third-party beneficiaries provision, where the merger agreement (as here) had provisions requiring post-merger performance that could only be enforced by third parties to the agreement. *Id.* at *2 ("Before determining that Section 6.4 is, as Altice maintains, nothing more than nugatory placation, it is, in my view, appropriate to receive parol evidence to discern if that was the parties' intent"). Judge Burke addressed *Dolan* in a footnote only by noting that the *Dolan* court dismissed the claims of *two other Dolan* plaintiffs – former Cablevision employees – as non-third-party beneficiaries. D.I. 110 at 16, n. 11. But so what? *Dolan* held the agreement was ambiguous as to the Dolan family's standing because only they could enforce the provisions at issue, while the two former employees, in contrast, could not show the provision was intended to address a preexisting obligation to them (or for their benefit) specifically. 2019 WL 2711280 at *8. Plaintiffs and other Twitter employees in the same position as the Dolan family, because the language of Sections 6.9(a)-(d) of the Merger Agreement makes clear that Twitter employees were the specific intended beneficiaries of the provisions they now seek to enforce.

Similarly, in *Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2008 WL 4182998 (Del. Ch. Sept. 11, 2008), the court explained that the disclaimer of third-party beneficiaries was "belied by the Agreement's specific grant of benefits to NYBOT Members." *Id.* at *5 (plaintiffs had standing to enforce "a right that is specifically and explicitly granted in the contract"). The no third-party

---

could *change* its benefits plans, subject to the limitations of Section 6.9(a). *Bouchard v. Braidy Indus., Inc.*, 2020 WL 2036601, at *9 (Del. Ch. Apr. 28, 2020) ("Thus, the entirety of Section 7.3, rather than the single phrase Bouchard emphasizes, informs its intended meaning").

beneficiary provision at issue there was a customized provision.[12] Chancellor McCormick reiterated the importance of the fact that nobody other than the third-party in *Amirsaleh* could enforce those provisions in an earlier decision in *Crispo*, explaining that Crispo could not rely on *Amirsaleh* where Twitter, as a party to the Merger Agreement, could enforce (and was enforcing) it. *Crispo v. Musk*, 2022 WL 6693660, at *7 (Del. Ch. Oct. 11, 2022). The absence of any other party who could enforce has been important to Delaware's willingness to identify parties as third-party beneficiaries for nearly a century now. *Wilmington Hous. Auth., for Use of Simeone v. Fid. & Deposit Co. of Maryland*, 43 Del. 381, 394 (Del. 1946)("*WHA*") ("Real justice permits no other course" than to recognize third-party standing where only the third-party could "compel a defendant to abide by its contract").[13] Moreover, the overall scheme of the contract as a whole, and the detailed attention given to Defendants' post-merger compensation obligations to the employees, makes clear that the provisions of Section 6.9(a)-(d) were intended to be enforceable, and Delaware law thus precludes the Court from broadly construing the no third-party beneficiaries provisions, as might otherwise be reasonable in the absence of Sections 6.9(a)-(d).

The cases cited by Judge Burke, in contrast, involve none of the features that make it "objectively reasonable" to narrowly construe the no third-party beneficiaries provisions as barring only claims for specific performance rather than damages for post-merger breach. In *Fortis Advisors*

---

[12] Judge Burke distinguished *Amirsaleh* on the purported basis that the provision there was "general" rather than "customized." D.I. 110 at 17 (citing *Amirsaleh* and *Crispo* for that proposition). That was **factually** incorrect, as record evidence demonstrated. D.I. 27-2 at 39-40, §9.8 (the actual provision at issue in *Amirsaleh*).

[13] Judge Burke distinguished *WHA* by noting that the question there was whether third-party beneficiary status applied even to sealed contracts. But that in no way addresses the Delaware policy articulated by the Delaware Supreme Court, and which guided its determination that such standing must be recognized: Delaware contract law abhors unenforceable provisions. Nor does it alter the rule the Delaware Supreme Court laid out: standing to sue is a legal function of the parties' intentional conferral of a benefit on a third party, *not* of the parties agreement that conferring the benefit creates standing. *Id.* at 390 ("The right to sue usually is a legal result of a relationship determinable by the Court. It arises by reason of a breach of duty and ordinarily not because the parties expressly say so. It seems somewhat anomalous to hold that a person's right to sue in any type of action depends upon an express statement in the contract that he shall have such right of action"). There is no dispute that Sections 6.9(a)-(d) intentionally confer benefits on Twitter's employees.

*LLC v. Medicines Co.*, 2019 WL 7290945 (Del. Ch. Dec. 18, 2019), the court found that the plaintiff did not have standing to enforce the terms of a purchase agreement between the two defendants (MedCo and Melinta). *Id.* at *3. And in *Sapp v. Indus. Action Servs.*, LLC, 2024 WL 3444633, (D. Del. July 17, 2024), the question for the Court was whether a fraud claim against an entity not party to the contract (RelaDyne) was nonviable as duplicative of a breach of contract claim. In *Sapp*, the *defendants* argued that breach claims could be brought against RelaDyne as a third-party beneficiary to the contract, rendering the fraud claim duplicative. *Id.* at *4. In neither case did anyone suggest that *only* the third party could enforce the provisions at issue, and therefore neither holding required the Court to violate Delaware's "cardinal rule" of contract construction. The cases thus provide no guidance here, where construing the no third-party beneficiaries provision as barring standing would render Sections 6.9(a)-(d) a nullity.[14]

### C.    Conclusion

Because there is an "objectively reasonable" construction of §§6.9 and 9.7 that would allow Plaintiffs to bring their claims for breach of the Merger Agreement as third-party beneficiaries, the Court should decline to adopt Judge Burke's recommendation. Indeed, because **only** Plaintiffs' construction of those provisions can be harmonized with Section 6.9(a)-(d), the Court should find that the Merger Agreement unambiguously allows such claims. But at a bare minimum, the existence of an objectively reasonable interpretation of the Merger Agreement that allows such claims renders the Merger Agreement ambiguous as to Plaintiffs' third-party beneficiary status, and the ambiguity posed by ostensibly conflicting provisions *cannot* be resolved on a motion to dismiss. *See, e.g., Dolan*, 2019 WL 2711280, at *8. The Court should thus decline to dismiss Counts I and II.

---

[14] At no point in the briefing on the motion did Defendants identify any way to harmonize their interpretation of Sections 6.9(e) and 9.7 with Sections 6.9(a)-(d), and they will not do so in response to this Objection, either.

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER &
KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Dated: December 18, 2024

/s/ *Joseph L. Christensen*
Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com

*Counsel for Wolfram Arnold, Erik Froese,*
*Tracy Hawkins, Joseph Killian, Laura Chan*
*Pytlarz, and Andrew Schlaikjer*

11