# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>*Plaintiffs*,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-528-JLH-CJB |

## DEFENDANT X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP. f/k/a X HOLDINGS I, INC.'S OBJECTIONS TO REPORT AND RECOMMENDATIONS (D.I. 110)

Dated: December 19, 2024

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II. STATEMENT OF FACTS .................................................................................................. 1

III. STANDARD OF REVIEW ................................................................................................. 3

IV. OBJECTIONS ..................................................................................................................... 3

    A. The R&R Erred by Finding that Plaintiffs Adequately Pled a Clear and Definite Promise. ........................................................................................................ 3

        1. The R&R Erred in Finding that Plaintiffs Alleged the Existence of a Valid Contract. ................................................................................... 3

        2. The R&R Erred in Finding That Plaintiffs Have Alleged a Clear and Unambiguous Promise. ..................................................................... 6

    B. The R&R Erred in Finding that Hawkins and Killian Stated Claims for Breach of Contract and Promissory Estoppel. ....................................................... 8

V. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) ...............................................................................................7

*Alexander v. Codemasters Grp. Ltd.*,
104 Cal. App. 4th 129 (Cal. Ct. App. 2002) .........................................................................4

*Aton Ctr., Inc. v. United Healthcare Ins. Co.*,
311 Cal. Rptr. 3d 564 (Cal. Ct. App. 2023) ..........................................................................7

*Bench Walk Lighting LLC v. LG Innotek Co.*,
530 F. Supp. 3d 468 (D. Del. 2021) ......................................................................................3

*Davidson v. Tyco/Healthcare*,
416 F. Supp. 2d 690 (E.D. Mo. 2005) ..................................................................................8

*Dep't of Forestry & Fire Prot. v. Lawrence Livermore Nat'l Sec., LLC*,
191 Cal. Rptr. 3d 792 (Cal. Ct. App. 2015) ..........................................................................8

*Drummond v. Akselrad*,
2023 WL 3173780 (S.D.N.Y. May 1, 2023) ........................................................................5

*Flores v. Nature's Best Dis., LLC*,
212 Cal. Rptr. 3d 284 (Cal. Ct. App. 2016) ..........................................................................8

*Frio Energy Parts., LLC v. Fin. Tech. Leverage, LLC*,
680 F. Supp. 3d 322 (S.D.N.Y. 2023) ...................................................................................7

*Glover v. Bob's Discount Furniture, LLC*,
621 F. Supp. 3d 442 (S.D.N.Y. 2022) ...................................................................................3

*Karamsetty v. Wells Fargo & Co.*,
967 F. Supp. 2d 1305 (N.D. Cal. 2013) ................................................................................9

*Kilgore v. Ocwen Loan Serv., LLC*,
89 F. Supp. 3d 526 (E.D.N.Y. 2015) ....................................................................................7

*Lamb v. CNG Producing Co.*,
9 F.3d 104 (5th Cir. 1993) ....................................................................................................6

*Lampe v. Swan Corp.*,
571 N.E.2d 245 (Ill. Ct. App. 1991) .....................................................................................9

*Livingstone v. MacGillivray*,
    1 Cal. 2d 546 (Cal. 1934) ............................................................................................... 9

*Masimo Corp. v. Philips Elec. N Am. Corp.*,
    62 F. Supp. 3d 368 (D. Del. 2014) ................................................................................. 3

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) .......................................................................................... 5

*R.W.L. Enters. v. Oldcastle, Inc.*,
    226 Cal. Rptr. 3d 677 (Cal. Ct. App. 2017) ................................................................... 4

*Sawyer v. E.I. Du Pont De Nemours & Co.*,
    430 S.W.3d 396 (Tex. 2014) .......................................................................................... 5

*Schwarzkopf v. IBM, Inc*,
    2010 WL 1929625 (N.D. Cal. May 12, 2010) ............................................................... 5

*Shorter v. Peaches Uniforms, Inc.*,
    2013 WL 268708 (E.D. Cal. Jan. 23, 2013) ................................................................... 6

