## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WOLFRAM ARNOLD, ERIK FROESE,⠀⠀)
TRACY HAWKINS, JOSEPH KILLIAN,⠀)
LAURA CHAN PYTLARZ and ANDREW )
SCHLAIKJER,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Civil Action No. 23-528-JLH-CJB
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
X CORP. f/k/a TWITTER, INC., X⠀⠀⠀)
HOLDINGS CORP. f/k/a X HOLDINGS I, )
INC. and ELON MUSK,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀)

## <u>REPORT AND RECOMMENDATION</u>

Plaintiffs Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz and Andrew Schlaikjer (collectively, "Plaintiffs") are former employees of X Corp., f/k/a Twitter, Inc. ("Twitter") and they bring various claims against Twitter, X Holdings Corp. f/k/a X Holdings I, Inc. ("X Holdings I" and collectively with Twitter, the "Twitter Defendants") and Elon Musk ("Musk," and collectively with the Twitter Defendants, "Defendants") following Musk's acquisition of Twitter. Pending before the Court is Musk's renewed motion to dismiss Counts I-XIV of the Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Musk motion to dismiss"). (D.I. 78) For the reasons set forth below, the Court recommends that the Musk motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART in the manner set out below.[1]

---

[1]⠀⠀⠀⠀Musk's motion to dismiss as originally filed also sought dismissal for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.I. 17) Musk has subsequently filed a Notice of Partial Withdrawal, withdrawing the portion of the motion that sought dismissal pursuant to Rule 12(b)(2). (D.I. 54) The withdrawal did not impact the remaining portions of the motion seeking dismissal under Rule 12(b)(6). (*Id.*; D.I. 78 at 1 n.1)

I.    **BACKGROUND**

The Court hereby incorporates its summary of the factual and procedural background set out in its December 5, 2024 Report and Recommendation ("December 5 R&R") regarding the Twitter Defendants' motion to dismiss the FAC (the "Twitter Defendants' motion to dismiss"). (D.I. 110 at 1-9)

Additional relevant factual allegations will be discussed below in Section III.

II.    **LEGAL STANDARD**

In the December 5 R&R, the Court set out the familiar standard of review for a Rule 12(b)(6) motion to dismiss for failure to state a claim, as articulated by the United States Court of Appeals for the Third Circuit in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). (*Id.* at 9-10)  The Court incorporates that standard into this opinion by reference, and will follow it herein.  The Court also incorporates by reference the standard that applies to a claim alleging fraud, which was also set out in the December 5 R&R.  (*Id.* at 10)

III.    **DISCUSSION**

With his Motion, Musk moves to dismiss all claims asserted against him.  (D.I. 18 at 1) The Court will take up Musk's various arguments for dismissal in turn below.

A.    **Plaintiffs' Declaratory Judgment and Breach of Merger Agreement Claims (Counts I and II)**

Count I alleges that "Plaintiffs are entitled to a declaration that [they] have standing to enforce the [m]erger [a]greement [entered into between Musk, X Holdings I and non-party X Holdings II in April 2022] and that the [m]erger [a]greement required Twitter to provide [them] with severance consistent with Twitter's severance policy as it existed prior to the merger."  (D.I.

10 at ¶ 319; *see also id.* at ¶ 37)[2]  Count II alleges that Defendants breached the merger

agreement by failing to pay Plaintiffs such severance.  (*Id.* at ¶¶ 322-23)

Musk argues that Counts I and II should be dismissed because, *inter alia*, Plaintiffs are

not parties to the merger agreement, nor are they third party beneficiaries, and thus they lack

standing to enforce its terms.  (D.I. 18 at 10 & n.3)  As explained in the December 5 R&R, the

Court agrees with Defendants that Plaintiffs are not third-party beneficiaries of the merger

agreement, and therefore lack standing to enforce its provisions, including any provisions

relating to severance benefits.  (D.I. 110 at 10-18)  Accordingly, the Court recommends grant of

the Musk motion to dismiss as to Counts I and II as to Musk, with prejudice.

## B.    Plaintiffs' Breach of Contract, Promissory Estoppel and Breach of Offer Letter Claims (Counts III-V)

Musk next contends that Plaintiffs' breach of contract and promissory estoppel claims in

Counts III and IV must be dismissed as to him, because the allegations supporting these claims

all pertain to conduct that occurred *before* the merger closed on October 27, 2022—i.e., at a

point before Musk took control of Twitter.  (D.I. 18 at 11-12)[3]  According to Musk, there are no

---

[2]    As was noted in the December 5 R&R, the FAC refers to a provision in the merger agreement providing that for the one-year period following the closing of the merger, X Holdings I would cause Twitter to "provide [to Continuing Employees] severance payments and benefits . . . no less favorable than" those provided under Twitter's policies immediately prior to the merger.  (D.I. 16, ex. A at § 6.9(a) (*cited in* D.I. 10 at ¶¶ 72-73))  The FAC refers to this provision as the "Severance Stability Promise" and the Court will do the same herein.  (D.I. 10 at ¶¶ 72-73)

[3]    Musk also makes this argument with regard to Plaintiffs' breach of offer letter claim in Count V.  (D.I. 18 at 13-14)  However, in the December 5 R&R, the Court recommended dismissal of Count V, finding that the alleged contract described in the offer letters is too indefinite to constitute an enforceable promise.  (D.I. 110 at 30-31)  This conclusion would apply regardless of which Defendant Count V is being asserted against.  The Court therefore recommends that Count V be dismissed as to Musk on this same basis without prejudice.  (*Id.* at 31)

allegations plausibly asserting that he was a party to the alleged contracts/promises at issue in these claims. (*Id.* at 11)

Turning first to Plaintiffs' breach of contract claim, it alleges that the "Severance Policy Email[,]" which contained a companywide "Acquisition FAQ" sent by Twitter to its employees on May 13, 2022 and October 24, 2022, constituted an "offer from Twitter to its employees" for pre-merger severance in exchange for continued employment through the merger. (D.I. 10 at ¶ 326; *see also id.* at ¶¶ 94, 96, 99) While the caption of Count III states that the claim is brought against both "Twitter and Musk[,]" the allegations in the body of the count only reference alleged contractual promises made by Twitter. (*Id.* at ¶¶ 325-30) Musk contends that this claim must be dismissed as to him because the purported contract at issue was one between Plaintiffs and *Twitter* (not Musk); indeed, as was noted above, Musk points out that the alleged contractual promises were made by Twitter before Musk even gained ownership and control of the company (which happened on October 26, 2022). (D.I. 18 at 11-12 (citing D.I. 10 at ¶¶ 108-09, 326))

