# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>*Plaintiffs*,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-528-JLH-CJB |

## DEFENDANT X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP. f/k/a X HOLDINGS I, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF JUDGE CHRISTOPHER J. BURKE (D.I. 111)

Dated: January 9, 2025

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*

**TABLE OF CONTENTS**

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 1

III. ARGUMENT ..................................................................................................................... 2

    A. The R&R Appropriately Effectuated the Contracting Parties' Expressly Stated Intent Not to Confer Third Party Beneficiary Status to Plaintiffs. ............. 3

    B. The R&R Applied the Only Reasonable Interpretation of the Merger Agreement. ................................................................................................................ 7

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Fin. Corp. v. Comp. Sci. Corp.*,
   558 F. Supp. 1182 (D. Del. 1983) ................................................................................................3

*Amirsaleh v. Bd of Trade of City of N.Y., Inc.*,
   2008 WL 4182998 (Del. Ch. Sept. 11, 2008) ............................................................................3, 6

*AT&T Corp. v. Lillis*,
   953 A.2d 241 (Del. 2008) ............................................................................................................7

*Crispo v. Musk*,
   2022 WL 6693660 (Del. Ch. Oct. 11, 2022) (*Crispo I*) ......................................................3, 5, 6

*Crispo v. Musk*,
   304 A.3d 567 (Del. Ch. 2023) (*Crispo II*) ..............................................................................5, 8, 9

*Dolan v. Altice USA, Inc.*,
   2019 WL 2711280 (Del. Ch. June 27, 2019) ............................................................................5, 6

*E.I du Pont de Nemours & Co., Inc. v. Shell Oil Co.*,
   498 A.2d 1108 (Del. 1985) ..........................................................................................................7

*Fortis Adv. LLC v. Meds. Co.*,
   2019 WL 7290945 (Del. Ch. Dec. 18, 2019) ..............................................................................4

*Meades v. Wilmington Hous. Auth.*,
   2003 WL 939863 (Del. Ch. Mar. 6, 2003) ..................................................................................4

*Pierce Assocs., Inc. v. Nemours Foundation*,
   865 F.2d 530 (3d Cir. 1988) ........................................................................................................3

*U.S. West Inc. v. Time Warner Inc.*,
   1996 WL 307445 (Del. Ch. June 6, 1996) ...............................................................................7, 8

*Wilmington Housing Authority v. Fidelity & Deposit Co. of Maryland*,
   47 A.2d 524 (Del. 1946) (*WHA*) .................................................................................................5

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 12(b)(2) and (b)(6) ..................................................................10

Williston on Contracts § 30:2 (4th ed. 2024) ..................................................................................7

I.     **NATURE AND STAGE OF PROCEEDINGS**

On December 5, 2024, Magistrate Judge Christopher J. Burke issued a Report and Recommendation ("R&R") recommending dismissal of Counts I (Declaratory Judgment) and II (Breach of Merger Agreement) of Plaintiffs' First Amended Complaint with prejudice. D.I. 110 at 38. On December 18, 2024, Plaintiffs filed an objection to this recommendation. D.I. 111. Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc. (together, "Twitter") oppose Plaintiffs' Objections, and respectfully request that the Court adopt Judge Burke's recommendation to dismiss Counts I and II with prejudice.

II.     **STATEMENT OF FACTS**

On April 25, 2022, Twitter entered into the Merger Agreement with X Holdings I, Inc., X Holdings II, Inc., and, only for certain provisions, Elon R. Musk (the "Merger Agreement"). D.I. 10 at ¶ 37; D.I. 16-1. While § 6.9(a) of the Merger Agreement describes the maintenance of certain employment benefits for a specified period after the transaction date, § 6.9(e)(i) clarifies that Twitter retained an unfettered "right[] to amend, modify, merge or terminate" any employee benefit plan. D.I. 16-1 at 66-67. The Merger Agreement also includes two separate no-third-party beneficiary provisions. Specifically, Section 6.9(e)(ii) states that "[n]othing contained in this Section 6.9, express or implied, shall . . . give any Company Service Provider [defined to include employees] any third-party beneficiary or other rights[.]" *Id.* at 67, *see also id.* at 21 (defining Company Service Provider). In addition, Section 9.7, entitled "No Third-Party Beneficiaries," further confirms that the "Agreement is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder," except for three expressly defined categories of individuals, none of which includes Plaintiffs. *Id.* at 84.

