IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,<br><br>Defendants. | Case No. 1:23-cv-528-JLH-CJB |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF JUDGE CHRISTOPHER J. BURKE**

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com

*Counsel for Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer*

Dated: January 9, 2025

# TABLE OF CONTENTS

A. The Third and Fourth Counts of Plaintiffs' Complaint ................................................... 2

B. The R&R Correctly Found that Plaintiffs Alleged the Existence of a Valid Contract. 2

C. The R&R Correctly Concluded the Promissory Estoppel Claim was Well-Pled .......... 5

D. The Unchallenged Finding that Hawkins and Killian Sufficiently Alleged Constructive Discharge Disposes of Defendants' Objection Regarding Their Claims 7

E. Conclusion ..................................................................................................................... 8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Cerberus Int'l, Ltd. v. Apollo Mngmt., L.P.*,
    1999 Del. Ch. LEXIS 207 (Del. Ch. Nov. 2, 1999) ..........................................................4, 6

*Hoag Mem'l Hosp. v. Managed Care Adm'rs*,
    820 F. Supp. 1232 (C.D. Cal. 1993) ................................................................................4, 7

*In re Nat'l Collegiate Student Loan Trusts*
    *2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433 (3d Cir. 2020) ................... 6

*In re Out of Network Substance Use Disorder Claims against UnitedHealthcare*,
    2020 WL 5913855 (C.D. Cal. July 29, 2020) ..................................................................4, 7

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ................................................................................................ 5

*R.W.L. Enters. v. Oldcastle, Inc.*,
    226 Cal. Rptr. 3d 677 (Cal. Ct. App. 2017) ........................................................................ 5

*Sonitrol Holding Co. v. Marceau Investissements*,
    607 A.2d 1177 (Del. 1992) .................................................................................................. 4

*Tribble & Stephens Co. v. RGM Constructors, L.P.*,
    154 S.W.3d 639 (Tex. Ct. App. 2004) ................................................................................ 5

Plaintiffs respectfully submit this Response to Defendants' Objection to the Report and Recommendations ("R&R") of Judge Christopher Burke. D.I. 113. Defendants' objections provide no basis for deviating from Judge Burke's recommendation that the Third and Fourth counts of the Amended Complaint were well-pled, and those portions of the R&R should be adopted.

Plaintiffs allege – and Twitter does not dispute – that after executing the Merger Agreement Twitter engaged in a series of communications intended to induce its employees to stay through the close of the merger. D.I. 10, ¶¶39-43, 83-100. Twitter told its employees that the Merger Agreement included "special protections" for their compensation and benefits, including that their severance could not be reduced from Twitter's existing severance policy for a year after the close of the merger. D.I. 26-1 at 278. And it conveyed to employees the specifics of its existing severance policy via a separate email – that at a minimum they would be entitled to months of salary and RSU compensation as severance, along with pro-rated bonuses (calculated as though Twitter had reached all necessary targets) and a contribution to their ongoing health insurance costs. D.I. 10, ¶¶ 94-96. Relying on those promises, Plaintiffs – and thousands of their colleagues – remained at Twitter. *Id.,* ¶¶ 103-107.

Plaintiffs also allege – and Twitter freely admits – that after the close of the merger Twitter reneged on all of those promises. It terminated thousands of employees, and offered them far less in severance than they were eligible for under the prior policy. *Id.*, ¶¶ 131-135, 143, 157-159. Now, facing claims by impacted employees, Twitter argues – and asks the Court to find – that its promises were never enforceable, the employees had no right to rely on its representations to them, and Twitter was free to pull its bait-and-switch, inducing the employees to stay through the merger and then refusing to deliver on the promised severance. Judge Burke correctly rejected those arguments, and the Court should adopt his recommendations as to those claims.

1

A.  **The Third and Fourth Counts of Plaintiffs' Complaint**

Count Three of Plaintiffs' Amended Complaint alleges that Twitter's several representations to them about the severance to which they would be entitled after the close of the merger, and that their severance could not be reduced for a year after its close, constituted an offer to employees that Plaintiffs accepted by continuing to work at Twitter through the close of the merger. D.I. 10, ¶¶ 325-329. Twitter then breached that contract. *Id.*, ¶ 330.

Count Four of Plaintiffs' Amended Complaint alleges in the alternative that, if after trial Twitter's representations are not found to constitute an offer that created an enforceable contract when Plaintiffs accepted, those representations are nonetheless enforceable under the doctrine of promissory estoppel. *Id.*, ¶¶ 332-339.

