IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,<br><br>Defendants. | Case No. 1:23-cv-528-JLH |

## PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF JUDGE CHRISTOPHER J. BURKE

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com

*Counsel for Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer*

Dated: January 30, 2025

Plaintiffs respectfully submit this Objection to the Report and Recommendations of Judge Christopher Burke with respect to Defendant Elon Musk's motion to dismiss. D.I. 121 (the "Musk R&R"). Judge Burke erred in recommending the dismissal of the breach of contract and fraud claims against Musk for the same reasons he erred in dismissing those claims against Twitter, and those recommendations should not be adopted. Judge Burke also erred in concluding that Plaintiffs had not argued veil piercing with respect to the fraud claims against Musk, and because he correctly declined to dismiss Plaintiffs' claims to the extent they were based on veil-piercing, the fraud claim should be upheld for that reason as well.[1] And Judge Burke similarly erred in recommending dismissal of the wage theft and PAGA claims against Musk – and the PAGA claim with prejudice – because those claims remain in the action against Twitter and Judge Burke correctly ruled that the complaint sufficiently alleged Musk's veil piercing liability. The Court therefore should not adopt those aspects of the Musk R&R.

**A.    Judge Burke Erred in Dismissing the First and Second Counts of the Complaint as Against Musk**

As Plaintiffs set out in their Objections to Judge Burke's Report and Recommendation with respect to Twitter's motion to dismiss (the "Twitter R&R"), Judge Burke's conclusion that the Merger Agreement unambiguously precluded Plaintiffs from asserting standing as third-party beneficiaries was reached in error.[2] Plaintiffs will not repeat their arguments on that issue here, and respectfully

---

[1] Judge Burke recommended dismissing the fraud claims against Twitter and Musk; Plaintiffs' fraud claim against X Holdings I, Inc. (n/k/a X Holdings Corp.) remains.

[2] At oral argument on the similar motion to dismiss in *Cornet v. Twitter, Inc.*, 1:23-cv-00441, the Court asked whether there was any practical benefit to maintaining the breach of Merger Agreement claim if the Court agrees with Judge Burke that the other breach of contract type claims are well-pled. The answer is, unequivocally, yes.

Twitter's defense on the other breach of contract claims is that no contract was ever formed, and Plaintiffs will be required to litigate that issue. And with respect to promissory estoppel, Plaintiffs will need to prove reliance. On the breach of Merger Agreement claim, in contrast, there is essentially nothing in dispute *other* than whether Plaintiffs can enforce as third-party beneficiaries. Defendants do not and cannot dispute the existence of the contract itself, and there is no question that Plaintiffs were offered severance "less favorable than" that applicable to them under Twitter's prior plans, in violation of Section 6.9(a)'s requirements. While Plaintiffs are confident that they will be able to prove each of the asserted counts, it is thus conceivable that Plaintiffs could win on the breach of Merger Agreement claim while

1

incorporate them by reference. *See* D.I. 111 at 3-10. It is, however, worth addressing Defendants' responses to those arguments.

First, Plaintiffs demonstrated that Defendants' proposed reading of the contract, which Judge Burke adopted, read out of the contract 553 words devoted to detailing the highly specific scheme for how Twitter would treat various employee benefits post-merger, violating both the whole-text canon and the surplusage canon. *Id.* at 3-10. Twitter's response is to agree: Yes, adopting its proposed reading of the contract renders those provisions inoperative, and that's fine. *See* D.I. 122 at 3-4 (explaining that on Defendants' – and Judge Burke's – reading of the Merger Agreement, Sections 6.9(a)-(d) merely "articulate[d] the parties' *intent* to maintain a certain level of [] benefits" but without "*committing itself to do so*") (emphasis in original).[3]

There are three problems with that. The first is that it simply cannot be squared with the text of Sections 6.9(a)-(d), which *never* uses the word "intent" and instead uses the mandatory "shall" repeatedly. *See Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 86 (3d Cir. 2006) (construing "mandatory 'shall'" in a lease); *Zurich Am. Ins. Co. v. St. Paul Surplus Lines, Inc.*, 2009 WL 4895120, at *7 n.55 (Del. Ch. Dec. 10, 2009), *as revised* (Apr. 14, 2010) ("In both contracts and statutes, the term 'shall' is used to make an act mandatory"). Indeed, the provision is located in Article VI of the Merger Agreement, titled "Covenants and Agreements" (not "Predictions and Plans"). D.I. 26-2 at 46. That issue, standing alone, precludes granting the motion to dismiss. *See Dolan v. Altice USA, Inc.,* No. CV 2018-0651-JRS, 2019 WL 2711280, at *9 (Del. Ch. June 27, 2019) (use of mandatory "will" precludes construing provision as unambiguously a mere statement of intent).

