# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>*Plaintiffs*,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-528-TMH-CJB |

## DEFENDANT ELON MUSK'S BRIEF IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATIONS OF JUDGE CHRISTOPHER J. BURKE (D.I. 135)

Dated: February 20, 2025

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II. ARGUMENT ........................................................................................................................ 1

    A.    The R&R Correctly Concluded That Plaintiffs Did Not Assert Their Wage Theft And Fraud Claims Under A Veil Piercing Theory ....................................... 2

    B.    The R&R Correctly Concluded Plaintiffs Did Not Adequately Allege That Musk Is Individually Liable For Fraud. ................................................................ 4

    C.    The R&R Correctly Dismissed Plaintiffs' PAGA Claims With Prejudice. ............ 6

    D.    The R&R Correctly Found That Plaintiffs Have No Standing to Enforce the Merger Agreement as Third-Party Beneficiaries. ............................................ 6

III. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AJZN, Inc. v. Yu*,
  2015 WL 331937 (D. Del. Jan. 26, 2015)..................................................................................8

*Alchemy LTD LLC v. Fanchise League Co., LLC*,
  2023 WL 4670954 (Del. Ch. July 20, 2023)............................................................................10

*Alterescu v. N.Y.C. Dep't of Educ.*,
  2022 WL 3646050 (S.D.N.Y. Aug. 23, 2022)...........................................................................6

*AT&T Corp. v. Lillis*,
  953 A.2d 241 (Del. 2008) .........................................................................................................8

*Baldonado v. Avrinmeritor, Inc.*,
  2014 WL 2116112 (D. Del. May 20, 2014)..............................................................................6

*ClubCorp, Inc. v. Pinehurst, LLC*,
  2011 WL 5554944 (Del. Ch. Nov. 15, 2011) .......................................................................7, 8

*Cont'l Warranty, Inc. v. Warner*,
  108 F. Supp. 3d 256 (D. Del. 2015)..........................................................................................8

*DeMartinez v. Lamango*,
  515 U.S. 417 (1995)..................................................................................................................7

*Dolan v. Altice USA, Inc.*,
  2019 WL 2711280 (Del. Ch. June 27, 2019)............................................................................8

*Falcon Tankers, Inc. v. Litton Sys., Inc.*,
  300 A.2d 231 (Del. Sup. Ct. 1972) .........................................................................................10

*Genencor Intern., Inc. v. Novo Nordisk A/S*,
  766 A.2d 8 (Del. 2000) ...........................................................................................................10

*Hallisey v. Artic Intermediate LLC*,
  2020 WL 6438990, at *4 (Del. Ch. Oct. 29, 2020)...................................................................9

*Homsy v. Bank of Am. N.A.*,
  2013 WL 2422781 (N.D. Cal. June 3, 2013)............................................................................6

*Institutional Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009).....................................................................................................6

*Integra LifeScience Corp. v. Hyberbranch Med. Tech., Inc.*,
   2018 WL 1283681 (D. Del. Mar. 13, 2013) ...................................................................3

*L.C. 1 v. Delaware*,
   2009 WL 814631 (D. Del. Mar. 30, 2009) .....................................................................1

*MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*,
   411 F. Supp. 3d 316 (D. Del. 2019)................................................................................4

*Ross v. Dep't of Corr.*,
   697 A.2d 377 (Del. 1997) ...............................................................................................7

*Walley v. Amazon.com, Inc.*,
   2022 WL 4324895 (D. Del. Sept. 16, 2022) ...................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 12 ...............................................................................................10

Federal Rule of Civil Procedure 9 ...............................................................................................5, 6

*Garner's Modern American Usage* (3d ed. 2011) .........................................................................7

Standing Order Relating to Utilization of Magistrate Judges..........................................................6

I.  **NATURE AND STAGE OF PROCEEDINGS**

On January 8, 2025, Magistrate Judge Christopher J. Burke issued a Report and Recommendation ("R&R") recommending dismissal of Counts I (Declaratory Judgment), II (Breach of Merger Agreement), V (Breach of Offer Letter), VI (Fraud), X (Wage Theft), XI (California Private Attorney General Act ("PAGA")), and XIV (Age Discrimination) of Plaintiffs' First Amended Complaint ("FAC") against Defendant Elon Musk. D.I. 121 at 24. On January 30, 2025, Plaintiffs filed an objection to the R&R's recommendation as to Counts I, II, VI, X, and XI.[1] D.I. 135 at 2. Musk opposes Plaintiffs Objections and respectfully requests that the Court adopt Judge Burke's recommendations to dismiss Counts I, II, V, VI, X, XI, and XIV.

