IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>      Plaintiffs,<br> v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,<br><br>      Defendants. | Case No. 1:23-cv-528-JLH |

**PLAINTIFFS' RESPONSE TO THE DEFENDANTS' OBJECTIONS TO THE RECOMMENDATIONS OF JUDGE CHRISTOPHER J. BURKE REGARDING MUSK'S MOTION TO DISMISS**

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com

*Counsel for Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer*

Dated: February 20, 2025

Plaintiffs respectfully submit this Response to Defendants' objections to Judge Burke's recommendations regarding Defendant Musk's motion to dismiss, D.I. 121. Defendants' sole objection is Judge Burke erred in recommending the Court find Defendants waived any argument Plaintiffs inadequately pled veil piercing. Judge Burke was correct to so find, and Defendants' reliance on arguments they simply never raised on their initial motion only underscores that.

**A.    Factual Background**

In Defendants' telling, this action arises out of Defendants' now-admitted fraud against Plaintiffs. *According to* **Defendants**, Defendant X Corp. f/k/a Twitter ("Twitter") knowingly provided its employees with an inaccurate summary of the terms of the Merger Agreement between Twitter and X Holdings II, Inc. in advance of the merger, "inaccurately" informing its employees that the Merger Agreement contained "special protections" for their post-merger severance and other benefits. It did so while believing – again, this is *according to* **Defendants** – the Merger Agreement provided no such protections, with the parties to that agreement (Twitter, X Holdings I and II, and Musk) having agreed to extensive language that only *appeared* to protect the employees' severance and other benefits, but did not provide any such protection because the parties intentionally chose to entirely nullify those provisions via a separate "no third-party beneficiaries" provision … which Twitter did not bother to tell its employees about.

Of course, Plaintiffs do not agree with Defendants' made-for-litigation tale; in reality, the parties intended that the extensive scheme they agreed on to govern Twitter employees' post-merger benefits would be enforceable, binding Twitter once the merger closed, while the "no third-party beneficiary" provision was intended to preclude anyone but Twitter or Musk's entities from enforcing the merger agreement prior to its close or termination. Indeed, Section 9.1 of the Merger Agreement provides that the obligations of Section 6.9 of the agreement survive the close of the merger – obligations that, in Defendants' telling, *do not exist*. And Defendants knowingly breached

1

those obligations when Musk decided not to have Twitter pay terminated employees the promised amounts. But given that Defendants seek to invoke the Court's discretion, it is worth reiterating that Defendants' *defense* is that the Court ought to find Twitter deliberately misled its employees.

### B. Plaintiffs' Complaint

From that factual predicate, Plaintiffs pled a series of claims against Twitter, the Musk entities, and Musk himself. They sought a declaration that they had standing to enforce the Merger Agreement's provisions relating to employee severance and benefits, D.I. 10, ¶¶ 313-319 and sought damages for breach of the Merger Agreement. *Id.*, ¶¶ 320-324. They alleged that Twitter's pre-merger communications with the employees created an enforceable contract when the employees accepted Twitter's offers by remaining at Twitter through the merger, *id.*, ¶¶ 325-331, or, if not, support claims for promissory estoppel. *Id.*, ¶¶ 332-340. They further alleged that by failing to provide the severance called for by Twitter's employee benefits plans, Twitter breached its employment agreement with the Plaintiffs, which provided that the employees would receive benefits in accordance with those plans. *Id.*, ¶¶ 341-352. Plaintiffs pled that Twitter and Musk's entities committed fraud. *Id.*, ¶¶ 353-369. They also brought claims under the Federal, California, and New York WARN Acts, *id.*, ¶¶ 370-411, for wage theft. *id.*, ¶¶ 412-420, for Twitter's California labor law violations under California's Private Attorney General Act, *id.*, ¶¶ 421-440, under Federal and California law for Twitter's interference with family and medical leave, *id.*, ¶¶ 441-469, and for discrimination. *Id.*, ¶¶ 470-544. As to each count, Musk was individually named as a Defendant.

