# Christensen Law LLC
1201 North Market Street, Suite 1404
Wilmington, DE 19801
(302) 212-4330

Joseph L. Christensen
joe@christensenlawde.com

March 24, 2025

**Via CM/ECF & Hand Delivery**

The Honorable Todd M. Hughes
J. Caleb Boggs Federal Building
844 N. King Street, Unit 31
Wilmington, DE 19801-3555

    Re:    *Arnold et al v. X Corp. et al*, Case Number: 1:23-cv-00528-TMH

Dear Judge Hughes:

Consistent with this Court's standing discovery order involving discovery disputes § (g)(iii) and instructions from chambers, Plaintiffs respectfully submit the following three-page letter in response to the Defendants' letter dated March 19, 2025 regarding the discovery issues in dispute.

                    Sincerely,

                    */s/ Joseph L. Christensen*

                    Joseph L. Christensen (#5146)

cc: All counsel of record (via CM/ECF)

It is unfortunate that Defendants structured their argument around a frivolous attack on Plaintiffs' counsel. It is even more unfortunate that they attempted to support that argument with what can only have been knowing misstatements and omissions of fact. Plaintiffs respectfully submit this letter to both correct the factual record and respond to Defendants' legal arguments.

1. **Background: Elon Musk's Extensive and Central Personal Involvement In, and Unique Knowledge of, the Events at Issue**

As the Court is aware, this litigation arises out of Musk's acquisition of Twitter – including his negotiation and execution of a Merger Agreement that required him to pay Twitter employees specified severance if he terminated them within a year after the merger, and his decision to nevertheless refuse to actually pay such severance when he did in fact direct such terminations. There is no dispute that Musk was extensively and personally involved in each of those decisions – and, in fact, was the sole decision-maker with respect to them. Indeed, in another litigation over a different payment (employee bonuses), Twitter is currently seeking sanctions against the plaintiff and his counsel for their decision to press claims that the bonus was mandatory despite Schobinger's previous advice that **_because Musk was Twitter's sole director whether or not to pay such bonuses was entirely at Musk's personal discretion_**. *See* Motion for Sanctions, D.I. 131 in *Schobinger v. Twitter*, Case No. 3:23-cv-03007 (N.D. Cal.), at 3., at 3.

That dovetails with other information developed in discovery with respect to the severance decisions at issue in this litigation. As Twitter headed towards its mass layoff, Julianna Hayes, who was then Twitter's Vice President of Corporate Finance, was tasked with making spreadsheets detailing the costs to Twitter of various potential severance packages for presentation to Musk so that he could personally decide how much severance Twitter would offer its terminated employees. Ex. 1 hereto at, 86:2-19, 90:18-22, 92:2-5.[1] Hayes also testified that Musk personally directed her (and others at Twitter) not to pay amounts due on various bills. *Id.* at 28:22-29:10. And Musk's personal, direct involvement is a prominent feature of both Joseph Killian's and Tracy Hawkins' individual claims in this action (which are not replicated in the arbitrations), and the commingling of assets, undercapitalization, and personal domination of Twitter that are at the core of Plaintiffs' veil-piercing claim (which is also not at issue in the arbitrations).

2. **Background: Discovery in the Arbitrations and the Parties' Correspondence**

Thousands of former Twitter employees, primarily represented by three different sets of counsel, have sued Twitter regarding their severance and related claims. On May 9, 2024, Twitter allowed one – and only one – of those counsel, Lichten Liss-Riordan, to conduct a limited deposition of Musk, restricted to a set of topics that Twitter has never disclosed to Plaintiffs and of which Plaintiffs are unaware. *See* Ex. 2 at 17:2-7; 62:4-11; 187:18-20. On the basis of that limitation, Musk's counsel restricted Ms. Liss-Riordan's questioning of Musk, precluding her from showing him exhibits or exploring areas she deemed relevant. *See, e.g., id.* at 175:19-176:24; 182:17-23; 185:12-22; 186:2-14; 325:14-21; 350:10-24; 351:7-21; 352:9-18; 354:17-355:14. Perhaps for that reason, Ms. Liss-Riordan's deposition left **_significant_** issues either entirely unexplored or insufficiently explored. For instance, Ms. Liss-Riordan was prevented from asking Musk about his understanding of the claims in these actions, *id.* 342:3-23, or about his public statements about his willingness to violate the law generally, *id.* 192:8-16. She did not ask any questions at all about veil piercing, an issue not raised in her clients'

---

[1] Two years into these litigations Twitter has, utterly inexplicably, yet to produce those spreadsheets.

Page 2

claims. She also did not ask any questions at all about other key subject areas that Plaintiffs are happy to provide detail on in *camera*.[2]

Plaintiffs' counsel noticed Musk's deposition in the arbitration, intending, based on their understanding of the parties' bellwether agreement, to take a single deposition of Musk for use in the arbitrations and litigations. Defendants opposed, arguing that topics related only to the Arnold litigation were not relevant to any deposition conducted under the bellwether agreement, and that any contrary argument was frivolous because the confidentiality provision in the arbitration agreement would *preclude* Plaintiffs from using in federal court any deposition testimony obtained in the arbitrations. The discovery panel accepted Defendants' arguments and limited Plaintiffs to two hours of deposition time with Musk, *specifically* not to include veil piercing issues relevant only to the litigations. (The panel allowed the parties to agree to extend that deposition to 4 hours if it would also cover veil piercing; both parties rejected that option. Plaintiffs' counsel did so because 2 additional hours is likely insufficient to address the volume of information related to Musk's multiple entities). Plaintiffs thus noticed Musk's deposition in this action.

