```
1                IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3   WOLFRAM ARNOLD, ERIK        )
    FROESE, TRACY HAWKINS,      )
4   JOSEPH KILLIAN, LAURA CHAN  )
    PYTLARZ and ANDREW          )
5   SCHLAIKJER,                 )
                                )
6            Plaintiffs,        )
                                )   C.A. No. 1:23-cv-00528-TMH
7     v.                        )
                                )
8   X CORP. F/K/A TWITTER,      )
    INC., X HOLDINGS CORP. F/K/A )
9   X HOLDINGS I, INC. and ELON )
    MUSK,                       )
10                              )
             Defendants.        )
11                              )

12

13  EMMANUEL CORNET, JUSTINE DE  )
    CAIRES, GRAE KINDEL, ALEXIS  )
14  CAMACHO, JESSICA PAN, EMILY  )
    KIM, MIGUEL ANDRES BARRETO,  )
15  and BRETT MENZIES FOLKINS,   )
                                 )
16           Plaintiffs,         )
                                 )   C.A. No. . 1:23-cv-441-TMH
17    v.                         )
                                 )
18  TWITTER, INC.,               )
                                 )
19           Defendant.          )
                                 )
20

21

22

23                  Tuesday, April 15, 2025
                          1:32 p.m.
24                      Oral Argument

25
```

```
1                          844 King Street
                         Wilmington, Delaware
2

3       BEFORE: THE HONORABLE TODD M. HUGHES
        United States District Court Judge
4

5

6       APPEARANCES:

7

8

                        KATE BUTLER LAW LLC
9                       BY:  KATHERINE BUTLER, ESQ.

10                      -and-

11
                        LICHTEN & LISS-RIORDAN, P.C.
12                      BY:  BRADLEY MANEWITH, ESQ.

13
                        Counsel for the Plaintiffs Emmanuel Cornet,
14                      Justine De Caires, Grae Kindel, Alexis Camacho,
                        Jessica Pan, Emily Kim, Miguel Andres Barreto,
15                      and Brett Menzies Folkins

16

17

18                      CHRISTENSEN LAW LLC
                        BY:  JOSEPH L. CHRISTENSEN, ESQ.
19

20                      -and-

21                      KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
                        BY:  AKIVA COHEN, ESQ.
22

23                              Counsel for the Plaintiffs Wolfram
                        Arnold, Erik Froese, Tracy Hawkins, Joseph
24                      Killian, Laura Chan Pytlarz, and Andrew
                        Schlaikjer
25
```

1    APPEARANCES:

2

3

4                    BALLARD SPAHR
                     BY: BETH MOSKOW-SCHNOLL, ESQ.
5                            Counsel for the Press Coalition

6

7

8                    MORGAN LEWIS & BOCKIUS, LLP
                     BY:  JODY BARILLARE, , ESQ.
9                          T. CULLEN WALLACE, ESQ.

10                   -and-

11                   ASHBY & GEDDES
                     BY:  BRIAN BIGGS, ESQ.
12                   -and-

13                   WILLENKEN LLP
14                   BY:  KENNETH TRUJILLO-JAMISON, ESQ.

15

16                           Counsel for the Defendants

17

18

19                       _ _ _ _ _ _ _ _ _

20

21                      P R O C E E D I N G S

22

23        (Proceedings commenced in the courtroom beginning at

24    1:32 p.m.)

25

1              **THE COURT:**  Good afternoon again.  Please be

2    seated.

3              Okay.  We've got a couple of different things

4    to get through today, so I'm just going to take them in

5    order.  I will assume that whoever needs to get up, feel

6    free.  I want to deal with the sealed documents first.

7              And so I don't -- why don't the plaintiffs'

8    lawyers get up first and tell me what's the relevance of

9    these arbitration awards and why they need to stay in the

10   record and what your position is on sealing.

11             **MR. MANEWITH:**  Which, Your Honor, just to be

12   clear --

13             **THE COURT:**  Are you the press?

14             **MR. MANEWITH:**  No, I'm plaintiffs' lawyer --

15             **MS. MOSKOW-SCHNOLL:**  I am.

16             **MR. MANEWITH:**  -- for Cornet.

17             **THE COURT:**  Sorry.  Cornet.

18             I want Cornet first, then Arnold.

19             **MR. MANEWITH:**  That's why I came up here.

20             **THE COURT:**  Well, they're different documents,

21   and I think they may be different.  So you're the Cornet

22   plaintiffs?

23             **MR. MANEWITH:**  Yes.

24             **THE COURT:**  Okay.  We'll get to you.

25             **MS. MOSKOW-SCHNOLL:**  And, Your Honor, I

1    represent the Press Coalition.

2            **THE COURT:**  Okay.  Well, he goes first.  I'll

3    let them go first and then -- because your position may

4    become modified as we go through the argument.

5            **MS. MOSKOW-SCHNOLL:**  Okay.  Thank you, Your

6    Honor.

7            **THE COURT:**  You'll see.

8            **MS. BUTLER:**  Good afternoon, Your Honor.

9            Kate Butler, on behalf of the Cornet

10   plaintiffs.  I rise to introduce Brad Manewith, who will

11   be taking the arguments.

12           Thank you.

13           **THE COURT:**  Okay.  Thank you.

14           Do you all want to introduce your counsel?  Can

15   we do all this introduction first before we get into the

16   arguments?  Because, if you've seen, I don't sit here and

17   listen, I question.  So I'd rather just get the

18   introductions done, and let's move forward.

19           **MR. CHRISTENSEN:**  Good morning, Your Honor.

20           Joe Christensen, from Christensen Law, on

21   behalf of the plaintiffs in the Arnold case.

22           And with me, is my cocounsel, Akiva Cohen at

23   Kamerman Uncyk.  He will be making the argument today.

24           Thank you.

25           **MR. BIGGS:**  Good afternoon, Your Honor.

```
 1              Brian Biggs from Ashby & Geddes.  I represent

 2    Defendant in the Cornet case, but with respect to the

 3    motion to intervene only.

 4              With me is Kenneth Trujillo-Jamison from

 5    Willenken LLP, and he'll be speaking on behalf on the

 6    motion to intervene.

 7              THE COURT:  Okay.

 8              MR. BARILLARE:  Good afternoon, Your Honor.

 9              Jody Barillare from Morgan Lewis, on behalf of

10    the defendants in Arnold and Cornet.

11              With me today is my colleague, Cullen Wallace,

12    who will be taking the lead for defendants.

13              THE COURT:  Okay.  Thanks.

14              MR. BARILLARE:  Thank you, Your Honor.

15              THE COURT:  And then, the people -- the press

16    entities have a local counsel to introduce or...

17              MS. MOSKOW-SCHNOLL:  I am both local and

18    regular.

19              THE COURT:  Okay.

20              MS. MOSKOW-SCHNOLL:  Beth Moskow-Schnoll, on

21    behalf of -- do you want me to read out all my clients?

22              THE COURT:  No, no, no.

23              MS. MOSKOW-SCHNOLL:  No?

24              THE COURT:  You're representing all the --

25              MS. MOSKOW-SCHNOLL:  All the press.
```

1          **THE COURT:**  -- intervenors from the press.

2          **MS. MOSKOW-SCHNOLL:**  Your Honor, I did have a

3     question, though.  We filed a motion to join in for NPR,

4     and I don't think the Court has ruled on that, but --

5          **THE COURT:**  Okay.

6          **MS. MOSKOW-SCHNOLL:**  -- we do represent them as

7     well.

8          **THE COURT:**  Okay.  We will get it on the

9     docket.  It's granted on that, too.

10         **MS. MOSKOW-SCHNOLL:**  Okay.  Thank you.

11         **THE COURT:**  Not to intervene, just to

12    represent.

13         **MS. MOSKOW-SCHNOLL:**  Right.

14         **THE COURT:**  Yeah.  Okay.  So now, that we've

15    got that out of the way.

16         Cornet plaintiffs, why are these -- I know you

17    keep filing a ton of them.  I think I asked last time

18    around why they're relevant and why they should stay in

19    the record.  I have that same question because I, frankly,

20    failed to understand the relevance to me.

21         **MR. MANEWITH:**  Sure, Your Honor.

22         Bradley Manewith, on behalf of the Cornet

23    plaintiffs.

24         And they are relevant because they address the

25    same issues that are issue in the Cornet case.  Namely,

1    whether or not there's third-party beneficiary status or

2    breach of contract for the direct.  And so their

3    persuasive authority --

4         **THE COURT:**  Right.  So those are all legal

5    questions, right?

6         **MR. MANEWITH:**  Correct.

7         **THE COURT:**  And I, obviously, owe no deference

8    to the arbitration awards.  You are citing them as

9    persuasive authority?

10        **MR. MANEWITH:**  They are persuasive authority

11   just the same as in the Cornet case.  The Arnold report

12   recommendation would be potentially persuasive authority.

13   We understand you can give them as much weight or as

14   little weight as you see fit.

15        **THE COURT:**  And what discretion do you think I

16   have with regard -- can I just strike them if I don't, if

17   I'm not going to read them and use them as persuasive

18   authority?

19        **MR. MANEWITH:**  Well, I would say, no, Your

20   Honor, that you cannot just strike them.  We understand

21   that you may give them no authority, but to the extent

22   that we need to have a record on appeal going forward,

23   they are potentially, you know, persuasive to another

24   Court.

25             And so we do believe they are appropriately

1    before you.

2            **THE COURT:**  Well, if I strike them, they're

3    still a part of the record, you can just argue that they

4    were improperly stricken.

5            **MR. MANEWITH:**  We would still say that they

6    should not be stricken.

7            **THE COURT:**  I understand.  But I just want to

8    know, that's in my discretion, right?

9            You would have to argue abuse of discretion if

10    I don't find them -- if I don't find individual

11    arbitration awards in private cases to be at all

12    persuasive.  They are not another judge's ruling.  If they

13    were other judge's rulings and the like, I wouldn't need

14    them to be on the record.  They would be citeable as

15    precedent.

16            **MR. MANEWITH:**  Oh, we would say that they're no

17    different, though, than an administrative hearing.

18            If we were, for example, in a discrimination

19    case, and there was a ruling from the EEOC in an

20    administrative hearing, NLRB, again, they are authority,

21    which we can cite to.  They're appropriately before you.

22    They are clearly, in our minds, relevant to the issues to

23    see how other judicial officers or other officers would

24    decide the issues.

25            **THE COURT:**  Okay.  So here's the problem.  I am

1    not going to keep things in the record under seal.  So

2    these stay in.  They are coming -- the seal is coming off

3    with appropriate redactions, which I know that X objects

4    to, and I fail to see why I should keep them on the record

5    when I don't find them of any relevance to me whatsoever.

6         **MR. MANEWITH:**  Well, again --

7         **THE COURT:**  What's your position, though?  I

8    think you said in your papers that you don't object to

9    keeping them sealed.  You know, maybe I'm sitting at this,

10   looking at this from a different perspective because of

11   where I come from.

12        Appellate courts hate having sealed documents

13   in the record.  And I generally think that should be true

14   for trial courts, too, that if it's in the record, it is

15   going to be relied upon by the Court.  It should be open

16   to the public, absent national security information,

17   confidential business information, or personally

18   identifying information.

19        I think the first is obviously not there.  The

20   second, to the extent it's there, can be redacted.

21        So what's your position, if I keep them, on

22   whether they should be at least partially unsealed?

23        **MR. MANEWITH:**  Our position is that we take no

24   strong position that they shouldn't be unsealed.  Our only

25   request is that they have the redactions for the personal

1   identifying.  That's all.

2               **THE COURT:**  Okay.  Let me hear from them.

3           And this is just with the Cornet ones, because

4   I find a substantive difference with the Arnold

5   declaration, or the Arnold award, and we'll talk about

6   that separately.

7               **MR. WALLACE:**  Understood.  Thank you, Your

8   Honor.

9           I don't disagree with your assessment that

10  those continued filings of these arbitration awards are

11  not relevant, especially in the context we're talking

12  about here, which is motion to dismiss under Rule

13  12(b)(6).  They're not cited in the complaint.  No one is

14  seeking to ask the Court take judicial notice of them.

15          I think it is a stark contrast between these

16  awards and the continual references to Judge Burke's

17  Report and Recommendation, which was on the same issues or

18  similar issues at the 12(b)(6) stage, so a wholly

19  different situation.

20          The Court has inherent powers, as we explained

21  in our brief, to strike these improvident and irrelevant

22  arbitration awards off of its docket.

23          I think what's become readily apparent,

24  following the hearing we had back in January when I raised

25  the issue about the continual filing of these, and it was

1    discussed that they were under seal, therefore, there was

2    no harm.  The media comes out of the woodwork now, and now

3    they want to unseal them and see everything to do with

4    them.

5              So our position, obviously, is they are

6    irrelevant.  They are being submitted in the context in

7    violation of the local rules, as improper sur-replies.

8    They're confidential to the parties' agreement.  So we

9    would respectfully request they be struck.

10             Alternatively, as Your Honor alluded to, if

11   they do -- if they are unsealed for any reason, we would

12   ask that all personal identifying information, including

13   information regarding people's salary, the way that any

14   damages were calculated, the amount of any damages, and

15   all that information be stricken from the record, and that

16   there be an order issued that people who seek leave to

17   file these irrelevant documents or that people not file

18   them anymore, absent some form of leave going forward to

19   control this, so we're not here again.

20             Alternatively, we're just going to continue to

21   see them, then we're going to be compelled to file them --

22             **THE COURT:**  We're solving this today.

23             **MR. WALLACE:**  Understood, Your Honor.

24             **THE COURT:**  After I make my decision and issue

25   the order, so maybe not exactly today, but shortly.

1        If I decide that they have some minimal

2   relevance, I'm going to keep them on the record.  So I

3   understand you think they should stay under seal

4   altogether.

5        But do you have any authority for the notion

6   that just because they're agreed to be confidential under

7   the arbitration agreement, that I have to keep them

8   entirely confidential, or do you think I have discretion

9   to unseal them and remove all the stuff you just said,

10  which I think I would agree with anything -- like that

11  seems like it would have to be redacted.

12        **MR. WALLACE:**  Okay.  Then, Your Honor, as much

13  as I like the answer to be that there's something other

14  than that, I think you have in inherent discretion to

15  control your docket, control the parties' conduct.

16        So, clearly, I think you have the power to do

17  as you see fit in that regard within the confines of the

18  parameters you discussed.

19        **THE COURT:**  Okay.  Do you have the -- wait, do

20  you have something?

21        **MR. MANEWITH:**  So that would be -- yeah.

22        **MR. TRUJILLO-JAMISON:**  So might I briefly on

23  the Press Coalition motion --

24        **THE COURT:**  Okay.  We're still talking about

25  this.  I think I'm trying to get through all the stuff

1    with the parties, so I can ask the press a more directed

2    question because I think they, you know, may have

3    different responses depending on that.

4         Do you also represent X for the Arnold cases?

5         **MR. TRUJILLO-JAMISON:**  Yes, Your Honor.  I

6    represent X with respect to the Arnold cases and the

7    Cornet cases, but when it comes to the press, we have

8    conflict of interest.  And so whatever the press arguments

9    are, are kind of --

10        **THE COURT:**  This is going to be a little loose.

11   I will give you a chance to argue on opposing their

12   motions to intervene, but I'm trying, really, to get to

13   the sealing, not the motion to intervene.

14        So the Arnold declaration -- or not

15   declaration -- the Arnold award is different.  And it's

16   still under seal, I think, so I'm not going to go --

17   right?

18        You filed an arbitrational award in Arnold

19   relating to a discovery issue, not these other ones,

20   right?

21        **MR. WALLACE:**  In Arnold, I believe the posture

22   of Arnold, and I -- there's a lot of items --

23        **THE COURT:**  I have an arbitration award that

24   was filed before me in Arnold that purports to talk

25   about -- I don't know what I can say, but rules regarding

1  a deposition.

2          Do you understand what I'm talking about?

3          I read this.  It's on the docket in Arnold.  So

4  I didn't admit -- I'm not AI.  I don't hallucinate

5  answers.  Maybe I do, but just not in the way AI does.

6          Look, somebody filed in Arnold, I assume it was

7  from X, an arbitration award that set forth an

8  understanding of how this discovery would proceed with

9  regard to Mr. Musk.  That is a different kind of award

10  than -- I think is set to be used.  Maybe you didn't file

11  it as part of an official filing.  Maybe you attached it

12  to one of your discovery letters, because I understand

13  there's a discovery dispute brewing on that issue.

14          To the extent you want me to rely on that

15  arbitration award as reflecting an agreement of the

16  parties as to how discovery would proceed with regard to

17  that topic, that award is going to be unsealed because I

18  will have to rely on it.  And so I wanted to touch on

19  that, too, even though it is not specifically the Cornet

20  ones.

21          **MR. WALLACE:**  And I'm, admittedly, Your Honor,

22  not as up-to-speed with that.  I was more familiar with

23  the amicus brief that was filed, but I wasn't involved in.

24          **THE COURT:**  Who filed that?

25          **MR. WALLACE:**  The Cornet plaintiffs filed an

1    amicus.

2            **THE COURT:**  No, no.  I understand.  I'm talking

3    about in Arnold.  Somebody filed something in Arnold.

4            **MR. WALLACE:**  Okay.  That would be us, I

5    suppose.  That would be the defendants.

6            **THE COURT:**  Okay.

7            So I guess I'm going to have to speak

8    hypothetically, or maybe we'll take a break, and you two

9    can talk about it, so you can figure out what I'm talking

10   about.

11           Let's just stick with the Cornet awards for

12   now.  I think I understand your position.

13           Do you want to --

14           **MR. COHEN:**  Just very briefly, Your Honor.

15           **THE COURT:**  You're the Arnold.

16           **MR. COHEN:**  I am.  Akiva Cohen from Kusk.  I am

17   the attorney for the Arnold plaintiffs.

18           The Cornet plaintiffs filed an amicus brief

19   that included these arbitration awards.

20           I'm in a little bit of a compromised position

21   because, though the rules for this district say sealed

22   filings should be provided to me, I haven't seen them.  So

23   that's a problem.

24           **THE COURT:**  Are these all the ones from Cornet?

25           **MR. COHEN:**  These are all the ones from Cornet.

1          THE COURT:  Okay.  Then you should get them if

2     they want to try to get them in your case's amicus.  I

3     don't think I granted that, right?

4          MR. MANEWITH:  That was stricken already.

5          THE COURT:  What?

6          MR. MANEWITH:  That was stricken already, Your

7     Honor, so they're out.

8          THE COURT:  Oh, okay.  Oh, so those are out.

9          MR. MANEWITH:  Those are out, the ones --

10         THE COURT:  I thought I was denying -- I

11    thought I denied your ability to participate as an

12    amicus --

13         MR. MANEWITH:  In Arnold.

14         THE COURT:  -- in Arnold last time.

15         Okay.  So you don't need to see them.  They're

16    not in.

17         MR. COHEN:  Okay.  Good.  And then --

18         THE COURT:  The Arnold one I'm talking about,

19    you're aware of.

20         MR. COHEN:  Yes.  So that was the discovery

21    panel ruling on a discovery dispute.

22         THE COURT:  So let me ask you:  Do you think

23    that is relevant to any discovery dispute we are going to

24    have here?

25         I mean, you may not agree that it's binding on

1    me, but do you think it's something I need to look at?

2              **MR. COHEN:**  I think it is something that they

3    intend to make arguments on the basis of.

4              **THE COURT:**  Okay.

5              **MR. COHEN:**  And, therefore, it has to come in

6    the same way.  Frankly, anything that somebody wants to

7    make an argument on the basis of, whether you ultimately

8    think that that's persuasive or not, really doesn't, in my

9    view, bear on whether or not it has to stay on the docket.

10             If somebody is making an argument based on it,

11   it has to stay on the docket.  They are making an argument

12   based on it; therefore, it has to stay on the docket.

13             **THE COURT:**  And do you have a position on

14   whether it should stay sealed or not?

15             **MR. COHEN:**  So, in my view, private agreements

16   by the parties have absolutely no power within the Court's

17   sealing authority to seal a document on the record in a

18   court case.  It has to have good cause independent of any

19   private agreement by the parties.

20             So if there's good cause for particular items

21   within that agreement, in that decision, I don't think

22   there is by the way, then it should be sealed.  And if

23   there isn't, then it shouldn't be.

24             And that goes for the arbitration awards, that

25   goes for every single one of these documents.  There has

1    to be independent good cause to seal independent of any

2    private agreement.

3            **THE COURT:**  Okay.  Thank you.  And the -- wait,

4    who are you?

5            **MR. MANEWITH:**  Cornet plaintiff.

6            **THE COURT:**  Okay.  What do you want to say?

7            **MR. MANEWITH:**  Just, if I may, quickly respond

8    to a few things that are raised by X Corp.

9            Again, we believe that the arbitration awards

10   are persuasive authority.  As Your Honor noted, they are

11   legal arguments.  There's legal analysis of the

12   third-party beneficiary that is directly on point for Your

13   Honor.

14           **THE COURT:**  Okay.

15           **MR. MANEWITH:**  With respect to confidentiality,

16   and the question about confidentiality, I would just note

17   that we find it somewhat hypocritical, I guess, that X

18   Corp. is claiming confidentiality -- is a breach of the

19   confidentiality previsions of the arbitration agreement in

20   opposing our use of them considering that, as we've

21   pointed out, X Corp., in and of itself, has used the

22   decisions of arbitrators in one case to another to another

23   in a discovery dispute.

24           Over 20-plus times they've cited to, you know,

25   different arbitrators' decisions before other arbitrators.

1    They were the first party to actually file a NOSA

2    regarding one of the arbitration awards.  And as it deals

3    with the Arnold case, they're sharing depositions and

4    other materials from our cases -- our clients' cases

5    without even notifying us.

6              And so, to the extent that they're claiming

7    that there is this order from an arbitrator on

8    confidentiality, we weren't even given notice.  We weren't

9    provided that.  We weren't able to intervene.

10             So it's clearly the parties' agreement

11   encompasses the use of these materials across all of our

12   cases.

13             **THE COURT:**  Okay.  Thanks.

14             Can I hear from the lawyer for the press.

15             And, really, I just have a question.

16             If I strike all the declarations in the

17   Cornet -- I keep saying "declarations" -- all the awards

18   in the Cornet case from the record because I do not find

19   them relevant, and I conclude that they were improperly

20   filed, and they're not part of the record, does that moot

21   your motion?

22             **MS. MOSKOW-SCHNOLL:**  No.  I mean, Your Honor,

23   we would argue that you can't put the genie back in the

24   bottle.

25             **THE COURT:**  Okay.

1          **MS. MOSKOW-SCHNOLL:** I mean, they've been --

2          **THE COURT:** But I don't agree with that. So if

3     I strike them from the record, then there's no -- they're

4     not part of the record anymore, you don't have access to

5     them.

6          Because I do agree. If they say on the record,

7     at least part of them is being made public, I don't even

8     know if I have to grant your motion to intervene. If I

9     make them public, you can just go on the docket and get

10    them.

11         I'm not going to -- it's one or the other.

12    Either they stay on the docket and they're properly

13    redacted and made public, or they're stricken. I have,

14    from the start, not found these arbitration awards on the

15    issues before me on the motion to dismiss relevant in any

16    way whatsoever.

17         And I expressed that at the last hearing on

18    this case. They keep coming in. I didn't ban you from

19    doing it, but I'm not going to read them. I am not going

20    to read them. And if I'm not going to read them, they're

21    not relevant.

22         You can preserve an objection on the record to

23    that position, and, on appeal, if you want to say that I

24    abused my discretion in not reading and not looking at

25    private arbitration awards to determine whether your

1    complaint states a claim on the legal grounds in this

2    court, then you can preserve that objection.

3              But I'm not going to rely on them, I'm not

4    going to look at them.  And so, if they're not properly

5    part of the record, then I don't see any reason for the

6    press to get ahold of private arbitration awards.

7              That is in the Cornet case.  I know you didn't

8    move to intervene in the Arnold case, I don't really think

9    you need to move to intervene there.

