## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

WOLFRAM ARNOLD, ERIK FROESE,
TRACY HAWKINS, JOSEPH KILLIAN,
LAURA CHAN PYTLARZ, and ANDREW
SCHLAIKJER,

        *Plaintiffs*,

      v.

X CORP. f/k/a TWITTER, INC., X
HOLDINGS CORP. f/k/a X HOLDINGS I,
INC., and ELON MUSK,

        *Defendants*.

C.A. No. 1:23-cv-528-TMH-CJB

## DEFENDANT ELON MUSK'S SUR-SUR-REPLY
## IN SUPPORT OF HIS MOTION TO DISMISS

Dated: June 30, 2025

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

    A.    To The Extent There is a Conflict of Law, Delaware Law Applies. ..................... 2

    B.    Plaintiffs Fail to State a Claim Under Delaware Law............................................ 4

    C.    Plaintiffs' Fail to State a Claim Under California Law. ......................................... 5

        1.    Plaintiffs Fail to Allege Unity of Interest ................................................. 5

        2.    Plaintiffs Fail to Allege Injustice. ............................................................. 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aliya Medcare Fin. LLC v. Nickell*,
  2015 WL 11072180 (C.D. Cal. Sept. 25, 2015) ........................................................9

*Apple Inc. v. Allan & Assocs. Ltd.*,
  445 F. Supp. 3d 42 (N.D. Cal. 2020) ........................................................................6

*Brinker v. Axos Bank*,
  2023 WL 4535529 (S.D. Cal. July 13, 2023) .........................................................5, 7

*California Dep't of Toxic Substances Control v. NL Indus.*,
  2021 WL 5933140 (C.D. Cal. Oct. 13, 2021) ..........................................................10

*Daewoo Elecs. Am., Inc. v. Opta Corp.*,
  875 F.3d 1241 (9th Cir. 2017) ...................................................................................8

*Does 1-26 v. Musk*,
  No. 8:25-cv-00462 (D. Md.) ....................................................................................10

*Dollar Tree Stores Inc. v. Toyama Partners LLC*,
  2011 WL 872724 (N.D. Cal. Mar. 11, 2011)..............................................................9

*EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*,
  2008 WL 4057745 (Del. Ch. Sept. 2, 2008) ..............................................................2

*Eleanor Licensing LLC v. Classic Recreations LLC*,
  21 Cal. App. 5th 599 (2018) ......................................................................................8

*Federal Reserve Bank of San Francisco v. HK Sys.*,
  1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ..............................................................7

*Gerritsen v. Warner Bros. Entm't*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) ...............................................................5, 7, 8

*I Am Athlete LLC v. IM EnMotive, LLC*,
  2023 WL 8933592 (Del. Ch. Dec. 27, 2023)..............................................................5

*Khoros LLC v. Lenovo (United States) Inc.*,
  2020 WL 12655516 (N.D. Cal. Oct. 5, 2020)..............................................................8

*Leek v. Cooper*,
  194 Cal. App. 4th 399 (2011) ....................................................................................8

*McDermott Inc. v. Lewis*,
    531 A.2d 206 (Del. 1987) ................................................................................2

*Mieuli v. DeBartolo*,
    2001 WL 777447 (N.D. Cal. Jan. 16, 2001) ...................................................9

*Neilson v. Union Bank of Cal.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..........................................................8

*New Mexico v. Musk*,
    No. 1:25-cv-000429 (D.D.C.) ........................................................................10

*Nieves v. Insight Building Co., LLC*,
    2020 WL 4463425 (Del. Ch. Aug. 4, 2020) ...................................................4

*Ninespot, Inc. v. JuPai Holdings Ltd.*,
    2019 WL 1650065 (D. Del. Apr. 17, 2019) ....................................................5

*Pacific Maritime Freight, Inc. v. Foster*,
    2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) .........................................5, 7, 8

*In re Peierls Family Inter Vivos Trs.*,
    77 A.3d 249 (Del. 2013) ..................................................................................3

*Perfect 10, Inc. v. Giganews, Inc.*,
    2015 WL 12710753 (C.D. Cal. June 3, 2015) ................................................8

*Ranza v. Nike, Inc.*,
    739 F.3d 1059 (9th Cir. 2015) .....................................................................6, 7

*Relentless Air Racing LLC v. Airborne Turbine Ltd.*,
    222 Cal. App. 4th 811 (2013) ........................................................................9

