# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER, | ) ) ) ) ) | |
| | ) | C.A. No. 1:23-cv-00528-TMH |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK, | ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION</u>**

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Plaintiffs Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer (collectively, Plaintiffs) are former employees of X Corp., f/k/a Twitter, Inc. (Twitter), and they bring various claims against Twitter, X Holdings Corp. f/k/a X Holdings I, Inc. (X Holdings I, and collectively with Twitter, the Twitter Defendants) and Elon Musk. Pending before this court is the Report and Recommendation of Magistrate Judge Christopher Burke (D.I. 121) (Report II), which recommends that the court grant-in-part and deny-in-part Defendant Elon Musk's motion to dismiss Counts I–XIV of the Plaintiffs' First Amended Complaint (D.I. 10) (FAC) pursuant to Federal Rule of Civil Procedure 12(b)(6). This court has considered the parties' objections and supplemental briefing *de novo* and concluded that Report II should be adopted-in-part and rejected-in-part. For the reasons set forth below, this court determines that Plaintiffs fail to plausibly assert that Twitter's corporate veil should be pierced to hold Musk liable for the Twitter Defendants' alleged misconduct through the alter ego doctrine, and grants Musk's motion to dismiss as to all claims asserted against him.

## I.  BACKGROUND

The court incorporates by reference the factual and procedural background set out in Judge Burke's December 5, 2024, Report and Recommendation (Report I).

(D.I. 110 at 2–9).[1] Additional relevant factual allegations will be discussed in Section III, and an overview of the pertinent procedural developments is produced below.

Plaintiffs' FAC contains fourteen Counts, all of which are brought against Musk and at least one other defendant. (D.I. 10). The FAC includes a section entitled "Allegations Relating to Piercing the Corporate Veil" (*Id.* ¶¶ 293–312), which broadly alleges that "Plaintiffs are entitled to an order holding Musk personally liable for any amounts awarded" for their claims against the Twitter Defendants. (*Id.* ¶ 312). In 2023, the Twitter Defendants and Musk filed separate motions to dismiss the FAC. (*See* D.I. 14; D.I. 17). Musk moves to dismiss all claims asserted against him for failure to state a claim under Rule 12(b)(6). (D.I. 17). In the opening brief in support of his motion to dismiss, Musk argues that the FAC fails to plead facts sufficient to hold him directly liable for Counts I–XIV but only addresses Plaintiffs' veil piercing theory in a footnote. (D.I. 18 at 10 n.4). In their answering brief, Plaintiffs clarified they only intended to plead their fraud (Count VI) and wage theft (Count X) claims directly against Musk, and their remaining claims against Musk were based on veil-piercing or alter-ego liability. (D.I. 25 at 1, 5–6, 9, 15). Citing both California and Delaware law, Musk argued in reply that Plaintiffs had not adequately pled veil piercing liability. (D.I. 37 at 4–6).

---

[1] Report I recommended that the court grant-in-part and deny-in-part Twitter Defendants' motion to dismiss Counts I, II, III, IV, V, and VI of the FAC as to Twitter and X Holdings I. (D.I. 14; D.I. 77). The court adopted Report I on September 29, 2025. (D.I. 160).

Following the expiration of a stay pending mediation (D.I. 76), Musk renewed his motion to dismiss on February 29, 2024. (D.I. 78). On January 8, 2025, Judge Burke issued Report II (D.I. 121) recommending the court deny Musk's motion to dismiss with respect to Count III (Breach of Contract), Count IV (Promissory Estoppel), Count VII (Federal WARN Act), Count VIII (California WARN Act), Count IX (New York WARN Act), Count XII (Family and Medical Leave Act) (FMLA), Count XIII (California Family Rights Act) (CFRA), and Count XIV (California Fair Employment and Housing Act) because Musk waived or forfeited any argument that the FAC insufficiently pleads veil piercing liability. (D.I. 121 at 6, 12–13, 14–15, 15 n.16, 21). Report II further recommended that Count I (Declaratory Judgment), Count I (Breach of Merger Agreement), Count X (Wage Theft pursuant to Texas law), and Count XI (California Private Attorney General Act) (PAGA) be dismissed with prejudice (*Id.* at 24) and that Count V (Breach of Offer Letter), Count VI (Fraud), and Count X (wage theft pursuant to California and New York law) be dismissed without prejudice. As to Counts I, II, and V, Report II recommends granting Musk's motion to dismiss for the same reasons that the same claims were dismissed as against the Twitter Defendants in Report I. (*Id.* at 3 & n.3). Report II recommends dismissing Count X to the extent it is brought under the Texas Labor Code because Plaintiffs did not oppose the dismissal of this claim (*Id.* at 14 (citing D.I. 25 at 15 n.11)) and Count XI because Plaintiffs abandoned their PAGA claim (*Id.* at 24 (citing D.I. 37 at 3)). Finally, as to Counts VI and X for fraud and wage theft under California and New York law, Report II's recommendation to dismiss turns on determinations that

Plaintiffs did not plead sufficient facts to allege that Musk was directly liable. (*Id.* at 10, 22–23).

