# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,<br><br>Defendants. | Case No. 1:23-cv-528-TMH |

## PLAINTIFFS' MOTION FOR RECONSIDERATION

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com  dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com

*Counsel for Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer*

Dated: October 9, 2025

Plaintiffs respectfully submit this motion for reconsideration (under Rule 59(e) of the Federal Rules of Civil Procedure) of the Court's Decision and Order of September 29, 2025, D.I. 160 and 161, to the extent that they dismissed Plaintiffs' breach of merger agreement claims against Defendants.

The Court's decision relied on Sections 6.9(e) and 9.7 of the merger agreement and the absence of language *in those provisions* indicating that they would only be operative pre-closing. D.I. 160 at 10 (such a distinction between pre- and post-merger rights does not find support in the text of either Section 9.7 nor Section 6.9(e)(i)). In so doing, the Court appears to have overlooked Section 9.1 of the merger agreement, which was the separate provision in which the parties provided the general rule determining whether Sections 6.9(e) and 9.7 would remain in force post-closing (or after termination of the agreement). Section 9.1 provided that the only terms of the merger agreement that would be operative post-closing were those that "by their terms" contemplated *performance* after closing. As such, it rendered Sections 6.9(e) and 9.7 (which did not contemplate any performance at all) inoperative after the closing, confirming Plaintiffs' argument (which the Court rejected) that the "no third-party beneficiary" provisions were time-gated and inapplicable to post-closing claims by the employees for breach of Sections 6.9(a)-(d). Because the Court did not address Section 9.1 in its decision at all, reconsideration is warranted. More, in dismissing with prejudice the Court was unable to consider key evidence that came to light only after briefing and argument on the motion had closed: Defendants' belated admission in May 2025, via a corporate representative's testimony under oath at arbitration, that Twitter had specifically negotiated Sections 6.9(a)-(d) "on behalf of" its employees. At a minimum, the Court should reconsider its dismissal with prejudice to allow Plaintiffs to replead their claims to include Defendants' admission.

A.   **Standard on a Motion for Reconsideration**

"The purpose of a motion for reconsideration [] is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d

1

669, 677 (3d Cir. 1999) (reversing denial of reconsideration). Accordingly, a successful motion to reconsider "must establish one of three grounds: (i) there is an intervening change in controlling law, (ii) new evidence has become available, or (iii) there is a need to correct the court's clear error of law or fact or to prevent manifest injustice." *BP Amoco Chem. Co. v. Sun Oil Co.*, 200 F. Supp. 2d 429, 432 (D. Del. 2002) (granting reconsideration and reargument in part), *citing Max's Seafood Café*, 176 F.3d at 677.[1] "[T]he court should reconsider a prior decision when it appears the court has overlooked facts or precedent which, had they been considered, might reasonably have altered the result." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991), *aff'd sub nom. United States v. Carper*, 22 F.3d 303 (3d Cir. 1994). Here, Plaintiffs' motion is premised on both the Court's manifest error of law and fact and newly available evidence which did not exist at the time the motion was submitted. Because both warrant a different outcome, the Court should grant the motion for reconsideration. And, upon granting reconsideration, it should deny the motion to dismiss the breach of merger agreement claim, or at least grant Plaintiffs leave to replead to include the newly available evidence.

B. **The Court's Dismissal With Prejudice of Plaintiffs' Breach of Merger Agreement Claim Should be Reconsidered Based on Newly Available Evidence and As a Clear Error of Law and Fact**

The Court considered and rejected Plaintiffs' arguments on the motion to dismiss, and Plaintiffs acknowledge that a request for reconsideration is not an excuse to rehash prior arguments addressed in that decision, *BP Amoco*, 200 F. Supp. 2d at 432, and thus will not do so here. And Plaintiffs are cognizant of the significant burden they bear on this motion. *Id.* This, however, is the rare case in which the Court should grant reconsideration of its prior decision, for two reasons.

*First*, and respectfully, the Court appears to have overlooked Section 9.1 of the Merger Agreement in its decision. The Court found – without discussion of Section 9.1 – that nothing in the

---

[1] Plaintiffs do not assert any intervening change in controlling law.

