# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>*Plaintiffs*,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC., and ELON MUSK,<br><br>*Defendants*. | C.A. No. 1:23-cv-528-JLH-CJB |

**DEFENDANTS X CORP. f/k/a TWITTER, INC. AND X HOLDINGS CORP. f/k/a X HOLDINGS I, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION (D.I. 164)**

Dated: October 23, 2025

Eric Meckley (*pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
415-442-1000
eric.meckley@morganlewis.com

T. Cullen Wallace (*pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
713-890-5722
cullen.wallace@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
302-574-7294
jody.barillare@morganlewis.com

*Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.*

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND ........................................................................................................... 1

II. STANDARD OF REVIEW ......................................................................................... 2

III. ARGUMENT ................................................................................................................ 3

    A. Plaintiffs' Belated Invocation Of Section 9.1 Does Not Warrant Reconsideration. 3

        1. Plaintiffs Cannot Seek Reconsideration Based On An Argument They Neglected To Raise Earlier. ........................................................................ 3

        2. Plaintiffs' Argument Fails On The Merits. ................................................ 5

    B. The Confidential Arbitration Testimony Does Not Constitute "New" Evidence And, In Any Event, Has No Bearing On The Court's Decision To Dismiss Plaintiffs' Claims With Prejudice. ........................................................................ 7

        1. Plaintiffs' Evidence Was Available Prior To This Court's Order Of Dismissal And Is Therefore Not "New". ..................................................... 7

        2. The Proffered Testimony Has No Impact On The Court's Conclusion. ...... 9

IV. CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blystone v. Horn*,
  664 F.3d 397 (3d Cir. 2011) ............................................................................................. 7, 8

*Cilag GmbH Int'l v. Hospira Worldwide, LLC*,
  2023 WL 4865499 (D. Del. July 31, 2023) ........................................................................ 10

*Crispo v. Musk*,
  2022 WL 6693660 (Del. Ch. Oct. 11, 2022) ...................................................................... 10

*Crispo v. Musk*,
  304 A.3d 567 (Del. Ch. 2023) .............................................................................................. 4

*Doeblers' Pa. Hybrids, Inc. v. Doebler*,
  442 F.3d 813 (3d Cir. 2006) ................................................................................................ 5

*Dolan v. Altice USA, Inc.*,
  2019 WL 2711280 (Del. Ch. June 27, 2019) ..................................................................... 10

*Durst v. Durst*,
  663 F. App'x 231 (3d Cir. 2016) ......................................................................................... 2

*Evans v. Cantor Ins. Grp., L.P.*,
  2022 WL 1659162 (D. Del. May 25, 2022) ........................................................................ 9

*Gibson v. State Farm Mut. Auto. Ins. Co.*,
  994 F.3d 182 (3d Cir. 2021) ................................................................................................ 3

*Greatbatch Ltd. v. AVX Corp.*,
  179 F. Supp. 3d 370 (D. Del. 2016) .................................................................................... 3

*Intellectual Ventures I LLC v. Check Point Software Techs., Ltd.*,
  215 F. Supp. 3d 314 (D. Del. 2014) ................................................................................ 3, 6

*Max's Seafood Café v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) ....................................................................................... 2, 3, 9

*McBurrows v. Verizon*,
  2019 WL 6908014 (D.N.J. Dec. 19, 2019) .......................................................................... 8

*Meades v. Wilmington Hous. Auth.*,
  2003 WL 939863 (Del. Ch. Mar. 6, 2003) ........................................................................... 6

*Montalban v. Powel*,
    2020 WL 207062 (M.D. Pa. Jan. 14, 2020) ............................................................. 8, 9

*Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*,
    2011 WL 13152483 (D. Del. Oct. 26, 2011) ................................................................ 9

*Rowe v. Giroux*,
    2018 WL 3239824 (M.D. Pa. July 3, 2018) .................................................................. 3

*In re Selman*,
    2024 WL 1092025 (D. Del. Mar. 13, 2024) .................................................................. 4

*Teri Woods Pub., LLC v. Williams*,
    2013 WL 6388560 (E.D. Pa. Dec. 6, 2013) ................................................................... 7

*Tristrata Tech., Inc. v. ICN Pharm., Inc.*,
    313 F. Supp. 2d 405 (D. Del. 2004) ............................................................................. 2

