IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>                            Plaintiffs,<br><br>              v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,<br><br>                            Defendants. | C.A. No. 1:23-cv-528-JLH-CJB |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR
MOTION FOR RECONSIDERATION**

**OF COUNSEL**

Akiva Cohen (*pro hac vice*)
Dylan M. Schmeyer (*pro hac vice*)
Michael D. Dunford (*pro hac vice*)
Lane A. Haygood (*pro hac vice*)
KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
1700 Broadway, 16th Floor
New York, NY 10019  Tel: (212) 400-4930
acohen@kusklaw.com
dschmeyer@kusklaw.com
mdunford@kusklaw.com

Joseph L. Christensen (#5146)
CHRISTENSEN LAW LLC
1201 N. Market Street, Suite 1404
Wilmington, Delaware 19801
Tel: (302) 212-4330
joe@christensenlawde.com

*Counsel for Wolfram Arnold, Erik
Froese, Tracy Hawkins, Joseph Killian,
Laura Chan Pytlarz, and Andrew
Schlaikjer*

Dated: October 30, 2025

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| **A.** | Because the Court Overlooked Section 9.1, it Should Grant Reconsideration to Correct its Manifest Error of Law and Fact | 1 |
| **B.** | Lauren Wegman's Hearing Testimony Should Compel Reconsideration of the Court's With-Prejudice Dismissal | 5 |
| **C.** | Conclusion | 8 |

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blystone v. Horn*,
    664 F.3d 397 (3d Cir. 2011) ........................................................................................................6

*BP Amoco Chem. Co. v. Sun Oil Co.*,
    200 F. Supp. 2d 429 (D. Del. 2002) ............................................................................................1

*Branch Banking & Tr. Co. v. Frank*,
    2013 WL 6669100 (D. Nev. Dec. 17, 2013) ...............................................................................6

*Crabb v. U.S. Fed. Highway Admin.*,
    2015 WL 3604184 (S.D. Tex. June 8, 2015) ..............................................................................6

*Crispo v. Musk*,
    304 A.3d 567 (Del. Ch. 2023) ............................................................................................. 3, 4, 7

*Dolan v. Altice USA, Inc.*,
    2019 WL 2711280 (Del. Ch. June 27, 2019) ........................................................................ 7, 8

*Galderma Labs., L.P. v. Amneal Pharms., LLC*,
    2018 WL 508876 (D. Del. Jan. 22, 2018) ..................................................................................6

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) .................................................................................................. 5, 6

*Karr v. Castle*,
    768 F. Supp. 1087 (D. Del. 1991) ...............................................................................................2

*LNG Dev. Co. LLC v. U.S. Army Corps of Eng'rs*,
    2015 WL 13681013 (D. Or. Dec. 21, 2015) ...............................................................................6

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
    176 F.3d 669 (3d Cir. 1999) .......................................................................................................2

*Mayhew v. ILA Loc. 1771 (Clerks & Checkers)*,
    2012 WL 3011489 (D.S.C. July 23, 2012) .................................................................................6

*West Willow-Bay Court LLC v. Robino-Bay Court Plaza LLC*,
    2007 WL 3317551 (Del. Ch. Nov. 2, 2007) ............................................................................ 6-7

Plaintiffs respectfully submit this reply brief in further support of their Motion for Reconsideration. As set out in the initial Motion, and further shown herein, reconsideration is clearly warranted given the Court's indication, in the underlying decision, that it had not reviewed the section of the Merger Agreement governing whether the agreement's provisions would survive closing when it assessed whether there was a basis in the text of the agreement to hold that Sections 6.9(e)(ii) and 9.7 applied to Plaintiffs' claims post-closing. And, upon consideration of Section 9.1, the Court should reverse its prior decision. At the very least, and in light of evidence that only became available to Plaintiffs after oral argument, the Court should adjust any dismissal to without prejudice.

