# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER,<br><br>Plaintiffs,<br><br>v.<br><br>X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK,<br><br>Defendants. | C.A. No. 1:23-cv-00528-TMH |

## MEMORANDUM OPINION

Akiva Cohen, Dylan M. Schmeyer, Michael D. Dunford, Lane A. Haygood, KAMERMAN, UNCYK, SONIKER & KLEIN P.C., New York, New York; Joseph L. Christensen, CHRISTENSEN LAW LLC, Wilmington, DE — Attorneys for Plaintiffs.

Eric Meckley, MORGAN, LEWIS & BOCKIUS LLP, San Francisco, California; T. Cullen Wallace, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas; Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware — Attorneys for Defendants.

January 20, 2026
Wilmington, DE

1

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Plaintiffs have filed a motion for reconsideration of this court's Memorandum Opinion and related Order of September 29, 2025. (D.I. 164). Plaintiffs seek reconsideration of the court's dismissal with prejudice of their breach of merger agreement claims. (D.I. 164 at 1). Defendants oppose. (D.I. 165). Having considered the relevant filings (D.I. 164; D.I. 165; D.I. 166-1), the court DENIES the motion.[1]

## I. Background

The court assumes the parties' familiarity with the factual and procedural background of this case through the September 29, 2025, decision at issue (the September Decision). (D.I. 160). In the September Decision, the court dismissed with prejudice Plaintiffs' breach of merger agreement claims, holding that the terms of the merger agreement revealed an unambiguous intent by the contracting parties to exclude Plaintiffs from asserting they are third-party beneficiaries with standing to enforce Section 6.9(a) of the merger agreement. (D.I. 160 at 5–10). Plaintiffs seek reconsideration of that decision. (D.I. 164).

## II. Legal Standard

A motion for reconsideration is the "functional equivalent" of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990) (citation omitted). The scope of a motion for reconsideration under Rule 59(e) "is extremely limited," *Blystone*

---

[1] The court finds this matter appropriate for decision without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 7.1.4.

*v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011), and "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted). Reconsideration is only appropriate where the movant establishes at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (citation omitted). The court may nonetheless deny the motion where it would not alter the court's initial decision. *See Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 379 (D. Del. 2016).

### III. Discussion

Plaintiffs contend that reconsideration is warranted because the court made manifest errors of law or fact by "overlook[ing] Section 9.1 of the Merger Agreement," and because there is "new" material evidence from a May 2025 arbitration hearing. (D.I. 164 at 2, 4–5). The court disagrees.

#### A. Section 9.1 of the Merger Agreement

Plaintiffs claim the court made a manifest error of law or fact when it "overlooked" a key provision in the merger agreement: Section 9.1. (D.I. 164 at 2). Section 9.1 generally provides that the covenants and agreements in the merger agreement terminate when the merger closes unless the covenant or agreement, by its terms, contemplates continued performance. (D.I. 16-1 at 81). Plaintiffs argue that

3

because no-third-party beneficiary provisions are "negative provision[s] limiting the rights of third parties" rather than "positive provision[s] requiring any performance by the parties," they do not contemplate continued performance and terminated automatically at closing pursuant to Section 9.1. (D.I. 164 at 4).

In the September Decision, this court rejected the suggestion that the no-third-party beneficiary provisions expired at closing, holding that "such a distinction between pre- and post-merger rights does not find support in the text of either Section 9.7 nor Section [6.9(e)(ii)[2]]." (D.I. 160 at 10). The court did not reference or analyze Section 9.1, which Plaintiffs argue warrants reconsideration of the decision. Plaintiffs' argument is unpersuasive for three independent reasons.

First, Plaintiffs did not raise this argument until they filed their motion for reconsideration, and motions for reconsideration are not vehicles for arguing issues not previously raised. *See Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021). Plaintiffs never referenced Section 9.1 in their briefing on Defendants' motion to dismiss or in their objections to Judge Burke's report and recommendation, much less specifically argued it operates to terminate the no-third-party beneficiary provisions on closing. (D.I. 15; D.I. 24; D.I. 38; *see also* D.I. 111; D.I. 113; D.I. 122; D.I. 123). And while Plaintiffs referenced Section 9.1 at oral argument, it was in support of a different argument: that Section 6.9(a), the "Continuing Employee

---

[2] The September Decision erroneously referenced Section 6.9(e)(i), but the intended reference is easily discovered from the quoted material, which expressly quotes Section 6.9(e)(ii).

4

Benefits" provision, contemplated performance after closing, survived closing pursuant to Section 9.1, and was thus more than simply a "statement of intent." (D.I. 150 at 48:25–49:22). That is not the argument they make now: that Sections 6.9(e)(ii) and 9.7 *do not* contemplate continued performance and thus terminated at closing, allowing third party beneficiaries to bring post-merger lawsuits. Plaintiffs' present argument is not one that was "addressed and argued" but nonetheless "obscured by the many other issues in the case," *Karr v. Castle*, 768 F. Supp. 1087, 1094 (D. Del. 1991); it is an argument that was never made at all.

