**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER, | ) ) ) ) ) | C.A. No. 1:23-cv-00528-TMH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Akiva Cohen, Dylan M. Schmeyer, Michael D. Dunford, Lane A. Haygood, KAMERMAN, UNCYK, SONIKER & KLEIN P.C., New York, New York; Joseph L. Christensen, CHRISTENSEN LAW LLC, Wilmington, Delaware — Attorneys for Plaintiffs.

Eric Meckley, MORGAN, LEWIS & BOCKIUS LLP, San Francisco, California; T. Cullen Wallace, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas; Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware — Attorneys for Defendants.

March 19, 2026
Wilmington, DE

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before the court is Defendants' Motion to Quash Subpoenas Served on Five Law Firms pursuant to Federal Rule of Civil Procedure 45(d)(3)(A). (D.I. 43 (renewed at D.I. 79)). Having considered the relevant filings, (D.I. 44; D.I. 46; D.I. 48; D.I. 51; D.I. 52; D.I. 55), and the transcript from the hearing held on October 16, 2023, before Judge Christopher Burke, (D.I. 109), Defendants' Motion is **GRANTED**, without prejudice, for the reasons discussed below.

## I.    BACKGROUND

The facts are well known to the parties and have been thoroughly discussed and set forth in prior opinions. (*See, e.g.*, D.I. 110; D.I. 121; D.I. 160; D.I. 162). Accordingly, only the facts necessary to the resolution of this dispute are set out here.

Plaintiffs are former employees of X Corp. f/k/a Twitter, Inc. (Twitter) who have asserted claims against Twitter and X Holdings Corp. f/k/a X Holdings I, Inc. (together, the Twitter Defendants) and Elon Musk. (*See generally* D.I. 10). Plaintiffs' claims arise out of Mr. Musk's acquisition of Twitter, the terms of the merger agreement that effectuated that acquisition (the Merger Agreement), and employee layoffs following the merger's closing. (*Id.* at ¶¶ 33–45). Relevant to the pending motion, Plaintiffs alleged that Defendants engaged in a scheme to fraudulently induce Twitter employees to remain at Twitter through the merger by making certain representations regarding employee severance benefits that Defendants knew were untrue. (*See id.* at ¶¶ 353–69 (Count VI: Fraud)). This court dismissed Plaintiffs' fraud claims on September 29, 2025, for failure to plead fraud with sufficient

specificity as required by Federal Rule of Civil Procedure 9(b). (*See* D.I. 160 at 17 (citing D.I. 110 at 31–38); D.I. 162 at 18–21).

In August and September 2023, before the court's dismissal of the fraud claim, Plaintiffs served subpoenas on five law firms (together, the Subpoenaed Law Firms) that represented the Twitter Defendants in connection with the negotiation and execution of the Merger Agreement and later related litigation.[1] (*See, e.g.*, D.I. 29). The subpoenas contain six requests and generally seek documents and communications concerning the specific terms of the Merger Agreement underlying Plaintiffs' claims. (*See, e.g.*, D.I. 29-1 at 9 (requesting "[a]ll DOCUMENTS and COMMUNICATIONS RELATING TO Section 6.9 of the MERGER AGREEMENT, including but not limited to DOCUMENTS and COMMUNICATIONS RELATING TO its meaning, intent, purpose, and enforceability, and specifically including any work product, drafts, client communications, comments, or discussions related thereto")).

Defendants moved to quash the subpoenas, arguing the requested documents are subject to attorney-client privilege and work-product protections.[2] (D.I. 43; D.I. 44 at 3–5). In their briefing, Plaintiffs do not contest that the requested documents are

---

[1] The five law firms are Quinn Emmanuel Urquhart and Sullivan, LLP (D.I. 29; D.I. 39); Simpson Thacher & Bartlett LLP (D.I. 30; D.I. 35); Skadden, Arps, Slate Meagher & Flom LLP (D.I. 31; D.I. 36); Wachtell, Lipton, Rosen & Katz (D.I. 32; D.I. 40); and Wilson Sonsini Goodrich & Rosati (D.I. 33; D.I. 34).

