## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WOLFRAM ARNOLD, ERIK FROESE, TRACY HAWKINS, JOSEPH KILLIAN, LAURA CHAN PYTLARZ, and ANDREW SCHLAIKJER, | ) ) ) ) ) | C.A. No. 1:23-cv-00528-TMH |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| X CORP. f/k/a TWITTER, INC., X HOLDINGS CORP. f/k/a X HOLDINGS I, INC. and ELON MUSK, | ) ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Akiva Cohen, Dylan M. Schmeyer, Michael D. Dunford, Lane A. Haygood, KAMERMAN, UNCYK, SONIKER & KLEIN P.C., New York, New York; Joseph L. Christensen, CHRISTENSEN LAW LLC, Wilmington, Delaware — Attorneys for Plaintiffs.

Eric Meckley, MORGAN, LEWIS & BOCKIUS LLP, San Francisco, California; T. Cullen Wallace, MORGAN, LEWIS & BOCKIUS LLP, Houston, Texas; Jody C. Barillare, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware — Attorneys for Defendants.

Michael A. Barlow, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, Delaware — Attorney for Non-Parties Antonio Gracias, Brad Sheftel, David Sacks, Jared Birchall, Jason Calacanis, and Sam Teller.

March 19, 2026
Wilmington, DE

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before the court is non-parties Antonio Gracias, Brad Sheftel, David Sacks, Jared Birchall, Jason Calacanis, and Sam Teller's motion to quash subpoenas served upon them, (D.I. 99), and Plaintiffs' cross-motion to compel discovery, (D.I. 102). For the reasons below, the motion to quash is **GRANTED**, and the cross-motion to compel discovery is **DENIED**.

## I.    BACKGROUND

The facts underlying this litigation are well known to the parties and have been discussed and set forth in prior opinions. (*See, e.g.*, D.I. 110; D.I. 121; D.I. 160; D.I. 162). Accordingly, only the facts necessary to the resolution of this discovery dispute are set out here.

Plaintiffs are former employees of X Corp. f/k/a Twitter, Inc. (Twitter) who have asserted claims against Twitter and X Holdings Corp. f/k/a X Holdings I, Inc. (together, the Twitter Defendants) and Elon Musk. (D.I. 10). Plaintiffs' claims arise out of Mr. Musk's acquisition of Twitter, the terms of the merger agreement that effectuated that acquisition (the Merger Agreement), and employee layoffs following the merger's closing. (*Id.* at ¶¶ 33–45). On September 13, 2024, Plaintiffs noticed their intent to serve deposition and document subpoenas on six individuals who are not parties to this litigation—Antonio Gracias, Brad Sheftel, David Sacks, Jared Birchall, Jason Calacanis, and Sam Teller (together, the Non-Parties)—and who Plaintiffs contend are "individuals that Elon Musk brought in to advise him on the acquisition of Twitter and its restructuring, including the terminations and breaches

2

of contract at issue" in the litigation. (D.I. 102 at 1; *see, e.g.*, D.I. 84). In their roles as advisors to Mr. Musk, the Non-Parties were given Twitter-affiliated email addresses and were purportedly embedded in Twitter's legal department as Staff Software Engineers. (*See* D.I. 102 at 1–2).

On September 23, 2024, the Non-Parties sought to quash the subpoenas, arguing they impose an undue burden because they seek information best sought from parties to the litigation. (D.I. 99; D.I. 96 at 1; *see also* D.I. 107). In response, Plaintiffs filed an opposition and cross-motion to compel compliance. (D.I. 102).

## II.    LEGAL STANDARD

Discovery may be obtained from third parties under Federal Rule of Civil Procedure 45. Rule 45 obligates the "party or attorney responsible for issuing and serving a subpoena" to "take reasonable steps to avoid imposing undue burden" on the person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). And it directs courts to quash or modify a subpoena that subjects its recipient to "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "In determining if compliance with the subpoena would create an undue burden, the court should consider not only the potential burden to the producing party, but the necessity of the information for the party seeking production, and whether the information can be obtained from other, more convenient sources." *Cash Today of Tex., Inc. v. Greenberg*, No. 02-mc-00077, 2002 WL 31414138, at *4 (D. Del. Oct. 23, 2002) (citation omitted); *see In re TQ Delta*, No. 17-mc-00328, 2018 WL 5033756, at *2 (D. Del. Oct. 17, 2018). Non-parties are generally afforded

"special protection" in this undue burden inquiry. *Cash Today*, 2002 WL 31414138, at *2 (quotation omitted).