*Sweeney v. Santander Bank, N.A.*,
    2021 WL 4224312 (D. Mass. Sept. 16, 2021) ............................................................... 9

*Tribble & Stephens Co. v. RGM Constructors, L.P.*,
    154 S.W.3d 639 (Tex. Ct. App. 2004) ........................................................................... 5

*Turner v. Anheuser-Busch*,
    7 Cal. 4th 1238 (Cal. 1994) .......................................................................................... 10

*U.S. Ecology Inc. v. State of California*,
    28 Cal. Rptr. 3d 894 (Cal. Ct. App. 2005) ..................................................................... 8

*Van Dellen v. Aon Serv. Corp.*,
    2020 WL 2468759 (D. Minn. May 12, 2020) ................................................................ 9

*Wallert v. Atlan*,
    141 F. Supp. 3d 258 (S.D.N.Y. 2015) ............................................................................ 4

**Statutes**

28 U.S.C. § 636(b)(1) .............................................................................................................. 3

**Other Authorities**

D. Del. L.R. 72.1(3) ................................................................................................................. 3

*Eliminate*, Oxford English Dictionary (3d ed. 2024) ............................................................. 8

Fed. R. Civ. P.12(b)(6)...................................................................................................1, 10

Fed. R. Civ. P.72(b)(2).........................................................................................................1

Fed. R. Civ. P. 72(b)(3)........................................................................................................3

*Position*, Oxford English Dictionary (3d ed. 2024) .......................................................8

I.  **NATURE AND STAGE OF PROCEEDINGS**

On December 5, 2024, Magistrate Judge Christopher J. Burke issued a Report and Recommendation ("R&R") recommending that Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.'s (together, "Twitter") Motion to Dismiss Counts I-VI and XIV of Plaintiffs' First Amended Complaint ("MTD") (D.I. 14) be granted in part and denied in part (D.I. 110). Specifically, the R&R recommends dismissal of Counts I (Declaratory Judgment) and II (Breach of Merger Agreement) with prejudice and dismissal of Counts V (Breach of Offer Letter) and VI (Fraud) without prejudice. D.I. 110 at 38. The R&R recommends denial of the MTD with respect to Counts III (Breach of Contract) and IV (Promissory Estoppel).[1] *Id.* Pursuant to Federal Rule of Civil Procedure 72(b)(2), Twitter timely objects to the denial of the MTD as to Counts III and IV and requests that the Court dismiss Counts III and IV with prejudice for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6).

II. **STATEMENT OF FACTS**

On April 25, 2022, Twitter entered into the Merger Agreement with X Holdings I, Inc., X Holdings II, Inc., and, only for certain provisions, Elon R. Musk (the "Merger Agreement").[2] D.I. 10 at ¶ 37; D.I. 16-1. Section 6.9(a) of the Merger Agreement states that "during the Continuation Period, Parent shall provide, or shall cause the Surviving Corporation or any of their Affiliates to provide severance payments and benefits to each Continuing Employee whose employment is terminated during such period that are no less favorable than those applicable to the Continuing

---

[1] The Court is holding in abeyance the portion of the MTD seeking dismissal of Count XIV (Discrimination under California Fair Employment and Housing Act ("FEHA")) until it issues a ruling on Defendant Musk's pending Motion to Dismiss. D.I. 110 at n. 8.

[2] As noted in the R&R, both parties attached the Merger Agreement to their briefs along with supporting declarations and "it is integral to the FAC and referenced therein." D.I. 110 at n. 2.

Employee immediately prior to the Effective Time under the Company Benefit Plans." D.I. 16-1 at 66. In their FAC, Plaintiffs refer to this provision as the "Severance Stability Promise." D.I. 10 at ¶ 72.[3]

Section 6.9(e) of the Merger Agreement, however, clarifies that: "[n]othing contained in this Section 6.9, express or implied, shall . . . constitute a limitation on rights to amend, modify, merge or terminate after the Effective Time [*i.e.*, the closing date of the merger] any Company Benefit Plan, Post-Closing Plan or other employee benefit plan" or "give any Company Service Provider," which is defined to include Twitter employees, "any third-party beneficiary or other rights." D.I. 16-1 at 76. Section 9.7, entitled "No Third-Party Beneficiaries," further confirms that the "Agreement is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder," with the exception of three expressly identified categories of individuals, none of which include Plaintiffs. *Id.* at 84.