As for Plaintiffs' promissory estoppel claim in Count IV, it alleges that Twitter's representations about severance to its employees, including in the Severance Policy Email and Acquisition FAQ, constituted enforceable promises that Plaintiffs relied upon. (D.I. 10 at ¶¶ 333-39) Again, while the caption of Count IV states that this claim is brought against both "X Corp. and Musk[,]" the allegations in the body of the count reference only wrongful conduct engaged in by Twitter. (*Id.* at ¶¶ 332-39) Musk makes the same argument here: i.e., that he undisputedly did not control Twitter at the time these promises were made, and so the promises cannot plausibly be attributed to him. (D.I. 18 at 12-13)[4]

---

[4]    Musk also argues that the FAC's allegations regarding the alleged promises are too vague to plausibly plead a promissory estoppel claim. (D.I. 18 at 13 n.5) For the reasons discussed in the December 5 R&R, however, the Court does not agree. (D.I. 110 at 25-26, 28)

That all seems pretty clear, so far as it goes.  So this then begged the question:  How were Plaintiffs going to deal with the reality that they are charging Musk with claims that relate to promises made by *Twitter* at a point when Musk *wasn't yet formally associated with Twitter* and was *actually in litigation with Twitter*?  The FAC makes it pretty clear as to how Plaintiffs were going to try to do that.  That is because the pleading includes a section entitled "[a]llegations [r]elating to [p]iercing the [c]orporate [v]eil[.]"  (D.I. 10 at 37; *see also id*. at ¶¶ 293-312)  With those allegations, Plaintiffs assert that they are "entitled to an order holding Musk personally liable for any amounts awarded on their other claims."  (*Id*. at ¶ 312)[5]  And so, unsurprisingly, in their answering brief, Plaintiffs' response to Musk's argument for dismissal here was to assert that their "claims against Musk personally are based on veil-piercing[.]"  (D.I. 25 at 5; *see also id.* at 18 ("[A]s to any cause of action for which Plaintiffs do not have a direct claim against Musk, Plaintiffs have sufficiently pled that he can be derivatively liable through veil piercing."))

It is clear from Musk's opening brief that he knew that Plaintiffs' justification for keeping claims like Count III and IV alive as to him related to Plaintiffs' assertions in the FAC about veil piercing/alter ego liability.  (D.I. 18 at 10 n.4 ("While Plaintiffs may argue the Court should pierce the corporate veil and hold Musk liable for Twitter's alleged conduct . . . ."))  Yet for some reason, Musk only made arguments about this veil piercing/alter ego issue in a footnote in that opening brief.  And even there, in that two-sentence footnote, Musk made only one brief merits-based assertion as to why the veil piercing allegations in the FAC would be insufficient to plausibly allege alter ego liability:  i.e., that "Plaintiffs fail to explain [in the FAC] how

---

[5]     The FAC alleges that California law would apply to such analysis because Twitter operates in California and Musk's relevant conduct occurred in California.  (D.I. 10 at ¶¶ 311-12)

respecting the corporate form would lead to an 'injustice' or 'inequitable' result' as is necessary to pierce the corporate veil[.]"  (*Id.*)[6]

Arguments raised solely in footnotes are considered waived or forfeited.  *See, e.g.*, *Sage Chem., Inc. v. Supernus Pharms., Inc.*, Civil Action No. 22-1302-CJB, 2024 WL 2260331, at *11 n.14 (D. Del. May 9, 2024) (citing *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997); *Maugain v. FCA US LLC*, Civil Action No. 22-116-GBW, 2023 WL 1796113, at *18 n.9 (D. Del. Feb. 7, 2023)).  This policy is understandable, in part because when a party makes arguments like these only in a footnote, such arguments tend to be sparse and unhelpful—and they end up leading to insufficient and unhelpful briefing on important legal matters.  Indeed, that exactly is what happened here, due to the fact that Musk did not sufficiently address the veil piercing/alter ego issue in his opening brief.

Therefore, since Musk waived or forfeited any argument that Counts III and IV should be dismissed due to Plaintiffs' failure to plausibly assert that Twitter's corporate veil should be pierced, his motion to dismiss these counts should be denied.  The Court thus recommends denial of Musk's motion to dismiss with respect to Plaintiffs' breach of contract and promissory estoppel claims in Counts III and IV.[7]

---

[6]     In this same footnote, Musk also asserted that although the FAC says that California law would apply to this veil-piercing analysis, that is wrong, and Delaware law should apply instead.  (D.I. 18 at 10 n.4)  The Court does not understand this to be a dispute in need of resolution here, as Musk does not suggest that California or Delaware law differs in any material way regarding the legal issues at play.  (*Id.* (Musk arguing that "no matter which law applies[,]" Plaintiffs' veil-piercing argument must fail); D.I. 37 at 5 (Musk noting that both California and Delaware law have the same requirements regarding the elements of a veil piercing/alter ego claim))

[7]     While Musk also argues (in a footnote) that Plaintiffs Hawkins and Killian cannot plead breach of contract and promissory estoppel claims based on failure to pay severance benefits because they voluntarily resigned their employment with Twitter, (D.I. 18 at 14 n.6), the

### C.    Plaintiffs' Fraud Claim (Count VI)

The Court now turns to Musk's challenge to Plaintiffs' fraud claim, which is found in Count VI.  Stating a claim for fraudulent misrepresentation or omission requires alleging:  (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff; (5) that causes damage to the plaintiff.  *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (California law); *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 138 (S.D.N.Y. 2022) (New York law).[8]

With their fraud claim, Plaintiffs allege that "Twitter" made representations to its employees "[i]n signing the [m]erger [a]greement" and in "subsequent statements" that if they were laid off in the first year after the merger, they would receive severance benefits no less favorable than they would have received pre-merger.  (D.I. 10 at ¶ 354)  As to the other Defendants, the FAC further alleges that "on information and belief, Musk, X Holdings I and [non-party] X Holdings II intended Twitter to communicate their purported agreement to the Severance Stability Promise to the Tweeps in order to allay Tweep concerns about the merger" ("Paragraph 356").  (*Id.* at ¶ 356)  Furthermore, the FAC alleges that Defendants intended that Twitter's employees would rely on these representations and that the employees did in fact do so—but that Musk (and X Holdings I and X Holdings II) did not intend to follow through on the

---

Court rejected this same argument in connection with the Twitter motion to dismiss, (D.I. 110 at 18-22).  It does so again for the same reasons here.