1

### III.   ARGUMENT

Under Twitter's interpretation of the Merger Agreement, it means exactly what it says: Employees may not recover any employment benefits under the Merger Agreement. In contrast, Plaintiffs contend that the plain language of the Agreement should not be given effect and, instead, the Agreement should be read to have implicitly conferred upon employees a right to sue for the very benefits that the Agreement expressly disclaimed in three separate provisions. Crediting Plaintiffs' reading would require the Court to (1) find that § 6.9(a) constitutes an enforceable promise of future severance benefits, despite the clear language in § 6.9(e)(i) that expressly gives the buyer the unfettered right to "amend, modify, merge or terminate" entirely any alleged severance benefit plan; (2) ignore the plain language of § 6.9(e)(ii), which specifically excludes employees as beneficiaries with respect to the very provision that Plaintiffs seek to enforce; (3) afford no weight to § 9.7, which is the epitome of a "customized" and routinely enforced no-third-party beneficiary provision; and (4) depart from the relevant case law upholding the enforceability of no-third-party beneficiary provisions in analogous circumstances. Such an unprecedented result would undermine the parties' unambiguous intent and create unpredictability and disruption for all parties to merger agreements governed by Delaware law going forward. Judge Burke's recommendation to dismiss Counts I and II with prejudice was correct and should be adopted.

Plaintiffs have objected to the R&R on two grounds. First, Plaintiffs argue that the R&R erred by respecting the no-third-party beneficiary provisions found in §§ 6.9(e)(ii) and 9.7 of the Agreement and that, instead, those provisions should effectively be stricken from the Agreement with a red pencil. Second, Plaintiffs argue that the R&R erred by failing to adopt a previously unasserted interpretation of the contract that would make § 6.9(a) enforceable. Plaintiffs' arguments are belied by both precedent and the plain language of the Agreement and should be

rejected. This Court should adopt the Magistrate Judge's reading of the Merger Agreement and dismiss Counts I and II with prejudice.

### A. The R&R Appropriately Effectuated the Contracting Parties' Expressly Stated Intent Not to Confer Third Party Beneficiary Status to Plaintiffs.

As Plaintiffs' own cases recognize, "the key to third-party standing in contract law is the intent to benefit the third party." *Amirsaleh v. Bd of Trade of City of N.Y., Inc.*, 2008 WL 4182998, at *4 (Del. Ch. Sept. 11, 2008). This intent must be held by both parties to the agreement and must constitute a material part of their decision to enter into the contract. *Crispo v. Musk*, 2022 WL 6693660, at *3 (Del. Ch. Oct. 11, 2022) (*Crispo I*); *see also Am. Fin. Corp. v. Comp. Sci. Corp.*, 558 F. Supp. 1182, 1185 (D. Del. 1983). Simply put, unless such an intent is reflected in the language of the contract, the third-party lacks standing to enforce the contract. *Pierce Assocs., Inc. v. Nemours Foundation*, 865 F.2d 530, 535 (3d Cir. 1988).

Here, the contracting parties did not leave any room for guessing as to their intent. Section 9.7 states, in no uncertain terms, that the parties did not intend the Agreement to benefit "any Person other than the parties hereto," subject to the limited, expressly identified exceptions. D.I. 16-1 at 84. Furthermore, as if predicting the exact argument Plaintiffs attempt to advance here, § 6.9(e)(ii) makes clear that employees, specifically, are not intended beneficiaries of § 6.9—the very provision Plaintiffs seek to enforce. *Id.* at 67. As the R&R correctly recognized, "it is hard to think of a scenario where the contracting parties could have made th[eir] intent much clearer." D.I. 110 at 14.

Notwithstanding these clear statements of intent, Plaintiffs argue that § 6.9(a) indicates the contracting parties did, in fact, intend employees to be third-party beneficiaries. Not so.

First, as the R&R correctly found, § 6.9(a) does not confer any benefits on employees whatsoever. Although § 6.9(a) articulates the parties' *intent* to maintain a certain level of severance

3

benefits, § 6.9(e)(i) clarifies that Twitter was not *committing* itself to do so, and in fact remained free to "amend" or even "terminate" any alleged severance plan. D.I. 16-1 at 67. Thus, § 6.9, read in its entirety, makes clear that Twitter was not advancing *any* promise of future performance, let alone one that was intended to benefit Plaintiffs as a material part of the Merger Agreement. *See Meades v. Wilmington Hous. Auth.*, 2003 WL 939863, at *3 (Del. Ch. Mar. 6, 2003) (to assert third-party standing, "a material purpose of the contract must be to convey a benefit"). In this way, § 6.9 reinforces, rather than undermines, the two separate no-third-party beneficiary provisions.