B.  **The R&R Correctly Found that Plaintiffs Alleged the Existence of a Valid Contract**

Attempting to isolate its statements to employees into individual, siloed communications devoid of context, Defendants argue that Twitter's communications were not "sufficiently definite" to allow a court to determine the existence of a breach because the *email* Twitter sent its employees (detailing its then-current severance program) did not explicitly reference Twitter's promise in the Acquisition FAQ that its employees' severance was protected and could not be reduced, while that promise in the Acquisition FAQ did not include details of its then-current severance program. D.I. 113 at 4-5 ("In interpreting this general description of *current* policy as a contractual promise for future severance benefits, the R&R appears to have incorporated the so-called 'Severance Stability Promise' contained within § 6.9 of the Merger Agreement into the Severance Policy Email. As an initial matter, however, the email does not even reference the Merger Agreement, much less incorporate its terms")(emphasis in original).  As Judge Burke correctly recognized, Twitter's promise to employees was "direct and specific" – both in the Acquisition FAQ when they represented to employees "that the [M]erger [A]greement provides that X Holdings Corp. would

2

furnish Continuing Employees with severance payments 'that are no less favorable than those applicable to an applicable employee prior to the closing of the transaction'" and when Twitter communicated the specifics of the severance policy in the email. D.I. 110 at 26. California law – cited by Judge Burke – makes clear that Plaintiffs' allegations were sufficient to state a cause of action for breach of contract. *Id.*, *citing Moncada v. W. Coast Quartz Corp.*, 164 Cal. Rptr. 3d 601, 610 (Cal. Ct. App. 2013).

Oddly, Defendants object to this conclusion on the basis that Twitter's email with its then-current severance policy did not "incorporate[] the so-called 'Severance Stability Promise' contained within §6.9 of the Merger Agreement." D.I. 113 at 3-4. No incorporation by reference was needed; Twitter represented to its employees that the Merger Agreement protected their existing severance by ensuring it could not be reduced after the merger closed, and then, when pressed by employees for details on the then-existing severance, provided those details in the referenced email. D.I. 10, ¶¶ 91-94. And (while not necessary to create a binding offer) it included *both* the representation that employee severance could not be reduced from its then-current levels after the merger *and* the general description of the then-current policy within the Acquisition FAQ. *See* D.I. 26-1 at 207 (10/24/2022 update to the FAQ 'reposting' the information about severance included in the email), 228 (informing employees that the Merger Agreement "provides special protection for Tweep compensation and benefits for one year following the closing … Specifically … the purchasing entity will … Provide continuing Tweeps whose employment are terminated during such period with severance payments and benefits that are no less favorable than those applicable to an applicable employee prior to the closing of the transaction"). As Judge Burke found, this was not a mere incorporation by reference of Section 6.9 of the Merger Agreement – it was a separate, and separately enforceable, promise from Twitter to its employees that their severance could not be reduced after the merger closed if they remained employed through the merger. D.I. 210 at 25. That

3

was straightforwardly correct under applicable law; it is well-settled that making representations to a third party (here, employees) about the contents of a contract can create a binding obligation to that third party separate from the obligations of the contract about which the representation is made. *See, e.g.*, *In re Out of Network Substance Use Disorder Claims against UnitedHealthcare*, 2020 WL 5913855, at *5 (C.D. Cal. July 29, 2020) (oral contract and promissory estoppel claims based on insurer communicating to provider that services would be covered under health insurance plans not preempted by ERISA because those communications created an "independent obligation to pay for the services Plaintiffs rendered, and arise from promises Defendants allegedly made"); *Hoag Mem'l Hosp. v. Managed Care Adm'rs*, 820 F. Supp. 1232, 1236 (C.D. Cal. 1993) ("In effect, when insurance companies and plan administrators verify coverage to third-party health care providers, they are creating an independent obligation of the plan to pay for the services rendered in reliance thereon").

For the same reason, Defendants' argument that any "incorporation by reference" would need to include the provisions of Section 6.9(e) of the Merger Agreement that Twitter claims allowed it to reduce employee severance, D.I. 213 at 5-6, is not simply wrong but entirely out of place. It is wrong because, as discussed in detail in Plaintiffs' objections to the R&R, Section 6.9(e) must be read as compatible with, not a repudiation of, Sections 6.9(a)-(d), *see Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1184 (Del. 1992) (discussing "cardinal rule" that all provisions must be given effect where they can be harmonized), and therefore any provision reserving to Twitter the right to modify or amend various employee benefits must be understood as allowing only changes that did not *reduce* those benefits below the benchmarks set in those sections.[1] *Cerberus Int'l, Ltd. v. Apollo Mngmt., L.P.*, 1999 Del. Ch. LEXIS 207, at *12 (Del. Ch. Nov. 2, 1999) ("A contract must be construed, where possible, so that all of its provisions may be read together and

---

[1] As Defendants themselves disclosed in their opposition to the *Cornet* plaintiffs' motion for leave to submit an amicus brief, arbitrators have found that those provisions can be read in ways that do not require invalidating Sections 6.9(a)-(d). See D.I. 119 at 8 (describing the basis for that decision and indicating the cases relied upon by the arbitrator).