Second, there is no reason to construe 6.9(a)-(d) as contradicted by 6.9(e) or 9.7 when there is

---

losing on their other breach of contract and promissory estoppel claims, and the breach of Merger Agreement claim therefore cannot be dismissed as duplicative or academic.

[3] Similarly, at oral argument in *Cornet*, Defendants' counsel conceded that Defendants could not identify *any* purpose for Section 6.9(a) if it was not enforceable by the employees as third-party beneficiaries.

an available and reasonable construction that renders them consistent: that 6.9(e)'s reservation of a right to change or modify the benefits packages meant "so long as such changes were consistent with 6.9(a)-(d)," while the no third-party beneficiary provisions meant – as Chancellor McCormick's decision in *Crispo* suggests – only that no third party could claim standing to force the parties to close on the merger, and therefore that any rights granted to the employees in the Merger Agreement would vest only after the close of the merger. Defendants' argument that Plaintiffs seek to "red pencil" Section 6.9(e) out of the contract is simply wrong. On Plaintiffs' reading of the contract, Section 6.9(e) would have clear and important meaning: preventing employees from arguing that they had standing to require the merger to close if the parties mutually agreed to call off the deal, and precluding, in belts-and-suspenders fashion,[4] any argument that Sections 6.9(a)-(d) barred *any* change to employee benefits after the Merger Agreement was executed. Defendants, in contrast, seek to 'red pencil' 6.9(a)-(d) out of the Merger Agreement in their entirety.[5]

Third, and most fundamentally, the argument that Sections 6.9(e) and 6.9(a)-(d) are contradictory unless 6.9(a)-(d) are read as merely precatory is problematic for Defendants because, as the *Dolan* Court specifically held, that would render the contract ambiguous as a matter of law. *Dolan*, 2019 WL 2711280, at *8 ("Canons of contract construction, alone, cannot render unambiguous two specific and yet conflicting contractual provisions"). If those sections are contradictory such that only

---

[4] Cases warning that Courts should not distort contracts to avoid redundancy because draftsmen sometimes include redundancy as a "belts and suspenders" way of accomplishing an intended result, which Defendants cite, D.I. 122 at 7, do no work for Defendants here. Defendants do not ask the Court to construe Sections 6.9(a)-(d) as "redundant," repeating an obligation already stated elsewhere in the contract. They ask the Court to construe Sections 6.9(a)-(d) as *nugatory*. Unsurprisingly, no case similarly warns Courts to avoid giving meaning to each section of a written contract; doing so is the Court's cardinal obligation. Those cases do, however, counsel against insisting that 6.9(e)'s express reservation of a right to change the benefits package must be read as contradicting Sections 6.9(a)-(d), rather than as reiterating that Twitter was not binding itself to preserve its benefit package in amber and that it would be allowed to make changes consistent with those sections.

[5] Defendants notably had no response, in their submission, to the whole-text canon and its command that the Court avoid construing Sections 6.9(e) and 9.7 in a manner that contradicts the overall scheme or plan of the Merger Agreement as a whole. *Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 256, 259 (D. Del. 2015) ("the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan") (quotation omitted).

one or the other could be enforced, but not both, the Court would simply have no authority to resolve that contradiction on a motion to dismiss. *Id.* ("That simply cannot be done here by looking only within the four corners of the Merger Agreement. Extrinsic evidence will be needed").

Thus, whether the Court adopts Plaintiffs' construction of the Merger Agreement or Defendants', the motion to dismiss must be denied. On Plaintiffs' reading of the Merger Agreement, it unambiguously confers a benefit on the employees and they have standing to enforce it. On Defendants' reading, the Merger Agreement is contradictory and therefore ambiguous, and Plaintiffs' standing cannot be resolved on Defendants' motion to dismiss. On either reading, the motion should be denied, both as to Musk and as to the other Defendants.

### B.  Judge Burke Wrongly Disregarded Equitable Estoppel

Relatedly, Defendants' filings on the original R&R (and their arguments in *Cornet*) make clear that Judge Burke erred in his treatment of Plaintiffs' equitable estoppel argument. In those filings (and that argument), Defendants have doubled down on the notion that in the Acquisition FAQ Twitter **inaccurately** described to the employees the Merger Agreement's impact on their benefits. *See* D.I. 113 at 2 (FAQ only "purported to" summarize the Merger Agreement's relevant provisions); 7 (same). Assuming the truth of Defendants' position that Twitter always intended Sections 6.9(a)-(d) to be unenforceable, that "inaccuracy" could only have been deliberate; Twitter could not have both never intended for the Merger Agreement to offer any protection for employee benefits and simultaneously have innocently and inadvertently described it as offering such protections. That is *precisely* the situation in which equitable estoppel should apply to bar Defendants from denying that Sections 6.9(a)-(d) are enforceable.