II.  **ARGUMENT**

After failing to clearly articulate their theory of liability against Musk in their FAC, Plaintiffs identified for the first time in their opposition to Musk's motion to dismiss which of their claims were premised upon a veil piercing theory and which were premised upon a theory of direct liability. Specifically, Plaintiffs' opposition asserted that they "adequately pled their fraud and wage theft claims ***directly against Musk***" and that their "***remaining claims against Musk*** are viable because they adequately pled veil-piercing liability." D.I. 25 at 7 (emphasis added). As noted in the R&R, "Plaintiffs pointedly d[id] not argue that alter ego liability applies to [their fraud claim] or to their wage theft claims[.]" D.I. 121 at n.11. Now—only after Judge Burke properly concluded that Plaintiffs failed to adequately allege that Musk is individually liable for fraud and wage theft—Plaintiffs argue that Judge Burke "erred in concluding that Plaintiffs had not argued veil piercing" as to their fraud and wage theft claims. D.I. 135 at 2.

---

[1] Plaintiffs do not object to the R&R's recommendation dismissing their claims for alleged breach of offer letter, Texas wage theft, and age discrimination. Because Judge Burke's recommendation as to those claims is not clearly erroneous, they should be dismissed without further analysis. *See L.C. 1 v. Delaware*, 2009 WL 814631, at *1 (D. Del. Mar. 30, 2009).

Plaintiffs' attempt to leverage their purposely vague pleadings to evade dismissal only serves to highlight why dismissal is warranted here. Plaintiffs bear the responsibility for clearly articulating their theory of the case in their pleadings. They did not do so. And, even with the benefit of briefing, neither Twitter, nor Musk, nor Judge Burke can discern Plaintiffs' theories of their claims, which appear to shift each time the flaws in Plaintiffs' claims are brought to light. Plaintiffs' shifting characterizations of these theories undercut their Objections to the R&R, and their revisionist account of their FAC and arguments should be rejected.

In any event, despite Plaintiffs' attempt to recharacterize their FAC, it still fails to state a claim. Plaintiffs have failed to allege Musk's personal involvement in any alleged fraud or wage theft and should not be permitted to recast their claims as proceeding under a theory of veil piercing. Regardless, it would not salvage Plaintiffs' claims given that Plaintiffs failed to adequately allege veil piercing and the underlying fraud claim against Twitter has been dismissed. Moreover, because the Merger Agreement makes clear in no less than three separate provisions that Plaintiffs are not third-party beneficiaries, Plaintiffs lack standing to sue for its alleged breach. Accordingly, this Court should adopt the R&R's recommendations of dismissal.

**A.    The R&R Correctly Concluded That Plaintiffs Did Not Assert Their Wage Theft And Fraud Claims Under A Veil Piercing Theory.**

Despite Plaintiffs' most recent reimagining of the arguments in their opposition brief, Plaintiffs previously represented to the Magistrate Judge that they "pled their fraud and wage theft claims directly against Musk." D.I. 25 at 7. Although Plaintiffs seek to downplay this representation as only one sentence in their summary of the argument, it is well supported by the substance of their opposition brief. Indeed, Plaintiffs' wage theft argument fell under the header: "Musk Has Individual Liability for Plaintiffs' Wage Theft Claims." *Id.* at 21. And, in responding to Musk's arguments against their fraud claim, Plaintiffs asserted that "Musk's argument that he