And – contrary to Defendant's claims in its objection – there was no mystery that, as to each count, Plaintiffs alleged Musk was liable not only directly, but via Plaintiffs' claim for piercing the corporate veil. Plaintiffs devoted 20 paragraphs of the complaint to alleging facts specifically relating to their veil piercing claim, under the subheading "Allegations Relating to Piercing the Corporate Veil." D.I. 10, ¶¶ 293-312. Paragraph 312 specifically explained Plaintiffs' view of the consequences

of those allegations, and of Plaintiffs' entitlement to pierce the corporate veil: "As such, and applying California law, Plaintiffs are entitled to an order holding Musk personally liable for any amounts awarded on their other claims." *Id.*, ¶¶ 312

### C. Musk Opts Not to Address Veil-Piercing on His Motion

Despite that, Musk chose not to substantively address Plaintiffs' veil-piercing theory on his motion to dismiss. Instead, Musk touched on veil-piercing only in a footnote addressing counts I-II of the Complaint (the claims for breach of contract). D.I. 18 at 10-11, n. 4. In that footnote, Musk purported to take issue with Plaintiffs' assertion that California law applied to their veil-piercing claim, but did so without making any meaningful argument for the contrary position (that Delaware law ought to govern): "As a threshold matter, they mistakenly allege that California law should apply to this analysis instead of Delaware law, but no matter which law applies …" *Id.* (misciting *U.S. v. Boyce*, 38 F.Supp.3d 1135 (C.D. Cal. 2014) for the proposition that the Court must apply the law of the forum state).[1] Substantively, Musk argued **only** (and conclusorily) that "Plaintiffs fail to explain how respecting the corporate form would lead to an 'injustice' or 'inequitable' result as is necessary to pierce the corporate veil under either states' [sic] law." D.I. 18, n.4 (citing *Trevino v. Merscorp, Inc.*, 583 F.Supp.2d 521, 528 (D. Del. 2008) for the general proposition that Delaware law requires a showing of injustice and *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F.Supp.3d 1104, 1136 (C.D. Cal. 2015) for the general proposition that California law requires an "inequitable result").

At no point in his opening brief did Musk address the actual allegations in the Complaint

---

[1] *Boyce* addressed only the question of whether a federal court was to apply *state or federal* law to the veil piercing question, not which state's law applied; in *Boyce* no state other than California was relevant or discussed. *Id.* at 1155 (*citing S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir.)*, opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003) for proposition that court applies the law of the forum state); *Hickey*, 322 F.3d at 1128 (*quoting Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993) for that proposition); *Towe*, 999 F.2d at 1391 (*citing Wolfe v. U.S.*, 806 F.2d 1410, 1411 (9th Cir. 1986) for that proposition); *Wolfe*, 806 F.2d at 1411 ("The determination of whether to apply *state or federal* alter ego doctrine depends on the degree to which the subject matter of the case implicates federal interests") (emphasis added). Musk now makes a far more extensive and different argument on choice of law, to which Plaintiffs had no opportunity to meaningfully respond.

3

regarding veil piercing. Plaintiffs specifically alleged that Musk had undercapitalized Twitter as part of purchasing the corporation, and had repeatedly warned that Twitter was therefore on the edge of bankruptcy, such that Plaintiffs were at risk of an inequitable result. D.I. 10, ¶¶ 307-310. Musk offered no argument for why the Court should find such allegations insufficient. And at no point did Musk suggest that Plaintiffs had inadequately alleged any of the other elements of veil piercing.