Now, having succeeded in convincing the discovery panel to limit the deposition in the arbitrations in part by arguing that Plaintiffs could **not** use the arbitration transcripts in these litigations, Defendants take the precise opposite position here: that Plaintiffs cannot depose Musk in this action because they **must** use the arbitration transcripts, never mind that, at Defendants' insistence, they do not cover issues relevant to this litigation. And they do so while misrepresenting Plaintiffs' request; Plaintiffs **expressly conveyed** that if Defendants would agree that Plaintiffs could do so, they would take only a 5-hour deposition of Musk, leaving them with 7 total hours of deposition time. The Court should reject Defendants' sleight of hand.

**3. Defendants' Request Should Be Denied**

Given the space constraints, Plaintiffs cannot fully brief each of these issues. But, briefly:

**Defendants are judicially estopped from relying on the arbitration deposition as a reason to preclude Plaintiffs from deposing Musk.** It is well-settled that litigants cannot take one legal or factual position before one tribunal, and then adopt the directly contrary position in a second tribunal in order to argue for a different result. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 360 (3d Cir. 1996) (doctrine of judicial estoppel is not limited to same parties as prior proceeding and exists to protect the court from a litigant "playing fast and loose" with its positions). Particularly having succeeded on a request for a protective order in the arbitration in part by arguing that Plaintiffs could not use a deposition from the arbitration in this litigation, Defendants are estopped from relying on its availability as a reason to preclude Plaintiffs from deposing Musk in this litigation. *Id.* at 361 (judicial estoppel "is particularly appropriate in situations [] where the party benefitted from its original position" but does not require such a benefit).

**Musk is not a typical apex witness and the doctrine should not apply to his testimony at all**. The apex doctrine was intended to protect corporate witnesses deposed about corporate facts

---

[2] Musk is currently scheduled for a two-hour deposition in arbitrations filed by claimants represented by Claimant's counsel on April 4, 2025, at which Plaintiffs' counsel will be able to address some but not all of those issues. It would significantly prejudice Plaintiffs were Musk able to use this motion as an opportunity to obtain a "sneak peak" at – and thereby specifically prepare for – specific issues that will be raised at that deposition, beyond the general topic areas that the panel's order required the claimants to identify.

Page 3

in their capacity as corporate leaders. But Musk was pervasively involved in the facts and decisions at issue, acting as the ultimate decision-maker, such that his personal understandings and motivations are relevant and indeed crucial. In such circumstances, courts have no difficulty directing the deposition of even the highest ranking of executives and officials. *See, e.g. Sherrod v. Breitbart*, 304 F.R.D. 73, 76 (D.D.C. 2014) (directing deposition of Secretary of Agriculture where "[t]he Secretary alone has precise knowledge of what factors he considered and how they influenced his ultimate decision, so that information must come from him, not from third parties"); *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 789 (C.D. Ill. 2007) (directing deposition of sitting Governor of Illinois where "the Governor had a role in the decision"); *Freedom From Religion Found., Inc. v. Abbott*, No. A-16-CA-00233-SS, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017) (allowing deposition of sitting Governor of Texas where he was "a party to this litigation in his individual capacity" and his personal knowledge was central)..[3]

**The veil-piercing discovery alone will require several hours of testimony**. In his takeover of Twitter, Musk pervasively directed its activities to his own personal ends and commingled its assets with the assets of his other companies – most prominently Tesla and SpaceX. The extent to which Musk treats these disparate entities as a single asset pool has not been addressed in any previous deposition and will require significant deposition time. So will questions about the extent to which Musk undercapitalized Twitter and the availability (or unavailability) of assets by which he could have acquired Twitter without loading it down with debt that threatened its viability. As to each of these issues, there can be no dispute that Musk has unique and relevant knowledge that cannot be obtained from lower-level employees.

**There is no threat of harassment.** Finally, Defendants' counsel's personal attack on Plaintiffs' counsel's ethics is as unwarranted as it is uncivil. It is also *deeply* misleading. For example,[4] yes, Plaintiff's counsel identified in a Zoom meet and confer, and as a topic relevant to the discrimination claims in this action, Musk's willingness to rehire to DOGE a twenty-something employee, Marko Elez, who had been momentarily fired after it was discovered that he had publicly stated "I was racist before being racist was cool" and that he could not be paid to marry outside of his race. Plaintiffs' counsel did so, *expressly*, as a carve-out from a general agreement (proffered unprompted!) that Plaintiffs *would not* inquire as to anything related to DOGE's policy or cost-cutting efforts because those subjects were obviously irrelevant, no matter how interesting they might be to counsel in the abstract, and therefore it would be unethical to inquire into them at any deposition. Plaintiffs' counsel watched one of the Morgan Lewis partners representing Musk on that Zoom meeting go gray in the face as he heard, apparently for the first time, about this conduct that is relevant to Plaintiffs' discrimination claims. Plaintiffs therefore fully understand Musk's desire to avoid being questioned on that topic. But that does not excuse misrepresenting to the Court the contents of a meet and confer among counsel, let alone in service of a false substantive narrative that stands Plaintiffs' counsel's comments precisely on their head.

Defendants' counsel should be ashamed to have made this argument. And sanctioned for having done so.

---

[3] Indeed, because Musk was the decision-maker, there is no need to separately show the information is unavailable from lower-level employees; "[Musk] alone has precise knowledge of what factors he considered and how they influenced his ultimate decision, so that information must come from him, not from third parties." *Sherrod*, 304 F.R.D. at 76.

[4] This was not the only misrepresentation of Plaintiffs' positions in Defendants' letter, just the most professionally disturbing one.