10             We're going to talk about that a little bit

11   later.  More -- maybe you need a small break to go look

12   into that.  The one filed there, which you may not even

13   know about, but you've heard today, seems to be something

14   that suggests ground rules for discovery, that one party

15   is going to want me to hold to, and the other one is not.

16             And if I have to review that to reach a

17   decision on the discovery dispute, then that's going to be

18   in the record, and you will get access to that.

19             **MS. MOSKOW-SCHNOLL:**  Your Honor, I just want to

20   make the point, though, that once -- the Third Circuit

21   authority is pretty clear that once something is actually

22   filed on the docket, it becomes a judicial record, and

23   then the presumption applies that there should be free

24   access to that document.

25             **THE COURT:**  I understand your position, but if

1    I view that those documents were improperly filed on the

2    record and should never have been filed, and that because

3    they are private arbitration agreements, there is an

4    interest in not releasing them, you know, you can take

5    that up, too.

6            **MS. MOSKOW-SCHNOLL:**  Well, but --

7            **THE COURT:**  You can take all this up.  I'm not

8    going to give these -- the bottom line is, these

9    arbitration awards in the Cornet case are almost -- I'm

10   not ruling from the bench, but I am essentially ruling

11   from the bench.  I will write a small order.

12           I'm going to strike them from the record as

13   being improperly filed, as not being relevant, and,

14   therefore, they're going to be removed from the docket.

15   And I will deny your motion to intervene as moot, most

16   likely, because I don't think you have the entitlement to

17   documents that should never have been made part of the

18   public record.

19           I understand your point, that once they're

20   there, you should get them.

21           **MS. MOSKOW-SCHNOLL:**  And they have been there

22   for a long time.  I mean, the first one was filed in

23   November of 2024.  So they have been on the docket for

24   months and months now.

25           **THE COURT:**  Well, they haven't been there --

1    maybe you think that's a long time.

2              I move in the appellate world.  November '24 to

3    April of '25 is a very short period of time.  And so I

4    don't think they have been there on the docket all that

5    long.

6              But do you have anything else you want to say?

7    I read your papers.  If these documents were going to stay

8    on the record, I agree with you entirely, you get access

9    to them.  But I don't think they're relevant, and I don't

10   think they belong in the case, and so I'm not going to

11   give you access to documents that I think are irrelevant.

12             **MS. MOSKOW-SCHNOLL:**  So you're using the

13   relevance argument as far as the motion to strike, right?

14   Because relevance is really not an issue as far as whether

15   or not something is a judicial record.

16             **THE COURT:**  Right.

17             **MS. MOSKOW-SCHNOLL:**  Okay.  I just wanted to

18   make that clear.

19             **THE COURT:**  No, no.  I just don't think the

20   relevance goes to your argument.  I just think that if

21   they're not actually part of the record, then you have no

22   right to access them.

23             I understand your point that you can't pull

24   back access by removing them.  I don't necessarily agree

25   with that.  I think I have a good reason to do that.

1              Do you have anything else?

2              **MS. MOSKOW-SCHNOLL:**  Yeah.  I mean, just the

3    reason that the press wants access to these is because

4    they are relevant to current events, and the Court -- even

5    if you are determining that you want to strike them, I

6    mean, they're relevant for the purpose of people being

7    able to see, well, what did they say?  Why does the Court

8    deem them not to be relevant?  It's all part of that whole

9    Sunshine.

10             **THE COURT:**  Okay.

11             **MS. MOSKOW-SCHNOLL:**  Letting everybody see

12   what's going on in the case.

13             **THE COURT:**  Okay.  I understand.

14             **MS. MOSKOW-SCHNOLL:**  I see that I should stop

15   talking.  Okay.  Thank you, Your Honor.

16             **THE COURT:**  We've got a lot to get to on the

17   objections to the magistrate's R&Rs on this stuff.

18             Do you want to -- why don't we do that and see

19   where we are?  I want to resolve the Arnold award, too, or

20   at least get some understanding of where we are on that

21   because that was filed through you all.

22             And so, in some sense, it's a little

23   hypocritical for you to file.  In that case, an objection

24   in these cases, but I do understand there are different

25   reasons for filing them.

1          And, in Arnold, it seems very likely that I'm

2   going to be asked to look at that and see whether it

3   informs a decision I have to make.

4          And the ones filed in Cornet, I do not have to

5   look at to make the decision I'm going to make in Cornet

6   on the motion to dismiss.

7          **MR. WALLACE:**  Understood, Your Honor.

8          If I could have five minutes and come back and

9   be prepared to discuss that with you.

10         **THE COURT:**  Okay.  Yeah.  Do you want to take

11  five minutes, and then we'll -- do you all have something

12  else before -- because I'm going to come back and finish

13  this, and then we'll go straight into the R&R.

14         We have plenty of time, but I am taking a train

15  back to D.C. this afternoon, so...

16         **MR. COHEN:**  Okay.  Good.  Because I am taking a

17  flight back to Orlando this afternoon, too, so...

18         **THE COURT:**  Let's take another five minutes,

19  and we'll be back.

20      (Whereupon, a recess was taken.)

21         **THE COURT:**  Please be seated.

22         I realized I didn't let you talk about the

23  press motion.  Do you have anything?  Why don't you just

24  tell me if what I told them is -- what I'm probably going

25  to do is okay with you?

1          **MR. TRUJILLO-JAMISON:**  Your Honor, I would

2     agree with your analysis.  The only small thing I would

3     add is that because the documents were improperly in the

4     record, that that doesn't make them filed in connection

5     with a non-dispositive motion, such that the judicial

6     records would apply, and the right of the public access

7     would attach.

8          **THE COURT:**  Okay.

9          **MR. WALLACE:**  Your Honor, thank you for the

10    brief recess.

11          I have actually conferred with Mr. Cohen.  And

12    we will agree to strike that document from the record,

13    subject to further negotiations concerning the contents of

14    the document.

15          And Mr. Cohen is reserving the right to refile

16    it, if he determines that it's beneficial to his position

17    in connection with the subject.

18          **THE COURT:**  If either of you want to point to

19    that for what I suspect is going to be a discovery

20    dispute, it has to be -- I would ask you not to bother

21    with trying to file it under seal.

22          Just file it with whatever redactions you think

23    are appropriate if you're going to ask me to look at it

24    because I'm not going to file it under seal.

25          **MR. WALLACE:**  Understood, Your Honor.

1          **THE COURT:**  Okay.  Thank you.

2          Okay.  So let's get to the objections to the

3     R&Rs.  Let's not do them all at once.  Let's do them back

4     and forth on the first one, which is the third-party

5     beneficiary breach of contract, the fraud one.

6          We'll do that, and then we'll go on to the next

7     one, which is all about whether you can pierce the veil

8     and get to Mr. Musk personally.  We'll do that one second.

9          So why don't we have X go first on your

10    objection because I think you have more objections than

11    they do on the breach of -- well, you all have objections

12    to all of them -- but, yeah.

13         By the way, I have read your papers.  I

14    understand all the issues, so I don't need to know the

15    facts.  You don't need to recite to them.  If I have

16    questions, I'll ask you about them, so just get straight

17    to your objections to Judge Burke's Report and

18    Recommendation.

19         **MR. WALLACE:**  Thank you, Your Honor.

20         So as to the no third-party beneficiary issue,

21    Judge Burke granted motion to dismiss with prejudice on

22    that, so I'll go to the next issue, which is breach of

23    contract and promissory estoppel.

24         I think it's imperative that when we're looking

25    at breach of contract, promissory estoppel claims, we

1    focus on what the alleged contracts are as asserted in the

2    complaint.

3        There's three primary docs at issue that I

4    referred to and defined in the complaint.  There's the

5    severance stability promise, which is 6.9(a) of the merger

6    agreement.  There's the acquisition FAQ, which was issued

7    shortly after the merger agreement.  It just describes the

8    merger agreement.  And there's the severance policy

9    e-mail, the May 13, 2022 e-mail.  I'm using those

10   definitions straight from the complaint.

11       In paragraph 326 of the complaint, the

12   plaintiff argues that the severance policy e-mail and

13   related communications were the subject contract here.

14   Severance policy e-mail simply sets forth the general

15   proposition that severance then -- that Twitter's then

16   current severance policy -- not policy, but its current

17   severance plan provided for the payment of certain

18   benefits in the event of position elimination, and it was

19   done generally speaking -- or conveyed generally speaking.

20       It doesn't say, as alleged in the complaint,

21   anything about the merger agreement, about given employees

22   remains employed, prior to closing the merger and after

23   closing the merger, they'd be entitled to any level of

24   severance benefits.  It doesn't reference the merger at

25   all.  It doesn't mention anything about remaining

1    employed.  This is a one-off e-mail from May 13, 2022,

2    talking about Twitter's then current general severance

3    position.

4              So we take the position as it's not a clear

5    definite promise or contract that can be relied upon or to

6    form a contract at all.  And, therefore, the breach of

7    contract, promissory estoppel claims should be dismissed.

8              The promissory estoppel claim has one nuance,

9    in that it refers to the severance stability promise as

10   the promise.  The severance stability promise is 6.9(a) of

11   the merger agreement.

12             So, again, it's just looking back at the merger

13   agreement and saying that the merger agreement says

14   they're entitled to certain benefits, and therefore,

15   entitled to his rights.

16             But as Judge Burke correctly found, the

17   plaintiffs are not third-party beneficiaries under the

18   merger agreement, and, therefore, they have no rights to

19   recover there.

20             So for that additional reason, the promissory

21   estoppel claim should be dismissed.

22             There are two plaintiffs here, Tracy Hawkins

23   and Joseph Killian, who both voluntarily resigned their

24   employment.  That's not in dispute.  The first amended

25   complaint completely discusses that fact.

1          There was a lot of ink spilled in the Report

2    and Recommendation and otherwise regarding whether or not

3    they were constructively discharged, which is the

4    allegation.

5          It's our position that -- defendants' position

6    that, irrespective whether they were discharged or not,

7    they're not entitled to severance payments for a position

8    elimination.

9          So even if the severance policy e-mail is

10   determined to be a contract or a promise of some sort, it

11   only applied in the instance of a position elimination.

12         To resign your employment is not a position

13   elimination or any definition.  And, therefore, reading

14   the terms and words, which have to have meaning, at the

15   very least, the severance claims of those two individuals

16   must be dismissed.

17         Now for the fraud claim.  The fraud claim is a

18   little confusing in the way that it's presented, in that

19   both Twitter and Mr. Musk moved to dismiss the fraud

20   claim.

21         Judge Burke dismissed, without prejudice, the

22   fraud claim as to Twitter, and no objection was filed as

23   to that fraud claim.  So that decision stands.  Assuming

24   there's no, you know, clear error, which there clearly

25   isn't.

1          As to Mr. Musk's motion to dismiss the fraud

2    claim, Judge Burke also granted that motion without

3    prejudice.  Confusingly and inexplicably, in an objection

4    to that decision, the plaintiffs argue that it shouldn't

5    have been dismissed because they prevailed on Twitter's

6    motion to dismiss the fraud claim, which is not true.  And

7    they can, therefore, prevail on Musk's motion to dismiss

8    through a theory of vicarious liability.

9          They do this despite the fact that, in their

10   response to the motion to dismiss in Paragraph 2, they say

11   plaintiffs adequately pled their fraud and wage theft

12   claims directly against Musk.  They repeat that same

13   language throughout their brief, and, thus, Judge Burke

14   found that they weren't asserting those claims through a

15   theory of vicarious liability.

16         And, again, that's the problem where we face

17   all this issue with vicarious liability taking

18   inconsistent positions, from their complaint, to the

19   briefing, to anything else where no one can tell when

20   they're asserting, or where, against whom, or anything.

21   That's the issue with the notice pleading where we're

22   having here.

23         In any event, the vicarious liability claim for

24   fraud can't stand because, one, the claim against Twitter

25   has been dismissed already, so there is nothing to be

33

1    vicariously liable for.  And two, they didn't plead it

2    that way.

3            But also, the entire fraud claim is based

4    solely on one allegation that, upon information and

5    belief, Musk allegedly, you know, intended Twitter to

6    communicate details concerning Section 6.9 of the merger

7    agreement.

8            As Judge Burke correctly found, there's no

9    particularity stated with respect to any allegations

10   concerning the fraud allegations and Mr. Musk.  Therefore,

11   it does not satisfy the required pleading, particularly,

12   pleading requirements under 9(b).

13           As Judge Burke says, they're conclusory.

14   There's no concrete facts.  There's bald assertions.  We

15   agree to all those things.  They didn't adequately plead a

16   claim of fraud -- plausibly plead a claim for fraud

17   against Mr. Musk correctly.

18           Therefore, the fraud claim should be dismissed.

19           **THE COURT:**  Well, on the two specific

20   individuals, I understand that they resigned, but had made

21   allegations of constructive discharge.  And I hear your

22   argument on position elimination.

23           What if, instead of them resigning, Mr. Musk

24   had, or whoever the management was, I don't know -- let's

25   just say "X" and make it easier.  X told these two

1    individuals, "Do these things," they objected, said, "We

2    won't do it," and he fired both of them.

3                    Would that be a position elimination?

4                    MR. WALLACE:  No, Your Honor.  That would be

5    termination for cause as opposed to position elimination,

6    which has a specific definition under the law, in essence.

7                    THE COURT:  And your view is that even if the

8    severance policy applies, and I don't agree with you on

9    the breach of contract and all the like, that there's a

10    difference between people entitled to severance under the

11    policy and people who are discharged for cause.

12                    MR. WALLACE:  Yes, Your Honor.

13                    THE COURT:  Okay.

14                    MR. WALLACE:  Similar to people who voluntarily

15    resign as part of the fork-in-the-road e-mail we talked

16    about, I think, last time, I also addressed today.  That's

17    not a position elimination.

18                    So even if you take the contract, as you say,

19    and say, "This is a contract.  This is enforceable.  We

20    have to enforce it according to the terms," then, it says

21    position elimination very clearly.

22                    So I think that leaves --

23                    THE COURT:  I guess my question is:  How do we

24    know that's necessarily true?

25                    I mean, couldn't that mean that X could have

1    come in, and for all these people that should have got --

2    or would have gotten severance because their positions

3    were eliminated, instead of saying, "Your position's

4    eliminated," they said, "You're fired for cause," and that

5    gets them out of the severance agreement?

6            In other words, I'm not suggesting this is true

7    or that there's an allegation to the fact.

8            **MR. WALLACE:**  Right.

9            **THE COURT:**  Appellate judges ask hypotheticals.

10   They're hypotheticals.

11           But if they're trying to basically mask their

12   underlying intent to eliminate positions by saying it's

13   for cause; even though, it's really just position

14   elimination, and they don't want to pay severance.

15           **MR. WALLACE:**  I think that's a different case.

16   I also think that there may be additional facts we need to

17   develop concerning those issues, including whether the

18   position was truly eliminated.

19           Was someone hired to replace the person?

20   Positions continue to exist.  All things of that nature.

21           But here, I think there's, you know, kind of

22   three types of plaintiffs, which I don't think there's any

23   dispute.  They're individuals who were laid off as part of

24   a mass layoff November 4, and subsequent mass layoffs who,

25   arguably, maybe can say their position was eliminated.

1              Now, whether or not that -- even if it's found

2      to be a contract -- applies in the situation of a mass

3      layoff, I don't know that I would go that far because I

4      think there's still a nuance there.

5              But I think we're getting farther away from the

6      nuance the more we go towards you were fired or you

7      resigned because you didn't want to take some action, and

8      that's not a position elimination.

9              **THE COURT:**  Okay.

10              **MR. WALLACE:**  I think the final thing, before

11      veil piercing, would be the wage theft, which, again, I

12      think is rather confusing.  They're wage theft claims

13      asserted --

14              **THE COURT:**  Is this one the second?

15              **MR. WALLACE:**  I think so.  But I think so was

16      fraud.  So --

17              **THE COURT:**  Right.  I --

18              **MR. WALLACE:**  Okay.  Yeah.

19              **THE COURT:**  Let's just go do them all, then,

20      once you started done that road.

21              **MR. WALLACE:**  Okay.  Yeah, it's hard to keep

22      track of what's what, so I apologize for that.

23              The wage theft claim -- there are three

24      claims -- claims asserted under three state laws, Texas,

25      New York, California.  Magistrate Judge Burke found that

1    there's no prior action for wage theft under Texas law and

2    dismissed that claim.  There's been no objection filed as

3    to that claim.  Presumably, it's gone.

4            In New York and California, Judge Burke found

5    that, again, the plaintiffs failed to plead facts to

6    establish that Mr. Musk was plaintiffs' employer as

7    required to establish direct liability against him under

8    New York and California law.

9            In response --

10   **THE COURT:**  The claims as to X are still in the

11   case, there's no motion to dismiss on those, right?

12   **MR. WALLACE:**  There is a motion to dismiss on

13   those.  You're correct, Your Honor.  You're correct on

14   that.  I apologize.

15   **THE COURT:**  So now, you're just purely talking

16   about piercing the veil.

17   **MR. WALLACE:**  Well, this would be --

18   **THE COURT:**  I didn't really want to go through

19   this claim by claim, I wanted to know your underlying

20   objection to the legal test for piercing the veil and why

21   or why not there weren't sufficient allegations in the

22   complaint on that because I think this is a very unclear

23   issue, and I think -- I mean, Judge Burke looked at it and

24   he ruled.  Let me say this.

25           I changed my mind again.  I don't want to talk

1  about this.  We're going to talk about this differently.

2  It is such a distinct issue, and I'm going to lose track

3  of what you just talked about.

4         So you've talked about breach of contract;

5  you've talked promissory estoppel; you've talked about

6  fraud.

7         Is there anything else with regards to the

8  first, what I'm calling the first, Report and

9  Recommendation you want to raise?

10        **MR. WALLACE:**  I don't believe so, Your Honor.

11  I think that covers all the claims.

12        **THE COURT:**  Okay.  Let's hear from...

13        **MR. COHEN:**  Thank you, Your Honor.

14        Just a reminder, I'm Akiva Cohen.  Let me

15  address --

16        **THE COURT:**  I want to try to keep this

17  straight.

18        **MR. COHEN:**  Yes.

19        **THE COURT:**  You are the Arnold plaintiffs.

20        **MR. COHEN:**  I am the Arnold plaintiffs'

21  attorney.

22        What I'd like to do, with Your Honor's

23  permission, is first address the issues that Mr. Wallace

24  brought up and then move into the third-party beneficiary

25  issue that he didn't touch.

1              THE COURT:  Okay.

2              MR. COHEN:  So let's just go sort of piece by

3    piece.

4              Position elimination, which has come up a

5    little bit, is a wholesale red herring.  It has nothing to

6    do with anything.

7              Let's just back up a step.

8              What Twitter told these people was, "Your

9    severance cannot be changed from our existing policy in

10   any way that makes it less than our existing policy."

11             And then, when people said, "Well, what's the

12   existing policy," they sent out an e-mail that said,

13   "Well, a good general way to describe it is, in the event

14   of position elimination, you get the following things."

15             That does not mean that the promise -- that the

16   severance couldn't be less than what was available under

17   the prior policy was limited to situations of position

18   elimination.

19             THE COURT:  So your view is that the prior

20   policy included firings for cause.

21             MR. COHEN:  It did, in fact.  We didn't plead

22   it in the complaint because we don't need to plead

23   evidence, but we have their severance policy matrix that

24   has, you know, mutual separation, and all sorts --

25             THE COURT:  Where would you put -- I mean, I

1    don't tend to view constructive discharge -- constructive

2    discharge isn't fired for cause.  What bucket would you

3    put that in?

4            **MR. COHEN:**  I would put it under a firing

5    without cause.  That's what it is.  It's somebody who was

6    terminated without cause.

7            **THE COURT:**  I mean, in the federal employment

8    world that I do happen to know that, is where it comes in.

9    If you're a federal employee and are forced to resign as a

10   constructive discharge, it's considered an appealable

11   offense.

12           **MR. COHEN:**  Correct.  And --

13           **THE COURT:**  You know, that's how I feel.

14           **MR. COHEN:**  Yes.  And that's how these state

15   laws treat it as well.  And so, to whatever extent they

16   were entitled to severance for a termination under

17   Twitter's prior policy, they are entitled to severance

18   under this policy.

19           The same, by the way, is true for the folks who

20   got fired for not being willing to say that they were

21   going to work hardcore.

22           And, frankly, I will tell you --

23           **THE COURT:**  I get it.  The explanation e-mail

24   can't reduce the rights they already had.  That's at least

25   your allegation.

1              **MR. COHEN:**  Exactly.

2              **THE COURT:**  Okay.

3              **MR. COHEN:**  And so to the extent --

4              **THE COURT:**  For the two people, you think it

5    makes no difference whether they're termed, constructive

6    discharge, or whatever?

7              **MR. COHEN:**  Correct.

8              **THE COURT:**  Now, do we have -- I don't recall

9    if this was specifically an issue.

10             Do we have a dispute about people that

11   voluntarily resigned?

12             **MR. COHEN:**  No.

13             **THE COURT:**  That's not in these cases right

14   now?

15             **MR. COHEN:**  No, we do not, Your Honor, but we

16   have a dispute.  I'm not sure if any of these six

17   plaintiffs were November 17th plaintiffs.  November 17th

18   was the date on which people who did not affirmatively

19   click a button to say they wanted to stay, were fired.

20             **THE COURT:**  That's a different issue,

21   affirmatively resigning.

22             **MR. COHEN:**  We do have a dispute over whether

23   that is a resignation at all.

24             And, in fact, I know for a fact that there were

25   folks who were fired despite sending e-mails to their

1    manager saying, "Just so you know, I'm not resigning.  I'm

2    perfectly willing to continue showing up to do my job, I'm

3    just not clicking this button.  And if you want to fire me

4    for that, you can fire me for that."

5              **THE COURT:**  Okay.

6              **MR. COHEN:**  That's not a resignation.

7              **THE COURT:**  I feel like we may have one of

8    those in the Cornet cases.

9              **MR. COHEN:**  We do, and we certainly have other

10   plaintiffs among our plaintiffs group.

11             **THE COURT:**  I don't want to belabor that.

12             Okay.  So I understand your point on those two

13   specific individuals.

14             Can you address, more broadly, his views that

15   the documents you cited don't create either an enforceable

16   contract or a promise --

17             **MR. COHEN:**  Yes.

18             **THE COURT:**  -- that can be enforced?

19             **MR. COHEN:**  Yes.

20             So Number 1, again, he wants to narrow this

21   down to look only at the e-mail that came in the context

22   of, first Twitter communicating to the employees that

23   their severance was protected, and the employees asking,

24   "So tell me what the current severance plan is," and then

25   the -- which is why we said in the allegation, the e-mail

1    and the related communications.

2            Meaning when Twitter tells them "Hey, your

3    severance is protected and can't be reduced from what our

4    current policy is."

5            And then the employees say, "So tell us what

6    the current policy is."

7            So the promise is that your severance -- the

8    merger agreement has specific special protections for

9    employees' severance and for a one-year period, it cannot

10   be reduced.

11           And, Your Honor, my friend, Mr. Wallace,

12   mentioned clear error with respect to fraud.  To the

13   extent that the breach of contract claim gets dismissed on

14   the basis that none of the parties ever intended for the

15   severance provisions in the contract to be enforceable and

16   to provide any special protection, then it is clearly

17   error to dismiss a fraud claim for Twitter telling the

18   employees that those provisions did give them special

19   protection because their entire defense is, "Yeah, we

20   never intended it to."

21           **THE COURT:**  Can you sort out for me whether

22   your breach of contract and promissory estoppel claims --

23   to what extent do they stand alone from the merger

24   agreement, or do they require the merger agreement?

25           **MR. COHEN:**  They don't require the merger

1    agreement because what they stand on is Twitter's

2    representations to the employees about the merger

3    agreement.

4            And, to be clear, if there was no provision in

5    the merger agreement that said anything about employee

6    severance, and Twitter decided, "Hey, we're really

7    concerned about losing employees in the run up to this

8    merger.  Why don't we tell them that there's something in

9    the merger agreement that protects severance?"