*Romero v. Macy's Inc.*,
    2016 WL 7098439 (S.D. Cal. Dec. 6, 2016)..................................................8

*Salzberg v. Sciabacucchi*,
    227 A.3d 102 (Del. 2020) ...............................................................................3

*In re Skyport Global Commc'n, Inc.*,
    2011 WL 111427 (S.D. Tex. Jan. 13, 2011) ..................................................3

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000) ..........................................................................6

*Stowers v. Wells Fargo Bank N.A.*,
    2014 WL 1245070 (N.D. Cal. Mar. 25, 2014).................................................9

*Tomlinson v. Combined Underwriters Life Ins. Co.*,
2009 WL 2601940 (N.D. Okla. Aug. 21, 2009) ...................................................3

*Trevino v. Merscorp, Inc.*,
583 F. Supp. 2d 521 (D. Del. 2008).........................................................................4

*U.S. v. Healthwin-Midtown Convalescent Hosp. & Rehabilitation Ctr. Inc.*,
511 F. Supp. 416 (C.D. Cal. 1981) ..........................................................................9

*VantagePoint Venture Partners 1996 v. Examen, Inc.*,
871 A.2d 1108 (Del. 2005) ......................................................................................2

*Wallace v. Wood*,
752 A.2d 1175 (Del. Ch. 1999)................................................................................4

*Zoran Corp. v. Chen*,
185 Cal. App. 4th 799 (2010) ...................................................................................7

## I.    INTRODUCTION

Implicitly acknowledging that they have failed to plausibly plead sufficient facts to state a claim for piercing the corporate veil, Plaintiffs expend a large portion of their sur-reply discussing allegations that are not in the Complaint. *See* Exhibit A (identifying new allegations). Although the Court cannot substantively consider these allegations on the present motion to dismiss, they nonetheless illustrate why allowing Plaintiffs to amend their Complaint to assert "new" allegations in support of their baseless veil piercing claim would be futile. The new allegations have no bearing on the issue at hand and instead range from random tweets about DOGE, to findings in a suit against Tesla directors, to statements by government attorneys in entirely unrelated matters. In other words, this case has been pending for over two years and it remains clear that Plaintiffs have not and cannot plausibly plead facts showing why the Court should allow them to proceed with their baseless and harassing veil piercing allegations against Elon Musk—even after going through extensive discovery in related cases involving the same counsel—because no such facts exist.

In addition to being deficient on the facts, Plaintiffs are also wrong on the law.  While a choice of law analysis is unnecessary given the absence of a material conflict in the subject law (a point on which Plaintiffs agree), to the extent there were a conflict, Delaware law would control pursuant to the internal affairs doctrine. Plaintiffs' allegations fall well short of stating a veil piercing claim under Delaware law, and Plaintiffs do not even attempt to argue to the contrary as they selectively chose to only argue under California law. Regardless, Plaintiffs also fail to state a veil piercing claim under California law. For all of these reasons and the additional reasons set forth below, Plaintiffs' claims against Musk must be dismissed with prejudice.

## II.    ARGUMENT

### A.    To The Extent There is a Conflict of Law, Delaware Law Applies.

In their original reply to Musk's motion to dismiss, Plaintiffs maintained that "[t]here is no significant conflict between Delaware and California piercing law." D.I. 25 at 22. Plaintiffs now, however—after multiple rounds of briefing and in a fruitless attempt to alter the facts and the applicable law—allege for the first time that the Court "*must*" engage in a choice of law analysis to determine what law applies. D.I. 156 at 6 (emphasis added). The threshold requirement to trigger a choice of law analysis, however, is a material conflict between the potentially applicable laws. Plaintiffs do not even attempt to identify any such conflict, and Musk prevails under both Delaware and California law, so a choice of law analysis is unnecessary.

In any event, to the extent the Court finds it necessary to engage in a choice of law analysis, Delaware law applies. Under Delaware's internal affairs doctrine, the law of the state of incorporation applies to all "matters that pertain to the relationship among or between the corporation and its officers, directors, and shareholders," without regard for the "most significant relationship" test that applies to other matters. *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005). The requirement that the law of the state of incorporation must govern the internal affairs of a corporation is "not merely a principle of conflicts law," but also "one of serious constitutional proportions" given shareholders' Due Process rights "to know what law will be applied to their actions." *McDermott Inc. v. Lewis*, 531 A.2d 206, 216 (Del. 1987).