On January 30, 2025, Musk objected to Report II (D.I. 134) (Musk's Objection), arguing that Judge Burke erred in finding that Musk forfeited his veil piercing argument and by not dismissing the claims that hinge on Plaintiffs' veil piercing theory. (D.I. 134 at 3–10). Musk requested this court dismiss Counts III, IV, VII, VIII, IX, XII, XIII, and XIV with prejudice and without leave to amend because Plaintiffs failed to plausibly allege that Musk should be held personally liable for Twitter's alleged misconduct. (*Id.*). On the same day, Plaintiffs objected to Report II (D.I. 135) (Plaintiffs' Objection), claiming that Judge Burke erred in dismissing Counts I and II, in finding that Plaintiffs had not sufficiently pled fraud against Musk, and in not considering veil piercing liability as to Plaintiffs' fraud, PAGA, and wage theft claims. (D.I. 135). Musk responded to Plaintiffs' Objection on January 20, 2025 (Musk's Response). (D.I. 138). Plaintiffs responded to Musk's Objection the same day (Plaintiffs' Response). (D.I. 139).

The court heard oral argument relating to Plaintiffs' and Defendants' objections to Report I and Report II on April 15, 2025. (D.I. 141; D.I. 150). Following oral argument, the court ordered both parties to submit letter briefs addressing the applicable standard of review regarding Judge Burke's recommendation that the court deem waived or forfeited Musk's argument that Plaintiffs failed to adequately plead veil piercing liability. (D.I. 149). The court determined that it would consider Musk's arguments regarding veil piercing on the merits and ordered supplemental

briefing on the issue. (D.I. 153). Plaintiffs submitted a sur-reply on June 13, 2025 (D.I. 156), and Musk submitted a sur-sur-reply on June 30, 2025. (D.I. 159).

## II.    **LEGAL STANDARD**

A defendant may move to dismiss the claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) ("Under Rule 12(b)(6), a motion to dismiss may be granted only if . . . a court finds that plaintiff's claims lack facial plausibility."). Mere labels, conclusions, or a "formulaic recitation of the elements of a cause of action" will not suffice to make a claim plausible. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether they are entitled to offer evidence to establish the facts alleged in the complaint." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023).

To plead fraud, however, a plaintiff must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard "[i]ndependent of the standard applicable to Rule 12(b)(6) motions." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b) mandates that the "circumstances

constituting fraud" be "state[d] with particularity." Fed. R. Civ. P. 9(b). A plaintiff must allege, in detail, "the who, what, when, where and how" of the alleged fraudulent conduct. *In re Rockefeller*, 311 F.3d at 217 (citation omitted); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("[T]he plaintiff must . . . inject precision or some measure of substantiation into a fraud allegation.").

"When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a *de novo* review." *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 379 (D. Del. 2014) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)); *see also Truinject Corp. v. Nestlé Skin Health. S.A.*, No. 19-cv-00592, 2020 WL 1270916, at *1 (D. Del. Mar. 17, 2020). "Under the Local Rules of this Court, a motion to dismiss is considered a dispositive motion." *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 474 (D. Del. 2021) (citing D. Del. L.R. 72.1(3)). The court may "accept, reject, or modify the recommended disposition" of the magistrate judge. Fed. R. Civ. P. 72(b)(3).

## III.  **DISCUSSION**

Below, the court addresses the arguments raised by Plaintiffs' and Defendant Elon Musk's Objections, Responses, Sur-Reply, and Sur-Sur Reply. Defendant Elon Musk contends that Plaintiffs have failed to plausibly allege Musk's veil piercing liability and asks the court to dismiss Counts III, IV, VII, VIII, IX, XII, XIII, and XIV of the FAC with prejudice. Taking the opposite stance regarding the sufficiency of their pleadings, Plaintiffs ask the court to deny Musk's motion to dismiss as to Plaintiffs' fraud, wage theft, and PAGA claims (Counts VI, X, XI). The court reaches the merits

of Musk's arguments regarding the plausibility of Plaintiffs' veil piercing theory and finds in his favor. Accordingly, the court rejects and modifies Report II to dismiss all claims—except for Count VI and Count X—with prejudice. The court also addresses Report II's recommendations as to fraud (Count VI) and wage theft pursuant to California and New York law (Count X), since those recommendations turn on the sufficiency of Plaintiff's allegations of direct liability. The court adopts Report II's recommendation to dismiss Count VI and Count X without prejudice.