2

"the text of either Section 9.7 nor 6.9(e)" evinced any intent by the parties that those no third-party beneficiary provisions be time-gated and allow third-party beneficiary claims by the employees under Section 6.9 after closing. D.I. 160 at 10. But the Merger Agreement's relevant language governing which provisions would continue in force after the closing was included in Section 9.1 as a separate and specific provision, in which the parties *expressly* agreed both (1) that Section 6.9 imposed *obligations* on the acquirer after closing and (2) that *all* provisions of the merger agreement that did not "by [their] terms contemplate[] performance after the Effective Time or after termination of this Agreement" would themselves terminate upon the closing of the merger. D.I. 27-1, § 9.1. That is, the parties drew their distinction between provisions that would be operative both pre- and post- closing and those that would be operative only pre-closing *not* within each provision individually, but in Section 9.1 as a separate general provision that then applied to each other provision of the contract. Thus, to the extent that the Court was looking for clues in the "text of either Section 9.7 []or 6.9(e)" about whether those provisions were intended to be operative after closing, it was manifestly looking in the wrong place. It thus it "appears the court has overlooked facts … which, had they been considered, might reasonably have altered the result." *Karr*, 768 F. Supp. at 1093.[2]

Looking at Section 9.1, the text makes clear that the parties did not intend the no third-party beneficiaries provisions to operate post-closing to bar claims by employees like Plaintiffs. As noted above, Section 9.1 expressly calls out Section 6.9 as imposing post-closing performance obligations on the acquirer that were *not* intended to terminate with the closing – an outcome only possible if the employees could enforce those provisions. That outcome is also directly inconsistent with any intent for Section 6.9 to benefit either party to the contract, as the acquirer would be bound by it, while the

---

[2] It may well be – though of course Plaintiffs hope otherwise – that upon granting reconsideration and considering the effect of Section 9.1 the Court will adhere to its original determination. But because the Court both did not discuss Section 9.1 and affirmatively stated that it had looked elsewhere in the contract for textual indications about whether Sections 6.9(e) and 9.7 remained in force after the closing (the subject covered by Section 9.1), reconsideration itself appears well-warranted because consideration of Section 9.1 "might reasonably have altered the result."

3

seller would have no benefit from any post-closing performance. More fundamentally, neither Section 6.9(e) nor Section 9.7 is a provision that "by its terms contemplates *performance* after the Effective Time or after termination of this Agreement." A "no third-party beneficiary" provision does not contemplate performance at all; it is a negative provision limiting the rights of third parties, not a positive provision requiring any performance by the parties. Nor, even could that be construed as "performance," would the express terms of either provision contemplate such performance after the Effective Time; either and both could – as Plaintiffs argued – equally be called into effect prior to the closing and might conceivably only be called into effect then.[3] A no third-party beneficiary provision is therefore distinctly unlike the two examples the parties included in Section 9.1 to illustrate the meaning of a provision that "by its terms" contemplated such performance: Section 6.9 (which addressed the acquiring entity's *post-closing* obligations to the *pre-closing* employees) and Section 6.6 (which addressed the acquiring entity's *post-closing* obligations to the *pre-closing* officers and directors). *Cf. Cooper Distrib. Co. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 280 (3d Cir. 1995) (general words near a specific list are construed with reference to the qualities of the specific enumerations).

*Second*, the Court should reconsider the with-prejudice nature of its dismissal, because Plaintiffs are now in possession of critical newly available evidence, which was not in Plaintiffs' possession either at the time they amended the Complaint (and hence could not have been included

---

[3] Respectfully, the Court also appears to have misapprehended Plaintiffs' argument with respect to *Crispo II*. Plaintiffs did not argue that Chancellor McCormick had made a "finding" that "that the merger agreement does 'not bar any action after the merger closed for damages from breach of Twitter's post-close obligations,'" D.I. 160 at 9, but rather that such a construction was "indicated by" Chancellor McCormick's ruling in *Crispo II*. D.I. 111 at 6. In *Crispo II*, Chancellor McCormick held that it would be objectively reasonable to construe the no third-party beneficiaries provision in Section 9.7 as time-gated (to pre-termination), despite its highly customized nature and what this Court correctly notes is the lack of any textual cue *within* Section 9.7 of such a time-gate, because the alternative construction would violate Delaware's cardinal rule of contract construction by rendering wholly unenforceable the provision Chancellor McCormick was assessing. Plaintiffs thus argued that Chancellor McCormick's *reasoning* from *Crispo II* applied, *mutatis mutandis*, to Section 6.9(e), and therefore indicated that it was also objectively reasonable to construe Section 6.9(e) as time-gated (rendering the agreement at least ambiguous and dismissal inappropriate), as the construction urged by Defendants and adopted by the Court likewise rendered Sections 6.9(a)-(d) unenforceable and therefore implicates that same cardinal rule. D.I. 111 at 7 ("that logic applies with even greater force here …"). Plaintiffs apologize if that was less than clear from the language of their prior briefing.