*United States v. Jasin*,
    292 F. Supp. 2d 670 (E.D. Pa. 2014) ........................................................................... 4

*United States v. Leitenberger*,
    420 F. App'x 188 (3d Cir. 2011) .................................................................................. 4

*Upsher-Smith Labs., LLC v. Zydus Pharm. (USA), Inc.*,
    2024 WL 3291765 (D. Del. Jan. 4, 2024) ................................................................... 10

*West Willow-Bay Court LLC v. Robino-Bay Court Plaza LLC*,
    2007 WL 3317551 (Del. Ch. Nov. 2, 2007) .................................................................. 9

Plaintiffs' arguments for reconsideration are far too little, far too late. Plaintiffs' assertion that § 9.1 of the Merger Agreement essentially nullified the Agreement's no-third-party beneficiary provisions upon the consummation of the merger was never raised in any of their prior briefs, and cannot now be raised for the first time on a motion for reconsideration. Regardless, Plaintiffs' argument fails on the merits. Both the plain language of § 9.1 and the unambiguous intent of the contracting parties require the survival of the no-third-party beneficiary provisions, which are integral to defining the appropriate scope of the benefits discussed in § 6.9(a).

Plaintiffs' invocation of confidential arbitration testimony fares no better.[1] Contrary to Plaintiffs' assertion, the testimony is not "new," but rather predates the Court's order by ***over four months***. Moreover, the testimony does not—and cannot—impact the Court's finding that the terms of the Merger Agreement unambiguously preclude Plaintiffs' claims, and therefore has no relevance to the Court's decision to dismiss the claims with prejudice. The Court should deny Plaintiffs' motion and reaffirm its order dismissing Counts I and II with prejudice.

**I.   BACKGROUND**

On April 25, 2022, Twitter entered into a merger agreement with X Holdings I, Inc., X Holdings II, Inc., and, for only certain provisions, Elon R. Musk (the "Merger Agreement"). D.I. 16-1. While § 6.9(a) of the Merger Agreement describes the maintenance of certain employment benefits following the consummation of the merger (the "Effective Time"), § 6.9(e)(i) clarifies that Twitter retained an unfettered "right[] to amend, modify, merge or terminate" any employee benefit plan. *Id.* at 66-67. The Merger Agreement also includes two separate no-third-party

---

[1] Twitter intends to file a motion to strike the confidential testimony. In addition to being immaterial and impertinent, Plaintiffs' filing violates the arbitration claimant's Dispute Resolution Agreement, which prohibits the claimant from disclosing "the existence, content, or results" of the arbitration, as well as a separate agreement between Plaintiffs' counsel and Twitter's counsel, which requires that the arbitration proceedings remain "strictly confidential."

1

beneficiary provisions. Specifically, § 6.9(e)(ii) states that "[n]othing contained in this Section 6.9, express or implied, shall . . . give any Company Service Provider [defined to include employees] any third-party beneficiary or other rights[.]" *Id.* at 67. Section 9.7, entitled "No Third-Party Beneficiaries," similarly confirms that the "Agreement is not intended to and shall not confer upon any Person other than the parties hereto any rights or remedies hereunder," subject to three specific exceptions (none of which apply to Plaintiffs). *Id.* at 84. Although § 9.1 of the Merger Agreement generally provides that the "representations, warranties, covenants and agreements" in the Agreement would "terminate at the Effective Time," it states that it does not "limit any covenant or agreement of the parties which by its terms contemplates performance after the Effective Time . . . including those contained in . . . Section 6.9." *Id.* at 81.

Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc. (together, "Twitter") moved to dismiss Plaintiffs' claims premised on the Merger Agreement (Counts I and II), arguing that the Agreement's terms unambiguously foreclosed Plaintiffs' assertion of third-party beneficiary rights. D.I. 15 at 4-8. Magistrate Judge Christopher J. Burke agreed, and recommended dismissal of Counts I and II with prejudice. D.I. 110 at 10-18. On September 29, 2025, this Court adopted Judge Burke's recommendation over Plaintiffs' objection, and entered an order dismissing Counts I and II with prejudice. D.I. 160 at 10-18; D.I. 161.