**A.     Because the Court Overlooked Section 9.1, it Should Grant Reconsideration to Correct its Manifest Error of Law and Fact**

As an initial matter, Defendants' Opposition brief effectively concedes that the Court looked to the wrong portions of the Merger Agreement in assessing whether the Merger Agreement's no-third-party beneficiary provisions applied after the close of the merger; Section 9.1, not Sections 6.9(e) or 9.7, controls that issue. There is no dispute that Plaintiffs squarely raised the question of whether Sections 6.9(e) and 9.7 were operative after the close of the merger in their briefing, no dispute that Section 9.1 was before the Court as part of the contract, and no dispute that Plaintiffs drew the Court's attention to Section 9.1's function at oral argument, specifically arguing that "I think the first thing that we have to do is we start with [Section] 9.1, which is the non-survival . . . . the parties agree, in Section 9.1, expressly is that Section 6.9 is a section that contains an agreement of the parties which, by its terms, contemplates performance after the effective time." D.I. 150 at 48:25-49:13. That is sufficient. *See BP Amoco Chem. Co. v. Sun Oil Co.*, 200 F. Supp. 2d 429, 435-36 (D. Del. 2002) (granting reconsideration of dismissal in light of allegations in complaint pointed out in the motion for reconsideration but previously overlooked by the court). That is particularly true where Defendants are already citing the Court's opinion that former Twitter

1

employees lack standing to arbitrators hearing identical contractual claims brought by other former employees. *Karr v. Castle*, 768 F. Supp. 1087, 1094 (D. Del. 1991) (exercising discretion to grant reconsideration in connection with issue "lost in the shuffle by counsel" in recognition of "the consequences of [the] prior ruling . . . and the potential widespread effect of that ruling" on non-parties faced with the same issue), *aff'd sub nom.*, *U.S. v. Carper*, 22 F.3d 303 (3d Cir. 1994). *Cf. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999) (where issue not raised prior to motion for reconsideration was "so fundamental" to the question before the Court, "it was not consistent with the wise exercise of discretion for the District Court to have declined even to consider it" and reconsideration was warranted to correct manifest injustice). Reconsideration is thus clearly warranted.

Defendants' substantive argument fares no better. It starts by misrepresenting Plaintiffs' argument: Plaintiffs do not "assert that § 9.1 essentially nullified the no-third-party beneficiary provisions." D.I. 165 at 5. Rather, *just as with every other provision of the Merger Agreement*, Section 9.1 determined the *period of time* in which those provisions would have an effect. A no-third-party beneficiary provision that is effective before the close of the merger but not after the close is not "nullified," any more than a non-competition provision that expires after two years is "nullified" by that expiration. It is – as Plaintiffs argued – simply time-limited.

Defendants then misdescribe Section 9.1. Section 9.1 does ***not*** "specifically provide that it has no impact on Section 6.9," as Defendants claim. D.I. 165 at 5. Rather, it says that it does not impact "any covenant or agreement of the parties which by its terms contemplates performance after the Effective Time" – including "those ***contained in*** . . . Section 6.9." D.I. 16-1 at 81 (emphasis added). Section 9.1 straightforwardly does not provide that "all the provisions of Section 6.9" will survive the close of the merger – only that "those" provisions "contained in" Section 6.9 that ***also*** "by [their] terms contemplate performance after the Effective Time" would do

2

so. Thus, the only relevant question is whether the no-third-party beneficiary provisions of Section 6.9(e)(ii) or 9.7 "by [their] terms contemplate performance after the Effective Time."

They do not, and Defendants do not seriously argue that they do. In a spectacular example of putting the cart before the horse, Defendants argue that "§§ 6.9(e)(ii) and 9.7 crucially define the proper scope of the 'performance' discussed in § 6.9(a)" – a claim that could only hold if Sections 6.9(e)(ii) and 9.7 remained in force after the Effective Time. D.I. 165 at 5. Because they do not "by their terms contemplate performance after the Effective Time," Section 9.1 renders them inoperative after the close of the merger, and they therefore could not "define the proper scope" of any post-merger performance. More fundamentally, that argument makes no internal sense: a no-third-party beneficiary clause does not "define the scope of performance" of a contractual provision at all. Rather, it delimits who can *enforce* the performance required by the contract. Because such a provision does not "contemplate performance" at any time – let alone expressly post-merger – the Merger Agreement is clear that the no-third-party beneficiary provisions terminated at the Effective Time.