Second, putting aside Plaintiffs' failure to raise this argument previously, their argument is unconvincing on the merits. Plaintiffs suggest that both no-third-party beneficiary provisions expired at the close of the merger pursuant to Section 9.1 because they are "negative provision[s] limiting the rights of third parties" rather than "positive provision[s] requiring any performance by the parties." (D.I. 164 at 4; *see also* D.I. 166-1 at 2–3). But that ignores both the text of Section 9.1 and the purpose of a no-third-party beneficiary provision. Section 9.1 by its terms acknowledges that Section 6.9 contemplates continued performance and thus would remain effective after closing, and it does so without differentiating between Section 6.9's various subsections. (*See* D.I. 16-1 at 81). Plaintiffs' request that we read in such a distinction—that 6.9(a) contemplates continued performance but the no-third-party beneficiary language in 6.9(e) does not—rests on a misunderstanding of the purpose of no-third-party beneficiary provisions: they define who is (and is not) entitled to the benefits of the merger agreement, which is an elemental precursor to

5

any performance under the agreement. And the beneficiaries (or excluded beneficiaries) of the merger agreement are not defined with reference to any temporal limitation, nor can Section 9.1 be used to import one. Instead, once the agreement's parties and beneficiaries are defined, Section 9.1 then operates to control which promises remain effective between those parties and beneficiaries after the merger's closing. And the text of Sections 6.9(e)(ii) and 9.7 is unambiguous: third parties are not entitled to receive the benefits of performance under the merger agreement.[3] (D.I. 16-1 at 67, 84).

Third, even if Plaintiffs' understanding of Section 9.1 is correct, it does not entitle Plaintiffs to enforce Section 6.9(a), and dismissal would still be required. As the court concluded, while Section 6.9(a) articulates the parties' intent to maintain certain benefits, Section 6.9(e)(i) preserved the right to amend, modify, merge, or even terminate such benefits. (D.I. 160 at 6, 9–10). Meaning, even if Plaintiffs have standing as third-party beneficiaries, their breach of merger agreement claims still

---

[3] Plaintiffs argue briefly in a footnote that the court "misapprehended Plaintiffs' argument with respect to *Crispo II*." (D.I. 164 at 4 n.3); *see Crispo v. Musk*, 304 A.3d 567 (Del. Ch. 2023) (*Crispo II*). But arguments raised in footnotes are considered waived. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997). Regardless, Plaintiffs' argument is without merit. The court expressly held that *Crispo II* "offers no support for Plaintiffs' proposed reading of Section 6.9(a) as allowing Continuing Employees to enforce Twitter Defendants' post-merger obligations to them." (D.I. 160 at 9). *Crispo II* considered the general no-third-party beneficiary provision in Section 9.7 as modified by the specific language allowing stockholder suits in Section 8.2. *Crispo II*, 304 A.3d at 577–86. *Crispo II* did not consider whether Section 6.9(a) was a similarly specific provision that overrode the more general language of Section 9.7. *See generally Crispo II*, 304 A.3d 567. And this court rejected the suggestion that *Crispo II*'s reasoning was applicable. (*See* D.I. 160 at 9).

require dismissal as the express language of Section 6.9(a), when read in conjunction with Section 6.9(e)(i), contains no promise of future performance. Therefore, Plaintiffs cannot point to any enforceable promise the Defendants breached. Because Plaintiffs' suggested error of fact or law would not change the outcome of the court's decision, reconsideration is unwarranted. *Intell. Ventures I LLC v. Check Point Software Techs. Ltd.*, 215 F. Supp. 3d 314, 321 (D. Del. 2014) ("However, in no instance should reconsideration be granted if it would not result in amendment of an order.").

    B. <u>May 2025 Arbitration Proceedings</u>

Plaintiffs also ask the court to reconsider its decision based on purported newly available evidence, arguing that the new evidence compels reconsideration entirely, or, alternatively, reconsideration of the "with prejudice" nature of the dismissal. (D.I. 164 at 4–6). Plaintiffs' "new" evidence is hearing testimony from an X Corp. human resources director that Section 6.9(a) of the merger agreement was "specifically negotiated . . . on behalf of the employee[s]." (D.I. 164-1 at 10). Plaintiffs contend that admission "directly contradicts" the court's "conclusion in its decision that the mutual intent of the parties to the Merger Agreement was *not* to confer any benefit on the employees" and brings this case squarely within the control of *Dolan v. Altice USA, Inc.*, No. 18-cv-00651, 2019 WL 2711280 (Del. Ch. June 27, 2019). (D.I. 164 at 5–6). The court finds the proffered evidence to be neither new, nor material, and denies Plaintiffs' motion.