[2] Defendants also argue that the subpoena seeks confidential commercial information. (D.I. 44 at 5). Because the court finds the crime-fraud exception has not been adequately proven, it need not address this ground for quashing the subpoena.

privileged;[3] instead, they argue that any privilege or work-product protections are vitiated by the crime-fraud exception. (D.I. 46 at 1–3). Specifically, Plaintiffs argue that Defendants "sought legal advice from their counsel" regarding the Merger Agreement and related communications to Twitter employees "for purposes of future wrongdoing." (*Id.* at 2). The future wrongdoing in question is the same fraud Plaintiffs alleged in their complaint—that is, an attempt by Defendants to induce Twitter employees to remain at Twitter through the merger by knowingly making false representations regarding the Merger Agreement's guarantees of severance benefits. (*Id.* at 2–3; *see also* D.I. 52 at 2–3). Defendants argue that Plaintiffs have not made a sufficient evidentiary showing to abrogate attorney-client privilege or work-product protections. (D.I. 48 at 2; *see also* D.I. 51 at 2).

---

[3] Plaintiffs made no argument in their briefing that the subpoenaed documents and communications were not protected by the attorney-client privilege or work product doctrine. (*See* D.I. 46; D.I. 52; D.I. 55). Only in response to a question from Judge Burke at oral argument on the pending motion did Plaintiffs suggest that "any of the e-mails that crossed paths" and were between "people on opposite sides of negotiations" would not be privileged. (D.I. 109 at 26:24–27:16). While there is support for Plaintiffs' position adopted at oral argument, *see 10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 339–40 (D. Del. 2020), that position was not raised in Plaintiffs' briefing, suggesting it was forfeited. At minimum, Plaintiffs' glancing argument is undeveloped, and the court will not rule on such theories in the abstract. Further, such third-party discovery, even if not privileged, is best sought first from the parties to this litigation and who participated in the merger, rather than their attorneys. *See Petroleum Mktg. Grp., Inc. v. Universal Prop. Servs., Inc.*, No. 22-cv-02410, 2023 WL 5985300, at *3 (D.N.J. Mar. 30, 2023) ("While the Court need not address here the relevancy, breadth, or burden of such requests, the Court notes that if documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness." (cleaned up)).

## II.    <u>LEGAL STANDARD</u>

Disputes about the scope and conduct of discovery are within the discretion of the trial court and are disturbed only upon a showing of abuse of discretion. *See Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983). Federal Rule of Civil Procedure 26(b)(1) authorizes discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Thus by Rule 26's express terms, valid claims of privilege restrict the scope of available discovery. And Rule 45 requires courts "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception . . . applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Where, as here, there are both federal and state-law claims at issue, federal law governing privileged or protected matter controls. *See Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103–04 (3d Cir. 1982).

## III.    <u>DISCUSSION</u>

Plaintiffs argue that the crime-fraud exception removes any attorney-client or work product protection from the subpoenaed documents. (*See* D.I. 46 at 1–3). Based on the current record, primarily consisting of conclusory allegations undeveloped by further evidentiary discovery, it does not.

### A.    <u>Crime-Fraud Exception</u>

Communications and documents, otherwise privileged or protected, are not protected by the attorney-client privilege or work-product doctrine if they are made in furtherance of a crime or fraud. *See In re Grand Jury*, 705 F.3d 133, 151 (3d Cir.

2012). To overcome privilege or work product protections under the crime-fraud exception, the party seeking discovery must demonstrate "that there is a reasonable basis to suspect (1) that the privilege holder was committing or intending to commit a crime or fraud, and (2) that the attorney-client communication or attorney work product was used in furtherance of that alleged crime or fraud." *Id.* at 155. "The reasonable basis standard 'is intended to be reasonably demanding; neither speculation nor evidence that shows only a distant likelihood of corruption is enough.'" *Id.* at 153 (quotation omitted). "At the same time, the party opposing the privilege is not required to introduce evidence sufficient to support a verdict of crime or fraud or even to show that it is more likely than not that the crime or fraud occurred." *Id.* at 153–54 (citations omitted).

Plaintiffs have failed to meet their burden. First, Plaintiffs have provided no evidence to suggest Defendants committed or intended to commit a crime or fraud. "When demonstrating a prima facie case of fraud, generalized allegations of fraud will not suffice." *Magnetar Techs. Corp. v. Six Flags Theme Park, Inc.*, 886 F. Supp. 2d 466, 487 (D. Del. 2012). Plaintiffs' allegations of fraud are that Twitter made "a deliberately false statement of present fact about what the Merger Agreement did or did not provide" regarding severance benefits to fraudulently induce Twitter employees' reliance. (D.I. 46 at 2). In particular, Plaintiffs allege Twitter represented that section 6.9(a) of the Merger Agreement provided severance "no less favorable" than Twitter's prior severance policy, despite knowing the Merger Agreement made no enforceable promise regarding severance benefits. (*Id.*) Plaintiffs attempt to