"The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *In re TQ Delta*, 2018 WL 5033756, at *1 (quotation omitted). Disputes about the scope and conduct of discovery are within the discretion of the trial court and are disturbed only upon a showing of abuse of discretion. *See Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

## III.    <u>DISCUSSION</u>

The subpoenas differ slightly, but generally they notice a remote deposition and request production of materials related to the Non-Parties' positions at Twitter, including their involvement in Twitter employee lay-offs, the implicated terms of the Merger Agreement, and Twitter's severance obligations. (*See generally, e.g.*, D.I. 84-1). The Non-Parties move to quash the subpoenas, primarily arguing they are unduly burdensome because the discovery sought is better obtained from the parties to the litigation, who are by default a "more convenient, less burdensome, or less expensive" source of discovery.[1] (D.I. 96 at 1–3 (quotation omitted); *see* D.I. 107 at 1). The Non-Parties emphasize that Plaintiffs' subpoenas come before any party depositions have taken place and argue that such "non-party discovery is improper when Plaintiffs have ***not even attempted*** to obtain the information from a party."

---

[1] The Non-Parties also sought to quash the subpoenas because they fail to allow a reasonable time to comply. (D.I. 96 at 3). Given that the original deadline for compliance of September 20, 2024, has passed, (*id.*), this ground is moot.

(D.I. 107 at 1). Plaintiffs respond, arguing that the availability of party discovery does not bar seeking third-party discovery—more so given that the subpoena recipients are not "typical" third parties because they were embedded at Twitter during the relevant time period. (D.I. 102 at 2–3 (quotation omitted)). Plaintiffs also argue that while Twitter—a party to the litigation—*should* have copies of some of the documents sought, there is no guarantee Twitter has *all* the documents within the Non-Parties' possession. (D.I. 102 at 3).

The court need not formally rule on the relevance of the discovery sought—though some requests facially appear to satisfy Rule 26's relevance inquiry given that each subpoena recipient was employed at Twitter during the relevant time period and advised Mr. Musk on the layoffs generally underlying this lawsuit. (*See* D.I. 102 at 2; Fed. R. Civ. P. 26. *But see* D.I. 89-1 at 5–6 (Request No. 2)). Rather, it is sufficient at this early stage of litigation to note that Plaintiffs seek discovery from non-parties that is likely to be available from Twitter, a party to the litigation, without first undertaking party-discovery. (*See* D.I. 107 at 1 (asserting that "Plaintiffs have **not even attempted** to obtain the information from a party")); *see Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, No. 20-cv-11050, 2022 WL 2191519, at *7–8 (D.N.J. June 17, 2022) (quashing subpoena in part because "it appears that several items can be more directly obtain[ed] from [a party]").

Certainly, discovery from a party to the litigation is a "more convenient source[ ]" when compared to discovery from nonparties. *Cash Today*, 2002 WL 31414138, at *4; *In re Keebaugh*, No. 19-cv-00163, 2019 WL 5802703, at *5 (E.D. Pa.

5

Nov. 6, 2019) (quashing third-party subpoena where documents could be obtained from party). And Plaintiffs' third-party subpoenas are, at minimum, duplicative of discovery that can likely be obtained from Defendants. For example, Request for Production No. 1 to non-party Sam Teller seeks the following:

> DOCUMENTS and COMMUNICATIONS RELATING TO YOUR position on the TRANSITION TEAM, including but not limited to DOCUMENTS and COMMUNICATIONS RELATING TO any request, solicitation, negotiation, offer, and/or acceptance of or for YOUR position on the TRANSITION TEAM, and including but not limited to DOCUMENTS and COMMUNICATIONS RELATING TO YOUR compensation, site of work, provision of equipment, and beginning or end dates for YOUR work on the TRANSITION TEAM.