Plaintiffs assert that shortly after the Merger Agreement was signed, Twitter issued a document that Plaintiffs refer to as the "Acquisition FAQ." D.I. 10 at ¶ 39.[4] The so-called Acquisition FAQ to which Plaintiffs are referring describes the terms of the Merger Agreement by stating that the Merger Agreement "provides special protection for Tweep compensation and benefits for one year following the closing of the transaction" and by purporting to summarize what the "agreement specifically provides." D.I. 16-2 at 19.

---

[3] While Twitter disagrees with Plaintiffs' characterizations and definitions in the FAC, it uses them herein because they are helpful to understanding Plaintiffs' claims and why they should be dismissed.

[4] While Plaintiffs purport to quote the Acquisition FAQ in Paragraphs 39 and 40 of the FAC, the quoted language does not appear anywhere in the Acquisition FAQ or elsewhere in any of the evidence before the Court. The R&R appears to rely on these misattributed quotes when summarizing Plaintiffs' allegations. D.I. 110 at 4.

Plaintiffs also assert that, following the signing of the Merger Agreement, Twitter issued an e-mail that Plaintiffs refer to as the "Severance Policy Email." D.I. 10 at ¶ 94. The so-called "Severance Policy Email" provides in relevant part that "[g]enerally speaking, in the event of a position elimination, [Twitter's] current severance package includes" the metrics set forth in the communication. D.I. 16-2 at 6-7.

### III. STANDARD OF REVIEW

"When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review." *Masimo Corp. v. Philips Elec. N Am. Corp.*, 62 F. Supp. 3d 368, 379 (D. Del. 2014) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). "Under the Local Rules of this Court, a motion to dismiss is considered a dispositive motion." *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 474 (D. Del. 2021) (citing D. Del. L.R. 72.1(3)).

### IV. OBJECTIONS

#### A. The R&R Erred by Finding that Plaintiffs Adequately Pled a Clear and Definite Promise.

Plaintiffs attempt to craft a "clear and definite" promise for severance benefits by stitching together cherry-picked portions of various documents, stripped of their surrounding language and context. But Plaintiffs' curated amalgamation reflects only what they wanted to hear, not what they were told. Looking to what Plaintiffs allege that they were actually told makes clear that Twitter did *not* convey any promise whatsoever, and certainly not one definite enough to support a claim for either breach of contract or promissory estoppel. Accordingly, Counts III and IV must be dismissed.

##### 1. The R&R Erred in Finding that Plaintiffs Alleged the Existence of a Valid Contract.

Plaintiffs' breach of contract claim is premised on the so-called "Severance Policy Email,"[5] which they allege conferred a contractual right to certain severance payments. D.I. 10 at ¶ 326. For this email to form the basis for a breach of contract claim, Plaintiffs would need to adequately allege that it extended an offer that is "sufficiently definite" to allow a court to "determin[e] the existence of a breach" and provide "an appropriate remedy." *Alexander v. Codemasters Grp. Ltd.*, 104 Cal. App. 4th 129, 141 (Cal. Ct. App. 2002).

But the Severance Policy Email does not contain an offer at all, let alone one specific and definite enough to form the basis of a contract. The email simply states that, "*[g]enerally speaking*, in the event of a position elimination, [Twitter's] *current* severance package includes a lump sum cash amount" with certain components. D.I. 16-2 at 6 (emphasis added). Conspicuously absent from the email is *any* promise that this same severance package would *continue* for any amount of time, much less a specific period that would enable a court to discern breach. Indeed, the email is phrased entirely in the present tense (and specifically uses the word "current"), further negating any inference of a promise of future performance. *Id.* at 6-7 ("we also consider . . . "; "we also apply . . . "). The email merely outlined what the company, "generally speaking," did at the time and did not specify that any particular employee would actually receive a particular severance package, nor even specify the conditions under which the outlined package, or different severance packages, would apply to any employee or group of employees.