[8]    Here, Musk suggests that Delaware, California, New York and/or Texas law would apply to Plaintiffs' fraud claim, but notes that the elements for such a claim are substantially the same under each of these state's laws.  (D.I. 18 at 14-15 n.7)

promises regarding severance (and that Twitter either knew or was reckless to the fact that the representations were untrue). (*Id.* at ¶¶ 355, 357-59, 366)

Musk's challenge to Plaintiffs' fraud claim focuses on the first element of such a claim: i.e, whether he made a material misrepresentation or omission of fact. Musk argues that Count VI must be dismissed as to him because the FAC does not contain allegations tying *him* to this element, in that it fails to plead that: (1) *Musk* made a false representation or (2) *directed* Twitter to do so or (3) *had the authority* to direct Twitter to do so. (D.I. 18 at 14; D.I. 37 at 7)

The Court agrees with Musk that the fraud claim is insufficiently pleaded as to him. The FAC does not plead that *Musk himself* made a false representation to Plaintiffs. Rather, as Musk points out, the main allegation connecting him to the communication of the allegedly fraudulent statements comes in Paragraph 356. (D.I. 18 at 15) This paragraph is completely conclusory; as noted above, it simply states that "on information and belief" Musk (and his companies) "intended" *Twitter* to communicate his agreement to the Severance Stability Promise to Twitter's employees. (D.I. 10 at ¶ 356; *see also id.* at ¶ 76 (essentially alleging the same)) But the Severance Stability Promise is found in Section 6.9 of the merger agreement, *see supra* n.2, and Musk was not a party to that portion of the agreement. (D.I. 37 at 7; *see also* D.I. 18 at 3-4; D.I. 16, ex. A at 15 (specifying that the merger agreement is made among Twitter, X Holdings I, X Holdings II and Musk, but that Musk is a party only to certain sections—*not including* Section 6.9)) So it is hard to say, simply by looking at the merger agreement's text, that Musk himself had something to do with any promise reflected in Section 6.9. And there are no further *concrete* facts pleaded in the FAC that would flesh out the bald assertion that Musk intended or directed Twitter to communicate the statements found in Section 6.9 to others on his behalf. This seems especially problematic when one considers that the statements at issue were made at a time

before Musk owned and controlled Twitter, and when he was in active litigation with the

company.[9]  Thus, these allegations do not satisfy the relevant Rule 9(b) pleading standard.  *See,*

*e.g.*, *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 121 (E.D.N.Y. 2011) (dismissing a fraudulent

misrepresentation claim in a case regarding an allegedly defective oven manufactured by the

"Maytag Defendants" and purchased from defendant "Plesser's[,]" where the plaintiff argued

that a misrepresentation made by defendant Plesser's sales representative constituted a fraudulent

misrepresentation by the Maytag Defendants—but the complaint failed "to plead any facts

supporting the existence of an agency relationship between the Maytag Defendants and

[defendant] Plesser's").[10]

Indeed, in their briefing, Plaintiffs seem to tacitly acknowledge the fact that their fraud

claim is insufficiently pleaded as to Musk.[11]  In their answering brief, Plaintiffs assert that

---

[9]    The FAC pleads that Musk took over as the owner of Twitter six months after the merger agreement was signed, on October 26, 2022, at which point he "exercised near-total personal control over decision-making at Twitter[.]"  (D.I. 10 at ¶¶ 108-09)

[10]    While Plaintiffs are correct that an "officer of a corporation" can be held liable for wrongful conduct of a corporation if the officer directly authorizes or actively participates in such conduct, (D.I. 25 at 7 (citing cases)), a plaintiff has to plead sufficient facts in its complaint to make out such a claim against an individual defendant, *see, e.g.*, *Lauter v. Rosenblatt*, Case No. CV 15-08481 DDP (KSx), 2018 WL 3854160, at *4 (C.D. Cal. Aug. 10, 2018) (noting that prior pleadings' allegations that an individual defendant "was aware of" tortious conduct and "had the right and ability to supervise" employees who issued false statements were not sufficient to allege the individual defendant's active participation in the wrongful misconduct); *Prairie Cap. III, L.P. v. Double E Holding Corp*., 132 A.3d 35, 60-61 (Del. Ch. 2015) (holding that a company's directors can be held liable for fraudulent representations made by the company as to a contract, where the complaint alleged that the directors made statements to the company's managers intending for them to be repeated and affirmatively approved, or that they directed the managers to provide the false representations).  There are no such specific, Rule 9(b)-type facts pleaded here.  And Musk was not an officer of Twitter at the relevant time.

[11]    Plaintiffs pointedly do not argue that alter ego liability applies to this claim (or to their wage theft claims, dealt with further below).  (D.I. 25 at 1 (Plaintiffs noting that they "adequately pled their fraud and wage theft claims directly against Musk" and that "Plaintiffs'

"Musk intended that [X Holdings I's intent to provide the promised severance] be communicated to the employees,[] *and in fact approved the communications that conveyed this message to the employees, both in his individual capacity and on behalf of X Holdings I.*"  (D.I. 25 at 6 (emphasis added); *see also id*. at 8 n.9)  But as support for *that* assertion, Plaintiffs cite solely to Paragraph 356.  And Paragraph 356 does not provide detailed facts (or say anything at all) about how Musk "approved the communications" at issue or that he did so on behalf of himself and X Holdings I.  (D.I. 10 at ¶ 356)  Perhaps realizing this, Plaintiffs offer in their briefing to "amend to specifically allege the communications were personally approved by Musk, both on his own behalf and on behalf of X Holdings [I]."  (D.I. 25 at 6 n.7)

Since a party may not amend a pleading through arguments made in a brief in opposition to a motion to dismiss, (D.I. 37 at 7); *Sierra v. Trafigura Trading LLC*, Civil Action No. 22-366-JLH-CJB Consolidated, 2024 WL 3823018, at *11 (D. Del. Aug. 14, 2024) (citing cases), the Court recommends that Plaintiffs' fraud claim be dismissed as to Musk.  That said, it seems possible that Plaintiffs (as they say that they wish to do) might be able to plead the missing facts in a further amended complaint.  In light of this, and because Federal Rule of Civil Procedure 15 states that leave to amend should be freely permitted "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court will recommend that such dismissal be without prejudice.