Plaintiffs seek to avoid this obvious conclusion by arguing that § 6.9(e)(i) merely means that "Twitter could *change* its benefits plans, subject to the limitations of Section 6.9(a)." D.I. 111 at n. 11 (emphasis in original). But this is the *exact opposite* of what § 6.9(e)(i) says. That section states, in no uncertain terms, that "[n]othing contained in this Section 6.9 shall . . . *constitute a limitation* on rights to amend, modify, merge, or terminate" employee benefit plans. D.I. 16-1 at 67 (emphasis added). Plaintiffs' argument that § 6.9(e)(i) implicitly incorporates the very limitation that it expressly disavows is as nonsensical as it sounds and should be rejected.

Second, even assuming *arguendo* that § 6.9(a) could be read as conferring promised benefits, the Agreement's two separate no-third-party beneficiary clauses are not the sort of generalized, boilerplate provisions that might give way to a specific grant of benefits. *See Fortis Adv. LLC v. Meds. Co.*, 2019 WL 7290945, at *3-4 (Del. Ch. Dec. 18, 2019) (distinguishing between generalized and "customized" no-third-party beneficiary provisions and noting that "Delaware courts will enforce contractual provisions disclaiming an intent to benefit third parties"). Rather, §§ 6.9(e)(ii) and 9.7 of the Agreement constitute the kind of "customized" no-third-party beneficiary provisions that Delaware courts have found warrant significant deference

4

because they "indicat[e] a strong intent to disclaim third-party beneficiaries[.]" *Crispo v. Musk*, 304 A.3d 567, 575 (Del. Ch. 2023) (*Crispo II*).

Indeed, the Court of Chancery already found that § 9.7 is such a "customized" provision because it provides three explicit carveouts for certain intended beneficiaries. *Crispo I*, 2022 WL 6693660, at *4-5 (noting that the carveouts indicate that "the parties knew how to confer third-party beneficiary status and deliberately chose not to do so with respect to any unlisted groups"). Section 6.9(e)(ii) is even more specific, as it explicitly identifies individuals that the parties *did not intend* to benefit from § 6.9, including employees. These provisions, both independently and collectively, leave no ambiguity as to the contracting parties' intent, and therefore should be enforced according to their terms.

Plaintiffs' cited cases, all of which were considered and rejected by the R&R, do not counsel a different conclusion. Plaintiffs cite to *Dolan v. Altice USA, Inc.*, 2019 WL 2711280 (Del. Ch. June 27, 2019) and *Wilmington Housing Authority v. Fidelity & Deposit Co. of Maryland*, 47 A.2d 524 (Del. 1946) (*WHA*) for the proposition that no-third-party beneficiary clauses should be disregarded where only third parties could enforce the provisions at issue. Those cases, however, say no such thing. The only question presented in *WHA* was whether third-party beneficiaries to a sealed instrument may advance claims in the same manner as third-party beneficiaries to a contract. 47 A.2d at 525, 527. Because the agreement at issue did not contain a no-third-party beneficiary provision, the court had no occasion to consider whether or when such a provision should be disregarded. And, although the contract in *Dolan* included a no-third-party beneficiary clause, the fact that certain provisions could be enforced only by third parties played absolutely no role in the court's standing analysis. The court's brief discussion of that fact came only *after* the court concluded that the plaintiffs were third-party beneficiaries based on the unique facts of that case.

5

2019 WL 2711280, at *8-9. Furthermore, as the R&R correctly observed, *Dolan* rejected the argument that employees were third-party beneficiaries to the merger agreement and dismissed the employees' third-party beneficiary claims, and therefore supports Twitter's position. *Id.* at *8. Accordingly, neither case relied upon by Plaintiffs offers support for the notion that a court should disregard a no-third-party beneficiary clause—let alone multiple such clauses that expressly cover the plaintiffs—because only third parties could enforce a particular provision after merger closing.[1]