4

harmonized"). But more fundamentally, it is a non sequitur because the R&R does not rely on "incorporation of Section 6.9" at all. Rather, Twitter's *separate promise* to its employees that it would not have discretion to reduce their severance after the merger closed did not include any of the wiggle room Defendants now insist Section 6.9(e) provided and, Twitter, having chosen not to include such wiggle room in its communications to employees, cannot now ask the Court to read it into its actual promises. *See R.W.L. Enters. v. Oldcastle, Inc.*, 226 Cal. Rptr. 3d 677, 683 (Cal. Ct. App. 2017); *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 663 (Tex. Ct. App. 2004); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996). Twitter is bound by the agreements it made with its employees, and Plaintiffs have sufficiently pled that Twitter made an offer to them, in the form of the representations in the Acquisition FAQ and other relevant communications, which Plaintiffs accepted by continuing to work at Twitter through the close of the merger. Count Three is well-pled, and should not be dismissed.

    **C.**    **The R&R Correctly Concluded the Promissory Estoppel Claim was Well-Pled**

Defendants' objections to the R&R's recommendation that the Court not dismiss Count Four is equally misplaced. Defendants press only one argument in their Objection to this recommendation: that Twitter's promise to the employees was not "clear and unambiguous" because it was "coextensive with the terms of the Merger Agreement that the FAQ purports to summarize." D.I. 113 at 7. The "purports," of course, gives the game away: Twitter's *defense* to Plaintiffs' promissory estoppel claim is its assertion that it *mis*described the Merger Agreement to the employees, telling them *inaccurately* (according to Defendants) that the Merger Agreement contained special protections for their severance when (again, according to Twitter) it did not actually contain such protections.

5

That, of course, is no basis to dismiss a promissory estoppel claim.[2] In the briefing before Judge Burke, Defendants argued the purported inaccuracy meant employees were not entitled to rely on their employer's promise regarding their entitlement to severance after the merger, and should instead have independently reviewed the Merger Agreement and determined that Twitter's representations about it were inaccurate. *See* D.I. 110 at 28 (recapping Twitter's argument). Here, too, Judge Burke's rejection of the argument is correct, as that claim is fundamentally not capable of resolution on a motion to dismiss. *Id.* at 29, *citing Healthcare Ally Mgmt. of Cal., LLC v. Space Expl. Techs. Corp.*, 2023 WL 4206106, at *9 (C.D. Cal. May 25, 2023). Twitter notably presents no argument to the contrary in its Objections, instead recasting its position to argue that the fact that the FAQ was informing employees about the Merger Agreement's provisions and their impact on Twitter's future inability to decrease their severance makes it somehow not a promise at all. But that is a different position from that taken before Judge Burke. *Cf.* D.I. 15 at 13-15 (arguing Plaintiffs' promissory estoppel claim "fails" for two reasons: (1) because Plaintiffs did not "plausibly allege *reasonable* reliance on alleged promises that contradict provisions in the Agreement that prevent any third-party beneficiary enforcement rights and grant Twitter discretion to modify or terminate any severance policy" and (2) because "the Complaint's conclusory allegations regarding detrimental reliance and damages are insufficient") (emphasis in original). It therefore is not cognizable here. *See In re Nat'l Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, 2005-3*, 971 F.3d 433, 444 (3d Cir. 2020).

And, in any event, it is wrong. Twitter's representations to employees about the company's

---

[2] To the contrary: because Twitter claimed in its motion to dismiss that it *never intended* Sections 6.9(a)-(d) to be enforceable in the first instance, its claim that it 'misdescribed' those sections to employees as enforceable supports Plaintiffs' fraud claim, which Judge Burke recommended the Court dismiss with leave to replead. Twitter's fraudulent intent is clear, as it cannot have both specifically intended that Sections 6.9(a)-(d) be unenforceable *and, simultaneously*, not made a knowingly false statement when it described those same sections to employees as enforceable promises they should rely on.