Judge Burke disagreed, citing *Hallisey v. Artic Intermediate, LLC*, 2020 WL 6438990, at *4 (Del. Ch. Oct. 29, 2020) for the proposition that "[]n a dispute about enforcement of a bargained-for contract right, equitable estoppel is not the proper remedy." D.I. 110 at 18. But that rule has no

4

application here, because this is **not** a dispute about a "bargained-for contract right"; Twitter's employees had no role in negotiating or drafting the Merger Agreement. As the Delaware Supreme Court explained in *Genencor International, Inc. v. Novo Nordisk A/S*, 766 A.2d 8 (Del. 2000) – the case *Hallisey* cited for that proposition – "[e]quitable estoppel may be defined as 'a judicial remedy by which a party may be precluded by its own act or omission from asserting a right to which it otherwise would have been entitled.'" 766 A.2d at 12 (emphasis altered). For that reason, it is inapplicable in any action in which the parties to a contract seek to determine the scope of a bargained-for promise supported by consideration. *Id.* As parties to the contract, they are held to the terms of their agreement.

But Plaintiffs are *not* parties to the contract, which is the entire basis for Defendants' motions to dismiss. There is, accordingly, no reason that Defendants cannot be equitably estopped from asserting the no-third-party beneficiary clause against employees who Defendants now claim Twitter deliberately lied to about whether the Merger Agreement protected their severance and benefits.

### C. The Court Should Not Dismiss the Fraud Claims

The Court likewise should not dismiss the fraud claims against Musk, for two reasons. First, because the fraud claims against X Holdings Corp. remain in the case, and as Judge Burke found, Musk failed to meaningfully argue that Plaintiffs insufficiently pled veil-piercing liability. D.I. 121 at 5. Judge Burke did not consider veil-piercing liability on fraud, likely because Plaintiffs' argument was focused on Musk's direct liability, but that was error: as Judge Burke acknowledged elsewhere in the Musk R&R, Plaintiffs specifically argued that they had sufficiently pled Musk's veil-piercing liability for any claim as to which they did not have a viable direct claim. *See* D.I. 121 at 14-15 ("Plaintiffs do argue generally that 'as to any cause of action for which Plaintiffs do not have a direct claim against Musk, Plaintiffs have sufficiently pled that he can be derivatively liable through veil piercing.' (D.I. 25

5

at 18)").[6] For the same reason that was sufficient to require denial of the motion as to the CFRA claim, *id.*, it requires denial of the motion as to the fraud claim.

In any event, Plaintiffs' direct claim was sufficiently pled against Musk. The Complaint alleged that Musk, specifically and personally, never had any intention of providing Twitter employees with the severance called for by Section 6.9(a), based on his well-established history of refusing to treat contractual obligations as binding. D.I. 10, ¶¶ 359-362. The Complaint also alleged that Musk intended Twitter to communicate the promises of Section 6.9(a) to the employees, supported both by detailed allegations, *id.* ¶¶ 81, 363-365, and by the language of the Merger Agreement itself, which required that Twitter get approval of any such communications from X Holdings, the entity Musk dominated and controlled. *See* D.I. 26-2 at 59-60 (§6.8 requiring that such communications be either approved by X Holdings or consistent with the parties' pre-agreed "communications plan").

Judge Burke dismissed Plaintiffs' relevant allegations as conclusory because they did not detail "how" Musk approved those communications. D.I. 121 at 8. But that was error. At the pleading stage, and particularly where the relevant facts are entirely within Defendants' possession, Plaintiffs were not required to plead evidence regarding how the approval was obtained or conveyed. *See Evonik Degussa GmbH v. Materia Inc.*, 2012 WL 4503771, at *2 (D. Del. Oct. 1, 2012). Rather, the question is whether Plaintiffs pled facts rendering it *plausible* that Musk did so. *See, e.g.*, *Acera Surgical, Inc. v. Nanofiber Sols., LLC*, 2021 WL 3187374, at *3 (D. Del. July 28, 2021) ("pleading upon information and belief is permissible where the requisite facts are particularly within the defendant's knowledge and control"),