cannot be held liable for statements made before he owned or controlled the company misses the point" because "Musk is liable for *his own* false statements[.]" *Id.* at n. 9. Then, in case there was any uncertainty about their theory, Plaintiffs opened their veil piercing argument by asserting that "Musk is personally liable for the corporate defendants' *other liabilities*"—that is, those claims for which they did not assert individual liability—"via veil piercing." *Id.* at 22 (emphasis added). Viewed properly in context, Plaintiffs' concluding statement that they sufficiently pled veil piercing "as to any cause of action for which Plaintiffs do not have a direct claim against Musk" can only be understood as asserting that veil piercing applies to those claims that do not permit a cause of action against an individual defendant, such as Plaintiffs' WARN Act, FEHA, and CFRA claims. Having declined to pursue a theory of veil piercing before the Magistrate Judge, Plaintiffs cannot now invoke that theory in an attempt to revive their claims.[2] *See Integra LifeScience Corp. v. Hyberbranch Med. Tech., Inc.*, 2018 WL 1283681, at *1 (D. Del. Mar. 13, 2013).

In any event, even if the Court were to consider Plaintiffs' veil piercing argument, it would not warrant a different result. As explained more fully in Musk's Objections (D.I. 134 at 10-15), Plaintiffs have not adequately alleged that Musk and Twitter are a single economic entity or that respect for the corporate form would sanction fraud or injustice, and therefore cannot state a claim for veil piercing. Plaintiffs' fraud claim fails for the additional reason that the underlying fraud claim against Twitter was dismissed in Judge Burke's report and recommendation on Twitter's motion to dismiss ("Twitter R&R"). D.I. 110 at 38. Plaintiffs, expressly and specifically, did not object to that recommendation. D.I. 111 at n.4. Because there is no underlying cause of action

---

[2] Notably, Plaintiffs do not challenge the R&R's conclusion that they failed to plead individual liability as to their wage theft claims. Accordingly, to the extent this Court adopts the R&R's finding that Plaintiffs did not assert a theory of veil piercing, their wage theft claims must be dismissed.

3

against Twitter, Plaintiffs cannot advance a claim of derivative liability against Musk.[3] Accordingly, Plaintiffs claims fail even under a veil piercing theory.

        **B.    The R&R Correctly Concluded Plaintiffs Did Not Adequately Allege That Musk Is Individually Liable For Fraud.**

Plaintiffs' individual liability theory fares no better. In order to state a claim for fraud, a plaintiff must allege that *the defendant* made a false representation. *MarkDutchCo 1 B.V. v. Zeta Interactive Corp.*, 411 F. Supp. 3d 316, 332 (D. Del. 2019). Here, Plaintiffs' fraud claims are based, not on statements made by Musk, but on statements allegedly made by Twitter to its employees regarding § 6.9. Plaintiffs nonetheless argue Musk is individually liable for Twitter's statements because Musk (1) "intended Twitter to communicate the promises of Section 6.9(a) to the employees" and (2) "approved those communications." D.I. 135 at 7. Even assuming the legal sufficiency of Plaintiffs' proffered showings, they are not supported by the allegations in the FAC.

As the R&R correctly noted, Plaintiffs' assertion that Musk "approved" Twitter's communications to employees is entirely absent from their FAC. D.I. 121 at 10. *See Walley v. Amazon.com, Inc.*, 2022 WL 4324895, at *2 (D. Del. Sept. 16, 2022) (noting that plaintiffs "may not amend [their] Complaint through [an] opposition, and new facts may not be considered by the Court"). Nor is such an inference warranted based on the language of § 6.8 of the Merger Agreement. Section 6.8 specifically permits Twitter to issue communications to its employees "*without [X Holdings'] consent*" so long as the communication is consistent with "any

---

[3] To the extent Plaintiffs argue that Musk is derivatively liable for X Holdings' alleged fraud, their argument must be rejected. Plaintiffs' FAC *never* asserted that Musk and X Holdings were alter egos, let alone allege the elements necessary to pierce that entity's corporate veil. *See* D.I. 10 at 37-39 (solely addressing Musk's alleged relationship with Twitter); *see also* D.I. 25 at 22-24 (same). Even now, Plaintiffs do not directly assert that Musk and X Holdings are alter egos, but rather vaguely insinuate that their fraud claim can remain against Musk because it remains against X Holdings. D.I. at 135 at 6. This appears to be yet another attempt by Plaintiffs to leverage the vagueness of their FAC to recharacterize their claims and should be rejected outright.