Given Musk's bare reference to veil piercing, Plaintiffs lightly addressed their veil piercing claim in their opposition to Musk's motion. Plaintiffs noted that Defendants' suggestion that the Court was merely to apply the law of the forum state was wrong, and provided authority for the proposition that California law could apply to any assessment of veil piercing. D.I. 25 at 15-16. And – Defendants not having bothered to substantively address the veil piercing allegations – Plaintiffs pointed the Court to those allegations, explaining that Musk's intermingling of corporate assets and undercapitalization of Twitter created risks of an inequitable outcome. *Id.* Given that Musk had made no argument that those allegations were legally insufficient, but had instead merely noted that an inequitable result was required, Plaintiffs had no need to – and therefore did not – discuss relevant cases addressing whether such allegations were sufficient. *Id.*

Perhaps recognizing that his prior approach was insufficient (or, alternatively, having successfully precluded Plaintiffs from addressing his specific arguments by withholding them for reply), Musk engaged with the substance of the claim for the first time in his reply brief. Though he had not previously argued that the allegations were insufficient to show the alter ego relationship between Musk and Twitter, on reply Musk argued for the first time that Plaintiffs were required to allege (and failed to allege) that "Musk and Twitter are a 'single economic entity.'" D.I. 37 at 5-6. And for the first time, Musk argued that the allegations of inequitable result were insufficient, relying on *Gerritsen* for the proposition that mere status as an unsatisfied creditor is not "an inequitable result [warranting] application of the alter ego doctrine." *Id.* at 6-7.

4

**D.    Judge Burke Correctly Finds Musk Waived or Forfeited this Argument by Withholding it for Reply**

Faced with arguments raised for the first time on reply, Judge Burke found Musk had waived or forfeited the veil piercing argument by failing to properly raise it in his opening brief. Citing extensive precedent holding that arguments raised solely in footnotes are waived or forfeited, Judge Burke explained that Musk's failure to "sufficiently address the veil piercing/alter ego issue in his opening brief" led to "insufficient and unhelpful briefing" on the subject. D.I. 121 at 5-6. As such, Judge Burke recommended denying the motion to dismiss with respect to veil piercing. *Id.* at 6.

**E.    Magistrate Burke did not Abuse His Discretion in Finding Musk Waived Any Veil Piercing Argument**

Musk objects to Judge Burke's recommendation that the Court deem the veil piercing argument waived or forfeited by his decision not to substantively raise it in his moving brief, but never addresses the standard of review applicable to such an objection. As this Court held in *Shure Inc. v. ClearOne, Inc.*, No. CV 19-1343-RGA, 2021 WL 4894198 (D. Del. Oct. 20, 2021), the decision to address or deem waived arguments raised in footnotes is a matter left to the discretion of the magistrate because it is not itself dispositive, even if the issue arises in the context of a dispositive motion. *Id.* at *2 (magistrate did not abuse discretion in considering arguments raised in footnote on summary judgment motion, and court therefore would not overrule that determination). *See also Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 382 (D. Del. 2014) (determination of whether reference was prior art was reviewed for abuse of discretion, even where such determination was made in the context of a summary judgment motion). Matters committed to the Magistrate's discretion are reviewed only for abuse of discretion. *See Masimo*, 62 F. Supp. 3d at 382 (collecting cases). And Judge Burke clearly did not abuse his discretion; Musk argues only that Judge Burke *had* discretion to consider the argument and opted not to exercise it. In any event, Judge Burke correctly concluded that Musk's briefing choices left the veil piercing issue insufficiently

5

briefed to support a ruling. The Court therefore should adopt that recommendation.

"Arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived." *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997).[2] *See also New Jersey v. U.S. Dep't of Transportation*, No. 2:23-CV-03885, 2024 WL 5247990, at *12 (D.N.J. Dec. 30, 2024) ("arguments raised solely in footnotes are considered waived"); *Casco v. Ponzios RD, Inc.*, No. CV 16-2084 (RBK/MJS), 2021 WL 3124321, at *5 (D.N.J. July 23, 2021) (plaintiff waived argument by raising it only in footnote in opening brief and expanding only on reply). Musk's sole response to this is to argue that a Third Circuit case – *Hargrove v. Sleepy's LLC*, 974 F.3d 467 (3d Cir. 2020) – announced a general rule that arguments raised only in an opening brief's footnote and then "elaborated in detail" on reply are not waived. D.I. 134 at 4. Not so.