10           Give you a better example.  We'll take it into

11   a different hypothetical.

12           Instead of saying, "Look, if you stay through

13   the merger, essentially, you're going to have your

14   severance protected," they would have said, "Hey, guys.

15   There's a provision in the merger agreement that says

16   every employee that stays through the close of the merger

17   gets their very own golden retriever."

18           That's not in the merger agreement, but it

19   would still support a breach of contract in a promissory

20   estoppel claim if they didn't follow through.

21           **THE COURT:**  Okay.

22           **MR. COHEN:**  The fact that it's in the merger

23   agreement makes the breach also a breach of the merger

24   agreement.  And that gets us to the third-party

25   beneficiary issue.

1          But even without that, the promissory estoppel

2     and breach of contract, oral contract, and written

3     contract claims on the representations.

4          **THE COURT:**  So let me ask you this.

5          **MR. COHEN:**  Sure.

6          **THE COURT:**  Because I think the Arnold

7     plaintiffs are not a class, right?  They're just

8     individuals?

9          **MR. COHEN:**  Correct.

10          **THE COURT:**  What is the third-party beneficiary

11     get you that a breach of contract or promissory estoppel

12     claim wouldn't get you?

13          **MR. COHEN:**  So it does a couple of things, Your

14     Honor.

15          Number 1, pretty much all of the states where

16     these plaintiffs are have provisions in their law that say

17     that if there is a bad-faith refusal to pay a contracted

18     amount when you terminate an employee, there are statutory

19     penalties.

20          And so, to the extent that what we have is a

21     very clear breach of the merger agreement that these folks

22     can enforce, and if that promise is --

23          **THE COURT:**  Why doesn't that apply equally to

24     the contract claims, though?

25          **MR. COHEN:**  So --

1          **THE COURT:**  If it was bad faith not to follow

2    the promise or the contract -- or maybe it doesn't work

3    with promissory estoppel.

4          But if you're right on the contract that they

5    had a contract to pay the full severance, and they didn't

6    do it in bad faith, wouldn't that same state law apply?

7          **MR. COHEN:**  Absolutely, it would, Your Honor.

8    It's just a question of -- so the question is:  Is it

9    duplicative?

10         And the answer is no, because the things that

11   are going to be in dispute on each of those claims are

12   different things, right?

13         On the breach of the merger agreement, the only

14   thing that's really in dispute is, "Can my clients enforce

15   that provision?"

16         And if the answer to that is yes, they're done.

17         If, on the breach of contract provision based

18   on the communications, they have a defense that they've

19   raised that that's not a contract at all, it's not

20   specific enough, or a reasonable person wouldn't have

21   understood, all of those things -- look, frankly, we think

22   they're going to lose on all of those issues.

23         But those are different arguments on different

24   issues, and, therefore, we have to have them each

25   separately.

1          **THE COURT:**  Okay.  So it's harder to prove one

2     way or the other.  But aside from the state law stuff,

3     which doesn't seem to make a difference -- are the damages

4     going to be the same under either theory?

5          **MR. COHEN:**  The damages under either theory are

6     going to be the same and they're going to be the same for

7     promissory estoppel as well because this is one of those

8     promissory estoppel cases where the damages are -- you get

9     what you were promised, not what you get what your loss

10    was from the reliance because it's going to be just

11    impossible on a case-by-case basis to show what that

12    damage is because it's a complete counterfactual of what

13    would have happened, had somebody gone in to a different

14    market or how do you value somebody voting their shares in

15    favor of the merger based on these representations.

16         **THE COURT:**  So I want to give you a brief

17    opportunity to speak on the actual, you know, whether you

18    are a third-party beneficiary of the merger agreement.  I

19    had argument already.  I don't know if you reviewed the

20    transcript.

21             **MR. COHEN:**  I was there for it, Your Honor.

22             **THE COURT:**  Oh, were you?

23             **MR. COHEN:**  Yes.

24             **THE COURT:**  Okay.  I apologize.  I can't

25    remember everybody.

1          **MR. COHEN:**  No, it's fine.

2          **THE COURT:**  Then you probably recall that I'm

3     pretty skeptical of the third-party beneficiary argument

4     based upon what I think is a pretty clear disclaimer in

5     the merger agreement.

6          **MR. COHEN:**  Yes, Your Honor.

7          **THE COURT:**  Do you want to get on the record

8     why you would disagree?

9          **MR. COHEN:**  I do, and I hopefully can convince

10    you of why you are wrong about that.

11         And I think, to do that, we have to look real

12    closely at the text of the merger agreement itself.  If it

13    would be helpful, I have just a short selection of the

14    actual provisions, so that you can look at the text.

15         **THE COURT:**  Sure.  Does he have that, too?

16         **MR. COHEN:**  I'm about to hand it to him.

17         **THE COURT:**  Okay.  Thanks.

18         Do you have another one for my clerk?

19         **MR. COHEN:**  I do not have another one for your

20    clerk.  That was unwise.  I apologize.  I will give him

21    mine when I am done --

22         **THE COURT:**  That's okay --

23         **MR. COHEN:**  -- or her.

24         **THE COURT:**  Do you know what they are?

25         **MR. COHEN:**  So I think the first thing we have

1    to do is we start with 9.1, which is the non-survival.

2              Twitter's argument here, and X's argument here

3    is that Section 6.9 meant nothing, imposed no obligations,

4    and was not in agreement that required performance at all.

5    It was merely a statement of intent.  And therefore, you

6    can write it out of the contract.

7              That's a problem under Delaware law.  You can't

8    just write provisions out of a contract.  But it's also a

9    problem straight from the text of the agreement because

10   what the parties agree, in Section 9.1, expressly is that

11   Section 6.9 is a section that contains an agreement of the

12   parties which, by its terms, contemplates performance

13   after the effective time.

14             So it's not a statement of intent.  It is a

15   covenant and agreement of the parties that is specifically

16   intended to be enforceable after the close of merger, so

17   much so that they exempt it from the provision that says

18   "everything is retired as soon as the merger closes."  So

19   that's Number 1.

20             And so the question then becomes, Your Honor,

21   well what are the agreements and covenants in Section 6.9.

22   And, again --

23             **THE COURT:**  I understand all this.  You didn't

24   actually give me -- I understand that it's not helpful to

25   your side, but you didn't give me the provisions that

1    specifically say there's no third-party beneficiary.

2              **MR. COHEN:**  I did, Your Honor.  It's the last

3    page because that's -- 6.9 goes from (a) through (e).

4              **THE COURT:**  Oh, sorry.  So 6.9(e).

5              **MR. COHEN:**  Yes, 6.9(e).  So 6.9(a), (b),

6    (c) -- because I think what we have to do, Your Honor, is

7    look at the whole text of this section.  It's very clear

8    from the text of the section, as a whole, that these are

9    heavily negotiated provisions that are directly intended

10   to provide benefits to the continuing employees.

11             It says, specifically in 6.9(a), that these

12   benefits are to be provided to the continuing employees.

13   And it not only says, "Hey, you have to give these

14   benefits," but it creates different standards for how to

15   assess compliance for the different categories of

16   benefits.

17             So for base salary and wage rate, at least the

18   same.  Meaning, you can't even change the metric.  If

19   somebody was paid hourly, they've got to get paid at least

20   the same hourly rate.

21             If they're paid a base salary, they have to be

22   paid the same base salary.

23             For incentive compensation, we don't care how

24   it gets composed, but it has to be no less favorable in

25   the aggregate, meaning the total of the different

1    components has to be at least as much.

2              For the next set, which is for employee

3    benefits, it's substantially comparable.  So it doesn't

4    have to be at least as favorable or at least the same.  It

5    could be a little bit less, as long as it's close.  And

6    then for the severance benefits, it's not at least the

7    same because Twitter was allowed to change the components.

8    But it has to be no less favorable than those applicable

9    to the continuing employees.

10             **THE COURT:**  I get all this.

11             **MR. COHEN:**  Yeah.

12             **THE COURT:**  You gave me one of me the no

13   third-party claims.  Do you have 9.7?

14             **MR. COHEN:**  No, because 9.7 is sort of a

15   general catch-all.

16             Let me put it this way, Your Honor, if 6.9(e)

17   applies to this and says they are non-third-party

18   beneficiaries, then 9.7 for this discussion is

19   superfluous.  And if 6.9(e) you conclude doesn't control,

20   then 9.7 doesn't change that.  And so I didn't want to

21   bring in extraneous matters.  But 9.7 just say no

22   third-party beneficiaries other than these.

23             So the issue here, Your Honor, is --

24             **THE COURT:**  I mean, I'm not sure I agree with

25   your reading of 9.7.  Maybe it's just because it seems --

1    because it's isolated and maybe it just says the same

2    thing as 6.9(e).

3              But are the employees parties to this

4    agreement?

5              **MR. COHEN:**  They are not.  So if they can

6    enforce, they can enforce as third-party beneficiaries.

7    And I think if you look at the decision --

8              **THE COURT:**  Well, isn't that the problem?  I

9    mean, with 9.7, it says it's not intended to and shall not

10   confer upon any person other than the parties hereto --

11             **MR. COHEN:**  Uh-huh.

12             **THE COURT:**  -- any rights under the agreement.

13             **MR. COHEN:**  Right.

14             **THE COURT:**  They are not a party to the

15   agreement, and 9.7 seems to suggest that there are other

16   persons that have no third-party beneficiary rights.

17             **MR. COHEN:**  Yes.  Except, Your Honor, that

18   Delaware law says very clearly that such provisions are

19   not dispositive.  They are given weight, but they do not

20   control and they will occasionally yield to other contrary

21   provisions in the contract.  And that's not:  Well, if

22   there's a carve out.

23             **THE COURT:**  I get it.  I get there are clauses

24   in here that protect employees.  But just a clause

25   protecting employees is not enough to give an employee

1    cause of action to an agreement that it's not a party to,

2    at least my view, unless it's explicit.

3        And you seem to be asking me to infer from all

4    the protections in 6.9, all these sections, that they must

5    have intended these rights to be given to employees

6    because, otherwise, they would be unenforceable.

7        **MR. COHEN:**  So that's -- there are two

8    distinctions there, Your Honor, and two things that I

9    think go wrong there, right?

10        So, Number 1, Delaware law -- if you look at

11    the cases, and particularly *Wilmington Housing Authority*,

12    says, "Parties don't get to decide in their contracts

13    whether somebody has rights.  What they decide is whether

14    or not they give somebody benefits."

15        So what's a third-party -- what's a no

16    third-party beneficiary provision?

17        That is something that is there to address a

18    situation where there's a clause in a contract that gives

19    benefits that benefits in some way multiple people, right?

20        So, for example, if you contract with me, I say

21    I'm going to provide you legal services, and I say you're

22    going to pay my son's college tuition.

23        **THE COURT:**  Let me stop you.  Are you saying

24    that if the two parties decide we're going to lay out

25    here -- the old company and the acquiring company, as part

1   of the merger agreement, say:  Look, as part of the

2   agreement, here is a list of things we think the new

3   company should do for employees, and then in a separate

4   section it says:  But this agreement is not intended to

5   benefit the employees or create a cause of action for the

6   employees to enforce this, that, nonetheless, there could

7   still be a third-party beneficiary claim?

8           **MR. COHEN:**  Should do, no.  Must do, yes.

9   Because a must-do clause, a clause that says that after

10  the close of the merger, the following must take place,

11  only benefits the employees.  It doesn't benefit the old

12  company, it's after the close of the merger.  It doesn't

13  benefit the acquirer.  They are now bound by an

14  obligation.

15          The only party being benefited by those

16  provisions is the employees.  And what Delaware law says

17  is:  If there's a clause in a contract that nobody can

18  enforce because the only person benefiting is a third

19  party, then that person is a third-party beneficiary.

20  Because to say anything else would be to read that clause

21  out of the contract.

22          What *Dolan* teaches, is that where you have a no

23  third-party beneficiary clause and something that can only

24  be enforced by a third party, to the extent that they are

25  truly contradictory, that, by definition, must be read as

1    ambiguous and, therefore, it's a question for discovery;

2    it's a question of fact which one of those controls

3    because the court's role is to harmonize.

4            **THE COURT:**  So what if the merger agreement was

5    not you have to do something, but you should keep the same

6    severance plan and the like and then have a third-party

7    beneficiary?

8            **MR. COHEN:**  Then the employees would be

9    completely out of luck.  Then they would only have a

10   promissory estoppel claim.

11           But that's not this merger agreement.  This

12   merger agreement is very clearly a mandatory provision.

13   And, Your Honor, I heard you ask Mr. Wallace on the

14   15th -- you've seen it in the papers -- they cannot come

15   up with any interpretation of that agreement other than --

16   of those provisions of that agreement where those

17   provisions do anything at all.

18           They are asking you to write it out of the

19   agreement.

20           And what Chancellor McCormick found in *Crispo*

21   was there is a different reasonable explanation of the no

22   third-party beneficiaries provision that allows you to

23   harmonize them with the mandatory provisions of the

24   contract so as to not write them out of the agreement.

25           Now, she was talking about different

1    provisions.  She was talking about the shareholder

2    damages.  But that reasoning applies directly here because

3    the way to harmonize this is to say that no third-party

4    beneficiary provision means we are not letting anybody

5    else enforce this merger agreement before the merger

6    closes.

7            You have no right to say, Hey, I want this

8    merger to go through because I like what's happening to my

9    benefits and if these parties break up the merger, even if

10   one of them could enforce the merger agreement, if they

11   decide they don't want to, you, employee, are not a

12   third-party beneficiary just by virtue of the fact that if

13   the merger had closed, but now --

14           **THE COURT:**  I get your argument on this point.

15           **MR. COHEN:**  Thank you.

16           **THE COURT:**  Is there anything else on the R&R

17   you want to briefly touch on the fraud?

18           **MR. COHEN:**  So on the fraud, Your Honor, so two

19   things.

20           Mr. Wallace missed a point when he was talking

21   about Mr. Musk, which is:  With respect to Mr. Musk -- and

22   we did very clearly say for anything where we don't have a

23   direct claim, veil piercing.

24           But with respect to Mr. Musk, it's not just

25   that he would be veil piercing through Twitter, it would

1    be through X Corp.  We have a fraud claim against X Corp,

2    X Holdings Corp., which is the acquiring corporation.  And

3    that fraud claim was not the subject of any dismissal

4    motion.

5             They moved to dismiss the fraud claim against

6    Twitter.  They moved to dismiss the fraud claim against

7    Elon Musk.  They never moved to dismiss the fraud claim

8    against X Holdings Corp., the holding company, and we do

9    have a fraud claim against that company, and we have

10   alleged that he is liable through veil piercing for any

11   fraud claim against that company.  So that claim hasn't

12   been dismissed, the underlying claim.

13            **THE COURT:**  Anything else?

14         **MR. COHEN:**  The last thing on fraud, Your

15   Honor, and I apologize for running long, but the last

16   thing on fraud is if, as they are arguing and as Judge

17   Burke found, the parties never intended for this -- these

18   provisions to provide any protection for the employees

19   because they were always intended to be unenforceable,

20   then telling the employees that they specially protected

21   the benefits in the merger agreement is fraud.  It is a

22   false statement.  It is a knowingly false statement, and

23   it has to be knowingly false because the claim is we never

24   intended it to work this way -- intended to induce

25   reliance, which did induce reliance and damages.  It's

1  fraud.

2        **THE COURT:**  Can we hear from opposing counsel

3  again?

4        **MR. COHEN:**  I will pass the second one of

5  these.

6        **THE COURT:**  Thanks.

7        **MR. WALLACE:**  Thank you, Your Honor.

8        **THE COURT:**  Let's go to the third-party

9  beneficiary stuff because, I mean, we have a very clear

10  statement that said there's no third-party beneficiaries.

11        But can you just respond to the point that

12  there are a series of things in 6.9 that says that these

13  things shall be provided to the employees?  Why isn't that

14  enough to make it clear that they are the beneficiaries of

15  that?

16        **MR. WALLACE:**  So, Your Honor, the hallmark of

17  all of this, the first step of determining whether someone

18  is an intended third-party beneficiary is whether the

19  parties intended to give them that right.

20        To look at -- and that is, you know, black

21  letter *E.I. du Pont v. Shell*, that both parties are

22  relying on, says, "The basic rule of contract construction

23  gives priority the intention of the parties."

24        And Mr. Cohen repeatedly talks about this rule

25  under Delaware law, that if no one can enforce the

1    provision, then it must mean that this other person can

2    enforce it.  Perhaps that's the case when there's not an

3    express provision like 6.9(a)(2) that says the parties do

4    not intend for you to be a beneficiary.

5               Furthermore, as to that point, there's --

6    it's -- the courts endeavor, through contract construction

7    principles, to identify a way to ascertain the intent when

8    it's unclear.  Here, the intent couldn't be clearer.

9               And the courts say, when possible, we should

10   look at all provisions to harmonize them.  Didn't say this

11   is a mandatory rule.  Because the mandatory rule would

12   swallow the parties' intent.  If we're writing anything

13   out, we would be writing out the part that says:  You are

14   not intended third-party beneficiary.

15              So, I mean, I think that's the simplest way to

16   cut that.

17              **THE COURT:**  Can I just see if I can try a

18   different way.

19              Even if this agreement expressly mandates that

20   the takeover corporation shall provide this list of

21   benefits to employees, and that's a legal obligation, that

22   unless the contract, the merger agreement also

23   demonstrates some kind of intent for the employees to be

24   direct beneficiaries of that -- I guess my problem is, who

25   else would those clauses be benefiting except the

1    employees themselves?

2                **MR. WALLACE:**  I think there is a predicate

3    issue, which is 6.9(e)(1), which we haven't talked about.

4    6.9(e)(1) gives Twitter the absolute right to modify,

5    change or eliminate those benefits.

6                So to the extent there were any kind of

7    ambiguity in the contract, I think it's between (e)(1) and

8    (a), perhaps at most.  But you don't get there because of

9    (e)(2), which says there's no intended third-party

10   beneficiaries.  Or the employees are not intended

11   third-party beneficiaries.

12               So I don't think -- while we're saying (a) has

13   all of the shall language and it's mandatory, I think

14   (e)(1) unwinds that, also, in allowing the parties to

15   modify -- or allowing Twitter to modify that provision.

16               But even so, you know, talking about, you know,

17   rules of construction and contract principles, when

18   there's one provision that we're trying to find a way to

19   give meaning to, the courts say we don't just make it up

20   if it runs counter to the agreement's overall scheme or

21   plan.  The overall scheme or plan here was not to give

22   employees beneficiary entitlement under this contract.

23               **THE COURT:**  Okay.

24               **MR. WALLACE:**  Your Honor, would you like to

25   talk about vicarious liability or would you like to --

1              **THE COURT:**  Wait.  Do you mean piercing, is

2      that the same thing as piercing the veil?

3              **MR. WALLACE:**  Yes, Your Honor.

4              **THE COURT:**  Let's hear from them first on that

5      point.

6              **MR. WALLACE:**  Okay.

7              **THE COURT:**  I know it's your motion to dismiss,

8      but if you want the last word -- well, I think you have

9      the last word anyway.

10             Okay.  Here's my issue with what Judge Burke

11     decided, and I think he did something that was entirely

12     fine in exercising his discretion to rely on forfeiture,

13     and if I was an appellate court, it's not reversible,

14     probably, but I'm not an appellate court here.

15             I'm not going to find forfeiture.  I'm just

16     not.  I think the allegations of veil piercing here in

17     your complaint are not very specific, so it's very hard

18     for me to see how they were even put on significant notice

19     that that was going to be a huge argument.

20             Sure you have a section -- they're very

21     vague -- about how they meet the standard.

22             And so here's the question I have for you, is

23     they moved to dismiss and didn't really discuss this very

24     much, which is why he found forfeiture.  You put in a big

25     response.  They got a really big reply that you had never

1    seen before.

2              Do you want -- if I don't find forfeiture, do

3    you want the opportunity to address that reply more

4    fulsomely and give them a surreply, or do you think

5    between the briefing we've had and the objections to the

6    R&R that I have enough?

7              **MR. COHEN:**  No.  It would certainly need a

8    separate -- separate briefing on that issue, Your Honor.

9              I do think that in terms of the standard for

10   reviewing the magistrate's exercise of discretion there,

11   and we did put it in our papers that because it's an

12   exercise of discretion on a matter committed to his

13   discretion, if you are going to reverse it, you are

14   required to find that he abused his discretion, same as

15   for an appellate judge.  I think that's what the cases

16   say.  Obviously if you have a different view of that --

17             **THE COURT:**  That seems to me to be odd, but

18   I'll look at it.

19             As you know, I don't sit in this chair very

20   often, and for something like that where --

21             **MR. COHEN:**  What the cases say is on a matter

22   that's committed to the magistrate's discretion, it's only

23   reviewed for abuse of discretion, and that's true even if

24   that exercise of discretion is within the context of a

25   dispositive motion.

1              The cases are -- you know, there's a Delaware

2       case that was a motion for summary judgment on a patent

3       case, and he exercised -- magistrate exercised discretion

4       to consider a forfeiture issue.

5              **THE COURT:**  Has this issue been briefed?

6              **MR. COHEN:**  It was in our response on their

7       objection to the R&R.  So it was, in fact, briefed.  So

8       that's one issue.

9              But if you are going to reverse his exercise of

10      discretion, I would think that the right thing to do there

11      is essentially just set it down for a new motion to

12      dismiss on that.

13             **THE COURT:**  You've given me a little bit to

14      think about.  So in order to save time, we'll go

15      through -- I want to go through the merits of the veil

16      piercing a little bit based on the allegations and

17      standards.  But if I'm going to let you rebrief that, I

18      would also like you to brief the standard review for me on

19      his decision on forfeiture.

20             **MR. COHEN:**  Absolutely.

21             **THE COURT:**  Because I did not understand myself

22      to be -- to owe him any deference on that point.  And if I

23      do, then it changes the calculous, obviously.

24             **MR. COHEN:**  Yes.

25             **THE COURT:**  Because I think I just told you

1    it's not abuse of discretion for him to find forfeiture.

2    I think that's right.

3              MR. COHEN:  Correct.

4              THE COURT:  The way this case has been -- the

5    allegations on this issue were set out and the way it was

6    done seemed like you all could have done something

7    differently.

8              MR. COHEN:  Understood, Your Honor and --

9              THE COURT:  On both sides.

10             MR. COHEN:  And to be clear --

11             THE COURT:  I don't think it's particularly a

12   forfeiture, at the end of the day.  It is usually an

13   equitable decision, and I'm not sure I find it equitable

14   to get rid of their defense on the issue.

15             MR. COHEN:  To be clear, I don't think it gets

16   rid of their defense.  It just means they didn't move to

17   dismiss.  So it would be addressed --

18             THE COURT:  I understand.

19             MR. COHEN:  -- in summary judgment.

20             THE COURT:  But that -- it goes away and

21   there's lots of discovery that might be avoided if it is

22   properly dismissed at the 12(b)(6) stage.

23             Okay.  So on the merits -- and again,

24   Judge Burke didn't get to this -- but on the merits, why

25   do you think the allegation in your complaint are

1    sufficient to show the type of control that we would

2    pierce the veil?

3          **MR. COHEN:**  On the merits, I think we laid out

4    Elon Musk was the person actively making the decisions for

5    the entity, and not just the person actively making the

6    decisions for the entity, but he was intermingling its

7    assets with assets from his other entities and essentially

8    just treating everything as one big pool of Elon Musk

9    asset as opposed to independent, separate corporations.

10         He was also, frankly, treating corporate

11   decisions as personal decisions without any regard for

12   fiduciary duties or anything like that.  He was simply

13   acting as Elon Musk playing with Elon Musk toys.

14         And Elon Musk toys are quite large and fun, I

15   get that, but that becomes the predicate for a veil

16   piercing, particularly where somebody with those resources

17   decides to purchase this in such a way that he loads it

18   down with debt, expressly says himself that it is

19   insufficient to carry on its business as currently

20   constructed, argues that the lack of assets and the debt

21   load is part of why he has to breach the contract, and

22   puts the company at risk of bankruptcy.