Contrary to Plaintiffs' assertions, the question of whether to hold a shareholder liable for the debts of the corporation necessarily impacts the relationship of the corporation and its shareholders, and therefore is subject to the internal affairs doctrine. Indeed, Delaware courts have frequently "looked to the law of the entity in determining whether the entity's separate existence is to be disregarded" under a veil piercing theory. *See EBG Holdings LLC v. Vredezicht's*

2

*Gravenhage 109 B.V.*, 2008 WL 4057745, at \*11 (Del. Ch. Sept. 2, 2008) (collecting cases). Furthermore, the Restatements (Second) of Conflicts of Law—to which Delaware courts adhere— recognizes that the law of the "state of incorporation will be applied to determine the existence and extent of a shareholder's liability . . . to its creditors for corporate debts." Restatements (Second) of Conflicts of Law § 307; *see also In re Peierls Family Inter Vivos Trs.*, 77 A.3d 249, 255 (Del. 2013) (noting that Delaware courts follow the Restatements). Neither Delaware nor the Restatements is unique in this regard: in fact, "the majority of jurisdictions addressing this question have also applied the law of the state of incorporation to veil-piercing issues." *Tomlinson v. Combined Underwriters Life Ins. Co.*, 2009 WL 2601940, at \*3 (N.D. Okla. Aug. 21, 2009).

Plaintiffs' cases—none of which consider the choice of law analysis in the veil piercing context—are not to the contrary. D.I. 156 at 9 (citing *VantagePoint*, *McDermott*, and *Salzberg*). The language relied on by Plaintiffs simply stands for the uncontroversial proposition that the internal affairs doctrine does not dictate the choice of law that controls tort or contract claims against a corporation. The question here is not what law applies to Plaintiffs' substantive claims against Twitter, but rather what law applies to Plaintiffs' assertion that Musk is liable for Twitter's debts. The question of whether to disregard Twitter's corporate form is unquestionably a "matter[] peculiar to corporations" that impacts its relationship with its shareholders, and therefore subject to the internal affairs doctrine. *Salzberg v. Sciabacucchi*, 227 A.3d 102, 127 (Del. 2020) (quoting *McDermott*, 531 A.2d at 215).

The fact that Twitter moved its state of incorporation to Nevada after the events at issue does not change the analysis. Under the internal affairs doctrine, claims are "governed by the law of the state which was the state of incorporation at the time that claim arose," regardless of subsequent changes to incorporation. *In re Skyport Global Commc'n, Inc.*, 2011 WL 111427, at

*16-17 (S.D. Tex. Jan. 13, 2011). Because Twitter was incorporated in Delaware when the facts giving rise to Plaintiffs' claims arose, Delaware law applies.[1] D.I. 10 at ¶¶ 12-25 (alleging terminations prior to February 2023); D.I. 156-1 at 2 (incorporation in Nevada in March 2023).

### B.    Plaintiffs Fail to State a Claim Under Delaware Law.

Musk has, on three separate occasions, explained why Plaintiffs' veil piercing allegations fail under Delaware law. D.I. 18 at n.4; D.I. 37 at 8-11; D.I. 134 at 10-15. Tellingly, Plaintiffs have tacitly conceded this point by not addressing it despite multiple opportunities to do so. Plaintiffs know they lose under Delaware law.

As explained in Musk's prior submissions, Plaintiffs have failed to adequately plead that Musk and Twitter constituted a "single economic entity." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008). Plaintiffs' allegations that Musk dictated a handful of Twitter policies does not demonstrate the sort of "exclusive domination and control" that deprived Twitter of its own "legal or independent significance," as would support a claim for veil piercing. *Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). And the allegations that individuals from Musk's other companies performed services for Twitter do not support an inference that Musk commingled his funds with Twitter, much less to a degree that would justify veil piercing. *Nieves v. Insight Building Co., LLC*, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020). Finally, the allegations that Twitter was "undercapitalized"—besides being entirely conclusory—do not support Plaintiffs' claims given the absence of any indication that Twitter was "established to defraud its creditors" or for some "other improper purpose." *Trevino*, 583 F. Supp. 2d at 530. Even if Plaintiffs could allege that Twitter and Musk were a single economic entity, they fail to allege the sort of injustice that would warrant piercing the corporate veil. Plaintiffs' conclusory allegations that Twitter was