### A. The Standard of Review Applicable to a Magistrate Judge's Finding of Forfeiture in a Recommendation on a Dispositive Motion

Report II explained that arguments raised solely in footnotes are typically considered forfeited and concluded that Musk had waived or forfeited any argument that Plaintiffs had failed to plausibly assert that Twitter's corporate veil should be pierced because he only made such an argument in a footnote of his opening brief. (D.I. 121 at 6, 12–13, 14–15, 15 n.16). Musk developed merits-based arguments for why the veil piercing allegations in the FAC are inadequate in his reply brief. (D.I. 37 at 4–7). Although there is some caselaw suggesting that an argument raised in the footnote of an opening brief and then "elaborated in detail" in a reply brief is not forfeited, *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 475 n.5 (3d Cir. 2020), it is within the Magistrate Judge's discretion to decide whether an argument raised in a footnote is forfeited. *Shure Inc. v. ClearOne, Inc.*, No. 19-cv-01343, 2021 WL 4894198, at *2 (D. Del. Oct. 20, 2021). At the court's request, the parties submitted letter briefs to the court regarding the standard of review applicable to Report II's recommendation

to deem waived or forfeited Musk's argument that Plaintiffs' veil piercing claims were insufficiently pled. (D.I. 151; D.I. 152).

The court has reviewed the cases cited by each party's letters and concludes that it is our duty to apply *de novo* review to Report II's proposed finding of waiver or forfeiture.[2] District Court judges have "ultimate adjudicatory power over dispositive motions," and accordingly, the "widest discretion" to decide whether to adopt the recommendations of a Magistrate Judge. *United States v. Raddatz*, 447 U.S. 667, 675, (1980) (citations omitted); *see also ThroughTKE Co., Ltd. v. Reolink Innovation, Inc.*, 730 F. Supp. 3d 92, 99 (D. Del. 2014) ("A motion to dismiss is considered a dispositive matter and, therefore, the findings and conclusions of the Magistrate Judge *in connection with* such a motion is reviewed *de novo*." (emphasis added)). The Federal Rules of Civil Procedure require us to "determine *de novo* any part of the magistrate judge's disposition [on a dispositive motion] that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) ("If a party objects timely to a magistrate

---

[2] Plaintiffs argue that Report II's proposed finding of waiver or forfeiture is reviewable only for abuse of discretion, but the cases they cite to do not support this position. In *Masimo Corp. v. Philips Electronic North America Corp.*, 62 F. Supp. 3d 368, 382 (D. Del. 2014), the court only repeated the well-established requirement that it reviews a Magistrate Judge's disposition of "non-dispositive pre-trial matter[s]" for abuse of discretion, as is required by 28 U.S.C. § 636(b)(1)(A). *See also* Fed. R. Civ. P. 72(a). Plaintiffs also overread *Shure* as suggesting that the court was bound to a Magistrate Judge's recommendation on forfeiture absent an abuse of discretion, when in fact, in that case the court explicitly stated that it reviewed the recommendation *de novo*. *Shure*, 2021 WL 4894198, at *1. That the court adopted the recommendation only shows that it exercised its discretion in the same manner as the Magistrate Judge. *Id.*

judge's report and recommendation, the district court must 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" (quoting 28 U.S.C. § 636(b)(1)(C))). Here, Musk specifically objected to the Magistrate Judge's proposed finding of forfeiture. (D.I. 134 at 3–5). Accordingly, *de novo* review is required.

The court declines to adopt Report II's proposed finding of forfeiture and considers the merits of Musks's veil piercing arguments in the next subsection. In rejecting this recommendation, the court does not hold that the Magistrate Judge abused his discretion. Rather, the court acknowledges that the application of the waiver or forfeiture doctrines remains a discretionary decision of the District Court. *See Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 219 n.9 (3d Cir. 2021) ("We review a district court's determination whether a party waived an argument by failing to raise it earlier in the proceedings for abuse of discretion."). Here, the court has simply "decided to exercise [our] judicial discretion differently" from the Magistrate Judge. *Riley v. Clark*, No. 20-cv-00325, 2025 WL 985228, at *5 (M.D. Pa. Mar. 31, 2025) (declining to adopt a Magistrate Judge's finding that defendants had forfeited their qualified immunity arguments). In the interest of fairness, the court ordered supplemental briefing to allow Plaintiffs to submit a sur-reply to Musk's reply in support of his motion to dismiss (D.I. 37), and Musk to submit a sur-sur-reply.