4

in the amendment) or at the time briefing and argument closed on the motion to dismiss (preventing Plaintiffs from raising it on this motion).[4] An arbitration hearing was held in late May, 2025 on claims brought by one of Plaintiffs' former colleagues. Lauren Wegman, a Director in X. Corp's human resources department, testified at that hearing as a corporate designee. *See* Ex. 1 hereto at 570:12-571:2. And in her testimony, she expressly admitted that pre-merger Twitter had negotiated Sections 6.9(a)-(d) "on behalf of" Twitter's pre-merger employees. *Id.* at 596:14-597:17 (testifying that the provisions of Sections 6.9(a)-(d) did provide special protection for employee severance because "Twitter specifically negotiated these on behalf of the employee -- employees. If they wouldn't have, they wouldn't have been – they wouldn't have been included in the merger agreement"). That admission – binding on Defendants in this action – directly contradicts the Court's conclusion in its decision that the mutual intent of the parties to the Merger Agreement was *not* to confer any benefit on the employees. D.I. 160 at 10. It also brings this provision of the Merger Agreement squarely within the precedent of *Dolan v. Altice USA, Inc.*, 2019 WL 2711280 (Del. Ch. June 27, 2019), which Defendants had previously distinguished on the basis that in *Dolan*, the court found the provision ambiguous because the Dolans had been involved in the negotiation and included that provision intending to benefit themselves, while Twitter's employees had not been involved in the negotiation. D.I. 38 at 2-3 (distinguishing *Dolan* on the basis that "the plaintiffs there participated in the merger negotiations independently from the target company and specifically negotiated the contractual language they sought to enforce"). Twitter's belated admission that it was, in effect, acting as the employees' agent in negotiating Section 6.9 of the Merger Agreement and was actively looking out for their interests when it did so renders that a distinction without a difference. As such, *Dolan* – which

---

[4] Unlike the submission of subsequent legal authority, neither the Federal Rules of Civil Procedure nor the Local Rules provide a mechanism for parties to apprise the Court of relevant new factual developments between the time a motion is submitted and the time it is decided, and Plaintiffs were in any event limited to the facts included in the Complaint in opposing the motion.

5

the Court did not address in its decision – compels a different result than that reached by the Court. At the very least, the Court should rule that Defendants' belated admission will be enough, when included in a Second Amended Complaint, to overcome a motion to dismiss, and reconsider its dismissal of this count *with* prejudice.

    **C. Conclusion**

Because the Court's decision was premised in significant part on the intent of the parties and the absence of language in Section 6.9(e) and 9.7 about whether those provisions would be operative after closing, and the Court overlooked and therefore did not address Section 9.1 (which provided the rule by which the parties determined whether Sections 6.9(e) and 9.7 would be operative after closing) and did not have the benefit of Lauren Wegman's testimony, the Court should grant reconsideration. And, on reconsideration, the Court should either deny the motion to dismiss – on the basis either that the merger agreement was ambiguous or that it unambiguously allowed Plaintiffs' third-party beneficiary claims – or alter its dismissal to be without prejudice, so that Plaintiffs can replead their claim to include Defendants' belated admission that Sections 6.9(a)-(d) were negotiated to benefit Plaintiffs.

| | |
|---|---|
| **OF COUNSEL** | **CHRISTENSEN LAW LLC** |
| Akiva Cohen (*pro hac vice*)<br>Dylan M. Schmeyer (*pro hac vice*)<br>Michael D. Dunford (*pro hac vice*)<br>Lane A. Haygood (*pro hac vice*)<br>KAMERMAN, UNCYK, SONIKER & KLEIN P.C.<br>1700 Broadway, 16th Floor<br>New York, NY 10019<br>Tel: (212) 400-4930<br>acohen@kusklaw.com dschmeyer@kusklaw.com<br>mdunford@kusklaw.com | */s/ Joseph L. Christensen*<br>Joseph L. Christensen (#5146)<br>1201 N. Market Street, Suite 1404<br>Wilmington, Delaware 19801<br>Tel: (302) 212-4330<br>joe@christensenlawde.com<br><br>*Counsel for Wolfram Arnold, Erik Froese, Tracy Hawkins, Joseph Killian, Laura Chan Pytlarz, and Andrew Schlaikjer* |

Dated: October 9, 2025

7