## II.  STANDARD OF REVIEW

Given the important interest in finality, "[a] district court should be loathe to revisit its earlier decisions in the absence of extraordinary circumstances[.]" *Durst v. Durst*, 663 F. App'x 231, 237 (3d Cir. 2016) (cleaned up). For this reason, motions for reconsideration are "granted sparingly," *Tristrata Tech., Inc. v. ICN Pharm., Inc.*, 313 F. Supp. 2d 405, 407 (D. Del. 2004) (cleaned up), and only where necessary to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)

2

(cleaned up). "A motion for reconsideration is not intended to give an unhappy litigant an additional chance to rehash or reargue issues which have already been considered and disposed of by the Court," and may not be used "to raise new arguments that [the party] could have raised previously, but did not." *Rowe v. Giroux*, 2018 WL 3239824, at *2 (M.D. Pa. July 3, 2018).

To this end, a party seeking reconsideration must demonstrate "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the [relevant motion]; or (3) the need to correct a clear error of law or to prevent manifest injustice." *Max's Seafood*, 176 F.3d at 677. "Even where one or more of these conditions is satisfied, the Court may deny the motion where it would not alter the outcome." *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 379 (D. Del. 2016). The decision to grant or deny a motion for reconsideration "lies squarely within the discretion of the district court." *Intellectual Ventures I LLC v. Check Point Software Techs., Ltd.*, 215 F. Supp. 3d 314, 321 (D. Del. 2014).

## III. ARGUMENT

### A. Plaintiffs' Belated Invocation Of Section 9.1 Does Not Warrant Reconsideration.

Plaintiffs argue—for the first time ever—that § 9.1 essentially nullified the Merger Agreement's two no-third-party beneficiary provisions following consummation of the merger, and assert that the Court committed clear error by failing to address this section. Because Plaintiffs cannot use a motion for reconsideration to raise new arguments, their motion should be summarily rejected. Regardless, Plaintiffs' far-fetched interpretation of § 9.1 finds no support in either the text of the Merger Agreement or its overarching purpose.

#### 1. Plaintiffs Cannot Seek Reconsideration Based On An Argument They Neglected To Raise Earlier.

It is axiomatic that a motion for reconsideration cannot be used as "a vehicle to argue facts or issues that were not raised." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d

3

Cir. 2021) (denying motion based on arguments that the movant "should, could, and ought to have raised earlier but did not"). Yet that is precisely what the Plaintiffs seek to do here.

Prior to submitting their Motion, Plaintiffs **never** raised § 9.1 in **any** of their briefing, much less argued that it nullified the very provisions Twitter has relied on since the beginning.[2] Instead, in their initial opposition to Twitter's motion to dismiss, Plaintiffs argued that § 6.9(a) "**unambiguously**" conferred third-party beneficiary rights on continuing employees **despite** the existence of the no-third-party beneficiary provisions. D.I. 25 at 10-11 (emphasis added). After Judge Burke pointed out the blatant flaws in Plaintiffs' argument, Plaintiffs tried a different tack. In their objections to Judge Burke's recommendation, Plaintiffs shifted to arguing that the Merger Agreement was **ambiguous** because it could be read as precluding only pre-merger claims for specific performance. D.I. 111 at 10. Plaintiffs' new theory of interpretation was based—not on § 9.1—but on *Crispo v. Musk*, 304 A.3d 567 (Del. Ch. 2023) ("*Crispo II*"), which interpreted a separate provision of the Merger Agreement without ever relying on § 9.1. D.I. 111 at 9-11.

Plaintiffs do not acknowledge their failure to previously raise § 9.1, much less offer an explanation for their omission. Instead, Plaintiffs have the audacity to assert that this Court committed "clear error" by evaluating the arguments they **did** raise while "overlook[ing]" a section of the Merger Agreement they **did not** raise. D.I. 164 at 3.

But a court does "not commit clear error when it fail[s] to address [an] argument without being prompted to do so by either of the parties." *United States v. Leitenberger*, 420 F. App'x 188, 190 n.1 (3d Cir. 2011); *see also United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2014).

---

[2] Although Plaintiffs briefly invoked § 9.1 during oral arguments, they did so only as support for their argument that § 6.9(a) was intended to impose a mandatory obligation on Twitter. D.I. 150 at 49. Plaintiffs did not at any point suggest that § 9.1 terminated §§ 6.9(e) or 9.7 as of the Effective Time. In any event, "[a] party may not make new arguments during oral argument that are not made in the briefs[.]" *In re Selman*, 2024 WL 1092025, at *2 n.4 (D. Del. Mar. 13, 2024).