Similarly, Defendants' argument that Section 6.9(e)(ii) *must* have contemplated performance after the Effective Time because otherwise "there would be no reason to include § 6.9(e)(ii), which specifically addresses benefits that only emerge after the merger" carries no water at all. D.I. 165 at 6. As Vice Chancellor McCormick's opinion in *Crispo v. Musk*, 304 A.3d 567 (Del. Ch. 2023) makes clear, it can be "objectively reasonable" to read a no-third-party beneficiary provision as precluding the assertion of third-party beneficiary status *only* prior to the time that the contract obligates the parties to provide the benefit in question. *Crispo*, 304 A.3d at 585.**[1]** Here, the reason to

---

[1] To be as clear as possible: Vice Chancellor McCormick found that it would be "objectively reasonable" to understand Section 9.7's no-third-party beneficiary provision as allowing shareholders to enforce the shareholder premium provision (a benefit that could "only emerge *after* the [termination]") *post-termination*, but not to claim standing on that basis *pre-termination* (before any

3

include Section 6.9(e)(ii) in the Merger Agreement was to preclude employees from claiming standing to sue to enforce the Merger Agreement *prior* to the Effective Time (as the shareholder plaintiff in *Crispo* attempted to do) on the basis of the benefits that would "only emerge *after* the merger."

Finally, Defendants are wrong that the time-limited nature of Section 6.9(e)(ii) should not change the ruling. The Court's construction of Section 6.9(e)(i) was no-doubt impacted by its understanding of Section 6.9(e)(ii) as barring third-party beneficiary standing after the close of the merger. If upon reconsideration in light of Section 9.1 the Court agrees with Plaintiffs that the parties to the Merger Agreement intended Section 6.9(e)(ii) to apply only before the close of the merger, that would clear the way for harmonizing Section 6.9(e)(i) with the remainder of Section 6.9, rather than reading Section 6.9(e)(i) as providing that every earlier provision of Section 6.9 was meaningless, and every later provision of Section 6.9(e) superfluous.[2] Indeed, Section 6.9(a) imposes obligations on the *acquiring Parent*, not on the merged entity: "***Parent*** shall, or shall cause the Surviving Corporation or any of their Affiliates to, provide . . . ***Parent*** shall provide, or shall cause the Surviving Corporation or any of their Affiliates to provide . . ." D.I. 16-1 at 66 (emphases added). Section 6.9(e)(i), in contrast, speaks to what the *merged entity* may or may not do with its benefits plans – X Holdings, as the Parent entity, could comply with Section 6.9(a) by providing such benefits itself if it chose to have Twitter 2.0 "amend, modify, merge, or terminate" any benefit plan as allowed by Section 6.9(e)(i). *Id.* at 67. And, more fundamentally, overlooking Section 9.1

---

such benefit could "emerge"). *Crispo*, 304 A.3d at 585-86. That is *structurally* identical to allowing the employees to enforce Section 6.9(a) after the Effective Time (at the time Section 6.9(a)'s benefits could "emerge") but not to assert standing on that basis before the Effective Time. If the former reading of Section 9.7 is objectively reasonable – and Vice Chancellor McCormick expressly found that it was – then so too is the latter reading of Sections 6.9(e)(ii) and 9.7.

[2] Reading Section 6.9(e)(i) as providing that Sections 6.9(a)-(d) are not enforceable promises in the first instance would, as Twitter notes, obviate any need for the no-third-party beneficiary provision of Section 6.9(e)(ii). It would also do the same for Section 6.9(e)(iii).