The parties first dispute the temporal benchmark for determining whether evidence is "new" under Rule 59(e). Plaintiffs argue their proffered evidence is "new" under Rule 59(e) because it only became available after they submitted their briefs, but Defendants argue it is not new because it was nonetheless available when the court made its decision. (D.I. 166-1 at 5–6; D.I. 165 at 7). The language of the test is clear: new evidence is a ground for reconsideration if it "was not available *when the court granted the motion*" at issue. *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (emphasis added). And Plaintiffs have not convincingly articulated why this court should deviate from the plain language of that standard. Plaintiffs cite *Howard Hess* to argue that the focus of the newly discovered evidence standard is on whether the evidence was available at the time the motion was submitted, rather than when the court decided the motion at issue. (D.I. 166-1 at 5 (citing *Howard Hess*, 602 F.3d at 252)). But *Howard Hess* does not squarely resolve the timing question presented—there, the evidence was available prior to motions practice, obviating any need for the court to consider whether evidence unavailable at the motion stage, but available before the court's decision, constitutes "new" evidence. *See id.* And the Third Circuit has previously concluded that evidence discovered after briefing but before the court's ruling was not "new" for purposes of Rule 59(e). *See Blystone v. Horn*, No. 99-cv-00490, at *4 (W.D. Pa. May 27, 2005) (Dkt. No. 53) (evidence not "newly discovered" where it was discovered after briefing concluded but several months before the court "issued its final judgment"), *aff'd*, 664 F.3d at 416 (denial of reconsideration was "plainly not an abuse of discretion" where evidence was "not in

fact newly discovered, since [Plaintiff] had possession of it many months before the District Court" ruled). Without more, the court applies the Third Circuit's plain language and will evaluate "the availability of new evidence that was not available when the court granted the motion for [dismissal]." *Max's Seafood*, 176 F.3d at 677.

Plaintiffs' proffered evidence was available when this court issued the September Decision: the arbitration proceedings occurred in May 2025, while Defendants' motion was still pending before the court. (D.I. 164-1 at 2). Four months then elapsed before the court granted the motion to dismiss on September 29, 2025, during which time Plaintiffs were in possession of the testimony they now contend is "new." (D.I. 160). Plaintiffs had four months to request to supplement the record with excerpts from the arbitration hearing or to move to amend their complaint prior to the court issuing its opinion.[4] Plaintiffs made no such motion and cannot now ask the court to reconsider its decision in light of hearing transcripts that were fully available prior to the court's ruling. Given Plaintiffs' possession of the arbitration hearing testimony for several months prior to the court's decision, it is not new and does not support reconsideration. *See Blystone*, 664 F.3d at 416.

---

[4] Plaintiffs acknowledge they intended to seek leave to amend their complaint but note that "an unexpected death in the family of the attorney handling that amendment impacted the timing of that motion." (D.I. 166-1 at 5 n.3). While the court is sympathetic to the attorney's loss, that event does not excuse the failure to seek leave to amend at any point in the four months Plaintiffs possessed the hearing testimony. And Plaintiffs were on notice during that time of Judge Burke's recommendation that this court dismiss their claims *with prejudice*, which would prevent future amendments if this court agreed. (D.I. 110 at 18).

Alternatively, even if considered, the arbitration hearing testimony would not have impacted the court's decision and does not warrant reconsideration of the prejudicial dismissal. *Intell. Ventures I*, 215 F. Supp.3d at 321 ("However, in no instance should reconsideration be granted if it would not result in amendment of an order."). Plaintiffs argue the hearing testimony contradicts the court's finding that the merger agreement unambiguously evidenced the parties' intent to exclude continuing employees from third-party beneficiary status. But such extrinsic evidence cannot be used to interpret what the court has already found to be clear and unambiguous language. *See Thermice Corp. v. Vistron Corp.*, 832 F.2d 248, 253 n.3 (3d Cir. 1987). Given the court's conclusion that the merger agreement unambiguously eliminates continuing employees' standing to enforce Section 6.9(a) of the merger agreement, the court could not have, and would not have, considered the extrinsic hearing testimony Plaintiffs now proffer. For this independent reason, the hearing testimony does not warrant granting Plaintiffs' motion for reconsideration.

*Dolan* does not compel a different result. *See Dolan*, 2019 WL 2711280. There, the court considered extrinsic evidence, such as participation in negotiations, to evaluate the effect of a no-third-party beneficiary clause, but it did so only *after* concluding the merger agreement was ambiguous. *See id.* at *2. Because the merger agreement underlying Plaintiffs' claims unambiguously forbids third-party beneficiaries from enforcing Section 6.9(a), Plaintiffs' extrinsic evidence is irrelevant.

10

## IV. <u>Conclusion</u>

The court has considered the parties' remaining arguments and finds them unpersuasive. For the reasons contained herein, Plaintiffs' motion for reconsideration is **DENIED**.