connect the other defendants—Mr. Musk and X Holdings Corp.—to this scheme by alleging they "*must have known* and intended that Twitter" would communicate such false information to Twitter employees. (*Id.* (emphasis added)). But as Defendants note, Plaintiffs' allegations rest on Plaintiffs' own conclusory statements and the allegations in the Second Amended Complaint, which this court has since dismissed. (*See* D.I. 48 at 2; D.I. 51 at 2; D.I. 160 at 17; D.I. 162 at 18–21). These conclusory allegations are insufficient to find a reasonable basis that Defendants committed or intended to commit a crime or fraud. *See In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 565–66 (D. Del. 1994); *In re Neurontin Antitrust Litig.*, 801 F. Supp. 2d 304, 310–11 (D.N.J. 2011) (denying application of crime-fraud exception where movant had "not presented any basis beyond their own allegations" that exception applies).

Second, even if Plaintiffs' allegations were sufficient to suggest a crime or fraud, the crime-fraud exception would only undermine Defendants' privilege and work product assertions where the documents or communications themselves "were in furtherance of that alleged crime or fraud." *In re Grand Jury*, 705 F.3d at 151 (quotation omitted); *In re Chevron Corp.*, 633 F.3d 153, 167 (3d Cir. 2011) ("Yet evidence of a crime or fraud, no matter how compelling, does not by itself satisfy both elements of the crime-fraud exception to the attorney-client privilege . . . ."). And Plaintiffs have provided no evidence to suggest any of the sought-after documents were used *in furtherance* of a crime or fraud. Instead, Plaintiffs state that "any legal advice Defendants sought in connection with § 6.9(a) and the no third-party

beneficiary provisions was for the purpose of enabling their planned fraud on the employees." (D.I. 46 at 3). But that conclusory statement assumes the relationship it purports to prove. And Plaintiffs' follow-up argument—that "by definition there is a functional relationship between any advice the attorneys provided" about the Merger Agreement and communications regarding its terms "and Defendants' attempt to defraud those employees about 'special protections' for their severance and benefits," (D.I. 52 at 3)—lacks any actual evidentiary support. Plaintiffs have provided no evidence of how the disputed documents *furthered* the crime or fraud. *Magnetar*, 886 F. Supp. 2d at 488 (denying application of crime-fraud exception where party failed to "present any evidence of how the disputed documents . . . furthered the crime or fraud"). That Defendants consulted attorneys regarding the terms of the Merger Agreement and official communications related to the Merger Agreement falls far short of demonstrating that Defendants used that legal advice to perpetuate a crime or fraud.[4] On the present, relatively undeveloped record, Plaintiffs are not entitled to invoke the crime-fraud exception regarding the Subpoenaed Law Firms.

---

[4] Even accepting Plaintiffs' conclusory statements as sufficient, "the crime-fraud exception only applies to communications which occur before or during the crime, not communications made after the fact." *Magnetar*, 886 F. Supp. 2d at 488. Plaintiffs' subpoena contains no temporal limitations, and thus to the extent it includes any documents or communications that were created "after the completion of the alleged fraud," those documents would be outside the scope of the crime-fraud exception. *See id.*; *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 155 (D. Del. 1977) ("The fraud exception is a narrow one. If the documents were prepared subsequent to completion of the alleged fraud, they could not be 'in furtherance' of the fraud.").

### B.    In Camera Review

In the alternative, Plaintiffs argue they have met the lower evidentiary threshold required for in camera review of the subpoenaed documents to determine whether the crime-fraud exception applies. (D.I. 46 at 3). They have not. In camera review is warranted where a party demonstrates a "factual basis adequate to support a good faith belief by a reasonable person . . . that *in camera* review of the materials may reveal evidence to establish that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989) (quotation omitted). And even so, the decision whether to conduct in camera review remains "in the sound discretion of the district court" and subject to considerations including "the volume of materials" to be reviewed, "the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.* As discussed above, Plaintiffs have offered nothing to this end beyond conclusory allegations of fraud, which this court dismissed, and have offered no evidence to suggest any of the subpoenaed documents were made or created in furtherance of the alleged fraud. Plaintiffs' conclusory and attenuated assertions at this early stage of litigation do not warrant in camera review. *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. at 566 (finding "mere allegations" insufficient to warrant in camera review).

## IV.   CONCLUSION

The present record, which has not enjoyed the benefit of fulsome discovery, is insufficient to support finding that the Subpoenaed Law Firms' advice or work product was being used in furtherance of the alleged fraud. Defendants' motion to quash is **GRANTED** without prejudice.