(D.I. 89-1 at 5).[2] Information regarding a former Twitter employee's hiring,

---

[2] Plaintiffs' other production requests are similarly duplicative. For example:

**REQUEST FOR PRODUCTION NO. 5.**
DOCUMENTS and COMMUN[I]CATIONS RELATING TO planned or actual reductions in force at TWITTER, including but not limited to the selection of employees for termination or retention.

**REQUEST FOR PRODUCTION NO. 6.**
DOCUMENTS and COMMUNICATIONS RELATING TO the identification of particular CONTINUING EMPLOYEES to be laid off or retained by TWITTER.

**REQUEST FOR PRODUCTION NO. 7.**
DOCUMENTS and COMMUNICATIONS RELATING TO changes in the terms and conditions of the CONTINUING EMPLOYEES' employment

(D.I. 89-1 at 6).

compensation, site of work, and employment dates is information that can likely be acquired directly from the former employer itself—here, a party to the litigation. More so given that each of the subpoena recipients were issued Twitter-affiliated email addresses, the contents of which should remain in Twitter's possession, custody, or control. (*See* D.I. 102 at 3 ("Certainly, Twitter *should* have a copy of any emails the [Non-Parties] sent from the @twitter.com email addresses they were provided during the relevant period.")). And while Plaintiffs emphasize that Twitter's privilege log in related proceedings makes clear the Non-Parties also used personal emails for Twitter business, those same entries show that other Twitter email addresses were also on those communications. (*See, e.g.*, D.I. 102-2 (entry 981 listing non-Twitter email for Jared Birchall but also including several @twitter.com recipients)). Thus, many of the documents sought by the third-party subpoenas appear obtainable through a Rule 34 request to Twitter.

Plaintiffs nonetheless argue that the Non-Parties may have documents that Twitter does not by virtue of communicating by personal email, text message, or other messaging apps. (*See* D.I. 102 at 3). But such speculation is not a basis to look *first* to a non-party for discovery. Plaintiffs' own cases make this point clear. *See Med. Tech., Inc. v. Breg, Inc.*, No. 10-mc-00100, 2010 WL 3734719, at *4 (E.D. Pa. Sept. 21, 2010) (allowing non-party discovery to supplement *already produced* documents and test comprehensiveness of party production); *Pearson v. Univ. of Chicago*, No. 20-mc-00092, 2021 WL 194725, at *6 (D. Conn. Jan. 20, 2021) (similar); *New Park Ent. L.L.C. v. Elec. Factory Concerts, Inc.*, No. 98-cv-00775, 2000 WL 62315, at *5

(E.D. Pa. Jan. 13, 2000) (same); *Saller v. QVC, Inc.*, No. 15-cv-02279, 2016 WL 8716270, at *6 (E.D. Pa. June 24, 2016) (same). To be clear, there are circumstances in which a party may seek discovery from a non-party that is duplicative of what is available from a party. *See Software Rts. Archive, LLC v. Google Inc.*, No. 09-cv-00017, 2009 WL 1438249, at *2–3 (D. Del. May 21, 2009) (allowing discovery where third party is in ownership chain with party and discovery was necessary to test completion of party discovery). But Plaintiffs' request, which comes before undertaking party discovery seemingly likely to uncover substantially overlapping documents, is premature.

Because Plaintiffs have failed to demonstrate any efforts made to obtain any of the contested discovery from parties to this litigation—and given the absence of some showing by Plaintiffs that party discovery is inadequate—the court finds the subpoenas unduly burdensome at this time. *See Korotki*, 2022 WL 2191519, at *5 (concluding third-party subpoenas are unduly burdensome "to the extent they would require the Petitioner to reproduce materials already provided to Plaintiff or materials *that can be more readily obtained from the Defendants*" (emphasis added)). As discovery progresses, Plaintiffs are free to narrow their inquiries and reissue the subpoenas in a manner consistent with this opinion.

## IV.    CONCLUSION

For these reasons, the Non-Parties' motion to quash is **GRANTED**, and Plaintiffs' cross-motion to compel discovery is **DENIED**.

8