In interpreting this general description of *current* policy as a contractual promise for *future* severance benefits, the R&R appears to have incorporated the so-called "Severance Stability

---

[5] Although Plaintiffs also make passing reference to "related communications," they fail to identify these communications or their terms. *See, e.g., Glover v. Bob's Discount Furniture, LLC*, 621 F. Supp. 3d 442, 451 (S.D.N.Y. 2022) (to state a claim for breach of contract, a plaintiff must "identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached") (quoting *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015)).

Promise" contained within § 6.9 of the Merger Agreement into the Severance Policy Email. As an initial matter, however, the email does not even reference the Merger Agreement, much less incorporate its terms. *See R.W.L. Enters. v. Oldcastle, Inc.*, 226 Cal. Rptr. 3d 677, 683 (Cal. Ct. App. 2017) (for the terms of another document to be incorporated into a contract, "the reference must be clear and unequivocal" and the contract must "guide[] the reader to the incorporated document"); *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 663 (Tex. Ct. App. 2004) (doctrine of incorporation requires a contract to "plainly refer[] to the incorporated document" and "does not extend to documents that simply appear to relate to the same transaction"); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (under New York law, "a party will not be bound to the terms of any document unless it is clearly identified in the agreement.").

But assuming *arguendo* that the terms of § 6.9 could be considered incorporated into the email, then the *entire* terms of § 6.9 must be incorporated into the email—not just those that happen to benefit Plaintiffs. Thus, the email's description of current benefits must be considered within the context of § 6.9's dictates that (1) Twitter retained the right to "amend, modify" or even "terminate" its plan at any time after the merger and (2) the section did not confer "any . . . rights" on employees. D.I. 16-1 at 66. Viewed in this way, the Severance Policy Email—to the extent it can be construed as containing any promise whatsoever—contained at most an illusory promise that cannot form the basis for a contract. As the court in *Schwarzkopf v. IBM, Inc.* recognized, "contract formation does not occur when an employer retains absolute discretion or a unilateral right to modify or cancel" employee benefits. 2010 WL 1929625, at *8 (N.D. Cal. May 12, 2010) (collecting cases); *see also Drummond v. Akselrad*, 2023 WL 3173780, at *9 (S.D.N.Y. May 1, 2023); *Sawyer v. E.I. Du Pont De Nemours & Co.*, 430 S.W.3d 396, 400-01 (Tex. 2014). That

5

principle requires dismissal with prejudice here, given Twitter's clear reservation of its right to change the terms of the alleged severance package at any time. Effectively, Plaintiffs' theory is that Twitter's then-management could amend the Merger Agreement struck between Twitter and the Musk Entities via the back door through a vague email to employees. That cannot be right, and if it were, the impact on corporate mergers would be profound.

Under any reasonable reading of the Complaint, Plaintiffs have failed to allege the existence of a binding contract. Either the email is wholly separate from the Merger Agreement and fails to make a definite offer, or the Merger Agreement is incorporated into the email and renders any promise illusory. There is no third option that allows Plaintiffs to have their cake and eat it too. Plaintiffs' breach of contract claim must be dismissed.