### D.    Counts VII, VIII, IX, X, XII, XIII and XIV

Musk argues that Counts VII, VIII, IX, X, XII, XIII and XIV of the FAC should be dismissed because they either do not provide for individual liability or do not provide a private right of action.  (D.I. 18 at 16)  Musk first addresses the federal, California and New York

---

*remaining claims* against Musk are viable because they adequately pled veil-piercing liability") (emphasis added))

WARN Act claims (Counts VII, VIII and IX); second, the wage theft claim under the Texas Labor Code (Count X);[12] third, the California Family Rights Act ("CFRA") claim (Count XIII); and fourth, the California Fair Employment and Housing Act ("FEHA") claim (Count XIV). (*Id.* at 16-19)  The Court will take these up in the same order below (and it will also address Musk's argument as to Count XII, a claim for Family and Medical Leave Act ("FMLA") Interference, in a footnote).

### 1.    Federal, California and New York WARN Act claims (Counts VII, VIII and IX) (the "WARN Act claims")

Plaintiffs Arnold, Froese, Pytlarz and Schlaikjer bring a federal WARN Act claim in Count VII against Twitter and Musk.  (D.I. 10 at ¶¶ 370-90)  Plaintiffs Arnold, Pytlarz and Schlaikjer bring a California WARN Act claim against Twitter and Musk in Count VIII, and Plaintiff Froese brings a New York WARN Act claim against Twitter and Musk in Count IX. (*Id.* at ¶¶ 391-411)  The Federal WARN Act requires "[a]n employer[,]" defined as a "business enterprise[,]" to provide 60 days' advance notice of "mass layoff[s]."  29 U.S.C. §§ 2102(a), 2101(a).  The California WARN Act requires an "[e]mployer" (defined as "any person" who "owns and operates a covered establishment") to provide 60 days' advance notice of mass layoffs.  Cal. Lab. Code §§ 1400.5(b), 1401(a) (West 2003).  And the New York WARN Act also defines an "employer" as a "business enterprise" and requires 90 days' advance notice to affected employees in advance of a mass layoff.  N.Y. Lab. Law §§ 860-a(3), 860-b(1) (McKinney 2020).

Musk argues that the WARN Act claims should be dismissed because, pursuant to governing law, such claims are not cognizable against individual defendants.  (D.I. 18 at 16-17

---

[12]    Plaintiffs' wage theft claims in Count X that are brought under California and New York law will be addressed in the next section.

(citing cases))  Musk appears correct on that point.  *See, e.g.*, *Warshun v. N.Y. Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013) (concluding that the federal WARN Act does not provide for individual liability, as Congress did not intend for "business enterprise" to mean an "individual[,]" and that the New York WARN Act similarly does not provide for individual liability) (internal quotation marks and citations omitted); *see also Reynolds v. Direct Flow Med., Inc.*, Case No. 17-cv-00204-KAW, 2019 WL 4168959, at *3 (N.D. Cal. Sept. 3, 2019) ("Several district courts, however, have found that the federal WARN Act does not impose liability on individual employers, and [p]laintiff has found no case imposing California WARN Act liability on an individual officer or director.").

Indeed, Plaintiffs do not dispute the point in their responsive brief.  Instead, they argue a different basis for liability—that the FAC sufficiently pleads "that Musk is personally liable for *the corporate defendants*' . . . WARN Act violations[] via [veil-]piercing."  (D.I. 25 at 16-18 (emphasis added))  As described above, the FAC contains a section devoted to allegations relating to piercing the corporate veil.  (D.I. 10 at ¶¶ 293-312)  To this, in his reply brief, Musk simply asserts that Plaintiffs failed to substantively address Musk's argument that he does not constitute an "employer" under the federal, California or New York WARN Act.  (D.I. 37 at 3)

In the end, the Court is left without any meaningful back-and-forth regarding Plaintiffs' assertion that Musk can be held personally liable for Twitter's alleged WARN act violations *through veil piercing*.  As was noted above, Musk's opening brief discussed the FAC's veil piercing allegations only in a footnote, and in turn waived or forfeited any specific arguments as to why they are deficient.  Additionally, the parties have put forward no caselaw, for example,[13]

---

[13]    In the section of their answering brief where they discussed their FEHA claim in Count XIV, Plaintiffs specifically addressed whether that claim in particular was "subject to alter

addressing whether WARN Act claims can proceed against an individual owner and controller of an employer pursuant to a veil piercing/alter ego theory.[14]  With the resulting record therefore not clearly supporting dismissal here, the Court cannot recommend a grant of the Musk motion to dismiss with respect to these claims.

## 2.    Plaintiffs' Wage Theft claim under the Texas Labor Code (Count X)

Count X of the FAC pleads a wage theft claim regarding the unpaid severance against all Defendants under New York, Texas and California law.  (D.I. 10 at ¶¶ 412-20)  Here the Court will address Plaintiffs' wage theft claim under Texas law.  As to that claim, Musk argues that it must be dismissed because such a violation would be addressed under Chapter 61 of the Texas Labor Code—but nothing therein provides for a private cause of action.  (D.I. 18 at 17-18); *see, e.g.*, *Abatement Inc. v. Williams*, 324 S.W.3d 858, 864 (Tex. App. 2010) ("Chapter 61 provides a

---

ego liability[,]" citing to a case in support.  (D.I. 25 at 9)  But Plaintiffs do not make such an express argument with respect to the WARN Act claims.