Next, Plaintiffs cite to *Amirsaleh* as an example of an instance where the court found that a relatively generalized no-third-party beneficiary provision was overridden by a more specific grant of benefits. 2008 WL 4182998, at *5. *Amirsaleh* is readily distinguishable for at least two reasons. First, the plaintiff in that case sought to enforce a right that was "clearly provided by the Agreement." *Id.* Here, for the reasons explained *supra*, the Agreement does not provide employees any rights to future severance payments, let alone clearly. Second, unlike the blanket, contract-wide no-third-party beneficiary provision at issue in *Amirsaleh*, the Merger Agreement here includes § 6.9(e)(ii), which applies exclusively to the provision that Plaintiffs seek to enforce *and* specifically precludes employees from enforcing the provision. Thus, the "general/specific" canon that controlled in *Amirsaleh* provides no support for Plaintiffs' attempt to ignore the hyper-specific provisions of § 6.9(e)(ii).[2] *See id.* at *5 & n.25. The R&R correctly interpreted the Merger

---

[1] As a matter of public policy, adopting such a rule would be ill-advised, especially in the context of merger agreements. Merger agreements will commonly contain terms that can be enforced only by third parties, given that the agreement results in the two contracting parties becoming one and the same entity. If contracting parties could not rely on no-third-party beneficiary provisions to control who could file suit to enforce the contractual terms, it would wreak havoc on the merger process, create unnecessary uncertainty among contracting parties, and inappropriately restrict contractual freedom.

[2] Plaintiffs also cite to non-binding dictum in *Crispo I. See* 2022 WL 6693660, at *7. This dictum was not supported by any citation but appeared to be based on a misreading of *Amirsaleh*. *Id.* An independent reading of *Amirsaleh*, however, makes clear that the fact that the agreement could

Agreement so as to effectuate the contracting parties' thrice-stated intent. Plaintiffs' arguments urging the Court to ignore this clearly stated intent have no merit and should be rejected.

### B. The R&R Applied the Only Reasonable Interpretation of the Merger Agreement.

Plaintiffs next argue that the R&R violated the rule against surplusage by failing to adopt a reading of the contract that would render § 6.9(a) enforceable. Plaintiffs assert—for the first time in their Objections—that the Agreement's no-third-party beneficiary provisions should be read as precluding only pre-merger claims for specific performance. This newly proffered interpretation of the contract is misguided and should be rejected for several reasons.

As Plaintiffs' own cases confirm, the surplusage canon affords a preference to an interpretation that gives effect to all provisions in a contract, but only where such an interpretation is "*possible.*" *E.I du Pont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1114 (Del. 1985) (emphasis added); *see also U.S. West Inc. v. Time Warner Inc.*, 1996 WL 307445, at *15 (Del. Ch. June 6, 1996) ("While redundancy is sought to be avoided in interpreting contracts, this principle of construction does not go so far as to counsel the creation of contract meaning for which there is little or no support in order to avoid redundancy."). After all, a court's ultimate purpose in construing a contract is to "effectuate the parties' intent" as it is expressed in the contract. *AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008). Canons of construction are meant to aid in achieving this purpose, not to subvert it. *See* Williston on Contracts § 30:2 (4th ed. 2024) ("The rules for the construction of contracts are all subordinate to the cardinal principle that the intention of the parties, to be gathered from the whole instrument, must prevail[.]"). Accordingly, as Plaintiffs

---

only be enforced by third parties played no role in the court's standing analysis. 2008 WL 4182998, at *5.

7

candidly recognize, the surplusage canon cannot override the only reading of a contract that achieves the parties' intent. D.I. 111 at 10.

Here, Plaintiffs' interpretation—*i.e.*, that the no-third-party beneficiary provisions preclude only pre-merger claims for specific performance—is patently unreasonable. Such a limitation is found nowhere in the text of either § 9.7 or § 6.9(e)(ii), which are broadly phrased to disclaim *any* third-party beneficiary rights whatsoever. D.I. 16-1 at 67 ("Nothing contained in this Section 6.9" gives employees "*any* third-party beneficiary or other rights") (emphasis added); *id.* at 84 ("this Agreement is not intended to and shall not confer upon any Person other than the parties hereto *any* rights or remedies hereunder") (emphasis added). To refuse to apply those provisions post-merger closing is not to enforce the Agreement but to rewrite it.

Moreover, Plaintiffs' argument presumes that § 6.9(a) contained a promise to employees unqualified by § 6.9(e)(i) which, for the reasons explained *supra*, it does not. Indeed, the Magistrate Judge rejected that very premise. D.I. 110 at 14 & n.10. There is no reason to contort the plain language of the contract to render enforceable a promise that § 6.9(a) never made in the first instance.