post-merger inability to reduce their severance were clear and unambiguous: the company would not be able to reduce that severance for a year after the close of the merger. This is sufficient to support a promissory estoppel claim – as Judge Burke presumably would also have found had Defendants raised this argument before him. *Cf.* D.I. 110 at 26 (citing *Moncada v. W. Coast Quartz Corp.*, 164 Cal. Rptr. 3d 601, 610 (Cal. Ct. App. 2013)) in finding that Twitter's statements to employees were clear and unambiguous enough to support a breach of contract claim). Indeed, the insurance coverage cases cited above directly refute Defendants' position here, holding that an entity's representations to a third party about the contents of its contract with someone else (there, the insurer's representation about its coverage of the insured, here Twitter's representations about its Merger Agreement with Musk's entity) can and do create separate obligations to the party receiving the representation, both as an oral contract and for purposes of promissory estoppel. *See In re Out of Network Substance Use Disorder Claims against UnitedHealthcare*, 2020 WL 5913855, at \*5 (contract and estoppel claims); *Hoag*, 820 F. Supp. at 1236 (estopppel). The Court should adopt Judge Burke's recommendation that Count Four be sustained.

**D.     The Unchallenged Finding that Hawkins and Killian Sufficiently Alleged Constructive Discharge Disposes of Defendants' Objection Regarding Their Claims**

Finally, Defendants' objection to Judge Burke's recommendation that the Court sustain Hawkins' and Killian's claims is meritless. Judge Burke concluded that Hawkins and Killian sufficiently alleged they were constructively discharged, D.I. 110 at 21-22, and Defendants *do not object to this finding,* objecting only that constructive discharge is not "position elimination." D.I. 113 at 8-10. But whether constructive discharge is "position elimination" is irrelevant to Plaintiffs' promissory estoppel claim. Twitter promised employees they would receive severance no less favorable than that "applicable to" them pre-closing if their "employment [was] **terminated** during [the one-year post-closing] period." D.I. 26-2 at 228 (emphasis added). This promise was not limited to "position elimination." Defendants, relying on the *different* language used in the Severance Policy

7

Email (and then incorporated into an update to the Acquisition FAQ) to describe Twitter's then-current severance, now appear to argue Killian and Hawkins would not have been eligible for any severance at all upon constructive discharge pre-merger, because the severance plan purportedly applied only upon "position elimination." D.I. 113 at 8. Not only is such a fact-specific argument inappropriate for resolution on a motion to dismiss, evidence will eventually show it is wrong as a factual matter: Twitter's pre-merger severance plan *did not* apply only upon position elimination.[3] That the Severance Policy Email focused on layoffs – because, as Plaintiffs allege, that was employees' primary concern, D.I. 10, ¶¶ 63-66 – provides no basis to limit the promise Twitter made to Hawkins and Killian that if their employment was terminated within a year after the merger their severance would be at least as favorable as the severance they were eligible for pre-merger. The Court should therefore adopt Judge Burke's recommendation to deny the motion to dismiss Hawkins and Killian's claims.

E.  **Conclusion**

Judge Burke's recommendations with respect to Counts Three and Four of the Amended Complaint were sound, and Defendants provide no reason to depart from them. The Court should adopt those recommendations in full.

---

[3] Though not in the record in this action, because the litigation has not reached the stage of submitting evidence, the "Severance Matrix" filed in *McMillian v. v. Musk*, No. 3:23-cv-03461 (N.D. Cal.), which documented Twitter's pre-existing severance policy, included severance provisions for performance-based termination, mutually agreed resignation, and other forms of termination of employment for reasons other than position elimination.

8

| | |
|---|---|
| **OF COUNSEL** | /s/ *Joseph L. Christensen* |
| | Joseph L. Christensen (#5146) |
| Akiva Cohen (*pro hac vice*) | CHRISTENSEN LAW LLC |
| Dylan M. Schmeyer (*pro hac vice*) | 1201 N. Market Street, Suite 1404 |
| Michael D. Dunford (*pro hac vice*) | Wilmington, Delaware 19801 |
| Lane A. Haygood (*pro hac vice*) | Tel: (302) 212-4330 |
| KAMERMAN, UNCYK, SONIKER & KLEIN P.C. | joe@christensenlawde.com |
| 1700 Broadway, 16th Floor | |
| New York, NY 10019 | |
| Tel: (212) 400-4930 | *Counsel for Wolfram Arnold, Erik Froese,* |
| acohen@kusklaw.com | *Tracy Hawkins, Joseph Killian, Laura Chan* |
| dschmeyer@kusklaw.com | *Pytlarz, and Andrew Schlaikjer* |
| mdunford@kusklaw.com | |

Dated: January 9, 2025

9