---

[6] Judge Burke found that Plaintiffs had "pointedly not" argued veil-piercing for fraud (or wage theft), D.I. 121 at 9, n. 11 (citing page 1 of Plaintiffs' opposition to the motion to dismiss) but – as he recognized in the context of the CFRA claim – Plaintiffs had no need to specifically say "and veil-piercing applies to this claim, too" for each individual claim, having made the general argument that veil-piercing applied to *any* claim for which there was no direct liability. Judge Burke appears to have misread Plaintiffs' summary of their argument in the introduction of their brief, in which they explained that they would be arguing that they had sufficiently pled some of the claims directly against Musk while others were *only* pled derivatively, as limiting Plaintiffs' veil-piercing claims to only those counts that had not been asserted directly. That was not Plaintiffs' intent, as their brief made clear, "as to **any** cause of action for which Plaintiffs do not have a direct claim against Musk, Plaintiffs have sufficiently pled that he can be derivatively liable through veil piercing." D.I. 25 at 18 (emphasis added).

6

*report and recommendation adopted*, 2021 WL 3375896 (D. Del. Aug. 2, 2021). This is not a case in which a plaintiff asserting a fraud claim against a company names the CEO as a defendant, without any specific reason to believe that the CEO had any personal involvement in the transaction at issue, rendering the allegation of personal involvement implausible. Rather, the specific factual allegations showing that Musk was deeply involved in the Twitter transaction – in which he had **billions** of dollars personally at risk – and personally micro-managed Twitter's operations after the merger closed, D.I. 10, ¶¶ 6-7, 36-37, 49-50, 109, 293-306, are sufficient to render plausible the allegation that he was equally involved in approving the pre-merger communications his acquiring entity authorized. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (Complaint need only "state enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element") (cleaned up). In light of the details of Musk's extensive personal involvement in the Twitter acquisition, it is reasonable to expect discovery will reveal evidence of his involvement in the communications at issue. Any *factual* dispute over whether that in fact occurred cannot be resolved on a motion to dismiss.

### D. The Court Should Uphold the PAGA and Wage Theft Counts Based on Alter Ego Liability

Finally, the Court should decline to dismiss the PAGA and wage theft counts because even were Judge Burke correct that Plaintiffs did not sufficiently plead such claims against Musk directly, the claims would remain viable against him on the basis of veil piercing. Here, Judge Burke appears to repeat his error discussed above – treating Plaintiffs' focus (in the limited space available to respond to such a wide-ranging motion) on the sufficiency of the direct pleading as an abandonment of any contention that Musk could be liable for these claims via veil-piercing. And that *was* error, because, as noted above, Plaintiffs expressly argued that veil-piercing liability applied to *any* claim for which Plaintiffs had not sufficiently alleged Musk's direct liability. Because both the PAGA and wage theft claims are proceeding against Twitter, and because the veil-piercing liability was sufficiently pled, there

7

is no basis to dismiss those claims as against Musk.

Separately, Judge Burke erred in recommending that the PAGA claim be dismissed *with* prejudice, in light of his recommendation that the wage theft claim be dismissed *without* prejudice. As Judge Burke noted, Defendants' argument regarding PAGA was that it could not stand if the wage theft claim did not. D.I. 121 at 23 ("Musk contends that this claim must be dismissed because it is derivative of Plaintiffs' California wage theft claim, which fails to state a claim against Musk individually"). On that reasoning, dismissing the PAGA claim with prejudice would be error, because Plaintiffs would have a viable PAGA claim if they viably repled the wage theft claim (which Judge Burke recommended allowing).

### E. Conclusion

For the reasons set forth above, the Court should adopt the Musk R&R as to the veil-piercing liability and Counts Three, Four, Seven, Eight, Nine, Twelve, Thirteen, and Fourteen, and otherwise decline to adopt Judge Burke's recommendations.

| | |
|---|---|
| **OF COUNSEL** | */s/ Joseph L. Christensen* |
| | Joseph L. Christensen (#5146) |
| Akiva Cohen (*pro hac vice*) | CHRISTENSEN LAW LLC |
| Dylan M. Schmeyer (*pro hac vice*) | 1201 N. Market Street, Suite 1404 |
| Michael D. Dunford (*pro hac vice*) | Wilmington, Delaware 19801 |
| Lane A. Haygood (*pro hac vice*) | Tel: (302) 212-4330 |
| KAMERMAN, UNCYK, SONIKER & KLEIN P.C. | joe@christensenlawde.com |
| 1700 Broadway, 16th Floor | |
| New York, NY 10019 | |
| Tel: (212) 400-4930 | *Counsel for Wolfram Arnold, Erik Froese,* |
| acohen@kusklaw.com | *Tracy Hawkins, Joseph Killian, Laura Chan* |
| dschmeyer@kusklaw.com | *Pytlarz, and Andrew Schlaikjer* |
| mdunford@kusklaw.com | |

Dated: January 30, 2025

8