communications plan previously agreed to by [X Holdings] and the Company." D.I. 16-1 at 65-66. Because Plaintiffs allege that the relevant communications were issued to employees, *see, e.g.,* D.I. 10 at ¶¶ 39, 83, 94, there can be no inference that X Holdings consented to the communications, much less that *Musk* consented to the communications. Nor can there be any inference that X Holdings dictated the communications through a "communications plan"—much less that *Musk* did so—given the absence of allegations that there was, in fact, a communications plan that addressed how Twitter would communicate the terms of § 6.9(a) to its employees. Simply put, Plaintiffs' allegations do not give rise to a reasonable inference that Musk approved or consented to the challenged communications.

Nor do Plaintiffs adequately allege that Musk signed the Merger Agreement intending Twitter to communicate the terms of § 6.9(a) to its employees. As an initial matter, Plaintiffs' argument presumes that the terms of § 6.9(a) are somehow attributable to Musk. But, as the R&R correctly pointed out, Musk is not a party to § 6.9, and therefore there is no basis to attribute any alleged "promises" in § 6.9 to Musk. D.I. 121 at 8.

Regardless, even if Plaintiffs could show that Musk is somehow responsible for the terms of § 6.9, Plaintiffs have not sufficiently alleged that he intended Twitter to communicate those terms to its employees. Although Plaintiffs proclaim that they provided "detailed allegations" to support Musk's alleged intent, a review of their FAC proves otherwise. D.I. 135 at 7. The "detailed allegations" cited by Plaintiffs are that (1) § 6.9(a) was "intended to entice employees to stay pending [Musk's] acquisition," D.I. 10 at ¶ 81, and (2) Musk sought to include § 6.9(e) in the Merger Agreement because he wanted the "option to not pay the Severance that Section 6.9(a) would otherwise require," *id.* at ¶¶ 363-65. These conclusory allegations lack any specific facts to support their assertions of intent and therefore cannot satisfy Rule 9(b)'s heightened pleading

standard for fraud. *See Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (Rule 9(b) "requires plaintiffs to plead the who, what, when, where and how" of the alleged fraud). This Court should adopt the R&R's recommendation to dismiss Plaintiffs' fraud claim.

        **C.     The R&R Correctly Dismissed Plaintiffs' PAGA Claims With Prejudice.**

The R&R recommends dismissal of Plaintiffs' PAGA claims with prejudice based on its conclusion that Plaintiffs abandoned their claim by failing to respond to Musk's arguments for dismissal. Plaintiffs do not dispute that they abandoned their PAGA claim, but nonetheless assert that the claim should be dismissed without prejudice because it is derivative of their wage theft claim. However, courts across the country have recognized that dismissal with prejudice is appropriate when claims are abandoned. *See, e.g., Baldonado v. Avrinmeritor, Inc.*, 2014 WL 2116112, at *7-8 (D. Del. May 20, 2014) (dismissing claim with prejudice where plaintiff failed to respond to arguments in motion to dismiss); *Alterescu v. N.Y.C. Dep't of Educ.*, 2022 WL 3646050, at *4 (S.D.N.Y. Aug. 23, 2022) (noting that courts "routinely dismiss with prejudice claims at the motion to dismiss stage that are not defended and deemed abandoned"); *Homsy v. Bank of Am. N.A.*, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013) ("In instances where a plaintiff simply fails to address a particular claim in its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice."). The same result is warranted here.

        **D.     The R&R Correctly Found That Plaintiffs Have No Standing to Enforce the Merger Agreement as Third-Party Beneficiaries.**

Plaintiffs are *non-parties* to the Merger Agreement. They seek to hold another *non-party* (Musk) liable for breach of the Agreement. Instead of grappling with the obvious problems with such a convoluted legal theory, Plaintiffs use their Objections as an impermissible reply brief to "address[] [Twitter's] responses" to Plaintiffs' Objections to the Twitter R&R. D.I. 135 at 3. This attempt at a "second bite at the apple" violates the Court's rules. *See* Standing Order Relating to

6

Utilization of Magistrate Judges C(1)(e) ("No reply in support of objections may be filed without leave of the Court."). In addition to being procedurally improper, the arguments in their Objections are substantively without merit.