For one thing, the Third Circuit had held three years earlier – in a case Musk cites for other reasons, but does not address on this issue – that an argument was forfeited despite being addressed on reply. *See Barna*, 877 F.3d at 148 (where Barna addressed key case only obliquely in his opening brief and then fully on reply, that argument was forfeited; "[t]hat Barna addressed the *Owen* decision solely in his reply brief also does not redeem his failure to do so in his opening brief"). To the extent Musk reads *Barna* and *Hargrove* as contradictory, *Barna* would control; the *Hargrove* panel never addressed *Barna* and, in any event, a later panel cannot reverse the holding of a prior panel – only the *en banc* Court could do so. *Joyce v. Maersk Line Ltd*, 876 F.3d 502, 508 (3d Cir. 2017).

---

[2] Musk argues that he merely forfeited the argument, not waived it, suggesting that his failure to squarely address veil piercing in his opening brief was not intentional. *See* D.I. 134 at 3 (*citing Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) for the proposition that an "inadvertent failure to raise an argument" is forfeiture rather than waiver). But Musk did not "inadvertently fail" to address veil piercing; he specifically raised it in a footnote and only a footnote, a decision that could only have been knowing. This is not a case where a party entirely omitted a particular argument, and that failure could have potentially been inadvertent rather than an active decision to only address it in passing. Indeed, at no point in the Objection does Musk claim as a factual matter that addressing veil piercing only in a footnote was an error rather than a conscious choice. That stands in stark contrast to *Barna*, in which Barna argued that he had adequately preserved by citing relevant cases, which the Third Circuit held was insufficient but appeared inadvertent rather than an intentional waiver. 877 F.3d at 148. In any event, and as discussed *infra*, to the extent that the argument was "only" forfeited Judge Burke properly exercised his discretion in not reviving it.

6

But they are not contradictory. *Hargrove* was decided in the context of an appeal, where the parties had extensively and specifically briefed the standard of review below. *See Hargrove v. Sleepy's LLC, No. 10-CV-1138 (PGS)*, 2019 WL 8881823, at *2 (D.N.J. May 9, 2019) ("Defendant argues that the Court should construe the renewed motion for class certification as a motion for reconsideration. In contrast, Plaintiffs argue …the present motion should be treated as an independent motion …"), *rev'd and remanded*, 974 F.3d 467. Thus, when Hargrove raised the issue in a footnote of its opening brief on appeal, Sleepy's had full and fair notice of what Hargrove's specific legal arguments were and addressed them in its opposition on appeal, which the Third Circuit considered dispositive. *Hargrove*, 974 F.3d at 475, n. 5 ("There is no argument here that the parties did not have fair notice of this contention… or that Sleepy's did not have an opportunity to respond. Indeed it responded to the standard-of-review argument at length. Sleepy's Br. 18–21") (distinguishing *In re: Asbestos Prod. Liab. Litig. (No. VI)*, 873 F.3d 232, 237 (3d Cir. 2017) as declining to consider argument raised in a footnote because "it fail[ed] to give fair notice of the claims being contested on appeal"). In *Barna*, in contrast, the Court found Barna failed to sufficiently raise the issue to the district court, and thus 'elaborating in detail' for the first time on reply was not enough to avoid forfeiture. 877 F.3d at 148. That is consistent with the principle that the key question is whether the moving party gave the opposing party fair notice of its specific legal arguments.[3]

Here, of course, there was no prior briefing, and Musk only articulated a specific argument addressing Plaintiffs' veil piercing allegations on reply, which is a quintessential example of unfair surprise. It is well-settled that a moving party may not save for reply legal issues that ought to be raised on the initial motion. *See, e.g.*, *Sierra Est. of Romagosa v. Trafigura Trading LLC*, No. 22-366-JLH-CJB, 2024 WL 4104130, at *15 n. 21 (D. Del. Sept. 6, 2024). Here, by only raising the issue in a

---

[3] The *Barna* Court considered the forfeited arguments in the exercise of its discretion, because there were exceptional circumstances, the issue was of importance and longstanding, and there was no unfair surprise. *Id.* at 148-149.