23         We cited to you, Your Honor, in our response to

24   their objections, a litany of California cases that say

25   where you create that inequitable risk of bankruptcy by

1    undercapitalizing, even if it's not with any sort of ill

2    intent, that is sufficient inequitable conduct to support

3    veil piercing.

4         I will note, Your Honor, that even if the Court

5    doesn't find forfeiture and wants to reopen briefing, that

6    briefing really should be limited to the issue of whether

7    or not we alleged sufficient inequitable conduct or a

8    sufficient inequitable result to allow for veil piercing.

9         They did not suggest at all in their opening

10   brief that we had insufficiently alleged the identity of

11   the sort of economic entanglement.  That issue, they

12   simply passed on entirely.  Not even mentioned it in their

13   footnote.

14        And so I think, Your Honor, it would be

15   inappropriate to essentially give them a second bite of

16   that apple.

17        **THE COURT:**  Well, if I'm opening briefing, it's

18   not to start over.  It is to give you an opportunity to

19   reply to whichever chain in the brief.  They put in a

20   footnote, you put in opposition that was more fulsome,

21   then, they came back with a much bigger brief.

22        They are confined to what they briefed in that

23   bigger brief.  You get a reply on that.

24        **MR. COHEN:**  The issue I'm raising, Your Honor,

25   is in that bigger brief, they didn't just put in a fulsome

1    reply on our reply, they opened an entirely new issue that
2    they hadn't even raised in the footnote.  And so that's --
3              **THE COURT:**  I think that is going to go part
4    and parcel with my forfeiture decision, and you will be
5    given an opportunity to respond.  Okay?
6              **MR. COHEN:**  I appreciate it.
7              May I just address (e)(1), since he brought
8    that up?
9              **THE COURT:**  Sure.
10             **MR. COHEN:**  So 6.9(e)(1), again, it actually --
11   there are two issues there.  Number 1 is you can easily
12   harmonize that with the rest of 6.9 by just cabining it
13   and saying it's a belts-and-suspenders way of saying,
14   look, you have to do all these things, but that doesn't
15   mean that there are other changes you can't make.
16             And, also, (e)(1) works quite well as a way of
17   saying:  And, look, you employees, you can't say in the
18   interim between us signing this agreement and the closing
19   that we're not allowed to change our benefits package.
20             If Twitter had said two days before the
21   closing, we are changing our severance, they could have
22   done so.  They didn't.  And so now they're locked into
23   that for these employees.
24             **THE COURT:**  Okay.  Thank you.
25             **MR. COHEN:**  Thank you.

1          **THE COURT:**  Counsel, I don't want to talk

2     anymore about the third-party beneficiary.  Let's just

3     talk about what we should do here with piercing the veil.

4          **MR. WALLACE:**  I understand.  One point of

5     clarification, if I might, before then on the fraud piece.

6          My colleague said that we didn't move to

7     dismiss the fraud claim as to X Holdings.  That's

8     inaccurate because as the defendant's named, it's X Corp.

9     FKA Twitter, Inc. FKA all of the entities, we moved on

10    behalf of all of the entities to dismiss, particular

11    claims, including fraud.  So I don't think that

12    representation was correct.

13         As to veil piercing, as Your Honor noted, the

14    allegations in the complaint are sparse in terms of

15    putting us on notice as to what they're actually intending

16    to allege.  Nevertheless --

17         **THE COURT:**  Let's start with the forfeiture.

18         **MR. WALLACE:**  Sure.

19         **THE COURT:**  I mean, I think, generally,

20    Judge Burke is right, that a footnote is not enough to

21    preserve the argument.  But I do understand why your

22    argument is the allegations here are sparse.  And you

23    didn't present a more fulsome motion to dismiss all of

24    that.

25         Do you know if I set a review on that, is it

1    abuse of discretion?

2             **MR. WALLACE:**  Your Honor, I need to look closer

3    at it, but I think, in looking at the authority that's

4    been cited to date, I think it's less than clear on that

5    point.

6             **THE COURT:**  I mean, because -- you know,

7    obviously you heard me today.  I don't, you know, pull any

8    punches.  You know what I'm thinking.  If it's abuse of

9    discretion, then he's going to get affirmed because I

10   can't come close to finding abuse of discretion on

11   forfeiture.

12            If I look at it again, I think what I'm going

13   to do is what I just suggested, which is give them another

14   opportunity to respond to your reply, and then you can

15   have the final surreply on that, since it's your motion to

16   dismiss.  And include in that stuff about the standard of

17   review for me to dismiss.

18            But if you think it's clear, if you go back

19   that it's abuse of discretion, don't waste my time because

20   I think he was clearly within his rights to find

21   forfeiture here.

22            **MR. WALLACE:**  Understood, Your Honor.

23            **THE COURT:**  Do you want to address the merits

24   of the veil piercing?  I know that's where you were

25   getting to first, what you think are conclusory

1    allegations.

2            **MR. WALLACE:**  Right.

3            As you were noting, veil piercing is an extreme

4    remedy only applied in exceptional circumstances.  There's

5    a strong presumption against disregarding the corporate

6    form and, as a result, conclusory allegations concerning

7    veil piercing aren't adequate.

8            Here, the allegation -- I mean, it's continual

9    practice of taking kind of facts that are in the ether,

10   and acting like they were in the complaint that just

11   aren't there.

12           They are a number of allegations regarding

13   Mr. Musk's content moderation, or alleged content

14   moderation on the platform.  There's a couple conclusory

15   allegations -- or one conclusory allegation concerning

16   Mr. Musk allegedly having employees from another entity do

17   some work for a some limited amount of time for Twitter.

18   Again, not clear veil piercing-type conduct.

19           To prove veil piercing or to plead veil

20   piercing, you must show a unity of interest, where Musk

21   and Twitter cease to be separate entities.

22           They haven't even gotten close to that in their

23   pleadings, even if it was assumed true.  And that unity of

24   interest -- I think it's interesting the case law talks

25   about it in two terms, two ways.

1              One is you have unity of interest in what

2     you're doing in a macro level, you're controlling the

3     company in a macro -- but you're also controlling its

4     day-to-day operation.  You're, essentially, running every

5     aspect of the company.

6              As Mr. Cohen alluded to, Mr. Musk is a busy

7     man.  I don't think he's there day-to-day.  There's no

8     allegation he was there day to day running the company in

9     ever aspect of the company, such as an adequate community

10    of interest plan that exists otherwise to plead this

11    claim.

12             It must be pervasive control.  Doesn't exist.

13    Wasn't pled.

14             The undercapitalization issue, the cases go

15    both ways on that issue, but the cases on which Mr. Cohen

16    relies, and the cases that find that undercapitalization

17    are, you know, a factor -- or dispositive factor are kind

18    of small, closely-held companies where these people aren't

19    going to get paid and there's a judgment against them.

20             Some courts find that's still not enough to

21    prove the requisite injustice that's attended to establish

22    a claim.

23             Here's, there no allegations of any kind of

24    imminent injustice that's going to result if there's a

25    judgment against Twitter in this case.  Therefore, I think

1    it's just failed to plead veil piercing adequately.

2                **THE COURT:**  Okay.  As I am sitting here, I

3    think maybe the easiest way to deal with this standard of

4    review issue because it might obviate the need for other

5    stuff, and since I'm unclear on it, I hate to keep

6    imposing additional briefing.

7                Can you give me letter briefs within -- how

8    many days do you want?  Is two weeks long enough -- about

9    the standard of review for my review of this specific

10   decision and your best argument on whether I have --

11   whether it's de novo for me or whether I do have to defer

12   to Judge Burke because I think that will make it a lot

13   simpler.

14               And if it's de novo, I am likely going to order

15   the supplemental briefing that I suggested on the actual

16   merits.  And if it's abuse of discretion, then I will

17   probably adopt his R&R on that point.

18               **MR. WALLACE:**  Understood, Your Honor.

19               Is there -- you know, this issue was raised

20   unilaterally by Judge Burke.  It wasn't raised by the

21   plaintiff.

22               **THE COURT:**  You can address all that in your

23   letter brief.  I should give you a page limit.  I will be

24   generous, five.  No more than five single-spaced pages on

25   this.

1          And so, yes, if you think it makes a difference

2     that he raised forfeiture sua sponte versus they raised

3     it, to what my standard of review it is.

4          But I want to know whether I have to defer or

5     not.  It's that simple.  And you know my views either way.

6     I defer -- if I find it's abuse of discretion, I'm going

7     to defer.  If it's not, then I'm going to adopt the

8     briefing and postpone the merits decision on the 12(b)(6)

9     until I get that.

10          **MR. WALLACE:**  Understood.

11          **THE COURT:**  Okay.  Anything else?

12          Since I have you all here, is there anything,

13     either in Arnold or Cornet, that should be kind of on my

14     radar that I should be looking at?

15          I know you have discovery stuff coming up.  Is

16     there stuff beyond that?

17          **MR. COHEN:**  Yes, Your Honor.  There are several

18     motions to quash pending in Arnold, some of which have

19     been outstanding for something on the order of

20     two-and-a-half years.  So we would love a decision on

21     those or an argument on those.

22          **THE COURT:**  Okay.  I have not -- you know, I

23     took over this case very recently.

24          **MR. COHEN:**  Yes.

25          **THE COURT:**  I wasn't aware of those.  Thank you

1    for bringing them to my attention.  Maybe send in

2    something on the specific docket number, so I don't have

3    to search through the entire docket about what I need to

4    decide.

5                    MR. COHEN:  100 percent.

6                    THE COURT:  Okay.

7                    Anything else?

8                    MR. WALLACE:  Nothing further from our

9    perspective.

10                   MR. MANEWITH:  With respect to Cornet,

11   obviously, the motion has been pending.  Other than that,

12   there's nothing.

13                   THE COURT:  It's all -- I mean, the issues at

14   least as to yours are largely overlapping with the first

15   R&R, so it's all going to come out about the same time.

16                   MR. COHEN:  And it's not Arnold or Cornet, but

17   the Woodfield motion has been pending for quite some time

18   as well on the arbitration, motion to compel arbitration.

19                   THE COURT:  Okay.

20                   I just got that one, too.  I'll take a look at

21   it.  At least in my world, I just got it.  I don't know if

22   that's a quick time or not in this world.

23                   MR. COHEN:  We appreciate it.

24                   THE COURT:  Okay.

25                   MR. COHEN:  I'm not going to speak for

1    Mr. Wallace --

2              **THE COURT:**  Oh, five pages.  Two weeks.  So I

3    don't know when two weeks from today is, but two weeks

4    from today.

5              **MR. COHEN:**  Yes.

6              **THE COURT:**  Okay?  We'll get an order on the

7    docket to clarify.  But thank you.

8              **MR. WALLACE:**  Thank you, Your Honor.

9              **MR. COHEN:**  Thank you, Your Honor.

10             (The proceedings concluded at 3:05 p.m.)

11

12

13             CERTIFICATE OF COURT REPORTER

14

15       I hereby certify that the foregoing is a true and

16    accurate transcript from my stenographic notes in the

17    proceeding.

18
                              /s/ Bonnie R. Archer
19                              Bonnie R. Archer, RPR, FCRR
                                Official Court Reporter
20                              U.S. District Court

21

22

23

24

25

MR. BARILLARE: [2]
6/8 6/14
MR. BIGGS: [1]
5/25
MR. CHRISTENSEN:
[1]   5/19
MR. COHEN: [82]
MR. MANEWITH: [22]
4/11 4/14 4/16 4/19
4/23 7/21 8/6 8/10
8/19 9/5 9/16 10/6
10/23 13/21 17/4
17/6 17/9 17/13
19/5 19/7 19/15
74/10
MR.
TRUJILLO-JAMISON:
[3]   13/22 14/5
27/1
MR. WALLACE: [38]
11/7 12/23 13/12
14/21 15/21 15/25
16/4 26/7 27/9
27/25 28/19 34/4
34/12 34/14 35/8
35/15 36/10 36/15
36/18 36/21 37/12
37/17 38/10 58/7
58/16 60/2 60/24
61/3 61/6 68/4
68/18 69/2 69/22
70/2 72/18 73/10
74/8 75/8
MS. BUTLER: [1]
5/8
MS. MOSKOW-SCHNOLL:
[21]   4/15 4/25 5/5
6/17 6/20 6/23 6/25
7/2 7/6 7/10 7/13
20/22 21/1 22/19
23/6 23/21 24/12
24/17 25/2 25/11
25/14
THE COURT: [166]

'
'24 [1]   24/2
'25 [1]   24/3

–
-and [4]   2/10 2/20
3/10 3/12

/
/s [1]   75/18

1
100 percent [1]
74/5
12 [4]   11/13 11/18
64/22 73/8
13 [2]   29/9 30/1
15 [1]   1/23
15th [1]   55/14
17th [2]   41/17
41/17
1:23-cv-00528-TMH
[1]   1/6
1:23-cv-441-TMH [1]
1/16
1:32 [2]   1/23 3/24

2
20-plus [1]   19/24
2022 [2]   29/9 30/1

2024 [1]   23/23
2025 [1]   1/23

3
326 [1]   29/11
3:05 [1]   75/10

6
6.9 [21]   29/5 30/10
33/6 49/3 49/11
49/21 50/3 50/4
50/5 50/5 50/11
51/16 51/19 52/2
53/4 58/12 59/3
60/3 60/4 67/10
67/12

8
844 [1]   2/1

9
9.1 [2]   49/1 49/10
9.7 [8]   51/13 51/14
51/18 51/20 51/21
51/25 52/9 52/15

A
ability [1]   17/11
able [2]   20/9 25/7
about [49]   11/5
11/12 11/25 13/24
14/25 15/2 16/3
16/9 16/10 17/18
19/16 22/10 22/13
26/22 28/7 28/16
29/21 29/21 29/25
30/2 34/16 37/16
38/1 38/1 38/3 38/4
38/5 41/10 44/2
44/5 44/7 48/10
48/16 55/25 56/1
56/21 58/24 60/3
60/16 60/25 61/21
63/14 68/2 68/3
69/16 70/25 72/8
74/3 74/15
absent [2]   10/16
12/18
absolute [1]   60/4
absolutely [3]
18/16 46/7 63/20
abuse [9]   9/9 62/23
64/1 69/1 69/8
69/10 69/19 72/16
73/6
abused [2]   21/24
62/14
access [9]   21/4
22/18 22/24 24/8
24/11 24/22 24/24
25/3 27/6
according [1]   34/20
accurate [1]   75/16
acquirer [1]   54/13
acquiring [2]   53/25
57/2
acquisition [1]
29/6
across [1]   20/11
acting [2]   65/13
70/10
action [4]   36/7
37/1 53/1 54/5
actively [2]   65/4
65/5
actual [3]   47/17

48/14 72/15
actually [17]   3/25
22/22 24/21 27/11
49/24 67/10 68/15
add [1]   27/3
additional [3]
30/20 35/16 72/6
address [9]   7/24
38/15 38/23 42/14
53/17 62/3 67/7
69/23 72/22
addressed [2]   34/16
64/17
adequate [2]   70/7
71/9
adequately [3]
32/11 33/15 72/1
administrative [2]
9/17 9/20
admit [1]   15/4
admittedly [1]
15/21
adopt [2]   72/17
73/7
affirmatively [2]
41/18 41/21
affirmed [1]   69/9
after [7]   12/24
29/7 29/22 49/13
49/16 54/9 54/12
afternoon [6]   4/1
5/8 5/25 6/8 26/15
26/17
again [17]   4/1 9/20
10/6 12/19 19/9
30/12 32/16 36/11
37/5 37/25 42/20
49/22 58/3 64/23
67/10 69/12 70/18
against [14]   32/12
32/20 32/24 33/17
37/7 57/1 57/5 57/6
57/8 57/9 57/11
70/5 71/19 71/25
aggregate [1]   50/25
agree [12]   13/10
17/25 21/2 21/6
24/8 24/24 27/2
27/12 33/15 34/8
49/10 51/24
agreed [1]   13/6
agreement [58]   12/8
13/7 15/15 18/19
18/21 19/2 19/9
20/10 29/6 29/7
29/8 29/21 30/11
30/13 30/13 30/18
33/7 35/5 43/8
43/24 43/24 44/1
44/3 44/5 44/9
44/15 44/18 44/23
44/24 45/21 46/13
47/18 48/5 48/12
49/4 49/9 49/11
49/15 52/4 52/12
52/15 53/1 54/1
54/2 54/4 55/4
55/11 55/12 55/15
55/16 55/19 55/24
56/5 56/10 57/21
59/19 59/22 67/18
agreement's [1]
60/20
agreements [3]
18/15 23/3 49/21
ahold [1]   22/6

AI [2]   15/4 15/5
AKIVA [2]   1/13
2/14
16/16 38/14
ALEXIS [2]   1/13
2/14
all [62]   5/14 5/15
6/21 6/24 6/25 8/4
9/11 11/1 12/12
12/15 13/9 13/25
16/24 16/25 20/11
20/16 20/17 23/7
24/4 25/8 25/21
26/11 28/3 28/7
28/11 28/12 28/14
29/25 30/6 32/17
33/15 34/9 35/1
35/20 36/19 38/11
39/24 41/23 45/15
46/19 46/21 46/22
49/4 49/23 51/10
51/15 53/3 53/4
55/17 58/17 59/10
60/13 64/6 66/9
67/14 68/9 68/10
68/23 72/22 73/12
74/13 74/15
allegation [9]   31/4
33/4 35/7 40/25
42/25 64/25 70/8
70/15 71/8
allegations [14]
33/9 33/10 33/21
37/21 61/16 63/16
64/5 68/14 68/22
70/1 70/6 70/7
70/15 71/23
allege [1]   68/16
alleged [6]   29/1
29/20 57/10 66/7
66/10 70/13
allegedly [2]   33/5
70/16
allow [1]   66/8
allowed [2]   51/7
67/19
allowing [2]   60/14
60/15
allows [1]   55/22
alluded [2]   12/10
71/6
almost [1]   23/9
alone [1]   43/23
already [5]   17/4
17/6 32/25 40/24
47/19
also [13]   14/4 32/2
33/3 34/16 35/16
44/23 49/8 59/22
60/14 63/18 65/10
67/16 71/3
Alternatively [2]
12/10 12/20
altogether [1]   13/4
always [1]   57/19
am [13]   4/15 6/17
9/25 16/16 16/16
21/19 23/10 26/14
26/16 38/20 48/21
72/2 72/14
ambiguity [1]   60/7
ambiguous [1]   55/1
amended [1]   30/24
amicus [5]   15/23
16/1 16/18 17/2
17/12
among [1]   42/10

amount [3]   12/12
15/21
analysis [2]   19/11
27/2
ANDRES [2]   1/14
ANDREW [2]   1/4 2/24
another [9]   8/23
9/12 19/22 19/22
26/18 48/18 48/19
69/13 70/16
answer [3]   13/13
46/10 46/16
answers [1]   15/5
any [30]   10/5 12/11
12/13 12/14 13/5
17/23 18/18 19/1
21/15 22/5 29/23
31/13 32/23 33/9
35/22 39/10 41/16
43/16 52/10 52/12
55/15 57/3 57/10
57/18 60/6 63/22
65/11 66/1 69/7
71/23
anybody [1]   56/4
anymore [3]   12/18
21/4 68/2
anything [22]   13/10
18/6 24/6 25/1
26/23 29/21 29/25
32/19 32/20 38/7
39/6 44/5 54/20
55/17 56/16 56/22
57/13 59/12 65/12
73/11 73/12 74/7
anyway [1]   61/9
apologize [5]   36/22
37/14 47/24 48/20
57/15
apparent [1]   11/23
appeal [2]   8/22
21/23
appealable [1]
40/10
APPEARANCES [2]   2/6
3/1
appellate [6]   10/12
24/2 35/9 61/13
61/14 62/15
apple [1]   66/16
applicable [1]   51/8
applied [2]   31/11
70/4
applies [5]   22/23
34/8 36/2 51/17
56/2
apply [3]   27/6
45/23 46/6
appreciate [2]   67/6
74/23
appropriate [2]
10/3 27/23
appropriately [2]
8/25 9/21
April [2]   1/23 24/3
arbitration [21]
4/9 8/8 9/11 11/10
11/22 13/7 14/23
15/7 15/15 16/19
18/24 19/9 19/19
20/2 21/14 21/25
22/6 23/3 23/9
74/18 74/18
arbitrational [1]
14/18

**A**

arbitrator [1]   20/7
arbitrators [2]
19/22 19/25
arbitrators' [1]
19/25
Archer [2]   75/18
75/19
are [104]
aren't [3]   70/7
70/11 71/18
arguably [1]   35/25
argue [5]   9/3 9/9
14/11 20/23 32/4
argues [2]   29/12
65/20
arguing [1]   57/16
argument [19]   1/24
5/4 5/23 18/7 18/10
18/11 24/13 24/20
33/22 47/19 48/3
49/2 49/2 56/14
61/19 68/21 68/22
72/10 73/21
arguments [6]   5/11
5/16 14/8 18/3
19/11 46/23
ARNOLD [35]   1/3
2/23 4/18 5/21 6/10
8/11 11/4 11/5 14/4
14/6 14/14 14/15
14/18 14/21 14/22
14/24 15/3 15/6
16/3 16/3 16/15
16/17 17/13 17/14
17/18 20/3 22/8
25/19 26/1 38/19
38/20 45/6 73/13
73/18 74/16
around [1]   7/18
as [88]
ascertain [1]   59/7
ASHBY [2]   3/11 6/1
aside [1]   47/2
ask [10]   11/14
12/12 14/1 17/22
27/20 27/23 28/16
35/9 45/4 55/13
asked [2]   7/17 26/2
asking [3]   42/23
53/3 55/18
aspect [2]   71/5
71/9
asserted [3]   29/1
36/13 36/24
asserting [2]   32/14
32/20
assertions [1]
33/14
assess [1]   50/15
assessment [1]   11/9
asset [1]   65/9
assets [3]   65/7
65/7 65/20
assume [2]   4/5 15/6
assumed [1]   70/23
Assuming [1]   31/23
attach [1]   27/7
attached [1]   15/11
attended [1]   71/21
attention [1]   74/1
attorney [2]   16/17
38/21
authority [13]   8/3
8/9 8/10 8/12 8/18
8/21 9/20 13/5

18/17 19/10 22/21
29/3 39/3
available [1]   39/16
avoided [1]   64/21
award [9]   11/5
14/15 14/18 14/23
15/7 15/9 15/15
15/17 25/19
awards [16]   4/9 8/8
9/11 11/10 11/16
11/22 16/11 16/19
18/24 19/9 20/2
20/17 21/14 21/25
22/6 23/9
aware [2]   17/19
73/25
away [2]   36/5 64/20

**B**

back [13]   11/24
20/23 24/24 26/8
26/12 26/15 26/17
26/19 28/3 30/12
39/7 66/21 69/18
bad [3]   45/17 46/1
46/6
bad-faith [1]   45/17
bald [1]   33/14
BALLARD [1]   3/4
ban [1]   21/18
bankruptcy [2]
65/22 65/25
BARILLARE [2]   3/8
6/9
BARRETO [1]   1/14
2/14
base [3]   50/17
50/21 50/22
based [7]   18/10
18/12 33/3 46/17
47/15 48/4 63/16
basic [1]   58/22
basically [1]   35/11
basis [4]   18/3 18/7
43/14 47/11
be [114]
bear [1]   18/9
because [65]   5/3
5/16 7/19 7/24
10/10 11/3 13/6
14/2 15/12 15/17
16/21 20/18 21/6
23/2 23/16 24/14
26/16 27/3 27/24
28/10 32/5 32/24
35/2 36/3 36/7
37/22 39/22 43/19
44/1 45/6 46/10
47/7 47/10 47/12
49/9 50/3 50/6 51/7
51/14 51/25 52/1
53/6 54/9 54/18
54/20 55/3 56/2
56/8 57/19 57/23
58/9 59/11 60/8
62/11 63/21 63/25
68/8 69/6 69/9
69/19 72/4 72/12
become [2]   5/4
11/23
becomes [3]   22/22
49/20 65/15
been [17]   21/1 23/2
23/17 23/21 23/23
23/25 24/4 32/5