---

[1] Even if the Court were to disagree and find that Twitter's current state of incorporation controls, it would not justify Plaintiffs' request to apply California law. Rather, Nevada law would apply.

undercapitalized do not demonstrate that Twitter was a "sham" that existed "for no other purpose than as a vehicle for fraud," particularly given Plaintiffs' other allegations indicating that Twitter "ran a real business." *I Am Athlete LLC v. IM EnMotive, LLC*, 2023 WL 8933592, at *5 (Del. Ch. Dec. 27, 2023). And their speculation about arguments that Twitter could raise in the future fails to establish the sort of injustice that warrants piercing the corporate veil. Thus, Plaintiffs' claims must be dismissed under Delaware law.

### C.    Plaintiffs Fail to State a Claim Under California Law.

Plaintiffs similarly fail to state a claim under California law. Contrary to Plaintiffs' assertions, California law does not permit veil piercing claims to proceed so long as they "go beyond purely conclusory recitations" of the elements. D.I. 156 at 10. Rather, "a plaintiff must allege specific facts supporting both of the elements of alter ego liability." *Gerritsen v. Warner Bros. Entm't*, 112 F. Supp. 3d 1011, 1042 (C.D. Cal. 2015).[2] The assertion that a variety of facts might be relevant to a veil piercing analysis does not excuse Plaintiffs from pleading those facts, nor does it immunize their claims from dismissal. Indeed, as Plaintiffs own cases demonstrate, veil piercing claims are frequently dismissed under Rule 12(b)(6). *See, e.g., Pacific Maritime Freight, Inc. v. Foster*, 2010 WL 3339432, at *8 (S.D. Cal. Aug. 24, 2010) (dismissing veil piercing claims); *Brinker v. Axos Bank,* 2023 WL 4535529, at *5 (S.D. Cal. July 13, 2023) (same). The same result is warranted here.

#### 1.    Plaintiffs Fail to Allege Unity of Interest

In order to satisfy the first prong of the veil piercing inquiry, Plaintiffs must plausibly allege that there is "such a unity of interest and ownership between the corporation and its equitable

---

[2] Moreover, pleading requirements in federal court are governed by Federal Rule of Civil Procedure 12(b)(6) and the familiar *Twombly/Iqbal* standard, not by California's procedural rules for pleading in state court. *Ninespot, Inc. v. JuPai Holdings Ltd.*, 2019 WL 1650065, at *5 n.5 (D. Del. Apr. 17, 2019).

owner that the separate personalities of the corporation and the shareholder do not in reality exist." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 526 (2000). Plaintiffs argue that they have satisfied their burden based on allegations that (1) Musk exercised control over Twitter's policy and decision-making such that it was an "instrumentality or conduit for a single venture or the business of an individual," (2) a discrete number of SpaceX, Tesla, and Boring Company employees performed services for Twitter, and (3) Twitter was undercapitalized as a result of the merger. D.I. 156 at 12, 15. These allegations fall well short of the required standard.

As an initial matter, many of Plaintiffs' allegations that Twitter was under Musk's "control" and served as a "mere instrumentality" are largely conclusory. *See, e.g.,* D.I. 10 at ¶¶ 109, 295, 304. Plaintiffs' few factual allegations boil down to little more than a handful of instances where Musk allegedly influenced Twitter's policies and decision-making. In order to support veil piercing, however, the allegations must demonstrate "pervasive control" over "every facet of the alter ego's business, from broad policy decisions to routine matters of day-to-day operations." *Ranza v. Nike, Inc.*, 739 F.3d 1059, 1073 (9th Cir. 2015). Plaintiffs' discrete instances of decision-making fall well short of this standard. *See id.* In any event, allegations that Musk—the sole director of Twitter—influenced Twitter's decisions on certain issues is hardly remarkable. A company's sole director will necessarily need to make decisions about the company, yet "not every sole shareholder/director is personally liable for the corporation's decisions." *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 55 n.7 (N.D. Cal. 2020) (allegations of control by a sole director are "insignificant").

Plaintiffs' allegations of "commingling" are similarly insufficient. As explained in Musk's prior briefing (D.I. 134 at 12), allegations that some unknown number of employees from other companies performed services for Twitter on an unidentified number of occasions do not give rise

to an inference that Musk commingled his personal assets with Twitter, much less to a degree that would warrant disregarding the corporate form. *Ranza*, 793 F.3d at 1074. Plaintiffs do not respond to this point at all, much less explain why allegations that two corporations shared a handful of employees justify their attempt to hold Musk personally liable.