### B. Plaintiffs' Allegations of Veil Piercing Liability (Counts I, II, III, IV, V, VII, VIII, IX, XI, XII, XIII, and XIV)

The FAC includes a section entitled "Allegations Relating to Piercing the Corporate Veil." (D.I. 10 ¶¶ 293–312). Pursuant to the allegations listed therein, Plaintiffs assert that they are "entitled to an order holding Musk personally liable for any amounts awarded on their other claims." (*Id.* ¶ 312). As an initial matter, the court declines Plaintiffs' latest request that it undertake a conflicts-of-law analysis to decide which state's law applies to our review of the sufficiency of these claims. (*See* D.I. 156 at 1). The FAC alleges that Twitter and X Holdings I, Inc. were Delaware corporations, but that the conduct causing injury occurred in California. (D.I. 10 ¶¶ 27–28, 311). In their response brief in opposition to Musk's motion to dismiss, Plaintiffs asserted that "[t]here is no significant conflict between Delaware and California piercing law." (D.I. 25 at 16 (citing *Trans-World Int'l, Inc. v. Smith-Hemion Prods., Inc.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997))). The court agrees, and Plaintiffs' sur-reply does not identify a material conflict between the potentially applicable laws. "When there is no 'true conflict,' we 'may refer interchangeably to the laws of the states whose laws potentially apply.'" *Northrop Grumman Corp. v. Axis Reinsurance Co.*, 809 F. App'x 80, 88 (3d Cir. 2020) (citing *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006)). Thus, for the purposes of reviewing Musk's motion to dismiss, the court applies the laws of Delaware and California interchangeably.

"The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable

owner of a corporation will be held liable for the actions of the corporation." *Roman Cath. Archbishop of San Francisco v. Superior Ct.,* 15 Cal. App. 3d 405, 411 (1971). "Before the doctrine can be invoked, two elements must be alleged: First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015) (internal quotation marks and citation omitted). The requirements are the same in Delaware. *See, e.g.*, *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008) ("[I]n order to state a claim for piercing the corporate veil under an alter ego theory, [plaintiffs] must show (1) that the corporation and its [owner] operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present."). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specific facts supporting both of the necessary elements." *Gerritsen*, 116 F. Supp. 3d at 1136.

To satisfy the first element, Plaintiffs can plead a variety of factors. *See id.* at 1137 (listing factors recognized by California courts, including the commingling of funds and other assets, the holding out by one entity or individual that it is liable for the debts of the other entity, identical equitable ownership in the two entities, use of the same offices and employees, use of one entity as a mere shell or conduit for the affairs of the other, failure to adequately capitalize a corporation/undercapitalization,

12

concealment and misrepresentation of the identity of the responsible ownership, failure to maintain adequate corporate records, use of the corporate entity to procure labor, services or merchandise for another person or entity, etc.); *United States v. Pisani*, 646 F.2d 83, 88 (3d. Cir.1981) (recognizing the following factors as relevant: (1) undercapitalization; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders).

The court finds that Plaintiffs fail to adequately plead that Musk and Twitter constituted a "single economic entity." *Trevino*, 583 F. Supp. 2d at 528. The first element of the test "envisions pervasive control . . . from broad policy decisions to routine matters of day-to-day operation." *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1073 (9th Cir. 2015) (internal quotation marks and citation omitted); *see also Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("The degree of control required to pierce the veil is exclusive domination and control[.]" (internal quotation marks omitted)). The three factors Plaintiffs' FAC appears to plead are personal ownership and control, commingling of assets, and undercapitalization. While "[t]he identification of the elements of alter-ego liability plus [pleading] two or three factors has been held sufficient to defeat a 12(b)(6) motion to dismiss," *Pac. Mar. Freight, Inc. v. Foster*, No. 10-cv-00578, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010), Plaintiffs have not stated sufficient facts to plausibly

allege the applicability of any one factor. As the court explains below, the FAC's reliance on conclusory statements is insufficient to demonstrate that Musk had "pervasive control" of the Twitter Defendants.