4

After all, "[j]udges are not like pigs, hunting for truffles buried in the record," and this Court was under no obligation to meticulously parse through 96-pages of largely irrelevant contractual terms in search of a provision that might ostensibly support Plaintiffs' theory of interpretation. *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 813, 820 n.8 (3d Cir. 2006) (cleaned up). This Court properly rejected the only arguments that Plaintiffs raised in their briefs, and did not err by failing to *sua sponte* articulate and evaluate an argument that was never presented.

### 2. Plaintiffs' Argument Fails On The Merits.

Even if the Court were to consider Plaintiffs' argument, it fails on the merits. Plaintiffs assert that § 9.1 essentially nullified the no-third-party beneficiary provisions found in §§ 6.9(e)(ii) and 9.7, but nonetheless retained the "promise" of benefits found in § 6.9(a). Nonsense.

As an initial matter, § 9.1 specifically provides that it has no impact on § 6.9, without differentiating between § 6.9(a) and § 6.9(e). D.I. 16-1 at 81 ("Section 9.1 shall not limit any covenant or agreement of the parties which by its terms contemplates performance after the Effective Time . . . including those contained in . . . Section 6.9"). Section 6.9(e)—including its no-third-party beneficiary provision—is therefore expressly exempted from termination.

Plaintiffs seek to avoid this obvious conclusion by arguing that the no-third-party beneficiary provisions in §§ 6.9(e)(ii) and 9.7 fall outside the scope of § 9.1's exemption because they do not "contemplate[] performance after the Effective Time." But this argument ignores the fact that §§ 6.9(e)(ii) and 9.7 crucially define the proper scope of the "performance" discussed in § 6.9(a). That is, while § 6.9(a) generally discusses employee benefits, §§ 6.9(e)(ii) and 9.7 make clear that those benefits are not promised and do not confer any rights on continuing employees. In this way, the three provisions work together to collectively define the "performance" envisioned in § 6.9. There is simply no basis in the text to artificially sever one aspect of the contemplated "performance" from those Plaintiffs find inconvenient.

Nor is there any basis to believe the contracting parties would have desired such a result. Had the contracting parties intended the no-third-party beneficiary provisions to apply only prior to the merger, there would be no reason to include § 6.9(e)(ii), which specifically addresses benefits that only emerge *after* the merger. At bottom, Plaintiffs' tortured reading of § 9.1 does not effectuate the contracting parties' intent, but rather is their most recent attempt to read the no-third-party beneficiary provisions out of the contract entirely. This Court should reject their efforts to rewrite the terms of the Merger Agreement, just as it did in its prior order.

Plaintiffs' request for reconsideration fails for the additional reason that their argument (even if adopted) would not impact the Court's ultimate conclusion. *See Intellectual Ventures*, 215 F. Supp. 3d at 321 ("in no instance should reconsideration be granted if it would not result in amendment of an order."). The Court's construction of the Merger Agreement was premised, not solely on the no-third-party beneficiary provisions, but also on § 6.9(e)(i), which establishes Twitter's right to freely amend its employee benefits after the merger. As the Court explained, § 6.9(e)(i) "clarifies that Twitter was not committing itself" to maintain any particular level of benefits, and therefore "makes clear that Twitter was not advancing any promise of future performance" under § 6.9(a). D.I. 160 at 10. By negating any promise of future benefits, § 6.9(e)(i)—standing alone—precludes Plaintiffs' claim to third-party beneficiary rights. *See Meades v. Wilmington Hous. Auth.*, 2003 WL 939863, at *3 (Del. Ch. Mar. 6, 2003) (to assert third-party standing, "a material purpose of the contract must be to convey a benefit"). Yet Plaintiffs make no attempt to argue that § 6.9(e)(i) terminated under § 9.1. Nor could they. By defining what Twitter may and may not do after the merger, § 6.9(e)(i) indisputably "contemplates performance after the Effective Time." Because § 9.1 has no effect on § 6.9(e)(i), and because § 6.9(e)(i) independently forecloses Plaintiffs' claims, § 9.1 does not justify reconsideration of the

6

Court's order. The Court should deny Plaintiffs' request for reconsideration and reaffirm its finding that Plaintiffs are not third-party beneficiaries to the Merger Agreement.