4

directly impacted the Court's construction of Section 6.9(e)(i), because the Court construed Section 6.9(a)-(d) as making no promises at all, despite the parties' ***express*** agreement in Section 9.1 that Section 6.9 contained "covenant[s] or agreement[s] of the parties which by [their] terms contemplate[d] performance after the Effective Time" and were intended to survive the merger. Respectfully, the Court's view of Section 6.9(e)(i) as providing that Section 6.9 contained no covenants or agreements at all does not appear reconcilable with Section 9.1.

**B.     Lauren Wegman's Hearing Testimony Should Compel Reconsideration of the Court's With-Prejudice Dismissal**

Defendants are likewise incorrect in attempting to convince the Court to disregard their belated admission that Twitter acted as the agent for its employees when it negotiated Section 6.9 of the Merger Agreement, essentially placing employees – such as Plaintiffs – at the negotiating table and at the document's execution. Defendants start by arguing that Dr. Wegman's testimony – provided after the motion was fully briefed and submitted – is not newly discovered evidence. But they do not dispute that it was unavailable to Plaintiffs until after the motion was fully briefed, argued, and awaiting decision. *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010) (focusing on whether alleged newly discovered evidence was available to plaintiffs when the motion was filed). Defendants effectively concede there was no mechanism by which Plaintiffs could have raised this evidence to the Court for consideration on Defendants' Motion given when it first became available to them, arguing instead that Plaintiffs should have filed a separate motion for leave to amend. D.I. 165 at 8.[3] But Defendants are wrong to suggest that matters: the focus of the "newly discovered evidence" element is on whether the party seeking reconsideration had the evidence available to them at the time the motion was submitted but chose

---

[3] As Defendants indicate, Plaintiffs had planned to seek leave to amend. Unfortunately, an unexpected death in the family of the attorney handling that amendment impacted the timing of that motion.

5

not to rely on it. *See Howard Hess*, 602 F.3d at 252 ("new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available." "Nothing in the record suggests that the evidence the Plaintiffs sought to present post-summary judgment was unavailable to them *when they filed their summary judgment motion*") (emphasis added). *Cf. Galderma Labs., L.P. v. Amneal Pharms., LLC*, 2018 WL 508876, at *2 (D. Del. Jan. 22, 2018) (denying reconsideration because newly developed evidence, which became available only after briefing on the underlying motion, would not change the outcome). *See also Branch Banking & Tr. Co. v. Frank*, 2013 WL 6669100, at *7 (D. Nev. Dec. 17, 2013) (to be "newly discovered" for purposes of a motion for reconsideration of an order on a dispositive motion, "it is required that the movant not have had possession of the evidence prior to a hearing on the motion").[4]

Substantively, Defendants' argument that the Court cannot consider Twitter's much-delayed admission that it negotiated Section 6.9(a) on behalf of the employees is misplaced. The parol evidence rule provides that the Court cannot look to extrinsic evidence of the parties' *intent* in construing an unambiguous contractual provision. *West Willow-Bay Court LLC v. Robino-Bay Court*

---

[4] *Accord LNG Dev. Co. LLC v. U.S. Army Corps of Eng'rs*, 2015 WL 13681013, at *3 (D. Or. Dec. 21, 2015) (analyzing whether evidence was "newly discovered" when it came to light after briefing on the underlying motion had closed, and finding that it was not specifically because the plaintiff could have with diligence located the evidence earlier); *Crabb v. U.S. Fed. Highway Admin.*, 2015 WL 3604184, at *2 (S.D. Tex. June 8, 2015) (no newly discovered evidence where "plaintiffs have not identified changes recently implemented that they discovered after the briefing ended"); *Mayhew v. ILA Loc. 1771 (Clerks & Checkers)*, 2012 WL 3011489, at *1 (D.S.C. July 23, 2012) (denying reconsideration on the basis of newly discovered evidence developed after the close of briefing on the underlying motion because the new evidence would not impact the outcome). *Blystone v. Horn*, 664 F.3d 397 (3d Cir. 2011), cited by Defendants, does not purport to vary from the rule articulated in *Howard Hess* (to the contrary, it cites *Howard Hess, id.* at 415-16), determined only that the denial of reconsideration was not an abuse of discretion, and involved review of the denial of that plaintiff's habeas petition. *Id.* at 416. That is, the evidence at issue was evidence that the plaintiff contended was a basis for grant of habeas relief but did not present until his habeas petition had been denied, despite having it in his possession – and even there, the Third Circuit left the determination of whether the evidence would qualify as "newly discovered" to the trial court's discretion. To the extent the Court has discretion here, it should exercise that discretion to consider Defendants' belated admission that Section 6.9(a) was negotiated on behalf of the employees.