### 2. The R&R Erred in Finding That Plaintiffs Have Alleged a Clear and Unambiguous Promise.

Plaintiffs' promissory estoppel claim fares no better. The R&R found that Plaintiffs' promissory estoppel claim is based on alleged promises contained in the "Severance Policy Email and Acquisition FAQ." D.I. 110 at 28. But the Complaint alleges that the "*Severance Stability Promise* [contained within § 6.9 of the Merger Agreement] is a clear and explicit promise," which is merely "reinforced and repeated" in the Severance Policy Email and Acquisition FAQ. D.I. 10 at ¶¶ 334-35 (emphasis added). The allegations in the FAC thus make clear that the promissory estoppel claim depends upon the terms of the Merger Agreement. As explained *supra* IV.A.1, the Merger Agreement expressly stated that it did not convey any "rights" on employees whatsoever and, moreover, reserved the right for Twitter to change its course of action at any time. D.I. 16-1 at 67. Thus, the Merger Agreement does not extend a definite promise of future performance capable of inducing reasonable reliance. *See, e.g., Lamb v. CNG Producing Co.*, 9 F.3d 104 (5th Cir. 1993) (per curium) ("under Texas law, a promissory estoppel claim may not be premised on

6

an illusory promise."); *Shorter v. Peaches Uniforms, Inc.*, 2013 WL 268708, at *7 (E.D. Cal. Jan. 23, 2013) ("'A promise that is vague, general or of indeterminate application is not enforceable' under the doctrine of promissory estoppel.") (quoting *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 446 (9th Cir. 1992)); *Frio Energy Parts., LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 342 (S.D.N.Y. 2023) ("A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel.") (quoting *Kilgore v. Ocwen Loan Serv., LLC*, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015)).

The same is true of the Acquisition FAQ which, as Plaintiffs recognize, merely "repeat[s]" certain aspects of the Merger Agreement. D.I. 10 at ¶ 335. The Acquisition FAQ summarizes what "[t]he merger agreement provides," (D.I. 16-2 at 19), but does not purport to advance any promises whatsoever. *See Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 311 Cal. Rptr. 3d 564, 591-92 (Cal. Ct. App. 2023) (a promise in the form an "an assurance that a person will or will not do something" is an "indispensable element of the doctrine of promissory estoppel") (cleaned up). Even if the FAQ were misconstrued to convey a promise, that promise would simply be coextensive with the terms of the Merger Agreement that the FAQ purports to summarize. Given that the Merger Agreement itself does not contain a clear and unambiguous promise enforceable by employees, then neither does a document merely summarizing and repeating its contents. The R&R erred in finding otherwise.

Finally, for the same reasons that the Severance Policy Email cannot form the basis for Plaintiffs' breach of contract claim, it cannot form the basis for Plaintiffs' promissory estoppel claims: the plain language of the email does not purport to make any promises and, even if it did, those promises would be merely illusory in light of the Merger Agreement's limiting language. *See supra* IV.A.1.; *see also Aton Ctr., Inc.*, 311 Cal. Rptr. 3d at 591-92 (finding that a description

7

of insurance coverage information did not constitute a promise sufficient to support a promissory estoppel claim). Because Plaintiffs fail to allege the existence of a sufficiently clear and unambiguous promise, the R&R erred in not finding that the promissory estoppel claim must be dismissed with prejudice.

    **B.**  **The R&R Erred in Finding that Hawkins and Killian Stated Claims for Breach of Contract and Promissory Estoppel.**

Hawkins' and Killian's claims suffer from an additional fatal defect: the alleged "promise," to the extent it exists at all, is only for severance benefits "in the event of a position elimination," and therefore does not apply to individuals like Hawkins and Killian, who concede that they resigned. D.I. 10 at ¶ 96. The R&R sustained Hawkins' and Killian's claims after finding that they adequately alleged "constructive discharge" without addressing Twitter's argument that, even if Hawkins and Killian were constructively discharged, they nonetheless failed to "allege that [they] suffered a 'position elimination'" within the meaning of the email. D.I. 15 at 16.