[14]    From the Court's research, it does not appear that the caselaw is uniform on this issue.  For example, in one opinion, the United States District Court for the Southern District of New York dismissed federal and New York WARN Act claims against an individual defendant—even though the plaintiff argued that the claims could proceed against him pursuant to alter ego liability—because piercing the corporate veil "does not constitute a cause of action independent of that against the corporation[.]"  *Staley v. FSR Int'l Hotel Inc.*, 22-cv-6781 (JSR), 2024 WL 1704931, at *2 (S.D.N.Y. Apr. 19, 2024) (internal quotation marks and citation omitted).  However, that court clarified that plaintiffs *could* argue at summary judgment or trial that the corporate veil should be pierced, should any of the corporate defendants be found liable for the WARN Act claims.  *Id.*  Some district courts have concluded that alter ego liability cannot be imposed for violations of the federal WARN Act because an individual cannot be liable under the Act (and that this means that direct *and* indirect individual liability is not permitted).  *See, e.g.*, *Kemp v. Jefferson Cnty. Comm. for Econ. Opportunity*, Case No.: 2:21-cv-1609-AMM, 2022 WL 22894579, at *4 (N.D. Ala. Nov. 8, 2022); *Regal v. Butler & Hosch, P.A.*, Case No. 15-CIV-61081, 2015 WL 11198248, at *4 (S.D. Fla. Oct. 8, 2015).  That said, the United States Court of Appeals for the Fifth Circuit has found that an individual may be personally liable for a WARN Act claim pursuant to piercing the corporate veil.  *Plasticsource Workers Comm. v. Coburn*, 283 F. App'x 181, 186 (5th Cir. 2008); *see also Regal*, 2015 WL 11198248, at *4 n.2.

detailed administrative enforcement scheme and allows the possibility for enforcement by the attorney general, and nothing in language of chapter 61 shows any intent to also allow a private right of action."). Plaintiffs acknowledge that Musk is correct, and do not oppose dismissal of this claim. (D.I. 25 at 15 n.11) Therefore, the Court recommends that the Musk motion to dismiss be granted with prejudice with respect to Plaintiffs' wage theft claim brought pursuant to Texas law.

### 3.    Arnold and Schlaikjer's CFRA claim (Count XIII)

In Count XIII, Arnold and Schlaikjer bring a CFRA claim against X Corp. and Musk. These Plaintiffs allege that Twitter interfered with their rights under the CRFA when they were laid off either while on CRFA leave or shortly after returning from such leave; they assert that they were denied their right to be reinstated in their positions at the end of their leave. (D.I. 10 at ¶¶ 465-68)[15] Musk asserts that Plaintiffs' CFRA claim must be dismissed because supervisors may not be held individually liable under the statute. (D.I. 18 at 18); *see also Lewis v. Home Depot U.S.A., Inc.*, No. C-12-6354 EMC, 2013 WL 843089, at *2 (N.D. Cal. Mar. 6, 2013) ("Not only does the express language of the CFRA establish that a supervisor may not be held individually liable, but also the only state court to have addressed the issue has held that a supervisor may not be held individually liable.").

Plaintiffs do not specifically address Count XIII in any claim-specific way in their answering brief. (*See* D.I. 37 at 3) However, as with other claims discussed above, in that brief, Plaintiffs *do* argue generally that "as to any cause of action for which Plaintiffs do not have a

---

[15]    None of the allegations making up this count refer specifically to Musk. (D.I. 10 at ¶¶ 451-69)

direct claim against Musk, Plaintiffs have sufficiently pled that he can be derivatively liable through veil piercing."  (D.I. 25 at 18)

The California Court of Appeals has indicated that CFRA claims *are* subject to alter ego liability.  *Leek v. Cooper*, 125 Cal. Rptr. 3d 56, 60, 65 (Cal. Ct. App. 2011) (explaining that with respect to causes of action brought under FEHA and CFRA, plaintiffs can prevail on their claims against an individual defendant if the plaintiffs' "complaint adequately alleged that Cooper was liable to plaintiffs on an alter ego theory").  With this in mind, and with Musk having waived or forfeited any argument that the FAC insufficiently pleads an alter ego theory, the Court recommends that the Musk motion to dismiss be denied with respect to Plaintiffs' CFRA claim.[16]

### 4.    Pytlarz and Arnold's Discrimination Under FEHA claim (Count XIV)

Next, the Court takes up both Musk and the Twitter Defendants' challenge to Count XIV. In Count XIV, Pytlarz and Arnold allege discrimination under the FEHA against all Defendants. (D.I. 10 at ¶¶ 470-544)  To state a *prima facie* case of discrimination under the FEHA, Pytlarz

---

[16]    Musk also moves to dismiss Arnold and Schlaikjer's similar claim for FMLA Interference (29 U.S.C. § 2615(a)(1)) in Count XII, arguing that the FAC fails to plead facts sufficient to hold Musk individually liable.  (D.I. 18 at 19 (inadvertently referring to this count as "Count XIV"))  In Count XII, Arnold and Schlaikjer allege that they were entitled to leave under the FMLA and that they provided Twitter with sufficient notice of their intent to take such leave, but they were laid off by Twitter either while on FMLA leave or shortly after returning from such leave, and thus were denied their right to be reinstated in their positions at the end of their leave.  (D.I. 10 at ¶¶ 441-50)  The same analysis applies to this claim—Plaintiffs argue in response that Musk would be personally liable via veil piercing, which they say is adequately alleged in the FAC.  (D.I. 25 at 16-18)  Both because there is authority for the proposition that an individual can be liable for a FMLA claim on an alter ego/veil piercing theory, *see Stone v. Winter Enters., P.C.*, Civil No. 12-465 (RBK/JS), 2012 WL 6155606, at *3 (D.N.J. Dec. 11, 2012) ("As owner of the business entities, Dr. Bruggeworth may also be liable [with respect to FMLA claim] if Plaintiff can prevail on her veil-piercing or alter ego claims[.]"), and because Musk failed to adequately address veil piercing in his opening brief, the Court cannot dismiss Count XII.  Therefore, the Court recommends that the Musk motion to dismiss be denied with respect to Arnold and Schlaikjer's FMLA claim.