Plaintiffs make no attempt to reconcile their tortured reading with the text of the Agreement, but rather rest their argument on a misunderstanding of *Crispo II*. In that case, the Court of Chancery considered whether a stockholder had third-party beneficiary standing under a separate provision of this Merger Agreement. *Crispo II*, 304 A.3d at 570. The relevant provision, § 8.2, states that the contracting parties could be held liable for "the benefits of the transactions contemplated by this Agreement lost by the Company's stockholders . . . including lost stockholder premium" in the event that "th[e] Agreement is terminated and the Merger abandoned." *Id.* at 572, 585; *accord* D.I. 16-1 at 77-78.

8

The court found that there were "two objectively reasonable interpretations" of § 8.2. *Crispo II*, 304 A.3d at 585-86. The first "reasonable interpretation" was that § 8.2 was simply "unenforceable" because, pursuant to § 9.7, "the Merger Agreement does not confer third-party beneficiary status on stockholders"—the only individuals capable of enforcing § 8.2. *Id.* at 584. The second possible interpretation was that the specific grant of benefits in § 8.2 overrode the terms of § 9.7, such that stockholders could be considered third-party beneficiaries under certain circumstances. *Id.* at 585. Under this reading, the extent of third-party beneficiary rights would be limited by the terms of § 8.2 itself which, the court explained, only permit damages in the event that the company was unable to obtain specific performance. *Id.* The court ultimately declined to reach which was the better reading of the Agreement because the plaintiff failed to state a claim under either interpretation. *Id.* at 586.

Plaintiffs misleadingly argue that *Crispo II* held the Merger Agreement's no-third-party beneficiary clauses are limited to pre-merger claims for specific performance. Not so. *Crispo II*'s suggestion that the plaintiff's third-party beneficiary rights (if any) would be limited to damages in the event the merger was terminated was based on its reading of § 8.2—a provision that has absolutely no relevance or application to the present case. The court neither found nor implied that § 9.7 could be read as containing such a limitation (which it plainly cannot). And the court in *Crispo II* did not even discuss § 6.9(e)(ii), which was never at issue in the case. Thus, *Crispo II* offers no support for Plaintiffs' proposed "alternative" reading of the Merger Agreement.[3]

---

[3] *Crispo II*'s conclusion that § 8.2 could conceivably confer third-party beneficiary standing despite the terms of § 9.7 is similarly not relevant here. That finding was based on the plain language of § 8.2, which specifically envisioned damages liability under certain circumstances and is clearly different than § 6.9, which expressly provides that (1) Twitter has no obligation to maintain any level of severance payments and (2) employees have no rights to continued severance payments. Moreover, unlike the provision at issue in *Crispo II*, § 6.9 contains its own bespoke no-third-party beneficiary provision, separate and apart from § 9.7. Thus, the court's conclusion that

Perhaps most surprising with respect to Plaintiffs' Objections is their failure to acknowledge that *Crispo II* endorsed the *exact interpretation of the Agreement* that Plaintiffs argue this Court should reject: namely, that the contracting "parties took the risk that [certain provisions of the Agreement] would be unenforceable." *Id.* at 584. *Crispo II*'s endorsement of this reading reinforces that the Court need not (and should not) contort the terms of the Agreement in an effort to render § 6.9(a) enforceable by employees and lends further support to Twitter's interpretation.

At bottom, Plaintiffs' convoluted and misguided arguments seek to complicate what is a straight-forward exercise: discern and apply the contracting parties' intent based upon the plain language of the Agreement. Here, the contracting parties unambiguously stated their intent that employees not be permitted to sue to enforce the Merger Agreement in both §§ 6.9 and 9.7, and Plaintiffs have not provided any grounds for the Court to disregard that clearly-stated intent. The Court should reject Plaintiffs' attempt to subvert the clear language of the Agreement and adopt the R&R's recommendation to dismiss Counts I and II with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Twitter respectfully requests that this Court dismiss Counts I and II with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(6).

Dated: January 9, 2025

**MORGAN, LEWIS & BOCKIUS LLP**

 */s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*

---

§ 8.2 could potentially override § 9.7 does not support an argument that § 6.9(a) can override both § 9.7 *and* § 6.9(e).