First, Plaintiffs argue that the R&R's conclusion that § 6.9(a) does not confer a promise of future severance benefits is contrary to the plain language of the Agreement. Plaintiffs' argument narrowly focuses on the use of the word "shall" in that provision, which Plaintiffs erroneously assert necessarily renders the maintenance of severance mandatory. As courts have routinely recognized, "shall" may be construed as mandatory *or* permissive, and its precise meaning must be drawn from surrounding context. *See, e.g., DeMartinez v. Lamango*, 515 U.S. 417, 432 n.9 (1995) (noting that, depending on the context, "shall" could be used to "mean 'should,' 'will,' or even 'may'"); *Ross v. Dep't of Corr.*, 697 A.2d 377, 378 (Del. 1997) ("[T]he word 'shall' *generally* means that the obligation is mandatory *unless* the context or purpose of the statute indicates otherwise.") (emphasis added); *Garner's Modern American Usage* 952-53 (3d ed. 2011) ("courts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts"). Here, the context provided in the remainder of § 6.9—specifically, § 6.9(e)(i)'s clarification that Twitter retained the right to alter severance benefits—makes clear that the use of "shall" in § 6.9(a) does not mean that Twitter was definitively committing itself to provide a certain level of benefits. Plaintiffs' narrow focus on a single word within a multi-part provision, stripped of its surrounding context, is improper and ought not be credited. *ClubCorp, Inc. v. Pinehurst, LLC*, 2011 WL 5554944, at *11 (Del. Ch. Nov. 15, 2011) ("Contractual interpretation requires considering the agreement as a whole rather than piecemeal by isolated term.").

Second, Plaintiffs assert that the Agreement cannot be read in a way that renders § 6.9(a) unenforceable where there are reasonable alternative interpretations that would give effect to both

§ 6.9(a) and §§ 6.9(e) and 9.7. As an initial matter, Plaintiffs' argument presumes that § 6.9(a) promises an ongoing entitlement to severance benefits subject to enforcement in the first instance which, for the reasons stated in Twitter's Objections, it does not. D.I. 122 at 6-7. In any event, Plaintiffs have failed to articulate a reasonable reading of the contract that would give effect to §§ 6.9(e) and 9.7. *Id.* at 7, 10-13 (explaining why Plaintiffs' alternative readings are unreasonable). The Court need not, and should not, adopt an unreasonable interpretation that contravenes the contracting parties' clearly stated intent.[4] *See AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008).

Nor is the Court required to find that the contract is ambiguous simply because it includes a provision that is targeted towards third parties.[5] Ambiguity exists only "when the provisions in controversy are reasonably or fairly susceptible of different interpretations." *AJZN, Inc. v. Yu*, 2015 WL 331937, at *7 (D. Del. Jan. 26, 2015) (citation omitted). "[I]f one of two preferred meanings is unreasonable, there is no ambiguity." *Id.* (citation omitted). And here, Plaintiffs have failed to articulate a reasonable alternative interpretation.

---

[4] The whole-text canon relied on by Plaintiffs supports, rather than undermines, this proposition. As Plaintiffs recognize, "the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." D.I. 135 at n.5 (quoting *Cont'l Warranty, Inc. v. Warner*, 108 F. Supp. 3d 256, 259 (D. Del. 2015)). Here, the "overall scheme or plan" of the Agreement is decidedly *not* to provide employees with an enforceable right to severance benefits, as the contracting parties made clear in §§ 6.9(e)(i), 6.9(e)(ii), *and* 9.7. Plaintiffs' (erroneous) reading of § 6.9(a) cannot override these provisions and control the meaning of the entire Agreement.

[5] *Dolan v. Altice USA, Inc.* does not counsel otherwise. 2019 WL 2711280 (Del. Ch. June 27, 2019). Contrary to Plaintiffs' assertion, the court in that case did not find that the contract was ambiguous simply because a provision would be unenforceable absent third-party beneficiary rights. Rather, the contract was ambiguous because it provided certain non-parties with "specific," "detailed rights" that seemed to conflict with the contract's blanket no-third-party beneficiary clause. *Id.* at *8. Here, unlike in *Dolan*, the Merger Agreement contains not only a blanket no-third party-beneficiary clause, but also § 6.9(e), which expressly makes clear that (1) Twitter is not obligated to maintain a certain level of severance benefits and (2) employees are not intended beneficiaries of § 6.9. Whatever ambiguity existed in *Dolan* is simply absent here.