7

footnote and not taking specific issue with Plaintiffs' allegations, Musk precluded Plaintiffs from addressing his specific legal arguments, distinguishing his cases (or, as has been sometimes necessary, more accurately describing them), and advancing their own legal arguments in response. And, as briefly demonstrated below in briefing far too constrained by the 10-page limitation on this opposition to fully address the issues, there are significant legal arguments to be made.

### F. Musk Clearly Waived any Argument that Plaintiffs Didn't Sufficiently Allege Musk and Twitter Were a "Single Economic Entity"

Separately, and regardless of whether the Court deems Musk's footnote and reply briefing sufficient to avoid forfeiture by "raising" the issue in his opening brief and then "elaborating" on reply, that argument has no application at all to Musk's belated attempt to argue that Plaintiffs did not adequately allege Musk and Twitter are sufficiently intertwined to be legally treated as alter egos. Footnote 4 in Musk's initial brief never raised that issue *at all*; the only element he even gestured at arguing was inadequately alleged was "how respecting the corporate form would lead to an 'injustice' or 'inequitable' result." D.I. 18 at 10, n. 4. The very first time Musk suggested that the allegations were insufficient to allege that he and Twitter were a "single economic entity" was on reply. D.I. 37 at 5-6. Thus, as to that issue, Musk's reply was not "elaborating on" an argument raised even in general terms and in passing in his moving brief, but was improperly raising for the first time on reply a never-before identified issue, to which Plaintiffs had no opportunity to respond. As such, and even on Musk's theory that the Court had discretion to consider the arguments in his reply that were previewed in the footnote, it would be an abuse of discretion to consider Musk's arguments on alter ego status. Given the limited space available on this briefing Plaintiffs will not devote any of that space to substantively responding on that issue.

### G. Plaintiffs Sufficiently Alleged an Inequitable Result

Finally, to the extent the Court reverses Judge Burke's Recommendation and instead decides to consider Musk's argument that Plaintiffs insufficiently alleged that failing to pierce the corporate

8

veil could lead to an inequitable result, Musk is simply wrong. Plaintiffs do not need to allege that failing to pierce the corporate veil would, with certainty, lead to an inequitable result, merely that it would subject Plaintiffs to a *risk* of an inequitable result. *See United States v. Healthwin-Midtown Convalescent Hosp. & Rehab. Ctr., Inc.*, 511 F. Supp. 416, 420 (C.D. Cal. 1981) (veil piercing justified because Healthwin's undercapitalization "subjected all its creditors, including plaintiff, to inequitable risks regarding Healthwin's obligations to them"), *aff'd*, 685 F.2d 448 (9th Cir. 1982).[4] Potential insolvency and attendant inability to pay a judgment is a sufficient risk of an inequitable result to warrant veil piercing. *See Relentless Air Racing, LLC v. Airborne Turbine Ltd. P'ship*, 222 Cal. App. 4th 811, 813 (Cal. Ct. App. 2013) (result was inequitable as a matter of law where defendant's insolvency meant plaintiff could not collect its judgment from the corporation). The law does not require any proof that the inequitable result was a product of bad faith or ill-intent. *Id.* at 816 ("The trial court erred in requiring Relentless to prove that the Fultons acted with wrongful intent. The law does not require such proof. … the Fultons' intent is beside the point").

That is particularly true where, as Plaintiffs alleged here, a corporation is undercapitalized relative to its risk. "If the capital [of a corporation] is illusory or trifling compared with the business to be done and the risks of loss, this is a ground for denying the separate entity privilege." *Aliya Medcare Fin., LLC v. Nickell*, No. CV 14-07806 MMM (EX), 2015 WL 11072180, at *21 (C.D. Cal. Sept. 25, 2015) (alteration in original), *quoting Commodity Futures Trading Comm'n v. Topworth Intern., Ltd.*, 205 F.3d 1107, 1113 (9th Cir. 1999). "The status of an entity as undercapitalized is an independent basis for inequitable result." *Dollar Tree Stores Inc. v. Toyama Partners LLC*, No. C 10-0325 SI, 2011 WL 872724, at *2 (N.D. Cal. Mar. 11, 2011). As Plaintiffs alleged, Musk acquired Twitter by

---

[4] Given the limited space available, Plaintiffs can address only veil piercing under California law and California precedents, not Delaware law or the Delaware cases cited by Musk, or the choice of law issue itself. In that regard, Musk's argument that Plaintiffs are not prejudiced because they can argue the substance of veil piercing in response to the Objection and Musk's decision to raise these substantive issues for the first time on reply (or in that Objection), D.I. 134 at 5, is not only *chutzpah*, it is also wrong as a factual matter.