32/25 37/2 57/12
64/7 69/24 71/14
73/7 74/11 74/17
before [13]   2/3
5/15 9/1 9/21 14/24
19/25 21/15 26/12
36/10 56/5 62/1
67/20 68/5
beginning [1]   3/23
behalf [7]   5/9 5/21
6/5 6/9 6/21 7/22
68/10
being [7]   12/6 21/7
23/13 23/13 25/6
40/20 54/15
belabor [1]   42/11
belief [1]   33/5
believe [4]   8/25
14/21 19/9 38/10
belong [1]   24/10
belts [1]   67/13
bench [2]   23/10
23/11
beneficial [1]
27/16
beneficiaries [10]
30/17 51/18 51/22
52/6 55/22 58/10
58/14 59/24 60/10
60/11
beneficiary [24]
8/1 19/12 28/5
28/20 38/24 44/25
45/10 47/18 48/3
50/1 52/16 53/16
54/7 54/19 54/23
55/7 56/4 56/12
58/9 58/18 59/4
59/14 60/22 68/2
benefit [3]   54/5
54/11 54/13
benefited [1]   54/15
benefiting [2]
54/18 59/25
benefits [18]   29/18
29/24 30/14 50/10
50/12 50/14 50/16
51/3 51/6 53/14
53/19 53/19 54/11
56/9 57/21 59/21
60/5 67/19
best [1]   72/10
BETH [2]   3/4 6/20
better [1]   44/10
between [5]   11/15
34/10 60/7 62/5
67/18
beyond [1]   73/16
big [3]   61/24 61/25
65/8
bigger [3]   66/21
66/23 66/25
BIGGS [2]   3/11 6/1
binding [1]   17/25
bit [6]   16/20 22/10
39/5 51/5 63/13
63/16
bite [1]   66/15
black [1]   58/20
BOCKIUS [1]   3/7
Bonnie [2]   75/18
75/19
both [7]   6/17 30/23
31/19 34/2 58/21
64/9 71/15
bother [1]   27/20

bottle [1]   20/7
bottom [1]   73/8
bound [1]   54/13
Brad [1]   5/10
BRADLEY [2]   2/12
7/22
breach [20]   8/2
19/18 28/5 28/11
28/22 28/25 30/6
34/9 38/4 43/13
43/22 44/19 44/23
44/23 45/2 45/11
45/21 46/13 46/17
65/21
break [3]   16/8
22/11 56/9
BRETT [2]   1/15 2/15
brewing [1]   15/13
BRIAN [2]   3/11 6/1
brief [13]   11/21
15/23 16/18 27/10
32/13 47/16 63/18
66/10 66/19 66/21
66/23 66/25 72/23
briefed [3]   63/5
63/7 66/22
briefing [9]   32/19
62/5 62/8 66/5 66/6
66/17 72/6 72/15
73/8
briefly [3]   13/22
16/14 56/17
briefs [1]   72/7
bring [1]   51/21
bringing [1]   74/1
broadly [1]   42/14
brought [2]   38/24
67/7
bucket [1]   40/2
Burke [16]   28/21
30/16 31/21 32/2
32/13 33/8 33/13
36/25 37/4 37/23
57/17 61/10 64/24
68/20 72/12 72/20
Burke's [2]   11/16
28/17
business [2]   10/17
65/19
busy [1]   71/6
BUTLER [3]   2/8 2/9
5/9
button [2]   41/19
42/3

**C**

C.A [2]   1/6 1/16
cabining [1]   67/12
CAIRES [2]   1/13
2/14
calculated [1]
12/14
calculous [1]   63/23
California [4]
36/25 37/4 37/8
65/24
calling [1]   38/8
CAMACHO [1]   1/14
2/14
came [3]   4/19 42/21
66/21
can [44]   5/14 8/13
8/16 9/3 9/21 10/20
14/1 14/25 16/9
16/9 20/14 21/9
21/22 22/2 23/4

23/7 28/7 30/5 32/7
35/25 40/1 42/4
42/14 42/18 43/21
45/22 46/14 48/9
48/14 49/6 52/5
52/6 54/17 54/23
58/2 58/11 58/25
59/1 59/17 59/17
67/11 69/14 72/7
72/22
can't [11]   20/23
24/23 32/24 40/24
43/3 47/24 49/7
50/18 67/15 67/17
69/10
cannot [4]   8/20
39/9 43/9 55/14
care [1]   50/23
carry [1]   65/19
carve [1]   52/22
case [27]   5/21 6/2
7/25 8/11 9/19
18/18 19/22 20/3
20/18 21/18 22/7
22/8 23/9 24/10
25/12 25/23 35/15
37/11 47/11 47/11
59/2 63/2 63/3 64/4
70/24 71/25 73/23
case's [1]   17/2
cases [19]   9/11
14/4 14/6 14/7 20/4
20/4 20/12 25/24
41/13 42/8 47/8
53/11 62/15 62/21
63/1 65/24 71/14
71/15 71/16
catch [1]   51/15
catch-all [1]   51/15
categories [1]
50/15
cause [13]   18/18
18/20 19/1 34/5
34/11 35/4 35/13
39/20 40/2 40/5
40/6 53/1 54/5
cease [1]   70/21
certain [2]   29/17
30/14
certainly [2]   42/9
62/7
CERTIFICATE [1]
75/13
certify [1]   75/15
chain [1]   66/19
chair [1]   62/19
CHAN [2]   1/4 2/24
chance [1]   14/11
Chancellor [1]
55/20
change [5]   50/18
51/7 51/20 60/5
67/19
changed [2]   37/25
39/9
changes [2]   63/23
67/15
changing [1]   67/21
CHRISTENSEN [4]
2/18 2/18 5/20 5/20
Circuit [1]   22/20
circumstances [1]
70/4
cite [1]   9/21
citeable [1]   9/14
cited [5]   11/13

# C

cited... [4] 19/24 42/15 65/23 69/4
citing [1] 8/8
claim [22] 22/1 30/8 30/21 31/17 31/17 31/20 31/22 31/23 32/2 32/6 32/23 32/24 33/3 33/16 33/16 33/18 36/23 37/2 37/3 37/19 37/19 43/13 43/17 44/20 45/12 54/7 55/10 56/23 57/1 57/3 57/5 57/6 57/7 57/9 57/11 57/11 57/12 57/23 68/7 71/11 71/22
claiming [2] 19/18 20/6
claims [16] 28/25 30/7 31/15 32/12 32/14 36/12 36/24 36/24 37/10 38/11 43/22 45/3 45/24 46/11 51/13 68/11
clarification [1] 68/5
clarify [1] 75/7
class [1] 45/7
clause [7] 52/24 53/18 54/9 54/9 54/17 54/20 54/23
clauses [2] 52/23 59/25
clear [17] 4/12 22/21 24/18 30/4 31/24 43/12 44/4 45/21 48/4 50/7 58/9 58/14 64/10 64/15 69/4 69/18 70/18
clearer [1] 59/8
clearly [10] 9/22 13/16 20/10 31/24 34/21 43/16 52/18 55/12 56/22 69/20
clerk [2] 48/18 48/20
click [1] 41/19
clicking [1] 42/3
clients [2] 6/21 46/14
clients' [1] 20/4
close [7] 44/16 49/16 51/5 54/10 54/12 69/10 70/22
closed [1] 56/13
closely [2] 48/12 71/18
closely-held [1] 71/18
closer [1] 69/2
closes [2] 49/18 56/6
closing [4] 29/22 29/23 67/18 67/21
Coalition [3] 3/5 5/1 13/23
cocounsel [1] 5/22
COHEN [9] 2/21 5/22 16/16 27/11 27/15 38/14 58/24 71/6 71/15
colleague [2] 6/11 68/6

college [1] 53/22
come [5] 10/24 26/8 26/12 35/1 39/4 55/14 69/10 74/15
comes [3] 12/2 14/7 40/8
coming [4] 10/2 10/2 21/18 73/15
commenced [1] 3/23
committed [2] 62/12 62/22
communicate [1] 33/6
communicating [1] 42/22
communications [3] 29/13 43/1 46/18
community [1] 71/9
companies [1] 71/18
company [12] 53/25 53/25 54/3 54/12 57/8 57/9 57/11 65/22 71/3 71/5 71/8 71/9
comparable [1] 51/3
compel [1] 74/18
compelled [1] 12/21
compensation [1] 50/23
complaint [15] 11/13 22/1 29/2 29/4 29/10 29/11 29/20 30/25 32/18 37/22 39/22 61/17 64/25 68/14 70/10
complete [1] 47/12
completely [2] 30/25 55/9
compliance [1] 50/15
components [2] 51/1 51/7
composed [1] 50/24
compromised [1] 16/20
concerned [1] 44/7
concerning [6] 27/13 33/6 33/10 35/17 70/6 70/15
conclude [2] 20/19 51/19
concluded [1] 75/10
conclusory [5] 33/13 69/25 70/6 70/14 70/15
concrete [1] 33/14
conduct [4] 13/15 66/2 66/7 70/18
confer [1] 52/10
conferred [1] 27/11
confidential [4] 10/17 12/8 13/6 13/8
confidentiality [5] 19/15 19/16 19/18 19/19 20/8
confined [1] 66/22
confines [1] 13/17
conflict [1] 14/8
confusing [2] 31/18 36/12
Confusingly [1] 32/3
connection [2] 27/4 27/17

consider [1] 63/4
considered [2] 40/11 40/2
considering [1] 19/20
constructed [1] 65/20
construction [3] 58/22 59/6 60/17
constructive [5] 33/21 40/1 40/1 40/10 41/5
constructively [1] 31/3
contains [1] 49/11
contemplates [1] 49/12
content [2] 70/13 70/13
contents [1] 27/13
context [4] 11/11 12/6 42/21 62/24
continual [3] 11/16 11/25 70/8
continue [3] 12/20 35/20 42/2
continued [1] 11/10
continuing [3] 50/10 50/12 51/9
contract [44] 8/2 28/5 28/23 28/25 29/13 30/5 30/6 30/7 31/10 34/9 34/18 34/19 36/2 38/4 42/16 43/13 43/15 43/22 44/19 45/2 45/2 45/3 45/11 45/24 46/2 46/4 46/5 46/17 46/19 49/6 49/8 52/21 53/18 53/20 54/17 54/21 55/24 58/22 59/6 59/22 60/7 60/17 60/22 65/21
contracted [1] 45/17
contracts [2] 29/1 53/12
contradictory [1] 54/25
contrary [1] 52/20
contrast [1] 11/15
control [7] 12/19 13/15 13/15 51/19 52/20 65/1 71/12
controlling [2] 71/2 71/3
controls [1] 55/2
conveyed [1] 29/19
convince [1] 48/9
CORNET [32] 1/13 2/13 4/16 4/17 4/18 4/21 5/9 6/2 6/10 7/16 7/22 7/25 8/11 11/3 14/17 15/19 15/25 16/11 16/18 16/24 16/25 19/5 20/17 20/18 22/7 23/9 26/4 26/5 42/8 73/13 74/10 74/16
CORP [10] 1/8 1/8 19/8 19/18 19/21 57/1 57/1 57/2 57/8 68/8
corporate [2] 65/10

70/5
corporation [2] 57/2 59/20
corporations [1] 65/9
correct [8] 8/6 37/13 37/13 40/12 41/7 45/9 64/3 68/12
correctly [3] 30/16 33/8 33/17
could [7] 26/8 34/25 51/5 54/6 56/10 64/6 67/21
couldn't [3] 34/25 39/16 59/8
counsel [8] 2/13 2/23 3/5 3/16 5/14 6/16 58/2 68/1
counter [1] 60/20
counterfactual [1] 47/12
couple [3] 4/3 45/13 70/14
court [17] 1/1 2/3 7/4 8/24 10/15 11/14 11/20 18/18 22/2 25/4 25/7 61/13 61/14 66/4 75/13 75/19 75/20
court's [2] 18/16 55/3
courtroom [1] 3/23
courts [6] 10/12 10/14 59/6 59/9 60/19 71/20
covenant [1] 49/15
covenants [1] 49/21
covers [1] 38/11
create [3] 42/15 54/5 65/25
creates [1] 50/14
Crispo [1] 55/20
CULLEN [2] 3/8 6/11
current [7] 25/4 29/16 29/16 30/2 42/24 43/4 43/6
currently [1] 65/19
cut [1] 59/16
cv [2] 1/6 1/16

# D

D.C [1] 26/15
damage [1] 47/12
damages [7] 12/14 12/14 47/3 47/5 47/8 56/2 57/25
date [2] 41/18 69/4
day [7] 64/12 71/4 71/4 71/7 71/7 71/8 71/8
days [2] 67/20 72/8
de [4] 1/13 2/14 72/11 72/14
deal [2] 4/6 72/3
deals [1] 20/2
debt [2] 65/18 65/20
decide [7] 9/24 13/1 53/12 53/13 53/24 56/11 74/4
decided [2] 44/6 61/11
decides [1] 65/17
decision [14] 12/24 18/21 22/17 26/3

26/5 31/23 32/4 43/9 64/13 67/4 72/10 73/8 73/20
decisions [6] 19/22 19/25 65/4 65/6 65/11 65/11
declaration [3] 11/5 14/14 14/15
declarations [2] 20/16 20/17
deem [1] 25/8
Defendant [2] 1/19 6/2
defendant's [1] 68/8
defendants [5] 1/10 3/16 6/10 6/12 16/5
defendants' [1] 31/5
defense [4] 43/19 46/18 64/14 64/16
defer [1] 72/11 73/4 73/6 73/7
deference [2] 8/7 63/22
defined [1] 29/4
definite [1] 30/5
definition [3] 31/13 34/6 54/25
definitions [1] 29/10
DELAWARE [8] 1/2 2/1 49/7 52/18 53/10 54/16 58/25 63/1
demonstrates [1] 59/23
denied [1] 17/11
deny [1] 23/15
denying [1] 17/10
depending [1] 14/3
deposition [1] 15/1
depositions [1] 20/3
describe [1] 39/13
describes [1] 29/7
despite [2] 32/9 41/25
details [1] 33/6
determine [1] 21/25
determined [1] 31/10
determines [1] 27/16
determining [2] 25/5 58/17
develop [1] 35/17
did [7] 7/2 25/7 39/21 41/18 43/18 50/2 56/22 57/25 61/11 62/11 63/21 66/9
didn't [24] 15/4 15/10 21/18 22/7 26/22 33/1 33/15 36/7 37/18 38/25 39/21 44/20 46/5 49/23 49/25 51/20 59/10 61/23 64/16 64/24 66/25 67/22 68/6 68/23
difference [5] 11/4 34/10 41/5 47/3 73/1
different [25] 4/3

| | | | | |
|---|---|---|---|---|
| **D** | 53/8 | **economic [1]** 66/11 | 30/14 30/15 31/7 | **expressly [3]** 49/10 |
| **different... [24]** | **district [5]** | **effect [1]** 49/13 | 31/10 ... 79/10 31/7 | 49/18 75/18 |
| 4/20 4/21 9/17 | 1/2 2/3 16/21 75/20 | **effective [1]** 28/6 | **entitlement [2]** | **extent [11]** 8/21 |
| 10/10 11/19 14/3 | **do [92]** | **either [7]** 21/12 | 23/16 60/22 | 10/20 15/14 20/6 |
| 14/15 15/9 19/25 | **docket [16]** 7/9 | 27/18 42/15 47/4 | **entity [3]** 65/5 | 40/15 41/3 43/13 |
| 25/24 35/15 41/20 | 11/22 13/15 15/3 | 47/5 73/5 73/13 | 65/6 70/16 | 43/23 45/20 54/24 |
| 44/11 46/12 46/23 | 18/9 18/11 18/12 | **eliminate [2]** 35/12 | **equally [1]** 45/23 | 60/6 |
| 46/23 47/13 50/14 | 21/9 21/12 22/22 | 60/5 | **equitable [2]** 64/13 | **extraneous [1]** |
| 50/15 50/25 55/21 | 23/14 23/23 24/4 | **eliminated [4]** 35/3 | 64/13 | 51/21 |
| 55/25 59/18 62/16 | 74/2 74/3 75/7 | 35/4 35/18 35/25 | **ERIK [2]** 1/3 2/23 | **extreme [1]** 70/3 |
| **differently [2]** | **docs [1]** 29/3 | **elimination [14]** | **error [3]** 31/24 | |
| 38/1 64/7 | **document [4]** 18/17 | 29/18 31/8 31/11 | 43/12 43/17 | **F** |
| **direct [4]** 8/2 37/7 | 22/24 27/12 27/14 | 31/13 33/22 34/3 | **especially [1]** | **F/K/A [2]** 1/8 1/8 |
| 56/23 59/24 | **documents [11]** 4/6 | 34/5 34/17 34/21 | 11/11 | **face [1]** 32/16 |
| **directed [1]** 14/1 | 4/20 10/12 12/17 | 35/14 36/8 39/4 | **ESQ [9]** 2/9 2/12 | **fact [10]** 30/25 |
| **directly [4]** 19/12 | 18/25 23/1 23/17 | 39/14 39/18 | 2/18 2/21 3/4 3/8 | 32/9 35/7 39/21 |
| 32/12 50/9 56/2 | 24/7 24/11 27/3 | **ELON [7]** 1/9 57/7 | 3/8 3/11 3/14 | 41/24 41/24 44/22 |
| **disagree [2]** 11/9 | 42/15 | 65/4 65/8 65/13 | **essence [1]** 34/6 | 55/2 56/12 63/7 |
| 48/8 | **does [7]** 15/5 20/20 | 65/13 65/14 | **essentially [6]** | **factor [2]** 71/17 |
| **discharge [5]** 33/21 | 25/7 33/11 39/15 | **else [12]** 24/6 25/1 | 23/10 44/13 63/11 | 71/17 |
| 40/1 40/2 40/10 | 45/13 48/15 | 26/12 32/19 38/7 | 65/7 66/15 71/4 | **facts [5]** 28/15 |
| 41/6 | **doesn't [16]** 18/8 | 54/20 56/5 56/16 | **establish [3]** 37/6 | 33/14 35/16 37/5 |
| **discharged [3]** 31/3 | 27/4 29/20 29/24 | 57/13 59/5 73/11 | 37/7 71/21 | 70/9 |
| 31/6 34/11 | 29/25 45/23 46/2 | 74/7 | **estoppel [14]** 28/23 | **fail [1]** 10/4 |
| **disclaimer [1]** 48/4 | 47/3 51/3 51/19 | **EMILY [2]** 1/14 2/14 | 28/25 30/7 30/8 | **failed [3]** 7/20 |
| **discovery [15]** | 51/20 54/11 54/12 | **EMMANUEL [2]** 1/13 | 30/21 38/5 43/22 | 37/5 72/1 |
| 14/19 15/8 15/12 | 66/5 67/14 71/12 | 2/13 | 44/20 45/1 45/11 | **faith [3]** 45/17 |
| 15/13 15/16 17/20 | **doing [2]** 21/19 | **employed [1]** 29/22 | 46/3 47/7 47/8 | 46/1 46/6 |
| 17/21 17/23 19/23 | 71/2 | 30/1 | 45/10 | **false [3]** 57/22 |
| 22/14 22/17 27/19 | **Dolan [1]** 54/22 | **employee [7]** 40/9 | **ether [1]** 70/9 | 57/22 57/23 |
| 55/1 64/21 73/15 | **don't [65]** 4/7 4/7 | 44/5 44/16 45/18 | **even [24]** 15/19 | **familiar [1]** 15/22 |
| **discretion [23]** | 5/16 7/4 8/16 9/10 | 51/2 52/25 56/11 | 20/5 20/8 21/7 | **FAQ [1]** 29/6 |
| 8/15 9/8 9/9 13/8 | 9/10 10/5 10/8 11/9 | **employees [31]** | 22/12 25/4 31/9 | **far [3]** 24/13 24/14 |
| 13/14 21/24 61/12 | 14/25 15/4 17/3 | 29/21 42/22 42/23 | 34/7 34/18 35/13 | 36/3 |
| 62/10 62/12 62/13 | 17/15 18/21 21/2 | 43/5 43/18 44/2 | 36/1 45/1 50/18 | **farther [1]** 36/5 |
| 62/14 62/22 62/23 | 21/4 21/7 22/5 22/8 | 44/7 50/10 50/12 | 56/9 59/19 60/16 | **favor [1]** 47/15 |
| 62/24 63/3 63/10 | 23/16 24/4 24/9 | 51/9 52/3 52/24 | 61/18 62/23 66/1 | **favorable [3]** 50/24 |
| 64/1 69/1 69/9 | 24/9 24/19 24/24 | 52/25 53/5 54/3 | 66/4 66/12 67/2 | 51/4 51/8 |
| 69/10 69/19 72/16 | 25/18 26/23 28/9 | 54/5 54/6 54/11 | 70/22 70/23 | **FCRR [1]** 75/19 |
| 73/6 | 28/14 28/15 33/24 | 54/16 55/8 57/18 | **event [3]** 29/18 | **federal [2]** 40/7 |
| **discrimination [1]** | 34/8 35/14 35/22 | 57/20 58/13 59/21 | 32/23 39/13 | 40/9 |
| 9/18 | 36/3 37/25 38/10 | 59/23 60/1 60/10 | **events [1]** 25/4 | **feel [3]** 4/5 40/13 |
| **discuss [2]** 26/9 | 39/22 40/1 41/8 | 60/22 67/17 67/23 | **ever [2]** 43/14 71/9 | 42/7 |
| 61/23 | 42/11 42/15 43/25 | 70/16 | **every [3]** 18/25 | **few [1]** 19/8 |
| **discussed [2]** 12/1 | 44/8 47/19 50/23 | **employees' [1]** 43/9 | 44/16 71/4 | **fiduciary [1]** 65/12 |
| 13/18 | 53/12 56/11 56/22 | **employer [1]** 37/6 | **everybody [2]** 25/11 | **figure [1]** 16/9 |
| **discusses [1]** 30/25 | 60/8 60/12 60/19 | **employment [3]** | 47/25 | **file [9]** 12/17 |
| **discussion [1]** | 62/2 62/19 64/11 | 30/24 31/12 40/7 | **everything [3]** 12/3 | 12/17 12/21 15/10 |
| 51/18 | 64/15 68/1 68/11 | **encompasses [1]** | 49/18 65/8 | 20/1 25/23 27/21 |
| **dismiss [24]** 11/12 | 69/7 69/19 71/7 | 20/11 | **evidence [1]** 39/23 | 27/22 27/24 |
| 21/15 26/6 28/21 | 74/2 74/21 75/3 | **end [1]** 64/12 | **exactly [2]** 12/25 | **filed [21]** 7/3 |
| 31/19 32/1 32/6 | **done [8]** 5/18 29/19 | **endeavor [1]** 59/6 | 41/1 | 14/18 14/24 15/6 |
| 32/7 32/10 37/11 | 36/20 46/16 48/21 | **enforce [11]** 34/20 | **example [3]** 9/18 | 15/23 15/24 15/25 |
| 37/12 43/17 57/5 | 64/6 64/6 67/22 | 45/22 46/14 52/6 | 44/10 53/20 | 16/3 16/18 20/20 |
| 57/6 57/7 61/7 | **down [3]** 42/21 | 52/6 54/6 54/18 | **except [2]** 52/17 | 22/12 22/22 23/1 |
| 61/23 63/12 64/17 | 63/11 65/18 | 56/5 56/10 58/25 | 59/25 | 23/2 23/13 23/22 |
| 68/7 68/10 68/23 | **du [1]** 58/21 | 59/2 | **exceptional [1]** | 25/21 26/4 27/4 |
| 69/16 69/17 | **duplicative [1]** | **enforceable [4]** | 70/4 | 31/22 37/2 |
| **dismissal [1]** 57/3 | 46/9 | 34/19 42/15 43/15 | **exempt [1]** 49/17 | **filing [4]** 7/17 |
| **dismissed [11]** 30/7 | **duties [1]** 65/12 | 49/16 | **exercise [4]** 62/10 | 11/25 15/11 25/25 |
| 30/21 31/16 31/21 | | **enforced [2]** 42/18 | 62/12 62/24 63/9 | **filings [2]** 11/10 |
| 32/5 32/25 33/18 | **E** | 54/24 | **exercised [2]** 63/3 | 16/22 |
| 37/2 43/13 57/12 | **e-mail [11]** 29/9 | **enough [7]** 46/20 | 63/3 | **final [2]** 36/10 |
| 64/22 | 29/9 29/12 29/14 | 52/25 58/14 62/6 | **exercising [1]** | 69/15 |
| **dispositive [4]** | 30/1 31/9 34/15 | 68/20 71/20 72/8 | 61/12 | **find [17]** 9/10 9/10 |
| 27/5 52/19 62/25 | 39/12 40/23 42/21 | **entanglement [1]** | **exist [2]** 35/20 | 10/5 11/4 19/17 |
| 71/17 | 42/25 | 66/11 | 71/12 | 20/18 60/18 61/15 |
| **dispute [13]** 15/13 | **e-mails [1]** 41/25 | **entire [3]** 33/3 | **existing [3]** 39/9 | 62/2 62/14 64/1 |
| 17/21 17/23 19/23 | **E.I. [1]** 58/21 | 43/19 74/3 | 39/10 39/12 | 64/13 66/5 69/20 |
| 22/17 27/20 30/24 | **E.I. du Pont [1]** | **entirely [5]** 13/8 | **exists [1]** 71/10 | 71/16 71/20 73/6 |
| 35/23 41/10 41/16 | 58/21 | 24/8 61/11 66/12 | **explained [1]** 11/20 | **finding [1]** 69/10 |
| 41/22 46/11 46/14 | **each [2]** 46/11 | 67/1 | **explanation [2]** | **fine [2]** 48/1 61/12 |
| **disregarding [1]** | 46/24 | **entities [5]** 6/16 | 40/23 55/21 | **finish [1]** 26/12 |
| 70/5 | **easier [1]** 33/25 | 65/7 68/9 68/10 | **explicit [1]** 53/2 | **fire [2]** 40/2 40/25 |
| **distinct [1]** 38/2 | **easiest [1]** 72/3 | 70/21 | **express [1]** 59/3 | **fired [7]** 34/2 35/4 |
| **distinctions [1]** | **easily [1]** 67/11 | **entitled [7]** 29/23 | **expressed [1]** 21/17 | 36/6 40/2 40/20 |