Instead, Plaintiffs focus much of their argument on allegations that Twitter was undercapitalized. Plaintiffs' allegations are, as an initial matter, entirely conclusory. *See Gerritsen*, 116 F. Supp. 3d at 1111, 1144 (allegations "on information and belief" that a company "had no significant assets or resources and was thus undercapitalized" were overly conclusory and failed to support veil piercing). Moreover, the allegations do not demonstrate the kind of undercapitalization that warrants veil piercing. Inadequate capitalization only supports a finding of veil piercing where the "capital is illusory or trifling compared with the business to be done and the risks of loss." *Id.* at 1144. Plaintiffs' allegations that Twitter took on too much debt during the merger and is now at risk of bankruptcy fall well short of this standard. In any event, the fact that Twitter has continued to exist for the intervening three years since the merger belies any inference that Twitter had such "illusory or trifling" capitalization.

Plaintiffs' failure to adequately allege *any* of the factors that might support a finding of unity of interest distinguishes their case from those they rely on. *See Foster*, 2010 WL 3339432, at *7 (commingling of funds and domination and control); *Federal Reserve Bank of San Francisco v. HK Sys.*, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997) (domination and control, disregard for the corporate form, and "illusory" capitalization); *Brinker*, 2023 WL 4535529, at *5 (interlocking boards, commingling of funds, shared facilities, misrepresentation of financial interests, and manipulation of corporate assets); *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 812-13 (2010) (domination and control, commingling of funds, and undercapitalization). Because

Plaintiffs have not provided any basis to conclude that Musk and Twitter had the requisite unity of interest, their veil piercing claim fails.

2.    Plaintiffs Fail to Allege Injustice.

Even if Plaintiffs could allege a unity of interest, they cannot allege that respecting Twitter's separate form would "sanction a fraud or promote injustice." *Gerritsen*, 116 F. Supp. 3d at 1143. Plaintiffs attempt to make this showing based on (1) allegations of undercapitalization and (2) speculation that Twitter might seek to evade liability by arguing that the relevant decisions were made by SpaceX, Tesla, or Boring Company employees. Neither passes muster.

As explained *supra*, Plaintiffs' allegations of undercapitalization are entirely conclusory and fail to demonstrate the sort of "illusory or trifling" capitalization that supports piercing the corporate veil. But, even if Plaintiffs had sufficiently alleged that Twitter was undercapitalized, it would still be insufficient to justify piercing the corporate veil. "[I]nadequate capitalization, itself, is not sufficient to pierce the corporate veil." *See Romero v. Macy's Inc.*, 2016 WL 7098439, at *11 (S.D. Cal. Dec. 6, 2016). Rather, to warrant veil piercing, the defendant must have intentionally undercapitalized the corporation "to the point of being a shell corporation" or else engaged in other bad faith or wrongful conduct. *See, e.g., Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 12710753, at *8 (C.D. Cal. June 3, 2015), *aff'd* 847 F.3d 657 (9th Cir. 2017); *see also Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) (California courts generally require "bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding").[3]

---

[3] Plaintiffs' assertion that the statement in *Neilson* is no longer good law is, quite plainly, incorrect. A legion of both federal and state cases post-dating *Neilson* have made clear that some form of bad faith or wrongful conduct is required to pierce the corporate veil. *See, e.g., Daewoo Elecs. Am., Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017); *Khoros LLC v. Lenovo (United States) Inc.*, 2020 WL 12655516, at *15 (N.D. Cal. Oct. 5, 2020); *Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011); *Eleanor Licensing LLC v. Classic Recreations LLC*, 21 Cal. App. 5th 599,