Plaintiffs allege that Musk, through X Holdings I and its successors, owns more than 50% of Twitter and its successors. (D.I. 10 ¶ 294). They further allege that "Musk dominates Twitter's decision-making and operations" (*Id.* ¶ 295), based on a handful of discrete instances where Musk dictated Twitter's policies. (*Id.* ¶¶ 296–303). For example, Musk directed the suspension of a Twitter user's account and restored the access of another. (*Id.* ¶¶ 299, 302). Ownership of an entity by an individual, in and of itself, does not suggest dominion and control. *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."). Plaintiffs' allegations that Musk could control account access, or the price of Twitter's new subscription service (D.I. 10 ¶ 303), also fall short of demonstrating exclusive dominion and control. Plaintiffs' sur-reply describes "*Zoran* [a]s particularly instructive" of the allegedly liberal pleading requirements for a veil piercing claim (D.I. 156 at 6–7), but in *Zoran*, which was decided at the summary judgment stage, the plaintiff raised triable issues by demonstrating that the owner of the company provided the start-up funding for the company, the owner's family were shareholders in the company, the owner's wife loaned money to the company, the president of the company reported to the owner, the owner controlled day-to-day operations, and part of the company's money was

14

sent to the owner's other company in Taiwan. *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 812–13 (2010). Plaintiffs' FAC does not state facts that, if true, would demonstrate such pervasive involvement and control, and the allegation that "[o]n information and belief, Musk has exercised control over Twitter's decision-making and operations in other ways" is conclusory. (D.I. 10 ¶ 304). Furthermore, as Musk points out, the FAC does not even allege that Musk and Twitter were a single entity before the merger, when Twitter made the representations on which Plaintiffs' breach of contract (Count III), promissory estoppel (Count IV), and breach of offer letter (Count V) claims rely. (D.I. 37 at 4).

Regarding co-mingling of assets, Plaintiffs allege that Musk brought "engineers and executives from his other companies—such as Tesla, SpaceX, and The Boring Company—to provide services for Twitter." (D.I. 10 ¶¶ 305–06). Even assuming that such outside employees were assets attributable to Musk and not to the named third parties, Musk's Objection argues that "Plaintiffs' vague allegations that some unknown number of employees from other companies performed services for Twitter on an unidentified number of occasions do not give rise to an inference that Twitter 'commingled' its assets." (D.I. 134 at 7). The court agrees. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1074 (9th Cir. 2015) ("Some employees and management personnel move between the entities, but that does not undermine the entities' formal separation."); *Nieves v. Insight Bldg. Co., LLC*, No. 19-cv-00464, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) ("[O]verlapping or identical personnel does not by itself warrant ignoring the corporate form.").

Finally, Plaintiffs allege in a conclusory manner that "[o]n information and belief, Twitter is undercapitalized specifically as a result of Musk's purchase of the corporation." (D.I. 10 ¶ 309). This is insufficient to indicate that Twitter's "capitalization was illusory," *Fed. Rsrv. Bank of San Francisco v. HK Sys.*, No. 95-cv-01190, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997), that it was undercapitalized "to the point of being a shell corporation," *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-07098, 2015 WL 12710753, at *8 (C.D. Cal. June 3, 2015), or that Twitter was a sham "established to defraud its creditors," *Trevino*, 583 F. Supp. 2d at 530.

Even if Plaintiffs could plausibly allege a unity of interest between Musk and the Twitter Defendants, the court agrees with Musk that Plaintiffs have not adequately pled facts sufficient to support an inference that Musk is using the form of an independent corporation or corporations to achieve fraud or injustice. To satisfy the second element of veil piercing, a "plaintiff must show fraud, injustice, or inequity in the use of the corporate form." *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1304 (D. Del. 1990). Generally, courts also require "some evidence of bad faith conduct on the part of defendants before concluding that an inequitable result justifies an alter ego finding." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003); *see also Trevino*, 583 F. Supp. 2d at 529 (relying on a corporation's separate form does not support veil piercing "[u]nless done deliberately, with specific intent to escape liability for a specific tort or class of torts" (citation omitted)).

16

Based on the court's review of Plaintiffs' pleadings and briefs, the only injustice that Plaintiffs allege is that Twitter is at risk of bankruptcy and may not be able to satisfy a judgment against it. (D.I. 10 ¶¶ 307–10). Even assuming that Plaintiffs had plausibly alleged undercapitalization, "inadequate capitalization, itself, is not sufficient to pierce the corporate veil" because "some conduct amounting to bad faith [must] mak[e] it inequitable . . . for the equitable owner of a corporation to hide behind its corporate veil." *Romero v. Macy's, Inc.*, No. 15-cv-00815, 2016 WL 7098439, at *11, 12 (S.D. Cal. Dec. 6, 2016) (internal citation and quotation marks omitted). Plaintiffs do not allege that Twitter's undercapitalization resulted from bad faith or wrongful conduct or even that it was deliberate. And "the possibility that a plaintiff may have difficulty enforcing a judgment is [also] not an injustice warranting piercing the corporate veil." *Trevino*, 583 F. Supp. 2d at 530; *see also Neilson*, 290 F. Supp. 2d at 1117 (collecting cases and noting that "California courts have rejected the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine."); *Pac. Mar. Freight,* 2010 WL 3339432, at *7.