  **B. The Confidential Arbitration Testimony Does Not Constitute "New" Evidence And, In Any Event, Has No Bearing On The Court's Decision To Dismiss Plaintiffs' Claims With Prejudice.**

Plaintiffs next ask this Court to reconsider its decision to dismiss their claims with prejudice in light of "newly available" evidence that, in their view, indicates that Twitter negotiated § 6.9(a) on behalf of its employees. D.I. 164 at 5-6. Specifically, Plaintiffs point to testimony from a confidential arbitration proceeding that Twitter "specifically negotiated [§ 6.9(a)] on behalf of the employee[s]." D.I. 164-1 at 10. Plaintiffs contend that this testimony, if included in a second amended complaint, would be sufficient to withstand a motion to dismiss because it contradicts the Court's conclusion that the parties to the Merger Agreement did not intend to benefit continuing employees.[3] Because Plaintiffs' "evidence" is neither new nor pertinent to the Court's decision to dismiss their claims with prejudice, it does not warrant reconsideration.

    1. <u>Plaintiffs' Evidence Was Available Prior To This Court's Order Of Dismissal And Is Therefore Not "New".</u>

"The Third Circuit has defined 'new evidence' in the reconsideration context as evidence that was previously not available to be submitted to the court prior to the adverse ruling, and not evidence available but submitted post judgment." *Teri Woods Pub., LLC v. Williams*, 2013 WL 6388560, at *4 (E.D. Pa. Dec. 6, 2013) (citing *Blystone v. Horn*, 664 F.3d 397, 415-16 (3d Cir. 2011)). Accordingly, evidence that was obtained after briefing but before issuance of the Court's order does not support a motion for reconsideration. *See, e.g., Blystone*, 664 F.3d at 410, 416

---

[3] Although the Court need not consider the substance of the testimony to reject their motion for reconsideration, it bears noting that the out-of-context testimony was subsequently explained and clarified by the witness who, in any event, was not testifying as a corporate representative with regards to the Merger Agreement. *See* D.I. 164-1 at 7 (clarifying that the witness "was designated as a corporate representative . . . [o]n severance").

7

(affirming denial of a motion for reconsideration based on evidence that was not available when the plaintiff filed his petition, but became available "well before the District Court issued its judgment" on the petition); *Montalban v. Powel*, 2020 WL 207062, at *2 (M.D. Pa. Jan. 14, 2020) (denying motion for reconsideration based on evidence that became available after briefing had closed, but before the court issued its ruling on the motion); *McBurrows v. Verizon*, 2019 WL 6908014, at *12-13 (D.N.J. Dec. 19, 2019) (denying motion for reconsideration based on "depositions that took place after the [defendant's] motion for summary judgment was fully briefed, but before th[e] Court issued its opinion").

Here, the testimony relied on by Plaintiffs was given on May 21, 2025—more than **four months** before the Court issued its order of dismissal. D.I. 164-1 at 2. Accordingly, it does not constitute "new" evidence capable of supporting a motion for reconsideration. *See Blystone*, 664 F.3d at 415 (noting that motions for reconsideration must be based on evidence "that was not available *when the court granted the motion*") (emphasis in original).

Plaintiffs' contention that they could not have submitted the evidence to the Court earlier because briefing on the motion to dismiss had closed is irrelevant and, in any event, factually inaccurate. Had Plaintiffs believed that the testimony saved their claims, they could have included it in a motion for leave to amend. Indeed, Plaintiffs' counsel informed Defendants' counsel that they intended to file a motion for leave to amend several days *after* obtaining the confidential testimony and then notified the Court of the same weeks later. *See* Ex. A (May 26, 2025, email from Plaintiffs' counsel noting Plaintiffs' intent to seek leave to amend); D.I. 156 at n.4 (June 13, 2025, brief stating Plaintiffs would file a motion for leave to amend "in the near future"). Plaintiffs' counsel even conferred with Defendants' counsel about their planned motion for leave to amend **three months before** the Court issued its order. Ex. B (emails scheduling a June 23, 2025, meet-

and-confer regarding Plaintiffs' forthcoming motion for leave to amend). Plaintiffs' decision to forgo a motion for leave to amend and instead sit on this supposedly crucial "evidence" until after the Court issued its order is fatal to their request for reconsideration.