*Plaza LLC*, 2007 WL 3317551, at *1 (Del. Ch. Nov. 2, 2007). That rule, however, has no application to the Court's determination regarding whether a contractual provision is enforceable. And as Delaware courts have held, no-third-party beneficiary provisions are entitled to no special deference. *See*, *e.g.*, *Crispo*, 304 A.3d at 575. In *Dolan v. Altice USA, Inc.*, 2019 WL 2711280 (Del. Ch. June 27, 2019), the Delaware Chancery Court found that the Dolans had adequately pled their third-party beneficiary standing, despite the presence of specific no-third-party beneficiary provisions, because they alleged that the parties intentionally provided them benefits in the contract in satisfaction of a pre-existing obligation (while noting that doing so as a gift would also be sufficient), the Dolans had participated in the negotiations, and the acquirer needed their agreement and votes to approve the transactions. 2019 WL 2711280, at *7. In light of the Dolans having successfully pled all the elements of third-party beneficiary standing, the contract's inclusion of "detailed rights that expressly benefit [those] non-parties to the contract" conflicted with its no-third-party beneficiary provision, rendering the contract ambiguous and dismissal inappropriate. *Id.* at *8.

Prior to Defendants' belated admission that Twitter had negotiated Section 6.9(a) of the Merger Agreement on behalf of the employees, the sole distinction between *Dolan* and this action was that the employees had not participated in the negotiation of the Merger Agreement: as with the Dolans, the employees were shareholders and had pled that the parties included the detailed rights of Sections 6.9(a)-(d) in the agreement – and communicated it to them – because the parties needed the employee-shareholders to vote in favor of the merger. Indeed, that difference was the basis on which Defendants distinguished *Dolan* in the prior briefing: that *Dolan* involved an "unusual" contract in which the alleged third-party beneficiaries had participated in the negotiation, while in this action the employees had no seat at the negotiating table. D.I. 38 at 2-3. Dr. Wegman's testimony collapsed that supposed distinction, placing the employees' interests at the negotiating table by admitting that Twitter negotiated that key provision on their behalf. D.I. 164-1

7

at 570:12-571:2. It is thus a fact that could – and should – cause the Court to adopt the *Dolan* Court's approach, and therefore a proper basis for reconsideration.

**C.    Conclusion**

This is the rare case in which reconsideration is warranted. The motion should be granted.

| | |
|---|---|
| **OF COUNSEL** | /s/ *Joseph L. Christensen* |
| | Joseph L. Christensen (#5146) |
| Akiva Cohen (*pro hac vice*) | CHRISTENSEN LAW LLC |
| Dylan M. Schmeyer (*pro hac vice*) | 1201 N. Market Street, Suite 1404 |
| Michael D. Dunford (*pro hac vice*) | Wilmington, Delaware 19801 |
| Lane A. Haygood (*pro hac vice*) | Tel: (302) 212-4330 |
| KAMERMAN, UNCYK, SONIKER & KLEIN P.C. | joe@christensenlawde.com |
| 1700 Broadway, 16th Floor | |
| New York, NY 10019  Tel: (212) 400-4930 | |
| acohen@kusklaw.com | *Counsel for Wolfram Arnold, Erik* |
| dschmeyer@kusklaw.com | *Froese, Tracy Hawkins, Joseph Killian,* |
| mdunford@kusklaw.com | *Laura Chan Pytlarz, and Andrew Schlaikjer* |

Dated: October 30, 2025

8