Words must be given effect pursuant to their "ordinary and popular" meaning. *See Flores v. Nature's Best Dis., LLC*, 212 Cal. Rptr. 3d 284, 290 (Cal. Ct. App. 2016); *see also U.S. Ecology Inc. v. State of California*, 28 Cal. Rptr. 3d 894, 904 (Cal. Ct. App. 2005) ("promissory estoppel claims are akin to contract actions"). Here, under its "ordinary and popular" meaning, the phrase "position elimination" refers specifically to when an individual's particular job ceases to exist. *See Position*, Oxford English Dictionary (3d ed. 2024) ("A post as an employee"); *Eliminate*, Oxford English Dictionary (3d ed. 2024) ("To remove entirely"). A "commonsense interpretation" of this phrase makes clear that not every discharge qualifies as a position elimination. *Dep't of Forestry & Fire Prot. v. Lawrence Livermore Nat'l Sec., LLC*, 191 Cal. Rptr. 3d 792, 797 (Cal. Ct. App. 2015). It would be absurd, for example, for an employee who was fired for embezzlement to represent to prospective employers that he was let go due to a "position elimination."

8

Court decisions interpreting the phrase have adopted this common-sense understanding of "position elimination." *See, e.g., Davidson v. Tyco/Healthcare*, 416 F. Supp. 2d 690, 707 n.9 (E.D. Mo. 2005) ("the elimination of [plaintiff's] position" and "having her employment terminated by the defendant . . . are not one and the same"); *Lampe v. Swan Corp.*, 571 N.E.2d 245, 258 (Ill. Ct. App. 1991) ("The words 'job elimination' and 'discharge' have different meanings. Whereas 'job elimination' means that a position is no longer needed, 'discharge' means that a person is no longer needed."); *Livingstone v. MacGillivray*, 1 Cal. 2d 546, 553 (Cal. 1934) ("abolition of an office or position is not synonymous with discharge from employment although the effect upon the individual who loses employment is precisely the same"). Given the widely-accepted understanding of the phrase, courts readily conclude that individuals who separate from their employment for reasons other than the elimination of their positions cannot benefit from severance agreements that only apply in the event of a "position elimination." *See, e.g., Sweeney v. Santander Bank, N.A.*, 2021 WL 4224312, at *13 (D. Mass. Sept. 16, 2021) (dismissing breach of contract claim brought by employee who was "fired for misconduct" where the severance plan provided benefits only for "employees who were terminated as a result of a workforce reduction or position elimination"); *Van Dellen v. Aon Serv. Corp.*, 2020 WL 2468759, at *5, 11 (D. Minn. May 12, 2020) (finding that employee who was terminated for cause was not entitled to severance where severance plan only provided benefits for employees whose "job ha[d] been eliminated").

The scenario in *Karamsetty v. Wells Fargo & Co.* is instructive. 967 F. Supp. 2d 1305, 1320 (N.D. Cal. 2013). The plaintiff asserted that he was entitled to severance after he was constructively discharged based on a plan providing for benefits in the event of a "Position Elimination." *Id.* at 1314-15. The court rejected the plaintiff's claim, holding that the plaintiff was

9

not affected by a "position elimination" given that he submitted his resignation and his position continued to exist after his separation. *Id.* at 1320.

Thus, while the R&R correctly found that "a constructive discharge is legally regarded as a firing," the R&R erred in determining that a constructive discharge constitutes a position elimination, which carries a far more specific meaning. *Turner v. Anheuser-Busch*, 7 Cal. 4th 1238, 1245 (Cal. 1994). The FAC contains no allegations to support a finding that Hawkins and Killian were affected by a "position elimination." Rather, it alleges only that they resigned as a result of constructive discharge; there are no allegations that their positions ceased to exist, let alone that their separation was in any way related to an elimination of their respective roles. *See, e.g.,* D.I. 10 at ¶¶ 45, 161; *cf. id.* at ¶ 214 (alleging that Hawkins had the "option[]" to "remain" at Twitter); *id.* at ¶ 292 (acknowledging Killian's ability to "continue" in his role). As a result, Hawkins' and Killian's breach of contract and promissory estoppel claims should be dismissed for failure to state a claim.

## V. CONCLUSION

For the foregoing reasons, Twitter respectfully requests that this Court dismiss Counts III and IV with prejudice for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Dated: December 19, 2024         **MORGAN, LEWIS & BOCKIUS LLP**

  */s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com
*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*