and Arnold must plead facts plausibly establishing:  (1) they were members of a protected class; (2) that were performing competently in the positions they held; (3) and they suffered an adverse employment action; as well as (4) some other circumstance suggesting a discriminatory motive for the adverse employment action.  *Hosseini v. Siemens Corp.*, Case No. 24-cv-06758-SI, 2024 WL 5011946, at *3 (N.D. Cal. Dec. 6, 2024).[17]  At the pleading stage, a plaintiff must allege some facts supporting the inference that his termination was because of his or her inclusion in a protected class.  *Napear v. Bonneville Int'l Corp.*, 669 F. Supp. 3d 948, 959 (E.D. Cal. 2023).  With their FEHA claims, Pytlarz alleges that her sex (female) was a substantial factor motivating Twitter's decision to terminate her, and Arnold alleges that his sexual orientation (bisexual) and age (over 40) were substantial factors motivating Twitter's decision to terminate him.  (D.I. 10 at ¶¶ 537-39)[18]

The Twitter Defendants moved to dismiss Pytlarz and Arnold's FEHA claim in the Twitter Defendants' motion to dismiss, but the Court held that portion of the motion in abeyance. (D.I. 110 at 10 n.8)  And so here, the Court will first assess arguments relevant to the Twitter

---

[17]    A plaintiff may bring a FEHA claim on a theory of disparate treatment, which occurs when an employer treats a particular individual less favorably than others because of a protected trait.  *Strifling v. Twitter Inc.*, Case No. 22-cv-07739-JST, 2024 WL 3956324, at *4 (N.D. Cal. Aug. 26, 2024).  A plaintiff can also bring an FEHA claim on a disparate impact theory, which asserts that a facially neutral employment practice created a disparate impact on a protected class.  *Id.* at *5.  It appears that Plaintiffs may be attempting to assert both theories in their FEHA claim.  (*See, e.g.*, D.I. 10 at ¶¶ 475, 485, 532-33)  The Twitter Defendants only substantively challenge Plaintiffs' disparate treatment claim.  In a one-sentence argument made in a footnote of their opening brief, they state that Plaintiffs' FEHA claims would also fail under a disparate impact theory.  (D.I. 15 at 18 n.5)

[18]    While Plaintiffs' briefing states that Plaintiffs also allege discrimination based on race and parental status, (D.I. 25 at 14), the FAC seems to attempt to allege only that Pytlarz and Arnold were discriminated against based on sex (Pytlarz) and age and sexual orientation (Arnold), (D.I. 10 at ¶¶ 537-39).  So those allegations are what the Court is focusing on here.

16

Defendants' motion to dismiss regarding the FEHA claim; thereafter, it will take up Musk's argument for dismissal of that claim as to him.

> **a.    The Twitter Defendants' arguments for dismissal of the FEHA claim**

The Twitter Defendants argue that Pytlarz and Arnold's FEHA claim should be dismissed because the FAC does not plead that these Plaintiffs suffered adverse employment actions undertaken because of a discriminatory intent. (D.I. 15 at 18-19) To that end, the Twitter Defendants contend that the FEHA-related allegations discuss Musk's personal Twitter account and his roles as CEO of Tesla and SpaceX—instead of demonstrating how *Twitter's* conduct displayed discriminatory intent towards Plaintiffs. (*Id.* at 18) According to the Twitter Defendants, the FAC's allegations regarding Tesla and SpaceX are irrelevant and unrelated to Plaintiffs' terminations. (*Id.* at 19) The Twitter Defendants then argue that while Pytlarz alleges that she was laid off as part of a November 2022 reduction in force ("RIF"), she fails to allege "any gender-based animus directed specifically toward her or any alleged comments by any Twitter decisionmakers related to the RIF." (*Id.*; *see also* D.I. 38 at 9) Arnold alleges that he was laid off because he failed to check a box on an online form—allegations, the Twitter Defendants argue, that fail to show a materially adverse change in the conditions of employment because of anything *Twitter* did, and that do not give rise to an inference of discrimination. (D.I. 15 at 19; D.I. 38 at 9)

The easiest argument for dismissal to dispose of is Twitter's assertion that the FAC fails to plead that Arnold suffered an adverse employment action *because he resigned*. (D.I. 15 at 19; *see also* D.I. 38 at 9 ("Arnold resigned, which negates any suggestion that Twitter singled him out.")) The FAC alleges that Arnold was laid off because he did not immediately check "yes" in a box on an online form agreeing to a more "hardcore" working environment, but it also notes

that Twitter did not immediately discharge every employee who did not check the box.  (D.I. 10 at ¶¶ 143, 148-49)  Drawing all reasonable inferences in Arnold's favor, the FAC is not asserting that he *resigned*; it asserts that Twitter *unilaterally terminated* his employment.  *See Frederick-Osborn v. Twitter, Inc.*, Case No. 24-cv-00125-JSC, 2024 WL 1354529, at *4 (N.D. Cal. Mar. 29, 2024); (*see also* D.I. 10 at ¶¶ 8, 12).  And that amounts to an adverse employment action.

That leaves us with the question of whether the FAC sufficiently pleads the fourth element of a disparate treatment claim under the FEHA—i.e., whether enough facts are alleged to support the plausible inference that Plaintiffs' termination was due to their inclusion in a protected class.

In the Court's view, Pytlarz and Arnold have pleaded just enough to state FEHA claims as to sex and sexual orientation discrimination, respectively.[19]  The FAC alleges, *inter alia*:

- Layoff decisions were based on subjective discretion by a transition team made up largely of managers from Musk's other companies Tesla and SpaceX, and that those companies have documented histories of discrimination in employment.  (D.I. 10 at ¶¶ 124-27)  The termination list discriminated on the basis of, *inter alia*, sex and sexual orientation.  (*Id.* at ¶ 130);

---

[19]    Although Arnold also pleads that his age was a substantial factor motivating Twitter's decision to terminate him, (D.I. 10 at ¶ 539), there are no non-conclusory facts pleaded that would allow the Court to plausibly infer that he was laid off due to his age.  The FAC only pleads that on information and belief, Twitter's actual decision-making as to whom to terminate targeted, *inter alia*, older employees.  (*Id.* at ¶ 531)  There are no other facts set out that might support this bald assertion.  *Compare Frederick-Osborn*, 2024 WL 1354529, at *7-8 (finding age-based discrimination claims insufficiently pleaded, where the complaint contained no facts supporting an inference that more older employees were terminated for not checking yes in the online form, nor any facts demonstrating a system-wide pattern of age discrimination at Twitter), *with Weinberg v. Twitter*, Case No. 23-cv-04016-AMO, 2024 WL 3908112, at *6-7 (N.D. Cal. Aug. 21, 2024) (concluding that the combination of allegations regarding statistical evidence of differential treatment of older workers in the RIF, Musk's offensive comments regarding older workers, as well as allegations regarding the lack of consideration given by managers in making RIF decisions, collectively supported an inference of discriminatory intent against older workers).  The Court therefore recommends that the Musk and Twitter motions to dismiss be granted with respect to Arnold's FEHA age discrimination claim, without prejudice.