8

Finally, Plaintiffs assert that equitable estoppel precludes Defendants from claiming that the Merger Agreement does not provide an enforceable right to benefits in light of Twitter's representations in the Acquisition FAQs that the Agreement "provides special protection" for certain employee benefits. D.I. 16-2 at 19. Even assuming *arguendo* that the Acquisition FAQs conflict with the Merger Agreement,[6] Plaintiffs cannot invoke equitable estoppel to alter the plain language of the contract. As the R&R correctly recognized, "in a dispute about enforcement of a bargained-for contract right, equitable estoppel is not the proper remedy." D.I. 110 at 18 (quoting *Hallisey v. Artic Intermediate LLC*, 2020 WL 6438990, at *4 (Del. Ch. Oct. 29, 2020)).

Plaintiffs seek to circumvent this uncontroversial rule of law by arguing that, even if equitable estoppel is not available to the *parties* to a contract, it remains available to *non-parties* because they did not "bargain for" the rights in the contract. But regardless of whether Plaintiffs themselves "bargained for" the purported rights they seek to assert, the fact remains that this case is about the "enforcement of a bargained-for contract right;" specifically, alleged third-party beneficiary rights to a certain level of severance payments. Like any other contract dispute, Plaintiffs' claims are governed by the terms of the agreement—not alleged misrepresentations about those terms.

Plaintiffs' novel argument to the contrary finds absolutely no support in the law, and for good reason: If Plaintiffs were correct, strangers to a contract would have *more* power to alter its terms than the parties to the agreement. Third-party beneficiary law would be entirely upended because non-parties could obtain enforceable rights anytime they were purportedly mistakenly told that the contract provided them with an intended benefit, regardless of the specific terms that the

---

[6] Contrary to Plaintiffs' assertion, Defendants have not taken the position that the Acquisition FAQs "inaccurately" describe the terms of the Merger Agreement.

9

parties actually agreed to in the contract. Given the radical consequences of Plaintiffs' position, it is unsurprising that they do not cite a *single* case where a court adopted it. *Cf. Falcon Tankers, Inc. v. Litton Sys., Inc.*, 300 A.2d 231, 237 (Del. Sup. Ct. 1972) (rejecting the argument that a plaintiff could be a third-party beneficiary to a contract because it relied on representations in the contract and noting that a non-party to an agreement "cannot create in itself any rights as a beneficiary by acting in reliance on the contract") (applying New York law). Indeed, the only case Plaintiffs cite in support of their argument concluded that equitable estoppel was inapplicable to a breach of contract claim.[7] *Genencor Intern., Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12 (Del. 2000). The Court should adopt the R&R's recommendation to dismiss Counts I and II with prejudice.

### III.  CONCLUSION

For the foregoing reasons, Musk respectfully requests that this Court dismiss Counts I, II, V, VI, X, XI, and XIV pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: February 20, 2025

**MORGAN, LEWIS & BOCKIUS LLP**

 /s/ Jody C. Barillare
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*

---

[7] Even if Plaintiffs were permitted to leverage equitable estoppel, it would not save their claims. Although Plaintiffs make no attempt to argue that they satisfy the required elements of equitable estoppel, the FAC plainly fails to plead such a claim. Equitable estoppel requires Plaintiffs to demonstrate that they "lacked knowledge or the means of obtaining knowledge of the truth of the facts in question[.]" *Alchemy LTD LLC v. Fanchise League Co., LLC*, 2023 WL 4670954, at *9 (Del. Ch. July 20, 2023) (citation omitted). Because the Merger Agreement was readily available to Plaintiffs, they cannot claim that they lacked the ability to determine the true terms of the Agreement. *See, e.g., id.* at *9 (even assuming equitable estoppel could be raised in a contract dispute, plaintiff could not claim it was misled about the terms of a contract where it had access to the contract).