9

loading it down with billions of dollars in debt, subjecting it to severe risk of bankruptcy according to Musk himself. D.I. 10, ¶¶ 308-309. He did so despite having more than enough assets to have acquired Twitter outright, and Musk has since driven Twitter's valuation ever downward by treating the corporation as an extension of his personal preferences. *See, e.g.*, Ricker, T., *Musk's 44 Billion Twitter Now Valued at Just 9.4B*, The Verge, (9/30/2024) (reporting on Fidelity writing down its stake in Twitter by 79%).[5]; Katstrenakes, J. & Sato, M., *Elon Musk tells advertisers: 'Go fuck yourself'*, The Verge (11/29/2023) (reporting on Musk's warning that his stance could "kill the company").[6] This type of undercapitalization and bankruptcy risk is – as the California Court of Appeals held in *Relentless* – sufficient *as a matter of law* to establish a risk of an inequitable result, and is not a mere complaint about "potential difficulty a plaintiff faces collecting a judgment," as Musk characterizes it in his Objection. D.I. 134 at 9. And to the extent that the Central District of California held in 2003 in *Neilson* that California law requires more, subsequent California decisions, such as *Relentless*, show that to be an inaccurate statement of California law.[7] *See, e.g.*, *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, No. A161541, 2022 WL 1447615, at *4 (Cal. Ct. App. May 6, 2022) ("under California law, an inequitable or unjust result may be found without proof of wrongful intent").

## H.   Conclusion

Judge Burke's recommendation with respect to veil piercing was correct. Indeed, while Defendants argue the Court has discretion to consider forfeited arguments, the Court should not exercise discretion in favor of parties arguing, as a defense, that they successfully defrauded Plaintiffs. *See Gaudiosi v. Mellon*, 269 F.2d 873, 881 (3d Cir. 1959). The objection should be rejected.

---

[5] Available at https://www.theverge.com/2024/9/30/24258129/musks-44-billion-twitter-now-valued-at-just-9-4b-as-x.

[6] Available at https://www.theverge.com/2023/11/29/23981928/elon-musk-ad-boycott-go-fuck-yourself-destroy-x.

[7] Plaintiffs do not have the available space to address the other basis for their claim that an inequitable result could follow – the availability of a shell game with respect to responsibility for the acts of the agents Musk brought to Twitter from his other companies, which only underlines the prejudice of Musk's belated attempt to raise that as an issue for the Court's consideration.

| | |
|---|---|
| **OF COUNSEL** | */s/ Joseph L. Christensen* |
| | Joseph L. Christensen (#5146) |
| Akiva Cohen (*pro hac vice*) | CHRISTENSEN LAW LLC |
| Dylan M. Schmeyer (*pro hac vice*) | 1201 N. Market Street, Suite 1404 |
| Michael D. Dunford (*pro hac vice*) | Wilmington, Delaware 19801 |
| Lane A. Haygood (*pro hac vice*) | Tel: (302) 212-4330 |
| KAMERMAN, UNCYK, SONIKER & KLEIN P.C. | joe@christensenlawde.com |
| 1700 Broadway, 16th Floor | |
| New York, NY 10019 | |
| Tel: (212) 400-4930 | *Counsel for Wolfram Arnold, Erik Froese,* |
| acohen@kusklaw.com | *Tracy Hawkins, Joseph Killian, Laura Chan* |
| dschmeyer@kusklaw.com | *Pytlarz, and Andrew Schlaikjer* |
| mdunford@kusklaw.com | |

Dated: February 20, 2025

11