**F**

fired... [2]  41/19
41/25
firing [1]  40/4
firings [1]  39/20
first [21]  4/6 4/8
4/18 5/2 5/3 5/15
10/19 20/1 23/22
28/4 28/9 30/24
38/8 38/8 38/23
42/22 48/25 58/17
61/4 69/25 74/14
fit [2]  8/14 13/17
five [6]  26/8 26/11
26/18 72/24 72/24
75/2
five minutes [3]
26/8 26/11 26/18
FKA [2]  68/9 68/9
flight [1]  26/17
focus [1]  29/1
FOLKINS [2]  1/15
2/15
folks [1]  40/19
41/25 45/21
follow [2]  44/20
46/1
following [3]  11/24
39/14 54/10
footnote [4]  66/13
66/20 67/2 68/20
forced [1]  40/9
foregoing [1]  75/15
forfeiture [14]
61/12 61/15 61/24
62/2 63/4 63/19
64/1 64/12 66/5
67/4 68/17 69/11
69/21 73/2
fork [1]  34/15
form [3]  12/18 30/6
70/6
forth [3]  15/7 28/4
29/14
forward [3]  5/18
8/22 12/18
found [10]  21/14
30/16 32/14 33/8
36/1 36/25 37/4
55/20 57/17 61/24
frankly [5]  7/19
18/6 40/22 46/21
65/10
fraud [35]  28/5
31/17 31/17 31/19
31/22 31/23 32/1
32/6 32/11 32/24
33/3 33/10 33/16
33/16 33/18 36/16
38/6 43/12 43/17
56/17 56/18 57/1
57/3 57/5 57/6 57/7
57/9 57/11 57/14
57/16 57/21 58/11
68/5 68/7 68/11
free [2]  4/6 22/23
friend [1]  43/11
FROESE [2]  1/3 2/23
full [1]  46/5
fulsome [3]  66/20
66/25 68/23
fulsomely [1]  62/4
fun [1]  65/14
further [2]  27/13
74/8
Furthermore [1]

59/5

**G**

gave [1]  51/12
GEDDES [2]  3/11 6/1
general [4]  29/14
30/2 39/13 51/15
generally [4]  10/13
29/19 29/19 68/19
generous [1]  72/24
genie [1]  20/23
get [43]  4/4 4/5
4/8 4/24 5/15 5/17
7/8 13/25 14/12
17/1 17/2 21/9 22/6
22/18 23/20 24/8
25/16 25/20 28/2
28/8 28/16 39/14
40/23 45/11 45/12
47/8 47/9 48/7
50/19 51/10 52/23
52/23 53/12 56/14
60/8 64/14 64/24
65/15 66/23 69/9
71/19 73/9 75/6
gets [6]  35/5 43/13
44/17 44/24 50/24
64/15
getting [2]  36/5
69/25
give [23]  8/13 8/21
14/11 23/8 24/11
43/18 44/10 47/16
48/20 49/24 49/25
50/13 52/25 53/14
58/19 60/19 60/21
62/4 66/15 66/18
69/13 72/7 72/23
given [6]  20/8
29/21 52/19 53/5
63/13 67/5
gives [3]  53/18
58/23 60/4
go [22]  5/3 5/4
14/16 21/9 22/11
26/13 28/6 28/9
28/22 36/3 36/6
36/19 37/18 39/2
53/9 56/8 58/8
63/14 63/15 67/3
69/18 71/14
goes [6]  5/2 18/24
18/25 24/20 50/3
64/20
going [64]  4/4 8/17
8/22 10/1 10/15
12/18 12/20 12/21
13/2 14/10 14/16
15/17 16/7 17/23
21/11 21/19 21/19
21/20 22/3 22/4
22/10 22/15 22/17
23/8 23/12 23/14
24/7 24/10 25/12
26/2 26/5 26/12
26/24 27/19 27/23
27/24 38/1 38/2
40/21 44/13 46/11
46/22 47/4 47/6
47/6 47/10 53/21
53/22 53/24 61/15
61/19 62/13 63/9
63/17 67/3 69/9
69/12 71/19 71/24
72/14 73/6 73/7
74/15 74/25

golden [1]  44/17
good [50]  4/1 5/5
5/19 5/25 6/8 17/17
18/18 18/20 19/1
24/25 26/16 39/13
25/16 35/1 40/20
50/19 61/25 74/20
74/21
gotten [2]  35/2
70/22
GRAE [2]  1/13 2/14
grant [1]  21/8
granted [4]  7/9
17/3 28/21 32/2
ground [1]  22/14
grounds [1]  22/1
group [1]  42/10
guess [4]  16/7
19/17 34/23 59/24
guys [1]  44/14

**H**

had [12]  11/24
33/20 33/24 40/24
46/5 47/13 47/19
56/13 61/25 62/5
66/10 67/20
hadn't [1]  67/2
half [1]  73/20
hallmark [1]  58/16
hallucinate [1]
15/4
hand [1]  48/16
happen [1]  40/8
happened [1]  47/13
happening [1]  56/8
hard [2]  36/21
61/17
hardcore [1]  40/21
harder [1]  47/1
harm [1]  12/2
harmonize [5]  55/3
55/23 56/3 59/10
67/12
has [28]  7/4 11/20
18/5 18/9 18/11
18/12 18/18 18/25
19/21 27/20 30/8
32/25 34/6 39/4
39/5 39/24 43/8
50/24 51/1 51/8
53/13 57/23 60/12
63/5 64/4 65/21
74/11 74/17
hasn't [1]  57/11
hate [2]  10/12 72/5
have [117]
haven't [4]  16/22
23/25 60/3 70/22
having [3]  10/12
32/22 70/16
HAWKINS [3]  1/3
2/23 30/22
he [24]  5/2 5/23
27/16 34/2 37/24
38/25 42/20 48/15
56/20 56/25 57/10
61/11 61/24 62/14
63/3 65/6 65/10
65/12 65/17 65/21
67/7 69/20 71/8
72/7
he'll [1]  6/5
he's [2]  69/9 71/7

hear [6]  11/2 20/14
45/2 57/13 59/9
61/4
heard [3]  22/13
55/13 69/7
hearing [4]  9/17
9/20 11/24 21/17
heavily [1]  50/9
held [1]  71/18
helpful [2]  48/13
49/24
her [1]  48/23
here [26]  4/19 5/16
11/12 12/19 17/24
29/13 30/22 32/22
35/21 49/2 49/2
51/23 52/24 53/25
54/2 56/2 59/8
60/21 61/14 61/16
68/3 68/22 69/21
70/8 72/2 73/12
here's [4]  9/25
61/10 61/22 71/23
hereby [1]  75/15
hereto [1]  52/10
herring [1]  39/5
Hey [5]  43/2 44/6
44/14 50/13 56/7
him [5]  37/7 48/16
48/20 63/22 64/1
himself [1]  65/18
hired [1]  35/19
his [11]  27/16
30/15 42/14 61/12
62/12 62/14 63/9
63/19 65/7 69/20
72/17
hold [1]  22/15
holding [1]  57/8
HOLDINGS [5]  1/8
1/9 57/2 57/8 68/7
Honor [67]  4/11
4/25 5/6 5/8 5/19
5/25 6/8 6/14 7/2
7/21 8/20 11/8
12/10 12/23 13/12
14/5 15/21 16/14
17/7 19/10 19/13
20/22 22/19 25/15
26/7 27/1 27/9
27/25 28/19 34/4
34/12 37/13 38/10
38/13 41/15 43/11
45/14 46/7 47/21
48/6 49/20 50/2
50/6 51/16 51/23
52/17 53/8 55/13
56/18 57/15 58/7
58/16 60/24 63/13
62/8 64/8 65/23
66/4 66/14 66/24
68/13 69/2 69/22
72/18 73/17 75/8
75/9
Honor's [1]  38/22
HONORABLE [1]  2/3
hopefully [1]  48/9
hourly [2]  50/19
50/20
Housing [1]  53/11
how [12]  9/23 15/8
15/16 34/23 40/13
40/14 47/14 50/13
50/23 61/18 61/21
72/7
huge [1]  61/19

HUGHES [1]  2/3
hung [2]  42/11
hypocritical [2]
19/17 25/23
hypothetical [1]
44/11
hypothetically [1]
16/8
hypotheticals [2]
35/9 35/10

**I**

I'd [2]  5/17 38/22
I'll [5]  5/2 28/16
28/22 62/18 74/20
I'm [56]  4/4 4/14
8/17 10/9 13/2
13/25 14/12 14/16
15/2 15/4 15/21
16/2 16/7 16/9
16/20 17/18 21/11
21/19 21/20 22/3
22/3 23/7 23/9
23/12 24/10 26/1
26/5 26/12 26/24
27/24 29/9 35/6
38/2 38/8 38/14
41/16 42/1 42/1
42/2 48/2 48/16
51/24 53/21 61/14
61/15 61/15 63/17
64/13 66/17 66/24
69/8 69/12 72/5
73/6 73/7 74/25
identify [1]  59/7
identifying [3]
10/18 11/1 12/12
identity [1]  66/10
ill [1]  66/1
imminent [1]  71/24
imperative [1]
28/24
imposed [1]  49/3
imposing [1]  72/6
impossible [1]
47/11
improper [1]  12/7
improperly [5]  9/4
20/19 23/1 23/13
27/3
improvident [1]
11/21
inaccurate [1]  68/8
inappropriate [1]
66/15
INC [4]  1/8 1/9
1/18 68/9
incentive [1]  50/23
include [1]  69/16
included [2]  16/19
39/20
including [3]  12/12
35/17 68/11
inconsistent [1]
32/18
independent [4]
18/18 19/1 19/1
65/9
individual [1]  9/10
individuals [6]
31/15 33/20 34/1
35/23 42/13 45/8
induce [2]  57/24
57/25
inequitable [4]
65/25 66/2 66/7

**I**

inequitable... [1] 66/8

inexplicably [1] 32/3

infer [1] 53/3

information [7] 10/16 10/17 10/18 12/12 12/13 12/15 33/4

informs [1] 26/3

inherent [2] 11/20 13/14

injustice [2] 71/21 71/24

ink [1] 31/1

instance [1] 31/11

instead [3] 33/23 35/3 44/12

insufficient [1] 65/19

insufficiently [1] 66/10

intend [2] 18/3 59/4

intended [17] 33/5 43/14 43/20 49/16 50/9 52/9 53/5 54/4 57/17 57/19 57/24 57/24 58/18 58/19 59/14 60/9 60/10

intending [1] 68/15

intent [8] 35/12 49/5 49/14 59/7 59/8 59/12 59/23 66/2

intention [1] 58/23

interest [6] 14/8 23/4 70/20 70/24 71/1 71/10

interesting [1] 70/24

interim [1] 67/18

intermingling [1] 65/6

interpretation [1] 55/15

intervene [10] 6/3 6/6 7/11 14/12 14/13 20/9 21/8 22/8 22/9 23/15

intervenors [1] 7/1

introduce [3] 5/10 5/14 6/16

introduction [1] 5/15

introductions [1] 5/18

involved [1] 15/23

irrelevant [4] 11/21 12/6 12/17 24/11

irrespective [1] 31/6

is [173]

isn't [5] 18/23 31/25 40/2 52/8 58/13

isolated [1] 52/1

issue [34] 7/25 11/25 12/24 14/19 15/13 24/14 28/20 28/22 29/3 32/17 32/21 37/23 38/2 38/25 41/9 41/20 44/25 51/23 60/3

61/10 62/8 63/4 63/8 64/1 64/8 64/14 66/6 66/11 66/24 67/1 71/14 71/15 72/4 72/19

issued [2] 12/16 29/6

issues [13] 7/25 9/22 9/24 11/17 11/18 21/15 28/14 35/17 38/23 46/22 46/24 67/11 74/13

it [149]

it's [81]

items [2] 14/22 18/20

its [6] 11/22 29/16 49/12 65/6 65/19 71/3

itself [2] 19/21 48/12

**J**

JAMISON [2] 3/14 6/4

January [1] 11/24

JESSICA [2] 1/14 2/14

job [1] 42/2

JODY [2] 3/8 6/9

Joe [1] 5/20

join [1] 7/3

JOSEPH [4] 1/4 2/18 2/23 30/23

judge [20] 2/3 11/16 28/17 28/21 30/16 31/21 32/2 32/13 33/8 33/13 36/25 37/4 37/23 64/24 68/20 72/20

Judge Burke [13] 28/21 30/16 31/21 32/2 32/13 33/8 33/13 36/25 37/4 37/23 64/24 68/20 72/20

Judge Burke's [2] 11/16 28/17

judge's [2] 9/12 9/13

judges [1] 35/9

judgment [4] 63/2 64/19 71/19 71/25

judicial [5] 9/23 11/14 22/22 24/15 27/5

just [69] 4/4 4/11 5/17 7/11 8/11 8/16 8/20 9/3 9/7 11/3 12/20 13/6 13/9 15/5 16/11 16/14 19/7 19/16 20/15 21/9 22/19 24/17 24/19 24/20 25/2 26/23 27/22 28/16 29/7 30/12 33/25 35/13 36/19 37/15 38/3 38/14 39/2 39/7 42/1 42/3 45/7 46/8 47/10 48/13 49/8 51/21 51/25 52/1 52/24 56/7 56/24 58/11 59/17 60/19 61/15 63/11

63/25 64/16 65/5 67/1 66/6 66/8 68/13 67/2 69/13 70/10 72/1 74/20 74/21

JUSTINE [1] 1/13 2/14

**K**

KAMERMAN [2] 2/21 5/23

KATE [2] 2/8 5/9

KATHERINE [1] 2/9

keep [12] 7/17 10/1 10/4 10/21 13/2 13/7 20/17 21/18 36/21 38/16 55/5 72/5

keeping [1] 10/9

KENNETH [2] 3/14 6/4

KILLIAN [3] 1/4 2/24 30/23

KIM [2] 1/14 2/14

kind [9] 14/9 15/9 35/21 59/23 60/6 70/9 71/17 71/23 73/13

KINDEL [2] 1/13 2/14

King [1] 2/1

KLEIN [1] 2/21

know [47] 7/16 8/23 9/8 10/3 10/9 14/2 14/25 19/24 21/8 22/7 22/13 23/4 28/14 31/24 33/5 33/24 34/24 35/21 36/3 37/19 39/24 40/8 40/13 41/24 42/1 47/17 47/19 48/24 58/20 60/16 60/16 61/7 62/19 63/1 68/25 69/6 69/7 69/8 69/24 71/17 72/19 73/4 73/5 73/15 73/22 74/21 75/3

knowingly [2] 57/22 57/23

Kusk [1] 16/16

**L**

lack [1] 65/20

laid [2] 35/23 65/3

language [2] 32/13 60/13

large [1] 65/14

largely [1] 74/14

last [9] 7/17 17/14 21/7 34/16 50/2 57/14 57/15 61/8 61/9

later [1] 22/11

LAURA [2] 1/4 2/24

law [15] 2/8 2/18 5/20 34/6 37/1 37/18 45/16 46/6 47/2 49/7 52/18 53/10 54/16 58/25 70/24 70/25

laws [2] 36/24 40/15

lawyer [2] 4/14 20/14

lawyers [1] 4/8

lay [1] 53/24

layoff [2] 35/24 35/3

layoffs [1] 35/24

lead [1] 6/12

least [14] 10/22 21/7 25/20 31/15 40/24 50/17 50/19 51/1 51/4 51/4 51/6 53/2 74/14 74/21

leave [2] 12/16 12/18

leaves [1] 34/22

legal [7] 8/4 19/11 19/11 22/1 37/20 53/21 59/21

less [6] 39/10 39/16 50/24 51/5 51/8 69/4

let [10] 5/3 11/2 17/22 26/22 37/24 38/14 45/4 51/16 53/23 63/17

let's [15] 5/18 16/11 26/18 28/22 28/3 28/3 33/24 36/19 38/12 39/2 39/7 58/8 61/4 68/2 68/17

letter [3] 58/21 72/7 72/23

letters [1] 15/12

letting [1] 25/11 56/4

level [2] 29/23 71/2

LEWIS [2] 3/7 6/9

liability [6] 32/8 32/15 32/17 32/23 37/7 60/25

liable [2] 33/1 57/10

LICHTEN [1] 2/11

like [17] 9/13 13/10 13/11 13/13 34/9 38/22 42/7 55/6 56/8 59/3 60/24 60/25 62/20 63/18 64/6 65/12 70/10

likely [3] 23/16 26/1 72/14

limit [1] 72/23

limited [3] 39/17 66/6 70/17

line [1] 23/8

LISS [1] 2/11

LISS-RIORDAN [1] 2/11

list [3] 54/2 59/20

listen [1] 5/17

litany [1] 65/24

little [10] 8/14 14/10 16/20 22/10 25/22 31/18 39/5 51/5 63/13 63/16

LLC [2] 2/8 2/18

LLP [3] 3/7 3/13 6/5

load [1] 65/21

loads [1] 65/17

local [3] 6/16 6/17 12/7

locked [1] 67/22

long [6] 23/22 24/1 24/5 51/5 57/15 72/8

look [24] 15/6 18/1 18/25 19/1 26/2 26/5 27/23 42/21 44/12 46/21 48/11 48/14 50/7 52/7 53/10 54/1 58/20 59/10 62/18 67/14 67/17 69/2 69/12 74/20

looked [1] 37/23

looking [6] 10/10 11/24 28/24 30/12 69/3 73/14

loose [1] 14/10

lose [2] 38/2 46/22

losing [1] 44/7

loss [1] 47/9

lot [4] 14/22 25/16 31/1 72/12

lots [1] 64/21

love [1] 73/20

luck [1] 55/9

**M**

macro [2] 71/2 71/3

made [4] 21/7 21/13 23/17 33/20

magistrate [2] 36/25 63/3

magistrate's [3] 25/17 62/10 62/22

mail [11] 29/9 29/9 29/12 29/14 30/1 31/9 34/15 39/12 40/23 42/21 42/25

mails [1] 41/25

make [16] 12/24 18/3 18/7 21/9 22/20 24/18 26/3 26/5 26/5 27/4 33/25 47/3 58/14 60/19 67/15 72/12

makes [4] 39/10 41/5 44/23 73/1

making [5] 5/23 18/10 18/11 65/4 65/5

man [1] 71/7

management [1] 33/24

manager [1] 42/1

mandates [1] 59/19

mandatory [5] 55/12 55/23 59/11 59/11 60/13

MANEWITH [3] 2/12 5/10 7/22

many [1] 72/8

market [1] 47/14

mask [1] 35/11

mass [3] 35/24 35/24 36/2

materials [2] 20/4 20/11

matrix [1] 39/23

matter [2] 62/12 62/21

matters [1] 51/21

may [12] 4/21 5/3 8/21 14/2 17/25 19/7 22/12 29/9 30/1 35/16 42/7 67/7

May 13 [2] 29/9 30/1

maybe [14] 10/9

**M**

maybe... [13]    12/25
15/5 15/10 15/11
16/8 22/11 24/1
35/25 46/2 51/25
52/1 72/3 74/1
McCormick [1]    55/20
me [40]    4/8 5/22
6/4 6/11 6/21 7/20
10/5 11/2 14/24
15/14 16/22 17/22
18/1 21/15 22/15
26/24 27/23 37/24
38/14 42/3 42/4
42/24 43/21 45/4
49/24 49/25 51/12
51/12 51/16 53/3
53/20 53/23 61/18
62/17 63/13 63/18
69/7 69/17 72/7
72/11
mean [23]    17/25
20/22 21/1 23/22
25/2 25/6 34/25
34/25 37/23 39/15
39/25 40/7 51/24
52/9 58/9 59/1
59/15 61/1 67/15
68/19 69/6 70/8
74/13
meaning [5]    31/14
43/2 50/18 50/25
60/19
means [2]    56/4
64/16
meant [1]    49/3
media [1]    12/2
meet [1]    61/21
mention [1]    29/25
mentioned [2]    43/12
66/12
MENZIES [1]    1/15
2/15
merely [1]    49/5
merger [48]    29/5
29/7 29/8 29/21
29/22 29/23 29/24
30/11 30/12 30/13
30/18 33/6 43/8
43/23 43/24 43/25
44/2 44/5 44/8 44/9
44/13 44/15 44/16
44/18 44/22 44/23
45/21 46/13 47/15
47/18 48/5 48/12
49/16 49/18 54/1
54/10 54/12 55/4
55/11 55/12 56/5
56/5 56/8 56/9
56/10 56/13 57/21
59/22
merits [7]    63/15
64/23 64/24 65/3
69/23 72/16 73/8
metric [1]    50/18
might [4]    13/22
64/21 68/5 72/4
MIGUEL [2]    1/14
2/14
mind [1]    37/25
minds [1]    9/22
mine [1]    48/21
minimal [1]    13/1
minutes [3]    26/8
26/11 26/18
missed [1]    56/20

moderation [2]    30/1
30/1 30/14
modified [1]    5/4
modify [3]    60/4
60/15 60/15
months [2]    23/24
23/24
moot [2]    20/20
23/15
more [10]    14/1
15/22 22/11 28/10
36/6 42/14 62/3
66/20 68/23 72/24
MORGAN [2]    3/7 6/9
morning [1]    5/19
MOSKOW [2]    3/4 6/20
MOSKOW-SCHNOLL [2]
3/4 6/20
most [2]    23/15 60/8
motion [32]    6/3 6/6
7/3 11/12 13/23
14/13 20/21 21/8
21/15 23/15 24/13
26/6 26/23 27/5
28/21 32/1 32/2
32/6 32/7 32/10
37/11 37/12 57/4
61/7 62/25 63/2
63/11 68/23 69/15
74/11 74/17 74/18
motions [2]    14/12
73/18
move [7]    5/18 22/8
22/9 24/2 38/24
64/16 68/6
moved [6]    31/19
57/5 57/6 57/7
61/23 68/9
Mr [1]    71/6
Mr. [23]    15/9 27/11
27/15 28/8 31/19
32/1 33/10 33/17
33/23 37/6 38/23
43/11 55/13 56/20
56/21 56/21 56/24
58/24 70/13 70/16
71/6 71/15 75/1
Mr. Cohen [5]    27/11
27/15 58/24 71/6
71/15
Mr. Musk [11]    15/9
28/8 31/19 33/10
33/17 33/23 37/6
56/21 56/21 56/24
70/16
Mr. Musk's [2]    32/1
70/13
Mr. Wallace [5]
38/23 43/11 55/13
56/20 75/1
much [7]    8/13 13/12
45/15 49/17 51/1
61/24 66/21
multiple [1]    53/19
MUSK [22]    1/9 15/9
28/8 31/19 32/12
33/5 33/10 33/17
33/23 37/6 56/21
56/21 56/24 57/7
65/4 65/8 65/13
65/13 65/14 70/16
70/20 71/6
Musk's [3]    32/1
32/7 70/13
must [9]    31/16 53/4
54/8 54/9 54/10