Indeed, Plaintiffs' own cases illustrate this point. *Cf. Rincon*, 2022 WL 1447615, at *8 ("undercapitalization on its own is not a decisive fact"). Most of Plaintiffs' cases involve extreme levels of undercapitalization that stand in stark contrast to Plaintiffs' paltry allegations of possible (and yet unrealized) bankruptcy. *U.S. v. Healthwin-Midtown Convalescent Hosp. & Rehabilitation Ctr. Inc.*, 511 F. Supp. 416, 419-20 (C.D. Cal. 1981) (15:1 debt to capital ratio); *Aliya Medcare Fin. LLC v. Nickell*, 2015 WL 11072180, at *21 (C.D. Cal. Sept. 25, 2015) (entity "with no cash or equity"); *Dollar Tree Stores Inc. v. Toyama Partners LLC*, 2011 WL 872724, at *2 (N.D. Cal. Mar. 11, 2011) (entity with $40 million in debts and no assets except one project). Plaintiffs' only other case involves wrongful conduct by defendants that, even if not marked by wrongful intent, nonetheless abused of the corporate form and caused the company's insolvency. *Relentless Air Racing LLC v. Airborne Turbine Ltd.*, 222 Cal. App. 4th 811, 816 (2013) (company was insolvent because defendants "used [its] funds to pay their personal debts").

Here, Plaintiffs do not allege that Twitter's undercapitalization so extreme as to render it a mere "shell corporation," nor do they allege that the undercapitalization was the product of bad faith or wrongful conduct. Indeed, Plaintiffs do not even assert that the undercapitalization was *intentional*, nor is it even remotely plausible that Musk—who had just paid approximately $44 billion to purchase Twitter—sought to drive it into bankruptcy and thereby wipe out his own investment. *See* D.I. 156 at 17 (arguing that Twitter's undercapitalization was "*perhaps*

---

526 (2018). Indeed, Plaintiffs' own cases recognize this principle. *See, e.g., Foster*, 2010 WL 3339432, at *7 ("California courts generally require evidence of some bad-faith conduct to fulfill the second prong of alter-ego liability"); *Mieuli v. DeBartolo*, 2001 WL 777447, at *9 (N.D. Cal. Jan. 16, 2001) ("The doctrine is designed to prevent fraud or injustice, and thus, bad faith in one form or another is an underlying consideration"). To the extent *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, suggests otherwise, it is an unpublished decision with no precedential effect. *See* Cal. R. Ct. 8.115 (unpublished decisions "must not be cited or relied on by a court or a party"). Moreover, *Rincon*'s ultimate holding is irrelevant to the present dispute, since the court's finding of injustice was not based solely on undercapitalization. 2022 WL 1447615, at *8.

deliberate"). *Cf. Stowers v. Wells Fargo Bank N.A.*, 2014 WL 1245070, at *7 (N.D. Cal. Mar. 25, 2014) ("Generally, the corporate veil will only be pierced where the plaintiff can show that the company was intentionally set up to avoid liability or was intentionally undercapitalized when formed."). Plaintiffs' allegations that Twitter incurred debt through the merger process and might become bankrupt simply do not establish the fraud or injustice that veil piercing requires.

Plaintiffs' speculation about arguments that Twitter could make in the future similarly fails to justify the extraordinary remedy they seek. The argument that Twitter cannot be held liable because the relevant decisions were made by non-Twitter employees exists only in Plaintiffs' imagination. Twitter has never raised such an argument, and Plaintiffs have no basis for believing that it will.[4] *See California Dep't of Toxic Substances Control v. NL Indus.*, 2021 WL 5933140, at *9 (C.D. Cal. Oct. 13, 2021) (finding that "overly speculative concerns" about potential outcomes of the litigation failed to justify veil piercing). In any event, there are no non-conclusory allegations that non-Twitter employees made decisions on behalf of Twitter as opposed to merely providing advice, and even if non-Twitter employees did make decisions on behalf of Twitter, they would have served as Twitter's agents in doing so, making Twitter liable for those decisions. None of that is a reason to pierce the corporate veil between Twitter and Musk. After all, that Twitter might invoke its separateness from Musk's other companies is not an injustice absent allegations of fraud or bad faith. Because Plaintiffs cannot allege any fraud or injustice, their veil piercing claims must be dismissed for failure to state a claim.

---

[4] Plaintiffs' attempt to render their speculative fears more plausible by pointing to arguments raised in other cases falls flat. The arguments that Plaintiffs identify were made by Department of Justice attorneys on behalf of the government in response to allegations that Musk was the DOGE Administrator. *Does 1-26 v. Musk*, No. 8:25-cv-00462 (D. Md.); *New Mexico v. Musk*, No. 1:25-cv-000429 (D.D.C.). Arguments made on entirely separate issues by entirely separate parties provide no insight into what arguments Twitter may raise here.

Dated: June 30, 2025

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendant Elon Musk*