The court rejects and modifies Report II to dismiss Counts III, IV, VII, VIII, IX, XII, XIII, and XIV with prejudice and without leave to amend because Plaintiffs fail to plausibly allege that Musk can be derivatively liable for the alleged misconduct of Twitter Defendants through veil piercing. For the same reason, the court modifies Report II's basis for dismissing Plaintiffs' declaratory judgment (Count I), breach of merger agreement (Count II), breach of offer letter (Count V), and PAGA (Count XI)

17

claims, and concludes that Counts I, II, V, and XI should similarly be dismissed with prejudice and without leave to amend. Report II dismissed Counts I, II, and V for the same reasons as in Report I. (D.I. 21 at 3 & n.3). In their briefing on Musk's motion to dismiss, Plaintiffs made clear that the claims based upon alleged "promises made by Twitter to its employees during the pendency of the merger," are, as against Musk, "based on veil-piercing." (D.I. 25 at 5). Because the court finds that Plaintiffs have not plausibly alleged their alter ego theory, Counts I, II and V must fail.[3] The same fate befalls Plaintiffs' PAGA (Count XI) claim. Even if the court was to agree with Plaintiffs' Objection that Judge Burke erred in finding that their PAGA claim was abandoned (D.I. 135 at 7), Plaintiffs have clarified that Count XI, as against Musk, is also based on veil piercing, (*Id.*).

### C. Plaintiffs' Fraud Claim (Count VI)

The court adopts Report II's recommendation to dismiss Plaintiffs' fraud claim in full. For the convenience of the litigants, the court has reproduced the relevant portion of Report II's analysis below.

> Stating a claim for fraudulent misrepresentation or omission requires alleging: (1) a material misrepresentation or omission of fact; (2) made with knowledge of its falsity; (3) with an intent to defraud; and (4) reasonable reliance on the part of the plaintiff; (5) that causes damage to the plaintiff. *See, e.g., Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)

---

[3] Even though Plaintiffs' breach of offer letter claim in Count V does not fall into the same bucket as those claims concerning promises made during the pendency of the merger, Plaintiffs have not made any allegation that Musk is directly liable for Count V, leaving us to infer that they rely on veil piercing for this claim as well.

(California law); *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 138 (S.D.N.Y. 2022) (New York law).[4]

With their fraud claim, Plaintiffs allege that "Twitter" made representations to its employees "[i]n signing the [m]erger [a]greement" and in "subsequent statements" that if they were laid off in the first year after the merger, they would receive severance benefits no less favorable than they would have received pre-merger. (D.I. 10 at ¶ 354). As to the other Defendants, the FAC further alleges that "on information and belief, Musk, X Holdings I and [non-party] X Holdings II intended Twitter to communicate their purported agreement to the Severance Stability Promise to the Tweeps in order to allay Tweep concerns about the merger" ("Paragraph 356"). (*Id.* at ¶ 356). Furthermore, the FAC alleges that Defendants intended that Twitter's employees would rely on these representations and that the employees did in fact do so—but that Musk (and X Holdings I and X Holdings II) did not intend to follow through on the promises regarding severance (and that Twitter either knew or was reckless to the fact that the representations were untrue). (*Id.* at ¶¶ 355, 357–59, 366).

Musk's challenge to Plaintiffs' fraud claim focuses on the first element of such a claim: i.e., whether he made a material misrepresentation or omission of fact. Musk argues that Count VI must be dismissed as to him because the FAC does not contain allegations tying *him* to this element, in that it fails to plead that: (1) *Musk* made a false representation or (2) *directed* Twitter to do so or (3) *had the authority* to direct Twitter to do so. (D.I. 18 at 14; D.I. 37 at 7).