2. The Proffered Testimony Has No Impact On The Court's Conclusion.

Even if the testimony did constitute "new" evidence (it does not), it still would not warrant reconsideration of the Court's order. "A motion for reconsideration relying on the discovery of new evidence subsequent to the Court's initial order should only be granted if the party presenting the new evidence demonstrates that the new evidence would have changed the initial ruling." *Montalban*, 2020 WL 207062, at *2 (citing *Max's Seafood*, 176 F.3d at 677). Here, the Court's decision to dismiss Plaintiffs' claims with prejudice was premised on its conclusion that the terms of the Merger Agreement ***unambiguously*** precluded Plaintiffs from asserting third-party beneficiary rights. *See* D.I. 160 at 10 ("The Court is obliged to give effect to the contracting parties' *unambiguous intent* to exclude Continuing Employees from third-party beneficiary rights to enforce the employee benefits listed in Section 6.9(a).") (emphasis added).

Plaintiffs' proffered testimony does nothing to upset this conclusion. Because "extrinsic evidence may not be used in determining whether [a] contract is ambiguous," the testimony has no relevance to the Court's conclusion that the Merger Agreement is unambiguous. *West Willow-Bay Court LLC v. Robino-Bay Court Plaza LLC*, 2007 WL 3317551, at *1 (Del. Ch. Nov. 2, 2007); *see also Evans v. Cantor Ins. Grp., L.P.,* 2022 WL 1659162, at *6 (D. Del. May 25, 2022) (noting that extrinsic evidence may not be used "to create an ambiguity" in an otherwise unambiguous contract). And, given the Court's determination that the Merger Agreement is unambiguous, the testimony could not be considered when construing the terms of the Agreement. *Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP*, 2011 WL 13152483, at *5 (D. Del. Oct. 26, 2011) ("Use of extrinsic evidence is prohibited in interpreting an unambiguous contract").

Plaintiffs' attempt to use the testimony to bring their claims in line with *Dolan v. Altice USA, Inc.*, 2019 WL 2711280 (Del. Ch. June 27, 2019), fails for two reasons. First, *Dolan* involved an "unusual contract" in which the non-party plaintiffs "participated in merger negotiations independently from the target company[.]" *Crispo v. Musk*, 2022 WL 6693660, at *8 (Del. Ch. Oct. 11, 2022). Here, even crediting the proffered testimony, there is no dispute that continuing employees were not themselves involved in negotiating the Merger Agreement. In any event, *Dolan* only considered the plaintiffs' involvement in the contract negotiations because the contract was ambiguous on its face. 2019 WL 2711280, at *2, 8. Whatever relevance a party's involvement in negotiations may have to the interpretation of an ambiguous contract, it has no relevance to an unambiguous one.

All told, "[t]he terms in the contract say what they say," and no amendment can save Plaintiffs' claims from the consequences of those unambiguous terms. *Upsher-Smith Labs., LLC v. Zydus Pharm. (USA), Inc.*, 2024 WL 3291765, at *2 (D. Del. Jan. 4, 2024); *see also Cilag GmbH Int'l v. Hospira Worldwide, LLC*, 2023 WL 4865499, at *4 (D. Del. July 31, 2023) (dismissing claims with prejudice where the plain language of the contract did not provide plaintiffs with third-party beneficiary standing). Accordingly, the Court's decision to dismiss Plaintiffs' claims with prejudice was entirely proper.

### IV.   CONCLUSION

For the foregoing reasons, Twitter respectfully requests that this Court deny Plaintiffs' Motion for Reconsideration.

|  |  |
|---|---|
| Dated: October 23, 2025 | **MORGAN, LEWIS & BOCKIUS LLP** |
|  | /s/ *Jody C. Barillare* |
|  | Jody C. Barillare (#5107) |
|  | 1201 N. Market Street, Suite 2201 |
|  | Wilmington, Delaware 19801 |
|  | 302-574-7294 |
|  | jody.barillare@morganlewis.com |
|  | *Attorneys for Defendants X Corp. f/k/a Twitter, Inc. and X Holdings Corp. f/k/a X Holdings I, Inc.* |