- In making termination decisions, Twitter leadership discussed pregnancy as a complicating factor that would make it harder for employees to perform satisfactorily. (*Id.* at ¶ 474);

- Twitter refused to conduct a disparate impact analysis prior to implementing layoffs because it knew that any analysis would reveal that the layoffs were discriminatory. (*Id.* at ¶¶ 475, 522);

- A disproportionate number of employees that were laid off were "LGBTQ people and women[,]" and this was the result of Twitter's new management using factors including gender and sexual orientation to identify employees that would not fit with the atmosphere that Musk wanted to create at Twitter. (*Id.* at ¶¶ 485, 487);

- Musk altered the "Twitter" sign at Twitter's San Francisco office into a sexualized joke. (*Id.* at ¶ 488);

- At Musk's other companies Tesla and SpaceX, fewer than 25% and 15% of employees, respectively, are female, and Musk imported these values to Twitter after he took control of the company. (*Id.* at ¶¶ 518, 520-21);

- Twitter knew that Arnold "was LGBTQ" and "actively noted employees' LGBTQ statuses in their employment files, including Arnold's" file. (*Id.* at ¶¶ 526-27);

- Twitter retained employees who were not members of protected groups who had lower performance or seniority, or were less qualified, than Pytlarz and Arnold. (*Id.* at ¶¶ 532-33); and

- Twitter's officers and directors, including Musk, authorized or ratified this conduct. (*Id.* at ¶ 535)

This does not strike the Court as a particularly strong claim—if this ends up being all there is to it. And so the decision here is a close call. There are no allegations, for example, that suggest that the Twitter Defendants or Musk did or said something specific to Pytlarz or Arnold relating to their protected status in the relevant time period. Nor is it the case that Plaintiffs include detailed data in the pleading, akin to "statistical charts showing a comparison of [women or LGBTQ people] laid off compared to others." *Weinberg v. Twitter*, Case No. 23-cv-04016-

19

AMO, 2024 WL 3908112, at *7 (N.D. Cal. Aug. 21, 2024).  But we are at the pleading stage, and a *plausible* claim is all that is required.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (explaining that a well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely") (internal quotation marks and citation omitted).  And drawing all inferences in Plaintiffs' favor, these allegations—i.e., ones that suggest, in various multi-faceted (if circumstantial) ways, that Pytlarz and Arnold were fired in a manner suggesting that their sex/sexual orientation was the reason—are just enough to get over the plausibility line.  *See, e.g.*, *Marshall v. Alameda Contra Costa Transit Dist.*, No. 24-cv-00996-JST, 2024 WL 4545979, at *5 (N.D. Cal. Oct. 21, 2024) (concluding that plaintiff's FEHA claim sufficiently pleaded that he was denied a permanent position due to his gender, where he alleged that a less senior and less qualified female was selected for the role, which, at the pleading stage, is sufficient "to support a plausible inference of discrimination") (citing cases); *Tolton v. Day*, Civil Action No. 19-945 (RDM), 2020 WL 2542129, at *14 (D.D.C. May 19, 2020) (finding that an FEHA sex discrimination claim was adequately pleaded, where the plaintiff alleged that she was subject to sexist comments in the workplace and that other female associates received lower overall ratings than their male colleagues).  Thus, Court recommends that the Twitter motion to dismiss be denied as to Pytlarz and Arnold's FEHA sex and sexual orientation claims, respectively.[20]

---

[20]     The Twitter Defendants also argued that Plaintiffs' FEHA claims should be stayed pursuant to the first-filed rule, pending the outcome of a class action lawsuit filed in December 2022 in the Northern District of California.  (D.I. 15 at 19-20; D.I. 38 at 10)  In that action, *Strifling v. Twitter, Inc.*, No. 22-07739-JST (N.D. Cal.) ("*Strifling*"), the plaintiffs assert FEHA sex and age discrimination claims.  (*See* D.I. 15 at 20)  The Twitter Defendants argue that Plaintiffs' sex and age discrimination claims substantially overlap with and are encompassed in the putative class claims in *Strifling*.  (D.I. 38 at 10)  The first-filed rule gives courts discretion to stay a later-filed action based on principles of comity that "when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has

b.    **Musk's argument for dismissal of the FEHA claim**

Musk's only argument for dismissal of the FEHA claim against him is that FEHA does not provide for individual liability.  (D.I. 18 at 18)  Plaintiffs' (now familiar) retort is that the claim is subject to alter ego liability and the FAC adequately pleads veil-piercing.  (D.I. 25 at 9)  The California Court of Appeal has indicated that FEHA claims are subject to alter ego liability.  *Leek*, 125 Cal. Rptr. 3d at 60, 65.  In light of that, and with Musk having waived or forfeited any argument that the FAC insufficiently pleads an alter ego theory, the Court recommends that the Musk motion to dismiss be denied with respect to Plaintiffs' FEHA claim.

**E.    Counts X and XI**

Musk next argues that Count X (to the extent the claim is made pursuant to California and New York law) and Count XI of the FAC should be dismissed because Plaintiffs have not plausibly alleged that Musk is individually liable or that he is Plaintiffs' "employer."  (D.I. 18 at 19-20)  The Court first addresses Plaintiffs' wage theft claim under California and New York law (Count X), and then Plaintiffs' claim for penalties under the Private Attorneys General Act ("PAGA") (Count XI).

---

priority." *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016).  The rule only applies to earlier-filed proceedings involving:  (1) the same issues; and (2) the same parties.  *Mazzei v. Heartland Payment Sys., LLC*, Civil No. 20-cv-14929 (RMB-SAK), 2023 WL 6121318, at *4 (D.N.J. Sept. 19, 2023).