54/25 59/1 70/20
must [1]    54/9
mutual [1]    39/24
my [29]    5/22 6/11
6/21 9/8 12/24 18/8
18/15 21/24 34/23
37/25 42/2 43/11
46/14 48/18 53/2
53/22 56/8 59/24
61/10 67/4 68/6
69/19 72/9 73/3
73/5 73/13 74/1
74/21 75/16
myself [1]    63/21

**N**

named [1]    68/8
Namely [1]    7/25
narrow [1]    42/20
national [1]    10/16
nature [1]    35/20
necessarily [2]
24/24 34/24
need [15]    4/9 8/22
9/13 17/15 18/1
22/9 22/11 28/14
28/15 35/16 39/22
62/7 69/2 72/4 74/3
needs [1]    4/5
negotiated [1]    50/9
negotiations [1]
27/13
never [7]    23/2
23/17 43/20 57/7
57/17 57/23 61/25
Nevertheless [1]
68/16
new [6]    36/25 37/4
37/8 54/2 63/11
67/1
next [3]    28/6 28/22
51/2
NLRB [1]    9/20
no [60]    1/6 1/16
4/14 6/22 6/22 6/22
6/23 8/7 8/19 8/21
9/16 10/23 11/13
12/2 16/2 16/2
18/16 20/22 21/3
24/19 24/19 24/21
28/20 30/18 31/22
31/24 32/19 33/8
33/14 34/4 37/1
37/2 37/11 41/5
41/12 41/15 44/4
46/10 48/1 49/3
50/1 50/24 51/8
51/12 51/14 51/21
52/16 53/15 54/8
54/22 55/21 56/3
56/7 58/10 58/25
60/9 62/7 71/7
71/23 72/24
nobody [1]    54/17
non [3]    27/5 49/1
51/17
non-dispositive [1]
27/5
non-survival [1]
49/1
non-third-party [1]
51/17
none [1]    43/14
nonetheless [1]
54/6

NOSA [1]    20/1
231 [1]    1/15
note [2]    19/16 66/4
noted [2]    19/10
68/13
notes [1]    75/16
nothing [5]    32/25
39/5 49/3 74/8
74/12
notice [5]    11/14
20/8 32/21 61/18
68/15
notifying [1]    20/5
noting [1]    70/3
notion [1]    13/5
November [5]    23/23
24/2 35/24 41/17
41/17
November '24 [1]
24/2
November 17th [2]
41/17 41/17
novo [2]    72/11
72/14
now [14]    7/14 12/2
12/2 16/12 23/24
31/17 36/1 37/15
41/8 41/14 54/13
55/25 56/13 67/22
NPR [1]    7/3
nuance [3]    30/8
36/4 36/6
number [7]    42/20
45/15 49/19 53/10
67/11 70/12 74/2
Number 1 [5]    42/20
45/15 49/19 53/10
67/11

**O**

object [1]    10/8
objected [1]    34/1
objection [9]    21/22
22/2 25/23 28/10
31/22 32/3 37/2
37/20 63/7
objections [7]
25/17 28/2 28/10
28/11 28/17 62/5
65/24
objects [1]    10/3
obligation [2]
54/14 59/21
obligations [1]
49/3
obviate [1]    72/4
obviously [7]    8/7
10/19 12/5 62/16
63/23 69/7 74/11
occasionally [1]
52/20
odd [1]    62/17
off [4]    10/2 11/22
30/1 35/23
offense [1]    40/11
officers [2]    9/23
9/23
official [2]    15/11
75/12
often [1]    62/20
Oh [6]    9/16 17/8
17/8 47/22 50/4
75/2
okay [66]    4/3 4/24
5/2 5/5 5/13 6/7
6/13 6/19 7/5 7/8

7/10 7/14 9/25 11/2
11/19 13/24
16/4 16/6 17/1 17/8
17/15 17/17 18/4
19/3 19/6 19/14
20/13 20/25 24/17
25/10 25/13 25/15
26/16 26/16 26/25
27/8 28/1 28/2
34/13 36/9 36/18
36/21 38/12 39/1
41/2 42/5 42/12
44/21 47/1 47/24
48/17 48/22 60/23
61/6 61/10 64/23
67/5 67/24 72/2
73/11 73/22 74/6
74/19 74/24 75/6
old [2]    53/25 54/11
once [5]    22/10
22/21 23/19 28/3
36/20
one [39]    11/13
15/12 17/18 18/25
19/22 20/2 21/11
22/22 22/14 22/15
23/22 28/4 28/5
28/7 28/8 30/1 30/8
32/19 32/24 33/4
36/14 42/7 43/9
47/1 47/7 48/18
48/19 51/12 55/2
56/10 58/4 58/25
60/18 63/8 65/8
68/4 70/15 71/1
74/20
one-off [1]    30/1
one-year [1]    43/9
ones [5]    11/3 14/19
15/20 16/24 16/25
17/1 26/4
only [14]    6/3 10/24
27/2 31/11 42/21
46/13 50/13 54/11
54/15 54/18 54/23
55/9 62/22 70/4
open [1]    10/15
opened [1]    67/1
opening [2]    66/9
66/17
operation [1]    71/4
opportunity [5]
47/17 62/3 66/18
67/5 69/14
opposed [2]    34/5
65/9
opposing [3]    14/11
19/20 58/2
opposition [1]
66/20
oral [2]    1/24 45/2
order [9]    4/5 12/16
12/25 20/7 23/11
63/14 72/14 73/19
75/6
Orlando [1]    26/17
other [22]    9/13
32/9 33/23 13/13
14/19 19/25 20/4
21/11 22/15 35/6
42/9 47/2 51/22
52/10 52/15 52/20
55/15 59/1 65/7
67/15 72/4 74/11
otherwise [3]    31/2
53/6 71/10

**O**

our [21] 9/22 10/23 10/24 11/21 12/5 19/20 20/4 20/4 20/11 31/5 39/9 39/10 42/10 43/3 62/11 63/6 65/23 67/1 67/19 67/21 74/8

out [24] 6/21 7/15 12/2 16/9 17/7 17/8 17/9 19/21 35/5 39/12 43/21 49/6 49/8 52/22 53/24 54/21 55/9 55/18 55/24 59/13 59/13 64/5 65/3 74/15

outstanding [1] 73/19

over [4] 19/24 41/22 66/18 73/23

overall [2] 60/20 60/21

overlapping [1] 74/14

owe [2] 8/7 63/22

own [1] 44/17

**P**

P.C [2] 2/11 2/21

p.m [3] 1/23 3/24 75/10

package [1] 67/19

page [2] 50/3 72/23

pages [2] 72/24 75/2

paid [5] 50/19 50/19 50/21 50/22 71/19

PAN [1] 1/14 2/14

panel [1] 17/21

papers [5] 10/8 24/7 28/13 55/14 62/11

paragraph [2] 29/11 32/10

Paragraph 2 [1] 32/10

paragraph 326 [1] 29/11

parameters [1] 13/18

parcel [1] 67/4

part [16] 9/3 15/11 20/20 21/4 21/7 22/5 23/17 24/21 25/8 34/15 35/23 53/25 54/1 59/13 65/21 67/3

partially [1] 10/22

participate [1] 17/11

particular [2] 18/20 68/10

particularity [1] 33/9

particularly [4] 33/11 53/11 64/11 65/16

parties [19] 14/1 15/16 18/16 18/19 43/14 49/10 49/12 49/15 52/3 52/10 53/12 53/24 56/9 57/17 58/19 58/21 58/23 59/3 60/14

parties' [4] 12/8 26/1 60/7 60/9

party [39] 8/1 19/12 20/1 22/14 28/4 28/20 30/17 38/24 44/24 45/10 47/18 48/3 50/1 51/13 51/17 51/22 52/6 52/14 52/16 53/1 53/15 53/16 54/7 54/15 54/19 54/19 54/23 54/24 55/6 55/22 56/3 56/12 58/8 58/10 58/18 59/14 60/9 60/11 68/2

pass [1] 58/4

passed [1] 66/12

patent [1] 63/2

pay [4] 35/14 45/17 46/5 53/22

payment [1] 29/17

payments [1] 31/7

penalties [1] 45/19

pending [3] 73/18 74/11 74/17

people [15] 6/15 12/16 12/17 25/6 34/10 34/11 34/14 35/1 39/8 39/11 41/4 41/10 41/18 53/19 71/18

people's [1] 12/13

percent [1] 74/5

perfectly [1] 42/2

performance [2] 49/4 49/12

perhaps [2] 59/2 60/8

period [2] 24/3 43/9

permission [1] 38/23

person [8] 35/19 46/20 52/10 54/18 54/19 59/1 65/4 65/5

personal [3] 10/25 12/12 65/11

personally [2] 10/17 28/8

persons [1] 52/16

perspective [2] 10/10 74/9

persuasive [9] 8/3 8/9 8/10 8/12 8/17 8/23 9/12 18/8 19/10

pervasive [1] 71/12

piece [3] 39/2 39/3 68/5

pierce [2] 28/7 65/2

piercing [22] 36/11 37/16 37/20 56/23 56/25 57/10 61/1 61/2 61/16 63/16 65/16 66/3 66/8 68/3 68/13 69/24 70/3 70/7 70/18 70/19 70/20 72/1

piercing-type [1] 70/18

place [1] 54/10

plaintiff [1] 19/5 29/12 72/21

plaintiffs [25] 1/6 2/7 16/22 16/23 17/16 7/23 15/25 16/17 16/18 30/17 30/22 32/4 32/11 35/22 37/5 38/19 41/17 41/17 42/10 42/10 45/7 45/16

plaintiffs' [4] 4/7 4/14 37/6 38/20

plan [6] 29/17 42/24 55/6 60/21 60/21 71/10

platform [1] 70/14

plausibly [1] 33/16

playing [1] 65/13

plead [9] 33/1 33/15 33/16 37/5 39/21 39/22 70/19 71/10 72/1

pleading [3] 32/21 33/11 33/12

pleadings [1] 70/23

Please [2] 4/1 26/21

pled [2] 32/11 71/13

plenty [1] 26/14

plus [1] 19/24

point [15] 19/12 22/20 23/19 24/23 27/18 42/12 56/14 56/20 58/11 59/5 61/5 63/22 68/4 69/5 72/17

pointed [1] 19/21

policy [18] 29/8 29/9 29/14 29/16 29/16 31/9 34/8 34/11 39/9 39/10 39/12 39/17 39/20 39/23 40/17 40/18 43/4 43/6

Pont [1] 58/21

pool [1] 65/8

position [33] 4/10 5/3 10/7 10/21 10/23 10/24 12/5 16/12 16/20 18/13 21/23 22/25 27/16 29/18 30/3 30/4 31/5 31/5 31/7 31/11 31/12 33/22 34/3 34/5 34/17 34/21 35/13 35/18 35/25 36/8 39/4 39/14 39/17

position's [1] 35/3

positions [4] 32/18 35/2 35/12 35/20

possible [1] 59/9

postpone [1] 73/8

posture [1] 14/21

potentially [2] 8/12 8/23

power [2] 13/16 18/16

powers [1] 11/20

practice [1] 70/9

precedent [1] 9/15

predicate [2] 60/2 65/15

prejudice [3] 28/21 31/21 32/3

prepared [1] 26/9

present [1] 68/23

presented [1] 25/3

preserve [3] 21/22 22/2 68/21

press [14] 3/5 4/13 5/1 6/15 6/25 7/1 13/23 14/1 14/7 14/8 20/14 22/6 25/3 26/23

Presumably [1] 37/3

presumption [2] 22/23 70/5

pretty [4] 22/21 45/15 48/3 48/4

prevail [1] 32/5

prevailed [1] 32/5

previsions [1] 19/19

primary [1] 29/3

principles [2] 59/7 60/17

prior [5] 29/22 37/1 39/17 39/19 40/17

priority [1] 58/23

private [7] 9/11 18/15 18/19 19/2 21/25 22/6 23/3

probably [4] 26/24 48/2 61/14 72/17

problem [7] 9/25 16/23 32/16 49/7 49/9 52/8 59/24

proceed [2] 15/8 15/16

proceeding [1] 75/17

proceedings [2] 3/23 75/10

promise [11] 29/5 30/5 30/9 30/10 30/10 31/10 39/15 42/16 43/7 45/22 46/2

promised [1] 47/9

promissory [14] 28/23 28/25 30/7 30/8 30/20 38/5 43/22 44/19 45/1 45/11 46/3 47/7 47/8 55/10

properly [3] 21/12 22/4 64/22

proposition [1] 29/15

protect [1] 52/24

protected [4] 42/23 43/3 44/14 57/20

protecting [1] 52/25

protection [3] 43/16 43/19 57/18

protections [2] 43/8 53/4

protects [3] 44/9

prove [3] 47/1 70/19 71/21

provide [5] 43/16 50/10 53/21 57/18 59/20

provided [5] 16/22 20/9 29/17 50/12 58/13

provision [13] 44/4 44/15 46/15 46/17 49/17 53/16 55/12 55/22 56/4 59/1 60/18

provisions [16] 43/15 43/18 45/16 48/14 49/8 49/25 50/9 52/18 52/21 54/16 55/16 55/17 55/23 56/1 57/18 59/10

public [6] 10/16 21/7 21/9 21/13 23/18 27/6

pull [2] 24/23 69/7

punches [1] 69/8

purchase [1] 65/17

purely [1] 37/15

purports [1] 14/24

purpose [1] 25/6

put [11] 20/23 39/25 40/3 40/4 51/16 61/18 61/24 62/11 66/19 66/20 66/25

puts [1] 65/22

putting [1] 68/15

PYTLARZ [2] 1/4 2/24

**Q**

quash [1] 73/18

question [13] 5/17 7/3 7/19 14/2 19/16 20/15 34/23 46/8 46/8 49/20 55/1 55/2 61/22

questions [2] 8/5 28/16

quick [1] 74/22

quickly [1] 19/7

quite [3] 65/14 67/16 74/17

**R**

radar [1] 73/14

raise [1] 38/9

raised [8] 11/24 19/8 46/19 67/2 72/19 72/20 73/2 73/2

raising [1] 66/24

rate [2] 50/17 50/20

rather [2] 5/17 36/12

reach [1] 22/16

read [10] 6/21 8/17 15/3 21/19 21/20 21/20 24/7 28/13 54/20 54/25

readily [1] 11/23

reading [3] 21/24 31/13 51/25

real [1] 48/11

realized [1] 26/22

really [12] 14/12 18/8 20/15 22/8 24/14 35/13 37/18 44/6 46/14 61/23 61/25 66/6

reason [5] 12/11 22/5 24/25 25/3 30/20

reasonable [2] 46/20 55/21

reasoning [1] 56/2

reasons [2] 25/25

**R**

rebrief [1]  63/17
recall [2]  41/8
48/2
recently [1]  73/23
recess [2]  26/20
27/10
recite [1]  28/15
recommendation [5]
8/12 11/17 28/18
31/2 38/9
record [30]  4/10
7/19 8/22 9/2 9/3 9/14
10/1 10/4 10/13
10/14 12/15 13/2
18/17 20/18 20/20
21/3 21/4 21/6
21/22 22/5 22/18
22/22 23/2 23/12
23/18 24/8 24/15
24/21 27/4 27/12
48/7
records [1]  27/6
recover [1]  30/19
red [1]  39/5
redacted [3]  10/20
13/11 21/13
redactions [3]  10/3
10/25 27/22
reduce [1]  40/24
reduced [2]  43/3
43/10
reference [1]  29/24
references [1]
11/16
referred [1]  29/4
refers [1]  30/9
refile [1]  27/15
reflecting [1]
15/15
refusal [1]  45/17
regard [5]  8/16
13/17 15/9 15/16
65/11
regarding [5]  12/13
14/25 20/2 31/2
70/12
regards [1]  38/7
regular [1]  6/18
related [2]  29/13
43/1
relating [1]  14/19
releasing [1]  23/4
relevance [7]  4/8
7/20 10/5 13/2
24/13 24/14 24/20
relevant [13]  7/18
7/24 9/22 11/11
17/23 20/19 21/15
21/21 23/13 24/9
25/4 25/6 25/8
reliance [3]  47/10
57/25 57/25
relied [2]  10/15
30/5
relies [1]  71/16
rely [4]  15/14
15/18 22/3 61/12
relying [1]  58/22
remaining [1]  29/25
remains [1]  29/22
remedy [1]  70/4
remember [1]  47/25
reminder [1]  38/14
remove [1]  13/9
removed [1]  23/14

removing [1]  24/24
reopen [1]  45/11
repeat [1]  32/12
repeatedly [1]
58/24
replace [1]  35/19
replies [1]  12/7
reply [7]  61/25
62/3 66/19 66/23
67/1 67/1 69/14
report [5]  8/11
11/17 28/17 31/1
38/8
REPORTER [2]  75/13
75/19
represent [6]  5/1
6/1 7/6 7/12 14/4
14/6
representation [1]
68/12
representations [3]
44/2 45/3 47/15
representing [1]
6/24
request [2]  10/25
12/9
require [2]  43/24
43/25
required [4]  33/11
37/7 49/4 62/14
requirements [1]
33/12
requisite [1]  71/21
reserving [1]  27/15
resign [3]  31/12
34/15 40/9
resignation [2]
41/23 42/6
resigned [4]  30/23
33/20 36/7 41/11
resigning [3]  33/23
41/21 42/1
resolve [1]  25/19
resources [1]  65/16
respect [8]  6/2
14/6 19/15 33/9
43/12 56/21 56/24
74/10
respectfully [1]
12/9
respond [4]  19/7
58/11 67/5 69/14
response [5]  32/10
37/9 61/25 63/6
65/23
responses [1]  14/3
rest [1]  67/12
result [3]  66/8
70/6 71/24
retired [1]  49/18
retriever [1]  44/17
reverse [2]  62/13
63/9
reversible [1]
61/13
review [8]  22/16
63/18 68/25 69/17
72/4 72/9 72/9 73/3
reviewed [2]  47/19
62/23
reviewing [1]  62/10
rid [2]  64/14 64/16
right [29]  7/13 8/4
8/5 9/8 14/17 14/20
17/3 24/13 24/16
24/22 27/6 27/15

35/8 36/17 37/11
44/1 45/4 45/6 46/2
46/20 51/13 53/9
53/19 56/7 58/19
60/4 63/10 64/2
68/20 70/2
rights [8]  30/15
30/18 40/24 52/12
52/16 53/5 53/13
69/20
RIORDAN [1]  2/11
rise [1]  5/10
risk [2]  65/22
65/25
road [2]  34/15
36/20
role [1]  55/3
RPR [1]  75/19
Rs [2]  25/17 28/3
rule [5]  11/12
58/22 58/24 59/11
59/11
ruled [2]  7/4 37/24
rules [5]  12/7
14/25 16/21 22/14
60/17
ruling [5]  9/12
9/19 17/21 23/10
23/10
rulings [1]  9/13
run [1]  44/7
running [3]  57/15
71/4 71/8
runs [1]  60/20

**S**

said [12]  10/8 13/9
34/1 35/4 39/11
39/12 42/25 44/5
44/14 58/10 67/20
68/6
salary [4]  12/13
50/17 50/21 50/22
same [21]  7/19 7/25
8/11 11/17 18/6
32/12 40/19 46/6
47/4 47/6 47/6
50/18 50/20 50/22
51/4 51/7 52/1 55/5
61/2 62/14 74/15
satisfy [1]  33/11
save [1]  63/14
say [37]  6/15 6/25
9/16 14/25 16/21
19/6 21/6 21/23
24/6 25/7 29/20
32/10 33/25 34/18
34/19 35/25 37/24
40/20 41/19 43/5
45/16 50/1 51/21
53/20 53/21 54/1
54/20 56/3 56/7
56/22 59/9 59/10
60/19 62/16 62/21
65/24 67/17
saying [11]  20/17
30/13 35/3 35/12
42/1 44/12 53/23
60/12 67/13 67/13
67/17
says [21]  30/13
33/13 34/20 44/15
49/17 50/11 50/13
51/17 52/1 52/9
52/18 53/12 54/4
54/9 54/16 58/12

58/22 59/3 59/13
58/14 59/17 59/19
scheme [2]  60/20
60/21
SCHLAIKJER [2]  1/5
2/24
SCHNOLL [2]  3/4
6/20
seal [9]  10/1 10/2
12/1 13/3 14/16
18/17 19/1 27/21
27/24
sealed [6]  4/6 10/9
10/12 16/21 18/14
18/22
sealing [3]  4/10
14/13 18/17
search [1]  74/3
seated [2]  4/2
26/21
second [5]  10/20
28/8 36/14 58/4
66/15
section [10]  33/6
49/3 49/10 49/11
49/11 49/21 50/7
50/8 54/4 61/20
Section 6.9 [4]
33/6 49/3 49/11
49/21
Section 9.1 [1]
49/10
sections [1]  53/4
security [1]  10/16
see [16]  5/7 8/14
9/23 10/4 12/3
12/21 13/17 17/15
22/5 25/7 25/11
25/14 25/18 26/2
59/17 61/18
seek [1]  12/16
seeking [1]  11/14
seem [2]  47/3 53/3
seemed [1]  64/6
seems [6]  13/11
22/13 26/1 51/25
52/15 62/17
seen [4]  5/16 16/22
55/14 62/1
selection [1]  48/13
send [1]  74/1
sending [1]  41/25
sense [1]  25/22
sent [1]  39/12
separate [5]  54/3
62/8 62/8 65/9
70/21
separately [2]  11/6
46/25
separation [1]
39/24
series [1]  58/12
services [1]  53/21
set [6]  15/7 15/10
51/2 63/11 64/5
68/25
sets [1]  29/14
several [1]  73/17
severance [37]  29/5
29/8 29/12 29/14
29/15 29/16 29/17
29/24 30/2 30/9
30/10 31/7 31/9
31/15 34/8 34/14
35/2 35/5 35/14
39/9 39/16 39/23

40/16 40/17 42/23
42/3 43/7
43/9 43/15 44/6
44/9 44/14 46/5
51/6 55/6 67/21
shall [4]  52/9
58/13 59/20 60/13
shareholder [1]
56/1
shares [1]  47/14
sharing [1]  20/3
she [2]  55/25 56/1
Shell [1]  58/21
short [2]  24/3
48/13
shortly [1]  12/25
29/7
should [29]  7/18
9/6 10/4 10/13
10/15 10/22 13/3
16/22 17/1 18/14
18/22 22/23 23/2
23/17 23/20 25/14
30/7 30/21 33/18
35/1 54/3 54/8 55/5
59/9 66/6 68/3
72/23 73/13 73/14
shouldn't [3]  10/24
18/23 32/4
show [3]  47/11 65/1
70/20
showing [1]  42/2
side [1]  49/25
sides [1]  64/9
significant [1]
61/18
signing [1]  67/18
similar [2]  11/18
34/14
simple [1]  73/5
simpler [1]  72/13
simplest [1]  59/15
simply [3]  29/14
65/12 66/12
since [4]  67/7
69/15 72/5 73/12
single [2]  18/25
72/24
single-spaced [1]
72/24
sit [2]  5/16 62/19
sitting [2]  10/9
72/2
situation [3]  11/19
36/2 53/18
situations [1]
39/17
six [1]  41/16
skeptical [1]  48/3
small [4]  22/11
23/11 27/2 71/18
so [131]
solely [1]  33/4
solving [1]  12/22
some [13]  12/18
13/1 25/20 25/22
31/10 36/7 53/19
59/23 70/17 70/17
71/20 73/18 74/17
somebody [11]  15/6
16/3 18/6 18/10
40/5 47/13 47/14
50/19 53/13 53/14
65/16
someone [2]  35/19
58/17

**S**

something [18]
13/13 13/20 16/3
18/1 18/2 22/13
22/21 24/15 26/11
44/8 53/17 54/23
55/5 61/11 62/20
64/6 73/19 74/2

somewhat [1]   19/17

son's [1]   53/22

SONIKER [1]   2/21

soon [1]   49/18

sorry [2]   4/17 50/4

sort [6]   31/10 39/2
43/21 51/14 66/1
66/11

sorts [1]   39/24

spaced [1]   72/24

SPAHR [1]   3/4

sparse [2]   68/14
68/22

speak [3]   16/7
47/17 74/25

speaking [3]   6/5
29/19 29/19

special [3]   43/8
43/16 43/18

specially [1]   57/20

specific [8]   33/19
34/6 42/13 43/8
46/20 61/17 72/9
74/2

specifically [5]
15/19 41/9 49/15
50/1 50/11

speed [1]   15/22

spilled [1]   31/1

sponte [1]   73/2

stability [3]   29/5
30/9 30/10

stage [2]   11/18
64/22

stand [3]   32/24
43/23 44/1

standard [7]   61/21
62/9 63/18 69/16
72/3 72/9 73/3

standards [2]   50/14
63/17

stands [1]   31/23

stark [1]   11/15

start [4]   21/14
49/1 66/18 68/17

started [1]   36/20

state [4]   36/24
40/14 46/6 47/2

stated [1]   33/9

statement [5]   49/5
49/14 57/22 57/22
58/10

states [4]   1/1 2/3
22/1 45/15

status [1]   8/1

statutory [1]   45/18

stay [12]   4/9 7/18
10/2 13/3 18/9
18/11 18/12 18/14
21/12 24/7 41/19
44/12

stays [1]   44/16

stenographic [1]
75/16

step [2]   39/7 58/17

stick [1]   16/11

still [9]   9/3 9/5
13/24 14/16 36/4

37/10 44/19 54/7
55/7 60/7

stop [2]   25/14
53/23

straight [5]   26/13
28/16 29/10 38/17
49/9

Street [1]   2/1

stricken [6]   9/4
9/6 12/15 17/4 17/6
21/13

strike [10]   8/16
8/20 9/2 11/21
20/16 21/3 23/12
24/13 25/5 27/12

strong [2]   10/24
70/5

struck [1]   12/9

stuff [7]   13/9
13/25 25/17 47/2
58/9 69/16 72/5
73/15 73/16

sua [1]   73/2

subject [4]   27/13
27/17 29/13 57/3

submitted [1]   12/6

subsequent [1]
35/24

substantially [1]
51/3

substantive [1]
11/4

such [5]   27/5 38/2
52/18 65/17 71/9

sufficient [5]
37/21 65/1 66/2
66/7 66/8

suggest [2]   52/15
66/9

suggested [2]   69/13
72/15

suggesting [1]   35/6

suggests [1]   22/14

summary [2]   63/2
64/19

Sunshine [1]   25/9

superfluous [1]
51/19

supplemental [1]
72/15

support [2]   44/19
66/2

suppose [1]   16/5

sur [1]   12/7

sur-replies [1]
12/7

sureply [2]   62/4
69/15

survival [1]   49/1

suspect [1]   27/19

suspenders [1]
67/13

swallow [1]   59/12

**T**

take [14]   4/4 10/23
11/14 16/8 23/4
23/7 26/10 26/18
30/4 34/18 36/7
44/10 54/10 74/20

taken [1]   26/20

takeover [1]   59/20

taking [6]   5/11
25/26 28/25 29/15
32/20

talk [10]   11/5
14/24 16/9 22/10
26/22 37/25 38/1
60/25 68/1 68/3

talked [6]   34/15
38/3 38/4 38/5 38/5
60/3

talking [13]   11/11
13/24 15/2 16/2
16/7 17/18 25/15
30/2 37/15 55/25
56/1 56/20 60/16

talks [2]   58/24
70/24

teaches [1]   54/22

tell [7]   4/8 26/24
32/19 40/22 42/24
43/5 44/8

telling [2]   43/17
57/20

tells [1]   43/2

tend [1]   40/1

termed [1]   41/5

terminate [1]   45/18

terminated [1]   40/6

termination [2]
34/5 40/16

terms [6]   31/14
34/20 49/12 62/9
68/14 70/25

test [1]   37/20

Texas [1]   36/24
37/1

text [5]   48/12
48/14 49/9 50/7
50/8

than [13]   9/17
13/14 15/10 28/10
39/10 39/16 51/8
51/22 52/10 55/15
69/4 72/24 74/11

thank [21]   5/5 5/12
5/13 5/24 6/14 7/10
11/7 19/3 25/15
27/9 28/1 28/19
38/13 56/15 58/7
67/24 67/25 73/25
75/7 75/8 75/9

Thanks [4]   6/13
20/13 48/17 58/6

that [385]

that's [47]   4/19
9/8 11/1 16/23 18/8
22/17 24/1 30/24
32/16 32/21 34/16
34/24 35/15 36/8
40/5 40/13 40/14
40/24 41/13 41/20
42/6 44/18 46/14
46/19 48/22 49/7
49/19 50/3 52/21
53/7 55/11 59/2
59/15 59/21 62/15
62/22 62/23 63/8
64/2 67/2 68/7 69/3
69/24 71/20 71/21
71/24 74/22

theft [5]   32/11
36/11 36/12 36/23
37/1

their [25]   8/2
14/11 30/23 32/9
32/11 32/13 32/18

35/2 35/11 35/25
43/19 44/17 45/16
47/17 53/4 53/6
64/14 64/16 65/24
66/9 66/12 70/22

them [79]

themselves [1]   60/1

then [47]   4/18 5/3
6/15 12/21 13/12
17/1 17/17 18/22
18/23 21/3 22/2
22/5 22/17 22/23
24/21 26/11 26/13
28/6 29/15 29/15
30/2 34/20 36/19
38/24 39/11 42/24
43/5 43/16 48/2
49/20 51/6 51/18
51/20 54/3 54/19
55/6 55/8 55/9
57/20 59/1 63/23
66/21 68/5 69/9
69/14 72/16 73/7

theory [4]   32/8
32/15 47/4 47/5

there [60]   9/19
10/19 10/20 12/1
12/16 18/22 18/23
18/25 20/7 22/9
22/12 22/23 23/3
23/20 23/21 23/25
24/4 25/24 30/19
30/22 31/1 31/24
32/25 35/16 36/4
36/23 37/12 37/21
38/7 41/24 44/4
45/17 45/18 47/21
52/15 52/23 53/7
53/8 53/9 53/17
54/6 55/21 56/16
58/12 60/2 60/6
60/8 62/10 63/10
67/11 67/11 67/15
70/11 71/7 71/8
71/23 72/19 73/12
73/16 73/17

there's [42]   8/1
13/13 14/22 15/13
18/20 19/11 21/3
29/3 29/4 29/6 29/8
31/24 33/8 33/14
33/14 34/9 35/7
35/21 35/22 36/4
37/1 37/2 37/11
44/8 44/15 50/1
52/22 53/18 54/17
58/10 59/2 59/5
64/21 70/4 70/14
71/7 71/19 71/24
74/12

therefore [15]   12/1
18/5 18/12 23/14
30/6 30/14 30/18
31/13 32/7 33/10
33/18 46/24 49/5
55/1 71/25

these [43]   4/9 7/16
10/2 11/10 11/15
11/21 11/25 12/17
14/19 16/19 16/24
16/25 18/25 20/11
21/14 23/8 23/8
24/7 25/3 25/24
33/25 34/1 35/1

39/8 40/14 41/13
47/15 50/8 50/11
50/13 51/22 53/4
53/5 56/9 57/17
58/5 58/12 67/14
67/23 71/18

they [126]

they'd [1]   29/23

they're [40]   4/20
7/18 9/2 9/16 9/21
11/13 12/18 13/6
17/7 17/15 20/3
20/6 20/20 21/3
21/12 21/13 21/20
22/4 23/14 23/19
24/9 24/21 25/6
30/14 31/7 32/20
33/13 35/10 35/11
35/23 36/12 41/5
45/7 46/16 46/22
47/6 50/21 61/20
67/22 68/15

they've [4]   19/24
21/1 46/18 50/19

thing [9]   27/2
36/10 46/14 48/25
52/2 57/14 57/16
61/2 63/10

things [17]   4/3
10/1 19/8 33/15
34/1 35/20 39/14
45/13 46/10 46/12
46/21 53/8 54/2
56/19 58/12 58/13
67/14

think [98]

thinking [1]   69/8

third [35]   8/1
19/12 22/20 28/4
28/20 30/17 38/24
44/24 45/10 47/18
48/3 50/1 51/13
51/17 51/22 52/6
52/16 53/15 53/16
54/7 54/18 54/19
54/23 54/24 55/6
55/22 56/3 56/12
58/8 58/10 58/18
59/14 60/9 60/11
68/2

third-party [31]
8/1 19/12 28/4
28/20 30/17 38/24
44/24 45/10 47/18
48/3 50/1 51/13
51/22 52/6 52/16
53/15 53/16 54/7
54/23 54/24 55/6
55/22 56/3 56/12
58/8 58/10 58/18
59/14 60/9 60/11
68/2

this [80]

those [31]   8/4
11/10 17/8 17/9
23/1 29/9 31/15
32/14 33/15 35/17
37/11 37/13 42/8
42/12 43/18 46/11
46/21 46/22 46/23
47/7 51/8 54/15
55/2 55/16 55/16
59/25 60/5 65/16
73/21 73/21 73/25

though [8]   7/3 9/17

**T**

**though...** **[6]** 10/7
15/19 16/21 22/20
35/13 45/24

**thought [2]** 17/10
17/11

**three [4]** 29/3
35/22 36/23 36/24

**through [19]** 4/4
5/4 13/25 25/21
32/8 32/14 37/18
44/12 44/16 44/20
50/3 56/8 56/25
57/1 57/10 59/6
63/15 63/15 74/3

**throughout [1]**
32/13

**thus [1]** 32/13

**time [14]** 7/17
17/14 23/22 24/1
24/3 26/14 34/16
49/13 63/14 69/19
70/17 74/15 74/17
74/22

**times [1]** 19/24

**TMH [2]** 1/6 1/16

**today [10]** 4/4 5/23
6/11 12/22 12/25
22/13 34/16 69/7
75/3 75/4

**TODD [1]** 2/3

**told [4]** 26/24
33/25 39/8 63/25

**ton [1]** 7/17

**too [8]** 7/9 10/14
15/19 23/5 25/19
26/17 48/15 74/20

**took [1]** 73/23

**topic [1]** 15/17

**total [1]** 50/25

**touch [3]** 15/18
38/25 56/17

**towards [1]** 36/6

**toys [2]** 65/13
65/14

**track [2]** 36/22
38/2

**TRACY [3]** 1/3 2/23
30/22

**train [1]** 26/14

**transcript [2]**
47/20 75/16

**treat [1]** 40/15

**treating [2]** 65/8
65/10

**trial [1]** 10/14

**true [8]** 10/13 32/6
34/24 35/6 40/19
62/23 70/23 75/15

**TRUJILLO [2]** 3/14
6/4

**TRUJILLO-JAMISON [2]**
3/14 6/4

**truly [2]** 35/18
54/25

**try [3]** 17/2 38/16
59/17

**trying [5]** 13/17
14/12 27/21 35/11
60/18

**Tuesday [1]** 1/23

**tuition [1]** 53/22

**TWITTER [21]** 1/18
1/18 31/19 31/22
32/24 33/5 39/8
42/22 43/2 43/17

44/6 51/7 56/25
57/11 57/23 61/18
62/3 65/22 67/1
67/20 68/9 70/17
70/21 71/25

**Twitter's [6]** 29/15
30/2 32/5 40/17
44/1 49/2

**two [21]** 16/8 30/22
31/15 33/1 33/19
33/25 41/4 42/12
53/7 53/8 53/24
56/18 67/11 67/20
70/17 70/25 72/8
73/20 75/2 75/3
75/3

**type [2]** 65/1 70/18

**types [1]** 35/22

**U**

**U.S [1]** 75/20

**Uh [1]** 52/11

**Uh-huh [1]** 52/11

**ultimately [1]** 18/7

**unclear [3]** 37/22
59/8 72/5

**UNCYK [2]** 2/21 5/23

**under [25]** 10/1
11/12 12/1 13/3
13/6 14/16 27/21
27/24 30/17 33/12
34/6 34/10 36/24
37/1 37/7 39/16
40/4 40/16 40/18
47/4 47/5 49/7
52/12 58/25 60/22
61/23 62/19 73/23

**undercapitalization**
**[2]** 71/14 71/16

**undercapitalizing**
**[1]** 66/1

**underlying [3]**
35/12 37/19 57/12

**understand [23]**
7/20 8/13 8/20 9/7
13/3 15/2 15/12
16/2 16/12 22/25
23/19 24/23 25/13
25/24 28/14 33/20
42/12 49/23 49/24
63/21 64/18 68/4
68/21

**understanding [2]**
15/8 25/20

**understood [9]** 11/7
12/23 26/7 27/25
46/21 64/8 69/22
72/18 73/10

**unenforceable [2]**
53/6 57/19

**unilaterally [1]**
72/20

**UNITED [2]** 1/1 2/3

**unity [3]** 70/20
70/23 71/1

**unless [2]** 53/2
59/22

**unseal [2]** 12/3
13/9

**unsealed [4]** 10/22
10/24 12/11 15/17

**until [1]** 73/9

**unwinds [1]** 60/14

**unwise [1]** 48/20

**up [16]** 4/5 4/8
4/19 15/22 23/5
23/7 38/24 39/4
39/7 42/2 44/7

55/15 56/9 60/19
66/13 73/4

**upon [7]** 10/15 30/5
33/4 48/4 52/10

**us [6]** 16/4 20/5
43/5 44/24 67/18
68/15

**use [3]** 8/17 19/20
20/11

**used [2]** 15/10
19/21

**using [2]** 24/12
29/9

**usually [1]** 64/12

**V**

**vague [1]** 61/21

**value [1]** 47/14

**veil [23]** 28/7
36/11 37/16 37/20
56/23 56/25 57/10
61/2 61/16 63/15
65/2 65/15 66/3
66/18 66/23 68/13
69/24 70/3 70/7
70/18 70/19 70/19
72/1

**versus [1]** 73/2

**very [19]** 16/14
24/3 26/1 31/15
34/21 37/22 44/17
45/21 50/7 52/18
55/12 56/22 58/9
61/17 61/17 61/20
61/23 62/19 73/23

**vicarious [5]** 32/8
32/15 32/17 32/23
60/25

**vicariously [1]**
33/1

**view [8]** 18/9 18/15
23/1 34/7 39/19
40/1 53/2 62/16

**views [2]** 42/14
73/5

**violation [1]** 12/7

**virtue [1]** 56/12

**voluntarily [3]**
30/23 34/14 41/11

**voting [1]** 47/14

**W**

**wage [6]** 32/11
36/11 36/12 36/23
37/1 50/17

**wait [3]** 13/19 19/3
61/1

**WALLACE [7]** 3/8
6/11 38/23 43/11
55/13 56/20 75/1

**want [41]** 4/6 4/18
5/14 6/21 9/7 12/3
15/14 16/13 17/2
19/6 21/23 22/15
22/19 24/6 25/5
25/18 25/19 26/10
27/18 35/14 36/7
37/18 37/25 38/9
38/16 42/3 42/11
47/16 48/7 51/20
56/7 56/11 56/17
61/8 62/2 62/3
63/15 68/1 69/23
72/8 73/4

**wanted [4]** 15/18
24/17 37/19 41/19

**wants [4]** 18/6 25/3
25/20 41/19 57/4

**was [65]** 9/19 11/17
11/25 12/1 14/24
15/6 15/22 15/23
17/4 17/6 17/10
17/20 23/22 25/21
26/20 29/6 29/18
31/1 31/22 33/24
35/18 35/19 35/25
36/15 37/6 39/8
39/16 39/17 40/5
41/9 41/18 42/23
44/4 46/1 47/10
47/21 48/20 49/4
49/5 50/19 51/7
55/4 55/21 55/25
56/1 56/20 57/3
60/21 61/11 61/13
61/19 63/2 63/6
63/7 64/5 65/4 65/6
65/10 65/12 66/20
68/12 69/20 70/23
71/8 72/19

**wasn't [4]** 15/23
71/13 72/20 73/25

**waste [1]** 69/19

**way [28]** 7/15 12/13
15/5 18/6 18/22
21/16 28/13 31/18
33/2 39/10 39/13
40/19 47/2 51/16
53/19 56/3 57/24
59/7 59/15 59/18
60/18 64/4 64/5
65/17 67/13 67/16
72/3 73/5

**ways [2]** 70/25
71/15

**we [91]**

**we'll [12]** 4/24
11/5 16/8 26/11
26/13 26/19 28/6
28/6 28/8 44/10
63/14 75/6

**we're [17]** 11/11
12/19 12/20 12/21
12/22 13/24 22/10
28/24 32/21 36/5
38/1 44/6 53/24
59/12 60/12 60/18
67/19

**we've [5]** 4/3 7/14
19/20 25/16 62/5

**weeks [4]** 72/8 75/2
75/3 75/3

**weight [3]** 8/13
8/14 52/19

**well [23]** 4/20 5/2
7/7 8/19 9/2 10/6
23/6 23/25 25/7
28/11 33/19 37/17
39/11 39/13 40/15
47/7 49/21 52/8
52/21 61/8 66/17
67/16 74/18

**were [31]** 9/4 9/13
9/18 12/1 12/14
20/1 20/19 23/1
24/7 27/3 29/13
31/3 31/6 35/3
35/23 36/6 40/16
40/20 41/17 41/19
41/24 41/25 47/9
47/22 57/19 60/6
61/18 64/5 69/24

70/3 70/10

**we'd [5]** 20/8
20/8 20/9 32/14
37/21

**what [56]** 4/10 8/15
14/25 15/2 16/9
15/7 16/25 16/7
26/24 26/24 27/19
29/1 33/23 36/22
38/3 38/8 38/22
39/8 39/16 40/2
40/5 42/24 43/3
45/10 45/20 47/9
47/9 47/9 47/11
47/12 48/4 48/24
49/10 49/21 50/6
53/13 54/16 54/22
55/4 55/20 61/10
62/15 62/21 66/22
68/3 68/15 69/8
71/1 73/3 74/3

**what's [10]** 4/8
10/7 10/21 11/23
25/12 36/22 39/11
53/15 53/15 56/8

**whatever [4]** 14/8
27/22 40/15 41/6

**whatsoever [2]** 10/5
21/16

**when [15]** 10/5
11/24 14/7 28/24
32/19 39/11 43/2
45/18 48/21 56/20
59/2 59/7 59/9
60/17 75/3

**where [21]** 10/11
25/19 25/20 32/16
32/19 32/20 32/21
39/25 40/8 45/15
47/8 53/18 54/22
55/16 56/22 62/20
65/16 65/25 69/24
70/20 71/18

**Whereupon [1]** 26/20

**whether [26]** 8/1
10/22 18/7 18/9
18/14 21/25 24/14
26/2 28/7 31/2 31/6
35/17 36/1 41/5
41/22 43/21 47/17
53/13 53/13 58/17
58/18 66/6 72/10
71/12 72/11 73/4

**which [37]** 4/11
9/21 10/3 11/12
11/17 13/10 22/12
28/4 28/7 28/22
29/5 29/6 31/3
31/14 31/24 32/6
34/6 35/22 36/11
39/4 41/18 42/25
47/3 49/1 49/12
51/2 55/2 56/21
57/2 57/25 60/2
60/3 60/9 61/24
69/13 71/15 73/18

**whichever [1]** 66/19

**while [1]** 60/12

**who [15]** 5/10 6/12
12/16 15/24 19/4
30/23 34/11 34/14
32/3 35/24 40/5
40/19 41/18 41/25
59/24

**W**

**whoever [2]**  4/5
33/24
**whole [3]**  25/8 50/7
50/8
**wholesale [1]**  39/5
**wholly [1]**  11/18
**whom [1]**  32/20
**why [23]**  4/7 4/9
4/19 7/16 7/18 7/18
10/4 25/7 25/18
26/23 28/9 37/20
37/21 42/25 44/8
45/23 48/8 48/10
58/13 61/24 64/24
65/21 68/21
**will [20]**  4/5 5/10
5/23 6/12 7/8 14/11
15/18 22/18 23/11
23/15 27/12 40/22
48/20 52/20 58/4
66/4 67/4 72/12
72/16 72/23
**WILLENKEN [2]**  3/13
6/5
**willing [2]**  40/20
42/2
**Wilmington [2]**  2/1
53/11
**within [6]**  13/17
18/16 18/21 62/24
69/20 72/7
**without [7]**  20/5
31/21 32/2 40/5
40/6 45/1 65/11
**WOLFRAM [2]**  1/3
2/23
**won't [1]**  34/2
**Woodfield [1]**  74/17
**woodwork [1]**  12/2
**word [2]**  61/8 61/9
**words [2]**  31/14
35/6
**work [4]**  40/21 46/2
57/24 70/17
**works [1]**  67/16
**world [4]**  24/2 40/8
74/21 74/22
**would [56]**  8/12
8/19 9/5 9/9 9/14
9/16 9/23 12/9
12/11 13/10 13/11
13/21 15/8 15/16
16/4 16/5 19/16
20/23 27/1 27/2
27/6 27/7 27/20
34/3 34/4 35/2 36/3
36/11 37/17 39/25
40/2 40/4 44/14
44/19 46/7 47/13
48/8 48/13 53/6
54/20 55/8 55/9
56/25 56/25 59/11
59/13 59/25 60/24
60/25 62/7 63/10
63/18 64/17 65/1
66/14 73/20
**wouldn't [4]**  9/13
45/12 46/6 46/20
**write [5]**  23/11
49/6 49/8 55/18
55/24
**writing [2]**  59/12
59/13
**written [1]**  45/2
**wrong [2]**  48/10

53/9

**X**

**X's [1]**  49/2

**Y**

**yeah [9]**  7/14 13/21
25/2 26/10 28/12
36/18 36/21 43/19
51/11
**year [1]**  43/9
**years [1]**  73/20
**yes [20]**  4/23 14/5
17/20 34/12 38/18
40/14 42/17 42/19
46/16 47/23 48/6
50/5 52/17 54/8
61/3 63/24 73/1
73/17 73/24 75/5
**yield [1]**  52/20
**York [3]**  36/25 37/4
37/8
**you [259]**
**You'll [1]**  5/7
**you're [18]**  4/21
6/24 16/15 17/19
24/12 27/23 35/4
37/13 37/13 37/15
40/9 44/13 46/4
53/21 71/2 71/2
71/3 71/4
**you've [7]**  5/16
22/13 38/4 38/5
38/5 55/14 63/13
**your [119]**
**yours [1]**  74/14