The Court agrees with Musk that the fraud claim is insufficiently pleaded as to him. The FAC does not plead that Musk *himself* made a false representation to Plaintiffs. Rather, as Musk points out, the main allegation connecting him to the communication of the allegedly fraudulent statements comes in Paragraph 356. (D.I. 18 at 15). This paragraph is completely conclusory; as noted above, it simply states that "on information and belief" Musk (and his companies) "intended" Twitter to communicate his agreement to the Severance Stability Promise to Twitter's employees. (D.I. 10 at ¶ 356; *see also id.* at ¶ 76 (essentially alleging the same)). But the Severance Stability Promise is found in Section 6.9 of the merger agreement . . . and Musk was not a party to that portion of the agreement. (D.I. 37 at 7; *see also* D.I. 18 at 3–4; D.I. 16, ex. A at 15 (specifying that the merger agreement is made among Twitter, X Holdings I, X Holdings II and Musk, but that Musk is a party only to certain sections—*not including* Section 6.9)). So it is hard to say, simply by looking at the merger agreement's text, that Musk himself

---

[4] Here, Musk suggests that Delaware, California, New York and/or Texas law would apply to Plaintiffs' fraud claim, but notes that the elements for such a claim are substantially the same under each of these state's laws (D.I. 18 at 14–15 n.7).

had something to do with any promise reflected in Section 6.9. And there are no further *concrete* facts pleaded in the FAC that would flesh out the bald assertion that Musk intended or directed Twitter to communicate the statements found in Section 6.9 to others on his behalf. This seems especially problematic when one considers that the statements at issue were made at a time before Musk owned and controlled Twitter, and when he was in active litigation with the company.[5] Thus, these allegations do not satisfy the relevant Rule 9(b) pleading standard. *See, e.g., Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 121 (E.D.N.Y. 2011) (dismissing a fraudulent misrepresentation claim in a case regarding an allegedly defective oven manufactured by the "Maytag Defendants" and purchased from defendant "Plesser's[,]" where the plaintiff argued that a misrepresentation made by defendant Plesser's sales representative constituted a fraudulent misrepresentation by the Maytag Defendants—but the complaint failed "to plead any facts supporting the existence of an agency relationship between the Maytag Defendants and [defendant] Plesser's").[6]

. . . In their answering brief, Plaintiffs assert that "Musk intended that [X Holdings I's intent to provide the promised severance] be communicated to the employees,[ ] *and in fact approved the communications that conveyed this message to the employees, both in his individual capacity and on behalf of X Holdings I.*" (D.I.25 at 6 (emphasis added); *see also id.* at 8 n.9). But as support for that assertion, Plaintiffs cite solely to Paragraph 356. And Paragraph 356 does not provide detailed facts (or say anything at all) about how Musk "approved the communications" at issue or that he did so on behalf

---

[5] The FAC pleads that Musk took over as the owner of Twitter six months after the merger agreement was signed, on October 26, 2022, at which point he "exercised near-total personal control over decision-making at Twitter[.]" (D.I. 10 at ¶¶ 108–09).

[6] While Plaintiffs are correct that an "officer of a corporation" can be held liable for wrongful conduct of a corporation if the officer directly authorizes or actively participates in such conduct, (D.I. 25 at 7 (citing cases)), a plaintiff has to plead sufficient facts in its complaint to make out such a claim against an individual defendant, *see, e.g., Lauter v. Rosenblatt*, Case No. CV 15-08481 DDP (KSx), 2018 WL 3854160, at *4 (C.D. Cal. Aug.10, 2018) (noting that prior pleadings' allegations that an individual defendant "was aware of" tortious conduct and "had the right and ability to supervise" employees who issued false statements were not sufficient to allege the individual defendant's active participation in the wrongful misconduct); *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60–61 (Del. Ch. 2015) (holding that a company's directors can be held liable for fraudulent representations made by the company as to a contract, where the complaint alleged that the directors made statements to the company's managers intending for them to be repeated and affirmatively approved, or that they directed the managers to provide the false representations). There are no such specific, Rule 9(b)-type facts pleaded here. And Musk was not an officer of Twitter at the relevant time.

of himself and X Holdings I. (D.I. 10 at ¶ 356). Perhaps realizing this, Plaintiffs offer in their briefing to "amend to specifically allege the communications were personally approved by Musk, both on his own behalf and on behalf of X Holdings [I]." (D.I. 25 at 6 n.7).

Since a party may not amend a pleading through arguments made in a brief in opposition to a motion to dismiss, (D.I. 37 at 7); *Sierra v. Trafigura Trading LLC*, Civil Action No. 22-366-JLH-CJB Consolidated, 2024 WL 3823018, at *11 (D. Del. Aug. 14, 2024) (citing cases), the Court recommends that Plaintiffs' fraud claim be dismissed as to Musk. That said, it seems possible that Plaintiffs (as they say that they wish to do) might be able to plead the missing facts in a further amended complaint. In light of this, and because Federal Rule of Civil Procedure 15 states that leave to amend should be freely permitted "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court will recommend that such dismissal be without prejudice.

(D.I. 121 at 7–10).

Plaintiffs' Objection argues that veil piercing liability provides an alternative basis not to dismiss the fraud claims against Musk (D.I. 135 at 7), but, for the reasons stated above, Plaintiffs have not sufficiently alleged veil piercing liability either.

### D. Plaintiffs' Wage Theft Claim (Count X)

Plaintiffs do not oppose the dismissal of their wage theft claim brought pursuant to Texas law (D.I. 121 at 14). The court hereby dismisses Plaintiffs' wage theft claim pursuant to Texas law, which leaves us to consider their wage theft claims brought pursuant to California and New York law. Count X of the FAC alleges that New York and California law provide that an employer that fails to provide employees with all wages due is liable for the unpaid amount and for liquidated damages in the amount of any stolen wages, and that Twitter failed to provide employees with the severance that they were entitled to. (D.I. 10 ¶¶ 414–17). As to Count X, Plaintiffs allege that "[u]nder California law, the definition of 'employer' against whom Plaintiffs may bring claims for wage theft includes not only Twitter, but X Holdings

I and Musk as an individual." (*Id.* ¶ 419). In their briefing, Plaintiffs clarified that their intent is to plead their wage theft claim directly against Musk. (D.I. 25 at 1).

In California, "[a]ny employer or other person acting on behalf of an employer" may be liable for wage theft. Cal. Lab. Code § 558.1. California courts have interpreted this to mean that an individual owner can be liable for wage theft "if, when acting on behalf of an employer, the owner ha[d] personal involvement in the enumerated violations in section 558.1; or, absent personal involvement, has sufficient participation in the activities of the employer—including, for example, over those responsible for the alleged wage and hour violations—such that the owner may be deemed to have contributed to, and thus have caused such violations." *Usher v. White*, 64 Cal. App. 5th 883, 886 (2021) (internal quotation marks omitted). New York courts have similarly recognized that individuals acting on behalf of an employer can be liable for wage-related violations where they "controlled personnel decisions, and had the power to hire and fire, set wages, and otherwise control the terms and conditions of the plaintiffs' employment." *Severin v. Project OHR, Inc.*, No. 10-cv-09696, 2011 WL 3902994, at *6 (S.D.N.Y. Sep. 2, 2011); *see also Leal v. Masonry Servs., Inc.*, No. 12-cv-00588, 2013 WL 550668, at *3 (E.D.N.Y. Feb. 12, 2013) (collecting cases).

For the reasons stated in Report II, the court agrees with Judge Burke that Count X, to the degree it is alleged under California and New York law, should be dismissed without prejudice. The FAC does not plead that Musk was acting on behalf of Twitter, had personal involvement in the alleged wrongdoing, controlled personnel

decisions, or otherwise had the influence to set wages. The FAC only alleges, without elaboration, that Musk is covered by the relevant statutory definition of "employer." (D.I. 10 ¶ 419). Plaintiffs point to the allegations in their section relating to veil piercing to argue that they have adequately pled Musk controlled Twitter's operations. (D.I. 25 at 15–16 (citing D.I. 10 ¶¶ 294–304)). Again, those allegations only relate to Musk's ownership and control over some of Twitter's discrete policies, like which accounts are banned from the platform. Plaintiffs have not pleaded facts, which if true, would demonstrate the sort of control that would plausibly allow Musk to be held liable for wage theft under California or New York law.

IV.    **Conclusion**

The court has considered the remaining arguments raised by the parties' Objections, Responses, Sur-Reply, and Sur-Sur Reply and find them unpersuasive. Accordingly, and in view of the foregoing, the Court adopts Report II's recommendation that the court grants the motion to dismiss as to Counts VI and X as to Musk without prejudice, and Count X pursuant to Texas law with prejudice. As to those claims dismissed without prejudice, the court requires that Plaintiffs file a motion for leave to amend to the extent that they seek to amend the FAC. The court further rejects Report II's recommendation that the court deny Musk's motion to dismiss with respect to Counts III, IV, VII, VIII, IX, XII, XIII, and XIV. Though the court agrees with Report II's proposal that it dismiss Counts I, II, V, and XI, the court dismisses these claims for different reasons. The court dismisses Counts I, II, III, IV, V, VII, VIII, IX, XI, XII, XIII, and XIV of the FAC with prejudice and without leave

to amend because Plaintiffs fail to plausibly allege veil piercing. In summary, the court dismisses all claims asserted against Musk.