For a number of reasons, the Court declines to entirely stay Plaintiffs' FEHA claims at this time in favor of *Strifling.*  First, the Court notes that this case is already partially stayed (with certain limited exceptions that include resolution of the instant motions).  (D.I. 82; D.I. 83)  So it is not entirely clear to the Court how addressing this claim (solely as to the instant motions) would offend the premise behind the first-filed rule, were it applicable.  Second, as Plaintiffs point out, *Strifling* does not deal with sexual orientation claims and no class has been certified to date in that case to the Court's knowledge.  (D.I. 25 at 14)  Third, the briefing on this issue was sparse, and the Court therefore has not been told much about *Strifling*—including about what stage that case is currently at (and whether it is more advanced than this case).  That said, Defendants are free to re-raise in the future whether further litigation regarding Plaintiffs' FEHA claims should be stayed pending *Strifling*, based on the first-filed rule.

### 1.    Wage Theft claims under California and New York law (Count X)

Count X of the FAC alleges that New York and California law provides that an employer that fails to provide employees with all wages due is liable for the unpaid amount and also for liquidated damages in the amount of any stolen wages, and that Twitter failed to provide employees with the severance that they were entitled to.  (D.I. 10 at ¶¶ 414-17)  In this claim, Plaintiffs allege that "[u]nder California law, the definition of 'employer' against whom Plaintiffs may bring claims for wage theft includes not only Twitter, but X Holdings I and Musk as an individual" ("Paragraph 419").  (*Id.* at ¶ 419)

Musk argues that Plaintiffs' wage theft claims brought pursuant to California and New York law should be dismissed because the FAC fails to plausibly allege that Musk is Plaintiffs' "employer" or that he otherwise participated in the conduct at issue.  (D.I. 18 at 19-20; D.I. 37 at 9)  He contends that Paragraph 419 is conclusory, as the FAC does not include allegations of Musk's individual wrongdoing.  (D.I. 18 at 20)

The Court agrees with Musk as to these claims.  Plaintiffs' retort seems to be that wage theft claims under California and New York law impose liability on individuals where (in California) the owner was personally involved in the wrongdoing or had sufficient participation in the employer's activities and (in New York) the individual had the power to control operations and conditions of employment and set wages.  (D.I. 25 at 15-16)

The problem with Plaintiffs' argument is that the FAC does not actually plead any of this so far as the Court can tell, and certainly not in the body of Count X itself.  In Count X, the FAC simply alleges in Paragraph 419 that Musk is individually liable for the California wage theft claim because he is covered by the statutory definition of "employer" (with no further

elaboration as to how that is so).  (D.I. 10 at ¶ 419)[21]  The allegations in the count do not say that Musk is individually liable under New York law (let alone how that would be so, or which of the factors that New York law utilizes to make this determination might apply here).  (*See id.* at ¶¶ 412-20); *Leal v. Masonry Servs., Inc.*, No. 12-CV-588 (DLI)(VVP), 2013 WL 550668, at *3 (E.D.N.Y. Feb. 12, 2013) (listing certain such non-exclusive factors).

The Court therefore recommends that Plaintiffs' California and New York wage theft claims in Count X be dismissed as to Musk.  That said, it seems possible that Plaintiffs might be able to plead the missing facts in a further amended complaint.  In light of this, and in light of Rule 15's admonition that leave to amend should be freely permitted "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court will recommend that such dismissal be without prejudice.

2.    **PAGA claim (Count XI)**

Count XI of the FAC alleges a claim on behalf of Killian and Arnold, individually and in a representative capacity, for penalties under the California PAGA for violations of California Labor Code §§ 201, 202 and 203 (regarding the failure to provide timely final paychecks), 226 and 227.3 (regarding failure to provide accurate final paystubs) and the California WARN Act. (D.I. 10 at ¶¶ 421-40)  Musk contends that this claim must be dismissed because it is derivative of Plaintiffs' California wage theft claim, which fails to state a claim against Musk individually. (D.I. 18 at 20); *see also Turner v. LTF Club Mgmt. Co.*, No. 2:20-cv-00046-KJM-EFB, 2020 WL

_____

[21]    In the primary case that Plaintiffs cite in their brief, *Usher v. White*, 279 Cal. Rptr. 3d 281 (Cal Ct. App. 2021), the plaintiff had *not* alleged that the individual defendant ("Shirley") was their "employer" (as Plaintiffs seem to plead in Paragraph 419 here)—but instead had argued that Section 558.1 of the California Labor Code imposed liability on "owners" such as Shirley having sufficient participation in the employer's activities, such that Shirley could be deemed to have contributed to the violations at issue.  279 Cal. Rptr. 3d at 285-86, 289-91 (c*ited in* D.I. 25 at 15).

23

4748374, at *4 (E.D. Cal. Aug. 17, 2020) (dismissing the plaintiff's PAGA claims where it was "derivative of [his] other Labor Code claims" that each "lack[ed] sufficient detail to survive a 12(b)(6) challenge").

Plaintiffs do not respond at all to this argument. (*See* D.I. 37 at 3) With Plaintiffs having abandoned any argument to the contrary, the Court therefore recommends that Count XI be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the Musk motion to dismiss be GRANTED-IN-PART and DENIED-IN-PART. Specifically, the Court recommends grant of the Musk motion to dismiss as to Musk with prejudice regarding: (1) Counts I and II; (2) Plaintiffs' wage theft claim brought pursuant to Texas law in Count X; and (3) Count XI. The Court also recommends grant of the Musk motion to dismiss as to Musk without prejudice regarding: (1) Count V; (2) Count VI; and (3) Count X (relating to Plaintiffs' wage theft claim brought pursuant to California and New York law). The Court recommends grant of the respective motions to dismiss as to Count XIV (regarding Arnold's age discrimination claim) without prejudice as to Musk and the Twitter Defendants.

In all other respects, the Court recommends that the Musk motion to dismiss be denied. The Court also recommends that the Twitter motion to dismiss be denied as to Pytlarz and Arnold's sex and sexual orientation FEHA claims in Count XIV.

As to those portions of the Court's decision where it recommends dismissal without prejudice, to the extent that Plaintiffs later seek to amend the FAC, the Court also recommends that they be required to do so by filing a motion for leave to amend.

24

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 8, 2025

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE